Not Reported in F.Supp.2d  
56 U.S.P.Q.2d 1732  
(Cite as: 2000 WL 1863560 (D.Conn.))

Page 1

▷

United States District Court, D. Connecticut.

INTERNATIONAL NUTRITION COMPANY  
v.  
HORPHAG RESEARCH LTD. et. al.

No. 3:96CV386(DJS).

April 14, 2000.  
Order on Reconsideration April 14, 2000.

*RULING ON THE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

SQUATRITO, J.

*1 The plaintiff brings this action against eighteen defendants pursuant to 35 U.S.C. § 271, 15 U.S.C. § 1125(a) and 15 U.S.C. § 1114(1), alleging that the sale of products containing certain plant extracts constitutes patent infringement, unfair competition, and trademark infringement.

The Court has jurisdiction in this matter under 28 U.S.C. § 1331 and § 1338, and venue is proper under 28 U.S.C. § 1391.

Now pending before the Court are twelve motions for summary judgment on Counts I and II by various defendants. [FN1] For the reasons discussed below, the defendants' motions for summary judgment are GRANTED, in part.

> FN1. Claim I asserts that all named defendants have infringed or are infringing United States Patent 4,698,360. Claim II alleges that defendants Horphag, MW International, and Kaire International engaged in unfair competition in violation of the Lanham Act by representing that INC is not an owner of the '360 patent.

I. Facts

This case involves the sale of plant extracts containing proanthocyanidans, a class of organic molecules extracted from pine bark. The use of this family of compounds allegedly confers health benefits, due to their ability to act as free radical scavengers.

In April, 1985 Horphag Overseas Limited ('Horphag') and Societe Civile d'Investigations Pharmacologiques d'Aquitane ('SCIPA') entered into a joint development contract for the invention of new products for medical use. The contract was written in French and executed in France. The expressed intent of this agreement was to unite the parties' efforts and pool their resources for the development of new products with medical utility. Article 5 of the agreement specifies that any patent applications resulting from this collaboration "shall be filed jointly" by the parties. "In the event of the transfer or licensing of the industrial property rights, resulting from the present contract, the proceeds will be shared equally by the parties." *Id.* Article 7 specifies that "any litigation regarding the interpretation or performance of the present contract shall be [in] the exclusive jurisdiction of the courts of Bordeaux." By its terms, the contract expired in April 1990, with the possibility of a automatic renewal period for five additional years. INC claims that the contract expired in 1995.

On April 9, 1985, work covered by the terms of the joint development contract resulted in the filing of a patent application with the United States Patent and Trademark Office ('PTO'), claiming that proanthocyandins were useful for the treatment of certain human diseases. On October 6, 1987, United States Patent 4,698,360 (the '360 patent) issued, listing Dr. Jack Masquelier as its sole inventor. Pursuant to the terms of the joint development agreement, Masquelier assigned his invention to the Society Civile d'Investigations Pharmacologiques d'Aquitane ('SCIPA') and Horphag Overseas Limited ('Horphag').

On March 11, 1994, SCIPA assigned its rights in the '360 patent to International Nutrition Company ('INC'), the plaintiff in this action.

In October 1995, Horphag commenced litigation in France to determine which parties possessed an ownership interest in the '360 patent. Horphag, SCIPA and INC were parties to the French litigation.

On March 6, 1996, INC filed this action. In support of the claim of infringement, it stated that it owned

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d  
56 U.S.P.Q.2d 1732  
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 2

"at least an undivided one-half interest" in the '360 patent. Complaint at ¶ 23

*2 On October 30, 1996 Jack Masquelier assigned to INC any ownership interest in the '360 patent that "may possibly revert" to him.

On March 25, 1997, the French Court of First Instance of Bordeaux held that SCIPA's assignment to INC was void. This decision was appealed to the French Court of Appeals.

