UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JARROW FORMULAS, INC., | ) | CIVIL ACTION NO. |
| | ) | 3:01 CV 478 (AVC) |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL NUTRITION COMPANY, | ) | |
| et al., | ) | |
| | ) | DECEMBER 23, 2003 |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT
## OF THEIR MOTION IN LIMINE TO EXCLUDE EVIDENCE

Defendants International Nutrition Company ("INC"), Egbert Schwitters, Jack

Masquelier, Norman H. Zivin, Integrated BioCeuticals, LLC ("IBC), Primary Source, LLC

("PS"), and Primary Services, Inc. ("PSI") respectfully submit this reply memorandum in further

support of their Motion in Limine to Exclude Evidence dated October 23, 2003 and in response

to plaintiff Jarrow Formulas, Inc.'s ("JFI") Memorandum of Law in Opposition to Defendants'

Motion in Limine dated December 1, 2003 ("Pl. Opp.").

## ARGUMENT

**I.    SINCE PLAINTIFF NEVER DISCLOSED ANY EXPERT TESTIMONY
DEFINING THE RELEVANT MARKETS, IT IS PRECLUDED FROM
OFFERING SUCH TESTIMONY AT TRIAL**

### A.    Rule 37(c) Requires Preclusion

JFI asserts that it "has offered qualified expert witnesses [Greg Ris and Michael

Willoughby] . . . [who] define the market, consistent with the Amended Complaint, as the United

States market for oligomeric procyanidins ("OPCs") produced pursuant to U.S. Patent No.

4,698,360 ("'360 patent")." Pl. Opp. at 2. Notably, JFI does not, and cannot, claim that it

<u>disclosed</u> such expert testimony pursuant to Fed. R. Civ. P. 26(a)(2). Because JFI failed to

10571

disclose that Mr. Ris' and Mr. Willoughby's testimony would include defining the relevant markets, such testimony is precluded under Fed. R. Civ. P. 37(c).

Rule 26(a)(2)(B) requires disclosure of all expert witnesses through "a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor . . . ." The Advisory Committee Notes to the 1993 amendments to Rule 26(a)(2) state that "[r]evised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed."

Exclusion of undisclosed expert testimony under Rule 37 is "self executing and is an automatic sanction that is designed to provide a strong inducement for disclosure of relevant material that the disclosing party expects to use as evidence." Lamarca v. United States, 31 F. Supp. 2d 110, 122 (E.D.N.Y. 1998). See also Commercial Data Servers, Inc. v. IBM, 262 F. Supp. 2d 50, 62 (S.D.N.Y. 2003) ("[w]hether or not [the new] opinions were 'implicitly' part of [the expert's] analysis, he never explicitly discussed them in his Rule 26 Report"); Brumley v. Pfizer, Inc., 200 F.R.D. 596, 603-04 (S.D. Tex. 2001); Baker v. Indian Prairie Community School Dist., 1999 U.S. Dist. LEXIS 17221, at *14 (N.D. Ill. Oct. 27, 1999) ("The Court will not allow the [plaintiffs] to ambush defendants with new expert opinions after the expert opinion disclosure deadline . . .").

## B. JFI Failed to Disclose Any Expert Testimony Regarding Relevant Markets

Exclusion of expert testimony not disclosed by JFI is required to prevent prejudice to the defendants. As stated in defendants' initial Memorandum of Law ("Def. Memo.") at 2, JFI was required to provide disclosure of all its expert witnesses and their opinions by February 28, 2002.

10571

2

JFI disclosed two expert witnesses, Greg Ris and Michael Willoughby, whose reports are attached as Ex. A and Ex. C, respectively, to defendants' Memorandum.

JFI's argument, almost two years after Mr. Ris' and Mr. Willoughby's reports were disclosed, that those reports undertook to define the relevant product and geographic markets in this action is absurd. Neither report even contains the phrase "relevant markets" or any market definition analysis, much less one based upon, for example, (a) the products within the relevant market as alleged in the Amended Complaint; (b) the elasticity of demand; (c) the elasticity of supply; (d) the names of the other firms in the market and their market shares; (e) entry of new products or producers; or (f) other topics usually addressed in market analyses.

