UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JARROW FORMULAS, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. 3:01 CV 478 (AVC) |
| | ) | |
| | ) | |
| | ) | |
| INTERNATIONAL NUTRITION | ) | |
| COMPANY, INTEGRATED | ) | |
| BIOCEUTICALS, LLC, PRIMARY | ) | |
| SERVICES, INC., PRIMARY SOURCE, | ) | |
| LLC, EGBERT SCHWITTERS, NORMAN | ) | |
| H. ZIVIN, and JACK MASQUELIER, | ) | |
| | ) | |
| Defendants. | ) | October 13, 2004 |

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY

1.     The Plaintiff, Jarrow Formulas, Inc. ("JFI"), is a corporation organized and existing under the laws of the State of California and having its principal place of business in the City of Los Angeles, California.  Plaintiff is doing business within this judicial district.

2.     The Defendant, International Nutrition Company ("INC"), is a corporation organized and existing under the laws of Liechtenstein and having its principal place of business at Josef Rheinbergerstrasse 6, Vaduz, Liechtenstein.  INC has and is transacting business within several of the United States and this judicial district.  INC is a shell corporation used to shelter Defendant Egbert Schwitters's ("Schwitters") intellectual property.  The fact that INC is a shell dominated by Schwitters is demonstrated by the following averments:

    a.  INC's directors serve only ministerial functions and do not exercise decision making authority;

    b.  INC was formed in Liechtenstein to avoid paying corporate taxes;

    c.  Schwitters makes and executes all of INC's operational decisions;

    d.  Schwitters makes and executes all of INC's legal decisions;

    e.  Schwitters makes and executes all marketing decisions; and

    f.  Schwitters performs all day-to-day functions of INC.

3.    The Defendant Integrated Bioceuticals ("IBC") is a limited liability company organized and existing under the laws of Connecticut and having its principal place of business at 107 Ardmore Street, Fairfield, Connecticut.

4.    The Defendant Primary Services, Inc. ("PSI") is a company organized and existing under the laws of Connecticut and having its principal place of business at 107 Ardmore Street, Fairfield, Connecticut.

5.    The Defendant Primary Source ("PS") is a limited liability company organized and existing under the laws of Connecticut and having its principal place of business at 107 Ardmore Street, Fairfield, Connecticut.

6.    The Defendant Egbert Schwitters is a citizen of Monaco, having a residence at 20 bd Rainer III 98000, and is the founder, owner, sole shareholder, and an officer of Defendant INC at all relative times. Schwitters has and is doing business within the United States and this judicial district individually and through Defendant INC, manipulating INC as his alter ego.

7.     The Defendant, Jack Masquelier ("Masquelier"), is a citizen of France, having a residence at Rue Sainte Elisabeth, Cauderan, Bordeaux, 33200.  Masquelier has and is doing business within the United States and this judicial district.

8.     Defendants INC, Schwitters and Masquelier manufacture, sell, and distribute nutritional supplements including proanthocyanidins for radical scavenging ("PACs").

9.     Defendants IBC, PSI and PS distribute in Connecticut and the United States PACs purchased from INC, Schwitters and Masquelier.

10.     The Defendant, Norman H. Zivin ("Zivin"), is a citizen of the State of New York, having a residence at 3 Valley Lane, Chappaqua, New York  10514-2002.  Zivin is a member of the state bar of New York, is admitted to practice before the Court of Appeals for the Second Circuit and, is admitted *Pro Hac Vice* before the United States District Court for the District of Connecticut.  Zivin's principal place of business is located at 1195 Avenue of the Americas, New York, New York, where he is a partner in the law firm of Cooper & Dunham LLP.  Zivin has and is doing business within the United States and this judicial district.

## JURISDICTION AND VENUE

11.     This civil action is commenced to obtain relief from the violation by the Defendants of the antitrust laws of the United States, and the laws of the State of Connecticut. More particularly, this is an action for the violation by the various Defendants of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2; the Connecticut Antitrust Act, C.G.S. §§ 35-24 et seq.; the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110a et seq.; the Lanham Act, 15 U.S.C.

