TRIBUNAL DE GRANDE INSTANCE DE BORDEAUX

PREMIERE CHAMBRE                    PREMIERE CHAMBRE

SUR LE FOND
                            JUGEMENT DU 25 MARS 1997

                    P.M

_____

                    COMPOSITION DU TRIBUNAL
                    Lors des débats et du délibéré

N°du rôle
général              Mr FRUGIER, Vice-Président,
                     Mme GOUNOT, Premier Juge,
13618/95             Mlle DUPOUY, Premier Juge,


                     Mme I. BOUILLON, greffier


AFFAIRE


                     DEBATS

                     à l'audience publique du 11 FEVRIER 1997
STE HORPHAG RESEARCH


                     JUGEMENT

C/                   contradictoire
                     en premier ressort
                     prononcé publiquement

SCIPA
MASQUELIER
BARRAUD
MICHAUD
STE NUTRITION COMPANY
STE NUTRITION COMPANY


Grosses délivrées    DEMANDEUR
à
le
                     SOCIETE HORPHAG RESEARCH LTD, PO BOX 132, Quai
                     House, South Esplanade, ST PETER PORT GUERNSEY -
                     CHANNEL ISLAND

                     * Ayant pour conseil : Me LASSERRE (SCP RUSTMANN)
                     avocat postulant, et Me Jean-Pierre HERMANT,
                     avocat plaidant (PARIS)


                                  1

D 00 9495

DEFENDEURS

**SCIPA**, Société d'Investigations Pharmacologiques d'Aquitaine, Résidence Maintenon, Entrée B - Apartement 211, rue de Ségur - 33000 BORDEAUX

Monsieur **MASQUELIER**, les Magnolias - Parc des Tourelles, rue Sainte Elisabeth - 33200 BORDEAUX

Monsieur **BARRAUD Elian**, 118 rue Camille Godard - 33000 BORDEAUX

Monsieur **MICHAUD**, Résidence Maintenon - appartement 211, rue de Ségur - 33000 BORDEAUX

* Ayant pour conseil : Me **LIEF**, avocat


La Société **INTERNATIONAL NUTRITION COMPANY**, Vreeandseweg 69, 1393 PD NIGTEVECHT - the Netherlands, prise en la personne de son Directeur en exercice Monsieur SCHWITTERS,

La Société **INTERNATIONAL NUTRITION COMPANY**, Rheinberstrasse 6, 9490 VADUZ-LIECHTENSTEIN, prise en la personne de son Directeur en exercice Monsieur SCHWITTERS,


* Ayant pour conseil : Me **DE LESTRANGE**, avocat postulant, Me **BENECH**, avocat plaidant

.../...

2

D 00 9496

## EXPOSE DU LITIGE :

Par actes des 19, 20 et 26 octobre 1995, la Société HORPHAG RESEARCH, dont le siège est à GUERNESEY, se prévalant de la copropriété d'un brevet d'application accordé aux ETATS UNIS le 6 octobre 1987, sous le n°4.698.360, a fait assigner, sur le fondement de l'article L 613-29 e du Code de la Propriété Intellectuelle, la Société Civile d'Investigations Pharmacologiques d'Aquitaine (SCIPA), ainsi que son dirigeant Monsieur MASQUELIER, et deux de ses membres, Monsieur BARRAUD et Monsieur MICHAUD, en nullité de la cession par la SCIPA de sa quote-part de brevet au profit de la Société INTERNATIONAL NUTRITION COMPANY (INC) également assignée tant à un siège aux PAYS BAS qu'à un siège au LIECHTENSTEIN.

La Société HORPHAG explique que le brevet concerne un produit extrait de l'écorce de pin ou d'autres plantes, ayant la propriété de combattre les radicaux libres, principaux responsables du vieillissement des cellules, produit au sujet duquel elle était depuis de nombreuses années en relation d'affaires avec la SCIPA ou le CEP, également dirigé par Monsieur MASQUELIER.

Un contrat de distribution exclusive avait été signé en 1971, reconduit en 1982, permettant à la Société HORPHAG de commercialiser le produit notamment aux U.S.A sous la marque PYCNOGENOL, puis un contrat de recherche a été conclu le 29 avril 1985, dans le cadre duquel le brevet en cause a été déposé.

Or la SCIPA aurait procédé le 7 mars 1994 à la cession de sa quote-part de propriété en violation du contrat de recherche et des dispositions du code de la Propriété Intellectuelle pour n'avoir pas notifié son projet, alors qu'elle avait elle-même rappelé par lettre du 24 juillet 1987 que toute cession impliquait de recueillir l'accord de l'autre copropriétaire.

De plus, la Société INC serait un concurrent de la Société HORPHAG, et le prix de cession, à savoir 1 dollar, révèlerait que la Société cédante et la Société cessionnaire ont agi de mauvaise foi à l'encontre de la société HORPHAG.

Cette dernière entend en conséquence exercer le droit de préemption ouvert par l'article L 613-29 du code de la Propriété Intellectuelle, et obtenir une mesure d'expertise afin d'évaluer le préjudice résultant pour elle de la divulgation à la Société INC des secrets de fabrique acquis au terme de recherches dont elle n'a pas assumé le coût. A titre provisionnel, la Société HORPHAG sollicite la condamnation conjointe et solidaire des défendeurs à lui verser la somme de 10 000 000,00 Frs (dix millions de francs) qu'elle estime correspondre aux frais justifiés de recherche et à l'exploitation indue du produit.

En outre, la mauvaise foi des défendeurs et le climat de dénigrement entretenu par la SCIPA causeraient à la Société HORPHAG un préjudice moral en réparation duquel elle sollicite le versement d'une somme de

5 000 000,00 Frs, également à la charge conjointe et solidaire des défendeurs.

Enfin, la Société HORPHAG demande au Tribunal d'ordonner des mesures de publication du jugement, ainsi que l'exécution provisoire de celui-ci, et de condamner les défendeurs conjointement et solidairement à lui verser la somme de 300 000,00 frs au titre de l'article 700 du N.C.P.C.

Par conclusions du 27 mars 1996, la SCIPA ainsi que Messieurs MASQUELIER, MICHAUD et BARRAUD ont soulevé l'irrecevabilité des demandes d'HORPHAG RESEARCH, sur le fondement de l'article 31 du N.C.P.C., pour défaut d'intérêt à agir, faute par cette société de démontrer qu'elle viendrait aux droits de la Société HORPHAG OVERSEAS avec laquelle les engagements évoqués comme fondement de l'action ont été signés.

Les défendeurs sollicitaient en outre à cette époque le versement d'une somme de 3 000,00 frs chacun sur le fondement de l'article 700 du N.C.P.C.

Par conclusions du 9 avril 1996, la Société HORPHAG RESEARCH s'est opposée à cette exception, indiquant avoir absorbé la Société HORPHAG OVERSEAS par acte de fusion du 18 septembre 1990, et venir ainsi à ses droits.

Par ordonnance du 2 mai 1996, le Juge de la Mise en Etat a tranché un incident de procédure, en rejetant, compte tenu de la régularisation intervenue, l'exception de nullité de l'assignation, soulevée par les mêmes défendeurs, pour vice de forme, à savoir l'absence initiale d'indication du nom du représentant légal de la Société HORPHAG RESEARCH.

Le débat s'est alors engagé sur le fond, sans que la SCIPA et les consorts MASQUELIER, MICHAUD, BARRAUD reprennent leur exception relative au défaut d'intérêt à agir de la Société HORPHAG RESEARCH.

