- 17 -

Attendu, en ce qui concerne l'objet du contrat, que le 1er avril 1985, Jack MASQUELIER a cédé aux sociétés SCIPA et HORPHAG OVERSEAS l'intégralité de ses droits, titres de propriété et intérêts portant sur la demande de brevet pour les Etats-Unis sous l'intitulé correspondant à ce qui allait devenir le brevet 360, et que le 9 avril 1985 les cessionnaires ont déposé, sous cet intitulé, aux Etats-Unis une demande de brevet qui allait aboutir à la délivrance du brevet 360 ; que pour autant, la convention des 26 et 29 avril 1985 est rédigée en termes généraux et ne contient aucune référence aux actes précités ; que par ailleurs, il convient de souligner qu'à l'époque de sa conclusion, la société HORPHAG OVERSEAS était en relation d'affaire avec la S.A.R.L. CENTRE D'EXPERIMENTATION PHARMACEUTIQUE (C.E.P.), créée le 23 juillet 1969 entre Jean LAPARRA, Jack MASQUELIER, Elian BARRAUD et Jean MICHAUD, qui lui avait consenti, par acte sous seing privé des 13 et 28 avril 1982, un contrat de vente à la commission lui donnant mandat exclusif de vendre dans tous les pays autres que la France des oligomères procyanidoliques ;

Attendu qu'il apparaît ainsi qu'à travers des personnes morales différentes, les mêmes acteurs économiques ont développé des relations contractuelles ayant pour but de commercialiser sur le marché mondial, à l'exception de la France, les extraits végétaux dont les propriétés et les modes d'obtention avaient été découverts par Jack MASQUELIER et ses associés ; que dans un tel contexte, l'objet du contrat des 26 et 29 avril 1985 ne saurait être réduit au seul brevet américain qui a effectivement été obtenu ; qu'au contraire, il s'induit nécessairement de la généralité de la rédaction de l'acte, en dépit de la demande de brevet qui venait d'être déposée aux Etats-Unis, que les parties n'ont pas entendu limiter leur convention à cette demande, mais que leur contrat était susceptible de s'appliquer à toute autre demande de brevet qui aurait pu être déposé dans une pays quelconque; qu'il s'ensuit que contrairement à ce qui est soutenu, l'objet du contrat ne constitue pas un critère en faveur de l'application de la loi américaine ;

Attendu que c'est en vain que les appelants critiquent ce raisonnement en se prévalant d'une lettre du 7 mai 1985, adressée par la société SCIPA à Charles HAIMOFF et confirmant que le contrat des 26 et 29 avril 1985 "concerne bien la demande de brevet n° 721434 du 9 avril" ; qu'en effet, si ce courrier confirme que cette demande était bien comprise dans le champ du contrat de recherche, il ne contient aucun élément permettant de limiter le contrat à ce seul objet ;

**D 0 11052**

- 18 -

Attendu, en ce qui concerne le comportement de la société HORPHAG, qu'à supposer que cette société n'ait pas respecté toutes les obligations résultant pour elle de l'application du droit français au contrat des 26 et 29 avril 1985, cette circonstance serait entachée d'équivoque, en ce sens qu'elle ne permettrait pas de déterminer si les actes incriminés auraient procédé de la volonté commune des parties de soumettre leur convention à la loi américaine ou si au contraire ils auraient constitué une violation par la société HORPHAG des obligations résultant de la loi française initialement choisie, violations intervenues dans un contexte de relations devenues conflictuelles entre les parties ; qu'il n'est donc pas possible de déterminer la loi applicable en considération des actes ainsi reprochés à l'intimée ;

Attendu, en ce qui concerne les autres critères invoqués par les appelants, que l'absence d'inscription du contrat des 26 et 29 avril 1985 auprès de l'Office Américain des Brevets va plutôt dans le sens de l'application d'une loi autre que la loi américaine ; que l'interprétation du contrat donnée par les conseils américains de la société HORPHAG dans le cadre de deux autres litiges existant aux Etats-Unis n'est pas opposable au juge français ; qu'enfin, à supposer que l'acte du 1er avril 1985 par lequel Jack MASQUELIER a cédé ses droits aux sociétés SCIPA et HORPHAG OVERSEAS ait été soumis au droit américain, rien n'aurait interdit aux cessionnaires, en vertu du principe de l'autonomie de la volonté, de soumettre leur copropriété de brevet à une autre loi ;

