**RÉPUBLIQUE FRANÇAISE**
**AU NOM DU PEUPLE FRANÇAIS**

Jugement du 05/02/2001 - n° 418/2001

n° RG : 1999F00237

**SOCIÉTÉ HORPHAG RESEARCH LTD**
c/
1. **SARL CENTRE D'EXPÉRIMENTATION PHARMACEUTIQUE — (CEP)**
2. **Mr Egbert SCHWITTERS**
3. **STÉ INTERNATIONAL NUTRITION COMPANY ESTABLISHMENT — (INC) / VADUS/LIECHTENSTEIN**
4. **STÉ INTERNATIONAL NUTRITION COMPANY AGENCY BV**
5. **Mr Jack MASQUELIER**
6. **Mr Elian BARRAUD**
7. **Mr Jean MICHAUD**
8. **STÉ INTERNATIONAL NUTRITION COMPANY ESTABLISHMENT — (INC) / MONACO**

DEMANDEUR(S)

SOCIÉTÉ HORPHAG RESEARCH Ltd - Société de droit des Iles Anglo - normandes dont le siège social est à ST-PETER PORT GUERNESEY - (CHANNEL ISLAND) - 1, le Marchant Street

Comparant par Me Jean - Pierre HERMANT - 62, Rue de Monceau - 75008 – PARIS

& par Me Didier GRENOUILLE - 19, Bld Jeu de Ballon - 06130 - GRASSE

DÉFENDEUR(S)

1. SARL CENTRE D'EXPÉRIMENTATION PHARMACEUTIQUE — (CEP) - Dont le siège est à VALBONNE - 06560 - Villantipolis 11 – Rte des Dolines -

Comparant la SCP SIMMONS & SIMMONS – Me Pascal DELCLAUX & Me Frédéric BENECH – 68, Rue du Faubourg St-Honoré – 75008 - PARIS

& par Me Jean - Claude PYOT "Le Louvre" – 18, Rue Vénizélo – 06400 – CANNES

2. Mr Egbert SCHWITTERS - 31, Av. Princesse Grâce – "l'Estoril" - Bloc C – MC - 98000 – MONACO – Actuellement même ville "Le Soleil d'Or" – 20, Bld Rainier III

Comparant la SCP SIMMONS & SIMMONS – Me Pascal DELCLAUX & Me Frédéric BENECH & par Me Jean-Claude PYOT ci-dessus désignés,

3. STÉ INTERNATIONAL NUTRITION COMPANY ESTABLISHMENT — (INC) — Société de Droit du Liechtenstein — Dont le siège est à VADUZ - (LIECHTENSTEIN) - 9490 - 6, Rheinbergerstrasse

Comparant la SCP SIMMONS & SIMMONS – Me Pascal DELCLAUX & Me Frédéric BENECH & par Me Jean-Claude PYOT ci-dessus désignés

D 0 10223

.../...

.../...

4. **STÉ INTERNATIONAL NUTRITION COMPANY AGENCY BV** – Société de droit Néerlandais dont le siège est Vreeandseweg - 69 - 01393 - PD NIGTVECHT - (PAYS-BAS)

   Comparant la SCP SIMMONS & SIMMONS – Me Pascal DELCLAUX & Me Frédéric BENECH & par Me Jean-Claude PYOT ci-dessus désignés

5. Mr Jack MASQUELIER – "Les Magnolias" – Parc des Tourelles – Rue Ste-Élisabeth – 33200 – CAUDERAN

   Comparant par Me Frédéric BARTHE & par Me Philippe LIEF - Sté d'Avocats FIDAL – "Le Montesquieu" – 19, Av. du Président J.F KENNEDY – BP 330 – 33695 – MÉRIGNAC Cedex

6. Mr Elian BARRAUD – "Le Marquis" – 33210 – BOMMES

   Comparant par Me Frédéric BARTHE & par Me Philippe LIEF, ci-dessus désignés,

7. Mr Jean MICHAUD – Le Mesnil le Tourne – 33550 – LANGOIRAN

   Comparant par Me Frédéric BARTHE & par Me Philippe LIEF, ci-dessus désignés,

8. STÉ INTERNATIONAL NUTRITION COMPANY ESTABLISHMENT – (INC) – Ayant un établissement à MONACO – 98000 - MC – "l'Estoril" – BLOC C – 31, Av. Princesse Grâce

