UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JARROW FORMULAS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:01-CV-0478 (AVC) |
| v. | ) | |
| | ) | |
| INTERNATIONAL NUTRITION COMPANY, | ) | |
| INTEGRATED BIOCEUTICALS LLC, | ) | |
| PRIMARY SERVICES, INC., PRIMARY | ) | |
| SOURCE, LLC, EGBERT SCHWITTERS, | ) | |
| NORMAN H. ZIVIN, and JACK | ) | |
| MASQUELIER, | ) | |
| | ) | |
| Defendants. | ) | January 7, 2005 |

## JOINT TRIAL MEMORANDUM

Plaintiff Jarrow Formulas, Inc. ("Plaintiff") and Defendants International

Nutrition Company ("INC"), Integrated BioCeuticals, LLC ("IBC"), Primary Services, Inc.

("PSI"), Primary Source, LLC ("PS"), Egbert Schwitters, Norman H. Zivin, and Jack Masquelier

("Defendants"), collectively, "the parties," jointly submit this Joint Trial Memorandum.


I.     **Trial Counsel**

A.  *For the Plaintiff:*

Eric W. Wiechmann           Alexandra B. Stevens
Mark D. Giarratana          McCarter & English, LLP
Eric E. Grondahl            107 Elm Street
Jason C. Welch              Stamford, CT  06902
McCarter & English, LLP     203.965.0823
CityPlace I                 203.323.6513 (fax)
185 Asylum Street
Hartford, CT  06103
860.275.6700

860.724.3397 (fax)

B. *For the Defendants:*

Richard S. Order
Eric D. Beal
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT  06103-3702
860.275.8100
860.275.8101 (fax)

## II.    Jurisdiction

A. *Subject Matter Jurisdiction:*

This Court has original jurisdiction of the subject matter under the provisions of

28 U.S.C. §§ 1331, 1332(a)(3), and 1337(a).  The amount in controversy exceeds $75,000.

B. *Personal Jurisdiction:*

Defendants Egbert Schwitters and Prof. Jack Masquelier contest this Court's

personal jurisdiction over them and venue.  Venue is proper in this District as to the other

Defendants under the provisions of 28 U.S.C. §§ 1391(b) and (c) and 15 U.S.C. § 22 because

several of the acts complained of arose and occurred at least in part in the State of Connecticut

and at the time of service of the operative Complaints some of the Defendants did business in the

State of Connecticut.

## III.    Jury/Non-jury

This case is to be tried to a jury.

CTDOCS:13370.1

## IV.   Length of Trial

The parties estimate that trial shall take fifteen days.

## V.   Further Proceedings

Plaintiff anticipates filing motions in limine prior to trial at least on the following matters: (1) to exclude as irrelevant evidence relating to other lawsuits to which Jarrow Formulas or its president, Jarrow Rogovin, has been a party; (2) to exclude as irrelevant evidence relating to Jarrow Rogovin's attendance at a trade show in October 1996 in Baltimore; and (3) to exclude expert testimony from Defendant Norman Zivin regarding patent and trademark law and testimony regarding the underlying lawsuit where such testimony is related to subjects to which Defendants including Defendant Zivin refused to provide information during discovery on the grounds of attorney-client privilege.  Defendant Zivin should also be precluded from offering testimony that is an explanation of the law.  In addition, the Plaintiff will file motions to limit evidence and testimony from lawyers involved in the underlying action or in actions in France.  Also to be determined is the bearing of a parallel action Jarrow Formula's, Inc. v. Centre D'Expirimentation Pycnogenal Sarl et al., 3:04-CV-00535 (AVC), on this action.

In accordance with Local Rule 83.4, the Plaintiff requests an opening statement.

