worked together to accomplish a common purpose. It is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.

Direct proof of an agreement may not be available. A conspiracy may, however, be evidenced by the circumstances or by the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words that they used. Actions which had the effect of promoting the ends of the alleged conspiracy are evidence that may be considered in determining whether a conspiracy between any of the charged defendants existed. Mere similarity of conduct or the fact that the members associated with each other does not prove a conspiracy unless such evidence tends to exclude the possibility that the members were acting independently.

The evidence does not have to show that all of the means or methods claimed by the plaintiff were agreed upon to carry out the alleged conspiracy; nor that all of the means or methods that were agreed upon were actually put into operation; nor that all the persons alleged to be members of the conspiracy actually were members. Therefore, if you find that some part of the actions alleged by the plaintiff were not undertaken as part of the conspiracy, or that one of the charged defendants was not a member of the conspiracy, these facts alone do not mean that a conspiracy did not exist. To satisfy its burden of proof, plaintiff must show that the alleged conspiracy of two or more persons existed, that one or more of the means or methods alleged was used to carry out its purpose, and that those defendants found liable knowingly became members of the conspiracy.

CTDOCS:13370.1

Some of the defendants in this case are corporations. Under the law, a corporation is a person, but it can act only through its agents – such as its officers, employees, or others acting on its behalf. A corporation is not capable in law of conspiring with its own agents or employees. Through its agents or employees, however, it is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and the statements of its agents or employees done in the course of their employment or under the apparent authority of the corporation. Acts done within the scope of employment are acts performed on behalf of the corporation and directly related to the performance of the duties the agent or employee has general authority to perform. Apparent authority is the authority that outsiders could reasonably assume the agent or employee would have, judging from the position held with the company, the responsibilities previously entrusted to him or his office, and the circumstances surrounding his past conduct.

The fact that a corporation may have instructed its employees or agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents or employees done within the scope of their employment or apparent authority.

If it appears from a preponderance of the evidence that the conspiracy alleged by Jarrow Formulas was knowingly formed and that the defendants, or one or more of them, knowingly became members of the conspiracy, either at the beginning of the plan or scheme or afterwards, then the success or failure of the conspiracy to accomplish the common object or purpose is immaterial, so long as Jarrow Formulas sustained some damage as a result of the conspiracy.

## DAMAGES FOR ANTITRUST VIOLATIONS

If you should find from a preponderance of the evidence in the case that Jarrow Formulas is entitled to a verdict, the law provides that Jarrow Formulas is to be fairly compensated for all damages to Jarrow Formulas' business or property that were proximately caused by the conduct of the defendants.  In this case, Jarrow Formulas claims damages in the form of lost sales and profits on those lost sales, the money and corporate resources expended in defending against the defendants' infringement lawsuit, and losses resulting from defendants' false and disparaging statements regarding Jarrow Formulas.

If you should find by a preponderance of the evidence in the case that damage to Jarrow Formulas' business or property, such as a loss in profits or the money and resources expended in defending the defendants' patent infringement claims, was proximately caused by the defendants' illegal conduct complained of, then the circumstances that the precise amount of Jarrow Formulas' damages may be difficult to ascertain should not affect Jarrow Formulas' recovery, particularly if the defendants' wrongdoings have caused the difficulty in determining the precise amount.  On the other hand, Jarrow Formulas cannot be awarded purely speculative damages.  An award must be based on evidence providing a basis for a reasonable estimate of the damages suffered.

An allowance for lost profits may be included in the damages awarded, only when there is some reasonable basis in the evidence for determining that Jarrow Formulas has in fact suffered a loss of profits, even though the amount of such loss is difficult of ascertainment.  In arriving at the amount of any loss of profits sustained by Jarrow Formulas, you are entitled to consider any past earnings of Jarrow Formulas in the business in question, as well as any other evidence in the case bearing on the issue.

-83-

In considering the element of future profits in determining what damages, if any, were sustained by Jarrow Formulas, if, because of a violation of the antitrust laws, Jarrow Formulas was unable to earn net profits that would have accrued to it but for a violation of the antitrust laws, then Jarrow Formulas was in fact damaged.

Future profits mean net profits. They are determined by subtracting the costs and expenses of a business from its gross revenue. The fact that a plaintiff's business may have been new or unestablished is not fatal to the element of damages constituting net profits. In determining whether or not any part of Jarrow Formulas' damages constitute future net profits, you may consider the uncertainty that makes the success of a new business problematical, the experience of Jarrow Formulas' officers in the business, the competition that Jarrow Formulas would have had in the market and the general market conditions.

The fact that I have instructed you as to the proper measure of damages should not be considered as suggesting any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance, in the event that you should find in favor of Jarrow Formulas from a preponderance of the evidence in the case in accordance with the other instructions.

