However, a corporation is not capable in law of conspiring with its own directors, officers, agents, or employees, nor can a corporation conspire with its subdivisions or unincorporated divisions.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence or other relevant evidentiary standard. All persons, including corporations, are equal before the law.

(Fed. Jury Practice and Instr. § 150.02; ABA, B-8 to B-10)

**Defendants' Proposed Jury Instruction No. 13**

**Sherman Act Section 1 – Must be more than One Conspirator** In this suit, plaintiff alleges that INC, IBC, PSI, PS and Prof. Masquelier conspired with one or more of the named as co-conspirators. There can be no conspiracy unless more than one person is involved. The very word "conspiracy" means "together with." But it may be that not all the persons charged with being conspirators are conspirators. It may be that none of them is a conspirator.

In order to succeed, plaintiff does not have to show you that every one of the named defendants and named co-conspirators joined in the conspiracy, but plaintiff does have to show that at least one of these named defendants conspired with at least one other named defendant or co-conspirator.

There cannot be only one conspirator. There cannot be a conspiracy to violate the antitrust laws in this case unless you find that one of the defendants is a party to the alleged conspiracy.

You will note that there must be at least two separate persons or corporations who have reached an agreement or understanding in order to find that a conspiracy was formed. A single corporation cannot agree, combine or conspire with its own officers, employees, agents or subdivisions to supply the collaborative element of a Sherman Act violation.

However, one corporation can combine or conspire with another corporation if the two operate as separate entities. Affiliated corporations do not lose their separate existences in that respect merely because they are affiliated. On the other hand, no combination or conspiracy is possible under the law between corporations that are commonly owned and controlled and that regularly conduct their business affairs in such a manner as to constitute, in effect, a single business entity or enterprise. It is for you to determine on the basis of all the facts and

circumstances whether the defendants constituted separate and distinct corporate entities or a single, integrated business enterprise.

(FJPI § 150.41)

**Defendants' Proposed Jury Instruction No. 14**

**Sherman Act Section 1 - Participation and Intent**

Before you can find that a defendant was a member of the conspiracy alleged by plaintiff, the evidence must show that the defendant knowingly joined in the unlawful plan at its inception or at some later time with the intent to advance or further some object or purpose of the conspiracy.

To act knowingly means to act voluntarily and intentionally, and not because of mistake or accident or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. However, knowledge of the essential nature of the plan is required. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he had been one of those who formed or began the conspiracy and participated in every part of it.

The membership of a defendant in a conspiracy must be based only on evidence of his, her, or its own statements or conduct. In determining whether any defendant was a member of the alleged conspiracy, you should consider only the proof of that particular defendant's statements and conduct, including any evidence of that defendant's knowledge or lack of knowledge, status, and participation in the events involved, and any other evidence of participation in the conspiracy alleged.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those who you find were members of the conspiracy. But

statements of any conspirator that were not made in furtherance of the conspiracy, or that were made before its existence or after its termination, may be considered as evidence only against the person who made them.

Once a person is found by you to be a member of a conspiracy, he or she is presumed to remain a member and is responsible for all actions taken by all conspirators during and in furtherance of the conspiracy until it is shown that the conspiracy had been completed or abandoned.

(ABA, B-11 to B-12)

**Defendants' Proposed Jury Instruction No. 15**

**Sherman Act Section 1 - Reasonableness of Restraint**

Section 1 of the Sherman Act prohibits only restraints of trade that are unreasonable. Generally, in determining whether a practice is unreasonable, you must decide whether it had any effect on competition in the relevant market. Your task is to balance any aspects of the practice that were helpful to competition against any aspects that were harmful to it. In doing so, you should consider such factors as the particular business of the defendants, the condition of the relevant market before and after the practice at issue started; the history of the practice; the reason for adopting the practice; and defendants' purpose or intent.

Here, to show that the lawsuit unreasonably restrained trade, Jarrow must prove that defendants' activities substantially harmed competition in the relevant market. To show this, Jarrow must prove by a preponderance of the evidence:

*First*: what the relevant market is;

*Second*: that INC's patent infringement lawsuit had a substantially harmful effect on competition in that relevant market; and

*Third*: that the harmful effect on competition outweighed any beneficial effect on competition.

(ABA, A-4 to A-5)

**Defendants' Proposed Jury Instruction No. 16**

**Conspiracy in Restraint of Trade - Relevant Market**

My earlier instruction on the relevant market is applicable here.

To briefly summarize, before it can be determined whether a person has monopolized a field of competition in a particular line of trade or commerce, it must first be determined what is the "area of effective competition" applicable in this case. In antitrust law, this is known as defining what is called the "relevant market." Charges of an unreasonable restraint on trade can only be judged in the framework of the relevant market. Jarrow contends that the relevant market is the sale of PACs in the United States. Therefore, Jarrow must prove by a preponderance of the evidence that the relevant market applicable in this case is sale of products in the United States containing PACs used as antioxidants.

