You may also consider the trend in INC's market share. A declining market share may indicate the absence of a dangerous probability of obtaining monopoly power, while a significantly increasing market share may indicate the opposite.

Another factor is the number and size of INC's competitors in the relevant market. If its competitors were few or weak or were experiencing significantly decreasing market shares, so that they did not offer substantial competition to INC in the relevant market, this may tend to indicate that there was a substantial probability that INC could have obtained monopoly power. If, on the other hand, the competitors were numerous or vigorous or had large or increasing shares in the relevant market, this may be evidence that it would not have been possible or probable for INC to achieve monopoly power.

A dangerous probability of success need not mean that success was nearly certain. It means that the chance of success was substantial and real; that is, that there was a reasonable likelihood that INC would ultimately obtain monopoly power within the relevant market.

If you determine that there was not a dangerous probability that INC would achieve monopoly power in the relevant market, you must find for INC and against Jarrow on Jarrow's claim of attempted monopolization.

(ABA, C-89 to C-91; I ABA Antitrust Law Developments at 312 (5th ed. 2002) (citing cases))

**Defendants' Proposed Jury Instruction No. 25**

**Attempt to Monopolize - Proximate Cause**

An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.

If you find that Jarrow has failed to prove that INC's alleged attempt to monopolize was the proximate cause of an injury to Jarrow, then you must find for INC and against Jarrow on this claim.

(FJPI § 150.70)

**Defendants' Proposed Jury Instruction No. 26**

**Conspiracy to Monopolize - Elements**

Jarrow claims that INC conspired with Professor Masquelier, IBC, PS, PSI and Schwitters to monopolize within the meaning of Section 2 of the Sherman Act. The conspiracy to monopolize claim does not concern Mr. Schwitters because, as a principal of INC, he is incapable under the law of conspiring with INC. There are four essential elements that Jarrow must prove in order to establish its conspiracy claim:

*First:* That there was a conspiracy between INC and others to monopolize an appreciable amount of identifiable interstate commerce of the United States;

*Second:* That INC and IBC, PSI, PS and Professor Masquelier entered into such conspiracy voluntarily and intentionally with the specific intent to monopolize that relevant market;

*Third:* That at least one overt act was committed in furtherance of such conspiracy to monopolize;

*Fourth:* That defendants' activities occurred in or affected interstate commerce;

*Fifth:* That there was a dangerous probability that the conspiracy would be successful in obtaining a monopoly; and

*Sixth:* That such a conspiracy was the proximate cause of damage to the business or property of Jarrow.

If you find that Jarrow has failed to prove any one of these elements by a preponderance of the evidence, then you must find for the defendants and against Jarrow on its claim of conspiracy to monopolize.

(ABA, C-94 to C-95; FJPI § 150.33; I ABA Antitrust Law Developments at 312 (5th ed. 2002) (citing cases))

**Defendants' Proposed Jury Instruction No. 27**

**Conspiracy to Monopolize - Existence of Conspiracy**

My instruction on conspiracy in connection with the Sherman Act Section 1 claim applies here as well. In brief, a conspiracy is a combination of two or more persons by concerted action to accomplish some unlawful purpose or to accomplish some lawful purpose by unlawful means. A conspiracy is a kind of partnership, in which each member becomes the agent of every other member. The essence of a conspiracy is a combination or agreement to violate or to disregard the law.

Mere similarity of conduct among various persons and the fact that they may have associated with one another and may have assembled together and discussed common aims and interests do not necessarily establish proof of the existence of a conspiracy.

If you find that Jarrow has failed to prove the existence of a conspiracy to monopolize, then you must find for the defendants and against Jarrow on its conspiracy to monopolize claim.

(ABA, C-96)

**Defendants' Proposed Jury Instruction No. 28**

**Conspiracy to Monopolize - Relevant Market**

My instruction on the relevant market with respect to the Section 1 claim is applicable to your consideration of the conspiracy to monopolize claim as well

To briefly summarize, before it can be determined whether a person has monopolized a field of competition in a particular line of trade or commerce, it must first be determined what is the "area of effective competition" applicable in this case. In antitrust law, this is known as defining what is called the "relevant market." Charges of monopolization can only be judged in the framework of the relevant market.

