UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JARROW FORMULAS, INC., ) | CIVIL ACTION NO. |
| ) | 3:01 CV 478 (AVC) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| INTERNATIONAL NUTRITION COMPANY, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | MAY 4, 2005 |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO BIFURCATE THE NONJURY AND JURY COMPONENTS OF THE TRIAL

Defendants International Nutrition Company ("INC"), Egbert Schwitters, Jack Masquelier, Norman H. Zivin, Integrated BioCeuticals, LLC ("IBC), Primary Source, LLC ("PS"), and Primary Services, Inc. ("PSI") respectfully submit this memorandum in support of their motion under Rules 39(a) and 42(b) of the Federal Rules of Civil Procedure to bifurcate the nonjury and jury components of the trial.

By Order dated February 16, 2005, the Court scheduled jury selection for July 14, 2005, a hearing on defendants' two motions in limine to follow jury selection on July 14 and 15, and the jury trial to commence on July 18. The Court and not the jury, however, should first decide (1) the central, preliminary issue of whether the underlying patent and trademark infringement action brought by INC was "objectively baseless" under the sham litigation exception to the Noerr-Pennington doctrine and (2) the similar, if not identical, issue of whether that action lacked "probable cause" within the meaning of the Connecticut vexatious litigation statute, Conn. Gen. Stat. § 52-568.

CTDOCS:14030.2

Accordingly, the Court should bifurcate the trial by canceling jury selection and the jury trial, issuing a briefing schedule on the issue of "objectively baseless" and "probable cause," scheduling oral argument, and later rescheduling jury selection and the jury trial only if claims triable to a jury remain after the Court rules on the issue. The Court should also postpone the evidentiary hearing on the motions in limine until after it decides the issue of "objectively baseless" and "probable cause" because the evidence of damages and market definition that is the subject of those motions will not be necessary if the Court rules in defendants' favor on the preliminary issue.

**ARGUMENT**

**POINT I**

**THE COURT SHOULD DECIDE THE ISSUES OF
"OBJECTIVELY BASELESS" AND "PROBABLE CAUSE"
AS A PRELIMINARY MATTER BEFORE CONDUCTING
A JURY TRIAL**

A.    **Judicial Economy Calls For A Preliminary Court Ruling**

The core allegations made by plaintiff Jarrow Formulas, Inc. ("Jarrow") focus on the defendants' alleged sham litigation in commencing and maintaining a patent and trademark infringement action against Jarrow and others. These allegations form the nucleus for Jarrow's federal and state antitrust claims (Counts 1-2), Connecticut Unfair Trade Practices Act ("CUTPA") claim (Count 3), Connecticut vexatious litigation claim (Count 5), and Connecticut tortious interference claim (Count 6). See Plaintiff's Summary in the Joint Trial Memorandum dated January 7, 2005 at 5-11.

To succeed on any of these five claims, therefore, Jarrow must prevail on the preliminary, fundamental issue of whether the underlying patent and trademark infringement action was

"objectively baseless" under the sham litigation exception to the Noerr-Pennington doctrine[1] or, put another way, whether that action was commenced or maintained without "probable cause." Whether a patent and trademark case was "objectively baseless" or lacked "probable cause" is a question of law, and, as a result, the Court and not a jury must decide that question, as defendants pointed out in the Joint Trial Memorandum dated January 7, 2005. See Defendants' Proposed Jury Instructions attached to the Joint Trial Memorandum, Proposed Jury Instruction Nos. 3, 40, 59, 63 at 7-8, 60, 80, 85, respectively. Thus, a determination of whether the Court or a jury shall decide the question of objective baselessness and probable cause must be made prior to the commencement of trial before a jury.

Rule 39(a) of the Federal Rules of Civil Procedure provides that trial shall be by jury if a jury trial has been demanded unless, among other reasons, "the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States."

Furthermore, Rule 42(b) provides:

> (b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of **any separate issue** or of any number of claims, cross-claims, counterclaims, third-party claims, or **issues**, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Emphasis added. A motion under Rule 42(b) can be made by a party, and the court can bifurcate issues, at any time. See, e.g., Evans v. State of Connecticut, 168 F.R.D. 118, 120 (D. Conn. 1996).

---

[1] See generally California Motor Transport v. Trucking Unlimited, 404 U.S. 508 (1972).

