UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JARROW FORMULAS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:01-CV-00478 (AVC) |
| v. | ) | |
| | ) | |
| INTERNATIONAL NUTRITION | ) | |
| COMPANY, INTEGRATED | ) | |
| BIOCEUTICALS, LLC, PRIMARY | ) | |
| SERVICES, INC., PRIMARY SOURCE, | ) | |
| LLC, EGBERT SCHWITTERS, NORMAN | ) | |
| H. ZIVIN, and JACK MASQUELIER, | ) | |
| | ) | |
| Defendants | ) | June 1, 2005 |

## MEMORANDUM IN OPPOSITION TO MOTION TO BIFURCATE

Pursuant to Federal Rule of Civil Procedure Rule 39(a) and Connecticut Local Rule 7(a), Plaintiff Jarrow Formulas, Inc. ("JFI"), files this Memorandum in opposition to the Defendants' Motion to Bifurcate the Nonjury and Jury Components of the Trial dated May 4, 2003 ("Motion to Bifurcate") [Dkt. # 221]. With the consent of Defendants' counsel, on May 23, 2005, JFI moved the Court for an extension of time until June 1, 2005 to file this Memorandum [Dkt # 223].

### Preliminary Statement

To adopt the terminology used by the Supreme Court in the cases cited by Defendants, the Defendants' Motion to Bifurcate is a sham. It is a belated attempt to delay trial by moving for summary judgment on an issue where there are numerous factual issues to be

decided by a jury.  Indeed, Defendants raise arguments already rejected by the Court in the

context of Defendants' previous motion to dismiss.  On November 16, 2001, the Court held:

**"The complaint has alleged sufficient facts, which, if proven, show that the defendants are**

**not entitled to immunity under the *Noerr-Pennington* doctrine."**  Jarrow Formulas, Inc. v.

International Nutrition Co., 175 F. Supp.2d 296, 311 (D. Conn. 2001) (emphasis added).  The

Court further stated that "As noted earlier, in addition to alleging that the defendants' lawsuit

was a sham litigation, **the complaint alleges other facts in support of the causes of action for**

**federal and state antitrust violations,** as well as Connecticut statutory and Common law causes

of action.  Therefore, **even if the court dismissed the allegations related to the prior**

**litigation, the complaint would still state federal and state causes of action."**  Id. at 311 n.13

(emphasis added).  Thus, the Court already rejected Defendants' contention that a predicate

question of law existed for the Court to determine, and the Court already decided that the

Complaint alleged facts that, if proven, would be sufficient to allow a jury to find in JFI's favor.

Nonetheless, as Defendants have done so often in this action, they ignore the Court's prior ruling

and raise the same frivolous argument again.[1]

Once again, Defendants, in support of their Motion, mischaracterize Plaintiff's

claims.  Defendants contend that the Noerr-Pennington doctrine allows them to conceal their bad

acts from the jury because the Court should make a preliminary determination that the

Defendants had probable cause to initiate and maintain one lawsuit, International Nutrition Co. v.

---

[1]  It is precisely such relentless rearguing of rejected and frivolous arguments that led the Court to sanction Defendant International Nutrition Company, in International Nutrition Co. v. Horphag Research, Ltd., 3:96-CV-386 (DJS), Ruling on Defendants' Motions for Attorney Fees, Dkt. # 392, at 9-10 (D. Conn. Mar. 26, 2002) **(Tab A)**.

Horphag Research Ltd., 3:96-CV-386 (DJS), 2000 WL 1863560 (D. Conn. 2001) ("Underlying Connecticut Action").  However, there are several factual issues regarding Defendants' actions and knowledge that must be determined by the jury to determine whether a reasonable litigant in Defendants' position would have believed that the suit had merit when brought and maintained by Defendants.  Accordingly, the jury must decide the issue of objective baselessness of the Underlying Action.  See, In re Relafen Antitrust Litigation, 346 F.Supp.2d 349 (D. Mass. 2004). At minimum, the jury must determine what facts were known, or should have been known, to Defendants when they filed and maintained underlying litigation to enforce U.S. Patent No. 4,698,360 ("the '360 patent"), including the facts known to Defendants related to the ownership, invalidity and unenforceablity of the '360 patent.  Contrary to Defendants' contentions, these are not undisputed predicate facts.

