# Exhibit – A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

INTERNATIONAL NUTRITION
COMPANY,
    Plaintiff

v.

HORPHAG RESEARCH LTD, et. al.

3:96CV386 (DJS)

## RULING ON THE DEFENDANTS' MOTIONS FOR ATTORNEY FEES

Following this Court's decisions on the defendants' motions for summary judgment and the plaintiff's motion for reconsideration, the defendants moved for an award of attorney fees. The plaintiff subsequently appealed this Court's ruling on summary judgment to the United States Court of Appeals for the Federal Circuit. On January 21, 2001, this Court denied the defendants' motions for an award of attorney fees without prejudice to renewal thirty days after a ruling from the Federal Circuit. On July 16, 2001, the Federal Circuit entered judgment affirming this Court. Pursuant to this Court's ruling of January 21, 2001, the defendants soon renewed their motions for attorney fees.[1] For the reasons discussed below, the defendants' motions for attorney fees are **GRANTED in part, DENIED in part.**

### I. Facts

This case involves the sale of plant extracts containing proanthocyanidans, a class of organic molecules extracted from pine bark. In April 1985, defendant Horphag Overseas Limited ('Horphag') and Societe Civile d'Investigations Pharmacologiques d'Aquitane ('SCIPA') entered into a joint development contract for the invention of new products for medical use. The contract

---

[1] There are currently five motions for attorney fees pending. [docs ## 372, 374, 376, 377, 381]

"EX-A"

was written in French and executed in France. The agreement specified that any patent applications resulting from this collaboration would be filed jointly by the parties, and that any litigation regarding the agreement should be conducted in the courts of Bourdeaux, France.

On April 9, 1985, work covered by the terms of the joint development contract resulted in the filing of a patent application with the United States Patent and Trademark Office. On October 6, 1987, United States Patent 4,698,360 ('360 patent') issued, listing Dr. Jack Masquelier as its sole inventor. Pursuant to the terms of the joint development agreement, Masquelier assigned his invention to SCIPA and Horphag. On March 11, 1994, SCIPA assigned its rights in the '360 patent to INC.

In October 1995, Horphag commenced litigation in France to determine which parties possessed an ownership interest in the '360 patent. Horphag, SCIPA and INC were parties to the French litigation.

On March 6, 1996, INC filed this action. In support of its claim of patent infringement, INC stated that it owned "at least an undivided one-half interest" in the '360 patent.

On October 30, 1996, Jack Masquelier assigned to INC any ownership interest in the '360 patent that "may possibly revert" to him.

On March 25, 1997, the French Court of First Instance of Bordeaux held that SCIPA's assignment to INC was void. This decision was appealed to the French Court of Appeals, which affirmed the lower court's ruling on May 28, 1998. It further concluded that INC "no longer has any right whatsoever appertaining to the patent '360 [and] is no longer able to exploit the same." SCIPA et. al v. Horphag, Certified Translation of the Judgment of the French Court of Appeals at 48.

On March 21, 2000, this Court granted partial summary judgment on behalf of the defendants. In its decision, the Court granted comity to the French court rulings, and found that INC had no ownership interest in the '360 patent. Based upon this conclusion, the Court found that INC lacked the requisite standing to pursue an action for patent infringement. Finally, because INC did not own the '360 patent, the Court ruled that it could not sustain its claim that certain defendants engaged in unfair competition.

## II. Discussion

In accordance with Rule 54(d) of the Federal Rules of Civil Procedure and Rule 9(f) of the Local Rules of this Court, defendants now move pursuant to 35 U.S.C. § 285 ('Section 285') for an award of attorney fees incurred in this action defending against plaintiff's patent claims. In addition, defendant Jarrow, Incorporated has moved for attorney fees pursuant to 28 U.S.C. § 1927 ('Section 1927'), which provides that a party's counsel may be jointly liable for the award of attorney fees if counsel acted in bad faith.

