UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JARROW FORMULAS, INC., ) | CIVIL ACTION NO. |
| ) | 3:01 CV 478 (AVC) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| INTERNATIONAL NUTRITION COMPANY, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | JUNE 6, 2005 |

### DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO BIFURCATE THE NONJURY AND JURY COMPONENTS OF THE TRIAL

Defendants International Nutrition Company ("INC"), Egbert Schwitters, Jack Masquelier, Norman H. Zivin, Integrated BioCeuticals, LLC ("IBC), Primary Source, LLC ("PS"), and Primary Services, Inc. ("PSI") respectfully submit this reply memorandum in further support of their motion to bifurcate the nonjury and jury components of the trial dated May 4, 2005 and to respond to the arguments raised by plaintiff Jarrow Formulas, Inc. ("JFI") in its opposition dated June 1, 2005 ("Opp.").

Contrary to JFI's shrill accusations that the bifurcation motion is an attempt to delay trial and reargue motions, Opp. 1-2, the bifurcation motion presents a logical process that will expedite a just and speedy resolution of this case. Indeed, JFI should be joining the bifurcation motion because it seeks judicial economy by streamlining the main issues for the required preliminary determination of whether the initiation and maintenance of the underlying litigation were "objectively baseless" or lacked probable cause. JFI's knee-jerk opposition to the motion reveals its goal of jumbling all issues and evidence together in front of a jury, including issues and evidence relating solely to the preliminary determination that is the Court's exclusive domain. JFI's approach will lead only to reversible error because if the Court's preliminary

CTDOCS:14320.1

determination is in favor of the defendants, the jury will have heard irrelevant evidence with a dangerous risk of prejudicial taint to the defendants. If JFI has such confidence in the merits of its claims, it should have nothing to fear from the Court's preliminary determination through the bifurcation process proposed by defendants and should endorse the process, which is designed to avoid wasting the jury's, the parties', the Court's, and the Court of Appeals' time and resources.

JFI's stated reasons for objecting to the motion boil down solely to its argument that it has several pieces of evidence about some of the defendants' alleged fraud on the PTO in obtaining the patent. It is JFI, therefore, that is trying to reargue its motion to amend its Complaint to add allegations about fraud on the PTO, which the Court denied on December 1, 2004.

Consequently, JFI has failed to present a single, solid reason for denying this motion.

## ARGUMENT

### I.   THE DENIAL OF THE MOTION TO DISMISS AT THE BEGINNING OF THE CASE DOES NOT UNDERMINE BIFURCATION

On page 2 of its opposition, JFI overstates the significance of the Court's denial of some of the defendants' motion to dismiss at the very beginning of the case. The Court made its decision based "solely on the facts alleged" in the Complaint, drawing "inferences in the light most favorable to the plaintiff." Jarrow Formulas, Inc. v. International Nutrition Co., 175 F. Supp. 2d 296, 301 (D. Conn. 2001). At this point, however, JFI bears the burden to prove (not merely allege) by the much higher standard of clear and convincing evidence that INC's infringement litigation was objectively baseless and lacked probable cause. See Mitek Surgical Products, Inc. v. Arthrex, Inc., 2000 U.S. App. LEXIS 3146 (Fed. Cir. Feb. 22, 2000). In other words, JFI is no longer entitled to inferences in a most favorable light. As a result, contrary to

JFI's argument, the Court has <u>not</u> "already rejected Defendants' contention that a predicate question of law existed for the Court to determine." Opp. 2.

## II. JFI MISCONSTRUES THE NOERR-PENNINGTON DOCTRINE

### A. Burden of Proof Starts and Remains With JFI

On pages 7-8, JFI misconstrues the Noerr-Pennington doctrine by making it seem as if the burden rests on defendants to assert the doctrine as a "special" [sic] defense and that once they do, JFI is then entitled to a jury. On the contrary, the Noerr-Pennington doctrine generally immunizes from the antitrust laws activity protected by the First Amendment to the Constitution, including initiation and maintenance of lawsuits. Sham activity or litigation is an exception to the general doctrine. The burden rests first and foremost on JFI, as plaintiff, to prove to the Court by clear and convincing evidence as an essential element of its claims that the exception applies and that INC's infringement litigation was objectively baseless and lacked probable cause, regardless of any defenses. Thus, the defendants' assertion of an affirmative defense did not open any doors to a jury.

