UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JARROW FORMULAS, INC., | ) | CIVIL ACTION NO. |
| | ) | 3:01 CV 478 (AVC) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL NUTRITION COMPANY, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | JULY 18, 2005 |

**DEFENDANTS' INTERNATIONAL NUTRITION COMPANY,
EGBERT SCHWITTERS, NORMAN H. ZIVIN, JACK MASQUELIER,
INTEGRATED BIOCEUTICALS, LLC, PRIMARY SOURCE, LLC, AND
PRIMARY SERVICES, INC. MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103-3702
860-275-8100

Richard S. Order
Eric D. Beal

Attorneys for Defendants
International Nutrition Company,
Egbert Schwitters, Jack Masquelier,
Norman H. Zivin, Integrated BioCeuticals, LLC,
Primary Source, LLC, and Primary Services, Inc.

July 18, 2005

**ORAL ARGUMENT REQUESTED**

CTDOCS:14543.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................iv-vi

PRELIMINARY STATEMENT..............................................................................1

BACKGROUND.......................................................................................................5

    A.   The Underlying Infringement Litigation......................................................5

    B.   JFI's Amended Verified Complaint..............................................................9

ARGUMENT............................................................................................................11

I.    APPLICABLE STANDARDS OF LAW........................................................11

    A.   Summary Judgment Motions.......................................................................11

    B.   The Noerr-Pennington Doctrine and the Sham Litigation Exception...................12

    C.   The Objectively Baseless Standard Applies to all of JFI's
       Allegations Based on INC's Enforcement of the '360
       Patent.............................................................................................................14

          1.   JFI must Show That INC's Infringement Litigation was
               Objectively Baseless to Avoid Summary Judgment on
               All Counts Based Upon Sham Litigation
               (Counts 1-3 and 5-6)..........................................................14

          2.   JFI must Show That INC's Threatened Patent Enforcement
               Litigation was Objectively Baseless to Avoid Summary
               Judgment on All Counts Based Upon Threatened Litigation
               (Counts 1-3 and 5-6)..........................................................16

          3.   JFI must Show That INC's Statements of Patent Ownership were
               Objectively Baseless to Avoid Summary Judgment on All Counts
               Based Upon Publicizing the '360 Patent (Counts 1-4 and 6)...................17

          4.   JFI Has an Even Higher Burden to Show Lack of Probable
               Cause on its Vexatious Litigation Claim Against Attorney
               Zivin (Count 5)...................................................................19

II.    INC'S ENFORCEMENT OF THE '360 PATENT AND OPC 85 TRADEMARK
       WAS NOT OBJECTIVELY BASELESS.................................................................21

       A.    JFI Sold Proanthocyanidins for Use as Antioxidants in Violation of the '360
             Patent..............................................................................................................22

       B.    The '360 Patent is Presumptively Valid...................................................25

       C.    INC's Trademark Claim Against JFI Was Not Baseless............................27

       D.    INC's Claim of Ownership in and Standing to Enforce the '360 Patent
             Was Not Objectively Baseless...................................................................28

             1.    The Connecticut Action.....................................................................28

             2.    The Appeal to the Federal Circuit.....................................................33

             3.    The California Action.........................................................................34

             4.    Convergence of 35 U.S.C. § 285, Objectively Baseless, and
                   Fed. R. Civ. P. 11 Standards............................................................35

CONCLUSION.....................................................................................................................38

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...............................................11

Argus Chemical Corp. v. Fibre Glass-Evercoat, 812 F.2d 1381 (Fed. Cir. 1987)......................35

Asberry v. United States Postal Serv., 692 F.2d 1378 (Fed. Cir. 1982)........................33

Associated General Contractors, Inc. v. California State Council of Carpenters,
459 U.S. 519 (1983).....................................................................................11

BE & K Constr. Co. v. NLRB, 536 U.S. 516 (2002)..................................................12

B&G Plastics, Inc. v. Eastern Creative Indust., Inc.,
269 F. Supp. 2d 450 (S.D.N.Y. 2003)...........................................................17, 18

Bernstein v. Town of Sherman, 2005 U.S. Dist. LEXIS 1693
(D. Conn. Feb. 7, 2005) ...............................................................................20

Brooks Furniture Man. v. Dutailier, Int'l, 393 F.3d 1378 (Fed. Cir. 2005)...........................21, 35

Bryant v. Maffucci, 923 F.2d 979 (2d Cir. 1991)......................................................11

California Motor Transport v. Trucking Unlimited, 404 U.S. 508 (1972) ...................................12

CDC Technologies v. IDEXX Labs., 7 F. Supp. 2d 119 (D. Conn. 1998),
aff'd, 186 F.3d 74 (2d Cir. 1999)...................................................................15

Colida v. Sharp Electonics Corp., 125 Fed. Appx. 993 (Fed. Cir. 2005) .......................................33

Collins & Aikman Corp. v. Stratton Indust., 728 F. Supp. 1570 (N.D. Ga. 1989)...........13, 35, 37

Eastman Outdoors, Inc. v. Blackhawk Arrow Co., 329 F. Supp. 2d 955 (E.D. Mich. 2004)......19

E.I. Dupont de Nemours & Co. v. Cetus Corp., 1990 U.S. Dist. LEXIS 18414
(N.D. Cal. Dec. 3, 1990) ...............................................................................25

Falls Church Grp., Ltd. v. Tyler, Cooper and Alcorn, LLP, 89 Conn. App. 459 (2005).......19, 20

Filmtec Corp. v. Hydranautics, 67 F.3d 931, 936-40 (Fed. Cir. 1995)...........................14, 15, 16

Finch v. Hughes Aircraft Co., 926 F.2d 1574 (Fed. Cir. 1991)...................................33

Glass Equip. Dev. v. Besten, Inc., 174 F.3d 1337 (Fed. Cir. 1999) ...........................16

Globetrotter Software, Inc. v. Elan Computer Grp.,
362 F.3d 1367 (Fed. Cir. 2004)........................................................11, 13, 17, 19