On May 28, 1998, the French Court of Appeals affirmed the lower court's ruling. The French appeals court based its decision on the fact that the 1994 assignment from SCIPA to INC was controlled by the terms of the 1985 joint development contract. The court concluded that under French law, the jurisprudence specified in the joint development contract, the assignment from SCIPA to INC was invalid. Therefore, INC "no longer has any right whatsoever appertaining to the patent '360 [and] is no longer able to exploit the same." *SCIPA et. al. v. Horphag*, Certified Translation of the Judgment of the French Court of Appeals at 48. [FN2]

> FN2. The Parties submitted multiple copies of an English translation the French decision that have different pagination. *Compare* Declaration of Michael Adler. Doc. 232. Exhibit 1, with the Declaration of Michael Adler. Doc. 296. Exhibit H. All of the citations to the decision of the French Court of Appeals in this opinion reference the pagination of the version submitted in Doc. 296.

II. Legal Standard for Summary Judgment

A motion for summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute." ' *American Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319-20 (2d Cir.1975)). A dispute concerning a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ' *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)), *cert. denied*, 113 S.Ct. 440 (1992). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.). *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

III. Discussion  
A. Ownership of the '360 Patent

The threshold issue for the Court to address is the ownership of the '360 patent. It is axiomatic that a party without an ownership interest in a patent has no standing to sue for its infringement. "To invoke the jurisdiction of a federal court under § 1338, it is necessary that the plaintiff allege facts that demonstrate that he, and not the defendant, owns the patent rights on which the infringement suit is premised." *Jim Arnold Corp. v. Hydrotech Systems, Inc.*, 109 F.3d 1567, 1572 (Fed.Cir.) *reh'g denied* U.S.App. Lexis 15403 (en banc), *cert. denied* 522 U.S. 933, 118 S.Ct. 338, 139 L.Ed.2d 262 (1997).

*3 The defendants argue that, pursuant to the decision of the French Court of Appeals, the plaintiff does not possess any ownership interest in the '360 patent and therefore lacks the requisite standing to maintain an action for infringement.

The plaintiff responds that it owns all right and title to the patent in suit. It claims that it acquired 50% ownership as a result of the 1994 assignment from SCIPA, and subsequently acquired the remaining 50% in 1996 pursuant to the assignment from Dr. Masquelier . [FN3]

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d  
56 U.S.P.Q.2d 1732  
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 3

FN3. This claim is premised on the plaintiff's assertion that Horphag's 50% ownership interest lapsed in 1995 when the joint development contract expired. INC claims that Horphag's 50% interest reverted to Dr. Masquellier upon the expiration of the 1985 joint development agreement and was subsequently transferred to INC pursuant to the 1996 assignment from Masquellier.

### 1. Ownership of the '360 Patent is a State Law Question

While the issues of patent validity and infringement are questions of federal law, "it is well settled that if a patentee pleads a cause of action based on rights created by a contract ... the case is not one 'arising under' the patent laws." *Jim Arnold Corp.,* 109 F.3d at 1572; *see also New Marshall Engine Co. v. Marshall Engine Co.,* 223 U.S. 473, 32 S.Ct. 238, 56 L.Ed. 513 (1912)(state court has proper jurisdiction in a lawsuit for specific performance of a contract to assign a patent). If a party contractually transfers his ownership interest in a United States patent, "the question of whether a patent is valid and infringed is one for federal courts, while the question of who owns the patent rights and on what terms is a question exclusively for state courts." *Jim Arnold,* 109 F.3d at 1572; *see also Beghin-Say Int'l Inc. v. Rasmussen,* 773 F.2d 1568, 1571 (Fed.Cir.1984).

In this case, the ownership of the '360 patent is controlled by the 1985 joint development agreement between SCIPA and Horphag. The terms of this document indicate that the parties will jointly develop and own certain scientific inventions and share any proceeds resulting from the transfer or licensing of any industrial property rights. The parties expressly agreed to "pool their resources" toward developing "new products intended for medical use." The contract indicates that any inventions shall be the subject of a joint patent applications--- and consequently joint ownership--- and proceeds derived from the licensing of any industrial rights shall be shared equally. It is the clear intent of the contract that any inventions stemming from the SCIPA/Horphag collaboration would be governed by the terms of the contract, including the possible future determination of ownership interests.