Mr. Ris' four-page report reviews only his employer's sales of one of its products, and the scope of his report was "to review the impact of the INC lawsuit, what that may have had on the industry, the sale of grape seed extract in general." Ris Depo. 56-57 (Ex. B to Def. Memo.).

Likewise, Mr. Willoughby's report is "a limited-scope consulting report including economic and damages analysis," Willoughby Rep. at 1, calculating business interruption damages. Mr. Willoughby indicated that his report did not purport to determine the relevant product or geographic markets. Willoughby Depo. 30, 34 (Ex. D to Def. Memo.).

Thus, a market definition analysis would go far beyond the opinions regarding causation and damages disclosed in the two reports. For example, in Commercial Data Servers, supra, the defendants moved to strike new opinions offered by the plaintiff's expert. The district court compared the initial report with the new opinions, noting that the initial report was "simply and solely a damages analysis" and that the new opinions dealt with relevant market definition. The court concluded that the new opinions were "an entirely different topic than the one discussed in his Rule 26 report," 262 F. Supp. 2d at 61, and that expert opinion that "goes beyond" the

damages analysis provided in the expert reports disclosed by the plaintiffs must be excluded. Id. at 62. See also Brumley, supra, 200 F.R.D. at 603-04; Baker, supra, 1999 U.S. Dist. LEXIS 17221, *14. In fact, without a proper market definition, it is impossible to determine causation, which renders Mr. Ris' and Mr. Willoughby's reports irrelevant.

Moreover, while defendants would be severely prejudiced by admission of undisclosed testimony at trial, JFI has offered no explanation for failing to disclose that it intended its damages experts to testify as to the relevant markets at trial. Instead, JFI simply states that defendants took depositions of its experts and also suggests that its failure to disclose under Rule 26 should somehow be excused because "the Defendants have not retained an industry expert to refute Mr. Ris' market and industry opinions." Pl. Opp. at 11.

First, JFI's argument that the depositions provided "notice" of undisclosed expert opinions has been rejected by courts in the Second Circuit. Commercial Data Servers, 262 F. Supp. 2d at 62 ("deposition testimony on a topic does not cure a failure to provide Rule 26 disclosures"); Lamarca, 31 F. Supp. 2d at 122 (same). Furthermore, since Mr. Ris did not discuss in his report market definition or market power, there was no reason for defendants to inquire extensively into these topics at his deposition.

The defendants were very surprised, to say the least, to learn from JFI's brief that Mr. Ris[1] will be defining the relevant market at trial because he admitted in his deposition that he did not know how many raw grape seed suppliers there are in the United States, the market shares of

---

[1] Since JFI does not include Mr. Willoughby in its list of the "evidence upon which it intends to rely to prove [the relevant product and geographic markets]," Pl. Opp. at 15, JFI's discussion of Mr. Willoughby's credentials and opinions is irrelevant to this motion. Additionally, to the extent that JFI intends to supplement Mr. Ris' testimony with "other industry fact witnesses, such as Jarrow Rogovin, Mark Timon and Robert Lemon, that have been disclosed and deposed," Pl. Opp. 18, this comes as news to defendants because JFI has never "disclosed" these witnesses as experts or produced any written report from any of them.

the few companies he was able to identify, or the market share of his own company. Ris. Depo. at 34-41, attached as **Ex. A**. Also, contrary to JFI's reading of the transcript (Pl. Opp. at 3, 5, 10, 16), Mr. Ris suspected that products not containing OPCs were used in the industry as substitutes for products containing OPCs. Ris Depo. at 23-24. In the final analysis, however, the fact is that his report made no mention of market definition, market share, or product substitutability. Thus, if the Court were inclined to permit Mr. Ris to testify at trial beyond what he disclosed in his report, the defendants would be compelled to make a second motion in limine to strike his proposed testimony as unreliable, speculative, and irrelevant under the Daubert line of cases.