§ 1125(a); Connecticut General Statute § 52-568(2), and the common law of the State of Connecticut. This Court has original jurisdiction of the subject matter under the provisions of 28 U.S.C. §§ 1331, 1332(a)(2), and 1337(a). The amount in controversy exceeds $75,000.

12.    This Court has personal jurisdiction over Schwitters because he has engaged personally in the business of selling PACs and other nutritional supplements within this jurisdiction as a sole proprietor, d/b/a Merchant International, and as the alter ego of Defendant INC, which is a shell company, and he also has engaged in all relevant activities pertaining to the unlawful monopolization of the market for PACs in the United States, as more fully set forth hereinafter.

13.    Venue is proper in this District under the provisions of 28 U.S.C. §§ 1391(b) and (c) and 15 U.S.C. § 22 because Defendants do business in the State of Connecticut and several of the acts complained of arose and occurred at least in part in the State of Connecticut.

### FIRST CLAIM FOR RELIEF
**Violation of Sections 1, 2, and 15 of the Sherman-Clayton Antitrust Act**
**(15 U.S.C. §§ 1, 2, 15).**

14.    By their continuing course of publishing deceptive advertising, falsely claiming sole ownership of U.S. Patent No. 4,698,360 (the "'360 patent"), fraudulently procuring and defending the '360 patent, threatening their competitors with legal action which had no legal or factual basis, and undertaking numerous baseless and vexatious litigation in various venues, the Defendants INC, IBC, PSI, PS, Schwitters, Masquelier and Zivin have conspired to and undertaken a scheme of anti-competitive conduct in order to monopolize in the United States the

sale and distribution of nutritional supplements comprising PACs and covered by the '360 patent (the "PAC market").

15.    On October 6, 1987, the U.S. Patent and Trademark Office ("USPTO") issued the '360 patent "Plant Extract With a Proanthocyanidin Content as a Therapeutic Agent Having Radical Scavenger Effect and Use Thereof" to Masquelier.

16.    Pursuant to an April 1, 1985 agreement, Masquelier and his partners assigned their ownership interests in the '360 patent to Societe Civile d'Investigations Pharacologiques d'Aquitaine ("SCIPA") and Horphag Research Ltd. ("Horphag") (the "1985 Assignment").

17.    On April 26 and 29, 1985 in France, SCIPA and Horphag entered into a collateral agreement that ratified the 1985 Assignment and would govern their joint ownership of the '360 patent (the "1985 Agreement"). The 1985 Agreement included a provision that stated that any litigation pertaining to the agreement shall be of the "exclusive jurisprudency of the Courts of Bordeaux."

18.    In violation of French law and despite Horphag's conspicuous use and commercialization of PACs under the '360 patent, Masquelier and SCIPA, on March 18, 1994, purported to assign SCIPA's interest in the '360 patent to Defendant INC (the "1994 Assignment"), Horphag's competitor in Connecticut and the United States, without notice to, or consent of, co-owner Horphag. At the time of this purported assignment, upon information and belief, INC, Schwitters, Masquelier and Zivin knew that SCIPA and Horphag disputed ownership of the '360 patent. Nevertheless, Schwitters and Zivin masterminded this assignment to INC.

19.     Despite knowledge that Horphag was an owner of the '360 patent and that SCIPA and Horphag were embroiled in a dispute over ownership of the '360 patent and, upon information and belief, despite knowledge of the 1985 Agreement, INC, Schwitters, Masquelier and Zivin conspired to, and did deceptively record the 1994 Assignment in the United States Patent & Trademark Office on March 28, 1994, in order to mislead the public as to the ownership of the '360 patent.

20.     In October 1995, after learning of the purported 1994 Assignment by SCIPA to INC, Horphag brought suit in France against INC, SCIPA and SCIPA's principals, including Defendant Masquelier, pursuant to the express choice of venue requirements of the 1985 Agreement, and seeking judicial resolution of the ownership dispute over the '360 Patent.