En revanche, ils ont demandé au Tribunal, par conclusions du 7 mai 1996 :

- de dire que la loi française n'est pas applicable à la cession des droits sur le brevet américain mais que la loi américaine est seule applicable, et qu'en vertu de celle-ci, la cession est régulière puisqu'en l'absence d'accord contraire, elle peut intervenir librement, sans le consentement des autres copropriétaires. Les défendeurs précisent en effet que le contrat de recherche, à le supposer soumis à la loi française, ne régit pas les conditions de cession ou de concession des droits de propriété industrielle, et que le contrat de cession litigieux, qui a pour objet un brevet américain, ne peut être régi par la loi française,

- de dire que la Société SCIPA n'a pas non plus engagé sa

4

responsabilité au regard du contrat de recherche d'avril
1985, dont l'interprétation doit se faire plutôt à la
lumière de la pratique suivie par la Société HORPHAG,
laquelle a largement concédé ses droits de propriété
industrielle, sans en référer à la Société SCIPA, qu'au vu
de la lettre du 24 juillet 1987, dont les termes
outrepasseraient manifestement ceux du contrat,

- de débouter en conséquence la Société HORPHAG de toutes
ses demandes, précisant que la stipulation du prix de 1
dollar "et autres valables prestations" est habituelle en
matière de cession de brevet américain, ajoutant que ce
n'est pas la cession du brevet qui a levé la
confidentialité des innovations, mais la demande de brevet
elle-même, outre que la Société HORPHAG ne justifierait pas
des dépenses prétendument importantes qu'elle aurait
engagées, et contestant enfin tout dénigrement, se
réservant de s'en expliquer dans le cadre des demandes
reconventionnelles.

    La SCIPA et les consorts MASQUELIER, MICHAUD et BARRAUD
sollicitent en effet :

- le versement d'une somme de 3 750 000,00 frs à valoir sur
le montant des redevances leur revenant du fait des
contrats de licence signés par la Société HORPHAG tant en
ce qui concerne le brevet 360 que la marque PYCNOGENOL,
couverte également par le contrat de recherche,

- la désignation d'un expert pour chiffrer le montant exact
des revenus retirés de ces contrats par la Société HORPHAG,
et plus généralement de tous autres droits de propriété
industrielle issus du contrat de recherche,

- la condamnation de la Société HORPHAG à verser à Monsieur
MASQUELIER la somme de 1 000 000,00 Frs à titre de dommages
et intérêts pour préjudice moral sur le fondement de
l'article 1382 du Code Civil dans la mesure où le
professeur MASQUELIER aurait accompli une oeuvre
scientifique très importante en mettant en évidence les
vertus thérapeutiques d'extraits de diverses plantes, alors
que la Société HORPHAG n'aurait obtenu que de maigres
résultats en ce qui concerne les ventes, menant une
politique commerciale à courte vue, ce qui ne l'aurait pas
empêchée de tenir des propos injurieux à l'égard de
Monsieur MASQUELIER et de contester la paternité de son
oeuvre scientifique, lorsque la SCIPA a décidé de "changer
de cheval".

    Enfin, les défendeurs sollicitent le versement d'une
somme de 30 000,00 Frs chacun sur le fondement de l'article
700 du N.C.P.C. et l'exécution provisoire du jugement.

    Par conclusions du 26 juin 1996, la Société HORPHAG a
maintenu les termes de son assignation, s'opposant aux

D 00 9499

demandes reconventionnelles, auxquelles elle réplique :

- qu'en l'absence d'une clause expresse relative à la loi applicable, il convient de rechercher les indices de la volonté tacite des parties, et qu'en l'espèce, il existe un ensemble d'indices objectifs et concordants, en faveur de la loi française, tant en ce qui concerne le contrat de recherche, que l'acte de cession du 18 mars 1994, intervenu entre des parties dont aucune n'est américaine, et qui n'est pas autonome par rapport au contrat de recherche,

- que subsidiairement la loi américaine subordonne la liberté de cession à l'absence de tout accord contraire, lequel existe en l'espèce, conformément à la lettre du 24 juillet 1987,

- qu'il n'est rapporté aucune preuve des contre-parties qui seraient venues s'ajouter à la somme de 1 dollar,

- que le dépôt du brevet rend publique l'invention, mais pas le cheminement des recherches ni les recherches en cours, pour lesquelles la Société HORPHAG indique avoir dépensé près de 4 000 000,00 Frs de 1992 à 1995, et autant pour les quatre années précédentes,

- que la mauvaise foi de la Société SCIPA est évidente et que l'expression "changer de cheval" est révélatrice,

- que l'affirmation selon laquelle la SCIPA n'aurait rien perçu au titre de l'exploitation des droits sur le brevet est fausse, ainsi que l'établit le contrat tripartite du 8 octobre 1986,

- qu'en outre la Société HORPHAG n'a pas cédé ni concédé des droits sur le brevet, mais qu'il ne s'agissait que de contrats d'agents commerciaux, ou contrats de distribution stipulant bien que la Société HORPHAG était le producteur du produit, vendu à l'importateur déjà élaboré,

- que le contrat de recherche ne s'applique qu'au brevet, à l'exclusion de toute notion de marque et que la marque PYCNOGENOL est la propriété de la Société HORPHAG qui l'a déposée aux ETATS UNIS sans que l'action en justice exercée à cet égard par la Société INC ait pu aboutir,

- que la demande de dommages intérêts de Monsieur MASQUELIER est mal fondée, alors que sa paternité sur l'invention n'a jamais été remise en cause, mais que la Société HORPHAG est seule victime d'une trahison, après avoir eu un rôle déterminant dans la recherche et la mise au point du produit grâce à des investissements réalisés sur 20 ans,

- que depuis l'année 1990 Monsieur MASQUELIER et la SCIPA se sont acharnés à s'approprier les efforts de la Société

6

D 00 0500

HORPHAG et à la dénigrer, ce qui expliquerait de sa part une réaction amère.

Par conclusions du 20 novembre 1996, la SCIPA et les consorts MASQUELIER, MICHAUD, BARRAUD ont à nouveau maintenu leurs explications antérieures, y ajoutant, à titre subsidiaire, pour le cas où le Tribunal appliquerait la loi française à la cession du brevet 360, les demandes reconventionnelles suivantes :

- donner acte à la Société SCIPA de ce qu'elle entend exercer son droit de repentir en vertu de l'article L 613-29 e du CPI, et en conséquence renoncer à la cession projetée de ses droits sur le brevet 360,

- sur le fondement de l'article L 613-29 e du CPI, annuler la transmission par la Société HORPHAG OVERSEAS à la Société HORPHAG RESEARCH de ses droits sur le brevet 360,

- par voie de conséquence, et à tout le moins sur le fondement de l'article L 613-29 c et d du CPI annuler toutes les concessions de licence de brevet accordées par la Société HORPHAG aux Sociétés PYCNOGENOL MARKETING INTERNATIONAL, TAAG, HOLLAND HEALTH, M.W INTERNATIONAL, et toutes autres concessions qui seraient révélées au cours des débats,

- ordonner la publication du jugement dans trois quotidiens aux frais de la Société HORPHAG.

Dans les motifs seulement de ses écritures, la SCIPA indique également qu'elle entend, toujours à titre subsidiaire, exercer son droit de préemption sur la quote-part de brevet de la Société HORPHAG, par application de l'article L 613-29 c et d du CPI.