Attendu qu'il ressort de ce qui précède qu'aucun des critères proposés par les appelants en faveur de l'application de la loi américaine n'est pertinent ; qu'il apparaît même, au résultat de l'examen qui précède, que, comme l'a justement indiqué le Tribunal à la page 13 du jugement, il n'existe aucun critère de rattachement du contrat à la loi américaine, pas plus d'ailleurs qu'à n'importe quelle autre loi étrangère ;

Attendu en revanche qu'il existe de nombreux critères de rattachement au droit français que les premiers juges ont justement relevés, à savoir le fait que la convention est rédigée en langue française, le fait qu'elle comporte une clause d'attribution de compétence exclusive aux tribunaux de BORDEAUX, le fait que la partie dénommée "le donneur" est la société SCIPA, société de droit français, et le fait que les recherches inventives incombant à cette société ont vocation à être effectuées en France ;

D 0 11053

- 19 -

Attendu qu'à ces éléments, il convient d'ajouter le fait que ce contrat s'est inscrit dans des relations contractuelles antérieures et postérieures existants sinon entre les mêmes personnes juridiques du moins entre les mêmes acteurs économiques, relations qui se sont manifestées par trois conventions conclues respectivement les 10 et 12 février 1971 entre les sociétés C.E.P. et INTERHORPHAG, les 13 et 28 avril 1982 entre les sociétés C.E.P. et HORPHAG OVERSEAS, et le 3 octobre 1986 entre les sociétés D.R.T., C.E.P. et HORPHAG OVERSEAS ; que ces contrats, plus amplement analysés aux pages 12 et 13 du jugement, se sont succédés et ont eu pour but d'assurer le "développement commercial des procyanidines dans le Monde, à l'exclusion de la France", ainsi qu'il est précisé à la page 1 du dernier d'entre eux ; que cette mission de commercialisation a été confiée dans les trois cas à la société HORPHAG, sous ses deux dénominations successives ; qu'il convient de noter que dans chacun de ces actes, rédigés en langue française, il est indiqué que "de convention expresse il est stipulé que le présent contrat sera régi par la loi française", cette mention étant suivie d'une clause d'attribution de compétence aux tribunaux français ; qu'il apparaît ainsi que le contrat des 26 et 29 avril 1985 s'est inséré dans des relations contractuelles qui tendaient au même but économique général et que les parties avaient expressément choisi de soumettre à la loi française ;

Attendu enfin que c'est à juste titre que le Tribunal a retenu comme preuve de la volonté des parties une lettre de la société SCIPA du 24 juillet 1987, signée par Elian BARRAUD, et adressée à Charles HAIMOFF, ce courrier rappelant que "le brevet US" avait été pris conjointement par les société SCIPA et HORPHAG OVERSEAS, et indiquant qu'"en conséquence, aucune transaction ne peut être effectuée par un seul des copropriétaires, au risque de nullité de l'opération" ; que dans la mesure où la loi américaine pose le principe de la liberté de cession d'une quote-part de propriété d'un brevet indivis, une telle lettre, qui n'a suscité aucune protestation de la part de son destinataire dont il n'est pas contesté qu'il était le gérant de fait de la société HORPHAG OVERSEAS, a clairement manifesté la volonté des parties de soumettre la convention des 26 et 29 avril 1985 au droit français ;

Attendu que les appelants, qui critiquent l'analyse du Tribunal, soutiennent que la clause d'attribution de compétence aux juridictions de BORDEAUX ne saurait être un indice de la compétence législative en l'espèce, car elle a été prise pour des raisons pratiques; que cependant, ils ne fournissent aucune preuve à l'appui de cette affirmation, de sorte qu'il est possible de