   Comparant la SCP SIMMONS & SIMMONS – Me Pascal DELCLAUX & Me Frédéric BENECH & par Me Jean-Claude PYOT ci-dessus désignés

Débats, clôture des débats et mise en délibéré lors de l'Audience publique du 09/10/2000, où siégeaient Mr Éric DAUFÈS, Président, Mr Guy DELPEYROUX & Mr Philippe PASQUIER, Juges, assistés de Mme Nathalie GUÉRIN, Commis-Greffier,

Pour un Jugement intervenir le 11/12/2000 ; délibéré prorogé au 05/02/2001, rendu en Audience publique où siégeaient Mr Éric DAUFÈS, Président, Mr Gabriel GUALLINO & Mr Philippe PASQUIER, Juges, assistés de Mme Laure MARTIN, Commis-Greffier

2

NG

D 0 10224

.../...

.../...

Suivant acte de Me Marc BELLTARDO, Huissier de Justice à GRASSE, du 06/08/1999, la demanderesse a fait donner assignation aux défendeurs, d'avoir à comparaître par-devant le Tribunal de céans à l'effet de :

➢ **Dire et juger** la demanderesse recevable et bien fondée en ses demandes,

**CE FAISANT**

**Vu le Jugement** rendu le **25/03/1997**, par le Tribunal de Grande Instance de BORDEAUX, dans l'Instance opposant la demanderesse à la SCIPA, INC ESTABLISHMENT, INC AGENCY BV ainsi qu'aux consorts MASQUELIER, BARRAUD, MICHAUD

**Vu l'Arrêt** rendu le **28/05/1998**, par la Cour d'Appel de BORDEAUX, confirmant le Jugement susvisé,

➢ **Dire et juger** que la fusion absorption de SCIPA par CEP opérée le **20/07/1998**, l'a été en fraude des décisions de Justice rendues au profit de la demanderesse, par le Tribunal de Grande Instance et la Cour d'Appel de BORDEAUX, les **25/03/1997 & 28/05/1998**

**EN CONSÉQUENCE :**

➢ **Prononcer** l'annulation de cette fusion absorption pour fraude à la Loi et dire et juger celle-ci juridiquement inopposable à la demanderesse et dire et juger que la demanderesse pourra, vu la fraude constatée, exercer son droit de préemption **pour 1 $**,

➢ **Dire et juger** également nul et inopposable à la demanderesse, sur le même fondement juridique, l'acte de cession conditionnel du brevet en date **du 30/10/1996**, entre MASQUELIER & INC,

➢ **Dire et juger** que cette fraude a causé un préjudice certain à la demanderesse,

➢ **Ordonner** la réparation des préjudices ci-dessus décrits, en condamnation in solidum les défendeurs à payer à la demanderesse la somme **de 28, MF** à titre de dommages-intérêts,

➢ **Ordonner** la désignation d'un Expert en vue de chiffrer le préjudice résultant de l'exploitation indue de INC, depuis la décision de la Cour d'Appel de BORDEAUX en date **du 28/05/1998**

➢ **Condamner** in solidum les défendeurs au paiement d'une somme de **200.000 F** en application des dispositions de l'Art. 700 du NCPC, ainsi qu'aux entiers dépens,

➢ **Ordonner** l'exécution provisoire du Jugement à intervenir, nonobstant opposition ou appel et sans caution, et à défaut de l'exécution provisoire sur le tout, ordonner l'exécution provisoire sur l'annulation de la fusion et sur l'annulation de la cession conditionnelle.

Les parties, régulièrement représentées à l'Audience, développent plus amplement leurs moyens à la Barre et par voie de conclusions, qui restent annexées à la Minute de la présente décision et déposent leurs dossiers.

3

 NG

D 0 10225

.../...

## EXPOSÉ DES FAITS

En 1947, le Professeur Jack MASQUELIER invente une méthode d'extraction d'un principe actif appelé LEUCOCIANIDOL. Au fil des améliorations, les extraits vont changer de nom.