Per this Court's orders dated February 24, 2003 and February 3, 2004, the defendants will renew their "Daubert" Motion dated July 3, 2002 to Strike and Exclude the reports and testimony of the plaintiffs' two expert witnesses, Greg Ris and  Michael Willoughby, and the defendants' Motion in Limine to Exclude Evidence dated October 23, 2003.  Defendants will request that the Court schedule hearings on such motions well in advance of the trial because resolution of these motions could very well dispose of all or most of this case.  In addition, the defendants will move

-3-

to exclude evidence related to the validity and enforceability of the '360 patent, inequitable

conduct, and fraud on the Patent Office that plaintiff recently indicated it intends to introduce

because those claims never were alleged in the Complaint or pursued in discovery and, on

December 1, 2004, the Court denied the plaintiff's motion to add such claims. Furthermore, the

defendants will move to preclude certain witnesses and topics of testimony revealed by plaintiff

for the first time in this joint trial memorandum to the extent they constitute expert testimony that

was not disclosed in accordance with the discovery deadlines.


## VI.    Nature of Case

### Plaintiff's Summary

This is an action against Defendants International Nutrition Company ("INC"),

Egbert Schwitters ("Schwitters"), Jack Masquelier ("Masquilier"), Integrated Bioceuticals LLC

("IBC"), Primary Services, Inc. ("PSI") and Primary Source LLC ("Primary Source") for alleged

violations of the Sherman-Clayton Antitrust Act, 15 U.S.C. §§ 1, 2 & 15, the Connecticut

Antitrust Act, Conn. Gen. Stat. §§ 35-24, et seq., the Connecticut Unfair Trade Practices Act,

Conn. Gen. Stat. §§ 42-110a et seq., and the Lanham Act, 15 U.S.C. § 1125(a). The Plaintiff

alleges that these Defendants also initiated and maintained a vexatious lawsuit in violation of

Conn. Gen. Stat. § 52-568 and tortiously interfered with the Plaintiff's advantageous business

relations in violation of common law. All of this was done to the injury of a particular market

and the Plaintiff.

The Plaintiff also claims to be injured by the conduct of Defendant Norman H.

Zivin ("Zivin"). Zivin was and is counsel to certain of the Defendants and was involved in the

initiation and maintenance of the afore-referenced alleged vexatious lawsuit.

The Plaintiff's claims essentially revolve around the Defendants' efforts and conspiracy to dominate and monopolize the sale of oligomeric proanthocyanidins ("OPCs") in the United States. That market was an emerging market in the United States in the mid to late 1990's. Certain uses of OPCs were claimed in U.S. Patent No. 4,698,360 (the "'360 patent"). The '360 patent issued with seven total claims -- including one independent and six dependent claims -- and claims methods of using a plant extract with a "proanthocyanidin" content as a therapeutic agent having "radical scavenger effect." The market is limited to OPCs produced from plant extracts because at the time no other neutraceutical product could make the unique claims of health benefits and potency as could OPS.

The Plaintiff alleges that the Defendants' unlawful conduct comprised of (1) attempting to obtain and secure the '360 patent through misrepresentations made to the United States Patent and Trademark Office ("USPTO"); (2) claiming ownership in the '360 patent when they knew or should have known that they did not own the '360 patent; (3) terrorizing market participants through false and misleading publications, threatening correspondence and initiating and maintaining two meritless lawsuits without probable cause; and (4) coercing market participants to enter into supply and licensing agreements with Defendant IBC.

The Plaintiff's factual basis for each cause of action is as follows:

A. *Anti-Trust Violations.*

The Plaintiff's first and second claims are that the Defendants unreasonably restrained trade and attempted and conspired to monopolize the OPC market in the United States all in violation of the Sherman-Clayton Antitrust Act and the Connecticut Antitrust Act. This

CTDOCS:13370.1

was done through as series of agreements, publications, lawsuits and correspondence to market participants.