## CONNECTICUT UNFAIR TRADE PRACTICES ACT

In the third count of the Verified Complaint, the plaintiff, Jarrow Formulas, claims that the defendants violated the Connecticut Unfair Trade Practices Act, a Connecticut law, commonly known as CUTPA. The plaintiff must prove this claim by a preponderance of the evidence. The plaintiff must prove that the defendant engaged in an unfair method of

-84-

competition or a deceptive act or practice in the conduct of trade or commerce and that this caused the plaintiff to sustain an ascertainable loss.

As the first step in deciding whether the defendants violated CUTPA, you must determine whether the defendants' actions were carried out in the course of their trade or commerce. An action is carried out in the defendant's trade or commerce if it is part of the business, the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article or commodity, or thing of value in Connecticut. If you find that selling dietary supplements containing OPCs was part of the defendants' business, then I instruct you that you must find that the conduct occurred in the defendant's trade or commerce.

The plaintiff Jarrow Formulas claims that the defendants' violated CUTPA by each of the following actions: bringing vexatious suits for infringement of the '360 patent, violation of the antitrust laws, and the defendants' false and deceptive statements and advertisements regarding the ownership of the '360 patent and disparaging Jarrow Formulas and its President, Jarrow Rogovin. Certain guidelines have been established to determine what constitutes an unfair trade practice. The plaintiff must prove that the defendant's actions meet at least one of the following three criteria:

it offends public policy as it has been established by the statutes, the common law or other established concept of unfairness; or

it is immoral, unethical, oppressive or unscrupulous; or

-85-

it causes substantial injury to consumers, competitors or other business persons.

I will now give you additional instruction on these criteria.

Plaintiff Jarrow Formulas asserts that the defendants' violation of the federal and state antitrust laws, false or misleading statements of fact regarding the '360 patent in advertising and disparagement of Jarrow Formulas in violation of the Lanham Act, and vexatious litigation regarding infringement of the '360 patent constituted unfair trade practices because each of these acts "offends public policy". The statutes that Jarrow Formulas claims were violated, the Lanham Act, the state and federal antitrust laws, and the Connecticut Statute regarding vexatious litigation establish, the public policy of the State of Connecticut regarding standards of competition that is fair and reasonable. Violation of a statute does not automatically result in a CUTPA violation. Therefore, even if you find that the defendants violated one or more of these statutes, you must still decide whether Jarrow Formulas has proved that the defendants' statutory violation "offends public policy" as established by the statute.

Jarrow Formulas also asserts that the defendants' conduct in bringing suit on the '360 patent while ownership was contested, and false public statements regarding the '360 patent and Jarrow Formulas, constituted an unfair trade practice because it was "immoral, unethical, oppressive or unscrupulous." You must determine whether the conduct of the defendants in bringing and continuing its lawsuit regarding the '360 patent or its public statements regarding the '360 patents and Jarrow Formulas were "immoral, unethical, oppressive or unscrupulous."

Jarrow Formulas also claims that the defendants' conduct was deceptive, and that it therefore violated CUTPA. The plaintiff must prove three elements by a preponderance of the

-86-

evidence to establish that conduct was deceptive. First, there must be a representation, omission,

or other practice likely to mislead consumers. The plaintiff does not have to prove that the

defendant intended to deceive those customers or that the defendant knew that its act or

statement was false. Second, the consumers must interpret the message reasonably under the

circumstances. Third, the misleading representation, omission, or practice must be material --

that is, likely to affect consumer decisions or conduct.

       If you find that Jarrow Formulas has proven that the defendant committed an

unfair trade practice or deceptive act or engaged in unfair competition that violates CUTPA,

Jarrow Formulas must also establish that it has sustained an "ascertainable loss." The plaintiff

has the burden of proving this "ascertainable loss" by a preponderance of the evidence. A loss is

a deprivation, detriment or injury. A loss is ascertainable if it is capable of being discovered,

observed, or established, but need not be measured by a dollar amount.

       If you find that Jarrow Formulas has proven by a preponderance of the evidence

that the defendants have violated CUTPA, defendants are entitled to recover any actual damages

proven by the plaintiff which were proximately caused by the defendants' conduct. The plaintiff

is not required to prove the amount of the damages with absolute certainty, but is required to

present evidence providing a basis for a reasonable estimate of the damages suffered.

       In this case, Jarrow Formulas claims damages in the form of lost sales and profits,

and money and corporate resources expended in defending against the defendants' infringement

lawsuit, and losses resulting from defendants' false and disparaging statements regarding Jarrow

Formulas. If you find that the defendants' violated CUTPA by their acts, then it is for you to

-87-

decide the amount of damages, if any, to be awarded to Jarrow Formulas as a result of that violation.