In determining the relevant market, the "area of effective competition" must be determined by reference to: (1) a product market and (2) a geographic market.

First, in determining the product market, the basic idea is that the products within it are interchangeable as a practical matter from the buyer's point of view. This does not mean that two products must be identical to be in the same relevant market. It means that they must be, as a matter of practical fact and the actual behavior of consumers, substantially or reasonably interchangeable to fill the same consumer needs or purposes. Two products are within a single market if one item could suit buyers' needs substantially as well as the other. In sum, what you are being asked to do is to decide which products compete with each other. Second, the relevant geographic market generally consists of the area or areas in which these parties and their competitors compete for sales in the relevant product market. In some instances, the geographic market may be national or international. Under other circumstances, it may be as small as a

single metropolitan area. The geographic market must both correspond to the commercial realities of the industry and be economically significant.

Consistent with these principles, a patent is not, without evidence of substitutes of demand and supply, a relevant market for antitrust purposes. The relevant market, therefore, cannot be defined solely by the '360 patent.

If after considering all the evidence you find that plaintiff has proved both a relevant product market and a relevant geographic market, then you must find that plaintiff has established the relevant market requirement and you must consider the remaining elements of the plaintiff's attempt to monopolize claim. If you find that plaintiff has not proved a relevant product market, or that it has not proved a relevant geographic market, then you must find for defendant and against plaintiff on this claim. If you find that no relevant market has been proved by the preponderance of the evidence, you must find in favor of the defendants.

(FJPI § 150.66 & citations to instruction 6)

**Defendants' Proposed Jury Instruction No. 17**

**Section 1 - Rule of Reason**

If you find that Jarrow has proved relevant product and geographic markets, you must then consider whether Jarrow has proved that INC's patent and trademark infringement lawsuit or public statements had a harmful effect on competition in those markets.

Evidence that INC's lawsuit harmed Jarrow's business is not enough by itself, although that is one relevant factor. Jarrow must show that the patent and trademark infringement lawsuit or public statements harmed overall competition in the relevant market by, for example, raising prices or reducing the production of products within the relevant market, and not just that it harmed Jarrow or Jarrow's business. The burden is on Jarrow to prove harm to overall competition because the Sherman Act protects competition, not competitors.

Here, in order for Jarrow to prove a restraint of trade based on disparagement or misleading advertising and publicity, Jarrow must overcome a presumption that the effect on competition of such a practice was negligible and, therefore, not a violation of the Sherman Act. In order to overcome this presumption of negligible effect on competition, Jarrow must prove that the representations were:

*First:* clearly false;

*Second:* clearly material to purchasers' decision-making;

*Third:* clearly likely to induce reasonable reliance by purchasers;

*Fourth:* made to purchasers without knowledge of the subject matter of the statements;

*Fifth:* continued for prolonged periods; and

*Sixth:* not readily susceptible of neutralization or other offset by rivals.

If you find that Jarrow has proof that overcomes the presumption of negligible effect on competition, then you must consider the representations under the rest of the standards discussed below.

In determining whether INC's lawsuit had a harmful effect on competition in the relevant market, and not just on Jarrow, you should consider the structure of the market and INC's position in the market. You should look at such factors as the number of companies or firms in the market and the nature of the market before and after INC brought the patent and trademark infringement lawsuit. If you find that Jarrow has not proved a harmful effect on competition in the relevant market, then you must find in favor of INC.

If you find that the patent and trademark infringement lawsuit did harm competition in the relevant market, you must then consider the extent to which competition was harmed. A restraint is unreasonable only if it substantially harms competition. A restraint that has only a slight or insubstantial impact on competition is not unreasonable or unlawful.

In determining if the restraint here substantially harmed competition, you should consider INC's market power and how much of the relevant market was affected by the patent infringement lawsuit. If INC had little market power or the patent and trademark infringement lawsuit affected only a small part of the relevant market, then it is less likely that the infringement lawsuit had a substantial effect on competition in the relevant market. In considering INC's market power, you may consider INC's market share. Although market share is the best measure of market power, it may not always, by itself, show whether a firm has market power.

You should also consider whether the patent and trademark infringement lawsuit influenced or affected the price, output, or product quality in the relevant market. Where a

restraint does not affect price, output, or product quality, it is unlikely to substantially harm competition. If Jarrow has not proved that the infringement lawsuit substantially harmed competition in the relevant market, then you must find in favor of the defendants.