Jarrow contends that the relevant market is the sale of PACs in the United States. Therefore, Jarrow must prove by a preponderance of the evidence that the relevant market applicable in this case is sale of products in the United States containing PACs used as antioxidants.

In determining the relevant market, the "area of effective competition" must be determined by reference to: (1) a product market and (2) a geographic market.

First, in determining the product market, the basic idea is that the products within it are interchangeable as a practical matter from the buyer's point of view. This does not mean that two products must be identical to be in the same relevant market. It means that they must be, as a matter of practical fact and the actual behavior of consumers, substantially or reasonably interchangeable to fill the same consumer needs or purposes. Two products are within a single market if one item could suit buyers' needs substantially as well as the other. In sum, what you are being asked to do is to decide which products compete with each other.

Second, the relevant geographic market generally consists of the area or areas in which these parties and their competitors compete for sales in the relevant product market. In some instances, the geographic market may be national or international. Under other circumstances, it may be as small as a single metropolitan area. The geographic market must both correspond to the commercial realities of the industry and be economically significant.

Consistent with these principles, a patent is not, without evidence of substitutes of demand and supply, a relevant market for antitrust purposes. The relevant market, therefore, cannot be defined solely by the '360 patent

If after considering all the evidence you find that plaintiff has proved both a relevant product market and a relevant geographic market, then you must find that plaintiff has established the relevant market requirement and you must consider the remaining elements of the plaintiff's attempt to monopolize claim. If you find that plaintiff has not proved a relevant product market, or that it has not proved a relevant geographic market, then you must find for defendant and against plaintiff on this claim.

If you find that no relevant market has been proved by the preponderance of the evidence, you must find in favor of the defendants.

(FJPI § 150.66)

**Defendants' Proposed Jury Instruction No. 29**

**Conspiracy to Monopolize – Dangerous Probability of Success**

My instruction regarding the dangerous probability of success element of the attempted monopolization claim is applicable to the plaintiff's claim that defendants conspired to monopolize the relevant market.

In addition, Jarrow claims that the defendants engaged in anticompetitive conduct by making false or misleading statements to force companies to buy PACs from IBC. To prove a claim of monopolization based on disparagement or on misleading advertising and publicity, Jarrow must overcome a presumption that the effect on competition of such a practice was negligible, and, therefore, not a violation of the Sherman Act. In order to overcome this presumption of negligible effect on competition, Jarrow must prove that the representations were:

*First:* clearly false;

*Second:* clearly material to purchasers' decision-making;

*Third:* clearly likely to induce reasonable reliance by purchasers;

*Forth:* made to purchasers without knowledge of the subject matter of the statements

*Fifth:* continued for prolonged periods; and

*Sixth:* not readily susceptible of neutralization or other offset by rivals.


(I ABA Antitrust Law Developments at 312 (5th ed. 2002); Instruction 23)

Case 3:01-cv-00478-AVC    Document 216-8    Filed 01/07/2005    Page 9 of 20

**Defendants' Proposed Jury Instruction No. 30**

**Conspiracy to Monopolize - Proximate Cause**

An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.

If you find that Jarrow has failed to prove that the defendants' alleged conspiracy to monopolize was the proximate cause of an injury to Jarrow, then you must find for the defendants and against Jarrow on its conspiracy to monopolize claim.

(FJPI § 150.70)

CTDOCS:13219.2    49

**Defendants' Proposed Jury Instruction No. 31**

**Damages - Injury and Causation**

If you should find that defendant has violated the Sherman Act as alleged by plaintiff, then you must decide if plaintiff is entitled to recover damages from defendant.

The law provides that anyone who is injured by an antitrust violation may recover damages for any injury to its business or property caused by the violation.

For plaintiff to establish that it is entitled to recover damages, it must prove that it was injured as a result of defendants' alleged violation of the antitrust laws. This is sometimes referred to as proving "causation" or "fact of damage." Proving causation does not require plaintiff to prove the dollar value of its injury. It requires only that Jarrow prove that it was in fact injured by defendants' alleged antitrust violation. If you find that Jarrow has established that it was in fact injured, you may then consider the amount of its damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Jarrow has established that it was in fact injured and that its injury was caused by defendants.