Under the present circumstances, to avoid prejudice to the defendants, the Court should first rule on whether the commencement and maintenance of the 1996 infringement action was or was not objectively baseless or without probable cause. It makes little sense to proceed simply to trial before a jury and let the plaintiff present to the jury an admixture of legal and complex evidence pertaining to objective baselessness and probable cause, which the Court will have to remind it repeatedly to ignore, along with evidence, such as damages, that the jury will have to decide. The prejudice to the defendants of such an approach is obvious, as is the plaintiff's desire for the jury to see and hear all evidence about all issues in the hope of a spillover effect.

Furthermore, a preliminary decision by the Court on objective baselessness and probable cause will provide for judicial economy and the convenience of both the Court and the parties. First, it will save the Court the need to make a hasty decision on this crucial issue in the heat of the trial. Second, it will shorten the length of any subsequent jury trial. If the Court finds in defendants' favor, there may be little or nothing left for a jury to decide. Even if the Court finds in plaintiff's favor, the remaining issues can be presented to the jury much more quickly. Third, this procedure will alleviate the constant vigil the Court will otherwise have to maintain to ensure defendants suffer no prejudice from plaintiff's presentation of evidence regarding objective baselessness and probable cause, including many lengthy French and American court documents. Since the risk of such prejudice cannot be absolutely eliminated at this point, there remains the risk of a mistrial or reversible error.

**B.  The Court Must Decide the Issue of "Objectively Baseless" or "Probable Cause"**

In a sham litigation claim, the plaintiff must prove that the alleged sham litigation "constitute[d] the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief." <u>Professional Real Estate Investors, Inc. v. Columbia Pictures</u>

Indust., 508 U.S. 49, 62 (1993) ("PRE"). See also Globetrotter Software, Inc. v. Elan Computer Group, 362 F.3d 1367 (Fed. Cir. 2004) (state law tort claims preempted unless plaintiff can prove objective baselessness).[2] The plaintiff bears the burden of proving **by clear and convincing evidence** that the underlying action was objectively baseless. See Mitek Surgical Products, Inc. v. Arthrex, Inc., 2000 U.S. App. LEXIS 3146 (Fed. Cir. Feb. 22, 2000) (unpublished opinion) ("To show that the claim is objectively baseless, Arthrex had to prove by clear and convincing evidence that 'no reasonable litigant could realistically expect success on the merits.'").

A determination of whether an action was objectively baseless involves a detailed analysis of the substantive law governing the subject matter of the lawsuit at the time it was filed. PRE, 508 U.S. at 64-65. In Professional Real Estate Investors, the Supreme Court outlined a two-part test for determining when litigation will be considered a sham not immunized under Noerr. First, the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail." 508 U.S. at 60. Only if the court concludes that the challenged litigation is objectively meritless, should the second prong of the test – the subjective intent of the plaintiff – be considered. Id. at 60-61.

Because the question of subjective intent is not considered by the jury unless a claim is first held to be objectively baseless, a finding that a lawsuit was instituted with probable cause is

---

[2] Federal Circuit law governs this determination. See Nobelpharma v. Implant Innovations, Inc., 141 F.3d 1059, 1068 (Fed. Cir. 1998) ("whether conduct in . . . enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a matter of Federal Circuit law.").

an absolute defense to a claim that the case is a sham regardless of a litigant's subjective motivation. Id. Probable cause to institute civil proceedings requires no more than a "reasonable belief there is a chance that [a] claim may be held valid upon adjudication." 508 U.S. at 62-63.

A lost lawsuit must not lead the reviewing court to "engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation." Id. Even if a lawsuit is ultimately lost, probable cause to pursue the action will have existed if it "was arguably 'warranted by existing law' or at the very least was based on an objectively 'good faith argument for the extension, modification, or reversal of existing law.'" Id. at 65 (quoting Fed. R. Civ. P. 11). The action was not a sham if "a similarly situated reasonable litigant could have perceived some likelihood of success." Id. at 65.

In the present case, determination of the evidence plaintiff apparently intends to introduce to support its allegation that INC's pursuit of its patent and trademark infringement claims was "so baseless that no reasonable litigant could realistically expect to secure favorable relief" or that no "similarly situated reasonable litigant could have perceived some likelihood of success" would require a sophisticated understanding of patent and trademark law in the United States and laws governing assignment of patent rights at the time the underlying infringement action was filed.