Moreover, Defendants' argument rests on a false premise:  that the instant case is based only upon the initiation of the Underlying Connecticut Action.  As noted by the Court in its decision on the prior Motion to Dismiss, this case is not based only on the initiation of a sham lawsuit for anticompetitive ends.  JFI's claims also evolved from Defendants' campaign of frivolous lawsuits in Europe and the United States, deception on the U.S. Patent and Trademark Office, deceptive advertising throughout the United States, and multiple threats to market participants.  All of this was perpetrated by Defendants on an entire industry and for this there is no recognized immunity.

Defendants attempt to either avoid or postpone JFI's jury trial should therefore be rejected and their Motion to Bifurcate should be denied.

### *Noerr-Pennington* Doctrine is not a bar in this Case.

As the Court has already stated, even if the Noerr-Pennington doctrine was applied to the Underlying Connecticut Action, JFI's complaint still alleges facts containing federal and state antitrust violations. Indeed, the commencement and continued prosecution of the Underlying Connecticut Action are but a part of JFI's antitrust claims. To the extent there are undisputed facts regarding the objective baselessness of the underlying action, the undisputed facts weigh in favor of JFI. See Pretrial Memorandum [Dkt. # 216]. In any event, there are numerous other actions taken by Defendants which both support JFI's federal and state claims. The evidence regarding these actions, in addition to Defendants' knowledge when they brought and maintained the underlying action, must be presented to the jury. Thus, Defendants' motion will not streamline this case; instead it will merely further delay trial of this case.

For example, how Defendants used the Underlying Connecticut Lawsuit, a similar California lawsuit, French lawsuits, and a reexamination in the USPTO is also relevant to the related actions taken outside of the courtroom, including a campaign of misrepresentations to mislead the public about the lawsuits or the prosecution of those lawsuits, as the following examples show:

- Defendants commenced the Underlying Connecticut Lawsuit on the eve of the largest industry trade show and marketed to the industry at that show;

- Defendant Masquelier executed a confirmatory assignment concerning the '360 patent, which Defendant Zivin recorded in the USPTO. Defendant INC issues a press release on March 27, 1997 stated that its ownership position in the '360 patent is now strengthened based on this assignment (Tab B);

- The March 27, 1997 press release also indicates that, despite a March 25, 1997, decision issued by the Court of Primary General Jurisdiction of Bordeaux, its ownership position in the '360 patent is now strengthened and that it controls at least 50% of the patent (Tab B);

- An August 27, 1997 press release in which INC states that it is one of the owners of the '360 patent and that is position is now stronger than ever and that USPTO Primary Examiner totally acknowledged INC's work despite the fact that INC purposefully misled the examiner regarding prior art (Tab C);

- A December 16, 1998 press release in which INC states that it acquired clear title to the '360 patent as a matter of law and is a one half owner of the '360 patent (Tab D);

- A May 29, 1998 press release in which INC states that it acquired clear title to the '360 patent as a matter of law (Tab E);

- A July 31, 1998 press release in which INC states that it is the half owner of the '360 patent, that INC acquired clear title to SCIPA's ownership of the patent as a matter of law, and that the French Higher Court held that an American Court should decide whether Dr. Masquelier's Assignment is valid or not (Tab F);

- A March 23, 2000 press release in which INC states that, if confirmed on appeal, the Connecticut Ruling would make CEP a joint owner of the '360 patent and would make French law govern the ownership of the '360 patent (Tab G);

- An April 3, 2000, press release in which INC states that it, along with CEP have asked the Federal Court for the impartial and consistent execution of French law against INDENA and possible other "grape seed extract" licensees of Horphag Research Ltd., and the Connecticut Court applied French law in favor of the French CEP company and granted CEP ownership in 50% of the '360 patent (Tab H);

- A March 24, 2001 press release in the which INC states that it is a joint owner of the '360 patent (Tab I); and

- A July 19, 2001, press release in which INC and CEP state that the U.S. Court of Appeals decided CEP is co-owner of the '360 patent, that the U.S. Court of Appeals has now acknowledged that the French company CEP is a joint owner of the '360 patent, that the 1998 French decision annulled CEP's 1994 assignment of half of the '360 patent to INC, and that the U.S. Court's decision leaves the American consumer at the mercy of infringers (Tab J).