### A. Attorney Fees Under Section 285

The defendants first move under Section 285, which allows a court to award attorney fees to prevailing parties in certain "exceptional" patent cases. 35 U.S.C. § 285. Before it responds to the merits of the defendants' requests, the plaintiff argues that Section 285 is not applicable because non-patent issues such as standing were litigated in this case, rather than patent issues. The defendants respond that patent issues were central to the case and this Court's ruling on summary judgment, such that Section 285 should apply. The Court agrees with the defendants, and finds that Section 285 is applicable in this case.

3

### 1. Applicability of Section 285

When an action embodies both patent and non-patent claims, fees under Section 285 can not be awarded for time incurred in the litigation of the non-patent issues. Machinery Corp. of America v. Gullfiber AB, 774 F.2d 467, 475 (Fed. Cir. 1985). That a claim arises under the patent laws depends on whether the right to relief "will be defeated by one construction, or sustained by the opposite construction of [the patent] laws." Interspiro USA v. Figgie Int'l, 18 F.3d 927, 933 (Fed. Cir. 1994). Whether or not a party is entitled to attorney fees under the patent statute depends on whether the non-patent issues litigated are "so intertwined with the patent issues" as to make Section 285 applicable. Id.

The parties offer varied interpretations of two cases which explored the question of whether patent and non-patent issues were intertwined. In both cases, the Federal Circuit considered motions for the enforcement of settlement agreements. Id. at 929; Gjerlov v. Schyler Labs 131 F.3d 1016, 1019 (Fed. Cir. 1997). In both Interspiro v. Figgie International and Gjerlov v. Schyler Labs, the defendants argued that the main issue was breach of contract, a non-patent issue, and thus the cases were outside of the purview of Section 285. Id. at 933. The Federal Circuit reached a different conclusion in each case, however.

In Interspiro, the court disagreed with the defendant, and found that the non-patent contractual issues were "so intertwined with the patent issues" that Section 285 was applicable to the case in its entirety. Id. (finding that the court's conclusion on the breach "turn[ed]" on whether the patent was infringed). In Gjerlov, however, the Federal Circuit found that "the non-patent issues [were] *not* 'so intertwined with the patent issues' to make section 285 applicable.'" Id. at 1025 (citing Interspiro, 18 F.3d at 933) (emphasis added). In Gjerlov, the court used

4

general principles of contract interpretation to reach its conclusion, unlike the decision in Interspiro, which was "dependent" on patent infringement principles. Id. at 1024-25.

These cases, while instructive, seem to be a closer question than the case at bar. This case was framed by the plaintiff's complaint as a patent infringement claim, unlike the breach of contract claims in Interspiro and Gjerlov. The defendants rightly point out that the plaintiff's complaint and subsequent substantive filings rest on arguments based in patent law. Reply of Defendants Horphag, et. al. to Plaintiff's Opposition to the Defendants' Motions for Attorneys' Fees, Appendix (summarizing these references to patent law). Further, the Plaintiff's own appeal to the Federal Circuit, although not dispositive, tends to exhibit its recognition that this case is governed by patent law. Interspiro, 18 F.3d at 933 n.2 (citing the defendant's appeal to the Federal Circuit as "recognition" that the case arose under patent law, and thus Section 285 applied).

Simply because this Court did not reach the issue of infringement because it found the plaintiff lacked standing to bring an infringement claim does not destroy the inherent nature of the plaintiff's patent claim. As the defendants note, this Court relied on patent law principles in its ruling on summary judgment. For example, the patent statute governing joint patent owners, 35 U.S.C. § 262, was featured in this Court's decision. District Court's Ruling on Summary Judgment at 8-9. In addition, this Court used patent law principles announced by the Federal Circuit in order to conclude that INC lacked standing by itself to bring a patent infringement claim. Id. at 11-12. These examples evidence the fact that patent law was controlling in this case. Certainly these patent issues were 'intertwined' with the non-patent issues at bar such that an analysis under Section 285 is appropriate. See, e.g., Interspiro, 18 F.3d at 933.

5.