### B. Noerr-Pennington Doctrine Applies Also to Non-Litigation Activity

In an attempt to avoid bifurcation, JFI tries on page 4 to make it seem that its claims entail more than initiation and maintenance of the Connecticut Action, which it states is "but a part of JFI's antitrust claims." A simple reading of the Amended Complaint and JFI's case summary in the Joint Trial Memorandum dated January 7, 2005 at 5-11, however, belies this statement and makes it clear that the heart of all its claims rests on the Connecticut Action.

On pages 4-6, JFI lists "actions taken outside of the courtroom" that it contends fall outside the protection of the Noerr-Pennington doctrine and, therefore, are not subject to the

objective baselessness-probable cause analysis.[1] Ten of the eleven items on the list are allegedly misleading INC press releases regarding INC's ownership of the patent.[2]

Under Federal Circuit precedent,[3] JFI must prove by clear and convincing evidence that all its allegations of misconduct based on the '360 patent – press releases, cease and desist letters, claiming ownership of and publicizing the patent, and enforcement of the patent – were objectively baseless. See Globetrotter Software, Inc. v. Elan Computer Group, 362 F.3d 1367, 1376-77 (Fed. Cir. 2004) (state law tort claims based on pre-litigation communications alleging infringement are preempted unless plaintiff can prove objective baselessness); Golan v. Pingel Enterprise, Inc., 310 F.3d 1360, 1370-72 (Fed. Cir. 2002) ("federal law bars the imposition of liability [under federal or state law] for publicizing a patent in the marketplace unless the plaintiff can show that the patent holder acted in bad faith" which requires "clear and convincing evidence that the infringement allegations are objectively false . . . ."); Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 898 (Fed. Cir. 1998) ("federal authority makes clear that it is not improper for a patent owner to advise possible infringers of its belief that a particular product may infringe the patent").

---

[1] To the extent that JFI suggests that the Noerr-Pennington doctrine applies only to courtroom activity, Opp. 4, it is wrong. In fact, the doctrine developed initially in the context of the assertion of First Amendment rights through legislative and executive lobbying. Eastern Railroad Conference v. Noerr Motor Freight, 365 U.S. 127 (1961).

[2] Clearly, the Court can review these press releases on an objective basis.

[3] Federal Circuit law governs this determination. See Nobelpharma v. Implant Innovations, Inc., 141 F.3d 1059, 1068 (Fed. Cir. 1998) ("whether conduct in . . . enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a matter of Federal Circuit law."); Applera Corp. v. MJ Research Inc., 303 F. Supp. 2d 130, 133 n. 11 (D. Conn. 2004).

The foregoing principles apply to JFI's state law claims, Globetrotter, 362 F.3d at 1377, as well as its claims under the Lanham Act. See Zenith Electronics Corp. v. Touchsystems, Inc., 182 F.3d 1340, 1353 (Fed. Cir. 1999).[4]

On page 6, JFI lists four issues that it contends the jury must decide with respect to "each lawsuit and related actions," using the formula of "Defendants knew, or should have known" in framing each issue. By this formula, JFI concedes that the objective analysis (i.e., "should have known") required by Professional Real Estate Investors, Inc. v. Columbia Pictures Indust., 508 U.S. 49 (1993) ("PRE"), must be performed. As shown in the brief in support of defendants' motion, however, this objective analysis must be performed by the Court, not the jury. Def. Br. 4-10. Thus, a finding by the Court that the infringement litigation was not objectively baseless would be fatal to JFI's claims and, a fortiori, contrary to plaintiff's argument, what defendants' "knew," namely, their "subjective motivations in filing and maintaining the lawsuit," could not possibly be "highly relevant when examining their other bad acts." Opp. 6. As explained on pages 5-6 of defendants' initial brief, if the Court determines that INC's litigation was not objectively baseless or did have probable cause, no issues of subjective intent will be presented to a jury. JFI's suggestion to the contrary on page 6 cites no authority and flies in the face of PRE, 508 U.S. at 60-61.