Golan v. Pingel Ent., 310 F.3d 1360 (Fed. Cir. 2002)...........................11, 13, 17, 18, 28

Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co.,
964 F. Supp. 624 (D. Conn. 1997)...........................................................................27

Hoffmann-LaRoche v. Invamed Corp., 213 F.3d 1359 (Fed. Cir. 2000)........... ...........35, 36, 37

Import Sys. Int'l, v. Martin Lee, 1992 U.S. Dist. LEXIS 3439
(S.D.N.Y. March 20, 1992)........................................................................................26

In re Terazosin Hydrochloride Antitrust Litigation, 335 F. Supp. 2d 1336 (D. Fla. 2004).........28

Jarrow Formulas, Inc. v. International Nutrition Company,
175 F. Supp. 2d 296 (D. Conn. 2001)....................................................................16, 28

KOR-CT, LLC v. Savvier, Inc., 2005 U.S. Dist. LEXIS 4728
(D. Conn. March 28, 2005)........................................................................................35

Marchon Eyewear, Inc. v. Tura LP, 2002 U.S. Dist. LEXIS 19628
(E.D.N.Y. Sept. 30, 2002)........................................................................................39

Matsushita Electric Indust. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)...........................11

Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891 (Fed. Cir. 1998).....................16, 17

Mitek Surgical Products, Inc. v. Arthrex, Inc., 2000 U.S. App. LEXIS 3146
(Fed. Cir. Feb. 22, 2000)........................................................................................11, 13

Neuromedical Systems, Inc. v. Neopath, Inc., 1998 U.S. Dist. LEXIS 7718
(S.D.N.Y. May 26, 1998)........................................................................................25

Nobelpharma v. Implant Innovations, Inc., 141 F.3d 1059, 1068 (Fed. Cir. 1998)...................13

Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1339 (Fed. Cir. 2003)..................................25

Professional Real Estate Investors v. Columbia Pictures Indust., Inc.,
508 U.S. 49, 56 (1993)........................................................................................12, 13, 21

Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,
237 F.3d 1359 (Fed. Cir. 2001)................................................................................25

Q-Pharma, Inc. v. Jergens, 2002 U.S. Dist. LEXIS 27222
(D. Wash. Nov. 18, 2002)........................................................................................21

Q-Pharma, Inc. v. Jergens, 360 F.3d 1295 (Fed. Cir. 2004)...................................13, 23, 24, 35, 36

Rentrop v. Spectranics Corp., 2004 U.S. Dist. LEXIS 10312
(S.D.N.Y. June 4, 2004)...........................................................................................................26

Resqnet, Inc. v. Lansa, Inc., 2004 U.S. Dist. LEXIS 13579 (S.D.N.Y. July 21, 2004)...............26

Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag,
207 F. Supp. 2d 221 (S.D.N.Y. 2002)......................................................................................26

Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc., 375 F.3d 1341 (Fed. Cir. 2004),
cert. denied, 125 S. Ct. 1399 (2005) ........................................................................................13

U.S. Philips Corp. v. Princo Corp., 2005 U.S. Dist. LEXIS 6820
(S.D.N.Y. Jan. 24, 2005)....................................................................................................16, 17

Victus, Ltd. v. Collezione Europa U.S.A., 26 F. Supp. 2d 772 (D.N.C. 1998) ...........................35

Westport Taxi Service v. Westport Transit Dist., 235 Conn. 1 (1995).......................................15

Zeller v. Consolini, 59 Conn. App. 545 (2000) ..........................................................................19

Zenith Electronics Corp. v. Touchsystems, Inc., 182 F.3d 1340 (Fed. Cir. 1999) .....................18

## STATUTES AND LEGISLATIVE MATERIALS

Conn. Gen. Stat. § 52-568.........................................................................................................19

35 U.S.C. § 282 .........................................................................................................................25

## OTHER MATERIALS

Federal Rules of Civil Procedure, Rule 9(b..............................................................................26

Federal Rules of Civil Procedure, Rule 56(c)...........................................................................11

Federal Rules of Appellate Procedure, Rule 38.........................................................................33

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JARROW FORMULAS, INC., | ) | CIVIL ACTION NO. |
| | ) | 3:01 CV 478 (AVC) |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL NUTRITION COMPANY, | ) | |
| et al., | ) | |
| | ) | |
|     Defendants. | ) | JULY 18, 2005 |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

In accordance with the Court's Amended Scheduling Order of July 2005, defendants International Nutrition Company ("INC"), Egbert Schwitters, Jack Masquelier, Norman H. Zivin, Integrated BioCeuticals, LLC ("IBC"), Primary Source, LLC ("PS"), and Primary Services, Inc. ("PSI") respectfully submit this memorandum in support of their motion for summary judgment on the objective prong of the sham litigation test. As demonstrated in Defendants' Local Rule 56(a)(1) Statement (the "Statement"), there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law.

## PRELIMINARY STATEMENT

The core allegations made by plaintiff Jarrow Formulas, Inc. ("JFI") focus on INC's alleged sham litigation in commencing and maintaining a patent and trademark infringement action against JFI and others in this Court and a patent infringement action against others in the Northern District of California.[1] These allegations form the nucleus for JFI's federal and

---

[1] None of the other defendants in this action were parties to the underlying litigation, International Nutrition Company v. Horphag, Civil Action No. 3:96-CV-00386 (DJS) (D. Conn.) (the "Connecticut action"), and International Nutrition Company v. Interhealth Nutritionals, Inc., Civil Action No. C97-0377 SI (N.D. Cal.) (the "California action").

Connecticut antitrust claims (Counts 1 and 2), Connecticut Unfair Trade Practices Act ("CUTPA") claim (Count 3), Lanham Act claim (Count 4), Connecticut vexatious litigation claim (Count 5), and Connecticut tortious interference claim (Count 6). See Plaintiff's Summary in the Joint Trial Memorandum dated January 7, 2005 at 5-11.

To succeed on any of these claims, therefore, Jarrow must prevail on the preliminary, fundamental issue of whether the underlying patent and trademark infringement litigation was "objectively baseless" under the sham litigation exception to the Noerr-Pennington doctrine or, put another way, whether that litigation was commenced or maintained without probable cause. Summary judgment should enter for all defendants on all claims because the underlying litigation was not objectively baseless and did not lack probable cause.