Because the contract specifically requires that any applications shall be "filed jointly," it necessarily contemplates that all patents arising from this agreement shall be jointly owned by SCIPA and Horphag. Under American law, it is well settled that the "question of who owns the patent rights and on what terms is a question exclusively for state courts." *Jim Arnold* 109 F.3d at 1572; *see also Beghin-Say Int'l Inc. v. Rasmussen,* 773 F.2d 1568, 1571 (Fed.Cir.1984). Here, rather than a state, the parties specified the law of France. It is undisputed that the '360 patent is a product of the 1985 joint development contract. Because the 1985 contract specifies French law as the parties' choice of law under which to resolve disputes, the rights of the joint owners of the '360 patent must be determined pursuant to French law.

### 2. Comity to the 1998 Decision of the French Court of Appeals

*4 Having determined that the ownership of the '360 patent is controlled by the 1985 agreement, the next step is to determine who owns the '360 patent under French law.

The issue of the ownership of the '360 patent under French law has been previously litigated. On May 28 1998, the French Court of Appeals ruled that INC "no longer has any right whatsoever appertaining to the patent '360 [and] is no longer able to exploit the same." *SCIPA et al. v. Horphag,* Certified Translation of the Judgment of the French Court of Appeals of Bordeaux at 48. This Court must determine whether it is appropriate to extend comity to the French Court's decision.

The plaintiff argues that comity should not be extended because the French decision is in conflict with American patent law. Specifically, the plaintiff contends that American law allows for the unilateral assignment of patent rights, while French law does not. Additionally, the plaintiff contends that comity should not be extended since it was a bona fide purchaser for value and Horphag has unclean hands.

The defendants respond that the French court's decision does not conflict with American patent law since the plaintiff contracted away its right to unilaterally assign his ownership interest.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
56 U.S.P.Q.2d 1732
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 4

Furthermore, they argue that the facts clearly reveal that INC took ownership with full knowledge of the contested nature of the '360 patent and that there are no facts supporting an unclean hands defense against Horphag.

"Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another ." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (3rd Cir.1971), *cert. denied,* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972); *see also Hilton v. Goyot,* 159 U.S. 113, 205-6, 16 S.Ct. 139, 40 L.Ed. 95 (1895)(a decision of a competent foreign court can be prima facie evidence of the truth of the matter adjudged). Comity should be withheld only "when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Somportex,* 453 F.2d at 440. For example, it would be inappropriate to extend comity to a decision of a foreign court that purported to interpret the patent laws of the United States. *See Medtronic, Inc. v. Daig Corp.,* 789 F.2d 903, 907 (Fed.Cir.1986)(refusing to extend comity to a German court's decision that an American patent is 'obvious' under 35 U.S.C. § 103).

After careful review, it is apparent that the decision of the French Court of Appeals should be afforded comity. In this instance, the French court's decision determined the ownership interests of intellectual property under a French contract with a French choice of law provision. The French Court did not interpret American patent law. It merely determined who owned an American patent pursuant to a French contract. As discussed previously, it is well settled that "the question of whether a patent is valid and infringed is one for federal courts, while the question of who owns the patent rights and on what terms is a question exclusively for state courts." *Jim Arnold Corp. v. Hydrotech Systems, Inc.,* 109 F.3d 1567, 1572 (Fed.Cir.). *reh'g denied* U.S.App. Lexis 15403 (en banc), *cert. denied* 522 U.S. 933, 118 S.Ct. 338, 139 L.Ed.2d 262 (1997). If the issue of the ownership of the '360 patent were presented directly to an American court, a proper analysis would entail a determination of the ownership rights under French law. In this case, a French court has already presented a well reasoned analysis of this issue, presenting a clear case for extending comity to the decision.

*5 Furthermore, the plaintiff's claim that the French court's decision is in conflict with American law is incorrect. Section 262 of Title 35 of the United States Code reads:
> *"In the absence of any agreement to the contrary,* each of the joint owners of a patent may make, use, or sell the patented invention without the consent of and without accounting to the other owners." (Emphasis added).