Second, to argue that defendants themselves have not disclosed an expert turns the rule on its head. The whole purpose of the required disclosure is to enable opposing parties to prepare for trial and to retain their own expert testimony to rebut the disclosed expert testimony. Lamarca, 31 F. Supp. 2d at 122 ("This duty to disclose information concerning expert testimony is intended to allow opposing parties to have a reasonable opportunity [to] prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.") (internal quotation marks omitted). That was why defendants' deadline for disclosing experts followed plaintiff's. Since JFI bears the burden of proving the relevant markets, Pepsico, Inc. v. Coca-Cola Co., 315 F.3d 101, 105, 111 (2d Cir. 2002), there was no reason for defendants to pay[2] an antitrust economist for rebuttal in light of JFI's omission to disclose any expert who defined the relevant markets.

---

[2]With respect to Mr. Ris' testimony, the defendants find it hard to believe that he supposedly performed an antitrust market analysis in 10-15 hours for only $2,300 in fees, D. Memo. Ex. A, while Mr. Willoughby, JFI's economist, testified that the fees for an antitrust analysis would have been significantly higher than the damages analysis he performed. Willoughby Depo. 34.

Accordingly, because JFI omitted to disclose expert testimony regarding the relevant markets, it should not be allowed now to repair its omission by ambushing the defendants with such testimony at trial.[3]

## II.   PLAINTIFF HAS FAILED TO PROFFER PERTINENT, CREDIBLE EVIDENCE OF RELEVANT MARKETS

JFI argues that it has "an arsenal of facts supporting its claims." Pl. Opp. at 14.  JFI does not contest, however, that it produced a total of only 10 pages of documents in response to defendants' requests for documents relating to JFI's definition of the relevant product and geographic markets.  See Def. Memo. at 9-10.  Its "arsenal" boils down to two sources:  (1) marketing materials regarding OPCs and (2) Mr. Ris' testimony, which necessarily is lay opinion testimony since it was never disclosed as expert testimony.

JFI argues that it has marketing materials that define the relevant market, but it fails to cite even one case holding that such materials can define markets.  On the contrary, courts have rejected that approach.  In Independent Ink, Inc. v. Trident, Inc., 210 F. Supp. 2d 1155, 1170 (C.D. Cal. 2002), the court concluded that "for antitrust purposes, the relevant market cannot be defined by a defendant's marketing materials or from the opinions of investment analysts."  The court in AD/SAT v. Associated Press, 920 F. Supp. 1287, 1297 n.7 (S.D.N.Y. 1996), aff'd, 181 F.3d 216 (2d Cir. 1999), held that "the relevant market is determined by reasonable interchangeability, as evidenced by cross-elasticity of demand and supply, not by layman's comments made in a competitive business environment."  Thus, JFI cannot rely on defendants'

---

[3] JFI complains that the motion in limine is "of unusual breadth and scope." Pl. Opp. at 14.  A motion in limine, however, is appropriate for narrowing issues for trial and may encompass whole categories of evidence.  Love-joy Wilson v. Noco Motor Fuels, 242 F. Supp. 2d 236, 244 (W.D.N.Y. 2003).

or others' marketing materials to define the relevant markets. In any case, INC's and IBC's marketing materials do not contain an analysis of the relevant markets.

As for Mr. Ris' lay testimony to define the relevant markets, JFI merely cites two cases outside the Second Circuit. Pl. Opp. 20. These courts, however, never decided the issue of whether lay testimony is admissible to define the relevant market because that issue was not before them. Courts that have actually decided the issue have held, consistent with Fed. R. Evid. 702, that definition of relevant markets must be accomplished through expert, not lay, testimony. Colsa Corp. v. Martin Marietta Serv., Inc., 133 F.3d 853, 855 n.4 (11th Cir. 1998) ("construction of a relevant economic market or a showing of monopoly power in that market cannot . . . be based upon lay opinion testimony"); Morgan v. Radiology, Ltd., 924 F.2d 1484, 1490 (9th Cir. 1991) ("We find no evidence that these two principals were experts qualified to opine on a highly technical economic question.").