21.     Despite the pendency of Horphag's lawsuit in France to resolve the dispute over ownership of the '360 patent, Defendants INC, Schwitters, Masquelier and Zivin, with the support and help of IBC, PSI and PS, in their continuous attempts to unfairly monopolize the PAC market in the United States, conspired to and did bring suit in the United States District Court for the District of Connecticut on March 6, 1996 against Horphag and eighteen distributors and customers, including JFI, falsely claiming that INC was the owner of the '360 patent and asserting infringement of the '360 patent, and falsely claiming that JFI and certain other parties were infringing the purported trademark "OPC-85" based on their use of the generic designation "OPC" ("the Connecticut lawsuit").

22.     "OPC" is a generic acronym for oligo, or oligomeric, proanthocyanidins. Oligo, or oligomeric refers to the class of shorter chain PAC molecules.

23.     At the time of filing the Connecticut lawsuit, INC, Schwitters, Masquelier and Zivin knew or reasonably should have known that INC did not have a good faith basis to claim ownership of the '360 patent, and that INC did not have a good faith basis to assert that JFI was infringing the purported trademark "OPC-85." In fact, Schwitters, acting through INC, alleged in INC's Complaint that INC was the owner of a one-half interest in the '360 patent.

24.     INC did not own outright the '360 patent. Thus, it had no standing to file suit for infringement without the permission of the other owners.

25.     At the time of filing the Connecticut lawsuit, INC, Schwitters, Masquelier and Zivin knew or reasonably should have known that the '360 patent was unenforceable and or invalid.

26.     Beginning in approximately 1978, a product containing proanthocyanidins was made and sold in France under the trade name Endotelon. Endotelon was a product comprised of proanthocyanidins extracted from grapes. Endotelon was produced under a license from SCIPA, in which Masquelier had an interest.

27.     In 1980, an article was published in the *Gazette Medicale de France* entitled "Therapeutical Trial of Endotelon, a peripheral angioprotector" reporting the results of tests performed by administering Endotelon to humans at a dosage of 150 milligrams per day ("the French Endotelon prior art".)

28.     The French Endotelon article describes administration of proanthocyanidins obtained from a plant source to humans in the same dosage range described and claimed in the '360 patent.

29.    Upon information and belief, INC offers for sale in the United States an OPC product under the trade name Flavan™.  Labels on bottles of Flavan™ include the Masqulier's® trademark, owned by INC, the '360 patent number, and further state "Scientifically Defined, Patented and isolated from Natural Extracts as used in the Actual Research Since 1947."  Upon information and belief Flavan™ was introduced into the French market in 1968 ("the Flavan prior art").

30.    On April 9, 1985, Masquelier filed the patent application with the United States Patent and Trademark Office which issued as the '360 patent.  During prosecution of the patent application, neither Masquelier nor those associated with prosecution of the '360 patent application disclosed to the PTO the Endotelon or the Flavan prior art.

31.    On April 17, 1996, a Request for Reexamination of the '360 patent was filed with the USPTO.  The Request for Reexamination cited a 1993 edition of the book OPC in Practice, which was authored by Schwitters in collaboration with Masquelier.  Several studies of "the OPC-based product 'Endotelon' (Sanofi/Labaz)" are summarized at pages 57-61.  One or more of the studies describe administration of proanthocyanidins within the dosage range claimed in the '360 patent.

32.    During prosecution of the reexamination of the '360 patent, on October 8, 1996, Masquelier and/or those associated with prosecution of the '360 patent reexamination submitted an Information Disclosure Statement to the PTO citing seventy-one separate references without any explanation of any of the references other than the titles and dates of the references.

33.     In response to a rejection of the claims of the '360 patent based in part on the

1993 edition of OPC in Practice, the patentees made the following statements in an Office Action

response dated March 17, 1997:

> Patentee respectfully points out that the Examiner's use of OPC In
> Practice as a secondary reference in the 35 U.S.C. §§102/103
> rejection of the claims is improper. OPC In Practice was published
> in 1993, which is long subsequent to the April 9, 1985 filing date
> of the '360 patent. Therefore, OPC In Practice is not a proper
> basis for the Examiner to establish a 35 U.S.C. §§102/103
> rejection. . .