Les défendeurs répliquent à la Société HORPHAG que le contrat de recherche, outre que rien n'établit qu'il soit soumis à la loi française, ne régit pas les modalités de transmission des droits sur le brevet, dont la demande a d'ailleurs été déposée avant qu'il ne soit signé, et que la lettre du 24 juillet 1987 n'a aucun caractère contractuel, dans la mesure où la Société HORPHAG l'a laissée sans réponse, et a concédé librement ses droits à des tiers conformément au droit américain.

Ils critiquent tous les indices de rattachement à la loi française énumérés par la Société HORPHAG, observant que même le conseil américain en brevet de cette société a estimé que la concession de licences d'exploitation par la SCIPA pouvait intervenir librement.

Les défendeurs contestent en outre que la cession à la Société HORPHAG ait introduit un concurrent sur un marché dont elle avait le monopole en vertu du brevet, alors que la Société demanderesse ne bénéficiait d'une exclusivité

D.00.0501

de commercialisation dans le monde entier, à l'exception de la FRANCE, que pour les extraits d'écorce de pin, et que ni la SCIPA, ni le CEP n'ont accordé un droit concurrent concernant cette exclusivité.

La Société SCIPA maintient également n'avoir jamais été rémunérée par la Société HORPHAG, laquelle effectuerait une confusion délibérée avec les redevances versées au CEP en vertu d'un contrat tripartite auquel elle n'est pas intervenue, et cela bien que les contrats signés par la Société demanderesse aient bien porté sur des concessions de droits de propriété industrielle.

Le comportement de la Société HORPHAG serait d'autant plus préjudiciable que le brevet 360 ne lui devrait absolument rien, et ne serait le fruit que du travail de Monsieur MASQUELIER, ces circonstances justifiant les lettres que la Société HORPHAG lui reproche d'avoir écrites.

La Société de droit hollandais INC AGENCY BV et la Société de droit du LIECHTENSTEIN, INTERNATIONAL NUTRITION COMPANY ETABLISSEMENT dite INC ont alors conclu le 26 novembre 1996.

La première société a soulevé l'irrecevabilité des demandes de la Société HORPHAG à son encontre, n'étant pas cessionnaire de la quote-part de propriété du brevet 360.
La seconde société, dans le cas où le Tribunal jugerait soit que la commune intention des parties dans le contrat de recherche n'autorisait pas de transaction sans l'accord de l'autre propriétaire du brevet, soit que le contrat de recherche était soumis au droit français, a également soulevé l'irrecevabilité de l'action de la Société HORPHAG à son encontre, au motif que la fusion entre la Société demanderesse et la Société HORPHAG OVERSEAS devrait être annulée, tout au moins dans ses effets sur le brevet, puisque la SCIPA n'a pas été mise en mesure d'exercer à cette époque son droit de préemption, de sorte que la Société HORPHAG RESEARCH n'aurait aucun droit à agir, n'étant pas propriétaire du brevet.
Elle fait également valoir, dans le dispositif de ses écritures, que cette fusion ne lui serait pas opposable.

Sur le fond du contrat de cession de brevet de 1994, la Société INC fait tout d'abord valoir qu'elle est acquéreur de bonne foi, et que la cession ne peut qu'être déclarée valide, quelque soit le droit applicable, puisqu'elle n'est pas entachée de fraude ni de simulation, qu'elle a date certaine et que les formalités de publicité ont été respectées.
Subsidiairement, elle déduit des différents contrats de concession signés par la Société HORPHAG que la commune intention des parties étaient que chacune pouvait agir seule, ce qui confirmerait l'interprétation exégétique de l'article 5 alinéa 3 du contrat de recherche.

8

D 00 9502

A défaut, la Société INC se prononce en faveur de l'application du droit américain au contrat de recherche, lequel serait plutôt un contrat de promotion et de copropriété sur le brevet 360, cela tant en vertu de la commune intention des parties, que des règles de droit international privé français, et elle considère que la lettre du 24 juillet 1987 ne peut constituer un accord contraire.

Très subsidiairement dans le cas où le droit français serait jugé applicable, et la nullité de la cession prononcée, la Société INC rappelle d'une part que tous les contrats de licence, et la fusion de la Société HORPHAG devraient aussi être annulés, et d'autre part que la Société SCIPA devrait être autorisée à exercer son droit de repentir ainsi qu'elle s'y serait engagée envers elle. La Société INC demande également au Tribunal de condamner la Société SCIPA à la garantir de l'éviction ainsi subie, sollicitant, dans les motifs seulement, la restitution du prix de cession et le paiement de dommages intérêts à chiffrer par expertise.

En ce qui concerne la rupture de confidentialité dont elle aurait bénéficié, la Société INC conclut dans le même sens que la SCIPA, à savoir que l'invention elle-même était divulguée depuis le 6 avril 1987, et que toutes les recherches étaient antérieures au contrat.

Elle se prévaut en toute hypothèse ici encore de sa bonne foi, dans la mesure où le contrat de copropriété du brevet n'avait pas fait l'objet d'une publicité, et qu'elle ignorait donc un droit quelconque de la Société HORPHAG sur la part de copropriété de la Société SCIPA.

La Société INC ajoute que l'existence d'un contrat de licence entre la Société HORPHAG et la Société HOLLAND HEALTH, laquelle n'était pas animée par Monsieur SCHWITTERS, est dès lors sans aucune incidence.

Enfin, elle soutient que le préjudice allégué par la Société HORPHAG n'est aucunement démontré.

A titre reconventionnel, chacune des Sociétés INC réclame en conséquence le versement d'une somme de 1 000 000,00 Frs à titre de dommages intérêts pour procédure abusive et vexatoire, des mesures de publication du jugement, l'exécution provisoire de celui-ci, et la condamnation de la Société HORPHAG à leur verser à chacune une somme de 150 000,00 Frs par application de l'article 700 du N.C.P.C.

Par conclusions du 10 décembre 1996, la Société HORPHAG a néanmoins maintenu l'intégralité de ses prétentions, s'opposant à toutes les demandes reconventionnelles, et insistant sur l'exercice de son droit de préemption pour le prix symbolique de 1 Fr.

Elle resitue à nouveau le litige dans son contexte, à savoir un partage du marché avec la SCIPA, que celle-ci tenterait de remettre en cause depuis 1990, en

commercialisant par l'intermédiaire de Monsieur SCHWITTERS
et de la Société INC un autre produit, extrait de pépins
de raisin, et en entretenant une confusion sur le nom, afin
de faire apparaître ce produit comme le seul valable,
s'appropriant ainsi les efforts d'HORPHAG développés depuis
1971.

La Société HORPHAG reprend par ailleurs, en les
développant, les mêmes axes de raisonnement que
précédemment par rapport à la loi applicable au contrat de
recherche et au contrat de cession. Elle conteste cependant
que la loi française permette à la Société SCIPA d'exercer
son droit de repentir, en l'absence de toute notification
du projet de cession, et s'oppose tant à l'annulation des
contrats par elle consentis à des tiers, lesquels ne
seraient en définitive que l'application des contrats
conclus avec le CEP en 1982 et 1986, qu'à l'exercice du
droit de préemption de la SCIPA.

En ce qui concerne la concurrence résultant de
l'introduction de la Société INC sur le marché américain,
la Société HORPHAG relève que si elle dispose d'une
exclusivité dans le monde entier pour les extraits d'écorce
de pin, il n'en demeure pas moins qu'en qualité de
propriétaire de la moitié du brevet la Société INC peut
maintenant l'exploiter librement pour tous les extraits de
plantes, sans se limiter à ceux de pépin de raisin.