D 0 11054

retenir l'existence de cette clause comme un indice d'application de la loi française ; que les appelants ajoutent que la nationalité de la société SCIPA est un critère "de peu de poids", dans la mesure où la société HORPHAG OVERSEAS était une société de droit anglais, représentée par un américain ; que toutefois, s'il est exact que la partie dénommée "le preneur" n'était pas de nationalité française, elle n'était pas pour autant une société de droit américain, et la nationalité de Charles HAIMOFF, qui la représentait lors de la conclusion du contrat de recherche en commun, n'est pas établie par les pièces versées aux débats ; que les appelants font encore valoir que le lieu des recherches incombant à la société SCIPA est également un argument de peu de poids, "dans la mesure où symétriquement la société HORPHAG avait l'exclusivité de la commercialisation des OPC pin maritime dans le monde entier, sauf en France" (conclusions de la société SCIPA du 17 novembre 1997, page 34) ; qu'il sera simplement répondu qu'il en était de même dans les trois contrats conclus en 1971, 1982 et 1986, et que les mêmes acteurs économiques ont néanmoins choisi de soumettre ces conventions au droit français, ainsi qu'il a été dit ; que les appelants prétendent enfin que la lettre de la société SCIPA du 24 juillet 1987 procéderait "d'une erreur de droit" (conclusions précitées, page 35) ; que cependant cette affirmation n'est pas crédible, dans la mesure où l'opinion exprimée dans cette lettre est en concordance avec tous les autres éléments du dossier ;

Attendu qu'il résulte de ce qui précède que les parties ont eu la volonté de soumettre leur copropriété de brevet à la loi française ; que dès lors, c'est cette loi qui s'applique à la cession de quote-part du 18 mars 1994, la loi américaine, loi de protection du titre, ne devant être prise en compte que pour apprécier la possibilité et la licéité de cette opération, mais non ses conditions qui relèvent de l'autonomie de la volonté des parties ; qu'il y a donc lieu de confirmer le jugement en ce qu'il a dit le droit français applicable à la cession du brevet américain 360 ;

c) sur la nullité de la cession du 18 mars 1994:

Attendu que le selon l'article L.613-29-e du Code de la Propriété Intellectuelle, qui régit la copropriété des brevets, "chaque copropriétaire peut, à tout moment, céder sa quote-part. Les copropriétaires disposent d'un droit de préemption pendant un délai de trois mois à compter de la notification du projet de cession" ;

D 0 11055

- 21 -

Attendu en l'espèce qu'il n'est pas contesté que la société SCIPA a cédé sa quote-part du brevet 360 à l'insu de la société HORPHAG RESEARCH, qui n'a donc pas été mise en mesure d'exercer son droit de préemption ; que c'est donc à bon droit que le Tribunal a prononcé la nullité de cette cession ; qu'il convient de confirmer sa décision sur ce point ;

Attendu que les sociétés I.N.C. contestent la possibilité pour le juge français de prononcer la nullité de la cession du 18 mars 1994, au motif que le contrat des 26 et 29 avril 1985 n'ayant pas été inscrit auprès de l'Office Américain des Brevets, il était inopposable au tiers acquéreur de bonne foi qu'était en l'espèce la société I.N.C. de droit du Liechtenstein ; que toutefois, en cette matière, la bonne foi de cessionnaire ne saurait avoir pour effet de rendre une cession irrégulière opposable au copropriétaire dont les droits ont été méconnus ; qu'en outre, la société I.N.C. du droit du Liechtenstein, qui à la lecture du brevet 360 et de l'acte du 18 mars 1994 ne pouvait ignorer qu'elle n'acquérait qu'une quote-part du brevet et que l'autre copropriétaire était un de ses principaux concurrents sur le marché américain, et qui savait par ailleurs que son cédant ne traitait plus avec ce copropriétaire depuis l'année 1990, date à laquelle une vive mésentente s'était installée entre eux, mais qu'il avait passé de nouveaux contrats avec une société de droit hollandais, dénommée HOLLAND HEALTH, qui relevait du même groupe qu'elle, ne peut sérieusement prétendre qu'elle a participé à la cession du 18 mars 1994 "en toute bonne foi" ; qu'il s'ensuit que son moyen n'est pas fondé ;

d) sur la demande d'exercice du droit de préemption :

Attendu que c'est avec raison que le Tribunal a inqué qu'en raison de l'annulation de la cession du 18 mars 1994, la société SCIPA redevenait propriétaire de sa quote-part et que les parties étant remplacées dans leur situation initiale, antérieure à la cession, il n'y avait plus lieu à exercice du droit de préemption du copropriétaire dont les droits avaient été méconnus, ni d'ailleurs à exercice du droit de repentir de la partie qui avait cédé sa part irrégulièrement ; qu'il convient en conséquence de confirmer le jugement en ce qu'il a dit n'y avoir lieu à l'exercice de ces droits ;

D 0 11056

- 22 -

C) Sur la demande d'annulation de l'acte de cession du 10 octobre 1996 :

a) sur la recevabilité :