En 1979, le Professeur Jack MASQUELIER crée la marque "PYCNOGENOL" (OPC).

En 1969, Messieurs MASQUELIER, MICHAUD, BARRAUD & LAPPARA, créent la Sté CEP, afin de produire et commercialiser les OPC.

À la fin des années 1960, Mr Jack MASQUELIER se met en contact avec Mr Charles HAIMOFF, Mandataire de la STÉ INTERHORPHAG, qui se propose de commercialiser les OPC à l'étranger.

En 1971, un premier contrat est établi entre CEP & INTERHORPHAG, attribuant à INTERHORPHAG, un mandat exclusif pour la vente hors de France des OPC (pins maritimes). INTERHORPHAG, perçoit une commission sur le Chiffre d'Affaires.

En 1982, le contrat est amendé pour mettre à la charge de la société dénommée désormais HORPHAG OVERSEAS LTD, un quota minimum annuel de vente.

Le Professeur MASQUELIER et ses amis, font une autre découverte, protégée par un brevet, déposé le 09/04/1985, délivré le 06/10/1987. Ce brevet revendique l'utilisation d'un extrait végétal, contenant des PROANTHOCYANIDINES (Brevet 360).

La Sté HORPHAG, va convaincre la STÉ SCIPA qui possède et administre le brevet, de lui accorder la moitié des droits sur le brevet 360. La moitié des redevances perçues par la Sté HORPHAG, doit être réservée à la STÉ SCIPA.

Les 26 & 29/04/1985, SCIPA & HORPHAG, formalisent leurs relations, dans un contrat de recherche en commun. SCIPA est chargée de la recherche scientifique et HORPHAG, la recherche de clients.

L'Art. 5 prévoit qu'en cas de cession ou concession des droits de propriété industrielle issus du contrat, les produits seraient partagés en parts égales entre les parties. Prise d'effet le 01/04/1985.

Le 03/10/1986, un contrat est signé entre DRT CEP & HORPHAG. HORPHAG commercialise, CEP enregistre les commandes et les transmet à DRT pour fabrication. CEP fait le contrôle de qualité et l'expédition.

HORPHAG, ne va pas respecter les accords en ne reversant pas les royalties prévues contractuellement.

SCIPA ignore que la Sté HORPHAG a accordé des licences d'exploitation du brevet 360.

Mr MASQUELIER suite à une requête d'HORPHAG pour être dépositaire de la marque PYCNOGENOL dans certains pays, s'oppose à une telle démarche.

Le 28/06/1990, un contrat de mandat exclusif est signé entre HORPHAG OVERSEAS LTD et la STÉ HOLLAND HEALTH BV. Ce contrat se rapporte à un extrait végétal breveté. HORPHAG s'engage à approvisionner la Sté HOLLAND HEALTH en PYCNOGENOL ; HOLLAND HEALTH s'engage à en acheter une quantité déterminée croissante. HORPHAG concède à HOLLAND HEALTH une licence l'autorisant à être fabricant exclusif. HOLLAND HEALTH prend contact avec CEP. C'est ainsi, qu'est révélée, l'existence de ce contrat d'exclusivité.

CEP apprend que dès 1988, HORPHAG OVESEAS, a concédé une licence d'exploitation du brevet 360, à une Société US "PYCNOGENOL MARKETING INC" prévoyant une redevance forfaitaire de 300.000 $ au profit d'HORPHAG.

.../...

HORPHAG a signé un autre contrat en 1989, avec la Sté T.A.A.G.

Sur ces différentes redevances, la Sté SCIPA n'a jamais reçu la moindre redevance, ainsi que prévu dans l'Art. 5 des contrats des 26 & 29/04/1985.

Nonobstant l'opposition de la Sté SCERPA, HORPHAG a déposé la marque "PYCNOGENOL" aux USA, le 26/01/1990

La SARPAP, qui assurait la sous-traitance de CEP, contracte avec HORPHAG la fourniture de matières premières.

La dégradation des relations entre les parties, remonte à 1990, période où les révélations de l'attitude de la Sté HORPHAG a eu lieu.

CEP ne pouvant plus faire confiance à HORPHAG, se tourne vers la Sté HOLLAND HEALTH. Le 25/09/1990 ils signent une convention, complétée le 24/10/1990, accordant l'exclusivité de commercialisation des OPC pins maritimes en France et OCP pépins de raisin, dans le monde entier.