The concerted efforts of the Defendants unlawful goals began at least as early as 1995. At that time, the Defendants initiated a public relations and advertising campaign that falsely asserted rights to the '360 patent and threatened to sue purported patent infringers. That campaign was supported by a series of cease and desist letters and ultimately the filing and prosecution of two meritless lawsuits. The first lawsuit was filed on March 6, 1996, on the eve of the industry's largest trade show, in the United States District Court for the District of Connecticut against Horphag Research Ltd. (a/k/a Horphag Overseas Ltd.)("Horphag"), Jarrow Formulas, Inc. ("JFI"), and sixteen other defendants (INC v. Horphag., et al.; Civ. Action No. 3:96-CV-386 (DJS)). The second lawsuit was filed on January 31, 1997, in the United States District Court for the Northern District of California against Horphag, Interhealth Nutritionals, Inc., Natrol, Inc., General Nutrition, Inc., Nat-Trop, and Melaleuca, Inc. Both suits asserted infringement of the '360 patent.

These lawsuits were brought in the name of INC, but INC had no standing to sue for infringement of the '360 patent. First, INC did not own the '360 patent. Second, in both suits INC claimed only an undivided half interest in the '360 patent, yet it did not join the other patent owners as plaintiffs contrary to well established legal principles on standing. Instead, INC sued one of the patent owners, Horphag. Third, the patent is invalid and/or unenforceable as the Defendants obtained the patent through a series of misrepresentations made to the USPTO.

On October 6, 1987, the USPTO issued the '360 patent. It names Masquelier as inventor and Societe Civile d'Investigations Pharmacologiques d'Aquitaine ("SCIPA") and

Horphag as assignees. Masquelier obtained the '360 patent through misrepresentations and/or the withholding of information from the USPTO of material, prior art. When in 1996 the '360 patent was reexamined, Masquelier, Schwitters, INC and Zivin again misrepresented and/or withheld from the examiner material prior art, thereby fraudulently obtaining a favorable decision from the USPTO as to the '360 patent's validity. By procuring the patent through such conduct, the Defendants waived any rights they had, via the First Amendment or otherwise, to petition courts for redress from infringement.

At the time of the Defendants' culpable conduct, INC did not rightfully own any interest in the '360 patent. On March 18, 1994, Schwitters and Masquelier attempted to transfer a one-half interest in the '360 patent (then owned by one of Masquelier's companies SCIPA) to INC. Both French law and an agreement between SCIPA and Horphag prevented such a transfer. In fact, in October of 1995, Horphag challenged such assignment by initiating a lawsuit in France against INC, SCIPA, Masquelier and others (Horphag v. SCIPA, et al.; Gen. Roll no.: 13618/95). On March 25, 1997, the District Court of Bordeaux, France issued a decision in that lawsuit brought by Horphag and determined that this transfer was indeed invalid ab initio and that INC had no rights to the '360 patent. On May 28, 1998, the Appellate Court of Bordeaux upheld that determination.

Notwithstanding the pendency of such French actions and their ultimate determinations that INC had no rights to the '360 patent, the Defendants maintained the action in the District of Connecticut and initiated and maintained the second lawsuit in the Northern District of California. The Defendants also misrepresented the effect of those French Court decisions and decisions rendered in both the District of Connecticut and the Northern District of

-7-

California in various public statements and advertisements. The Defendants did such to force market participants to purchase OPC product only from Defendants IBC or INC.

The Defendants' conduct and misleading claims continued into 2003 through further misrepresentations and a fraudulent corporate merger. Ultimately, on or about April 24, 2003, CEP, a company now owned by INC, entered into an agreement with Horphag regarding the '360 patent. Shortly thereafter and citing that agreement, INC once again threatened to sue the Plaintiff for infringement of the '360 patent.

The Defendants' conduct, as well as other evidence that will be presented at trial, forms the basis for the Plaintiff's anti-trust claims. The Plaintiff seeks recovery for the following damages: (1) attorneys' fees and costs it incurred in defending the meritless patent infringement suit brought by the Defendants in INC's name; and (2) lost profits arising from the Defendants' anticompetitive and unfair restrain on trade. These damages are to be trebled also pursuant to 15 U.S.C. § 15 and Conn. Gen. Stat. § 35-35. The Plaintiff also seeks its attorneys' fees and costs in prosecuting the present action pursuant to 15 U.S.C. § 15 and Conn. Gen. Stat. § 35-35.