LANHAM ACT

In the Fourth Count of the Complaint, plaintiff Jarrow Formulas has alleged that the defendants have violated Section 43(a) of the Lanham Act by making false or misleading statements of fact regarding ownership of the '360 patent and Jarrow Formula's right to sell proanthocyanidins in dietary supplements in the United States. Jarrow Formulas has also alleged that the defendants disparaged Jarrow Formulas' commercial activities.

To prevail on its claim of false advertising under the Lanham Act, plaintiff Jarrow Formulas must prove, by a preponderance of the evidence, each of the following elements:

First, that defendants made one or more false or misleading statements of fact in a commercial advertisement;

Second, that the false or misleading statements actually deceives or has a tendency to deceive a substantial segment of its audience;

Third, that the deception is material, that is the deception is likely to influence the purchasing decision;

Fourth, that the defendants placed the statements into interstate commerce; and

CTDOCS:13370.1

Fifth, that the plaintiff has been or is likely to be injured as a result of the statement, either by direct diversion of sales to defendants or by a lessening of goodwill associated with the plaintiff's products.

The plaintiff Jarrow Formulas has also alleged that the defendants disparaged Jarrow Formulas' commercial activities. Commercial disparagement consists of a false statement made with the intent to call into question the quality of a competitor's goods or services in order to inflict economic harm on that competitor.

In a claim for commercial disparagement, the plaintiff must prove by a preponderance of the evidence that the defendants have made a disparaging statement about or concerning the plaintiff. The statement must be one that was false and made publicly. It must also be a statement that damaged the plaintiff.

A statement is considered disparaging if it tends to injure the plaintiff's reputation in the community and exposes him or her to hatred, ridicule or contempt. You must determine if the statements alleged in this case, and the circumstances under which they were made, discredits the plaintiff in the minds of any considerable, respectable class of the community.

Jarrow Formulas seeks damages under it Lanham Act claim for lost profits, injury to its good will and damage to its reputation. To recover damages for lost profits, Jarrow Formulas must show that customers were actually deceived by the false advertising and that Jarrow Formulas was harmed as a result. Compensation for loss of good will and damage to reputation may be awarded if you find a reasonable basis in the evidence to assign a value to the

CTDOCS:13370.1

loss of good will or damage to reputation. Damages cannot be warded based on speculation, but damages need not be proven with certainty.

## VEXATIOUS LITIGATION

The plaintiff, Jarrow Formulas, is seeking damages for the period after March 23, 1997 under a claim known in the law as vexatious litigation. This claim is made against all of the defendants, including Defendant Zivin. There is no dispute that Jarrow Formulas was previously sued by defendant INC in a lawsuit in which summary judgment was entered in favor of Jarrow Formulas. In order to recover damages for vexatious litigation, Jarrow Formulas must prove by a preponderance of the evidence that the Defendants brought that lawsuit without probable cause and that they did so with malice.

Probable cause to bring a lawsuit means that the defendants had knowledge of facts which would be sufficient to justify a reasonable person to believe that there were reasonable grounds to institute and continue to prosecute the lawsuit. It is not enough that the person believe, no matter how sincerely, that there were grounds. The issue for you to decide is would a reasonable person, situated as the Defendants were, under the circumstances, believe there were reasonable grounds for filing the lawsuit.

Plaintiff Jarrow Formulas also must prove that the Defendants brought the lawsuit with malice. In the law, the word malice has a broader significance than we normally give to it in ordinary conversation. We usually think of malice as meaning hatred or ill will felt for another person, a desire to do him injury, and like states of mind. Malice in law does include in its meaning such states of mind, but it also means acting with any unjustifiable motive or purpose.

-90-

If you conclude that the defendants acted without probable cause, you may consider that in deciding whether the defendants acted with malice. Lack of probable cause does not establish malice, but if, in view of all of the evidence and circumstances, you conclude that it is reasonable to make that inference, it is your right to do so.

If you find that Jarrow Formulas has proven the elements to establish that the defendants are liable for vexatious litigation, then you must determine the damages to be awarded to Jarrow Formulas. Jarrow Formulas may recover its actual damages for injuries suffered as a result of the vexatious litigation, which may include loss or injury to its business or property as a result of the litigation, and loss of reputation or goodwill resulting from the institution of the action. It is for you to determine the damages proven.

## TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

The plaintiff, Jarrow Formulas, has also claimed that the defendants tortiously interfered with its business expectancy to sell dietary supplements containing proanthocyanidins in the United States. There are four elements to this claim that Jarrow Formulas must prove by a preponderance of the evidence. I will explain each of these elements to you.