If you find that Jarrow has proved a relevant market and that INC's patent and trademark infringement lawsuit had a substantially harmful effect on competition in that market, you must also weigh any effects of the lawsuit that were helpful to competition against any harmful effects. If the beneficial effects outweighed the harmful effects, or if the net effect on competition is harmful but insubstantial, the lawsuit was not an unreasonable or unlawful restraint of trade that violated Section 1 of the Sherman Act.

The fact that a restraint does not provide any benefit to competition does not necessarily mean that it is unreasonable. If the restraint has only a slight or insubstantial adverse impact on competition, it is not unreasonable or unlawful even if it does not benefit competition.

In determining whether the lawsuit was an unreasonable restraint on trade, you also may consider INC's purpose in bringing the lawsuit. A purpose or intent to harm competition, by itself, is not sufficient to establish that a restraint was unreasonable. Effect, not intent, is the ultimate test. However, consideration of the purpose of the restraint may help you determine if it likely would have a harmful effect on competition. You may consider, for example, whether INC brought the lawsuit to achieve a legitimate business purpose and, if so, whether the lawsuit was tailored to achieve that legitimate business purpose or, rather, was broader than necessary.

(ABA, A-4 to A-10; <u>Applera Corp. v. MJ Research, Inc.</u>, 2004 U.S. Dist. LEXIS 25613 (D. Conn. December 22, 2004 (Arterton, J.))

**Defendants' Proposed Jury Instruction No. 18**

**Conspiracy to Restrain Trade - Proximate Cause**

An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.

If you find that the plaintiff has failed to prove that the defendants' alleged conspiracy to restraint trade was the proximate cause of an injury to the plaintiff, then you must find for the defendants and against the plaintiff on this claim.

(FJPI § 150.70)

**Defendants' Proposed Jury Instruction No. 19**

**Sherman Act - Section 2**

Section 2 of the Sherman Act provides that: "Every person who shall monopolize, or attempt to monopolize, . . . or conspire with any other person . . . to monopolize any part of the trade of commerce . . . shall be guilty of a [violation of the antitrust laws]."

In this case, the plaintiff has claimed that the defendants violated Section 2 by attempting and conspiring to monopolize the relevant market.

**Defendants' Proposed Jury Instruction No. 20**

**Attempt to Monopolize - Elements**

An attempt to monopolize claim deals only with unilateral conduct by a single person or entity. Jarrow alleges that INC unlawfully attempted to monopolize the relevant market. There are five essential elements that Jarrow must prove in order to establish that INC was liable for attempted monopolization within the meaning of Section 2:

*First*: The relevant product and geographic markets;

*Second*: That INC had a specific intent to achieve monopoly power in the relevant product and geographic market;

*Third*: That one or more of the acts claimed by Jarrow was done, was wrongful, and was in furtherance of that intent to monopolize, even though it may have been insufficient to achieve a monopoly in the relevant product and geographic markets;

*Fourth*: That both elements – the intent and the act – must appear and must together have resulted in a dangerous probability that INC would obtain monopoly power in the relevant product and geographic markets;

*Fifth*: that the attempted monopolization was the proximate cause of damage to the business or property of Jarrow.

If you find that the evidence is insufficient to prove any one of these elements, then you must find for INC and against Jarrow on Jarrow's attempt to monopolize claim.

(ABA, C-2 to C-3; FJPI § 150.32)

**Defendants' Proposed Jury Instruction No. 21**

**Attempt to Monopolize - Relevant Market**

My prior instruction on the relevant market is applicable to your consideration of the attempt to monopolize claim as well.

To briefly summarize, before it can be determined whether a person has monopolized a field of competition in a particular line of trade or commerce, you must first determine the appropriate "area of effective competition." In antitrust law, this is known as defining what is called the "relevant market." Claims of monopolization can only be evaluated within the framework of the relevant market.

The relevant market that Jarrow claims applies in this claim is as follows: the sale of PACs in the United States. Therefore, Jarrow must prove by a preponderance of the evidence that the relevant market in this case is the sale of PACs in the United States.

If after considering all the evidence you find that plaintiff has proved both a relevant product market and a relevant geographic market, then you must find that plaintiff has established the relevant market requirement and you must consider the remaining elements of the plaintiff's attempt to monopolize claim. If you find that plaintiff has not proved a relevant product market, or that it has not proved a relevant geographic market, then you must find for defendant and against plaintiff on this claim.

(FJPI § 150.66)

**Defendants' Proposed Jury Instruction No. 22**

**Attempt to Monopolize - Specific Intent**

If you find that Jarrow has proved a relevant market, you must then decide whether INC had the specific intent to monopolize that market. In other words, you must decide if the evidence shows that INC acted with the conscious object of acquiring the power to control prices or to exclude or destroy competition in the relevant market.

You must be careful, however, to distinguish between INC's intent to compete aggressively (which is lawful) and an intent to acquire monopoly power by using illegal or exclusionary means.