To establish injury, Jarrow must have offered evidence that establishes as a matter of fact and with a fair degree of certainty that defendants' alleged illegal conduct was a material cause of plaintiff's injury. This means that Jarrow must have proved that some damage flowed to it as a result of defendants' alleged antitrust violation. Jarrow is not required to prove that defendants' alleged antitrust violation was the sole cause of its injury; nor need Jarrow eliminate all other possible causes of injury. It is enough if Jarrow has proved that the alleged antitrust violation was a material cause of its injury. Injury may be established by inference or circumstantial evidence. If you find, however, that Jarrow's injury was caused solely by

something other than the alleged antitrust violation, then you must find that Jarrow has failed to prove that it is entitled to recover damages from defendants.

(ABA, F-2 to F-4)

**Defendants' Proposed Jury Instruction No. 32**

**Damages - Business or Property**

Jarrow must establish that the injury it claims to have suffered was an injury to its "business or property." The term "business" includes any commercial interest or venture, and you are instructed that Jarrow has been injured in its "business" if you find that it has suffered injury to any of its commercial interests or enterprises as a result of defendants' alleged antitrust violation. The term "property" includes anything of value Jarrow owns, possesses, or in which Jarrow has a protectable legal interest. You are instructed that Jarrow has been injured in its "property" if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of defendants' alleged antitrust violation. You are further instructed that Jarrow has been injured in its "property" if you find that it has paid an inflated price for goods, services, any legal interest of value, or has lost money as a result of defendants' alleged antitrust violation.

(ABA, F-5 to F-6)

**Defendants' Proposed Jury Instruction No. 33**

**Damages - Amount and Certainty**

If you find that Jarrow has been injured by an antitrust violation committed by defendants, the law provides that it should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful. A defendant's violations of the antitrust laws often create a situation in which it is hard to determine the precise amount of damages suffered by the plaintiff. Jarrow's right to be fairly compensated should not be affected by any difficulty you may have in determining the precise amount of the recovery so long as there is a reasonable basis in the evidence for your award. You may not, however, calculate damages based only on speculation or guesswork, and you must remember that you can award Jarrow damages only for injuries caused by a violation of the antitrust laws. With respect to the antitrust claims, you may not award damages for injuries or losses caused by other factors.

You are not to assume that Jarrow is entitled to damages because I am providing instruction regarding damages. You must first find that the defendants violated one or more provisions of the antitrust laws according the instructions I gave you. If you find that defendants committed such a violation, then you may consider damages.


(ABA, F-8 to F-11)

**Defendants' Proposed Jury Instruction No. 34**

**Damages - Calculation - Introduction**

If you find that defendants violated the antitrust laws and that this violation proximately caused injury to Jarrow, then you must determine the amount of damages, if any, Jarrow is entitled to recover. Damages may include lost profits, lost goodwill, destruction of a business or deprivation of the opportunity to engage in a business, overcharges, or increased costs incurred because of a violation.

You cannot award damages for the same conduct based on different provisions of the Sherman Act. In other words, Jarrow cannot be entitled to a double recovery if you were to find more than one violation.

(ABA, F-12)

**Defendants' Proposed Jury Instruction No. 35**

**Damages - Lost Profits**

If you find that defendants did commit an antitrust violation, then you must calculate the profits, if any, that Jarrow lost as a result of the defendants' antitrust violation. Profit means net profit: the amount by which Jarrow's gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues. You may calculate net profit in any of the following ways.

If Jarrow has presented evidence of its actual net profits in a period before the antitrust violation that you find is a reliable guide to estimate what Jarrow's actual net profits would have been later, in the absence of the antitrust violation, then you may calculate Jarrow's loss of profits by comparing (a) Jarrow's actual net profits in the earlier period with (b) Jarrow's actual net profits (or loss) thereafter.

You may also calculate Jarrow's loss of profit by considering its market share, evidence of the size of the market, and evidence relating to the profit margin Jarrow would have secured on sales attributable to a loss of market share.

On the other hand, Jarrow is not to be awarded purely speculative damages. An allowance for lost profits may be included in the damages awarded, only when there is some reasonable basis in the evidence in the case for determining that Jarrow has in fact suffered a loss of profits.

(ABA, F-13 to F-15; FJPI § 150.90)

**Defendants' Proposed Jury Instruction No. 36**

**Damages - Mitigation**

Jarrow may not recover damages for any portion of its injury that it could have avoided through the exercise of reasonable care and prudence. The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss. If a plaintiff fails to take reasonable steps available to it, and the failure to take those steps results in greater harm to the plaintiff than it would have suffered had it taken those steps, the plaintiff may not recover damages for injury it would have avoided if it had taken reasonable actions that would have reduced its injury.