Judge Squatrito, who presided over the underlying infringement case, determined that the case was not frivolous or brought or maintained in bad faith and, therefore, denied the defendants' motions for attorney's fees under 35 U.S.C. § 285, concluding, as a matter of law, that:

> Although the Court is sure that the plaintiff lacked standing to bring its patent-infringement claim, the Court cannot say that there is clear and convincing evidence that the plaintiff knew or should have known that the lawsuit was baseless, either at the time the lawsuit was brought or during its subsequent

maintenance. <u>Imatec Ltd. v. Apple Computer, Inc.</u>, 200 WL 633428, at *1 (S.D.N.Y. May 17, 2000). While this is a close case, the difficulties inherent in cases involving international courts and United States patent law obviate a finding by this Court that the facts undisputably [sic] lead to a conclusion that the plaintiff knew or should have known that its claims were frivolous. Thus the Court does not find that this is an "exceptional" case under Section 285.

Ruling on Defendants' Motions for Attorney's Fees dated March 27, 2002 at 8.

Jarrow now seeks essentially to re-litigate that decision on probable cause, perhaps in the hope that it will fare better if it can manage to present that issue of law to a jury. For example, Jarrow apparently intends to introduce issues of the French intellectual property code governing assignment of patent rights and French case law, <u>see</u> Plaintiff's Notice of Issues Concerning Foreign Law dated December 30, 2004, and decisions of French courts, <u>see</u> <u>e.g.</u>, Plaintiff's Exhibit Nos. 349-53, 356, 358-60 in Joint Trial Memorandum at 43-44. These complex issues of law regarding probable cause to bring and maintain the underlying action, which already were decided by Judge Squatrito in INC's favor, should not be presented to a jury but rather should be resolved by the Court in the instant action.

In fact, the issue of objective baselessness and probable cause can be decided by this Court upon the papers and arguments in the underlying case since the material facts are not genuinely disputed. <u>See</u> Stipulation of 30 Uncontroverted Facts, Joint Trial Memorandum at 57-59.

In <u>PRE</u>, the Court stated that where "there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law." 508 U.S. at 63-64. Numerous other federal courts also have concluded that the determination of objective baselessness is one of law for the court, and not the jury, to make. <u>See, e.g., Filmtec Corp. v. Hydranautics,</u> 67 F.3d 931, 938 (Fed. Cir. 1995) ("Because there is no dispute over the facts, the question of whether or not a cause of action is reasonable or an abuse of process is a question of

law."); Amarel v. Conell, 102 F.2d 1494, 1518 (9th Cir. 1996) (district court ruled that sham litigation exception did not apply); Victus v. Collezione Europa U.S.A., Inc., 26 F. Supp. 2d 772, 779 (D. N.C. 1998) ("The question of the infringement suit's legal viability is a question of law."); Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co., 964 F. Supp. 624, 627 (D. Conn. 1997) ("Where there is no dispute over the predicate acts of the underlying proceedings, the court may determine probable cause as a matter of law."); Thermalloy Inc. v. Aavid Eng'g, Inc., 935 F. Supp. 63, 66 (D.N.H. 1996) ("Although the subjective prong necessarily requires a fact-intensive examination of the antitrust defendant's motivation, the court, once familiar with the underlying proceedings, may make a probable cause determination under the objective prong as a matter of law.").

As Professors Areeda and Hovenkamp point out in their highly regarded treatise on antitrust law:

> [T]he question whether a lawsuit has an objectively unreasonable basis in law is hardly suitable for submission to the jury. Only someone with legal training can rationally determine whether the pleading of a particular legal theory is justified by or a reasonable extension of existing law. . . . [O]nce the tribunal knows what occurred, characterization of the conduct as a sham is a question of law.

1 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law § 207c at 253 (2d ed. 2000) (concluding that a "jury is not qualified" to determine "what the law is") (emphasis added).

In addition, the determination of objective baselessness does not depend upon a defendant's or counsel's thought processes, but rather, it depends on the court's assessment of the merits of the lawsuit. "The question is not whether [the defendant] thought the facts to constitute probable cause, but whether the court thinks they did." PRE, 508 U.S. at 63-64 (quoting Director General of Railroads v. Kastenbaum, 263 U.S. 25, 28 (1923)). More recently,

the court in Q-Pharma, Inc. v. Jergens, 2002 U.S. Dist. LEXIS 27222 (D. Wash. Nov. 18, 2002), aff'd, 360 F.3d 1295 (Fed. Cir. 2004), reasoned:

> [I]n an objective analysis of the "baselessness" of the suit the Court will not look at what Q-Pharma's attorneys actually did or thought before filing and while maintaining the suit. Instead, the Court evaluates the suit on the basis of the objective and undisputed evidence, specifically the patent itself, the prosecution history, and Jergens' advertising, to determine whether a reasonable litigant could reasonably expect success on the merits based on that evidence. Wholly independent of any attestation of Q-Pharma's attorneys, the Court finds that in light of Jergens' advertising touting the therapeutic effects of Coenzyme Q10 in its product, and given a reasonable interpretation of the claim language and the prosecution history, Q-Pharma's decision to proceed with the lawsuit was not objectively baseless.