With respect to <u>each lawsuit and related actions</u>, the jury must determine disputed

issues regarding whether:

- At the time of filing, Defendants knew, or reasonably should have known, that INC did not have a good faith basis to claim ownership of the '360 patent.

- At the time of the filing, Defendants knew, or reasonably should have know, that they did not have a good faith basis to assert that others were infringing the purported trademark "OPC-85".

- While maintaining each lawsuit or related action, Defendants, or reasonably should have known, that INC did not have a good faith basis to claim ownership of the '360 patent.

- While maintaining each lawsuit or related action, Defendants knew, or reasonably should have know, that INC did not have a good faith basis to assert that JFI was infringing the purported trademark "OPC-85".

The above are just a sampling of what is in dispute in this action.  Yet, throughout

this case, Defendants continue to represent to this Court that this case is only about the

Underlying Connecticut Action.  Their entire argument is based on this false premise in an effort

to force the square peg facts of this case into the round hole of the <u>Noerr-Pennington</u> doctrine.

To claim that this case can be bifurcated and disposed of as a matter of law is

disingenuous at best.  Even if the initiation and maintenance of the Underlying Connecticut

Action was not objectively baseless, Defendants subjective motivations in filing and maintaining

the lawsuit are highly relevant when examining their other bad acts.  Thus, the Court's statement

in <u>Professional Real Estate, Inc.</u> that "[o]nly if challenged litigation is objectively baseless may a

court examine the litigant's subjective motivation" is out of context here.

**Exceptions to the *Noerr-Pennington* Doctrine**

To the extent that the Noerr-Pennington doctrine has an application to this case, Defendants are correct to point the Court to Professional Real Estate Investors, Inc. v. Columbia Pictures Indus. Inc., 508 U.S. 49 (1993). Professional Real Estate Investors does set forth a two-part test to determine whether petitioning conduct directed toward influencing governmental action is a mere sham to cover attempts to interfere with competing business relationships. Id. at 50 & 60. Defendants, however, omit that the "sham" exception is not the only exception to the Noerr-Pennington doctrine. Neither do they adequately articulate that the holding of Professional Real Estate Investors is limited. Indeed, the instant case is clearly distinguishable.

**1. Fraudulently procuring alleged patent rights creates an exception to the Noerr-Pennington Doctrine.**

As the case law cited by Defendants notes, there is more than one exception to the Noerr-Pennington Doctrine. "The accused infringer may show that the asserted patent was obtained through knowing and willful fraud." Q-Pharma. Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1305 (Fed. Cir. 2004) (citing Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1068 (Fed. Cir. 1998)). Indeed, this exception was recognized first in Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 175-77 (1965). See Cal. Motor Transport. Co. v. Trucking Unlimited, 404 U.S. 508, 512-23 (1972).

In responding to Defendants' Noerr-Pennington special defenses, JFI is entitled to present evidence that Defendants sought to obtain rights to the '360 patent by committing a fraud on the USPTO. JFI has such evidence.

-7-

First, Defendant Masquelier applied for the '360 patent in 1985 without disclosing to the USPTO material, prior art of which he clearly had knowledge. Moreover, Defendant Masquelier did not disclose to the USPTO material, prior art during a 1996 re-examination of the '360 patent notwithstanding that such prior art was discussed in a book written by Defendants Masquelier and Schwitters published in 1993.

Second, on March 28, 1994 Defendant Zivin fraudulently filed with the USPTO a March 18, 1994 document that purported to assign rights to the '360 patent. With that "assignment" Defendants claimed to have transferred rights in the '360 patent from Defendant Masquelier and Societe Civile d'Investigations Pharacologiques ("SCIPA") to Defendant International Nutrition Company ("INC"). As multiple courts have determined, and as Defendants have known all along, that "assignment" was ineffective.