## 2. Standard Under Section 285

Since this Court has found that Section 285 is applicable, it must now determine whether the standard under that section is met in this case. Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The purpose for awarding attorney fees under Section 285 is to prevent improper suits and "abuse of the courts through manifestly unreasonable lawsuits based on uninvestigated allegations." Eltech Sys. Corp. v. PPG Indus. Inc., 903 F. Supp. 805, 811 (Fed. Cir. 1990). Another purpose is to "compensate the prevailing party for its monetary outlays in . . . [defending a meritless] suit." Automated Bus. Co., Inc. v. NEC Am., Inc., 202 F.3d 1353, 1355 (Fed. Cir. 2000); see also Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1553 (Fed. Cir. 1989).

Before awarding attorney fees under Section 285, a court must determine: (1) whether the case is exceptional; and (2) if so, whether an award of attorney fees to the prevailing party is justified. Interspiro, 18 F.3d at 933. The first part of this determination involves a question of fact, while the second part is discretionary. Id. at 933-34.

## 3. Plaintiff's Case

Under Section 285, the court must first make a factual determination that the plaintiff's case is exceptional. The defendants have the burden to prove that this case is exceptional by clear and convincing evidence in light of the totality of the circumstances. Eltech, 903 F. Supp. at 811; Encomp Inc. v. L-Com, Inc., 999 F. Supp. 264, 266 (D. Conn. 1998).

Cases involving vexatious, frivolous or unjustified litigation are "exceptional." Eltech, 903 F. Supp. at 808; Beckman, 892 F.2d at 1551; Standard Oil Co. v. Am.Cyanamid Co., 774 F.2d 448, 455 (Fed. Cir. 1985); Encomp, 999 F. Supp. at 266. A suit is frivilous when filed if a

6

"patentee knew or, on reasonable investigation, should have known, [that it] was baseless." Haynes Int'l Inc. v. Jessop Steel Co., 8 F.3d 1573, 1579 (Fed. Cir. 1993); Encomp, 999 F Supp at 266. If, after filing a case, the plaintiff presents baseless arguments and misstatements, the case is "exceptional." Eltech, 903 F.2d at 810-11; Hughes v. Novi Am., Inc., 724 F.2d 122 (Fed. Cir. 1984). Finally, even if a plaintiff believes in the validity of its claims at the inception of a suit, a plaintiff who fails to yield after he discovers his claims are baseless has been found to be "vexatious." Eltech, 903 F.2d at 810.

Additional factors to consider in determining whether a case is exceptional include the closeness of the case and the conduct of the parties, including any evidence of bad faith. Interspiro, 18 F.3d at 933. Where the plaintiff is "manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." Eltech, 908 F.2d at 811.

The defendants argue that this case is "exceptional" under Section 285 for several reasons. First, they argue that the plaintiff knew its complaint was frivolous at the time it was filed. Specifically, the defendants argue that the plaintiff brought this action even though it knew that ownership of the '360 patent was already being litigated in France. In addition, the plaintiff knew or should have known that it lacked the proper standing under clearly recognized United States patent law to bring an infringement claim if they were only a one-half owner of the patent.

In addition, the defendants argue that the plaintiff knew its claims were frivilous while it maintained its suit against the defendants. Specifically, the defendants argue that the plaintiff disregarded the decisions of French courts which determined that INC had no ownership interest

7

in the '360 patent. The defendants argue that the plaintiff should have withdrawn its case based upon the French decisions. Instead, the plaintiff asserted what the defendants claim it should have known was a baseless argument, namely that these French decisions should not be entitled to comity.

Finally, the defendants argue that the plaintiff knew its motion to reconsider this Court's ruling on summary judgment was baseless, but nevertheless filed that motion and appealed this Court's ruling to the United States Court of Appeals for the Federal Circuit. The defendants argue that the Court's ruling was based on well-settled principles of law, and thus the plaintiff should have known it was futile to assert additional arguments on reconsideration. The Court will now consider the defendants' arguments.