---

[4] On page 12, JFI tries to make it seem as if the Noerr-Pennington doctrine does not apply to its state law claims and that the Court did not hold that the doctrine applied to such claims in its ruling on the motion to dismiss. On the contrary, there is no other way to read the Court's agreement with defendants' argument and its recitation of Second Circuit and Connecticut Appellate Court decisions so holding. Jarrow Formulas, Inc. v. International Nutrition Company, 175 F. Supp. 2d 296, 310 n. 12 (D. Conn. 2001). Additionally, to the extent that JFI argues its "state law claims are based on more than the initiation and maintenance of a single lawsuit," Opp. 12, it ignores the fact that its other allegations, including those related to the California Action, pertain to activity outside Connecticut and are, therefore, beyond the scope of Connecticut statutory and common law.

C.      **JFI's Alleged Evidence of Fraud on the PTO Is Irrelevant and Inadmissible**

The bulk of the alleged facts that JFI asserts, throughout its brief and particularly on pages 7-10, that it must present to a jury relates to its cries of fraud on the PTO. Even if JFI had such evidence, it is irrelevant to JFI's claims and, therefore, inadmissible.

From the outset, JFI made it very clear that it is not challenging the validity of the '360 patent in this action. See Plaintiff's Surreply Memorandum in Opposition to Defendants' Motion to Dismiss for Failure to State a Claim dated August 21, 2001, at 8 ("the validity of the '360 patent is not an issue raised by Jarrow's claims in this case"); Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss For Failure to State a Claim dated July 24, 2001, at 23 ("In contrast to the antitrust claims at issue here, Critical-Vac asserted that Minuteman committed fraud on the Patent Office and tried to enforce a patent it knew was invalid."). As defendants demonstrated in opposing JFI's motion to amend to add allegations of patent invalidity and fraud on the PTO, such allegations have been barred as compulsory counterclaims and cannot now be used to ambush defendants. See Defendants' Memorandum in Opposition to Plaintiff's Motion for Leave to Further Amend Complaint dated November 5, 2004 at 12-14. In addition, in its Amended Complaint, JFI did not even allege that the '360 patent was invalid, unenforceable, or obtained by fraud on the PTO.[5] Furthermore, JFI did not allege any defendant knew or should have known that the '360 patent was invalid, unenforceable, or obtained by fraud

---

[5] Allegations of fraud or inequitable conduct before the PTO must be pled with particularity pursuant to Fed. R. Civ. P. 9(b). Rentrop v. Spectranics Corp., 2004 U.S. Dist. LEXIS 10312 (S.D.N.Y. June 4, 2004) (inequitable conduct); Resqnet, Inc. v. Lansa, Inc., 2004 U.S. Dist. LEXIS 13579 (S.D.N.Y. July 21, 2004) (inequitable conduct); Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag, 207 F. Supp 2d 221 (S.D.N.Y. 2002) (fraud); Import Sys. Int'l, v. Martin Lee, 1992 U.S. Dist. LEXIS 3439 (S.D.N.Y. March 20, 1992) (fraud). JFI never made such allegations, and, therefore, they are not part of the case.

on the PTO. When JFI tried to add these very allegations last year by moving for leave to amend the Amended Complaint, the Court denied that motion on December 1, 2004.

In light of JFI's allegations, the judicial admissions in its briefs, and the denial of its motion to add allegations of patent invalidity and fraud, JFI cannot present any patent invalidity or fraud on the PTO evidence in this case and, therefore, its supposed evidence in that regard does not warrant denial of the bifurcation motion.

**D.    Noerr-Pennington Doctrine Applies to Multiple Legal Proceedings**

On pages 11-12 and, by reference, pages 10-11, JFI argues that the Court should apply a test different from the two-prong PRE test in assessing sham litigation claims involving multiple legal proceedings, relying on Primetime 24 Joint Venture v. NBC, 219 F.3d 92 (2d Cir. 2000).