First, as argued by INC in the underlying litigation, it was not objectively baseless for INC to allege in 1996 and thereafter that it was a 50% owner of U.S. Patent No. 4,698,360 (the "'360 patent") because:

1.  INC purchased SCIPA's 50% interest in the '360 patent for valuable consideration (Statement ¶¶ **42** (TAB 28 pp. 18-22); **46** (TAB 31 pp. 6-9); **59**);

2.  SCIPA's assignment of its interest in the patent to INC was recorded in the U.S. Patent & Trademark Office (the "USPTO") on March 28, 1994 (Statement ¶ **16**);

3.  In late 1994, on the grounds that INC and Horphag were 50% joint owners of the '360 patent, INC was sued by Consac Industries, Inc. ("Consac") in a declaratory judgment action seeking to invalidate the '360 patent. (Statement ¶ **19**). Horphag Research Ltd. ("Horphag") previously had brought a patent infringement suit against Consac in the Eastern District of New York for infringement of the '360 patent (Statement ¶¶ **18, 29** (TAB 19 pp. 9-10); **42** (TAB 28 pp. 7-8); **46** (TAB 31 pp. 11-12));

    a.  Horphag had brought its action against Consac without seeking the permission or consent of INC or SCIPA (Statement ¶¶ Id.; **59** (TAB 41 p. 23));

    b.  Horphag did not claim that INC had no ownership interest in the '360 patent (Id.);

    c.     In October 1994, Judge Platt of the Eastern District of New York stated that INC could be "vouched in" to Horphag's suit by virtue of INC's 50% ownership of the '360 patent (Statement ¶ **19**).

4.     In October 1996, Dr. Masquelier, as the inventor of the '360 patent, executed a Confirmatory Assignment to INC of any interest in the patent that may have reverted to him, and the Confirmatory Assignment was recorded in the PTO (Statement ¶ **31**);

5.     Even after decisions rendered by the trial court of Bordeaux, France and the Appellate Court of Bordeaux in March 1997 and May 1998, respectively:

    a.     the French statute on which the decisions rested (which required a co-owner to give a right of first refusal to the other co-owner if it wanted to sell) did not apply to the ownership or assignment of a U.S. patent (Statement ¶¶ **32**; **42** (TAB 28 pp. 15-18); **46** (TAB 31 pp. 12-17));

    b.     without informing SCIPA or INC, Horphag licensed Indena after commencement of the Connecticut action in 1996, which would have violated the same French statute relied on in the French courts' rulings if that statute applied to the '360 patent (Statement ¶ **33**; **43**; **46** (TAB 31 p. 16); **59** (TAB 41 pp. 9-10, 28)). Because there was no discovery in the French civil justice system, INC could not obtain and present evidence of Horphag's license to Indena (Statement ¶ **43**);

    c.     Judge Squatrito did not permit INC to use a copy of the Horphag license agreement with Indena that one of the defendants in the Connecticut action produced (Statement ¶ **33**; **59** (TAB 41 p. 28));

    d.     the French Appeals court did not grant Horphag's request to preempt SCIPA's interest in the patent (Statement ¶ **39**);

    e.     the complexity of international law and the use of a foreign court's ruling to determine ownership of a U.S. patent weighed against according comity to the French courts' rulings (Statement ¶¶ **46**; **59**); and

    f.     INC's appeal to the Federal Circuit, which had the final word on the issues raised in INC's infringement action under the '360 patent, was not decided until June 2001 (Statement ¶ **63**).

Second, it was not objectively baseless for INC to allege in the underlying litigation that JFI was infringing the '360 patent and that JFI was infringing INC's trademark because JFI was selling products making claims under the '360 patent without ownership or license rights under

the patent and selling such products under names that infringed INC's trademark.  Statement ¶ **20**.

Third, the procedure used by INC in the underlying litigation was not objectively baseless because:

1.   In August 1993, Horphag sued Consac (an American manufacturer of food supplements) for infringing the '360 patent without any other owner of the patent joining the suit voluntarily as a plaintiff or being joined by Horphag as a plaintiff or a defendant (Statement ¶ **18**; **29** (TAB 19 pp. 9-10); **42** (TAB 28 pp. 7-8); **46** (TAB 31 pp. 11-12));

2.   Horphag had stated in 1994 that either owner of the '360 patent could proceed with a patent infringement action without the other owner joining (Statement ¶ **18**);

3.   Horphag had agreed to cooperate to protect the invention (Statement ¶ **12;14**);

4.   The case law in 1996 and thereafter regarding the procedure for a single patent co-owner to sue for patent infringement was uncertain (Statement ¶ **42** (TAB 28 pp. 27-32));

5.   There were grounds for questioning whether Horphag's interest in the '360 patent had reverted to Dr. Masquelier in 1995 and before INC began the Connecticut action (Statement ¶ **29** (TAB 19 pp. 20-21); **42** (TAB 28 pp. 4-5); **46** (TAB 31 pp. 9-11));

6.   If Horphag's interest had reverted to Dr. Masquelier in 1995, Horphag was infringing the '360 patent in 1996 and was properly joined as a defendant (Statement ¶ **42**; **46**);

7.   If Horphag still retained an interest in the '360 patent after 1995 but refused to join the underlying litigation as a co-plaintiff, Fed. R. Civ. P. 19(a) provided a mechanism for joining Horphag, and if it was determined that Horphag was incorrectly named as a defendant, realigning it as a plaintiff (Statement ¶¶ **42** (TAB 28 pp. 27-32)); and

8.   INC relied on Judge Platt's ruling that, even though Horphag had sued Consac without joining SCIPA or INC, INC could be vouched in and bound by a judgment (Statement ¶ **19**).