While the plaintiff correctly points out that a co-owner's unilateral assignment of an American patent would be permitted under 35 U.S.C. § 262, it ignores that an 'agreement to the contrary' exists in this case. The 1985 joint development contract subjected the ownership of any applicable intellectual property, including the '360 patent, to French law. This type of agreement is specifically contemplated by the American statute. Section 262 allows a co-owner of a United States patent to subject its ownership rights to other bodies of law. In this case, SCIPA and Horphag chose to do exactly that when they signed the 1985 contract subjecting the ownership of any jointly owned patents, American or foreign, to French law. Since French law does not allow a co-owner to unilaterally assign its patent rights, the French court concluded that the 1994 assignment from SCIPA to INC was void. The French court's decision neither interprets nor is in conflict with American law.

Additionally, the plaintiff's claim that it was a *bona fide* purchaser for value is without merit. It is axiomatic that to be a bona fide purchaser, the party must take title without notice of any competing equitable claims. *See Heidelberg Harris, Inc. v. Loebach,* 145 F.3d 1454, 1458 (Fed.Cir.1998); *see also Filmtec Corp. v. Allied Signal, Inc.,* 939 F.2d 1568, 1573-4 (Fed.Cir.1991). This is simply not the case in this instance. After reviewing all of the facts, the French court found that when SCIPA attempted to assign its rights to INC in 1994, INC was aware both that the '360 patent was co-owned by Horphag and that SCIPA and Horphag were in serious disagreement over the ownership of the '360 patent. *SCIPA et al. v. Horphag,* Certified Translation of the Judgment of the French Court of Appeals of Bordeaux at 38. Since INC was aware of the SCIPA-Horphag dispute prior to receiving the purported assignment from SCIPA, under American law it can not be a bona fide purchaser of the '360 patent. [FN4] *See Heidelberg Harris, Inc. v. Loebach,* 145 F.3d 1454, 1458 (Fed.Cir.1998)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
56 U.S.P.Q.2d 1732
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 5

FN4. Furthermore, the plaintiff's contention that 35 U.S.C. § 261 supports their position is incorrect. This statute "provides that the bona fide purchaser for value cuts off the rights of a prior assignee who has failed to record the prior assignment [with the PTO]." *Filmtec Corp. v. Allied Signal, Inc.*, 939 F.2d 1568, 1573-4 (Fed.Cir.1991). It is undisputed that the 1985 contract signed in France was not registered with the PTO. However, section 261 is only applicable to an "assignment, grant or conveyance" of a patent. *See* 35 U.S.C. § 261. Because the 1985 joint development agreement is a prospective bilateral contract between Horphag and SCIPA, it does not fall within the purview of the statute. *See Talbot v. Quaker State Oil Refining Co.*, 28 F.Supp. 544, 548 (W.D.Pa.1938), *aff'd* 104 F.2d 967 (3d Cir.1939)(an agreement between joint patent owners is not an 'assignment, grant or conveyance' under the patent statute); *see also Beghin-Say Int'l v. Rasmussen*, 733 F.2d 1568, 1571 (Fed.Cir.1984).

Finally, the plaintiff's arguments that comity should not be extended on the basis of Horphag's unclean hands are not persuasive. INC claims that "the French judgment should not be given comity because of Horphag's unclean hands in failing to disclose that it has licensed [to a third party]." [FN5] Plaintiff's reply brief at 16. Its theory is that "Horphag was able to conceal from the French courts the license it had granted to [a third party and its] unclean hands would have resulted in a different judgment." *Id.*

FN5. The third party referred to is Indena.

**\*6** This is simply not the case. Horphag did not conceal the existence of third party licenses. It is apparent that the French court was aware of the existence of these parties, but declined to act because the licensees were not parties to the French action. *SCIPA et. al. v. Horphag*, Certified Translation of the Judgment of the French Court of Appeals of Bordeaux at 49-50. Contrary to INC's assertions, the French court was aware of Horphag's dealing with third parties and thus INC's assertion that the French Court's decision would have been different is not persuasive.