Additionally, JFI has failed to notice that Mr. Ris' deposition testimony does not even comport with JFI's allegation of what the relevant product market is. JFI argues that it "has alleged that the relevant market . . . is the market for the wholesale and distribution of proanthocyanidins covered by the '360 Patent in the United States," Pl. Opp. 15, and that "Mr. Ris will testify that there were no substitute products for '360 patent products . . .," id. at 19, citing only to pages 23-24 of his deposition. Id. at 16.

Mr. Ris, however, did not say that in his deposition. Rather, his testimony was:

> Q  Let me rephrase it. Is there any other product that you consider to be fungible or interchangeable with products containing OPCs?
> MR. WIECHMANN:  Object as to form.
> THE WITNESS:  OPCs can be derived from several starting materials, such as pine bark, such as grape seed extract, such as peanut skin. There are several sources of that. As far as other things being interchangeable, I will say no, not to my knowledge. If you're saying, if I understand correctly, that another product could be substituted not containing OPCs, or an OPC product?

BY MR. ORDER:
> Q Yes.
> A I would say no. Has it been done in the industry? Possibly.

Ris Depo. 24. Thus, in his deposition Mr. Ris did not define a relevant product market centered

on the '360 patent as JFI alleged in the Complaint. In fact, he did not even refer to the patent.

Rather, he referred simply to products containing OPCs in general, which covers a much larger

universe of products than products "covered by the '360 patent." The '360 patent is a use patent

that does not cover the manufacture of products containing OPCs, which exist throughout nature

(Ex. 11 to Pl. Opp. (JAR-EXP 0295)). Instead, the patent covers a specific use of OPCs in a

method of treatment as a radical scavenger with an antioxidant effect. Consequently, Mr. Ris

was discussing a much larger product market than JFI has alleged, and, therefore, his deposition

testimony does not support or comport with JFI's alleged product market definition. Clearly, JFI

is improperly attempting to give a few words about OPCs in general spoken by Mr. Ris the false

appearance of a well prepared, full-blown product market analysis centered on the '360 patent.

## III. PLAINTIFF MUST PROVE THE RELEVANT MARKETS FOR ALL ANTITRUST CLAIMS, INCLUDING THE CONSPIRACY CLAIM

JFI now asserts that it is alleging a conspiracy to monopolize in violation of § 2 of the

Sherman Act[4] for which it need not define the relevant markets, relying solely on an outmoded

case, Perigonton Wholesale, Inc. v. Burger King, 631 F.2d 1369, 1376 (10th Cir. 1979). As the

Tenth Circuit itself has recently acknowledged, however, "there is a split among the circuits as to

whether proof of the relevant market is required to prove a conspiracy to monopolize claim."

Lantec, Inc. v. LanCompany Informatica Ltd., 306 F.3d 1003, 1024 n.10 (10th Cir. 2002).

---

[4] JFI cites ¶¶ 38, 42, and 44 of the Amended Complaint, but these paragraphs do not allege a conspiracy to monopolize.

Most courts of appeals,[5] including the Second Circuit, have held that an antitrust plaintiff must define the relevant market to prove any monopolization claim, including a conspiracy to monopolize. In Kreager v. General Electric, 497 F.2d 468 (2d Cir. 1974), for example, the plaintiff alleged a conspiracy among the defendants in violation of §§ 1 and 2 of the Sherman Act. The Second Circuit rejected the notion that proof of a § 2 attempt or conspiracy to monopolize can be divorced from a properly defined relevant market:

> Section 2 prohibits the monopolization of, or any attempt or conspiracy to monopolize, 'any part of the trade or commerce among the several states.' It is axiomatic that in order to fall within § 2, the monopolist must have both the power to monopolize, and the intent to monopolize the relevant market. [The plaintiff] failed to offer any proof defining the relevant market. . . . Since there was a total failure of proof on the Section 2 claims, they were properly dismissed without submission to the jury.

Id. at 471 (internal citations and quotation marks omitted). Discon, Inc. v. Nynex, 93 F.3d 1055, 1062 (2d Cir. 1996), rev'd on other grounds, 525 U.S. 128 (1998); Hudson Valley Asbestos Corp. v. Tougher Heating and Plumbing Co., 510 F.2d 1140, 1144 (2d Cir. 1975).