34.     The 3rd edition of OPC in Practice was published in 1995, prior to the date of the

foregoing Office Action response. At pages 111-117 of the 3rd edition, additional information

regarding the testing of Endotelon in 1980 and 1981 is provided, including specific citations to

references containing the tests previously summarized in the 1993 edition of the book. The 1995

edition of OPCs in Practice included the dates of publication of the studies which were

performed in 1980 and 1981, prior to the critical date of the '360 patent.

35.     Upon information and belief, Masquelier and/or those associated with the

prosecution of the '360 patent application had knowledge of the prior art published literature

regarding administration of proanthocyanidins to humans within the dosage range claimed in the

'360 patent, including without limitation the French Endotelon article and the 1980 and 1981

articles cited at pages 111-117 of the 3rd edition of OPC in Practice. Nonetheless, they failed to

bring to the attention of the USPTO this material prior art with intent to deceive the PTO,

thereby committing fraud or inequitable conduct.

36.     Masquelier and/or those associated with prosecution of the '360 patent

reexamination did not cite in the Information Disclosure Statement or otherwise provide the

Examiner with the French Endotelon article, the 3rd edition of <u>OPC in Practice</u>, or any of the articles regarding testing of OPCs cited at pages 111-117 of the 3rd edition of <u>OPC in Practice</u>.

37.     Masquelier and/or those associated with prosecution of the '360 patent made misleading statements to the Examiner during prosecution of the '360 reexamination.

38.     The statement in the March 17, 1997 Office Action response was misleading at least because Masquelier and/or those associated with prosecution of the reexamination of the '360 patent knew that <u>OPC In Practice</u> included information regarding tests of Endotelon conducted in 1980 and 1981 within the dosage ranges claimed in the '360 patent, and Masquelier and/or those associated with prosecution of the reexamination of the '360 patent failed to provide this information to the Examiner. Upon information and belief, the failure to disclose the 1995 edition of <u>OPC in Practice</u> and the misleading statement made in the March 1997 Office Action response were undertaken with intent to deceive the PTO.

39.     On August 26, 1997, a Notice of Intent to Issue Reexamination Certificate was issued by the USPTO.

40.     As a result of the inequitable conduct committed by Masquelier and/or those associated with the filing and prosecution of the '360 patent application and the '360 reexamination, the '360 patent is unenforceable. Nonetheless, Defendants Schwitters, INC, Masquelier and Zivin initiated and prosecuted baseless litigation against JFI and others in the District of Connecticut.

41.     In light of the allegations in paragraphs 25 through 31, Masquelier, Schwitters and INC all had or should have had knowledge that the '360 patent is invalid pursuant to 35 U.S.C §§

102 & 103. Notwithstanding, Defendants Schwitters, INC, Masquelier and Zivin initiated and prosecuted baseless litigation against JFI and others in the District of Connecticut.

42.    In addition to filing suit in Connecticut, INC, IBC, PSI, PS, Schwitters and Masquelier conspired to and did pursue and publicize INC's false claim to ownership of the '360 patent and used their frivolous infringement claims to threaten substantially the entire nutritional supplement industry, including JFI's present and potential customers, and otherwise unreasonably restricted JFI's ability to compete in the nutritional supplement industry.

43.    These continuing anti-competitive activities include publicizing the patent infringement suit at a trade show that occurred shortly after INC filed suit in Connecticut, claiming sole ownership by INC of the '360 patent, and threatening to sue JFI's customers and other competitors in the market.

44.    Despite the ongoing litigation in both the French and United States Courts, on October 10, 1996, INC, Schwitters, Masquelier and Zivin concocted an additional scheme in a further attempt to monopolize the relevant product and geographic markets for the sale of PACs and/or unreasonably attempt to restrain trade whereby Masquelier executed a purported assignment of the '360 patent in which he stated that he assigned to INC whatever rights, if any, he had in the '360 patent that had reverted to him from Horphag (the "1996 Assignment").