Enfin, selon la Société HORPHAG, la SCIPA nierait son
rôle de façon incohérente, au point qu'aucune raison ne
pourrait plus être trouvée pour expliquer que le brevet ait
été déposé en copropriété, et que le contrat de recherche
ait été signé.

La Société HORPHAG maintient avoir joué un rôle
déterminant dans la recherche et la mise au point du
PYCNOGENOL, en tant que produit de confort, et non en tant
que médicament, ce dont il n'aurait jamais été question sur
le marché américain.

Par conclusions du 11 décembre 1996, les Sociétés INC
ont à leur tour maintenu les termes de leurs précédentes
écritures, critiquant les explications de la Société
HORPHAG qu'elles qualifient d'erronées en fait et de mal
fondées en droit.

Le 7 janvier 1997, la Société HORPHAG a de nouveau
maintenu les termes de ses précédentes conclusions,
observant, en réplique aux Sociétés INC que celles-ci
s'acharnent à interpréter les relations contractuelles
entre elle-même et la SCIPA, alors qu'elles n'y sont pas
parties, et relevant par ailleurs, dans leurs écritures,
plusieurs contre-vérités.

Enfin, la SCIPA et les consorts MASQUELIER, MICHAUD,
BARRAUD ont répondu le 8 janvier 1997 aux conclusions de
la Société HORPHAG du 10 décembre 1996, en réitérant leur
position antérieure sur les différents points du litige.

Ils insistent notamment sur le fait qu'en cédant sa
quote-part de brevet à la Société INC, la SCIPA n'a
transgressé aucune obligation à l'égard de la Société

10

D 00 9504

HORPHAG, et ils estiment que l'introduction d'un concurrent sur le marché américain n'a rien de répréhensible, compte tenu du principe de la liberté du commerce et de l'industrie.

L'ordonnance de clôture a été rendue le 9 janvier 1997.
Le 14 février 1997, la Société HORPHAG a fait parvenir au Tribunal une note en délibéré dont la Société SCIPA et la Société INC ont demandé le rejet les 21 et 27 février 1997.

**DECISION**

La note en délibéré communiquée par la Société HORPHAG doit effectivement être rejetée, puisque les conditions auxquelles l'article 445 du N.C.P.C. en subordonne l'admission ne sont pas réunies.

\* \* \*

**SUR L'IRRECEVABILITE DE L'ACTION A L'ENCONTRE DE LA SOCIETE DE DROIT HOLLANDAIS INC AGENCY BV**

Il résulte de l'acte de cession de brevet du 18 mars 1994 que la SCIPA a cédé sa quote-part à la Société INC, société du LICHTENSTEIN, dont le siège est à VADUZ.
La Société de droit Hollandais INC, dont le siège est à NIGTEVECHT, aux PAYS-BAS, n'est donc aucunement concernée par le litige, puisqu'au delà de la personne physique de son dirigeant, il s'agit d'une personne morale différente.
La Société HORPHAG sera donc déclarée irrecevable à agir à son encontre.

**SUR L'IRRECEVABILITE DE LA SOCIETE HORPHAG RESEARCH SOULEVEE PAR LA SCIPA LE 27 MARS 1996**

Après que la Société HORPHAG RESEARCH ait justifié de la fusion intervenue le 18 septembre 1990 avec la Société HORPHAG OVERSEAS, la SCIPA n'a plus maintenu ses conclusions d'irrecevabilité fondées sur le défaut d'intérêt à agir, au motif qu'il n'aurait pas été établi qu'HORPHAG RESEARCH était copropriétaire du brevet.
Il lui en sera donné acte, et il sera ultérieurement statué sur l'éventuelle nullité de l'apport de la quote-part de brevet, soulevée par la SCIPA dans le cas où la loi française serait déclarée applicable aux relations des parties.

**SUR LE DROIT APPLICABLE A LA CESSION DU BREVET**

Dans la mesure où le brevet 360 a été déposé aux ETATS UNIS, la loi américaine s'applique nécessairement aux conditions de forme, à la procédure de délivrance, aux formalités de publicité ainsi qu'à la possibilité et à la licéité du principe de cession.

D 00 9505

Mais la loi applicable aux contrats intéressant le brevet n'est pas nécessairement la loi du pays de protection, car c'est alors l'autonomie de la volonté des parties qui retrouve sa primauté.

En conséquence, l'acte du 18 mars 1994 est, dans sa forme, conforme à la loi américaine, puisqu'il devait notamment être soumis à publicité aux ETATS UNIS, de même d'ailleurs que l'acte de cession d'invention du 1er avril 1985, sans que cela affecte les règles de fond régissant les rapports des parties. Et les parties intéressées à la cession sont non seulement la SCIPA et la Société INC mais aussi la Société HORPHAG, à laquelle la rédaction de l'acte selon la loi américaine ne peut être opposée comme preuve de l'application de cette loi puisqu'elle n'y est pas intervenue.

Au contraire, c'est uniquement dans les relations d'affaires ayant existé entre la Société HORPHAG et la Société SCIPA que la solution doit être recherchée.

Il convient tout d'abord d'analyser les différents contrats qui ont été signés entre la Société INTERHORPHAG, puis la Société HORPHAG OVERSEAS aux droits de laquelle se trouve la Société HORPHAG RESEARCH, et la Société SCIPA ou le CEP, lesquels sont manifestement des sociétés très proches, par leurs membres et leur objet, même s'il s'agit de personnes morales différentes.

Les contrats de 1971, 1982 et 1986 permettent en effet de caractériser un contexte général, même si l'intention des parties stricto-sensu ne peut en être déduite de façon péremptoire.

Le contrat du mois de février 1971, conclu pour 10 ans, intitulé contrat de vente à la commission accordait à la Société INTERHORPHAG l'exclusivité du droit de vendre dans les pays autres que la FRANCE un produit dont il n'est pas contesté qu'il était de même nature que celui qui sera ultérieurement appelé PYCNOGENOL. Les signataires avaient leur siège social en FRANCE en ce qui concerne le CEP et en SUISSE pour INTERHORPHAG. Il a été expressément stipulé que le contrat serait régi par la loi française et que toutes les difficultés seraient soumises aux Tribunaux de BORDEAUX.

Le contrat de 1982 s'intitule à nouveau contrat de vente à la commission, avec la mention "modificatif faisant suite au contrat des 10 et 12 février 1971", bien qu'il soit consenti par le CEP à la Société HORPHAG OVERSEAS.

Cette dernière reçoit mandat exclusif de vendre pour son compte, en qualité de commissionnaire, le produit dénommé OLIGOMERES PROCYANIDOLIQUES, toujours basé sur le même principe actif. Le contrat a une durée de 10 ans, avec tacite reconduction pour une durée égale, sauf dénonciation, et il s'applique à tous les pays autres que la FRANCE, avec la même stipulation néanmoins d'application de la loi française et de compétence des Tribunaux de BORDEAUX.

Enfin, le contrat de 1986 associe au CEP et à HORPHAG OVERSEAS la Société DRT, rappelant les contrats de 1971 et 1982, confiant à la DRT l'exclusivité de la fourniture des

D 00 9506

PROCYANIDINES de pin destinées aux clients d'HORPHAG, et prévoyant à nouveau l'application de la loi française, outre la compétence des Tribunaux français.

Il apparait, à ce stade, que le CEP choisit sa loi nationale pour régir les contrats qu'il consent.

Le contrat des 26 et 29 avril 1985 est quant à lui conclu entre les parties stricto sensu.