Attendu que les appelants concluent à l'irrecevabilité, sur le fondement de l'article 564 du Nouveau Code de Procédure Civile, de la demande d'annulation de la cession du 10 octobre 1996 présentée pour la première fois en cause d'appel par la société HORPHAG RESEARCH, en faisant valoir que l'acte du 10 octobre 1996 ne constitue ni la survenance, ni la révélation d'un fait au sens du texte précité, car il a été conclu et publié à l'Office Américain des Brevets antérieurement au jugement ;

Attendu que selon l'article 564 du Nouveau Code de Procédure Civile, "les parties ne peuvent soumettre à la Cour de nouvelles prétentions, si ce n'est pour (...) faire juger les questions nées (...) de la survenance ou de la révélation d'un fait" ;

Attendu en l'espèce que s'il est exact que l'acte litigieux a été conclu le 10 octobre 1996 et qu'il a fait l'objet d'une mesure de publicité le 30 octobre 1996, c'est à dire antérieurement au jugement, il n'en demeure pas moins que la société HORPHAG RESEARCH, qui n'a pas été avisée de cette publication réalisée aux Etats-Unis, n'a disposé que d'un délai très bref, d'un peu plus de deux mois, pour s'en apercevoir par elle-même avant le prononcé de l'ordonnance de clôture qui a eu lieu le 9 janvier 1997 devant le Tribunal ; que surtout, il convient de souligner qu'en première instance, les défendeurs se sont abstenus d'invoquer cette pièce, mais que le 27 mars 1997, soit deux jours après le prononcé du jugement, la société I.N.C. de droit du Liechtenstein a publié dans la presse spécialisée aux Etats-Unis un communiqué dans lequel elle y a fait allusion pour tenter de minimiser la portée de la décision de justice française, en donnant à penser qu'elle avait acquis ou qu'elle était susceptible d'acquérir de Jack MASQUELIER la totalité des droits portant sur le brevet 360 ; que ce faisant, elle a utilisé la pièce en question de manière déloyale ; que dès lors il y a lieu de considérer que le communiqué du 27 mars 1997 a bien constitué la révélation d'un fait au sens de l'article 564 du Nouveau Code de Procédure Civile, et de déclarer l'intimée recevable en sa demande d'annulation ;

- 23 -

b) sur le fond :

Attendu que la société HORPHAG RESEARCH soutient qu'en concluant l'acte du 10 octobre 1996, Jack MASQUELIER a violé les règles relatives à la copropriété d'un brevet puisqu'il a cédé des droits qui ne lui appartenaient pas ; qu'elle ajoute que la passation de cet acte, sa dissimulation en première instance, et l'usage qui en a été fait après le prononcé du jugement caractérisent des manoeuvres destinées à la déposséder de ses droits sur le brevet 360 ; qu'elle s'estime en conséquence fondée, non seulement à faire prononcer la nullité de l'acte, mais encore à faire jouer son droit de préemption sur cette cession ;

Attendu que les appelants exposent que dans le cadre de procédures pendante aux Etats-Unis, la société I.N.C. de droit du Liechtenstein prétend que les droits des bénéficiaires de la cession du 1er avril 1985 sur le brevet 360 sont limités à la durée d'exécution du contrat de recherche des 26 et 29 avril 1985, que ce contrat est arrivé à son terme au bout de dix ans, soit le 29 avril 1995, et que depuis cette date l'ensemble des droits sur le brevet est revenu dans le patrimoine de Jack MASQUELIER ; qu'ils indiquent que l'acte de cession du 10 octobre 1996 a été conclu pour le cas où la justice américaine consacrerait cette thèse ; qu'ils en déduisent qu'il s'agit seulement d'une cession de droits éventuels, c'est-à-dire d'un acte conservatoire qui ne préjuge pas des droits de la société HORPHAG RESEARCH sur le brevet 360 ;

Attendu qu'il est contant que le 1er avril 1985, Jack MASQUELIER a cédé aux sociétés SCIPA et HORPHAG OVERSEAS ses droits sur le futur brevet 360 ; qu'à défaut d'accord des parties ou de décision de justice constatant le retour de ces droits dans son patrimoine, il n'est actuellement titulaire d'aucun droit sur ce brevet ; qu'il s'ensuit que l'acte du 30 octobre 1996 ne peut s'interpréter comme constituant une cession des droits actuels de l'intéressé sur le brevet 360, mais seulement comme un acte conditionnel, comportant cession de ces droits dans le cas où ils reviendraient dans son patrimoine à la suite d'une décision en ce sens rendue par la justice américaine ; que ceci résulte d'ailleurs nettement des termes de l'acte, dont la Cour retiendra la traduction proposée par les appelants et que l'intimée a du reste reprise dans ses conclusions du 17 novembre 1997, page 40 ; qu'en effet, il est indiqué, après le rappel des conventions antérieures, que le contrat des 26 et 29 avril 1985 a expiré le 29 avril 1995, si bien que tous les droits concédés aux société SCIPA et HORPHAG "peuvent