HORPHAG met un terme définitif à ses relations avec CEP et la Sté SCIPA, puis engage à l'encontre du Professeur MASQUELIER, des mesures de rétorsions.

HORPHAG engage une campagne de déstabilisation de MASQUELIER, dans les milieux scientifiques et de distribution.

HORPHAG, fin 1990, laisse 545.000 F d'impayés au détriment de CEP.

HORPHAG, cesse de s'approvisionner en matière première auprès de CEP, en violation du contrat de 1986

La Sté SCIPA après des déboires judiciaires aux USA, se trouve dans l'obligation de céder sa part du brevet 360 ; acte du 18/03/1994, après consultation du Cabinet BLETRY.

HORPHAG en date du 26/10/1995, a assigné SCIPA, MASQUELIER, MICHAUD, BARRAUD et les Stés INC, en nullité de la cession du 18/03/1994, sur la base de l'Art. L613-29, du Code de la Propriété Intellectuelle. Le Tribunal de Grande Instance de BORDEAUX en date du 25/03/1997, annule la cession par la Sté SCIPA

Le 10/10/1996, le Professeur MASQUELIER, signe avec la STÉ INTERNATIONAL COMPAGNIE ETABLISHEMENT INC, un acte dans lequel il est constaté que le contrat conclu avec SCIPA et HORPHAG, signé le 29/04/1985 a expiré le 29/04/1995 et que les droits reviennent à MASQUELIER. La cession à INTERNATIONAL NUTRITION intervient le 29/04/1995.

Les parties ont interjeté appel de la décision rendue par le Tribunal de Grande Instance de BORDEAUX du 25/03/1997. HORPHAG devant le Cour d'Appel, a demandé l'annulation de l'acte de cession du 10/10/1996 et 5 MF à titre de dommages-intérêts. Par décision du 28/05/1998, la Cour d'Appel de BORDEAUX confirme le Jugement rendu par le Tribunal de Grande Instance le 25/03/1997, prononçant la nullité de la cession par SCIPA ; déboute HORPHAG de sa demande de dommages-intérêts et la déboute de sa demande en annulation de l'acte de cession du 10/10/1996.

Le 03/06/1998, un projet de fusion par absorption des sociétés CEP & SCIPA est établi, consacré par une Assemblée Générale Extraordinaire du 25/06/1998.

C'est pourquoi, HORPHAG a saisi le Tribunal de céans en assignant les défendeurs, afin d'obtenir la nullité de la fusion, la nullité de l'acte de cession du 10/10/1996 et le paiement de dommages-intérêts à hauteur de 28,3 MF.

Mr Jack MASQUELIER et CEP, demandent l'irrecevabilité de toutes les demandes d'HORPHAG, et sa condamnation au paiement de la somme de 30 KF à leur profit.

D 0 10227

.../...

.../...

**ET SUR CE**

**SUR LA NULLITÉ DE LA FUSION DES SOCIÉTÉS, RÉCLAMÉE PAR HORPHAG**

ATTENDU que l'Art. 367 de la Loi n° 88-17 du 05/01/1988 précise : "(...) *Toutefois l'action en nullité d'une fusion ou d'une scission de sociétés se prescrit par six mois à compter de la date de la dernière inscription au registre du commerce et des sociétés rendue nécessaire par l'opération* (...)".

ATTENDU qu'il ressort des éléments fournis que la dernière inscription de la fusion CEP/SCIPA a été effectuée le 04/01/1999 ; fusion adoptée par une Assemblée Générale Extraordinaire de la SCIPA en date du 25/06/1998. Or la demande de la Sté HORPHAG, par assignation, date du 06/08/1999.

ATTENDU qu'HORPHAG demande au Tribunal de céans de :

- ✓ PRONONCER l'annulation de la fusion absorption, en date du 20/07/1998 entre la SCIPA & CEP pour fraude à la Loi.