*B. CUTPA Violation.*

The Plaintiff's third claim is for the Defendants' CUTPA violations. The Plaintiff alleges that Defendants' violation of the federal and state anti-trust laws, the Lanham Act, vexatious litigation for infringement of the '360 patent and tortious interference with business expectancies were each unfair trade practices in violation of Conn. Gen. Stat. §42-110a.

The Plaintiff seeks just compensation for its lost profits arising from Defendants' activities including its attorneys' fees in defending <u>International Nutrition Company v. Horphag Research Ltd.</u>, 3:96-CV-00386 (DJS). The Plaintiff also seeks punitive damages and its attorneys' fees in this action.

### C. Lanham Act Violations.

The Plaintiff's fourth claim requests relief from the Defendants' alleged Lanham Act violations. It is unlawful pursuant to 15 U.S.C. § 1125 to make false or misleading descriptions of fact and false and misleading representations of fact. The Plaintiff claims that INC, Schwitters, Masquelier, IBC, PSI and Primary Source made such false and misleading descriptions and representations of fact. Specifically, those Defendants misrepresented and falsely described their rights with respect to the '360 patent; their rights to sell OPC product in the market; their associations with other market participants; the rights of others to manufacture and sell OPCs and their ability to manufacture products pursuant to the '360 patent. In addition, IBC, PSI and Primary Source falsely described their products in a fashion that misrepresented the contents of those products, and make false statements regarding the Plaintiff's goods, services and commercial activities.

In support of these claims, the Plaintiff will introduce testimonial evidence from Schwitters, Zivin, Masquelier, Ms. Sue Taggart, Mr. Gary Senecal, Mr. Jarrow Rogavin, Mr. Sid Shasti, Mr. Greg Ris, as well as others involved in the industry, and Dr. Michael Willoughby. The Plaintiff will also rely upon press releases, publications, product literature and product labeling issued by certain of the Defendants, as well as claims made by Zivin in correspondence

CTDOCS:13370.1

to market participants.

The Plaintiff requests that the Defendants be enjoined from making false and misleading descriptions and representations of fact respecting the '360 patent and OPC product. Pursuant to 15 U.S.C. § 1117 the Plaintiff further requests (1) the recovery Defendants' profits; (2) recovery of the Plaintiff's lost profits; and (3) Plaintiff's costs for bringing this action, including Plaintiff's attorneys' fees.  These damages should trebled pursuant to 15 U.S.C. §1117(a).

### D. Vexatious Litigation.

The Plaintiff alleges that all Defendants were involved, either in name or in the name of another, in the initiation and maintenance of a baseless civil action.  That action was International Nutrition Company v. Horphag Research Ltd., 3:96-CV-00386 (DJS), and was commenced and prosecuted without probable cause, and with malicious intent unjustly to vex and trouble the Plaintiff all in violation of Conn. Gen. Stat. § 52-586.  Various court decisions, legal documents and correspondence will show that the Defendants knew or should have know that Defendant INC did not own any interest in the '360 patent.  Moreover, the same will demonstrate that the Defendants had no basis in initiating an action for patent infringement without the co-owner of the '360 patent participating as a plaintiff in that action. Notwithstanding, the Defendants initiated and maintained International Nutrition Company v. Horphag Research Ltd., 3:96-CV-00386 (DJS).  That action terminated in JFI's favor in that the court entered summary judgment against INC on its patent infringement claims, which was affirmed by the United States Court of Appeals for the Federal Circuit, and INC's trademark

-10-

infringement claims were withdrawn with prejudice.

The Plaintiff seeks to recover its costs and fees in defending <u>International Nutrition Company v. Horphag Research Ltd.</u>, 3:96-CV-00386 (DJS), its damages by way of expenditure of corporate resources, such as lost productivity of executives, and its injury by way of loss of reputation in the marketplace and lost profits. The Plaintiff seeks these damages trebled, pursuant to Conn. Gen. Stat. § 52-568, or doubled in the absence of a finding of malicious intent unjustly to vex pursuant to the same statute.