First, Jarrow Formulas must prove that it had an existing business expectancy to sell dietary supplements containing proanthocyanidins in the United States. To prove this, Jarrow Formulas must show that it had a reasonable prospect of entering into a contractual or business relationship for the sale of such dietary supplements. There is no dispute that Jarrow Formulas had entered into contractual or business relationships for the sale of such dietary supplements,

-91-

CTDOCS:13370.1

and had an expectancy to enter into further contracts and relationships. Therefore, you must find for Jarrow Formulas as to this element of the claim.

Second, Jarrow Formulas must prove that defendants knew of Jarrow Formulas' business expectancy. The defendants had to be actually aware that the business expectancy existed. Jarrow Formulas cannot recover for an unknowing interference. The defendants did not have to be aware of the details of Jarrow Formulas' business expectancy, merely that the business expectancy existed. There is no dispute that defendants were aware of Jarrow Formula's existing business and business expectancy regarding the sales of dietary supplements containing proanthocyanidins. Therefore, you also must find for Jarrow Formulas on this element of the claim.

Third, Jarrow Formulas must prove that the defendants tortiously interfered with that business expectancy. Interference is tortuous if it is wrongful. Not every act that disturbs a business expectancy is wrongful. For example, competing for the same business is not by itself wrongful. To prove that the interference was tortious, Jarrow Formulas must show that when the defendants interfered, they engaged in fraud, misrepresentation or that they acted maliciously. To act maliciously means to act intentionally without justification. Jarrow Formulas has the burden of proving that the defendants did not have justification for the interference. It is for you to determine whether the defendants' tortiously interfered with Jarrow Formulas' business expectancy.

Finally, if you find that the defendants tortiously interfered with Jarrow Formula's business expectancy, then you must decide if Jarrow Formulas has proven that it suffered an

-92-

actual loss as a result of that interference. Jarrow Formulas must prove that, but for the tortious interference, there was a reasonable probability that Jarrow Formulas would have made a profit from additional sales of dietary supplements containing proanthocyanidins. Although Jarrow Formulas must show more than a mere possibility that it would have made a profit, it need not prove a specific amount of the loss to establish that it suffered an actual loss.

Jarrow Formulas must prove the amount of damages to be awarded by a preponderance of the evidence. The evidence must give you a sufficient basis to estimate the amount of damages to a reasonable certainty. You may not award damages based on guess, speculation or conjecture, but you may award damages based upon reasonable and probable estimates supported by the evidence.

Under Connecticut law, Jarrow Formulas may recover damages for (1) the loss of the benefits of the business expectancy, (2) lost profits, and (3) harm to the reputation of plainitff. I will explain each of these elements of damages to you now in more detail.

The loss of the benefits of the business expectancy is intended to place the plaintiff, so far as can be done by money, in the same position as it would have been in if the plaintiff's business expectancy had been realized. You should determine the fair and reasonable value, in money, of the position that the plaintiff would be in if the defendant had not interfered with the plaintiff's business expectancy. Then you should determine the fair and reasonable value, in money, of the position that the plaintiff was in at the time that the defendants interfered with plaintiff's business expectancy. The difference between these amounts should be the award for this element of damages.

-93-

Plaintiff Jarrow Formulas also claims lost profits as damages under its claim of tortious interference with business expectancies. To recover lost profits, the plaintiff must prove that it is reasonably certain that the plaintiff would have earned the profits but for the defendants' actions. The plaintiff cannot recover for the possibility of making a profit. You may award damages for lost profits only if the evidence affords you a sufficient basis for estimating the amount of lost profits with reasonable certainty.

Finally, Jarrow Formulas seeks damages for harm to its reputation which it claims resulted from the defendants' tortious interference with its business expectancies. You may award damages to the plaintiff for any harm to the reputation of the plaintiff that is reasonably expected to result from the interference. It is for you to determine whether such harm occurred and, if so, the amount of money that will compensate the plaintiff for such damage.

*E. Defendants' Proposed Jury Instructions.*

Defendants' proposed jury instructions are attached as Exhibit A.

THE PLAINTIFF,                              THE DEFENDANTS,

By _____             By _____
ERIC W. WIECHMANN (CT 04331)               RICHARD S. ORDER (CT 02761)
MARK D. GIARRATANA (CT 10401)              ERIC D. BEAL (CT 23167)
ERIC E. GRONDAHL (CT 08988)                Axinn, Veltrop & Harkrider LLP
ALEXANDRA B. STEVENS (CT 20300)            90 State House Square
JASON C. WELCH (CT 23418)                  Hartford, CT 06103
McCarter & English LLP                     (860) 275-8100
CityPlace I                                (860) 275-8101 (fax)
185 Asylum Street                          rso@avhlaw.com
Hartford, CT 06103
(860) 275-6700
(860) 724-3397 (fax)
ewiechmann@mccarter.com

-94-