If you determine that INC did not have specific intent to achieve monopoly power in the relevant market, you must find for INC and against Jarrow on Jarrow's claim of attempted monopolization.

(ABA, C-86 to C-88)

**Defendants' Proposed Jury Instruction No. 23**

**Attempt to Monopolize - Exclusionary conduct**

Jarrow claims that the patent and trademark infringement lawsuit that INC brought against 17 defendants including Jarrow was exclusionary conduct designed to harm competition in the relevant market. Remember that a patent and trademark owner is entitled to bring an infringement suit to protect his or her patent and trademark rights and the bringing of such a suit ordinarily does not violate the antitrust laws, even where the patent is later determined to be invalid or unenforceable. Only if you find that INC's patent and trademark infringement action was objectively baseless and also find <u>by clear and convincing evidence</u> that defendants' goal in pursuing the infringement suit was not to win, but was to harass a competitor and deter others from competing, by engaging in the litigation process itself, regardless of the outcome, then you may conclude that the patent infringement lawsuit was exclusionary conduct.

Jarrow also claims that the defendants engaged in exclusionary conduct by making false or misleading statements to force companies to buy PAC's from IBC. To prove monopolization based on disparagement, or misleading advertising and publicity, Jarrow must overcome a presumption that the effect on competition of such a practice was negligible, and therefore not a violation of the Sherman Act. In order to overcome this presumption of negligible effect on competition, Jarrow must prove that the representations were:

*First:* clearly false;

*Second:* clearly material to purchasers' decision-making;

*Third:* clearly likely to induce reasonable reliance by purchasers;

*Forth:* made to purchasers without knowledge of the subject matter of the statements

*Fifth:* continued for prolonged periods; and

*Sixth:* not readily susceptible of neutralization or other offset by rivals.

If you determine that INC did not engage in exclusionary conduct in the relevant market, you must find for INC and against Jarrow on Jarrow's claim of attempted monopolization.

(ABA, C-84 to C-85; <u>Applera Corp. v. MJ Research, Inc.</u>, 2004 U.S. Dist. LEXIS 25613 (D. Conn. December 22, 2004 (Arterton, J.))

**Defendants' Proposed Jury Instruction No. 24**

**Attempt to Monopolize - Dangerous Probability of Success**

If you find that INC had the specific intent to obtain a monopoly in the relevant market and engaged in significant exclusionary or restrictive conduct, you must also determine if the evidence shows the next element of attempt to monopolize: namely, that there was a dangerous probability that INC would succeed in obtaining monopoly power in the relevant market.

Monopoly power is the power to control prices in or to exclude competition from the relevant market. If monopoly power exists, it must be found to exist within an economically meaningful market, the relevant market, which I explained to you with respect to Section 1 of the Sherman Act.

Consistent with these principles, a patent is not, without evidence of substitutes of demand and supply, a relevant market for antitrust purposes and its holder, therefore, is not presumed to have market power.

The power to control prices is the power of a company to establish appreciably higher prices for products in the relevant market than those charged by competitors for equivalent goods without a substantial loss of business to competitors. Thus, if a company that has raised prices eventually has to lower its prices to the level of prices charged by its competitors, it does not have monopoly power in the sense of power to control prices.

The power to exclude competition means the power of a company to dominate a market by eliminating existing competition from that market or by preventing other companies from entering the market.

To conclude that a company had monopoly power, you need not find that it could sell at any price it desired or that it had no competition whatsoever. A company may face some

competition in the relevant market and still have monopoly power. On the other hand, a company that does not have the power to control prices or to exclude competition cannot have monopoly power. Also, in order to have monopoly power, a company must have at least a 70% market share, plus evidence of substantial barriers to new companies entering the market and evidence that existing companies could not increase production.

In determining whether there was a dangerous probability that INC was ultimately going to succeed in obtaining monopoly power in the relevant market, you should consider the following factors:

*First:* the market share and power of INC as compared to its competitors;

*Second:* whether INC's share of the relevant market was increasing or decreasing;

*Third:* the actual or probable impact of INC's patent infringement lawsuit on competition; and

*Fourth:* whether entry into the relevant market by other firms who could complete against INC was difficult due to barriers to entry created or increased by the patent infringement lawsuit.

For example, you have heard evidence about INC's market share. You may determine from INC's share of the relevant market whether or not there was a dangerous probability that INC could obtain monopoly power. Market share is a firm's share of total industry sales, shipments, production, capacity, or reserves, expressed as a percentage of the whole. There are a number of ways to measure market share, but whatever measure you use must be reasonable and consistently applied.

If you determine that INC's share of the relevant market before the lawsuit was less than 50%, that relatively low market share by itself strongly suggests that there could <u>not</u> be a dangerous probability that INC would obtain monopoly power.