In determining whether Jarrow failed to take reasonable measures to limit its damages, you must remember that the law requires Jarrow to use only those measures that are reasonable and practicable under the circumstances. In determining whether Jarrow's conduct was reasonable, you should take into account the evidence concerning the circumstances as they appeared to Jarrow at the time, rather than in hindsight. Jarrow is given a wide latitude in deciding how to handle the situation, so long as what it did was not unreasonable in light of the existing circumstances.

Defendants have the burden of proof on this issue. Defendants must prove by a preponderance of the evidence that Jarrow acted unreasonably in failing to take specific steps to minimize or limit its losses and that the failure to take those specific steps resulted in its losses being greater than they would have been had it taken such steps. Defendants must also prove the amount by which Jarrow's loss would have been reduced had it taken those steps.

(ABA, F-23 to F-24)

**Defendants' Proposed Jury Instruction No. 37**

**Damages - Trebling of Damages**

The law requires that a defendant found to have committed an antitrust violation pay three times the actual damages defendant caused plaintiff. The trebling is performed by the court. You must limit your damage award to actual damages (if any).


(ABA, F-35)

**Defendants' Proposed Jury Instruction No. 38**

**Damages - Statute of Limitations - Generally**

You must also take into account the statute of limitations in assessing the amount of damages. In this case, the applicable statute of limitations for antitrust claims bars any recovery by Jarrow on account of losses incurred prior to March 24, 1997. As a result, you may award damages based only on proven losses from March 24, 1997 to the present proximately caused by any antitrust violations by defendants.

(FJPI § 150.81)

II.     **Second Claim for Relief**
        **Violation of the Connecticut Antitrust Act, C.G.S. §§ 35-24 to 35-46**

        **Defendants' Proposed Jury Instruction No. 39**

Jarrow's claims under the Connecticut Antitrust Act are the same as those under the Sherman Act. As with the Sherman Act claims, Jarrow has the burden of proof on all elements of its antitrust claims. If you find that Jarrow has proved its claims under the Sherman Act, you must find for Jarrow and against the defendants on the analogous Connecticut Antitrust Act claim. Conversely, to the extent you find that Jarrow has not proved its Sherman Act claims, then you must find for defendants and against Jarrow on the analogous Connecticut Antitrust Act claim.

You may not award double damages for the same conduct. In other words, if you find for the plaintiff on the Sherman Act claims, and therefore also find for the plaintiff on the Connecticut Antitrust Act claims, you may award only damages proved to be proximately caused by defendants' only once, not once for each for the federal and state antitrust claims.

III.  **Third Claim for Relief**
**Violation of CUTPA, C.G.S. §§ 42-110a et seq.**

**Defendants' Proposed Jury Instruction No. 40**

**General Elements of Violation**

Jarrow also alleges that all the defendants except Attorney Zivin violated the Connecticut Unfair Trade Practices Act. In order to establish that the defendants violated the Connecticut Unfair Trade Practices Act, Jarrow must prove, by a preponderance of the evidence, that the defendants engaged in unfair or deceptive acts or practices in the conduct of trade or commerce within Connecticut.

An act or practice is in the conduct of trade or commerce if it was in the conduct of advertising, the sale or rent or lease, or the offering for sale or rent or lease, or the distribution of any services or any property, tangible or intangible, real, personal or mixed, or any other article, commodity or thing of value in Connecticut.

My instruction regarding sham litigation is relevant here and is incorporated into the present instruction. In brief, the Court will decide the issues of law concerning the bringing of the infringement suits by INC and, if the Court concludes that the suits were objectively baseless, you will consider the defendants' intent in bringing the suits. If you find that the lawsuits were not a sham, you must find against Jarrow and in favor of the defendants on Jarrow's CUTPA claim.

(All CUTPA instructions are from Robert Langer, 12 Connecticut Practice Series, Connecticut Unfair Trade Practices Appendix I at pp. 741-42 (2003) unless otherwise noted; Zeller v. Consolini, 59 Conn. App. 545 (2000).

CTDOCS:13219.2                                    60