Id. at *23. Accord Brooks Furniture Man. v. Dutailier, Int'l, 393 F.3d 1378, 1382 (Fed. Cir. 2005) ("[The objectively baseless] inquiry does not depend on the state of mind of the plaintiff at the time the action was commenced, but rather requires an objective assessment of the merits.")

In the ruling on INC's Motion to Dismiss dated November 16, 2001, this Court found that Noerr immunity is also an applicable defense to Jarrow's state and common law causes of action. Connecticut state courts also uniformly recognize that the legal determination of the existence of probable cause is a matter of law for the court to decide. Under the Connecticut vexatious litigation statute, Conn. Gen. Stat. § 52-568,[3] "[t]he existence of probable cause is an absolute protection, and what facts, and whether particular facts, constitute probable cause is always a question of law." Norse Sys. v. Tingley Sys., 49 Conn. App. 582, 594 (1998) (citing Vandersluis v. Weil, 176 Conn. 353 (1978)). See also Zeller v. Consolini, 59 Conn. App. 545 (2000).

---

[3] "Any person who commences and prosecutes any civil action or complaint against another . . . (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages." Conn. Gen. Stat. § 52-568 (emphasis added).

Accordingly, the Court should determine whether the infringement action was objectively baseless or, put another way, whether there was a lack of probable cause for the commencement and maintenance of the infringement action. If the Court decides any part of this issue in the negative, then it should find in favor of all defendants on plaintiff's claims of sham litigation and vexatious litigation (Counts 1-3, 5-6), dismiss such claims with prejudice, re-schedule the evidentiary hearing on the motions in limine, if still pertinent, and proceed with a jury trial on any remaining claims triable to a jury.

Defendants suggest the following briefing schedule: (1) plaintiff files its brief and supporting documents 30 days after the Court grants this motion to bifurcate; (2) defendants file their brief and supporting documents 30 days after plaintiff files its brief; (3) plaintiff files its reply brief 15 days after defendants file their brief; and (4) the Court schedules oral argument at a mutually convenient time.

## CONCLUSION

For the foregoing reasons, the Court should issue a briefing schedule on the issue of (1) whether the underlying patent and trademark infringement action brought by INC was "objectively baseless" under the sham litigation exception to the Noerr-Pennington doctrine and (2) the similar, if not identical, issue of whether that action lacked "probable cause" within the meaning of the Connecticut vexatious litigation statute, Conn. Gen. Stat. § 52-568. Accordingly, the Court should cancel jury selection, presently scheduled for July 14, 2005, and the jury trial, presently scheduled to commence July 18, 2005, should postpone the evidentiary hearing on the two motions in limine scheduled for July 14 and 15, 2005, and should reschedule the evidentiary hearing, jury selection, and the jury trial only if claims triable to a jury remain after the Court rules on the issue of "objectively baseless" and "probable cause."

DEFENDANTS,
INTERNATIONAL NUTRITION
COMPANY, EGBERT SCHWITTERS,
NORMAN H. ZIVIN, JACK
MASQUELIER, INTEGRATED
BIOCEUTICALS, LLC, PRIMARY
SOURCE, LLC, AND PRIMARY
SERVICES, INC.

By: __/s/ Richard S. Order__
RICHARD S. ORDER, ESQ.
Federal Bar No. ct02761
E-mail: rso@avhlaw.com
ERIC D. BEAL, ESQ.
Federal Bar No. ct23167
E-mail: exb@avhlaw.com
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103-3702
Telephone:   860-275-8100
Facsimile:   860-275-8101

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing has been served by hand delivery this 4th day of May, 2005 to:

Eric W. Wiechmann Esq.
Mark D. Giarratana, Esq.
Alexandra B. Stevens, Esq.
Eric E. Grondahl, Esq.
McCarter & English
CityPlace I
185 Asylum Street
Hartford, CT 06103


　　　　　　　　　　　　　　　　/s/ Richard S. Order
　　　　　　　　　　　　　　　　Richard S. Order, Esq.
　　　　　　　　　　　　　　　　AXINN, VELTROP & HARKRIDER LLP