Because Defendants have raised the Noerr-Pennington doctrine as a special defense, JFI is entitled to present to the jury all of the evidence that would demonstrate that the doctrine does not apply in this case. Also bearing on that evidence, is the evidence relating to Defendants defense that they were engaged in good faith enforcement of a valid patent.

2.    **Predicate facts are in dispute.**

The holding of Professional Real Estate Investors, Inc. is narrow. There the Court held that a court may decide probable cause as a matter of law when "there is no dispute over the predicate facts of the underlying legal proceeding." 508 U.S. at 64; see also In re Relafen Antitrust Litigation, 346 F.Supp.2d 349, 360-61 (D. Mass. 2004). Though Defendants are

partially correct in that there are many facts not in dispute, most of these facts support JFI's claims.

(a)    <em>Limitations of Underlying Connecticut Action.</em>

Contrary to the assertions made by Defendants in their motion, Judge Squatrito did not determine whether Defendants' actions in initiating and maintaining the lawsuit was objectively baseless. Judge Squatrito's decision on JFI's motion for attorneys' fees in that action was decided based upon a very abbreviated record. The decision on the motion was entered without the benefit of discovery or hearings because the Court stayed the action pending a decision from French Court of Appeals. (Tab K, Order dated April 16, 1997). There was no discovery to support JFI's motion for attorneys' fees in the Underlying Connecticut Action. Since the Court determined that comity applied, there were no hearings on evidentiary issues and thus many facts were never before the Court.

For example, when entering Judgment and deciding JFI's motion for attorneys' fees, the Court, did not have or rule on any of the following facts:

- Defendants knew that Horphag Research Ltd. ("Horphag") was an owner of the '360 patent before INC initiated the Underlying Action;

- Defendants were clearly aware of material, prior art invalidating the '360 patent before they initiated the Underlying Connecticut Action;

- Defendants intentionally withheld from the USPTO material, prior art both before INC initiated the Underlying Connecticut Action and afterwards while it continued to prosecute the Underlying Connecticut Action;

- That in 1999, Horphag sued Defendants INC, Schwitters and Masquelier for their attempts to misuse the '360 patent.

None of these, or other, facts were before the Court when it reached its conclusions on JFI's motion for attorneys' fees in the Underlying Connecticut Action. Yet these facts are appropriate for the trier of fact to consider when determining the objective prong of the Noerr-Pennington test. In re Relafen Antitrust Litigation, 346 F. Supp. 2d at 360-364.[2]

The United States District Court for the District of Massachusetts was faced with a case similar to this one in In re Relafen Antitrust Litigation. There, an underlying patent infringement action did not dispose of all factual issues. Thus, in a subsequent antitrust action, the court could not determine that the party seeking to enforce a patent lacked probable cause as a matter of law. Id. at 362. Issues pertaining to the defendants knowledge when while it prosecuted the underlying patent infringement actions were factual issues that needed to be determined. Id.

> (b)     Action in the Northern District of California

Defendants' arguments also ignore their conduct before the United States District Court for the Northern District of California in International Nutrition Co. v. Interhealth Nutritionals, Inc., 97-CV-377 as well as their conduct in courts in France and the Southern District of New York. The objective prong of the Noerr-Pennington doctrine cannot be decided as a matter of law because (1) the Court's determinations in the Underlying Connecticut Action are not dispositive of the issues arising in such other cases and (2) Defendants' conduct and the

---

[2] Even without these facts the Court considered JFI's motion for attorneys' fees a "close case," and did sanction Defendant INC for filing its Motion for Reconsideration. International Nutrition Company v. Horphag Research Ltd., Ruling on the Defendants' Motions for Attorney Fees (doc # 392), at 8 -10.

court's rulings in <u>International Nutrition Co. v. Interhealth Nutritionals, Inc.</u> are additional predicate facts in dispute not before this Court in the Underlying Action.

In 1997, INC initiated a second action against OPC market participants suing a number of companies for infringement of the '360 patent in the Northern District of California. Defendants prosecuted that case as well as Underlying Connecticut Action.