Although the Court is sure that the plaintiff lacked standing to bring its patent-infringement claim, the Court cannot say that there is clear and convincing evidence that the plaintiff knew or should have known that the lawsuit was baseless, either at the time the lawsuit was brought or during its subsequent maintenance. Imatec Ltd. v. Apple Computer, Inc., 2000 WL 633428, at *1 (S.D.N.Y. May 17, 2000). While this is a close case, the difficulties inherent in cases involving international courts and United States patent law obviate a finding by this Court that the facts undisputably lead to a conclusion that the plaintiff knew or should have known that its claims were frivolous. Thus, the Court does not find that this is an "exceptional" case under Section 285.

Even if this case were exceptional, the Court would not exercise its discretion to impose attorney fees. As previously stated, given the complicated nature of the issues in the case and the fact that the case was "disposed of short of trial, the awarding of attorney fees would not be

8

warranted, especially in view of the hardship that such an award would impose upon the plaintiffs." Imatec, 2000 WL 633428, at *2 (S.D.N.Y. May 17, 2000). Thus, the Court does not find the bulk of the plaintiff's case "exceptional" under Section 285, nor that an award of attorney fees is justified.

### 4. Plaintiff's Motion for Reconsideration

The Court does find, however, that the plaintiff's post-summary judgment motions were "exceptional" under Section 285. The plaintiff's meritless motion for reconsideration was an attempt to question a ruling on summary judgment which was based on well-established legal principles. A plaintiff should bring a motion for reconsideration based upon factors such as mistakes, inadvertence, excusable neglect, newly discovered evidence, or fraud. Fed. R. Civ. P. 60. The plaintiff's motion for reconsideration in this case measured substantially short of this guideline.

Instead, the plaintiff's motion was based on irrelevant factual and legal arguments. For example, the plaintiff argued that there was *new* evidence relating to SCIPA's merger with CEP. This evidence was not *new*, however, since the merger occurred approximately two years before the motion for reconsideration was filed. Id. at 2. In addition, the plaintiff's motion claimed the Court made an error of fact by overlooking SCIPA's willingness to join as a plaintiff. Plaintiff's Motion for Reconsideration at 6-10. However, the plaintiff acknowledged that the Court was made aware of this fact, but simply chose not to give it weight in its ruling. Id. The Court's choice not to give credence to this information was not error. In fact, the ruling on the motion for reconsideration made plain that in the Court's view, SCIPA's willingness to join the action, if genuine, would not have cured the plaintiff's lack of standing. Distict Court's Ruling on Plaintiff's

Motion for Reconsideration at 2.

In addition, the plaintiff's motion for reconsideration was accompanied by motions for leave to join a party and for leave to file an amended complaint. In its ruling on the plaintiff's motion for reconsideration, the Court described these motions as "futile" since clear legal principles barred the plaintiff from curing its lack of standing with an amended complaint or amended party. Id. at 2-3. As the Court again noted, even if the plaintiff's motion were granted, it would be unable to gain standing without the participation of the '360 patent's other owners. Thus, the motion was futile. Id.

For the foregoing reasons, this Court agrees with the defendants that in sum, these post-summary judgment motions were frivilous. Haynes, 8 F.3d at 1579; Eltech, 903 F.2d at 810. In addition, this Court finds in its discretion that these fees are justified pursuant to Section 285. Thus, the defendants' motions for attorney fees under Section 285 are granted to the extent they request fees incurred in defense of the plaintiff's motion for reconsideration, motion for leave to file an amended complaint and motion for leave to join a party. The defendants shall provide the Court with an accounting of these fees in order that this Court may enter judgment, as reflected at the conclusion of this opinion.

## B. Attorney Fees under Section 1927

Defendant Jarrow, Incorporated has also filed a motion for attorney fees under 28 U.S.C. § 1927, which reads:

> Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

The court may award fees under Section 1927 where there is clear evidence that the attorneys' actions in pursuing a claim or suit were undertaken in bad faith. Oliveri v. Thompson, 803 F.3d 1265, 1273 (2d Cir. 1986). Bad faith may be inferred "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Steimel v. Inc. Village of Rockville Ctr., 965 F. Supp. 366, 374 (E.D.N.Y. 1997).