First, the Federal Circuit, which has the most experience in and exclusive jurisdiction over patent appeals, has not endorsed the rationale of the decision in Primetime 24. See Glass Equip. Dev. v. Besten, Inc., 174 F.3d 1337 (Fed. Cir. 1999); Applera Corp. v. MJ Research Inc., 303 F. Supp. 2d 130, 133-34 (D. Conn. 2004) (distinguishing Primetime 24 and noting that Second Circuit law is not controlling and that the "Federal Circuit has found the Noerr-Pennington doctrine to apply even if the patent holder threatened more than one infringement suit."); In re Terazosin Hydrochloride Antitrust Litigation, 335 F. Supp. 2d 1336, 1366 n. 26 (D. Fla. 2004) ("Federal Circuit law, which governs this issue, applies the PRE objective/subjective test to claims of multiple patent infringement lawsuits" and citing cases.)

Second, even if the California Action is considered, courts routinely have held that ten or more lawsuits cannot constitute "automatic petitioning" that would serve to deprive the antitrust defendant of Noerr-Pennington protection. See Terazosin Hydrochloride Antitrust Litigation, 335 F. Supp. 2d at 1367 (involving 11 suits and noting that "Primetime 24 is inapplicable to this

case. The Primetime 24 Court held that thousands of statutory challenges against a single competitor to raise its expenses of defending litigation stated a claim for sham litigation."); Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag, 207 F. Supp. 2d 221, 224 n.2 (S.D.N.Y. 2002) ("Whereas Prime Time involved 'simultaneous and voluminous' lawsuits brought against a single television provider, . . . the lawsuits complained of in the Amended Complaint are simply individual actions against each of ten generic-drug applicants. It would be unreasonable to expect defendants to initiate litigation against only some of the generic-drug applicants they claim are infringing their patents.")

In Marchon Eyewear, Inc. v. Tura LP, 2002 U.S. Dist. LEXIS 19628, *24 (E.D.N.Y. Sept. 30, 2002), the court stated:

> Try as Defendants may, their attempt to classify Plaintiffs' acts, whatever the motivation behind them, as "a whole series of legal proceedings" or a "pattern of baseless, repetitive claims," Professional Real Estate Investors, 508 U.S. at 58 (citation omitted), does not stand up to scrutiny. In the sham litigation counterclaim, Defendants cite only two lawsuits, Tura I and the current action, not a "series" or "pattern" of them.

In short, the Second Circuit's decision in Primetime 24 is inapposite to the circumstances in the instant case and not controlling in any event.

Additionally, there are at most two lawsuits with any relevance to this action: the Connecticut Action and the California Action, which were brought only by defendant INC. JFI was not even a party to the California Action. JFI's references to the French suits and some unidentified S.D.N.Y. suit make no sense, particularly since Horphag was the plaintiff in all the French suits and an E.D.N.Y. suit. Thus, there is by no means a "series of legal proceedings" brought by INC or any other defendant as contemplated by the court in Primetime 24.

E. **There Are No "Predicate Facts in Dispute" That Would Preclude the Preliminary Determination by the Court**

On pages 8-11, JFI argues that there are predicate facts in dispute that must be determined by a jury. JFI, however, sets forth only four such facts on page 9, all of which either are not disputed or are irrelevant.

The first "predicate fact" is not in dispute because Stipulation of Fact No. 14 on page 58 of the Joint Trial Memorandum states: "On October 6, 1987, the '360 patent was issued in the name of Masquelier as the inventor. SCIPA and Horphag were listed as assignees." The second and third "predicate facts" pertain to fraud on the PTO, which is irrelevant to this case as explained in Point II(C), above. The final "predicate fact" describes an irrelevant French case brought in 1999 by Horphag in the Commercial Court of Grasse regarding the merger between CEP and SCIPA, to which JFI maintained the parties should stipulate in the Joint Trial Memorandum. Joint Trial Memo. at 61, No. 23. While defendants do not contest that Horphag brought that case, they did not stipulate to that "fact" simply because it was irrelevant. Indeed, the Court of Appeals of Aix-en-Provence suspended the Grasse court's dissolution of the merger and ultimately vacated the dissolution.