Fourth, in the underlying litigation, Judge Squatrito and the district judge in the California action denied the defendants' motions for attorney's fees under 35 U.S.C. § 285,

finding that INC's suits were not "exceptional cases." Statement ¶¶ **69, 73**. Furthermore, although the Federal Circuit affirmed Judge Squatrito's grant of summary judgment in favor of the defendants, it denied JFI's motion under FRAP 38 for attorney's fees, declining to hold that INC's appeal was frivolous. Statement ¶ **64**.

In determining whether the underlying litigation and other alleged conduct were objectively baseless or lacked probable cause, the Court must treat the present defendants as it would treat a plaintiff in deciding whether to impose Rule 11 sanctions for filing a frivolous suit and, thereby, accord the present defendants the same benefit of the doubt that it would have accorded a plaintiff. Indeed, the facts set forth above were explained and presented to the two district courts and the Federal Circuit during the pendency of the cases in briefs filed by INC. JFI must prove that the underlying litigation and other alleged conduct were objectively baseless and lacked probable cause by clear and convincing evidence.

## **BACKGROUND**

### A.    **The Underlying Infringement Litigation**

On April 9, 1985, Dr. Jack Masquelier filed an application for a patent that disclosed the invention of a new method of use, namely, using plant extracts with a proanthocyanidins content for scavenging of free oxygen radicals in humans. Statement ¶ **11**. On October 6, 1987, U.S. Patent No. 4,698,360 was issued naming Dr. Jack Masquelier as the inventor. Statement ¶ **13**. The patent did not claim a production process or any product. Statement ¶ **13**. Societe Civile d'Investigations Pharmacologiques d'Aquitaine ("SCIPA") and Horphag Overseas Ltd. ("Horphag") were named as joint assignees pursuant to an April 1, 1985 assignment of the April 9, 1985 application that later matured into the '360 patent. Statement ¶ **11**. The '360 patent expired on April 9, 2005.

On April 29, 1985, several weeks after the '360 patent application had been filed, SCIPA and Horphag concluded a joint research agreement between SCIPA and Horphag.  Statement ¶ **12**.  By its terms, the joint research agreement was effective only for a maximum of 10 years – an initial 5 year term with one renewal of 5 years.  Statement ¶ **12**.  The agreement therefore expired on April 29, 1995.  Statement ¶ **12**.  The agreement does not mention the '360 patent and it was not recorded in the USPTO.  Statement ¶¶ **12; 46** (TAB 31 pp. 6-9).  The agreement lacked a choice-of-law provision.  Statement ¶ **12**.  Horphag understood that the co-owners were obligated to protect each other against infringers.  Statement ¶ **14**.

On May 5, 1992, INC registered the OPC 85 trademark for nutritional supplements in the USPTO.  Statement ¶ **15**.

On March 18, 1994, SCIPA assigned its 50% interest in the '360 patent to INC and that assignment was recorded in the USPTO on March 28, 1994.  Statement ¶ **16**.  INC paid 200,000 French francs to SCIPA for assignment of its interest in the '360 patent.  Statement ¶ **17**.

In 1993, Horphag sued Consac in the United States District Court for the Eastern District of New York for infringement of the '360 patent.  Statement ¶ **18**.  Although Horphag owned only 50% of the '360 patent, it commenced the lawsuit as the sole plaintiff.  Statement ¶ **18**.  In 1994, Consac sued INC, as the other owner of the '360 patent, in a declaratory judgment action seeking to invalidate the '360 patent.  Statement ¶ **19**.  Horphag did not object to Consac's characterization of INC as the other owner of the '360 patent.  Statement ¶ **19**.

In November 1994, JFI began selling "OPC-95" and "OPC+95" nutritional supplements containing proanthocyanidins for scavenging of free oxygen radicals.  Statement ¶ **20**.  From 1995 to the present, JFI has sold products containing proanthocyanidin extracted from grape seed

and the labels and/or product literature of such products recommend use for scavenging free radicals. Statement ¶ **76**.

On March 6, 1996, INC filed a lawsuit in the United States District Court for the District of Connecticut ("District of Connecticut") against Horphag[2], JFI, and sixteen other defendants (the "Connecticut action"). Statement ¶ **25**. In the Connecticut action, INC claimed ownership rights in the '360 patent and asserted that the defendants were committing patent infringement and JFI and certain defendants also were committing trademark infringement. Statement ¶ **25**.

On March 21, 1997, Judge Squatrito stayed the Connecticut action pending the outcome of a reexamination request of the '360 patent in the USPTO and the French action. Consequently, no discovery was taken in the Connecticut action. Statement ¶ **34**.

In 1995, Horphag sued INC and others in the trial court of Bordeaux, France, alleging, among other things, that the assignment of SCIPA's 50% interest in the patent to INC was void and claiming that SCIPA's interest should be transferred to Horphag as a consequence of an alleged right of preemption. Statement ¶ **21**. In March 1997, the Bordeaux court voided the assignment from SCIPA to INC, relying on a French statute concerning the assignment of rights under French patents. Statement ¶ **35**. Because there is no discovery in French proceedings, Statement ¶ **43**, INC was not able to prove that Horphag itself had licensed Indena under the patent without SCIPA or INC's consent. Statement ¶ **33**.

In May 1998, the Bordeaux Appeals Court affirmed the decision of the lower court. Statement ¶ **39**. The Appellate Court held that, although there was no choice-of-law provision in the April 29, 1985 Agreement, French law governed the Agreement. Statement ¶ **39**. Further, although the Agreement did not refer to the '360 patent, the Appellate Court held that title to the

---

[2] Alternatively, Horphag was identified as either a co-owner of the '360 patent or an infringer.

patent was governed by the Agreement. Statement ¶ **39**. Applying French law, the Court held

that a jointly owned patent could not be transferred without the co-owner's consent unless the

co-owner was first offered an opportunity to buy that interest. Statement ¶ **39**. However, the

French court also held that Horphag was not entitled to preempt SCIPA's right to joint

ownership, and that SCIPA remained a 50% owner. Statement ¶ **39**. SCIPA later merged with

CEP, another French company majority owned by INC's affiliate. Statement ¶ **40**.