The Court concludes that comity should be extended to the decision of the French court on the issue of ownership of the '360 patent. INC does not possess an ownership interest in the '360 patent and therefore lacks the requisite standing to sustain an action for infringement.

B. Impact of the 1996 Masquelier Assignment

The plaintiff next argues that even if this court extends comity to decision of the French Court of Appeals, it still has standing to bring this action. It contends INC is at least a 50% owner of the '360 patent as a result of its 1996 agreement with Dr. Masquelier and because "all potential owners are before the Court and there is no reason ... not to proceed with this patent infringement action." Plaintiff's brief at 10. Alternatively, it contends that, as a partial owner, the 1985 joint development agreement requires Horphag to join in any infringement action.

The defendants respond that the 1996 Masquelier assignment transferred no ownership interest to Horphag. Alternatively, they contend that all co-owners of a patent must join as plaintiffs in an infringement action, and any action brought by one co-owner must be dismissed for lack of proper standing.

It is well settled that "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed.Cir.1998). "One co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Schering Corp. v.. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed.Cir.1997). The one relevant exception to this rule is "if, by agreement, a co-owner waives his right to refuse to join a suit, his co-owners may subsequently force him to join in a suit." [FN6] *Ethicon*, 135 F.3d at n. 9; *see also Willingham v. Lawton*, 555 F.2d 1340, 1344-45 (6th Cir.1977).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d  
56 U.S.P.Q.2d 1732  
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 6

> FN6. The other exception is in the case of an exclusive licensee, which is not relevant to this action. See *Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1468, n. 9 (Fed.Cir.1998).

It is readily apparent that INC's 1996 agreement with Dr. Masquelier was a prospective assignment that transferred no actual ownership interest to INC. In April 1985, Masquelier assigned the '360 patent in equal portions to SCIPA and Horphag, effectively giving away all of his "proprietary sticks from [his] bundle of patent rights," and leaving himself with nothing. *Ortho Pharmaceutical Corp. v. Genetics Instit. Inc.,* 52 F.3d 1026, 1031 (Fed.Cir.1995). The expiration of the 1985 joint development agreement in 1995 did nothing to change the ownership interests in the '360 patent. There is no provision in the 1985 agreement stating that ownership would revert to Masquelier upon its expiration. Thus, since Masquelier had nothing to transfer to INC in 1996, the assignment did not alter the ownership interests in the '360 patent. Under the terms on the 1996 agreement, INC will acquire an ownership interest from Masquelier only if any such interest is assigned to him in the future. Thus, the 1996 assignment does nothing to alter the conclusion that INC has no ownership interest in the '360 patent . [FN7]

> FN7. The French Court of Appeals also reached the same conclusion in 1998. "[T]he deed dated October 30, 1996 cannot be interpreted as constituting an assignment of current rights ... but only as a conditional deed including the assignment of these rights in the event that they should return to [Masquelier's] ownership." Certified Translation of the Judgment of the French Court of Appeals of Bordeaux. *SCIPA et. al. v. Horphag,* at 42.

*7 Further, even if the 1996 Masquelier agreement transferred a 50% ownership interest to INC--- which it did not--- such partial ownership is insufficient to confer standing. See *Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1468 (Fed.Cir.1998). There is nothing in the 1985 joint development contract that requires Horphag to be involuntarily joined as a plaintiff in an suit for infringement. Therefore, Horphag "has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Schering Corp. v. Roussel-UCLAF SA,* 104 F.3d 341, 345 (Fed.Cir.1997).

### IV. Conclusion

The Court concludes that INC has no ownership interest in the '360 patent and thus lacks the requisite standing to pursue an action for infringement. Further, because INC does not own the '360 patent, it can not sustain its claim that certain defendants engaged in unfair competition.

For the foregoing reasons, the defendants' motions for summary judgment as to Counts I and II of the complaint (Docs. 291, 294, 297, 299, 301, 303, 305, 306, and 307) are GRANTED, in part. By granting these motions in part, the Court directs the Clerk to grant summary judgment for all named defendants on Counts I and II of the complaint, but denies the additional equitable relief sought by some of the defendants in their motions for summary judgement.