Other courts have reasoned that in order to show the specific intent to monopolize element of a § 2 conspiracy claim, the plaintiff must define the relevant market. In other words, the relevant market must be defined because only a relevant market can be monopolized, and only a relevant market can be the intentional object of a conspiracy to monopolize. Electronics

---

[5] See Fraser v. Major League Soccer LLC, 284 F.3d 47, 49 (1st Cir. 2002), cert. denied, 2002 U.S. Dist. LEXIS 6523 (Oct. 7, 2002) (requiring proof of relevant market in § 2 conspiracy claim); Dickson v. Ebert, 309 F.3d 193, 211 (4th Cir. 2002), cert. denied, 2003 U.S. LEXIS 4985 (June 23, 2003) ("without allegations regarding the market power or share of Compaq or Dell in the PC market, Gravity is unable to show a conspiracy to monopolize under § 2"); Doctor's Hosp. of Jefferson, Inc. v. Southeast Medical Alliance, Inc., 123 F.3d 301, 311 (5th Cir. 1997) ("To establish Section 2 violations premised on attempt and conspiracy to monopolize, a plaintiff must define the relevant market."); Bill Beasley Farms, Inc. v. Hubbard Farms, 695 F.2d 1341, 1343 (11th Cir. 1983) ("In this circuit it is clear that relevant market is a necessary element of a conspiracy to monopolize."); Alexander v. National Farmers Organization, 687 F.2d 1173, 1193

Communications Corp. v. Toshiba Amer. Consumer Prod., Inc., 1996 U.S. Dist. LEXIS 11527,

*19 (S.D.N.Y. August 12, 1996); Geneva Pharmaceuticals Tech. Corp. v. Barr. Laboratories,

Inc., 201 F. Supp. 2d 236, 278 n.20 (S.D.N.Y. 2002); Apex Oil Co. v. DiMuauro, 713 F. Supp.

587, 599-600 (S.D.N.Y. 1989) (proof of specific intent to monopolize requires "evidence that the

object of the agreement was to monopolize" the relevant market).

Thus, even assuming that JFI alleged a § 2 conspiracy claim, it still must define the

relevant market to prove all its § 2 monopolization claims.  The same is true for its claims under

§ 1 of the Sherman Act, and JFI does not argue otherwise in its Opposition.

**IV.    JFI LACKS THE REQUISITE EXPERT TESTIMONY ON THE PRIOR ACTION**

JFI does not dispute its failure to disclose expert testimony for its claim that the

infringement suits were objectively baseless.  Pl. Opp. at 21-23.  Rather, JFI argues such a

determination is an issue of fact.  Proof that a patent infringement claim was "objectively

baseless" under the law as it existed at the time the patent infringement action was initiated,

however, involves technical, specialized legal knowledge beyond the scope of lay opinion

testimony permitted by Fed. R. Evid. 701.

DEFENDANTS,

By: /s/ Eric D. Beal
       RICHARD S. ORDER (ct02761)
       E-mail: rso@avhlaw.com
       ERIC D. BEAL (ct23167)
       E-mail: exb@avhlaw.com
       Axinn, Veltrop & Harkrider LLP
       90 State House Square
       Hartford, CT 06103-3702
       Telephone:   860-275-8100
       Facsimile:   860-275-8101

---

(8th Cir. 1982) ("a minimal showing must nonetheless be made as to the product and geographic
context of the alleged conspiracy").

10571

<u>CERTIFICATION</u>

THIS IS TO CERTIFY that a copy of the foregoing has been served by first class U.S.

mail this 23rd day of December, 2003 to:

Eric W. Wiechmann Esq.
Alexandra B. Stevens, Esq.
Jason C. Welch, Esq.
McCarter & English
CityPlace I
185 Asylum Street
Hartford, CT 06103

/s/     Eric D. Beal
Eric D. Beal
AXINN, VELTROP & HARKRIDER LLP

10571

11