45.    As they had done previously with the 1994 Assignment and despite the ongoing litigation over ownership of the '360 patent, INC, Schwitters, Masquelier and Zivin, upon information and belief, conspired to and did deceptively record the purported 1996 Assignment in the United States Patent & Trademark Office on November 4, 1996 in order to mislead the

public as to the ownership of the '360 patent and to create further arguments on which to continue the baseless suit.

46.     In formulating this conspiracy, upon information and belief, INC, Schwitters and Masquelier deceptively enter into the 1996 Assignment, which Zivin then caused to be recorded with the USPTO.  This was the basis for INC's, Schwitter's, and Masquelier's false claim of ownership of the '360 patent which they used in further publicity campaigns to stifle competition in the OPC markets.

47.     Despite the pendency of Horphag's lawsuit in France to resolve the dispute over ownership of the '360 patent and the Defendants' lawsuit in the United States Court for the District of Connecticut against Horphag, JFI, and the 17 other distributors and customers, Defendants INC, Schwitters, Masquelier and Zivin, in their continuing attempts to monopolize the sale of nutritional supplements subject to the '360 patent in the United States, conspired to bring a suit in the United States District Court for the Northern District of California on January 31, 1997 against Horphag, Interhealth Nutritionals, Inc., Natrol, Inc., General Nutrition, Inc., Nat-Trop, and Melaleuca, Inc., falsely claiming that INC was the owner of the '360 patent and asserting infringement of the '360 patent.  In their continuing attempts to circumvent the constraints of the patent laws, these Defendants conspired to and did sue Horphag as an "involuntary defendant."

48.     INC, IBC, PSI, PS, Schwitters and Masquelier continued to conspire and pursue and publicize INC's false claim to ownership of the '360 patent and used their frivolous infringement claims to threaten substantially the entire nutritional supplement industry, including JFI's present and potential customers, and otherwise unreasonably restricted JFI's ability to

compete in the nutritional supplement industry. These continuing anti-competitive activities included publishing a press release to the nutritional supplement industry wherein INC falsely accused Mr. Rogovin of being a "distorted zealot" who "hated intellectual property", and who was caught in the act of "borrowing science" without the consent of the alleged owner.

49.    On March 25, 1997, the French trial court declared the 1994 Assignment to INC void *ab initio* because SCIPA could not assign its interest in the '360 patent to INC without offering Horphag a right of first refusal.

50.    Despite the decision by the French trial court, the Defendants INC, Schwitters and Zivin refused to withdraw the lawsuits but instead aggressively prosecuted in Connecticut and California, conspired to and continued to publicize the false claim of ownership of the '360 patent, continued to make threats based on alleged infringement of the patent, and misrepresented the French trial court's ruling to the public.

51.    The French Appellate Court affirmed the lower court's ruling on May 28, 1998, holding that INC was not an owner of the '360 patent because the purported 1994 Assignment from SCIPA was void *ab initio*, and Horphag was and is a co-owner of the '360 patent.

52.    Despite the decision by the French Appellate Court, the Defendants INC, Schwitters, Masquelier and Zivin continued to prosecute the lawsuit in Connecticut, and refused to withdraw or modify the false and incorrect recordations with the United States Patent & Trademark Office of the purported assignments to INC. They also conspired with IBC, PSI and PS and continued to publicize the false claim of ownership of the '360 patent and the threats for infringement of the patent, and continued to misrepresent the French courts' decisions to the public.

53.    On March 18, 2000, the Connecticut District Court granted summary judgment in favor of the Defendants, including JFI, finding that INC was not a co-owner of the '360 patent, that INC had no standing to sue for infringement of that patent, that INC was not a *bona fida* purchaser for value because it knew that Horphag was a co-owner of the '360 patent, and that there was an ownership dispute between SCIPA and Horphag at the time of the 1994 Assignment.