Il est clairement énoncé que la SCIPA a acquis une grande expérience dans la recherche des procédés d'obtention d'extraits végétaux, et que la Société HORPHAG de son côté, bénéficie d'un réseau de relations commerciales international de sorte que les parties décident d'unir leurs efforts et de mettre en commun leurs moyens, pour intensifier les recherches et réaliser la promotion des produits.

Les parties ont en outre prévu, selon une modalité habituelle des contrats de recherche, l'éventualité d'une demande de brevet d'application, déposé à leurs noms indivisément.

Dans le cas de cession ou de concession des droits de propriété industrielle issus du contrat, elles ont également décidé que les produits seraient partagés en parts égales entre elles.

Le contrat est conclu pour une durée de 5 ans avec tacite reconduction, sauf dénonciation de la collaboration 6 mois avant l'expiration de chaque période.

Aucune référence n'est faite à la loi applicable.

Il y a lieu néanmoins de relever :



- que compétence exclusive est attribuée aux Tribunaux de BORDEAUX,

- que les recherches effectuées par la SCIPA, Société française, ont vocation à s'effectuer en FRANCE,

- que la partie dénommée "le donneur" est la SCIPA,

- que le seul caractère international résulte de la mention du réseau de relations commerciales international de la Société HORPHAG, mais que pour autant il n'est fait aucune référence particulière aux ETATS UNIS.

Dans ces conditions, il n'existe aucun critère de rattachement de ce contrat à la loi américaine, pas plus qu'à n'importe quel autre loi étrangère, et il apparait que la seule loi applicable est la loi française, mise en oeuvre par les Tribunaux français.

En ce qui concerne le brevet en cause, la lettre du 7 mai 1985, à entête de la loi française, confirme de façon tout à fait nette que "l'accord de coopération signé les 26 et 29 avril entre HORPHAG OVERSEAS et la SCIPA prend effet dès le 1er avril 1985 et concerne bien la demande de brevet du 9 avril." Le 1er avril 1985 est d'ailleurs la date de l'acte de cession d'invention par Monsieur MASQUELIER.

Dès lors, le brevet 360 est bien soumis au contrat de recherche, dont il constitue une modalité et dont il fait

D 00 9507

partie intégrante, de sorte qu'au delà des questions de forme et de procédure, il apparaît que les parties n'ont pas entendu dissocier le régime du brevet de celui de leurs autres relations contractuelles.

De plus, un nouveau courrier à entête de la SCIPA du 24 juillet 1987 vient confirmer l'intention des parties en ces termes : "nous vous rappelons que le brevet U.S a été pris conjointement... en conséquence, aucune transaction ne peut être effectuée par un seul des copropriétaires, au risque de nullité de l'opération." Il s'agit bien d'un rappel et non d'une demande d'accord. Ce sont des affirmations et non des interrogations. Une réponse de la Société HORPHAG était donc tout à fait inutile.

Le Tribunal ne peut donc nier l'existence de tous ces indices objectifs pour appliquer la seule loi du lieu de dépôt du brevet, laquelle érige en principe la liberté de cession, ce qui n'a manifestement pas été voulu par les parties au moment de la signature des conventions et du dépôt du brevet.

C'est au contraire, dans un cadre de relations contractuelles régi par la loi française, un mécanisme conforme à cette loi que les parties ont envisagé pour organiser la copropriété du brevet quant à sa cession.

L'article L 613-29 e du Code de la Propriété Intellectuelle sera donc déclaré applicable.

De plus, il convient de relever que la loi américaine réserve expressément tout accord contraire des parties. Or en l'espèce, il existe bien un accord restreignant la liberté de cession du brevet et la sanction encourue par la SCIPA pour n'avoir pas consulté la Société HORPHAG aurait été la même.

## SUR LA NULLITE DE LA CESSION DE BREVET PAR LA SCIPA A LA SOCIETE INC

Dans la mesure où la Société HORPHAG n'a pas été mise en mesure d'exercer son droit de préemption, la nullité de la cession doit être prononcée, sans que la bonne foi éventuelle de la Société INC ait une incidence, car celle-ci est insusceptible de rendre la cession opposable aux propriétaires dont les droits ont été méconnus. 

En outre, il est certain que la Société INC est un concurrent de la Société HORPHAG ce que la Société SCIPA reconnait expressément dans ses écritures en se prévalant de la liberté de commerce et de l'industrie. Mais en l'espèce, il s'agit d'une concurrence organisée déloyalement, car la copropriété du même brevet n'est pas destinée de façon générale à être partagée entre des concurrents, et en toute hypothèse, telle n'a pas été l'intention des parties puisqu'elles avaient au contraire stipulé une obligation de confidentialité en ce qui concerne les innovations réalisées, et s'interdisaient toutes transactions sur le brevet sans l'accord de l'autre.

Quelque soit les motifs de la dégradation de leurs relations, la SCIPA, dans ses rapports avec HORPHAG, ne pouvait s'arroger le droit de disposer seule de sa quote

D 00 9508

part de brevet dans le cadre de sa stratégie de "changement de cheval" mais devait s'en tenir aux procédures contractuelles et notamment mettre la Société HORPHAG en demeure de respecter ses obligations et dénoncer les contrats à leur échéance, ce qui n'a jamais été fait.

Pour tenter d'éviter la nullité de la cession par elle consentie , la SCIPA soulève la nullité de la cession de brevet qui serait intervenue entre la Société HORPHAG OVERSEAS et la Société HORPHAG RESEARCH à l'occasion de la fusion du 18 septembre 1990, et déclare exercer son droit de préemption.

Ce point sera donc maintenant examiné.

## SUR LA NULLITE DES EFFETS DE LA FUSION RELATIVEMENT A LA CESSION DU BREVET 360

Cette demande est reprise par la Société INC qui se prévaut de l'inobservation des droits de copropriété de la SCIPA.

Ainsi que le relève la Société HORPHAG dans ses conclusions du 7 janvier 1997, seule la SCIPA a qualité pour invoquer l'éventuelle non respect de son droit de préemption, dans la mesure où le régime légal de l'article L 613-29 du CPI n'est pas d'ordre public et a un caractère supplétif.

Sur le fond, il est à remarquer que le mécanisme de l'opération de fusion n'est pas juridiquement une cession. La personne morale propriétaire du brevet est en effet absorbée par une Société à laquelle elle fait apport de tout son patrimoine, en en devenant partie intégrante, mais à laquelle elle ne cède rien. La loi française en matière de brevet ne comporte aucune règle particulière régissant l'apport du brevet en même temps que tout le patrimoine de l'apporteur.

En outre, les dispositions de l'article L 613-29 du CPI ont pour but d'éviter l'introduction de tout tiers étranger au brevet sans l'accord des parties. En l'espèce, INTERHORPHAG, HORPHAG OVERSEAS et HORPHAG RESEARCH constituent une sorte de polymorphisme de la Société HORPHAG, à laquelle la SCIPA envoie notamment son courrier du 2 mars 1994 pour demander des comptes, sans préciser s'il s'agit de l'une ou de l'autre. De plus, ainsi que le relèvent les défendeurs ces sociétés sont toutes "animées" par Monsieur HAIMOFF et le brevet n'a pas été transmis à un tiers étranger. Les dispositions de l'article L 613-29 du CPI n'ont pas vocation en conséquence à s'appliquer à l'opération de fusion en cause, laquelle constitue en réalité une restructuration interne.