D 0 11058

- 24 -

avoir pris fin" ("may have terminated") et être revenus à Jack MASQUELIER ; que par ailleurs, celui-ci cède, non ses droits actuels, mais "tous droits de jouissance futurs en vertu d'un retour et tous autres droits, titres et intérêts qu'il a eus ou pourrait avoir concernant et sur le susdit Brevet" ("any reversionary or other right, title and interest which he has had or may have in and to such Patent") ;

Attendu qu'il apparaît ainsi que même s'il a été utilisé de manière déloyale après le prononcé du jugement, ainsi qu'il a été dit, l'acte du 30 octobre 1996 ne cause en lui-même aucun grief à la société HORPHAG RESEARCH, puisqu'il n'a vocation à produire des effets de droit que dans l'hypothèse où cette société ne serait plus copropriétaire du brevet 360 ; qu'il s'ensuit qu'elle n'est pas fondée à en demander l'annulation, et qu'il convient de la débouter de ce chef de réclamation ;

Attendu qu'il y a lieu également de la débouter de sa demande d'exercice d'un droit de préemption, en observant, d'une part que dans la mesure où elle n'est pas en indivision avec Jack MASQUELIER, elle ne dispose d'aucun droit de cette nature à l'encontre de l'intéressé, d'autre part que si la conclusion de l'acte de cession conditionnel du 30 octobre 1996 s'est inscrite dans une stratégie avouée de la société I.N.C. de droit du Liechtenstein visant à l'obtention de la propriété intégrale du brevet 360 (voir le dernier paragraphe du communiqué du 27 mars 1997), il n'est pas établi pour autant que cet acte ait constitué une manoeuvre destinée à déposséder frauduleusement la société HORPHAG de ces droits ;

D) Sur les demandes de dommages et intérêts :
------------------------------------------------

Attendu que le Tribunal a débouté la société HORPHAG RESEARCH d'une demande en paiement d'une provision de 10.000.000 Frs à valoir sur la réparation du préjudice financier subi par elle du fait de la cession du 18 mars 1994, ainsi que d'une demande d'expertise destinée à faire évaluer ce préjudice, mais a condamné in solidum la société SCIPA et les consorts MASQUELIER - BARRAUD - MICHAUD à lui payer une somme de 200.000 Frs en réparation du préjudice moral causé par leur comportement à son égard; que l'intimée conclut à la confirmation de ces dispositions ; que la société SCIPA et ses associés sollicitent la réformation du jugement du chef de la condamnation prononcée à leur encontre ;

D 0 11059

- 25 -

Attendu qu'il ressort des documents versés aux débats qu'une importante mésentente est apparue entre les sociétés SCIPA et HORPHAG à partir de l'année 1990, la société SCIPA reproche à la société HORPHAG d'avoir déposé comme marque sous son nom aux Etats-Unis le terme scientifique "PYCNOGENOL" inventé par Jack MASQUELIER et d'avoir méconnu les dispositions du contrat des 26 et 29 avril 1985 en concédant à des tiers diverses licences d'exploitation du brevet 360 sans l'en informer ni la faire bénéficier des redevances perçus à cette occasion, et la société HORPHAG faisant grief à la société SCIPA d'avoir voulu s'approprier les résultats du travail poursuivi par elle pendant vingt ans en passant de nouveaux contrats avec un de ses concurrents, la société HOLLAND HEALTH, et en entretenant un climat de dénigrement systématique à son encontre ; que s'il est certain que cette mésentente s'est traduite par une brutale rupture des relations contractuelles, l'engagement de diverses procédures et la publication, de part et d'autre, de communiqués généralement très tendancieux, il n'est pas démontré pour autant que la société HORPHAG RESEARCH, personne morale de droit commercial rompue au monde des affaires, ait pu en éprouver un préjudice moral quelconque ; qu'il y a donc lieu de réformer le jugement en ce qu'il lui a accordé une indemnité de 200.000 Frs à ce titre ;