- ✓ JUGER qu'HORPHAG pourra exercer son droit de préemption pour 1 $

- ✓ JUGER également nul et inopposable à HORPHAG, l'acte de cession conditionnel du brevet en date du 30/10/1996, entre MASQUELIER et INC,

- ✓ JUGER que cette fraude a causé un préjudice à HORPHAG et l'estimer,

- ✓ ORDONNER la réparation du préjudice

- ✓ ORDONNER la désignation d'un Expert en vue de chiffrer le préjudice résultant de l'exploitation indue de INC, depuis la décision de la Cour d'Appel de BORDEAUX du 28/05/1998

- ✓ CONDAMNER in solidum les défendeurs au paiement d'une somme de 200.000 F en application de l'Art. 700 du NCPC,

DE FAÇON ADDITIONNELLE HORPHAG DEMANDE AU TRIBUNAL DE :

- ✓ CONSTATER qu'elle n'a pas commis de faute, dans la Procédure liée à l'Art. 145,

- ✓ CONSTATER que le bilan 1998 confirme les précédentes écriture d'HORPHAG

ATTENDU qu'à la lecture des documents fournis, il ressort :

Que le Professeur MASQUELIER, invente en 1947, une méthode d'extraction d'un principe actif, appelé "LEUCOCYAMIDOL", à partir de graines d'arachide et d'écorces de pins maritimes. Que ceci n'est pas mis en cause.

Qu'afin de commercialiser et d'améliorer les produits, le Professeur MASQUELIER créé en 1979, la marque "PYCNOGENOL" pour désigner les OPC

ATTENDU que ces brevets ont donné lieu à des applications pharmaceutiques, distribuées par différentes sociétés.

ATTENDU que Messieurs MASQUELIER, MICHAUD, BARRAUD et LAPARRA, créent la société CEP, chargée de produire et commercialiser les OPC en 1969. Les brevets sont déposés et administrés tout d'abord par la SCRPT, puis par la SCIPA.

ATTENDU qu'en 1971, un contrat entre CEP & INTERHORPHAG est signé, confiant à cette dernière l'exclusivité de la vente hors France.

D 0 10228



.../...

ATTENDU qu'en 1982 le contrat est amendé et impose un quota minimum de vente à INTERHORPHAG.

ATTENDU que le Professeur MASQUELIER et ses amis associés, mettent au point un brevet sur le pouvoir des PROANTHOCYANIDINES, qu'ils déposent aux USA le 09/04/1985, sous le n° 4698360 ; autorisation délivrée le 06/10/1987.

ATTENDU qu'HORPHAG obtient de la Sté SCIPA, la moitié des droits du brevet 360, le développement des ventes et de monnayer à des tiers, l'exploitation du brevet ; les redevances devant être partagées.

ATTENDU que les 26 & 29/04/1985, SCIPA & HORPHAG formalisent leurs relations. SCIPA assure la recherche scientifique et HORPHAG le développement commercial.

ATTENDU que le 03/10/1986, un contrat est signé entre DRT, CEP & HORPHAG, distribuant les rôles ; HORPHAG, agent commercial du CEP & DRT, fabricant.

ATTENDU qu'en 1989 la Sté HORPHAG se rapproche de SCERPA, propriétaire de la marque "PYCNOGENOL" en France. La SCERPA, s'oppose au dépôt de cette marque dans d'autres pays étrangers, sous l'enseigne "HORPHAG"

ATTENDU que 28/06/1990, un contrat de mandat exclusif est signé entre HORPHAG OVERSAES et la société HOLLAND HEALTH ; HORPHAG s'engageant à fournir les produits à partir du brevet 360.

ATTENDU que la Sté HOLLAND HEALTH n'a pas vérifié la réalité des droits de la Sté HORPHAG, sur l'utilisation de la marque "PYCNOGENOL".

ATTENDU que la Sté HORPHAG a, dès 1988, concédé une licence d'exploitation du brevet 360 à une société US, PMI. Qu'un contrat similaire a été conclu entre HORPHAG et TAAG et qu'en aucun cas, les redevances devant revenir vers CEP, ne l'ont été.

ATTENDU que ces différents éléments, attestent de relations difficiles et conflictuelles entre les sociétés et l'absence de confiance.

ATTENDU que la CEP, se tourne vers la société HOLLAND HEALTH le 25/09/1990, lui attribuant l'exclusivité mondiale de la commercialisation des OCP.