### E. Tortious Interference.

The Plaintiff alleges that the Defendants (excepting Defendant Zivin) tortiously interfered with the Plaintiff's business expectancies. Its claims are based on the facts that the Plaintiff had existing business relationships and expectancies selling products containing OPCs. The Defendants had knowledge of such expectancies. The Plaintiff claims that the Defendants intentionally interfered with such relationships and expectancies through their misrepresentations as to ownership of the '360 patent, and initiation and prosecution of a meritless suit for infringement of the '360 patent. The Defendants also through threatening publications and correspondence intimidated and molested Plaintiff and its customers and prospective customers thereby disrupting those relationships and expectancies all to the injury of the Plaintiff.

The Plaintiff seeks to recover its lost profits that resulted from the Defendants' activities. In addition, the Plaintiff seeks punitive, such as attorneys' fees, and special damages.

-11-

**<u>Defendants' Summary</u>**

The defendants deny all material allegations of the Complaint and do not join in plaintiff's summary of the case. This case is simply one in a series of retaliatory lawsuits brought by the plaintiff and its principal, Mr. Jarrow Rogovin, to harass whatever parties and counsel have dared to sue plaintiff. The Court previously granted summary judgment to Attorney Zivin on all claims against him except for the vexatious litigation claim.

The crux of plaintiff's case relies on the sham litigation exception to the <u>Noerr-Pennington</u> doctrine under the antitrust laws. Plaintiff's common law and Lanham Act claims essentially depend on the sham litigation allegation.

### A.    *Federal and State Antitrust Claims*

#### 1.    *Sham Litigation Exception to <u>Noerr-Pennington Doctrine</u>*

In the early to mid-1990s, the plaintiff and numerous other companies were infringing the '360 patent and the OPC-85 trademark. The '360 patent claims use of proanthocyanidins (complex compounds found in plants) for scavenging of free radicals but does not cover any product or composition as such or any extraction method, production, or manufacture of any product. In 1996, INC brought an action against several companies, including Jarrow, for patent and trademark infringement.

In order to prove its antitrust claims, Jarrow must show that the underlying lawsuit was a sham, *i.e.*, objectively baseless. The underlying action was not objectively baseless because, among other reasons, Jarrow and the other defendants in that action were infringing the '360 patent and infringing INC's trademark. Consequently, INC's goal in bringing the lawsuit to

-12-

prevent such infringement was legitimate.  The underlying action was disposed of on standing grounds and not on the merits.

### 2.      Dietary Supplements

The market for dietary supplements is highly competitive and has low concentration and ease of entry.   The competitive nature of this industry is evidenced by the large number of firms and aggressive advertising and price competition at the supplier, wholesale, and retail levels. Because numerous other products compete with products containing PACs for consumers' dollars, the relevant product market cannot be the "OPC market," contrary to plaintiffs' claims.

### 3.      Sherman Act claims

The defendants did not conspire to restrain trade or conspire or attempt to monopolize any market, let alone the market inappropriately proposed by the plaintiff.

As to § 1 of the Sherman Act, Jarrow cannot prove that there existed a conspiracy to commit an unlawful anticompetitive act in a relevant market, that the underlying patent and trademark infringement action was an unreasonable restraint of trade in any market, or that there was injury to competition or Jarrow in a relevant market.

Jarrow cannot show a violation of Sherman Act § 2.  It has no credible evidence to support its contentions regarding the relevant market; it cannot show that INC or any defendant intended and acted to obtain a monopoly; there was no possibility, let alone probability, that INC or any defendant would obtain monopoly power in light of strong competition and ease of entry by companies worldwide and INC's low market share; and Jarrow has no evidence to show harm to competition or to any competitor.  Jarrow's Sherman Act § 2 conspiracy claims fail for the

-13-

same reasons.

### B.    Lanham Act Claims

Jarrow never clearly alleged that any defendant made false or misleading descriptions or representations of fact.  In any event, the defendants did not use false or misleading descriptions or representations of fact, and Jarrow cannot prove the elements of this claim.  Jarrow cannot prove that any defendant made false statements that misrepresented an inherent quality or characteristic of the product or that consumers were likely to be confused.  Jarrow, therefore, cannot show any harm or entitlement to damages.