Though the District of Connecticut entered Judgment against INC on April 14, 2000, Defendants did not withdraw the action in the Northern District of California. Indeed, that action continued until the Northern District of California entered judgment against INC on September 5, 2000.

JFI contends that Defendants' filing and maintenance of the Northern District of California action was a part of Defendants' conspiracy and efforts to monopolize the relevant market. Yet Defendants' conduct in prosecuting the Northern District of California action was not before this Court when it rendered its Judgment and rulings. Thus, they constitute predicate acts in dispute and Defendants cannot argue that there has been a "probable cause" determination as to the Northern District of California action.

### 3.    **Multiple Legal Proceedings.**

Further, the instant case is based on Defendants initiation of multiple legal proceedings and <u>Professional Real Estate Investors, Inc.</u> applies only to situations where there is an allegation of a single sham lawsuit. When Defendants are accused of "bringing a whole series of legal proceedings, the test is not retrospective but prospective" and the focus of the inquiry is the intent in initiating those proceedings. <u>Primetime 24 Joint Venture v. NBC, Inc.</u>, 219 F.3d 92,

101 (2d. Cir. 2000) (citations omitted). In such a situation, the relevant issue is whether or not the legal challenges are initiated pursuant to a policy of starting legal proceedings without regard to their merits for the purpose of injuring a market rival. Id. See also, Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp., 192 F.Supp.2d 519, 537 (M.D. La. 2001) (noting that the filing of a series of frivolous lawsuits signifies a form of anticompetitive conduct that differs not merely in degree, but also in kind, from the filing of a single, baseless action). As set forth above, JFI alleges that Defendants initiated and maintained a series of legal proceedings based on repetitive and groundless claims to enable them to mischaracterize their alleged ownership in the '360 patent to the market. Id., at 538.

4.    <strong><u>Application to Connecticut Causes of Action.</u></strong>

Defendants are overreaching when they claim that "In the ruling on INC's Motion to Dismiss dated November 16, 2001, this Court found that <u>Noerr</u> immunity is also an applicable defense to Jarrow's state and common law causes of action." Defendants' Memo of Law, at 9. Quite to the contrary, the Court recognized that JFI had pled facts sufficient to allege a Connecticut Unfair Trade Practices claim outside of <u>Noerr-Pennington</u> in addition to facts sufficient to allege a sham exception. <u>Jarrow Formulas, Inc. v. International Nutrition Co.</u>, 175 F. Supp.2d 296, 312 (D. Conn. 2001). Because JFI's state law claims are based on more than the initiation and maintenance of a single lawsuit, they stand outside of <u>Noerr-Pennington</u>.

**Conclusion**

Quite simply, Defendants' Motion to Bifurcate should be denied because the

Noerr-Pennington doctrine does provide immunity to instances where an antitrust claim is based

on more than the filing of one underlying lawsuit, as is the case here.  Moreover, to the extent

that the Noerr-Pennington doctrine has any application to the instant case, there are disputed

issues of fact that present the issue from being resolved as a matter of law and the Walker-

Process exception is applicable.


THE PLAINTIFF,
JARROW FORMULAS, INC.
BY MCCARTER & ENGLISH, LLP
ITS ATTORNEYS


By _____
ERIC WATT WIECHMANN (CT 04331)
ERIC E. GRONDAHL (CT 08988)
JASON C. WELCH (CT 23418)
CityPlace I
185 Asylum Street
Hartford, CT  06103
(860) 275-6700
(860) 724-3397 (fax)
jwelch@mccarter.com
        -and-
ALEXANDRA B. STEVENS (CT 20300)
Four Stamford Plaza
107 Elm Street
Stamford, CT  06901
(203) 965-0823
(203) 323-6513 (fax)

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that a copy of the foregoing MEMORANDUM IN

OPPOSITION TO MOTION TO BIFURCATE has been hand-delivered this 1st day of June,

2005, to

        RICHARD S. ORDER, ESQ.
        ERIC D. BEAL, ESQ.
        Axinn, Veltrop & Harkrider LLP
        90 State House Square
        Hartford, CT  06103

                ERIC WATT WIECHMANN

HARTFORD: 640737.02

-14-