In Colucci v. New York Times Co., the court explained that "the sanctions authorized under section 1927 are not to be lightly imposed; nor are they to be triggered because a lawyer vigorously and zealously pressed his client's interests. The power to assess the fees against an attorney should be exercised with restraint lest the prospect thereof chill the ardor of proper and forceful advocacy on behalf of his client." Colucci v. New York Times Co., 533 F. Supp. 1011, 1013-14 (S.D.N.Y. 1982).

The award of attorney fees against counsel under Section 1927 is a sanction against the alleged bad faith of an attorney, and requires that such bad faith or an improper purpose be shown. This Court does not find plaintiff counsel's conduct warrants such sanctions, nor has the Court been presented with the requisite evidence of bad faith in order to reach that determination. Thus, in this Court's discretion, Jarrow's motion for attorney fees under Section 1927 is denied.

## III. Conclusion

For the reasons stated above, the defendants' motions for attorney' fees under 28 U.S.C. § 285 [docs. ## 372, 374, 376, 377 and 381] are **GRANTED in part, DENIED in part**. In addition, defendant Jarrow's motion for attorney fees under 28 U.S.C. § 1927 [doc. # 377] is **DENIED**.

**No later than April 26, 2002**, the defendants shall file supplemental affidavits in support of their motions for attorney fees with an accounting of all fees associated only with the defense of plaintiff's motion for reconsideration, motion for leave to file an amended complaint and motion for leave to join a additional party. Failure to file such documentation by this date will indicate that no such fees were incurred.

IT IS SO ORDERED at Hartford, Connecticut, this 26th day of March, 2002.

_____
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE

12

# Exhibit – B

International Nutrition Company / INC
ANNOUNCEMENT
27 March 1997
for immediate release

===============================================================

INC REACHES AGREEMENT WITH DR. MASQUELIER
OWNERSHIP POSITION IN US PATENT 4,698,360 STRENGTHENED

---

International Nutrition Company (INC) has strengthened its ownership position in the much debated US Patent 4,698,360 by reaching an agreement with Dr. Jack Masquelier and his colleagues Dr. Jean Michaud and Mr. Elian Barraud. In addition to the already acquired share of the patent (at least 50%), INC shall now also have control over any and all interests that may possibly revert to Dr. Masquelier and co-scientists.

French court case now no longer significant

Moreover, the agreement significantly thwarts the legal attempts of Horphag Research to undermine Dr. Masquelier's and INC's interests in the '360 patent by means of a French lawsuit. In that case, the Bordeaux Court has just provided a not yet enforceable decision securing the patent in the hands of Dr. Jack Masquelier contrary to the claim of ownership made by Horphag. Due to the agreement reached with Dr. Masquelier, the patent now remains squarely with INC. However, due to the fact that this decision is not yet enforceable and that appeal is possible, the case may last another 2 to 3 years. But this French case has lost much of its impact, since it is now clear that INC is and will remain owner of at least 50% in the patent. Moreover, INC has also acquired control over the share of the patent that may possibly revert from Horphag to the inventor, Dr. Masquelier.

"EX-B"

D 00 2277

-2-

### Cover up

The French court case is based on an expired agreement between Dr. Masquelier and Horphag. The case has never been more than an element in Horphag's ongoing strategy to spread falsehoods and disinformation. Trying to revise history, Horphag is attempting to cover up the fact that the pine bark extract that is being manufactured by a company called BioLandes and that is being distributed in the USA by Henkel, is an outright imitation of Dr. Masquelier's authentic product.

### Horphag's role expired

Even though Henkel is now marketing this imitation pine bark extract under the '360 patent, neither Henkel nor Horphag have played significantly contributed in the maintenance and defense of the '360 patent. Horphag's rights in the patent expired in April 1995, and consequently the Guernsey company ended up as a defendant in INC's pending lawsuit against a number of infringers. INC and its patent attorneys have taken complete responsibility for all matters related to the patent, such as e.g. its current reexamination.