Defendants thank JFI for attaching Judge Squatrito's Ruling on the Defendants' Motions for Attorney Fees to its brief because that ruling supports bifurcation. While this Court held, in denying defendants' summary judgment motion, that Judge Squatrito's ruling does not in itself dispose of the antitrust and state law claims on res judicata grounds, his ruling nevertheless provides powerful evidence of how the judge presiding over the alleged sham litigation viewed it as not objectively baseless and not lacking probable cause as a matter of law.

In the Connecticut Action, contrary to JFI's assertions, Judge Squatrito was not at all hampered by lack of evidence in deciding that the underlying case was not baseless. Judge

Squatrito had presided over the case for four years and was familiar with all of the "facts" that JFI claims show that INC "should have known" it would be found to lack standing to enforce the '360 patent. Judge Squatrito was in an excellent position to view the evidence that INC "should have known" its action would ultimately be dismissed. Nevertheless, he concluded that INC's action was not frivolous or brought in bad faith. JFI is simply trying to reargue its lost motion for attorney's fees related to the entire case.

As discussed above, the California Action adds nothing to JFI's claims. In fact, like Judge Squatrito, the district court in California also determined that INC's infringement case was not baseless, frivolous or brought in bad faith under 35 U.S.C. § 285. See ruling attached as **Exhibit A**.

## CONCLUSION

For the foregoing reasons, the Court should grant the bifurcation motion in its entirety.

> DEFENDANTS,
> INTERNATIONAL NUTRITION
> COMPANY, EGBERT SCHWITTERS,
> NORMAN H. ZIVIN, JACK
> MASQUELIER, INTEGRATED
> BIOCEUTICALS, LLC, PRIMARY
> SOURCE, LLC, AND PRIMARY
> SERVICES, INC.
>
> By: _____
> RICHARD S. ORDER, ESQ.
> Federal Bar No. ct02761
> E-mail: rso@avhlaw.com
> ERIC D. BEAL, ESQ.
> Federal Bar No. ct23167
> E-mail: exb@avhlaw.com
> Axinn, Veltrop & Harkrider LLP
> 90 State House Square
> Hartford, CT 06103-3702
> Telephone:    860-275-8100
> Facsimile:    860-275-8101

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing has been served by hand this 6th day of June, 2005 to:

Eric W. Wiechmann Esq.
Mark D. Giarratana, Esq.
Alexandra B. Stevens, Esq.
Eric E. Grondahl, Esq.
McCarter & English
CityPlace I
185 Asylum Street
Hartford, CT 06103


_____
Richard S. Order, Esq.
AXINN, VELTROP & HARKRIDER LLP

A

**FILED**

JAN 24 2001

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL NUTRITION COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> INTERHEALTH NUTRITIONALS, INC.; NATROL, INC.; GENERAL NUTRITION, INC.; NAT-TROP; MELALEUCA, INC.; and HORPHAG RESEARCH LTD., <br><br> Defendants. | No. C 97-0377 MJJ <br><br> **ORDER DENYING DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES** |
| INTERHEALTH NUTRITIONALS, INC., <br><br> Cross-Claimant and Counter Claimant, <br><br> v. <br><br> INTERNATIONAL NUTRITION COMPANY, <br><br> Counter-Defendant; and <br><br> HORPHAG RESEARCH LTD. <br><br> Cross-Defendant. | |

Before the Court is defendants Horphag Research Ltd., Natrol, Inc., and General Nutrition, Inc.'s motion for attorneys' fees pursuant to 35 U.S.C. § 285, Federal Rule of Civil Procedure 54, and Local Civil Rule 54-2, defendant Melaleuca, Inc.'s joinder in that motion, and defendant Interhealth Nutritionals, Inc.'s motion for attorneys' fees. Having carefully considered the papers submitted by the parties, and having deemed oral argument unnecessary, the Court hereby DENIES the motions on the following grounds:

1.     This action does not constitute an exceptional case. *See* 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."); *Beckham Instruments, Inc. v. LKB Produktor A.B.*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) (exceptional case finding may be based on "willful infringement, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit"); *Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed. Cir. 1985) (conduct amounting to exceptional case must be supported by clear and convincing evidence). Although Plaintiff's claims ultimately failed, it has not been shown that Plaintiff unreasonably or frivolously pursued this action.