On March 18, 2000, Judge Squatrito accorded comity to the decision of the Bordeaux

Appeals court and granted summary judgment on the patent infringement count in favor of

defendants in the Connecticut action on the grounds that INC lacked standing to enforce the '360

patent. Statement ¶ **47**. Judge Squatrito's decision was affirmed by the U.S. Court of Appeals

for the Federal Circuit on June 16, 2001. Statement ¶ **63**.

On July 20, 2001, the Federal Circuit denied New Vision International and JFI's motion

for attorney's fees and costs pursuant to FRAP 38. Statement ¶ **64**. On March 27, 2002, Judge

Squatrito denied the defendants' motions for attorney's fees, finding that it had not been an

"exceptional case" within the meaning of 35 U.S.C. § 285, although he did grant defendants

attorney's fees in connection with INC's motion for leave to amend its complaint to add a new

plaintiff. Statement ¶ **69**.

On January 31, 1997, INC began a patent infringement action in the Northern District of

California against Horphag and other sellers of infringing nutritional supplements (the

"California action"). Statement ¶ **70**. On July 22, 1997, that court stayed discovery pending the

outcome of the French litigation and, on September 6, 2000, accorded comity to the decision of

the Bordeaux Appeals court and granted summary judgment on the patent infringement count in

favor of defendants. Statement ¶¶ **71, 72**. On January 21, 2001, that court denied the

defendants' motions for attorney's fees, finding that it had not been an "exceptional case" within the meaning of 35 U.S.C. § 285.  Statement ¶ **73**.

**B.    JFI's Amended Verified Complaint**

The Amended Complaint alleges that defendants INC, Schwitters and Masquelier manufacture, sell, and distribute nutritional supplements including proanthocyanidins for radical scavenging ("PACs"), Amend. Compl. ¶ 8, and that IBC, PSI and PS distribute in Connecticut and the United States PACs purchased from INC, Schwitters and Masquelier.  Id. ¶ 9.  JFI is identified as a distributor of PACs, id. ¶ 52, and a competitor of INC, Schwitters and Masquelier. Id. ¶ 51.

The Amended Complaint identifies the relevant market as "the sale and distribution of nutritional supplements comprising PACs and covered by the '360 patent (the 'PAC market')" in the United States.  Id. ¶ 14.  The Amended Complaint alleges that the defendants (except Attorney Zivin)[3] "have conspired to and undertaken a scheme of anti-competitive conduct in order to monopolize" the PAC market, namely:  (1) "publishing deceptive advertising," (2) "falsely claiming sole ownership of U.S. Patent No. 4,698,360," (3) "threatening their competitors with legal action which had no legal or factual basis," and (4) "undertaking numerous baseless and vexatious litigation in various venues."  Id.

In Paragraphs 15-21, JFI makes various allegations regarding the assignments of the '360 patent and alleges that INC brought the Connecticut action to enforce the '360 patent when INC "knew or reasonably should have known that INC did not have a good faith basis to claim ownership of the '360 patent . . . ."  JFI alleges that Horphag brought suit in France over

---

[3] This Court previously has dismissed all counts asserted against Attorney Zivin except vexatious litigation.

ownership of the '360 patent and INC did not withdraw the Connecticut action or the assignments from SCIPA and Masquelier to INC. Id. ¶¶ 19, 20, 24, 27, 29, 30, 31, 32, 34, 35.

JFI alleges that INC made numerous false claims of ownership in the '360 patent, id. ¶¶ 24, 25, 34, and that INC and other defendants made false and misleading statements regarding INC's ownership rights in the '360 patent. Id. ¶¶ 14, 22, 23, 26, 28, 30, 32, 38, 52, 58, 65.

JFI also alleges that INC brought an infringement action in California falsely claiming that INC was the owner of the '360 patent, id. ¶¶ 27, 36 and filed a frivolous appeal from the Connecticut action. Id. ¶ 35.

The Amended Complaint does not allege that the '360 patent is invalid or unenforceable or that any defendant committed fraud or inequitable conduct in prosecution of the '360 patent. JFI fails to support the limitation of the relevant product market to the so-called "PAC market" described in the Amended Complaint at ¶ 14. For example, JFI does not allege that there are no substitutes for PACs. JFI fails to allege how competition in the so-called PAC market was harmed by any of the alleged conduct in the Amended Complaint and fails to allege that JFI suffered harm by reason of any harm to competition in the PAC market.

## ARGUMENT

## I.    APPLICABLE STANDARDS OF LAW

### A.    Summary Judgment Motions

Summary judgment is appropriate where "there is no genuine issue as to any material

fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue of fact is "material" if it "might affect the outcome of the suit under the governing law,"

and is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Although in determining whether the record presents a genuine issue for trial the Court

must view all evidence and ambiguities in a light more favorable to JFI, Bryant v. Maffucci, 923

F.2d 979, 982 (2d Cir. 1991), "it is not . . . proper to assume that [JFI] can prove facts that it has

not alleged or that the defendants have violated the antitrust laws in ways that have not been

alleged." Associated General Contractors, Inc. v. California State Council of Carpenters, 459

U.S. 519, 526 (1983). See also Matsushita Electric Indust. Co. v. Zenith Radio Corp., 475 U.S.

574, 588 (1986) ("antitrust law limits the range of permissible inferences from ambiguous

evidence in a § 1 case").

Thus, in the instant case, to survive summary judgment JFI must proffer clear and

convincing evidence that INC's enforcement of the '360 patent was objectively baseless. See

Globetrotter Software, Inc. v. Elan Computer Grp., 362 F.3d 1367, 1375-77 (Fed. Cir. 2004);

Golan v. Pingel Ent., 310 F.3d 1360, 1370-73 (Fed. Cir. 2002) ("In this case, there is no clear

and convincing evidence from which a reasonable jury could conclude that Pingel alleged patent

infringement in bad faith or knowingly enforced an expired patent."); Mitek Surgical Products,

Inc. v. Arthrex, Inc., 2000 U.S. App. LEXIS 3146 at *9 (Fed. Cir. Feb. 22, 2000).