Furthermore, the motions of defendants Usana Inc. and Jarrow Formulas Inc. to dismiss (Doc. 301 and 307) are DENIED, as moot. The motion for limited discovery (Doc. 286) is DENIED.

The only remaining cause of action in this case is Count III, a trademark infringement claim against defendants Nutraceutical Corporation, Jarrow Formulas Inc., New Visions International Inc. and Changes International. The Parties shall jointly contact the chambers of the undersigned no later than March 27, 2000 to schedule a status conference.

*RULING ON THE PLAINTIFF'S MOTIONS FOR RECONSIDERATION, FOR LEAVE TO JOIN A PARTY AND FOR LEAVE TO FILE AN AMENDED COMPLAINT*

On March 18, 2000, the Court granted the defendants' motions for partial summary judgment on Counts One and Two of the original complaint. The plaintiff now moves for reconsideration of this decision, as well as permission to join Centre

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
56 U.S.P.Q.2d 1732
**(Cite as: 2000 WL 1863560 (D.Conn.))**

d'Experimentation Pycnogenol ('CEP') as a plaintiff and permission to file an amended complaint.

For the reasons set forth below, the motion for reconsideration is granted, but the requested relief is DENIED. The motions to amend the complaint and join a new party are both DENIED.

### Discussion
### A. Motion for Reconsideration

In its ruling on the defendants' motion for partial summary judgment, the Court concluded that the Parties subjected their ownership interests in the '360 patent to the terms of the 1985 Joint Development Agreement. This contract contained a choice of law provision that specified French law. The Court extended comity to a decision by the French Court of Appeals concluding that, under French law, INC did not have an ownership interest in the '360 patent. Because INC does not own the patent, it can not sustain its action for infringement.

*8 The plaintiff now represents that in 1998 SCIPA was acquired by CEP. In its motion for reconsideration, it claims that if CEP is joined as a plaintiff, under French law it "is entitled to maintain this patent infringement action without the consent of [the patent's co-owner] Horphag." Plaintiff's brief at 2.

In its ruling, the Court utilized French law only to determine the ownership interests in the '360 patent. The plaintiff's attempt to import French patent law into other aspects of this case is misplaced. Other issues, including a party's ability to sue for patent infringement, are controlled by American law. In its ruling, the Court expressly noted that, in accordance with American patent law, "Horphag 'has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in [an infringement action].' " Ruling on the Defendants' Motion for Partial Summary Judgment at 12, quoting *Schering Corp. V. Roussel-UCLAF SA,* 104 F.3d 341, 345 (Fed.Cir.1997). The plaintiff can not remedy this defect merely by adding CEP as an additional plaintiff.

Therefore, the relief requested in the plaintiff's motion for reconsideration is denied.

### B. Motions to Amend the Complaint and to Join CEP as a Party.

The motions to amend the complaint and to add CEP as a plaintiff are denied because they are futile. *See Leonelli v. Penwalt Corp.,* 887 F.2d 1195, 1198 (2d Cir.1989): *In re Boesky Securities Litigation,* 882 F.Supp. 1371, 1379 (S.D.N.Y.1995). As mentioned above, adding CEP as a plaintiff does not remedy the inherent deficiencies in INC's attempt to sue a co-owner of an American patent in an American court. Further, the amended complaint seeks to add a French statutory claim. Because there are no viable federal claims pending against these defendants, even if the motion to amend was granted this Court would decline to exercise jurisdiction over the remaining non-federal claim. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (it is inappropriate for a federal court to retain jurisdiction over pendent state law claims absent federal claims).

### Conclusion

For the reasons stated above, the plaintiff's motion for reconsideration (Doc 328) is granted, but the requested relief is DENIED. The plaintiff's motions to join a party and to amend the complaint (Doc. 328) are both DENIED. By agreement of the Parties, Count III is hereby dismissed *with prejudice* and all pending counterclaims are dismissed *without prejudice.* All Parties shall bear their own costs. The clerk is directed to close this case.

2000 WL 1863560 (D.Conn.), 56 U.S.P.Q.2d 1732

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works