54.    Despite the rulings in both the French and United States Courts, upon information and belief, INC, Schwitters, Zivin and Masquelier concocted yet another scheme to monopolize the relevant product and geographic markets and circumvent the courts' rulings whereby they caused SCIPA to be acquired by Centre d'Experimentation Pycnogenol ("CEP").  INC then acquired CEP in order to continue the false and misleading claim that it owned the '360 patent. Although the Connecticut District Court had granted summary judgment against INC, Schwitters, through INC, and Zivin then requested that they be allowed to amend the Complaint and join CEP to yet again try to circumvent the Court's ruling to support the false claim to ownership and baseless threats of infringement of the '360 patent.  On April 14, 2000, the Court granted INC's Motion for Reconsideration and then, upon consideration of this most recent request, denied INC's Motion to File Amended Complaint and Motion for Leave to Join a Party. Then, in order to clear the path for appeal of the patent count, and after subjecting JFI and other defendants to 4 years of needless litigation over the baseless trademark infringement count, INC and Zivin stipulated to dismiss with prejudice the trademark count.  The Court then entered judgment in favor of the defendants.

55.     Despite the existence of numerous court rulings against them in France and the United States which held that INC had no ownership rights in the '360 patent, INC and Zivin, with no legal or factual basis, appealed to the United States Court of Appeals for the Federal Circuit, subjecting the numerous defendants to the Connecticut lawsuit, including JFI, to continuously mounting expenses in defense of this vexatious litigation.

56.     On September 5, 2000, the Northern California District Court granted summary judgment against INC, finding that the French Court decision was entitled to comity, the French Court's decision was not inconsistent with United States patent law, the Connecticut Court's decision deserved full preclusive effect with regard to the INC's Motion for Leave to Amend its Complaint, and INC's and Zivin's strategy of suing Horphag as an "involuntary defendant" did not cure INC's lack of standing.

57.     Despite the two rulings from the French courts and the rulings by the Connecticut District Court and the Northern California District Court, in which Defendants INC, Schwitters, Zivin, and Masquelier conspired to and did cause JFI and other OPC distributors to devote substantial amounts of time and resources to reargue many of the same issues, all of which were found against INC, Schwitters, and Masquelier, these Defendants continued to aggressively pursue their strategy to use the spurious patent claims to stifle competition in the industry in a continuing attempt to monopolize the sale of products covered by the '360 patent in the United States and Connecticut.

58.     Defendants INC, IBC, PSI, PS, Schwitters and Masquelier have conspired to and continued to publicize the false claim to ownership of the '360 patent and the exclusive rights under the patent, misrepresent the rulings of the courts, and make threats and other false

-15-

statements concerning alleged infringement of the patent in publications to customers, potential customers, and the trade.

59.     This continuing course of conduct by Defendants INC, Schwitters, and Masquelier was recognized by another French Court, in which, upon information and belief, a lawsuit was initiated on August 6, 1999, by Horphag concerning their continuing attempts to misuse the '360 patent.  In particular, Horphag challenged INC's claim to the '360 patent based on INC's renewed effort to circumvent the prior court rulings through the forced acquisition of SCIPA by CEP and then subsequent purchase of CEP by INC.  Upon information and belief, on February 2, 2001, this French Court ruled that the exploitation of the '360 patent by INC was fraudulent, that the merger of CEP and SCIPA is annulled for fraud, that INC and CEP are enjoined under penalty of fine from exploiting the '360 patent, and that Horphag may exercise its right of preemption to become the sole owner of the '360 patent.

60.     Upon information and belief, Defendants INC, Schwitters, Masquelier and Zivin have conspired to and continued to threaten to pursue litigation against other persons who do not purchase from INC those products covered by the '360 patent.

61.     Upon information and belief, by becoming involved in the business affairs of INC, IBC, PSI, PS, Schwitters and Masquelier, including formulating strategy in connection with the scheme to monopolize the PAC market, conspiring with one or more of the other Defendants to create, and becoming an active participant in and formulating policy decisions in connection with, a continuing course of conduct as described in this Count to monopolize and/or unfairly restrain trade of supplements covered by the '360 patent throughout the United States, Zivin exceeded his role as legal advisor.