## SUR LE DROIT DE PREEMPTION DE LA SOCIETE HORPHAG ET SUR LE DROIT DE REPENTIR DE LA SOCIETE SCIPA

En raison de l'annulation de la cession consentie à la Société INC, la SCIPA est redevenue propriétaire de sa quote part. Dès lors il n'y a plus ni cession ni projet de cession, et il n'y a pas lieu à droit de repentir ni a

15

droit de préemption. C'est d'ailleurs le sens du jugement du Tribunal de Grande Instance de PARIS du 11 janvier 1995, que toutes les parties invoquent en en faisant une interprétation inexacte.

## SUR LA NULLITE DES CONTRATS CONSENTIS PAR LA SOCIETE HORPHAG A DES TIERS ET LE DROIT DE PREEMPTION DE LA SCIPA A CE TITRE

Il sera tout d'abord jugé que seuls les contrats ayant pour objet le produit issu du procédé breveté sont susceptibles d'être critiqués par les défendeurs, à l'exclusion des contrats de licence de marque. En effet, contrairement à ce qu'ils soutiennent, le contrat de recherche de 1985 ne s'applique aucunement à la marque PYCNOGENOL, et d'ailleurs cette dénomination n'est même pas mentionnée. Les seuls droits de propriété industrielle que les parties ont entendu organiser concernent les brevets et les innovations scientifiques.

De plus, la marque PYCNOGNEOL a été déposée, notamment aux ETATS UNIS, par la Société HORPHAG OVERSEAS, avec déclaration de premier usage au 22 décembre 1987, et en l'état actuel, la société demanderesse en est toujours propriétaire puisque les diverses démarches entreprises par Monsieur MASQUELIER ou par ses sociétés n'ont pas abouti.

Enfin la SCERPA, gérée par Monsieur MASQUELIER, a déposé la marque PYCNOGENOL en FRANCE, mais aucun des contrats en cause ne concerne la FRANCE.

Il convient en outre de rappeler que la seule question à trancher est celle de la validité des contrats, car dans le cas où ils seraient nuls, il n'y aurait plus, pour les raisons ci-dessus indiquées, lieu à droit de préemption au profit de la SCIPA.

Enfin, bien que la Société HORPHAG ne le relève pas, il apparait que l'absence aux débats de ces co-contractants seraient de nature à constituer un obstacle au prononcé de la nullité des contrats, à la supposer justifiée.

Sur ce dernier point, il convient tout d'abord d'observer que l'annulation de contrats résiliés est sans objet, et dépourvue de tout intérêt. Tel est le cas du contrat PMI, conclu le 29 janvier 1988 et résilié le 20 septembre 1989 et du contrat HOLLAND HEALTH, conclu le 28 juin 1990 et résilié au mois d'août de la même année.

En outre, il résulte des contrats de 1971, 1982 et 1986, ce dernier étant postérieur au contrat de recherche, que la Société HORPHAG bénéficiait, et bénéficie toujours à défaut de dénonciation des contrats, d'une exclusivité de commercialisation du produit extrait de l'écorce de pin, pour le monde entier, sauf la FRANCE. La signature des contrats litigieux s'insère donc dans l'exécution de la mission qui lui a été confiée, et la SCIPA ne pouvait ignorer que la Société HORPHAG était liée par contrat à différents distributeurs, en raison de ses liens avec le CEP, outre que la promotion commerciale était l'un des motifs du contrat de recherche. D'ailleurs, la SCIPA reconnait explicitement l'exclusivité de commercialisation

D 00 9510

dont bénéficiait la Société HORPHAG, puisqu'elle légitime de cette façon le contrat conclu entre le CEP et la Société HOLLAND HEALTH, sans avoir avisé la Société HORPHAG, (ce qui confirme une certaine confusion de fait entre ces personnes morales différentes) au motif que seuls sont concernés par ce contrat les extraits de pépins de raisin. Il y a lieu pourtant de relever que la Société HORPHAG est copropriétaire d'un brevet relatif à un procédé applicable à toutes sortes d'extraits de plantes, et qu'en ce qui la concerne, elle n'a consenti ni à la SCIPA ni au CEP le droit d'exploiter toute ou partie de ce brevet.

En ce qui concerne plus particulièrement le contrat TAAG, il apparait, au vu de la lettre de la SCIPA du 21 février 1994, que celle-ci agréé elle-même la Société TAAG comme distributeur du produit, ce qui lui interdit de critiquer le contrat signé par la Société HORPHAG.

Quant au contrat conclu avec la Société MW INTERNATIONAL, il se présente plutôt comme un contrat d'agent exclusif, puisque cette société est décrite comme l'importateur et le distributeur aux ETATS UNIS du produit, certes breveté, mais fabriqué par la Société HORPHAG. De plus, ce contrat ne s'applique qu'aux extraits d'écorce de pin, domaine concédé en exclusivité à la Société HORPHAG.

Enfin, la lettre de la SCIPA du 2 mars 1994 confirme sa connaissance de l'existence des contrats, dont elle ne soulève aucunement l'irrégularité éventuelle, se bornant à demander des comptes sur les redevances encaissées.

La SCIPA et les consorts MASQUELIER, BARRAUD, MICHAUD seront donc déboutés de leur demande d'annulation des contrats, et c'est la question des redevances qui sera maintenant examinée.

## SUR LA DEMANDE EN PAIEMENT DU FAIT DES CONTRATS SIGNES PAR LA SOCIETE HORPHAG

Il convient à nouveau de rappeler que la marque PYCNOGENOL appartient en l'état à la Société HORPHAG pour ce qui concerne les ETATS UNIS notamment, et que l'éventuelle concession du droit d'utiliser cette marque à la Société PMI et à la Société HOLLAND HEALTH n'est pas susceptible d'ouvrir un droit quelconque au profit de la SCIPA.

Pour ce qui est des contrats relatifs à la commercialisation des produits brevetés, il est certain que les sommes perçues par le CEP ne peuvent être considérées comme constituant le partage par moitié, avec la SCIPA, des revenus tirés de la concession des droits de propriété industrielle, tel que définis par le contrat de recherche. Le CEP est en effet une personne morale différente et surtout, les sommes par lui perçues ont une origine contractuelle et une cause différente.

En revanche, le Tribunal ne peut que constater que la SCIPA a attendu le mois de mars 1994 pour s'aviser de ce qu'elle ne recevait aucune somme de la part de la Société HORPHAG alors que le brevet a été obtenu en 1987 et qu'elle savait que la Société HORPHAG commercialisait le produit.

17

D 00 9511

En réalité, ici encore, il y a lieu de se référer aux contrats accordant à la Société HORPHAG la commercialisation exclusive des extraits d'écorce de pin, sauf en FRANCE, lesquels lui laissaient la charge de ses diligences, mais aussi les bénéfices, y compris d'ailleurs une commission due par le CEP.

D'ailleurs, ce dernier, avec l'accord manifeste de la SCIPA, a consenti lui-même le droit d'exploiter le brevet en ce qui concerne les pépins de raisin à la Société HOLLAND HEALTH, sans proposer un partage quelconque à la Société HORPHAG, copropriétaire du brevet.

La SCIPA et les consorts MASQUELIER, MICHAUD, BARRAUD seront donc déboutés de toutes leurs demandes de ce chef.

## SUR LE PREJUDICE SUBI PAR LA SOCIETE HORPHAG DU FAIT DE LA CESSION DU BREVET

A titre préliminaire, il convient d'indiquer que si la Société HORPHAG a réalisé des investissements au titre de la recherche et de la commercialisation du produit breveté, elle en a également perçu les fruits, ainsi que cela vient d'être examiné ci-dessus, au titre des contrats de distribution.