Attendu que l'intimée a formé des demandes d'indemnisations nouvelles en cause d'appel, priant la Cour de condamner, d'une part la société SCIPA et les consorts MASQUELIER - BARRAUD - MICHAUD à lui payer une somme de 5.000.000 Frs pour avoir dissimulé à la justice française l'acte de cession du 10 octobre 1996 et pour la perte de clientèle aux Etats-Unis qu'elle a subie à la suite du communiqué de presse du 27 mars 1997, d'autre part les sociétés I.N.C. à lui payer une somme identique en réparation des préjudices résultant de leurs manoeuvres, à savoir la chute de ses ventes, l'appropriation du brevet et le dénigrement systématique ;

Attendu que pour prouver la perte de clientèle alléguée, l'intimée produit une attestation du 20 mai 1997 rédigée par Charles HAIMOFF qui déclare être son représentant et certifie que les ventes du produit vendu sous la marque PYCMOGENOL "ont chuté de moitié au mois d'avril 1997" à la suite du communiqué de presse du 27 mars 1997 ; que toutefois, nul ne pouvant se délivrer de preuve à soi-même, il convient d'écarter cette pièce et de constater dès lors que la preuve d'une perte de clientèle n'est pas rapportée ; que pour le surplus, l'existence d'un préjudice moral n'est pas établie et la conclusion de la cession conditionnelle du 10 octobre 1996 n'a pas constitué une manoeuvre frauduleuse, ainsi qu'il a été

D 0 11060

- 26 -

dit; qu'il y a donc lieu de débouter la société HORPHAG RESEARCH de ses demandes de dommages et intérêts présentées en cause d'appel ;

E) Sur la demande d'interdiction d'exploitation du brevet 360 sous astreinte :

Attendu que c'est à tort que la société SCIPA et ses associés concluent à l'irrecevabilité, sur le fondement de l'article 918 du Nouveau Code de Procédure Civile, de la demande d'interdiction d'exploitation du brevet 360 sous astreinte présentée par la société HORPHAG RESEARCH ; qu'en effet, s'il est exact que cette demande ne figurait pas dans les conclusions contenues dans la requête à jour fixe de l'intéressée et qu'elle n'a été formée que par conclusions signifiées le 4 août 1997, il convient de noter que les parties ont toutes abondamment conclu après cette date jusqu'au 2 décembre 1997, et qu'elles ont pu s'expliquer très complètement sur ce chef de prétention, de sorte que les droits de la défense ont été respectés ;

Attendu que c'est également à tort que les appelants concluent à l'irrecevabilité de cette demande sur le fondement de l'article 564 du Nouveau Code de Procédure Civile ; qu'en effet, s'il est exact que cette prétention est nouvelle en appel, elle constitue l'accessoire et le complément de la demande d'annulation de la cession du 18 mars 1994 présentée en première instance, de sorte qu'elle est recevable, par application des dispositions de l'article 566 du même code ;

Attendu enfin que contrairement à ce qui est prétendu, la demande litigieuse ne constitue pas une action en contrefaçon, mais tend seulement à prévenir une violation éventuelle de la mesure d'annulation de la cession ; qu'elle est donc bien de la compétence de la juridiction ayant prononcé cette annulation ; que par suite, il n'y a pas lieu de faire droit à l'exception d'incompétence soulevée au profit des juridictions fédérales américaines ;

Attendu, sur le fond, que l'annulation de la cession du 18 mars 1994 a remis les parties dans leur état antérieur ; qu'en particulier, la société I.N.C. de droit du Liechtenstein, qui n'a plus aucun droit sur le brevet 360, ne peut plus l'exploiter ; que Jack MASQUELIER, qui a perdu ses droits depuis qu'il les a

D 0 11061

- 27 -

cédés le 1er avril 1985, ne peut se livrer non plus à aucune exploitation ; que cette impossibilité résultant de plein droit de la situation juridique des intéressés, il n'y a pas lieu de prononcer une interdiction spéciale à ce sujet, étant observé par ailleurs que la société HORPHAG RESEARCH dispose, en sa qualité de copropriétaire du brevet, des moyens nécessaires pour se protéger contre toute exploitation illicite qui pourrait être constatée ; qu'il convient en conséquence de la débouter de sa demande d'interdiction sous astreinte ;

3°) Sur les demandes reconventionnelles :