ATTENDU que devant cette situation, HORPHAG met un terme définitif à ses relations avec CEP.

ATTENDU qu'à cette situation, une campagne d'informations, interprétée comme diffamatoire par le Professeur MASQUELIER, a lieu dans les milieux scientifiques, mais qu'aucun élément, quant à l'évaluation de ce préjudice n'est fourni.

ATTENDU que les Stés HORPHAG & CEP, copropriétaires du brevet 360, continuent de l'exploiter. Il conviendra d'en évaluer l'activité.

ATTENDU qu'en fin d'année 1993, un procès aux USA en contrefaçon et nullité du brevet 360, oppose HORPHAG à une Sté CONSAC INDUSTRIE. Face au coût de la Procédure, la Sté SCIPA, cède ses droits sur le brevet 360 à un tiers, Mr SCHWITTERS, détenteur de la Sté INC AGENCY VB & INC.

ATTENDU que le contrat de 1985 étant muet sur le formalisme de la cession des droits, il ressort que ce sont les pratiques professionnelles et les règles connues dans les différents pays, qui prévalent. Il va de soi, que l'interrogation du principal partenaire se justifie.

ATTENDU que le 26/10/1995, la Sté HORPHAG assigne SCIPA & INC, en nullité de cession du 18/03/1994, sur le fondement de l'Art. 613-29 du Code de Propriété Industrielle, précisant que chaque copropriétaire peut à tout moment, céder sa quote-part. Les copropriétaires disposent d'un droit de préemption pendant un délai de trois mois, à compter du projet de cession.

ATTENDU qu'INC, a obtenu la cession du brevet 360 pour 1 $ ; rien n'interdit à HORPHAG, qui a la notoriété et l'expérience de distribution mondiale, de faire acte d'un droit de préemption

ATTENDU que cette analyse est confirmée par un Jugement du Tribunal de Grande Instance de BORDEAUX du 25/03/1997

ATTENDU que durant cette Procédure, intervient l'acte du 10/10/1996, appelé "confirmation assignment" signé entre MASQUELIER et INC ; estimant que le contrat avec HORPHAG a pris fin le 29/04/1995, que les droits, titres de propriété et intérêts, sont revenus à MASQUELIER et qu'il cède à INC pour 1 $ les droits du brevet. HORPHAG a demandé par voie d'appel incident à la Cour de BORDEAUX, l'annulation de cet acte.

ATTENDU que la Cour, a confirmé le Jugement du Tribunal de Grande Instance de BORDEAUX du 25/03/1997, prononçant la nullité de la cession par la SCIPA à INC de sa part, sur le brevet 360

ATTENDU que SCIPA & CEP ont fusionné. Que l'opération s'est faite, tant par le jeu des dates, que par la coquille vide, qu'est devenue CEP, contournant en cela, la décision de la Juridiction de BORDEAUX.

ATTENDU ce qui précède, il convient pour le Tribunal de céans, de prononcer l'annulation de la fusion absorption pour fraude, de déclarer cette fusion absorption inopposable à la demanderesse sur la base de l'Art. 1167 du Code Civil, de constater que l'exploitation du produit par INC est frauduleuse, de déclarer qu'HORPHAG pourra exercer son droit de préemption pour 1 $, d'interdire sous astreinte de 30.000 F par jour à compter de la signification de la présente décision, la poursuite de l'exploitation par INC ou CEP, du brevet 360 et de déclarer nul l'acte de cession conditionnel du brevet en date du 30/10/1966, entre MASQUELIER et INC.

ATTENDU enfin, que dans cet imbroglio juridique et contractuel, il est nécessaire qu'un Expert puisse évaluer les pertes subies d'une part par CEP & SCIPA pour le non-retour de royalties, d'autre part sur le manque à gagner de la Sté HORPHAG à compter de la rupture du contrat issue de SCIPA et d'évaluer les coûts des Procédures Judiciaires aux USA, ainsi que ceux réalisés par HORPHAG, en terme de recherches.