### C.    Vexatious Litigation

The underlying action for patent and trademark infringement was brought with probable cause and without malice.  Jarrow can prove neither lack of probable cause nor malice.

### D.    Tortious Interference

No defendant intentionally interfered with or caused harm to Jarrow's business expectancies.

### E.    CUTPA

Jarrow's CUTPA claim is premised solely on its other claims.  Since those claims fail, so must the claim under CUTPA.

### F.    Damages

Jarrow cannot prove any damages it claims to have sustained were due to actions of the defendants or due to any anticompetitive effect.  Furthermore, Jarrow's damages claims are

-14-

CTDOCS:13370.1

limited by the relevant statutes of limitations and the various dates of service of the operative Complaint on the various defendants.

### G.    *Affirmative Defenses*

1.    The Court lacks personal jurisdiction over Mr. Masquelier and Mr. Schwitters;

2.    The complaint fails to state a claim against defendants upon which relief can be granted;

3.    Dr. Masquelier sells no products and, therefore, cannot be liable for any restraints of trade, attempts to monopolize, unfair trade practices or false descriptions or representation;

4.    Plaintiff's claims are barred by plaintiff's unclean hands;

5.    Plaintiff's claims are barred by the Statute of Limitations;

6.    Plaintiff's claims are barred by the Noerr-Pennington doctrine;

7.    Plaintiff's claims are barred by the doctrine of res judicata;

8.    The defendants had a good faith belief in the validity of the claims asserted in the Connecticut and California actions referred to in the complaint.

## VII.    Trial by Magistrate Judge

The parties do not agree to a trial by Magistrate Judge.

## VIII.   Witnesses

CTDOCS:13370.1

A. *For the Plaintiff*:

Plaintiff intends to call the following witnesses at trial or may submit such testimony that has been elicited through deposition, either oral or written:

| Name / Address | Possible Testimony |
|---|---|
| Mr. Jarrow L. Rogovin<br>President<br>Jarrow Formulas, Inc.<br>1824 S. Robertson Blvd.<br>Los Angeles, CA 90035-4317<br><br>**Estimated time for direct and cross examination: 4 hours** | Mr. Rogovin's testimony may include, but will not be limited to, the following areas: (1) the properties that made OPCs unique to the nutraceutical market during the relevant time period; (2) the lack of substitute products for OPCs during the relevant time period; (3) the OPC market during the relevant time period; (4) consumers of OPCs during the relevant time period; (5) Jarrow Formulas, Inc.'s OPC sales from 1990 to the present; (6) Jarrow Formulas, Inc's overall sales from 1990 to the present; (7) the underlying infringement litigations; (8) Defendants' advertisements and press releases concerning their claim of ownership in the '360 patent; (9) costs and expenditure incurred in defending the underlying litigation; (10) Defendants' conduct in the OPC marketplace; and (11) unenforceability and invalidity of the '360 patent. |
| Mr. Sid Shastri<br>VP, Product Development<br>Jarrow Formulas, Inc.<br>1824 S. Robertson Blvd.<br>Los Angeles, CA 90035-4317<br><br>**Estimated time for direct and cross examination: 6 hours** | Mr. Shastri's testimony may include, but will not be limited to, the following areas: (1) the properties that made OPCs unique to the neutraceutical market during the relevant time period; (2) the lack of substitute products for OPCs during the relevant time period; (3) the OPC market during the relevant time period; (4) consumers of OPCs during the relevant time period; (5) Jarrow Formulas, Inc.'s OPC sales from 1990 to the present; (6) Jarrow Formulas, Inc's overall sales from 1990 to the present; (7) the underlying infringement litigations; (8) Defendants' advertisements and press releases concerning their claim of ownership in the '360 patent; and (9) Defendants' conduct in the OPC marketplace. |