### INC strives for 100% ownership in valid patent

Currently owning at least 50% in US Patent 4,698,360 plus all rights that may revert to the inventor Dr. Masquelier and his colleagues, it is INC's goal to establish full ownership in the invention that describes the use of proanthocyanidins as free radical scavengers and to uphold its validity at all times.

++++++++++++++++++++++++++

D 00 2278

# Exhibit – C



# NEWS FLASHES

International Nutrition Company / INC
ANNOUNCEMENT
August 27, 1997
for immediate release

### FINAL DECISION OF U.S. PATENT OFFICE

*ALL SEVEN CLAIMS OF DR. MASQUELIER's '360 PATENT UPHELD*
*INC WINS IN PATENT REEXAMINATION*

In what has become known in the Health Food Industry as one of the most widely publicized legal battles over a U.S. Patent, International Nutrition Company (INC) has scored a major victory. In his final August 22, 1997 decision, all the seven claims of Dr. Jack Masquelier's U.S. Patent 4,698,360 have been integrally upheld and found patentable by the U.S. Patent Office's Examiner Dr. John W. Rollins.

### DEFENDANTS LOSE GROUND IN '360 LAWSUIT

The reexamination had been anonymously requested in an attempt to crack the '360 patent that describes the use of proanthocyanidins as antioxidants. INC, one of the owners of the '360 patent, has legally challenged a group of varied infringers. With the patent officially upheld as fully valid, this pending lawsuit is now expected to take a dramatic turn in favor of INC. The '360 patent successfully withstood its reexamination and the defendants' claim that the patent is not valid has been shattered.

### PROPAGANDA AND MISINFORMATION EXPOSED

The victorious validation of Dr. Jack Masquelier's invention sharply exposes those who have already official announcements about the "downfall" of INC's patent as irresponsible propagandists. Ignoring good business ethics, and fully aware that the last word in the Washington reexamination procedure hadn't been spoken yet, companies too big or too smart to claim stupidity or naivety, have knowingly and intentionally misinformed and misled retailers and consumers. These short sighted and unscrupulous attempts to gain market share by hurting Dr. Masquelier and INC have now backfired in the faces of the deceivers.

30

"EX-C"

D 00 2279

## DR MASQUELIER ACKNOWLEDGED AS INVENTOR

While the propagandists were busy misinforming industry and consumers, INC, Dr. Masquelier and their lawyer Norman Zivin diligently handled all the issues raised during the reexamination. In his August 22, 1997 decision Primary Examiner Dr John W. Rollins has now totally acknowledged Dr. Masquelier's and INC's work. In an attempt to show that the inventor's research was "nothing new", those who wanted to have the '360 patent declared invalid had presented piles of documents antedating Dr. Masquelier's 1985 filing of his invention. Dr. Rollins established that nothing in these before-1985 documents "teaches or suggests" Dr. Masquelier's invention. "In addition," Examiner Rollins stated, "prior to 1985 the skilled artisan did not know that proanthocyanidins possessed any free radical scavenger activity".

## ON THE RIGHT TRACK

INC's Bert Schwitters comments: "This is a great day for all those who have always loyally and constructively worked with us. Dr. Rollins' decision really puts Prof. Masquelier's invention on the map and the anonymous requester couldn't have done us a greater favor. The '360 patent has come out unscathed and INC's position is now stronger than ever. The outcome is an acknowledgement of Dr. Masquelier's work and his unquestionable integrity. For INC and for its American distributor Primary Services International, this victory is also a sign that we have always been on the right track by relentlessly offering Dr. Masquelier's authentic and original extracts from Pine Bark and from Grape Seed. We now have the ideal and unmatched combination of the '360 U.S. Patent valid until the year 2005, authentic scientific back-up and products containing Dr. Masquelier's original extracts. The new book "A Lifetime Devoted to OPC and PYCNOGENOLS" factually demonstrates the originality of Dr. Masquelier's work as well as the authenticity of MASQUELIER's TM Original OPCs products."

Back to index newsflashes



© 1996-1998 Copyright, all rights reserved by INC/Vaduz/Liechtenstein
Please read our disclaimer.

D 00 2280