2.     In the exercise of discretion, the Court finds that an award of attorneys' fees would not be appropriate in this case. *See Machinery Corp. of America v. GullFiber A.B.*, 774 F.2d 467, 475 (Fed. Cir. 1985).

3.     No patent issues--such as, for example, infringement or patent validity--were litigated in this action, therefore, fees pursuant to 35 U.S.C. § 285 are unavailable to the defendants. *See Gjerlov v. Schuyler Laboratories, Inc.*, 131 F.3d 1016, 1024-25 (Fed. Cir. 1997) (when an action embraces both patent and non-patent claims, no fees under § 285 can be awarded for time incurred in the litigation of the non-patent issues); *Machinery Corp.*, 774 F.2d at 475.

4.     Defendants Interhealth Nutritionals, Inc. and Melaleuca, Inc.'s motions for attorneys' fees were untimely under Federal Rule of Civil Procedure 54. *See* Fed. R. Civ. Proc. 54(d)(2)(B) (motion for attorneys' fees "must be filed and served no later than 14 days after entry of judgment"); *see also Kyle v. Campbell Soup Co.*, 28 F.3d 928, 929-31 (9th Cir. 1994). Judgment was entered in this case on November 16, 2000. Interhealth Nutritionals, Inc. did not filed its motion until December 4, 2000, while Melaleuca, Inc. did not file its motion until December 12, 2000.

For the foregoing reasons, defendants' motions for attorneys' fees are DENIED.

**IT IS SO ORDERED.**

Dated: 1/24/2001

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

2

ba

United States District Court
for the
Northern District of California
January 24, 2001

\* \* CERTIFICATE OF SERVICE \* \*

Case Number:3:97-cv-00377

Int'l Nutrition

vs

Interhealth Nutritio

---

, the undersigned, hereby certify that I am an employee in the Office of
he Clerk, U.S. District Court, Northern District of California.

hat on  January 24, 2001, I SERVED a true and correct copy(ies) of
  attached, by placing said copy(ies) in a postage paid envelope
 essed to the person(s) hereinafter listed, by depositing said
nvelope in the U.S. Mail, or by placing said copy(ies) into an inter-office
lelivery receptacle located in the Clerk's office.


Marvin S. Gittes, Esq.
Corbin Gittes & Samuel
750 Lexington Ave
New York, NY   10022

Warren J. Krauss, Esq.
Sedgwick Detert Moran & Arnold
One Embarcadero Ctr
16th Flr
San Francisco, CA   94111-3628

Jon R. Stark, Esq.
Pennie & Edmonds LLP
3300 Hillview Ave
Palo Alto, CA   94304-1203

Michael J. Lyons, Esq.
Pennie & Edmonds LLP
3300 Hillview Ave
Palo Alto, CA   94304-1203

Thomas G. Rowan, Esq.
Pennie & Edmonds LLP
1155 Avenue of the Americas
New York, NY   10035-2711

Brian M. Poissant, Esq.
Pennie & Edmonds LLP
1155 Avenue of the Americas
New York, NY  10035-2711

Anthony M. Insogna, Esq.
Pennie & Edmonds LLP
1155 Avenue of the Americas
New York, NY  10035-2711

Henry C. Bunsow, Esq.
Keker & Van Nest LLP
710 Sansome St
San Francisco, CA  94111-1704

James C. Weseman, Esq.
Law Offices of James C. Weseman
1600 First National Bank Center
401 West A Street
San Diego, CA  92101

Michael E. Dergosits, Esq.
Dergosits & Noah LLP
Four Embarcadero Center
Ste 1150
San Francisco, CA  94111

Donna A. Tobin, Esq.
Cooper & Dunham LLP
1185 Avenue of the Americas
New York, NY  10036

Norman H. Zivin, Esq.
Cooper & Dunham LLP
1185 Avenue of the Americas
New York, NY  10036

Neil A. Smith, Esq.
Limbach & Limbach LLP
2001 Ferry Bldg
San Francisco, CA  94111


Richard W. Wieking, Clerk

BY: _____
    Deputy Clerk