**B.      The Noerr-Pennington Doctrine and the Sham Litigation Exception**

"Those who petition the government for redress are generally immune from antitrust liability." Professional Real Estate Investors v. Columbia Pictures Indust., Inc., 508 U.S. 49, 56 (1993) ("PRE"). See also California Motor Transport v. Trucking Unlimited, 404 U.S. 508 (1972) (extending immunity to petitioning the courts). As the U.S. Supreme Court observed in BE & K Constr. Co. v. NLRB, 536 U.S. 516, 524-26 (2002), Noerr-Pennington immunity is firmly rooted in the First Amendment right to petition. Petitioning that is a "sham," however, is not entitled to antitrust immunity. PRE, 508 U.S. at 56-7.

In PRE, the Supreme Court outlined a two-part test for determining when litigation will be considered a sham not immunized under the Noerr-Pennington doctrine. First, the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail." 508 U.S. at 60. Only if the court concludes that the challenged litigation is objectively meritless, should the second prong of the test – the subjective intent of the plaintiff – be considered. 508 U.S. at 60-61.

Because the question of subjective intent is not considered by the jury unless a claim is first held to be objectively baseless, a finding that a lawsuit was instituted with probable cause is an absolute defense to a claim that the case is a sham regardless of a litigant's subjective motivation. Id. Probable cause to institute civil proceedings requires no more than a "reasonable belief there is a chance that [a] claim may be held valid upon adjudication." 508 U.S. at 62-63.

A lost lawsuit must not lead the reviewing court to "engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without

foundation." Id. Even if a lawsuit is ultimately lost, probable cause to pursue the action will have existed if it "was arguably 'warranted by existing law' or at the very least was based on an objectively 'good faith argument for the extension, modification, or reversal of existing law.'" Id. at 65 (quoting Fed. R. Civ. P. 11). The action was not a sham if "a similarly situated reasonable litigant could have perceived some likelihood of success." Id. at 65.

In the present case, Federal Circuit law governs the determination of whether JFI has proven that INC does not have immunity under the antitrust laws. See Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc., 375 F.3d 1341, 1355-56 (Fed. Cir. 2004), cert. denied, 125 S. Ct. 1399 (2005) ("Federal Circuit law governs all antitrust claims premised on the abuse of a patent right."); Nobelpharma v. Implant Innovations, Inc., 141 F.3d 1059, 1068 (Fed. Cir. 1998) ("whether conduct in . . . enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a matter of Federal Circuit law"). The Federal Circuit has adopted the PRE objectively baseless analysis. See Globetrotter, 362 F.3d at 1377 ("the objective baseless standard of Professional Real Estate applies to state-law claims based on communications alleging patent infringement"); Q-Pharma, Inc. v. Jergens, 360 F.3d 1295, 1304-06 (Fed. Cir. 2004).

The antitrust plaintiff bears the burden of proving by clear and convincing evidence that the underlying litigation was objectively baseless. See Golan, 310 F.3d at 1372-73; Mitek Surgical Products, Inc. v. Arthrex, Inc., 2000 U.S. App. LEXIS 3146 (Fed. Cir. Feb. 22, 2000) (unpublished opinion) ("To show that the claim is objectively baseless, Arthrex had to prove by clear and convincing evidence that 'no reasonable litigant could realistically expect success on the merits.'"); Collins & Aikman Corp. v. Stratton Industries, Inc., 728 F. Supp. 1570, 1581 (N.D. Ga. 1989) ("Clearly Stratton would have to prove by clear and convincing evidence that C

& A's suit against it was a sham.  Only if Stratton can produce this quality of evidence would it be entitled to proceed to trial on the antitrust counterclaim.").

### C.    The Objectively Baseless Standard Applies to all of JFI's Allegations Based on INC's Enforcement of the '360 Patent

Under Federal Circuit precedent, JFI must come forward with clear and convincing evidence that all of INC's alleged misconduct -- whether in press releases, cease and desist letters, claiming ownership of and publicizing the patent, or enforcement of the patent -- was objectively baseless.

Although only INC was a party to the underlying litigation, JFI claims that other defendants were part of a "conspiracy" to enforce and publicize the '360 patent.  Amend. Compl. ¶¶ 18, 20, 22, 23, 27, 28, 30, 32, 37, 38, 40.  As a general matter, Noerr immunity applies equally to unilateral and concerted action.  See Filmtec Corp. v. Hydranautics, 67 F.3d 931, 934 (Fed. Cir. 1995) ("Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition.") (quoting United Mine Workers of America v. Pennington, 381 U.S. 657, 670 (1965)).  Because INC's enforcement of the '360 patent was legitimate and not objectively baseless, JFI's conspiracy claims fall apart and, therefore, summary judgment should enter for all defendants.

### 1.    JFI must Show That INC's Infringement Litigation was Objectively Baseless to Avoid Summary Judgment on All Counts Based Upon Sham Litigation (Counts 1-3 and 5-6)

In Count 1 (Amend. Compl. ¶¶ 15-21), JFI makes various allegations regarding the assignments of the '360 patent and alleges that INC brought the Connecticut action to enforce the '360 patent when INC "knew or reasonably should have known that INC did not have a good faith basis to claim ownership of the '360 patent . . . ."  JFI alleges that Horphag brought suit in France over ownership of the '360 patent, INC should have withdrawn the Connecticut action.

Id. Count 1 (Antitrust; ¶¶19, 20, 24, 27, 29, 30, 31, 32, 34, 35); Count 2 (Connecticut Antitrust;

¶ 47); Count 3 (CUTPA; ¶ 52); Count 5 (Vexatious litigation; ¶ 61); Count 6 (Tortious

interference with advantageous business relations; ¶ 65). JFI also alleges that INC brought an

infringement action in California falsely claiming that INC was the owner of the '360 patent,

Count 1 (¶¶ 27, 36), and filed a frivolous appeal from the Connecticut action. Count 1 (¶ 35).

As discussed above, Noerr-Pennington antitrust immunity, as applied by the Federal

Circuit, applies to JFI's antitrust claims[4] of sham patent infringement litigation. See PRE, 508

U.S. at 56; Mitek, 2000 U.S. App. LEXIS 3146, at *9; Filmtec Corp. v. Hydranautics, 67 F.3d at

936-40 (infringement lawsuit dismissed for lack of patent ownership not objectively baseless).