62.    As a direct and proximate result of Defendants' anti-competitive course of conduct, INC, IBC, PSI, PS, Schwitters and Masquelier were likely to achieve a monopoly within the OPC market.

63.    As a direct and proximate result of Defendants' monopolistic and anti-competitive conduct, JFI has suffered economic injury, including loss of use of capital, decreased sales, loss of the time and efforts of its Chief Executive Officer, decreased market share and injury to its good will within the relevant product and geographic markets.

64.    Said actions are in violation of §§ 1, 2 and 15 of the Sherman-Clayton Antitrust Act in that these actions unreasonably restrained trade and/or attempted to monopolize PACs in the United States.

**SECOND CLAIM FOR RELIEF**
**Violation of the Connecticut Antitrust Act, C.G.S. §§ 35-24 et seq.**

65.    Paragraphs 1 - 64 are repeated and realleged herein.

66.    Through the foregoing actions and conduct, Defendants INC, IBC, PSI, PS, Schwitters, Masquelier, and Zivin have conspired to unlawfully restrain trade or commerce within the PAC market.

67.    Said actions are in violation of sections 35-24 et seq. of the Connecticut Antitrust Act in that this actions unreasonably restrained trade and/or attempted to monopolize PACs in Connecticut.

68.    As a direct and proximate result of Defendants' aforesaid actions and conduct, JFI has suffered and continues to suffer economic injury, including loss of use of capital, loss of the

time of its Chief Executive Officer, decreased sales, decreased market share, and loss of future

good will within the PAC market.

69.    A copy of this Complaint is being mailed to the Attorney General of the State of

Connecticut pursuant to Connecticut General Statute § 35-37.

### THIRD CLAIM FOR RELIEF
#### Violation of the Connecticut Unfair Trade Practices Act, C.G.S. §§ 42-110a et seq.

70.    Paragraphs 1 - 69 are repeated and realleged herein.

71.    At all times material to this action, Defendants INC, IBC, PSI, PS, Schwitters,

Masquelier, and Zivin, have and were engaged in trade or commerce in the State of Connecticut

within the meaning of the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut

General Statutes §§ 42-110a et seq.  INC, Schwitters, and Masquelier compete against JFI in the

sale and distribution of PACs throughout the State of Connecticut.

72.    Through the actions and conduct described herein, including conducting vexatious

litigation, disparaging Jarrow L. Rogovin and JFI, and using in commerce false or misleading

descriptions of fact concerning the '360 patent and the activities of JFI and other distributors of

PACs in selling products covered by the '360 patent, which also violate antitrust laws,

Defendants have engaged in conduct that is immoral, unethical, oppressive, and unscrupulous

and that offends public policy.

73.    By the acts alleged herein, the Defendants have engaged in unfair methods of

competition or unfair or deceptive acts or practices in the conduct of trade or commerce in

violation of CUTPA, Connecticut General Statutes § 42-110b.

74.     As a direct and proximate result of the Defendants' actions and conduct, JFI has

suffered and continues to suffer an economic loss.

75.     A copy of this Complaint is being mailed to the Attorney General and the

Commissioner of Consumer Protection of the State of Connecticut pursuant to Connecticut

General Statute § 42-110g(c).

76.     As a damages award in and of itself is not adequate, JFI has no adequate remedy

of law for the Defendants' continuing CUTPA violations.

## FOURTH CLAIM FOR RELIEF
### Violation of the Lanham Act, 15 U.S.C. § 1125(a)

77.     Paragraphs 1 - 76 are repeated and realleged herein.

78.     In connection with products covered by the '360 patent, Defendants INC, IBC,

PSI, PS, Schwitters, Masquelier and Zivin, have used in commerce false or misleading

descriptions of fact and false or misleading representations of fact which have caused and

continue to cause confusion, deception, and mistake among consumers as to the rightful owner of

the '360 patent and JFI's right to sell OPC's without being subjected to suit by the Defendants,

and have disparaged JFI's commercial activities.  By such actions and conduct, these Defendants

have violated Section 43(a) of the Lanham Act.