Il convient de rappeler également que la cession de sa quote-part par la SCIPA ne l'a pas totalement évincée, puisqu'en toute hypothèse elle a toujours conservé sa part de propriété indivise, et son droit d'exploiter le brevet à ce titre. Les sommes investies ne sont donc nullement perdues. Il apparait d'ailleurs, au vu notamment du contrat INDENA du 16 octobre 1996 que la Société HORPHAG continue de concéder des droits d'exploitation.

En outre, la Société HORPHAG ne justifie aucunement de la somme de 10 000 000,00 Frs réclamée à titre de provision, dont la détermination apparait, au terme même de ses écritures, assez arbitraire.

La lettre du Professeur ROHDEWALD, selon laquelle il administrerait un budget approximatif de 500 000,00 Frs par an pour la recherche mondiale sur le PYCNOGENOL est loin de prouver le préjudice allégué par la Société HORPHAG.

Quant au courrier de la CORESA du 13 juin 1996, il fait apparaître, en francs suisses, un budget de recherche et de développement de 1 05 477,00 Frs de 1990 à 1995, mais d'une part sans conversion, et d'autre part de façon globale et indifférenciée pour l'ensemble des activités de la Société HORPHAG dont il n'est pas allégué qu'elles se limitent au produit PYCNOGENOL.

Enfin la Société HORPHAG ne justifie aucunement, depuis la cession du brevet, et en relation avec cette cession, d'une diminution quelconque de son chiffre d'affaires sur le PYCNOGENOL.

Quant à la rupture de la confidentialité, il est certain que le procédé d'obtention du produit a été rendu public du fait même du dépôt du brevet. Quant aux innovations non contenues dans le brevet, dont la divulgation pourrait être critiquable, il faudrait que la Société HORPHAG établisse l'existence d'éléments nouveaux,

18

D 00 9512

non connus, auxquels la Société INC aurait eu accès, ce qu'elle ne fait pas. Elle ne démontre donc pas la violation de l'obligation de confidentialité contenue dans le contrat de recherche.

Dans ces conditions, la seule importance de la somme réclamée ne peut constituer une preuve suffisante du préjudice financier, et la Société HORPHAG sera déboutée à la fois de sa demande de provision et de sa demande d'expertise.

SUR LE PREJUDICE MORAL DE LA SOCIETE HORPHAG

Il est avéré que la SCIPA notamment à la suite du dépôt de la marque PYCNOGENOL par la Société HORPHAG, a souhaité changer de partenaire, sans se soucier des conventions antérieures, et sans aucun avertissement préalable. Elle s'est comportée en fait comme seule propriétaire du brevet, expliquant dans le cadre même de la présente instance, que celui-ci ne devait rien à la Société HORPHAG, ce qui est totalement inopérant, en présence du contrat de recherche et du dépôt de brevet en commun. En outre, il est certain qu'à l'époque de ces accords, la SCIPA avait un intérêt à traiter avec la Société HORPHAG, car dans le cas contraire, il serait difficile d'expliquer pourquoi elle l'a fait, et d'ailleurs, elle ne l'explique pas . De plus, par le biais du CEP, la Société HORPHAG n'était pas un partenaire nouveau dont elle n'aurait découvert que trop tard l'inefficacité.

Les termes de différentes lettres figurant au dossier sont d'ailleurs tout à fait révélateurs de son attitude.

C'est ainsi que par lettre -circulaire du 21 février 1994, adressée aux distributeurs américains de produits diététiques, à entête de la SCIPA, Monsieur MASQUELIER indique être l'auteur du brevet, alors qu'il est plutôt l'auteur de l'invention, ajoutant qu'il a toujours maintenu des droits incontestables sur ce brevet avec plein pouvoir de concéder à d'autres des licences leur permettant d'utiliser l'invention ce qui le rend d'autant plus malvenu à critiquer les contrats signés par la Société HORPHAG, et qu'il a décidé de céder ses droits à son ami Monsieur BERT SCHWITTERS, le tout sans mentionner l'existence de la Société HORPHAG et ses droits concurrents.

Cette circulaire a été précédée d'une lettre ouverte à l'industrie des produits diététiques, rédigée également par Monsieur MASQUELIER, au mois de mars 1991. Il y relate son rôle dans la mise au point du PYCNOGENOL, et sans citer le nom de la Société HORPHAG la qualifie de "partenaire commercial de l'époque" ce qui ne correspond pas à la réalité du dépôt du brevet en commun. Il explique en outre que son produit PYCNOGENOL ne sera distribué désormais que par la Société HOLLAND HEALTH. En ce qui concerne les autres entreprises qui en proposeraient, il indique qu'elles n'ont pas son autorisation et que leur produit ne jouit pas de son contrôle de qualité standard, ce qui est une violation des contrats de 1971, de 1982 et 1986.

Il s'agit en revanche de la conséquence du contrat

19

signé le 24 octobre 1990 et le 25 septembre 1990 entre le
CEP, représenté par Monsieur MASQUELIER, et la Société
HOLLAND HEALTH, accordant à cette dernière, après rappel
de divers brevets dont le brevet 360, raturé à un moment
non précisé, une licence de commercialisation des extraits
d'écorce de pin pour la FRANCE et des extraits de pépins
de raisin pour le monde entier, les uns et les autres étant
constitués d'OLIGOMERES PROANTHOCYANIDOLIQUES.

        Il résulte en outre de l'ensemble de ces documents que
les produits en cause sont qualifiés de compléments
alimentaires et diététiques et qu'il n'est pas question
d'un usage à titre de médicament, de sorte que la SCIPA ne
peut valablement reprocher à la Société HORPHAG de n'avoir
pas développé un marché de ce type, lequel n'était pas
l'objet des contrats.

        Le comportement de la SCIPA à l'égard de la Société
HORPHAG a donc bien été fautif, et les consorts MASQUELIER,
BARRAUD, MICHAUD, qui ne demandent pas leur mise hors de
cause à titre personnel, seront tenus in solidum avec elle
de la réparation du préjudice de la Société HORPHAG.

        En revanche, si la Société INC ne pouvait ignorer,
compte tenu des relations antérieures de Monsieur
SCHWITTERS tant avec la Société SCIPA qu'avec la Société
HORPHAG qu'il existait une copropriété sur le brevet, il
n'est pas établi qu'elle ait eu connaissance des accords
intervenus entre les deux sociétés propriétaires quant aux
modalités de cession éventuelle, et sa mauvaise foi n'est
pas caractérisée. A cet égard, il y a lieu de relever que
le prix de 1 fr n'est pas déterminant, puisque d'une part
d'autres contreparties non détaillées ont été néanmoins
stipulées, et que d'autre part la même formulation avait
été employée lors de la cession d'invention du 1er avril
1985.

        La somme de 5 000 000,00 Frs réclamée par la Société
HORPHAG n'est toutefois pas justifiée par les éléments
précis, et la réparation de son préjudice moral sera limité
à la somme de 200 000,00 Frs.

## SUR LA DEMANDE DE DOMMAGES ET INTERETS DE MONSIEUR MASQUELIER A TITRE PERSONNEL

        Dans la mesure où Monsieur MASQUELIER a choisi de
régler le différent l'opposant à la Société HORPHAG non par
les voies légales ou contractuelles, mais en tentant de se
réattribuer tous les droits sur le brevet 360 au motif
qu'il était l'inventeur du procédé, il ne peut valablement
solliciter réparation en raison de la riposte de la Société
HORPHAG, même si celle-ci n'a pas toujours été très
élégante. Les échanges de courriers tournent en effet à
l'agression réciproque, et Monsieur MASQUELIER n'a pas
épargné la Société HORPHAG ni Monsieur HAIMOFF de ses
remarques.