A) Sur les demandes relatives aux contrats concédés par la société HORPHAG au titre du brevet 360 :

Attendu qu'il convient de réformer le jugement en ce qu'il a débouté la société SCIPA et les consorts MASQUELIER - BARRAUD - MICHAUD de leur demande en nullité des contrats signés par la société HORPHAG pour la distribution du produit breveté, et, statuant à nouveau, de constater que cette demande est simplement irrecevable, dans la mesure où les tiers ayant contractés avec la société HORPHAG n'ont pas été attraits à la cause ; que par ailleurs, il y a lieu de donner acte à la société SCIPA de ce qu'elle se réserve "de demander la nullité de toutes les cessions, concessions et apports consenties par la société HORPHAG OVERSEAS relatifs au brevet 360" ;

Attendu que les demandes de provision et d'expertise présentées par la société SCIPA supposent une analyse des contrats passés par la société HORPHAG avec des tiers, afin de déterminer s'ils comportent des cessions ou concessions des droits de propriété industrielle issus du brevet 360 ; que compte tenu de la complexité de la matière, cette appréciation, comme celle de la validité de ces conventions, ne peut se faire en l'absence des tiers cocontractants ; qu'il convient en conséquence de déclarer ces demandes irrecevables ;

Attendu que dans la mesure où les tiers avec qui la société HORPHAG a contracté ne peuvent être mis en cause pour la première fois devant la Cour à défaut d'évolution du litige, il n'y a pas lieu d'enjoindre à l'intimée de communiquer "tous les contrats de licence ou d'apport de droits sur le brevet 360" qu'elle a pu passer

D 0 11062

- 28 -

"avec des tiers dans le monde entier" ; que par ailleurs, il n'y a pas lieu non plus de lui enjoindre de résilier lesdits contrats, une telle mesure excédant les pouvoirs du juge ; qu'il convient de débouter les appelants de ces deux chefs de prétention ;

B) Sur la demande de dommages et intérêts de Jack MASQUELIER :

Attendu que c'est par des motifs pertinents que la Cour adopte que le Tribunal a estimé que dans les échanges de courrier, tournant à l'agression réciproques, qui avaient eu lieu après la rupture des relations contractuelles entre les parties, le seul élément réellement critiquable était une allusion directe à la vie privée de Jack MASQUELIER, contenue dans une lettre de Charles HAIMOFF du 10 octobre 1990, et qu'il a accordé à l'intéressé une indemnité de 10.000 Frs en réparation du préjudice moral qui en était résulté ; que devant la Cour, les appelants ne démontrent pas que la société HORPHAG se soit livrée à une "campagne de révisionnisme scientifique" à l'égard de Jack MASQUELIER ; qu'il y a donc lieu de confirmer purement et simplement la décision du premier juge à ce sujet ;

C) Sur les demandes des sociétés I.N.C. :

Attendu qu'il convient de confirmer le jugement en ce qu'il a dit que la société SCIPA devrait garantir la société I.N.C. de droit du Liechtenstein de l'éviction par elle subie en raison de l'annulation de la cession du 18 mars 1994 ;

Attendu que la société HORPHAG RESEARCH ayant triomphé dans l'essentiel de ses prétentions, son action ne peut être qualifiée d'abusive ; qu'il y a donc lieu de débouter les sociétés I.N.C. de leur demande de dommages et intérêts pour procédure abusive et vexatoire, de même que de leur demande de publication de la présente décision aux frais de l'intimée ;

4°) Sur les dépens et les frais irrépétibles :

Attendu que les appelants succombant dans la quasi totalité de leur prétentions, il convient de les condamner in solidum aux dépens de l'appel ;

D 0 11063

- 29 -

Attendu qu'il serait inéquitable que la société HORPHAG RESEARCH conserve à sa charge la totalité des frais irrépétibles exposés par elle à l'occasion de l'instance ; qu'il y a lieu de condamner in solidum les appelants à lui payer une somme de 15.000 Frs en vertu de l'article 700 du Nouveau Code de Procédure Civile ;

PAR CES MOTIFS,
===============

LA COUR,
========

Prononce la jonction des procédures enrôlées sous les numéros 97/3242, 97/3895, 97/3982 et 97/4898 du répertoire général de la Cour ;

Révoque les ordonnances de clôture prononcées le 25 novembre 1997 dans les procédures numéros 97/3895, 97/3982 et 97/4898 et prononce la clôture de l'instruction, pour l'ensemble de la procédure, à l'audience des débats du 9 décembre 1997 ;