ATTENDU qu'il convient aussi, d'ordonner la communication à l'Expert, du Chiffre d'Affaires mondial de la Sté INC depuis l'Arrêt de la Cour d'Appel,

ATTENDU qu'il convient d'ordonner la publication de la présente décision, dans "LE FIGARO", "LE MONDE" & "USA TO DAY", aux frais de la demanderesse,

### SUR LA RÉPARATION DES PRÉJUDICES SUBIS

ATTENDU qu'il convient d'écarter la demande de réparation des préjudices subis ; aucun élément ne l'attrayant.

### SUR L'EXÉCUTION PROVISOIRE

ATTENDU qu'il appert des circonstance de la cause, qu'il y a urgence et péril en la demeure, tout retard dans l'exécution du présent Jugement mettrait en danger les intérêts des parties ; le Tribunal estime cette mesure nécessaire en application de l'Art. 515 du NCPC.

.../...

### SUR LES DÉPENS

**ATTENDU** qu'il convient de réserver les dépens.

### SUR L'APPLICATION DE L'ART. 700 DU NCPC

**ATTENDU** qu'il ne convient pas de faire droit à l'application de l'Art. 700 du NCPC, faute par les parties de démontrer en quoi il serait inéquitable qu'elles supportent les frais irrépétibles

### PAR CES MOTIFS

**LE TRIBUNAL APRÈS EN AVOIR DÉLIBÉRÉ CONFORMÉMENT À LA LOI,
STATUANT PUBLIQUEMENT PAR DÉCISION CONTRADICTOIRE, EN PREMIER RESSORT,**

**PRONONCE** l'annulation de la fusion absorption pour fraude,

**DÉCLARE** cette fusion absorption inopposable à la demanderesse sur la base de l'Art. 1167 du Code Civil,

**CONSTATE** que l'exploitation du produit par INC est frauduleuse,

**DÉCLARE** qu'HORPHAG pourra exercer son droit de préemption pour 1 $,

**INTERDIT** sous astreinte de 30.000 F par jour, à compter de la signification de la présente décision, la poursuite de l'exploitation par INC ou CEP, du brevet 360

**DÉCLARE** nul l'acte de cession conditionnel du brevet en date du 30/10/1966, entre MASQUELIER et INC.

**ORDONNE** la communication à l'Expert qui va être ci-après désigné, du Chiffre d'Affaires mondial de la Sté INC depuis l'Arrêt de la Cour d'Appel,

**ÉCARTE** la demande de réparation au titre du préjudice subi

**ORDONNE** la publication de la présente décision, dans "LE FIGARO", "LE MONDE" & "USA TO DAY", aux frais de la demanderesse,

♦ **VU** les dispositions des Art. 263 & suivants du NCPC

**NOMME** Mr Jean-Loup HAY - ✉ - NICE - 06000 - Villa "Pompérana" - 12, Av. de Picardie - ☏ 04.93.81.60.65 en qualité d'Expert, avec la mission en présence des parties, ou elles dûment appelées

- ✓ **Chiffrer** le préjudice résultant de l'exploitation indue de INC depuis la décision de la Cour d'Appel du 28/05/1998

- ✓ **Évaluer** les investissements et recherches, réalisés par HORPHAG

- ✓ **Évaluer** le montant des royalties non versées par HORPHAG à SCIPA de 1985 à 1995

    **Du tout dresser rapport**

- ✓ **Répondre** aux dires écrits des parties,

- ✓ **Entendre** tous sachants, à charge d'en consigner les dires dans son rapport,

9

 NG

D 0 10231

.../...

.../...

NOMME Monsieur Albert CAPPELLI, Juge au siège, chargé de suivre la Procédure,

DIT qu'en cas d'empêchement ou de refus de l'Expert commis, il sera pourvu à son remplacement par simple Ordonnance de Mr le Juge chargé de suivre la Procédure,

DIT que si les parties viennent à se concilier, l'Expert commis constatera que sa mission est devenue sans objet et en informera le Tribunal,

FIXE à 20.000 F la provision que la demanderesse devra consigner au Greffe de ce Tribunal, à valoir sur le montant des frais et honoraires exposés par l'Expert qui vient d'être désigné,

DIT QUE CETTE CONSIGNATION DEVRA INTERVENIR DANS LE DÉLAI DE 30 JOURS À COMPTER DE L'ENVOI PAR LE GREFFE, DE LA PRÉSENTE DÉCISION

DIT qu'avis de cette consignation et copie de la présente décision, seront notifiés à l'Expert nommé qui devra faire connaître s'il accepte la mission qui lui est confiée et dès lors, commencer immédiatement ses opérations.