| Name / Address | Possible Testimony |
|---|---|
| Mr. Gregory Ris<br>Vice President of Sales<br>Indena USA Inc.<br>811 First Avenue, Suite 218<br>Seattle, WA 98104<br><br>**Estimated time for direct and cross examination: 4 hours** | Mr. Ris' testimony may include, but will not be limited to, the following areas: (1) his expert reports; (2) the properties that made OPCs unique to the neutraceutical market during the relevant time period; (3) the lack of substitute products for OPCs during the relevant time period; (4) the OPC market during the relevant time period; (5) consumers of OPCs during the relevant time period; (6) Indena USA Inc.'s OPC sales from 1990 to the present; (7) Indena USA Inc.'s overall sales from 1990 to the present; (8) Indena S.p.A.'s OPC sales in Europe from 1990 to the present; (9) the underlying infringement litigations; (10) Defendants' advertisements and press releases concerning their claim of ownership in the '360 patent; and (11) Defendants' conduct in the OPC market. |
| Dr. Michael G. Willoughby<br><br>**Estimated time for direct and cross examination: 3 hours** | Dr. Willoughby's testimony may include, but will not be limited to, the following areas: (1) his expert reports; (2) rebuttal of Mr. Pearsall's expert report; (3) rebuttal of Mr. Pearsall's testimony; (4) the OPC market during the relevant time period; (5) OPC sales during the relevant time period; and (6) Plaintiff's damages resulting from Defendants' conduct. |
| Mr. Egbert Scwhitters<br><br>**Estimated time for direct and cross examination: 3 hours** | Mr. Schwitters's testimony may include, but will not be limited to, the following areas: (1) his contacts with the State of Connecticut; (2) the organization and structures of INC, INC Agency BV, SCIPA, CEP, Holland Health, Schwitters BV and Merchant International; (3) litigation respecting the '360 patent and corporate mergers in France; (4) press releases; (5) conspiratory, anti-competitive and unlawful behavior of the Defendants; (6) profits realized from such conduct; (7) lack of substitute product during relevant time-periods; and (8) authentication of documents. |

| Name / Address | Possible Testimony |
|---|---|
| Mr. Norman H. Zivin<br><br>**Estimated time for direct and cross examination:  3 hours** | Mr. Zivin's testimony may include, but will not be limited to, the following areas:  (1) his knowledge of facts concurrent with various court and public filings; (2) his knowledge of facts and circumstances related to the various bad acts of the Defendants; (3) facts and circumstance surrounding his issuance of cease and desist letters; (4) facts and circumstances surrounding the entering into of various agreements including, but not limited to, licensing agreements; (5) his review of press releases issued by the Defendants; (6) his involvement with and knowledge of French lawsuits; and (7) authentication of documents. |
| Mr. Gary Senecal<br><br>**Estimated time for direct and cross examination:  3 hours** | Mr. Senecal's testimony may include, but will not be limited to, the following areas:  (1) his contacts with Schwitters, INC, INC Agency BV, SCIPA, CEP, Holland Health, Schwitters BV and Merchant International; (2) litigation respecting the '360 patent; (3) activities of IBC, PSI, Primary Source and Primary Services International LLC; (4) press releases; (5) conspiratory, anti-competitive and unlawful behavior of the Defendants; (6) profits realized from such conduct; (7) lack of substitute product during relevant time-periods; and (8) authentication of documents. |
| Mr. Gary LeFebvre<br><br>**Estimated time for direct and cross examination:  3 hours** | Mr. LeFebvre's testimony may include, but will not be limited to, the following areas:  (1) his contacts with Schwitters, INC, INC Agency BV, SCIPA, CEP, Holland Health, Schwitters BV and Merchant International; (2) litigation respecting the '360 patent; (3) activities of IBC, PSI, Primary Source and Primary Services International LLC; (4) press releases; (5) conspiratory, anti-competitive and unlawful behavior of the Defendants; (6) profits realized from such conduct; and (7) authentication of documents. |