For example, in Filmtec Corp. v. Hydranautics, the Federal Circuit, relying on PRE,

concluded that Filmtec's patent infringement suit was not objectively baseless even though the

court had determined that Filmtec lacked patent title. 67 F.3d at 937-38. Filmtec had sued

Hydranautics for patent infringement in May 1990. In July 1991, the Federal Circuit, in deciding

an appeal in an unrelated infringement case brought by Filmtec, noted that "we do not know who

held legal title to the invention and to the patent application" and that the court had "a serious

question about the nature of the title, if any, in Filmtec." Id. at 934, 938. Filmtec did not

withdraw its action against Hydranautics after the July 1991 decision. Although the Federal

Circuit ultimately concluded in December 1992 that Filmtec lacked title and standing to sue on

---

[4] The same standards apply to JFI's state antitrust claims. See CDC Technologies v. IDEXX
Labs., 7 F. Supp. 2d 119, 122 (D. Conn. 1998), aff'd, 186 F.3d 74 (2d Cir. 1999) ("the
elements of Conn. Gen. Stat. 35-27 are substantially similar to the elements under § 2 of the
Sherman Act, and thus fail with [the plaintiff's] federal claim"); Westport Taxi Service v.
Westport Transit Dist., 235 Conn. 1, 15-16 (1995) ("we follow federal precedent when we
interpret the [Connecticut antitrust] act unless the text of our statutes, or other pertinent law,
requires us to interpret it differently").

the patent, it also held that Filmtec's pursuit of its patent infringement action against

Hydranautics was not objectively baseless. Id. at 938-39.

Noerr-Pennington immunity also applies to JFI's state and common law causes of action,

namely, CUTPA, vexatious litigation, and tortious interference with business relations that rely

on allegations of sham litigation. Jarrow Formulas, Inc. v. International Nutrition Company, 175

F. Supp. 2d 296, 310 n.12 (D. Conn. 2001).

> **2.    JFI must Show That INC's Threatened Patent Enforcement
> Litigation was Objectively Baseless to Avoid Summary Judgment on
> All Counts Based Upon Threatened Litigation (Counts 1-3 and 5-6)**

JFI also alleges that INC threatened competitors and customers in the nutritional

supplement industry with infringement litigation.  Count 1 (¶¶ 14, 22, 23, 28, 30, 32, 38, 40).

Threats of patent enforcement are just as immune under Noerr as actual patent enforcement.  See

Globetrotter, 362 F.3d at 1376-77 ("A plaintiff claiming that a patent holder has engaged in

wrongful conduct by asserting claims of patent infringement must establish that the claims of

infringement were objectively baseless."); Glass Equip. Dev., Inc. v. Beston, Inc., 174 F.3d

1337, 1343-44 (Fed. Cir. 1999); Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891,

898 (Fed. Cir. 1998) ("federal authority makes clear that it is not improper for a patent owner to

advise possible infringers of its belief that a particular product may infringe the patent"); U.S.

Philips Corp. v. Princo Corp., 2005 U.S. Dist. LEXIS 6820 at *13-18 (S.D.N.Y. Jan. 24, 2005).

In U.S. Philips, for example, the infringement defendants asserted that "Philips

threatened infringers with litigation 'in phone calls, at trade shows, and [at] other locations.'" Id.

at *15.  The district court responded that:

> This claim lacks merit because Noerr--Pennington protects such conduct. The
> Supreme Court has held for nearly one hundred years that "patents would be of
> little value if infringers of them could not be notified of the consequences of
> infringement. . .  Such action considered by itself cannot be said to be illegal."

One of the most basic ownership rights of a patentholder is the right to inform an infringer that it is regarded as an infringer. . . . Philips' communications with Defendants' customers was lawful pre-litigation communication.

Id. at *14-16 (citations omitted.)

### 3. JFI must Show That INC's Statements of Patent Ownership were Objectively Baseless to Avoid Summary Judgment on All Counts Based Upon Publicizing the '360 Patent (Counts 1-4 and 6)

JFI alleges that the defendants "publicize[d] INC's false claim to ownership of the '360 patent . . . ." Count 1 (¶ 22; see also ¶¶ 23, 26, 28, 30, 32, 38). JFI alleges that INC made numerous false claims of ownership in the '360 patent, id. (¶¶ 24, 25, 34), and that INC and other defendants made false and misleading statements regarding INC's ownership rights in the '360 patent. Count 1 (¶¶ 14, 22, 23, 26, 28, 30, 32, 38); Count 2 (¶ 47); Count 3 (¶ 52); Count 4 (Lanham Act; ¶ 58); Count 6 (¶ 65).

In order to survive summary judgment, JFI must provide clear and convincing evidence in support of its antitrust, federal unfair competition and state law claims that INC's public statements regarding its patent ownership were made in "bad faith." Golan, 310 F.3d at 1370-72; Mikohn Gaming, 165 F.3d at 897-98; B&G Plastics, Inc. v. Eastern Creative Indust., Inc., 269 F. Supp. 2d 450, 468-72 (S.D.N.Y. 2003).[5] Proof of bad faith requires "clear and convincing evidence that [INC] had no reasonable basis to believe" it properly could enforce the '360 patent, that is, that INC's claims of patent ownership were "objectively baseless." Globetrotter, 362 F.3d at 1377 (citing Mikohn Gaming, 165 F.3d at 897).[6]

---

[5] Thus, JFI's anticipated proffer of various INC press releases cannot provide a ground for antitrust liability. Since INC's assertion of rights to enforce the '360 patent has been found not to be baseless by three different U.S. courts, see Point II, below, INC's publication of its comments regarding those rights was likewise not baseless. See Golan, 310 F.3d at 1370-72.

[6] INC does not need to show that it acted in good faith. It is JFI's burden to prove that INC acted in bad faith. See Golan, 310 F.3d at 1373.