79.     As a damages award in and of itself is not adequate, JFI has no adequate remedy

of law for the Defendants' continuing Lanham Act violations

**FIFTH CLAIM FOR RELIEF**
Vexatious Litigation under C.G.S. § 52-568

80.    Paragraphs 1 – 79 are repeated and realleged herein.

81.    In bringing a lawsuit against JFI in this Court, which lawsuit was terminated by this Court in favor of JFI, and appealing this Court's decision to the Court of Appeals for the Federal Circuit, Defendants INC, IBC, PSI, PS, Schwitters, Masquelier and Zivin conspired to, commenced, and continue to prosecute a civil action against JFI without probable cause and with a malicious intent unjustly to vex and trouble JFI.  By such actions and conduct, these Defendants have violated C.G.S. § 52-568.

**SIXTH CLAIM FOR RELIEF**
Tortious Interference with Advantageous Business Relations

82.    Paragraphs 1 - 81 are repeated and realleged herein.

83.    JFI's financial success is due in part to repeat business from its customers and from a constant stream of business from new customers.

84.    The prior litigation was initiated maliciously by Defendants INC, IBC, PSI, PS, Schwitters, Masquelier and Zivin without probable cause and judgment was granted in JFI's favor.

85.    By the foregoing actions and conduct, including conducting vexatious litigation, making false and disparaging statements, misrepresenting the ownership of the '360 patent, and committing unfair trade practices, which also violate antitrust laws, the Defendants have

tortiously interfered with and continue to tortiously interfere with JFI's past, present and future business dealings.

86.    As a result of the Defendants' improper and tortious interference with JFI's business expectancies, JFI has been and will continue to be damaged.

87.    As an award in and of itself is not adequate, JFI has no adequate remedy at law for Defendants' continuing acts of tortious interference with its business expectancies.

## TRIAL BY JURY

The Plaintiff demands trial by jury on all issues which are triable to a jury

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Jarrow Formulas, Inc. prays for:

1.    On the First Count, damages in the amount to be determined at trial, including a claim for treble damages pursuant to 15 U.S.C. § 15.

2.    On the Second Count, damages in an amount to be determined at trial, including a claim for treble damages pursuant to Connecticut General Statute § 35-35;

3.    On the Third Count, compensatory and punitive damages pursuant to Connecticut General Statute § 42-110g(a);

4.    On the Fourth Count, damages in an amount to be determined at trial, including a claim for treble damages pursuant to 15 U.S.C. § 1117(a).

5.    On the Fifth Count, trebled compensatory and punitive damages pursuant to Connecticut General Statute § 52-568(1).

6.    On the Sixth Count, compensatory, punitive and special damages.

7.    Attorneys' fees pursuant to 15 U.S.C. § 15 and 15 U.S.C. §1117(a) and Connecticut General Statutes § 35-35 and § 42-110g(d);

8.    Permanent equitable relief enjoining and prohibiting Defendants and their officers, directors, agents, representatives, servants, employees, and attorneys and all persons in active concert or participation with any of them from (a) asserting ownership of the '360 patent, asserting infringement of the '360 patent, or otherwise making any threats in connection with the '360 patent; (b) interfering with Jarrow Formulas, Inc.'s contractual relationships with its customers;

9.    Permanent equitable relief enjoining and directing Defendants to publish in all magazines, periodicals, and websites, and to all e-mail recipients, in or to which they have made false statements concerning ownership of the '360 patent within the past four years, a retraction about their ownership claims;

10.    Interest;

11.    Costs; and

12.    Such other and further relief as the Court deems just and proper.

THE PLAINTIFF,
JARROW FORMULAS, INC.
BY McCARTER & ENGLISH, LLP
ITS ATTORNEYS

Dated: October ____, 2004

By_____
    ERIC WATT WIECHMANN (CT 04331)
    MARK D. GIARRATANA (CT 10401)
    ALEXANDRA B. STEVENS (CT 20300)
    CityPlace I, 185 Asylum Street
    Hartford, CT 06103
    (860) 275-6700
    (860) 724-3397 (fax)
    ewiechmann@mccarter.com