        Le seul point réellement critiquable concerne
l'allusion directe à la vie privée de Monsieur MASQUELIER,
contenue dans une lettre du 10 octobre 1990. Il lui sera
accordé de ce seul chef la somme de 10 000,00 Frs à titre

de dommages et intérêts.

## SUR LA GARANTIE SOLLICITEE PAR LA SOCIETE INC A L'ENCONTRE DE LA SOCIETE SCIPA

Il est évident que la Société INC subit une éviction dont son co-contractant lui doit garantie. Bien que cette demande ne figure que dans les motifs de ces écritures, la Société INC est bien fondée à réclamer la restitution du prix à son vendeur, soit en l'espèce la somme de 1 fr puisqu'en ce qui concerne les éventuelles autres contreparties, elles n'ont pas été précisées ni lors de la cession ni dans le cadre de la présente instance, et elles ne peuvent donc faire l'objet d'une condamnation quelconque.

quant au préjudice supplémentaire que lui causerait la nullité de la cession, la Société INC ne motive aucunement sa demande, et n'en caractérise pas les éléments ne serait-ce que dans leur principe, de sorte que sa demande d'expertise ne peut qu'être rejetée.

## SUR LA DEMANDE DE DOMMAGES INTERETS DES SOCIETES INC A L'ENCONTRE DE LA SOCIETE HORPHAG

L'action en nullité de la cession engagée par la Société HORPHAG est reconnue bien fondée, et elle ne peut donc constituer une action abusive et vexatoire à l'encontre de la Société cessionnaire, à savoir la Société INC de droit du LIECHTENSTEIN.

quant à la Société INC de droit hollandais, elle ne démontre ni que la Société HORPHAG ait agi à son encontre de mauvaise foi, ni qu'elle ait subi un préjudice quelconque.

Les demandes de dommages et intérêts de ces sociétés seront donc rejetées.

## SUR LES MESURES DE PUBLICITE

La mesure de publicité sollicitée par la Société HORPHAG constitue une réparation complémentaire et justifiée du préjudice par elle subi en raison de la cession irrégulière de ses droits par la SCIPA. Il y sera donc fait droit selon les modalités au dispositif.

## SUR L'EXECUTION PROVISOIRE

Compte tenu de la nature du litige, il n'apparait pas nécessaire d'ordonner l'exécution provisoire du jugement.

## SUR L'ARTICLE 700 DU N.C.P.C.

Il apparait équitable de condamner la SCIPA, in solidum avec Monsieur MASQUELIER, Monsieur BARRAUD, et Monsieur MICHAUD, parties condamnées aux dépens à l'exception de

D 00 0515

ceux afférents à l'assignation de la Société INC de droit
hollandais, à verser à la Société HORPHAG la somme de
30 000,00 frs sur le fondement de l'article 700 du N.C.P.C.
    En revanche il apparaît équitable de dispenser la
Société HORPHAG de toutes condamnations par application de
l'article 7010 du N.C.P.C. tant au profit de la Société INC
de droit hollandais qu'au profit de la Société INC de droit
du LIECHTENSTEIN.

# PAR CES MOTIFS

**LE TRIBUNAL,**

    Statuant publiquement contradictoirement et en premier
ressort,

- **ECARTE** des débats la note en délibéré de la Société
HORPHAG,

- **DECLARE** l'action de la Société HORPHAG irrecevable à
l'encontre de la Société INC de droit hollandais,

- **DONNE** acte à la SCIPA et aux consorts MASQUELIER,
MICHAUD, BARRAUD de se qu'ils n'ont pas maintenu
l'irrecevabilité de l'action de la Société HORPHAG
RESEARCH, après que celle-ci ait prouvé se trouver aux
droits de la Société HORPHAG OVERSEAS,

- **DECLARE** le droit français applicable à la cession du
brevet américain 360,

- **PRONONCE** la nullité de la cession par la SCIPA de sa
quote-part du brevet 360 au profit de la Société INC du
droit du LIECHTENSTEIN,

- **DEBOUTE** la Société SCIPA et les consorts MASQUELIER,
BARRAUD, MICHAUD de leurs demandes de nullité de la cession
du brevet intervenue entre la Société HORPHAG OVERSEAS et
la Société HORPHAG RESEARCH à l'occasion de leur fusion du
18 septembre 1990,

- **DIT** n'y avoir lieu à exercice par la Société HORPHAG de
son droit de préemption sur la quote-part de brevet
appartenant à la SCIPA,

- **DIT** n'y avoir lieu à exercice par la SCIPA de son droit
de repentir,

22

D 00 0516

- DEBOUTE la Société SCIPA et les consorts MASQUELIER, BARRAUD, MICHAUD de leur demande en nullité des contrats signés par la Société HORPHAG pour la distribution du produit breveté,

- DEBOUTE la Société SCIPA de sa demande en paiement de redevances au titre de ces contrats,

- DEBOUTE la Société HORPHAG de sa demande de provision et d'expertise en ce qui concerne la réparation de son préjudice financier,

- CONDAMNE in solidum la SCIPA et les consorts MASQUELIER, BARRAUD, MICHAUD à verser à la Société HORPHAG la somme de 200 000,00 Frs (deux cent mille francs) au titre de dommages et intérêts en réparation de son préjudice moral,

- DEBOUTE la Société HORPHAG de sa demande de ce chef à l'encontre des Sociétés INC,

- CONDAMNE la Société HORPHAG à verser à Monsieur MASQUELIER à titre personnel la somme de 10 000,00 Frs (dix mille francs) en réparation de son préjudice moral,

- DIT que la Société SCIPA doit garantir la Société INC de droit du LIECHTENSTEIN de l'éviction par elle subie à la suite de la nullité de la cession de la quote-part de brevet,

-CONDAMNE la Société SCIPA à la restitution du prix, soit la somme de 1 fr,

- DEBOUTE la Société INC de sa demande d'expertise pour l'évaluation de son préjudice,

- DEBOUTE la Société INC de droit du LIECHTENSTEIN et la Société INC de droit hollandais de leurs demandes de dommages et intérêts à l'encontre de la Société HORPHAG,

- ORDONNE la publication du présent jugement, au frais de la Société SCIPA, dans deux journaux nationaux ou spécialisés, au choix de la Société HORPHAG, tant en FRANCE qu'aux ETATS UNIS et au BENELUX, sans que le coût de chaque insertion puisse excéder 10 000,00 Frs (dix mille francs) français,

- DIT n'y avoir lieu à exécution provisoire du jugement,

- CONDAMNE in solidum la Société SCIPA et les consorts MASQUELIER, BARRAUD, MICHAUD à verser à la Société HORPHAG RESEARCH la somme de 30 000,00 Frs (trente mille francs) sur le fondement de l'article 700 du N.C.P.C.,

- DIT n'y avoir lieu à application de l'article 700 du N.C.P.C. au profit de la Société INC de droit du LIECHTENSTEIN ni au profit de la Société INC de droit

hollandais,

- **CONDAMNE** in solidum la Société SCIPA et les consorts
MASQUELIER, BARRAUD, MICHAUD aux dépens, à l'exception de
ceux afférents à l'assignation de la Société INC de droit
hollandais, lesquels resteront à la charge de la Société
HORPHAG RESEARCH,

- **AUTORISE** Me DE LESTRANGE, avocat à recouvrer directement
les dépens par application de l'article 699 du N.C.P.C.

D 00 9518