Reçoit la société SCIPA, les consorts MASQUELIER - BARRAUD - MICHAUD et les deux sociétés I.N.C. en leur appels, ainsi que la société HORPHAG RESEARCH en son appel incident ;

Donne acte à la société SCIPA et aux consorts MASQUELIER - BARRAUD - MICHAUD de ce qu'ils abandonnent les exceptions d'irrecevabilité prises du défaut de mise en cause des sociétés I.N.C., qu'ils avaient soulevées dans leurs conclusions initiales du 5 septembre 1997 ;

Déclare les appelants mal fondés en leur fin de non-recevoir tirée du défaut d'inscription de la fusion des sociétés HORPHAG OVERSEAS et HORPHAG RESEARCH auprès de l'Office Américain des Brevets ; les en déboute ;

Confirme le jugement rendu le 25 mars 1997 par le Tribunal de Grande Instance de BORDEAUX, sauf en ce qu'il a :

1°) Condamné in solidum la société SCIPA et les consorts MASQUELIER - BARRAUD - MICHAUD à verser à la société HORPHAG la somme de 200.000 Frs à titre de dommages et intérêts en réparation de son préjudice moral;

D 0 11064

- 30 -

2°) débouté la société SCIPA et les consorts MASQUELIER - BARRAUD - MICHAUD de leur demande en nullité des contrats signés par la société HORPHAG pour la distribution du produit breveté ;

Réforme sur ces deux points, et statuant à nouveau :

Déboute la société HORPHAG RESEARCH de sa demande de dommages et intérêts au titre de son préjudice moral ;

Déclare la société SCIPA et les consorts MASQUELIER - BARRAUD - MICHAUD irrecevables en leur demande d'annulation des contrats concédés par la société HORPHAG à des tiers au titre du brevet 360 ;

Ajoutant au jugement :

Déclare les appelants mal fondés en leurs fins de non-recevoir et en leur exception d'incompétence opposées aux demandes nouvelles formulées par la société HORPHAG RESEARCH en cause d'appel ; les en déboute ;

Statuant sur les demandes nouvelles de l'intimée:

Déboute la société HORPHAG RESEARCH de sa demande d'annulation de l'acte de cession conditionnel du 10 octobre 1990, de sa demande d'exercice d'un droit de préemption fondées sur cet acte, de ses demandes de dommages et intérêts fondées sur cet acte ainsi que sur le communiqué de presse du 27 mars 1997, et de sa demande d'interdiction d'exploitation du brevet 360 sous astreinte;

Statuant sur les demandes reconventionnelles des appelants :

Donne acte à la société SCIPA de ce qu'elle se réserve "de demander la nullité de toutes les cessions, concessions et apports consentis par la société HORPHAG OVERSEAS relatifs au brevet 360" ;

Déclare la société SCIPA irrecevable en sa demande de provision et d'expertise relativement aux contrats concédés par la société HORPHAG à des tiers au titre du brevet 360 ;

- 31 -

Déboute la société SCIPA de sa demande de communication de "tous les contrats de licence ou d'apport de droits sur le brevet 360" que la société HORPHAG a pu passer "avec des tiers du monde entier", ainsi que de sa demande d'injonction à la société HORPHAG de résilier lesdits contrats ;

Déboute les sociétés I.N.C. de leur demande de dommages et intérêts pour procédure abusive et vexatoire ainsi que de leur demande de publication du présent arrêt aux frais de l'intimée ;

Statuant sur les dépens et les frais irrépétibles :

Condamne in solidum la société SCIPA, les consorts MASQUELIER - BARRAUD - MICHAUD et les sociétés I.N.C. aux dépens de l'appel, qui seront recouvrés conformément aux dispositions de l'article 699 du Nouveau Code de Procédure Civile ;

Condamne in solidum la société SCIPA, les consorts MASQUELIER - BARRAUD - MICHAUD et les sociétés I.N.C. à payer une somme de 15.000 Frs à la société HORPHAG RESEARCH en vertu de l'article 700 du Nouveau Code de Procédure Civile ;

Déboute les parties du surplus de leurs prétentions ;

Signé par Monsieur BIZOT, Président et par le Greffier.

M. POMPOUSE B... ...LS
M'rc Jean C... ...
AVC... S A...A... ...ES
10 ... ... se
33... BO... ...X
...