ORDONNE que les dossiers déposés entre les mains du Tribunal, soient remis aux parties ou à leurs Conseils, pour être communiqués à l'Expert, à la première demande de ce dernier,

DIT que l'Expert commis devra déposer son rapport au Greffe de ce Tribunal, dans le délai de mois à compter du jour où il aura été saisi de sa mission et que si un délai supplémentaire lui apparaître nécessaire, il devra saisir le Juge chargé des expertises, par voie de requête.

DIT que la présente Instance sera fixée pour être plaidée au fond, à la première Audience, qui suivra le dépôt du rapport.

DIT QUE L'EXPERT COMMIS DEVRA REMETTRE A CHAQUE PARTIE UNE COPIE SUR LIBRE DE SON RAPPORT

DIT que si l'Expert rencontre des difficultés dans l'accomplissement de sa mission, il en sera fait rapport à Mr le Juge chargé du contrôle pour être fait application des dispositions de l'Art. 279 du NCPC

DIT que sur justification des avances faites par lui, l'Expert sera autorisé à prélever un acompte sur la provision consignée au Greffe, à valoir sur ses honoraires.

DIT que lors de la première, ou au plus tard, de la deuxième réunion des parties, l'Expert dressera un programme de ses investigations et évaluera d'une manière aussi précise que possible le montant prévisible de ses honoraires et de ses débours

DIT qu'à l'issue de cette réunion, l'Expert fera connaître au Juge délégué aux expertises et aux parties, la somme globale qui lui paraît nécessaire pour garantir en totalité le recouvrement de ses honoraires et de ses débours et sollicitera le cas échéant, le versement d'une consignation complémentaire.

DIT que lorsque l'Expert aura ainsi porté à la connaissance du Juge et des parties le montant du complément de consignation, le Juge rendra une décision ordonnant à l'une des parties, de consigner au Greffe le complément qui lui paraîtra nécessaire et invitera la partie désignée à faire connaître si elle entend effectuer le versement correspondant ou renoncer à l'expertise.

DIT qu'à défaut de versement de cette consignation complémentaire, l'expert n'est pas tenu de continuer a exécuter sa mission.

.../...

Dɪᴛ que dans cette dernière hypothèse, l'Expert devra déposer un rapport relatant les investigations auxquelles il a pu se livrer et présenter une note d'honoraires limitée à la rémunération de son intervention pour les deux premières réunions.

Dɪᴛ que l'Expert pourra continuer ses investigations, si l'une des parties au Procès, qui estime y avoir intérêts, verse au Greffe la provision litigieuse ; dans ce cas informera le Juge, l'Expert et les autres parties en cause, de son intention de poursuivre l'expertise.

Dɪᴛ que les frais et honoraires de l'Expert commis seront taxés par Ordonnance du Juge contrôleur chargé de suivre la Procédure, rendue au pied de requête et annexée au rapport.

Oʀᴅᴏɴɴᴇ en application des dispositions de l'Art. 515 du NCPC, l'Exécution Provisoire de la présente décision, nonobstant opposition ou appel et sans caution.

Rᴇ́sᴇʀᴠᴇ les dépens.

Dɪᴛ n'y avoir lieu à l'application de l'Art. 700 du NCPC

      Mɪɴᴜᴛᴇ sɪɢɴᴇ́ᴇ ᴘᴀʀ ʟᴇ Pʀᴇ́sɪᴅᴇɴᴛ ᴅᴜ ᴅᴇ́ʟɪʙᴇ́ʀᴇ́ ᴇᴛ ʟᴇ Cᴏᴍᴍɪs-Gʀᴇꜰꜰɪᴇʀ

Sɪɢɴᴇ́ : Lᴇ Pʀᴇ́sɪᴅᴇɴᴛ                                       Sɪɢɴᴇ́ : Lᴇ Cᴏᴍᴍɪs-Gʀᴇꜰꜰɪᴇʀ

D 0 10233