-18-

| Name / Address | Possible Testimony |
|---|---|
| Mr. Jack Masquelier<br><br>Mr. Masquelier's testimony is currently by written deposition. The Plaintiff reserves the to ask that the Defendants produce him for trial.<br><br>**Estimated time for direct and cross examination: 2 hours** | Mr. Masquelier's testimony may include, but will not be limited to, the following areas: (1) his application for the '360 patent and communications to the USPTO regarding the application and reexamination of the '360 patent; (2) corporate mergers and agreements respecting companies with which he once had or now has any interest; (3) litigation respecting the '360 patent and corporate mergers in France; (4) press releases; (5) conspiratory, anti-competitive and unlawful behavior of the Defendants; (6) profits realized from such conduct; and (7) authentication of documents. |
| Mark Timon<br><br>**Estimated time for direct and cross examination: 3 hours** | Mr. Timon's testimony may include, but will not be limited to, the following areas: (1) his contacts with Schwitters, INC, INC Agency BV, SCIPA, CEP, Holland Health, Schwitters BV and Merchant International; (2) litigation respecting the '360 patent; (3) press releases; (4) conspiratory, anti-competitive and unlawful behavior of the Defendants; (5) operations, activities and profits of IBC, PSI, Primary Source and Primary Services International LLC; and (6) authentication of documents. |
| Ms. Sue Taggart<br><br>**Estimated time for direct and cross examination: 2 hours** | Ms. Taggart's testimony may include, but will not be limited to, the following areas: (1) her contacts with Schwitters, INC, IBC, PSI, Primary Source and Primary Services LLC; and (2) press releases. |
| Peter Broadhead<br>Brighter Day Foods<br><br>**Estimated time for direct and cross examination: 2 hours** | Mr. Broadhead will testify as to the unique properties of and consumer perception of OPCs during the relevant time period. |
| Don Goldberg, R.Ph.<br>Willner Chemists<br><br>**Estimated time for direct and cross examination: 2 hours** | Mr. Goldberg will testify as to the unique properties of and consumer perception of OPCs during the relevant time period. |

CTDOCS:13370.1

The Plaintiff reserves the right to call any and all witnesses listed by the Defendants to testify as to the subject matters identified by the Defendants or related topics.

### B.  For the Defendants:

Defendants intend to call the following witnesses at trial:

| Name / Address | Possible Testimony |
|---|---|
| Mr. Egbert Schwitters<br>International Nutrition Company<br>De Zodde 16<br>1231 MB Loosdrecht<br>The Netherlands<br><br>**Estimated time for direct and cross-examination:  5 hours** | Mr. Schwitters' testimony may include without limitation the following topics:  (1) the underlying lawsuit for patent and trademark infringement, publicity about such litigation, and any effect of the litigation on PAC products; (2) structure of and competition in the supplements industry; (3) nature and characteristics of PACs; (4) litigation in connection with the '360 patent; (5) ownership of the '360 patent; (6) advertisement of products covered by the '360 patent; (7) the defenses of lack of personal jurisdiction; (8) corporate organization and structure |
| Norman H. Zivin, Esq.<br>Cooper & Dunham LLP<br>1185 Avenue of the Americas<br>New York, NY 10036<br><br>**Estimated time for direct and cross-examination:  5 hours** | Mr. Zivin's testimony may include without limitation the following topics:  (1) the underlying action; (2) the '360 patent; (3) re-examination of the '360 patent; (4) litigation in connection with the '360 patent; (5) communications with Mr. Jarrow Rogovin; (6) prior action by Horphag under the '360 patent; (7) ownership of the '360 patent; (8) licensing of the '360 patent; (9) cease and desist letters; (10) patent and trademark law |
| Mr. Gary Senecal<br>120 Eider Lane<br>Eastham, MA<br><br>**Estimated time for direct and cross-examination:  3 hours** | Mr. Senecal's testimony may include without limitation the following topics:  (1) structure of and competition in the supplements industry; (2) nature and characteristics of PACs; (3) the underlying action, publicity about such litigation, and any effect of the litigation on PAC products; (4) advertisement of products covered by the '360 patent; (5) corporate organization and structure; (6) distribution of products containing PACs; (7) Mr. Rogovin's misconduct at the October 1996 trade show in Baltimore |