In <u>Golan v. Pingel Enterprise, Inc.</u>, the infringement defendant, Golan, brought federal and state antitrust and unfair competition claims, and state tort claims based on Pingel's distribution of cease and desist letters to over twenty of Golan's customers. 310 F.3d at 1363-64. The Federal Circuit affirmed the district court's dismissal of Golan's claims, concluding that: "To show bad faith in Pingel's actions, Golan must offer clear and convincing evidence that Pingel had no reasonable basis to believe that the GP petcock infringed Pingel's patents . . . . In this case, there is not clear and convincing evidence from which a reasonable jury could conclude that Pingel alleged patent infringement in bad faith or knowingly enforced an expired patent." <u>Id.</u> at 1371. <u>Accord</u> <u>Mikohn Gaming</u>, 165 F.3d at 897 (no bad faith where letters to customers and press release discussing infringement were "objectively accurate"); <u>B&G Plastics</u>, 269 F. Supp. 2d at 469 (to survive summary judgment on claim of improper dissemination of letter concerning patent rights "to the entire industry", "B&G must . . . offer clear and convincing evidence that Eastern had no reasonable basis to believe that the patents were being infringed when the various infringement letters were sent.").

In Count 4 (Violation of the Lanham Act), JFI alleges that defendants "have used in commerce false or misleading descriptions of fact and false or misleading representations of fact which have caused and continue to cause confusion, deception, and mistake among consumers as to the rightful owner of the '360 patent and JFI's right to sell OPC's without being subjected to suit by the defendants, and have disparaged JFI's commercial activities." Amend. Compl. ¶ 58. JFI's allegations under the Lanham Act based on INC's ownership of the '360 patent are subject to the bad faith analysis explained above. As the Federal Circuit held in <u>Zenith Electronics Corp.</u> <u>v. Touchsystems, Inc.</u>, 182 F.3d 1340, 1353 (Fed. Cir. 1999), "we conclude that, before a patentee may be held liable under § 43(a) for marketplace activity in support of its patent . . . the

marketplace activity must have been undertaken in bad faith." As noted above, a showing of

"bad faith" in support of a federal unfair competition claim requires "clear and convincing

evidence that [INC] had no reasonable basis to believe" that JFI was infringing the '360 patent.

See also Eastman Outdoors, Inc. v. Blackhawk Arrow Co., 329 F. Supp. 2d 955, 959-61 (E.D.

Mich. 2004) ("Marketplace representations of patent infringement may form the basis of a claim

under § 43 (a), but only if such marketplace representations were made in 'bad faith' . . . .  In

order to demonstrate 'bad faith,' [an infringement] defendant must demonstrate that a patentee's

assertions of infringement were 'objectively baseless'.").

### 4.    JFI Has an Even Higher Burden to Show Lack of Probable Cause on its Vexatious Litigation Claim Against Attorney Zivin (Count 5)

JFI's claim under the Connecticut vexatious litigation statute, Conn. Gen. Stat. § 52-568,[7]

also is subject to the Noerr-Pennington objectively baseless standard.  See Zeller v. Consolini, 59

Conn. App. 545 (2000).  In addition, under the patent laws, as discussed above, JFI must prove

bad faith, which incorporates the objectively baseless assessment, by clear and convincing

evidence to avoid federal preemption of its state law claims.  See Globetrotter, 362 F.3d at 1377

("Our decision to permit state-law tort liability for only objectively baseless allegations of

infringement rests on both federal preemption and the First Amendment.")

Recently, the Connecticut Appellate Court adopted a more stringent test for a plaintiff

asserting a vexatious litigation claim against an attorney and seeking to prove lack of probable

cause. Falls Church Grp., Ltd. v. Tyler, Cooper and Alcorn, LLP, 89 Conn. App. 459 (2005).  In

Falls Church, when the law firm, Tyler Cooper and Alcorn, LLP, had brought the underlying

---

[7] "Any person who commences and prosecutes any civil action or complaint against another . . . (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages." Conn. Gen. Stat. § 52-568 (emphasis added).

action, "it was fully cognizant that the statutes of limitation had run on the plaintiff's claims

against Falls Church." Id. at 463. Falls Church prevailed on a motion for summary judgment

based on the running of the relevant statutes of limitation and then brought a vexatious litigation

claim against the law firm. Id. at 464. The trial court concluded that the law firm had probable

cause to bring the underlying action and entered judgment in favor of the law firm. Id. at 465.

The Appellate Court affirmed the determination of probable cause and adopted the more

difficult to prove probable cause test for vexatious litigation claims against attorneys. The court

concluded that that standard "reflects the important public policy of avoiding the chilling of

novel or debatable legal claims and allows attorneys and litigants to present issues that are

arguably correct, even if it is extremely unlikely that they will win . . . ." Id. at 474. In Falls

Church, the court stated:

> [T]he objective standard which should govern the reasonableness of an attorney's
> action in instituting litigation for a client is whether the claim merits litigation
> against the defendant in question on the basis of the facts known to the attorney
> when suit is commenced. The question is answered by determining that *no*
> competent and reasonable attorney familiar with the law of the forum would
> consider that the claim was worthy of litigation on the basis of the facts known by
> the attorney who instituted suit. We are mindful that [r]easonable lawyers can
> differ, some seeing as meritless suits which others believe have merit, and some
> seeing as totally and completely without merit suits which others see as only
> marginally meritless. **Suits which *all* reasonable lawyers agree totally lack
> merit—that is, those which lack probable cause—are the least meritorious of
> all meritless suits. Only this subgroup of meritless suits present no probable
> cause.**

89 Conn. App. at 473-74 (emphasis added; citations and internal quotation marks

omitted.)[8]

_____

[8] The Appellate Court decision in Falls Church is controlling law unless modified or reversed by
the Connecticut Supreme Court. See Bernstein v. Town of Sherman, 2005 U.S. Dist. LEXIS
1693 at *14 (D. Conn. Feb. 7, 2005) ([Federal Courts] are bound . . . to apply the law as
interpreted by [Connecticut]'s intermediate appellate courts . . . unless we find persuasive