In the present case, as demonstrated below, Attorney Zivin had probable cause to commence and maintain the underlying litigation, and JFI has no evidence that would show that <u>all reasonable patent lawyers</u> would agree that the underlying litigation totally lacked merit.

## II. INC'S ENFORCEMENT OF THE '360 PATENT AND OPC 85 TRADEMARK WAS NOT OBJECTIVELY BASELESS

The determination of objective baselessness, as opposed to subjective intent, does not depend upon a defendant's or its counsel's thought processes, but rather depends on the court's assessment of the merits of the lawsuit. "The question is not whether [the defendant] thought the facts to constitute probable cause, but whether the court thinks they did." <u>PRE</u>, 508 U.S. at 63-64. More recently, the court in <u>Q-Pharma, Inc. v. Jergens</u>, 2002 U.S. Dist. LEXIS 27222 (D. Wash. Nov. 18, 2002), <u>aff'd</u>, 360 F.3d 1295 (Fed. Cir. 2004), reasoned:

> [I]n an objective analysis of the "baselessness" of the suit the Court will not look at what Q-Pharma's attorneys actually did or thought before filing and while maintaining the suit. Instead, the Court evaluates the suit on the basis of the objective and undisputed evidence, specifically the patent itself, the prosecution history, and Jergens' advertising, to determine whether a reasonable litigant could reasonably expect success on the merits based on that evidence. Wholly independent of any attestation of Q-Pharma's attorneys, the Court finds that in light of Jergens' advertising touting the therapeutic effects of Coenzyme Q10 in its product, and given a reasonable interpretation of the claim language and the prosecution history, Q-Pharma's decision to proceed with the lawsuit was not objectively baseless.

<u>Id.</u> at *23. <u>Accord</u> <u>Brooks Furniture Man. v. Dutailier, Int'l</u>, 393 F.3d 1378, 1382 (Fed. Cir. 2005) ("[The objectively baseless] inquiry does not depend on the state of mind of the plaintiff at the time the action was commenced, but rather requires an objective assessment of the merits.").

---

evidence that the [state's highest court], which has not ruled on this issue, would reach a different conclusion.")

CTDOCS:14381.3                     21

In the present case, a handful of undisputed facts is sufficient to show that the underlying infringement action was not objectively baseless:

1. INC purchased its 50% interest in the '360 patent from SCIPA for valuable consideration;

2. JFI's proanthocyanidins product, "OPC-95," was labeled and sold for a method of use that was covered by the '360 patent and JFI did not have a license under the patent;

3. The '360 patent, as are all patents, is entitled to a presumption of validity and the patent was reexamined by the USPTO and the patentability of all claims was confirmed;

4. INC owns the registered trademark, OPC 85 for nutritional products, and JFI changed its trademark, "OPC-95," after INC asserted its trademark infringement claim in the Connecticut action; and

5. Judge Squatrito found that the infringement action was not exceptional and found that there was not clear and convincing evidence that INC "knew or should have known that its claims were frivolous."

### A. JFI Sold Proanthocyanidins for Use as Antioxidants in Violation of the '360 Patent

The undisputed facts demonstrate that JFI sold proanthocyanidins for use as antioxidants in a method covered by the '360 patent during the entire period relevant to the instant action. The president of JFI, Jarrow Rogovin, testified that, in November 1994, JFI began selling supplements that it called, "OPC-95" and "OPC+95." Statement ¶ 20. Rogovin further testified that those supplements were sold as proanthocyanidins for scavenging of free oxygen radicals. Statement ¶ 20. In addition, in JFI's declaratory judgment action against Horphag Research Ltd., INC and Centre d'Experimentation Pycnogenol Sarl ("CEP"), JFI alleged that: "JFI is presently manufacturing and selling, and since 1995 has manufactured and sold, oligomeric proanthocyanidins ("OPCs") in the United States and abroad. JFI's products contain OPCs extracted from grape seed, and the labels and/or product literature recommend administration for scavenging free radicals." Statement ¶ 76. Thus, JFI concedes that it sold proanthocyanidins for

use as antioxidants in a method covered by the claims of the '360 patent before, during, and after INC's litigation to enforce that patent.

INC conducted a reasonable inquiry into the infringement by the defendants in the underlying litigation before bringing suit. For example, on February 14, 1996, INC obtained 12 bottles of JFI's "OPC-95™." Statement ¶ **23**. The labels on those bottles stated that JFI's "OPC-95™" was "Grape Seed Extract 100:1 Oligomeric Procyanidins Phyto-Antioxidant" and the "Suggested Usage" states that "Grape Seed OPCs are a more potent antioxidant than those from pine bark." Statement ¶ **20**. Thus, on their face, the JFI labels admitted infringement of the '360 patent.

In early 1994, and again in late 1995 to early 1996, INC also conducted an investigation as to its ownership of the '360 patent before bringing the Connecticut infringement action on March 6, 1996. Statement ¶ **22**. INC secured legal opinions regarding INC's rights of ownership under the '360 patent from counsel, including INC's Dutch intellectual property lawyer (Attorney Hagenaars), Attorney Zivin, and a French lawyer, Attorney Luchtenburg. Statement ¶ **22**. Horphag itself had expressed to its patent counsel in 1994 its understanding that either owner of the '360 patent could proceed with a patent infringement action without the other owner joining. Statement ¶ **18**.

Under Federal Circuit precedent, INC's pre-complaint investigation easily met what was required under Rule 11. <u>See, e.g.</u>, <u>Q-Pharma, Inc. v. Jergens Co.</u>, 360 F.3d 1295, 1300-03 (Fed. Cir. 2004). In <u>Q-Pharma</u>, the Federal Circuit concluded that Q-Pharma's "pre-filing infringement analysis was supported by a sufficient evidentiary basis. Q-Pharma acquired a sample of the Curel (R) CoQ[10] lotion and reviewed its advertising and labeling, which listed the products ingredients and repeatedly touted the therapeutic effects of CoQ[10]." <u>Id.</u> at 1302.

In addition, the court noted that, although Rule 11 requires that "an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement," nevertheless "a claim chart is not a requirement of a pre-filing analysis, as the owner, inventor, and/or drafter of a patent ought to have a clear idea of what the patent covers without the formality of a claim chart." Id. at 1300-01.

In the present case, INC obtained samples of JFI's infringing product. Attorney Zivin's firm, Cooper & Dunham LLP, undertook pre-complaint investigation pursuant to Rule 11. Statement ¶ 24. The method of use claims of the '360 patent were straightforward, and comparing the elements of those claims to the infringing defendants' proanthocyanidin supplements sold for use as antioxidants was elementary. It is noteworthy that of all the infringement defendants in the underlying action – who clearly were not shy about asserting their claims – none filed a Rule 11 motion. But now JFI asks this Court in effect to conclude that, although no party so moved at the time, INC should have been sanctioned under Rule 11 for filing and maintaining the infringement action. JFI's position makes no sense.

Thus, at the commencement of the Connecticut action and throughout its maintenance, the '360 patent was presumed valid and JFI was clearly infringing the patent.[9] As a result, a patent infringement claim against JFI was not objectively baseless and did not lack probable cause.

---

[9] Indeed, INC's position to enforce the patent was recognized by Canandaigua Wine Company, Inc., then the second largest wine company in the world, which entered into a license agreement under the '360 patent on August 20, 1996. Statement ¶ **30**. Canandaigua's General Counsel had a large patent firm conduct an investigation regarding INC's title before taking a license from INC. Statement ¶ **30**. Canandaigua's informed decision to take a license from INC undermines JFI's claim that INC's enforcement of the '360 patent was a mere sham. See Q-Pharma, 360 F.3d at 1303.

### B.        The '360 Patent is Presumptively Valid

A patent, and each one of its individual claims, is statutorily presumed to be valid. See 35 U.S.C. § 282; Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1339 (Fed. Cir. 2003); Purdue Pharma L.P. v. Boehringer Ingelheim GmhB, 237 F.3d 1359, 1365 (Fed. Cir. 2001). Not only is the '360 patent presumed to have been valid, but it also was subjected to reexamination, Statement ¶ 38, which further supports its validity. See, e.g., Oakley, 316 F.3d at 1342; Neuromedical Systems, Inc. v. Neopath, Inc., 1998 U.S. Dist. LEXIS 7718 at *19 (S.D.N.Y. May 26, 1998) ("While Neopath argues that the '725 and '272 patents are invalid, the Court places great weight upon the fact that the PTO upheld validity of these two patents, despite Neopath's arguments to the contrary, during the respective reexaminations requested by Neopath."); E.I. Dupont de Nemours & Co. v. Cetus Corp., 1990 U.S. Dist. LEXIS 18414 at *13 n.4 (N.D. Cal. Dec. 3, 1990) (in considering motion of summary judgment, "[r]eexaminations which affirm the validity of a challenged patent increase the challenger's burden in litigation").

The defendants anticipate that JFI will once again press its baseless claims of patent invalidity and fraud on the USPTO. See Memorandum in Support of Plaintiff's Motion for Leave to Further Amend Complaint dated October 13, 2004. As the defendants demonstrate in the memorandum of law in support of their Motion in Limine filed concurrently with the instant motion, JFI's claims of patent invalidity and fraud on the USPTO are not material and, furthermore, JFI is estopped from challenging the validity of the '360 patent since it took the position that validity is not part of this case in arguing against INC's motion to dismiss.

JFI never alleged in its complaint that the '360 patent was invalid, unenforceable, or obtained by fraud on the PTO.[10] Furthermore, JFI did not allege any defendant knew or should have known that the '360 patent was invalid, unenforceable, or obtained by fraud on the PTO. When JFI tried to add these very allegations last year by moving for leave to amend the Amended Complaint, the Court denied that motion on December 1, 2004.

In addition, JFI is estopped from now claiming that the instant action challenges the validity of the '360 patent or the conduct of any defendant before the USPTO with respect to the '360 patent. From the outset, JFI made it very clear that it is not challenging the validity of the '360 patent in this action. Statement ¶ 75 (TAB 56 p. 8) ("the validity of the '360 patent is not an issue raised by Jarrow's claims in this case"); Statement ¶ 74 (TAB 55 p. 23) ("In contrast to the antitrust claims at issue here, Critical-Vac asserted that Minuteman committed fraud on the Patent Office and tried to enforce a patent it knew was invalid."). As defendants demonstrated in opposing JFI's motion to amend to add allegations of patent invalidity and fraud on the PTO, such allegations have been barred as compulsory counterclaims and cannot now be used to ambush defendants. See Defendants' Memorandum in Opposition to Plaintiff's Motion for Leave to Further Amend Complaint dated November 5, 2004 at 12-14.

Thus, it is undisputed that JFI did not allege in its Amended Complaint that the '360 patent is invalid or unenforceable or that any defendant committed fraud or inequitable conduct in prosecution of the '360 patent, and, as the U.S. Supreme Court has cautioned, "it is not . . .

---

[10] Allegations of fraud or inequitable conduct before the PTO must be pled with particularity pursuant to Fed. R. Civ. P. 9(b). Rentrop v. Spectranics Corp., 2004 U.S. Dist. LEXIS 10312 (S.D.N.Y. June 4, 2004) (inequitable conduct); Resqnet, Inc. v. Lansa, Inc., 2004 U.S. Dist. LEXIS 13579 (S.D.N.Y. July 21, 2004) (inequitable conduct); Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag, 207 F. Supp. 2d 221 (S.D.N.Y. 2002) (fraud); Import Sys. Int'l, v. Martin Lee, 1992 U.S. Dist. LEXIS 3439 (S.D.N.Y. March 20, 1992) (fraud). JFI never made such allegations, and, therefore, they are not part of the case.

proper to assume that [a plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged." Associated General Contractors, 459 U.S. at 526. JFI, therefore, cannot avoid summary judgment based on any argument about invalidity or unenforceability of the '360 patent.

### C. INC's Trademark Claim Against JFI Was Not Baseless

JFI has also alleged that INC's trademark claim was baseless. Amend. Compl. ¶¶ 20, 21. The undisputed facts, however, show that not only did INC have probable cause to sue JFI for trademark infringement, but INC essentially obtained the relief it sought against JFI. It is undisputed that:

1. On May 5, 1992, INC registered the trademark OPC 85 for nutritional supplements in the USPTO (Statement ¶ **15**);

2. In November 1994, JFI began selling supplements that it called, "OPC-95" and "OPC+95," containing proanthocyanidins for scavenging of free oxygen radicals (Statement ¶ **20**);

3. Prior to the Connecticut action, JFI used the name "OPC-95™" for its procyanidins "Phyto-Antioxidant" product (Statement ¶ **20**);

4. Although JFI argued in the underlying action that OPC 85 is merely descriptive, JFI itself used "™" to denote a trademark, "OPC-95™" (Statement ¶ **27**);

5. In the Connecticut action, INC requested injunctive relief against JFI and other defendants for trademark infringement of INC's "OPC-85™" mark (Statement ¶ **25**);

6. In response to the Connecticut action, JFI ceased using the name "OPC-95™" in connection with its procyanidins antioxidant product, instead using "something like oligo proanthocyanidins plus monomers and dimers" (Statement ¶ **26**).

These facts show more than sufficient probable cause for INC's trademark claim against JFI. See Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co., 964 F. Supp. 624, 627 (D. Conn. 1997) (summary judgment granted since "probable cause to bring this litigation is established by the statutory presumptions of validity, ownership and exclusive rights that attach

to its registered trademark DIRECTOR under 15 U.S.C. § 1115, as well as a visual inspection of the parties' marks and their respective goods and services.").[11]

In addition, where a plaintiff obtains the relief it sought in its complaint, such claims are "by definition . . . 'reasonable efforts at petitioning.'" In re Terazosin Hydrochloride Antitrust Litigation, 335 F. Supp. 2d 1336, 1357-58 (D. Fla. 2004) (citing PRE, 508 U.S. at 61 n.13.). That court reasoned that it "cannot agree with Plaintiffs that a plaintiff who has filed suit and receives the relief sought (e.g. monetary compensation, a change in conduct, etc.) could only have been deemed to have 'won' under PRE if it continued to litigate the case and received a favorable judgment from the court." Id. at 1357 (citing PRE, 508 U.S. at 61).

Thus, because JFI changed its conduct in response to INC's infringement claim – discontinuing use of its "OPC-95™" mark – INC's action was a "reasonable effort at petitioning for redress and therefore not a sham." Id.

### D. INC's Claim of Ownership in and Standing to Enforce the '360 Patent Was Not Objectively Baseless

JFI claims that the underlying patent infringement litigation was baseless, despite its uncontested infringement, because it was determined that INC did not have standing to enforce the '360 patent. Amend. Compl. ¶¶ 15-21; Jarrow Formulas, Inc. v. International Nutrition Co., 175 F. Supp. 2d at 311. Under the circumstances during the litigation, however, INC's claim of ownership in and standing to enforce the patent clearly were not objectively baseless.

#### 1. The Connecticut Action

The key briefs from the underlying infringement action before Judge Squatrito present INC's arguments with respect to its ownership in and standing to enforce the '360 patent.

---

[11] "The law of the pertinent regional circuit governs the assertion of federally protected trademark rights." Golan, 310 F.3d. at 1373.

Statement ¶ 29, 42, 43, 46, 59. At the time, these briefs did not escape JFI's attention. In summary, INC argued in the underlying case that in the absence of a choice-of-law provision between joint owners, U.S. patent co-ownership is a matter of U.S. patent law and that INC was at least a joint owner of the '360 patent and could sue for infringement. Id. Specifically, INC argued that:

1. INC purchased SCIPA's 50% interest in the '360 patent for valuable consideration (Statement ¶¶ 42 (TAB 28 pp. 18-22); 46 (TAB 31 pp. 6-9); 59);

2. SCIPA's assignment of its interest in the patent to INC was recorded in the USPTO on March 28, 1994 (Statement ¶ 16);

3. In late 1994, on the grounds that INC and Horphag were 50% joint owners of the '360 patent, INC was sued by Consac in a declaratory judgment action seeking to invalidate the '360 patent. (Statement ¶ 19). Horphag previously had brought a patent infringement suit against Consac in the Eastern District of New York for infringement of the '360 patent (Statement ¶¶ 18, 29 (TAB 19 pp. 9-10); 42 (TAB 28 pp. 7-8); 46 (TAB 31 pp. 11-12));

    a. Horphag had brought its action against Consac without seeking the permission or consent of INC or SCIPA (Statement ¶¶ Id.; 59 (TAB 41 p. 23));

    b. Horphag did not claim that INC had no ownership interest in the '360 patent (Id.);

    c. In October 1994, Judge Platt of the Eastern District of New York stated that INC could be "vouched in" to Horphag's suit by virtue of INC's 50% ownership of the '360 patent (Statement ¶ 19);

4. In October 1996, Dr. Masquelier, as the inventor of the '360 patent, executed a Confirmatory Assignment to INC of any interest in the patent that may have reverted to him, and the Confirmatory Assignment was recorded in the PTO (Statement ¶ 31);

5. Even after decisions rendered by the trial court of Bordeaux, France and the Appellate Court of Bordeaux in March 1997 and May 1998, respectively:

    a. the French statute on which the decisions rested (which required a co-owner to give a right of first refusal to the other co-owner if it wanted to sell) did not apply to the ownership or assignment of a U.S. patent (Statement ¶¶ 32; 42 (TAB 28 pp. 15-18); 46 (TAB 31 pp. 12-17));

    b.    without informing SCIPA or INC, Horphag licensed Indena after commencement of the Connecticut action in 1996, which would have violated the same French statute relied on in the French courts' rulings if that statute applied to the '360 patent (Statement ¶ 33; 43; 46 (TAB 31 p. 16); 59 (TAB 41 pp. 9-10, 28)). Because there was no discovery in the French civil justice system, INC could not obtain and present evidence of Horphag's license to Indena (Statement ¶ 43);

    c.    Judge Squatrito did not permit INC to use in the French case a copy of the Horphag license agreement with Indena that one of the defendants in the Connecticut action produced (Statement ¶ 33; 59 (TAB 41 p. 28));

    d.    the French Appeals court did not grant Horphag's request to preempt SCIPA's interest in the patent. (Statement ¶ 39);

    e.    the complexity of international law and the use of a foreign court's ruling to determine ownership of a U.S. patent weighed against according comity to the French courts' rulings (Statement ¶¶ 46; 59); and

    f.    INC's appeal to the Federal Circuit, which had the final word on the issues raised in INC's infringement action under the '360 patent, was not decided until June 2001. (Statement ¶ 63).

JFI also contends that the underlying litigation was sham litigation because Horphag, a co-owner of the patent, was not named as a co-plaintiff. Amend. Compl. ¶ 21. The procedure used by INC in the underlying litigation, however, was not objectively baseless because:

1.    In August 1993, Horphag sued Consac (an American manufacturer of food supplements) for infringing the '360 patent without any other owner of the patent joining the suit voluntarily as a plaintiff or being joined by Horphag as a plaintiff or a defendant (Statement ¶ 18; 29 (TAB 19 pp. 9-10); 42 (TAB 28 pp. 7-8); 46 (TAB 31 pp. 11-12));

2.    Horphag had stated in 1994 that either owner of the '360 patent could proceed with a patent infringement action without the other owner joining (Statement ¶ 18);

3.    Horphag had agreed to cooperate to protect the invention (Statement ¶ 12;14);

4.    The case law in 1996 and thereafter regarding the procedure for a single patent co-owner to sue for patent infringement was uncertain (Statement ¶ 42 (TAB 28 pp. 27-32));

5.  There were grounds for questioning whether Horphag's interest in the '360 patent had reverted to Dr. Masquelier in 1995 and before INC began the Connecticut action (Statement ¶ **29** (TAB 19 pp. 20-21); **42** (TAB 28 pp. 4-5); **46** (TAB 31 pp. 9-11));

6.  If Horphag's interest had reverted to Dr. Masquelier in 1995, Horphag was infringing the '360 patent in 1996 and was properly joined as a defendant (Statement ¶ **42**; **46**);

7.  If Horphag still retained an interest in the '360 patent after 1995 but refused to join the underlying litigation as a co-plaintiff, Fed. R. Civ. P. 19(a) provided a mechanism for joining Horphag, and if it was determined that Horphag was incorrectly named as a defendant, realigning it as a plaintiff (Statement ¶¶ **42** (TAB 28 pp. 27-32)); and

8.  INC relied on Judge Platt's ruling that, even though Horphag had sued Consac without joining SCIPA or INC, INC could be vouched in and bound by a judgment (Statement ¶ **19**).

Ultimately, Judge Squatrito granted comity to the French Bordeaux Appeals Court, which held that, under French law, SCIPA's assignment to INC was void. Judge Squatrito, therefore, granted the defendants' motions for summary judgment. Statement ¶ **47**.

JFI, Horphag, Indena and others then strenuously argued for attorneys' fees from INC under 35 U.S.C. § 285, and JFI moved for attorneys' fees also from Attorney Zivin individually pursuant to 28 U.S.C. § 1927. See Statement ¶¶ **49, 50, 55, 57, 66, 68**. Specifically, the defendants argued that:

- INC's commencement of the suit was frivolous because INC knew and should have known it had no standing;

- Commencing a patent infringement action against a patent owner and its customers is frivolous;

- The case was exceptional under 35 U.S.C. § 285 since INC maintained the suit despite the French courts' decisions finding that it was not an owner of the patent;

- INC's bona fide purchaser argument was frivolous;

- INC misrepresented that Horphag's rights in the '360 patent reverted to SCIPA;

- INC's argument that the French law contradicted American law was specious; and

- INC offered no basis why comity should not be extended.

Id. JFI joined in both of the motions made by other defendants as well as filing its own motion against Attorney Zivin individually pursuant to 28 U.S.C. § 1927. Statement ¶ 55, 57, 66, 68.

Judge Squatrito found that the case was not exceptional, concluding that INC's action was not frivolous or brought or maintained in bad faith, and, therefore, denied the defendants' motions for attorney's fees under 35 U.S.C. § 285:

> Although the Court is sure that the plaintiff lacked standing to bring its patent-infringement claim, the Court cannot say that there is clear and convincing evidence that the plaintiff knew or should have known that the lawsuit was baseless, either at the time the lawsuit was brought or during its subsequent maintenance. Imatec Ltd. v. Apple Computer, Inc., 200 WL 633428, at *1 (S.D.N.Y. May 17, 2000). While this is a close case, the difficulties inherent in cases involving international courts and United States patent law obviate a finding by this Court that the facts [i]ndisputably lead to a conclusion that the plaintiff knew or should have known that its claims were frivolous. Thus the Court does not find that this is an "exceptional" case under Section 285.

Ruling on Defendants' Motions for Attorney's Fees dated March 27, 2002 at 8.[12] Statement ¶ 69. Judge Squatrito made this finding <u>even after</u> the Federal Circuit had affirmed and he knew that his decision granting defendants' summary judgment motions would not be reversed.

In addition, Judge Squatrito denied JFI's motion for attorneys' fees against Attorney Zivin individually, stating: "The award of attorney fees against counsel under Section 1927 is a sanction against the alleged bad faith of an attorney, and requires that such bad faith or an improper purpose be shown. <u>This Court does not find plaintiff counsel's conduct warrants such</u>

---

[12] Judge Squatrito allowed attorney's fees but only for costs incurred in opposing INC's motion to amend and add CEP as a party.

sanctions, nor has the Court been presented with the requisite evidence of bad faith in order to reach that determination." Statement ¶ **69** (emphasis added.)

### 2. The Appeal to the Federal Circuit

JFI also claims that INC's appeal to the Federal Circuit had "no legal or factual basis." Amend. Complaint ¶ 35. On August 14, 2000, INC filed in the Federal Circuit its Brief of Appellant. Statement ¶ **59** On October 10, 2000, JFI filed a "Notice of Joinder" in the appeal before the Federal Circuit, joining the appellee briefs of: (1) Horphag Research, Inc., Kaire International, Inc., M.W. International, Inc.; and (2) USANA, Inc. Statement ¶ **60**.

On November 3, 2000, New Vision International filed with the Federal Circuit a Motion for Attorney's Fees and Double Costs Against Appellant International Nutritional Company for Filing and Prosecuting a Frivolous Appeal, Pursuant to Rule 38 of the Federal Rules of Appellate Procedure. Statement ¶ **61**. On January 17, 2001, JFI joined New Vision International's Motion for Attorney's Fees and Double Costs. Statement ¶ **62**.

In Asberry v. United States Postal Serv., 692 F.2d 1378 (Fed. Cir. 1982), the Federal Circuit established the practice of vigorously enforcing Rule 38.[13] In Finch v. Hughes Aircraft Co., 926 F.2d 1574, 1579-80 (Fed. Cir. 1991), the Federal Circuit stated that the "frivolous as filed" standard consists of finding that "the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there really is no appealable issue." See also Colida v. Sharp Electonics Corp., 125 Fed. Appx. 993, 996 (Fed. Cir. 2005) (appeal frivolous where there is "no basis for reversal in law or fact can be or is even arguably shown").

---

[13] FRAP 38 provides: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."

Although the Federal Circuit affirmed Judge Squatrito's grant of summary judgment in the Connecticut action, it denied New Vision International and JFI's motion for attorney's fees and costs pursuant to FRAP 38. Statement ¶ 64. The Federal Circuit's undisputed denial of New Vision and JFI's motion for fees for a frivolous appeal is fatal to JFI's unsupported claim that the appeal was frivolous.

### 3. The California Action

JFI was not a party to California action. Even if the California action is considered, however, it adds nothing to JFI's claims. In fact, like Judge Squatrito, the district court in California also determined that INC's infringement case was not baseless, frivolous or brought in bad faith under 35 U.S.C. § 285. The court found that:

> This action does not constitute an exceptional case. See 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."); Beckham Instruments, Inc. v. LKB Produktor A.B., 892 F.2d 1547, 1551 (Fed. Cir. 1989) (exceptional case finding may be based on "willful infringement, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit); Reactive Metals and Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582 (Fed. Cir. 1985). **Although Plaintiff's claims ultimately failed, it has not been shown that Plaintiff unreasonably or frivolously pursued this action.**

Statement ¶ 73 (emphasis added).

Thus, contrary to JFI's contentions, the three courts that reviewed INC's infringement claims for reasonableness all have concluded that INC's patent infringement actions were not frivolous.

### 4. Convergence of 35 U.S.C. § 285, Objectively Baseless, and Fed. R. Civ. P. 11 Standards

There is a convergence of the standards used to evaluate claims under 35 U.S.C. § 285, the objectively baseless standard under PRE, and Fed. R. Civ. P. 11. Of course, the Court in PRE expressly adopted the Rule 11 standard as one possible way to demonstrate probable cause, 508 U.S. at 65, and, as discussed above, INC's pre-filing inquiry was more than adequate. Many courts, moreover, also have equated the requirements under 35 U.S.C. § 285 and the objectively baseless aspect of PRE as well as, in some cases, Rule 11. See, e.g., Brooks Furniture Manufacturing, Inc. v. Dutailer Int'l, 393 F.3d 1378, 1381-82 (Fed. Cir. 2005); Q-Pharma, Inc. v. Jergens Co., 360 F.3d at 1300-03; Hoffmann-LaRoche v. Invamed Corp., 213 F.3d 1359 (Fed. Cir. 2000); Argus Chemical Corp. v. Fibre Glass-Evercoat, 812 F.2d 1381 (Fed. Cir. 1987); KOR-CT, LLC v. Savvier, Inc., 2005 U.S. Dist. LEXIS 4728 (D. Conn. March 28, 2005); Victus, Ltd. v. Collezione Europa U.S.A., 26 F. Supp. 2d 772 (D.N.C. 1998); Collins & Aikman Corp. v. Stratton Indust., 728 F. Supp. 1570 (N.D. Ga. 1989).

For example, in Q-Pharma, the Federal Circuit reviewed the trial court's denial of sanctions under Rule 11, its denial of attorneys' fees under § 285, and the trial court's determination that Q-Pharma's infringement action against Jergens was not objectively baseless. 360 F.3d at 1300-06. First, the Federal Circuit concluded that Q-Pharma's infringement action was not frivolous and affirmed the denial of Rule 11 sanctions: "[W]e conclude that [Q-Pharma's] pre-filing infringement analysis was supported by a sufficient evidentiary basis. Q-Pharma acquired a sample of the Curel (R) CoQ[10] lotion and reviewed its advertising and labeling, which listed the products ingredients and repeatedly touted the therapeutic effects of CoQ[10]." Id. at 1302. The court also noted that "Q-Pharma reasonably believed its patent to be valid in light of the statutory presumption of validity . . . as well as the licenses that several

companies took under the patent. The two (or four) letters from accused infringers questioning the validity of the '373 patent do not negate Q-Pharma's legal and factual bases for believing the patent to be valid." Id. at 1303.

The court in Q-Pharma then affirmed the denial of attorneys' fees under § 285 for the same reasons it affirmed the denial of sanctions under Rule 11, stating that: "For the reasons discussed above, we conclude that Q-Pharma reasonably believed that the '373 patent was valid and infringed when it filed suit and that its claim of infringement was therefore neither frivolous nor unjustified." Id. at 1304.

Finally, based on the Rule 11 and § 285 analyses, the court in Q-Pharma rejected Jergens' argument that Q-Pharma's suit was objectively baseless:

> For many of the reasons discussed above in our analysis of the district court's denial of Rule 11 sanctions, we agree with Q-Pharma that its claim of infringement was not "so baseless that no reasonable litigant could realistically expect to secure favorable relief." Id. at 62. In other words, a reasonable litigant could--based on the '373 patent, its prosecution history, and Jergens' advertising and labeling statements touting the therapeutic effects of the Curel (R) CoQ[10] lotion--expect to prevail on a claim alleging infringement. After all, Jergens itself advertised its product as containing CoQ[10] to restore the qualities of healthy skin.

Id. at 1305.

In Hoffmann-LaRoche, the Federal Circuit affirmed the trial court's denial of Rule 11 sanctions and attorneys' fees under § 285, noting the interrelationship between the two standards:

> Our rejection of the Rule 11 claim, i.e., our affirmance of the district court's ruling that Roche and Syntex made a reasonable pre-filing inquiry, also supports the district court's finding that this was not an exceptional case. Torpharm has not presented any facts showing that when Roche and Syntex filed their complaint, they had reason to believe that their patents did not cover the processes used to make Torpharm's generic drug. [Torpharm's] mere argument that [Roche's and Syntex's] . . . claims were 'baseless' and pursued in 'bad faith' does not undermine the district court's conclusions to the contrary.

CTDOCS:14381.3 36

213 F.3d 1359 at 1365-66.

Thus, courts have recognized the common-sense proposition that if an infringement suit is not frivolous for purposes of § 285 or Rule 11, it is not objectively baseless and is not sham litigation. For example, in a pre-PRE case, Collins & Aikman, the district court rejected Stratton's antitrust counterclaim on Noerr grounds:

> When Stratton moved for attorneys' fees it had every incentive to persuade the Court that C&A's suit was frivolous and brought in bad faith. Stratton did not persuade the Court then and it has failed now. The same arguments that were asserted then have been reasserted in this instance. The added discovery allowed Stratton on the antitrust counterclaim has not produced sufficient evidence of bad motive to carry Stratton's burden in the face of Noerr-Pennington.

728 F. Supp. at 1582.

In the instant case, as noted above, all three courts, including the Federal Circuit, that have evaluated INC's ownership in and standing to bring the underlying infringement claims concluded that INC's arguments and claims were not frivolous under § 285 or FRAP 38. Judge Squatrito's factual finding in 2002 that INC's enforcement of the '360 patent was not an exceptional case – which was not appealed by JFI or any other infringement defendant – is dispositive of JFI's allegation that "[a]t the time of filing the Connecticut lawsuit, INC, Schwitters, Masquelier and Zivin knew or reasonably should have known that INC did not have a good faith basis to claim ownership of the '360 patent." Amend. Compl. ¶ 21.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of all defendants on all claims.

DEFENDANTS,
INTERNATIONAL NUTRITION
COMPANY, EGBERT SCHWITTERS,
NORMAN H. ZIVIN, JACK
MASQUELIER, INTEGRATED
BIOCEUTICALS, LLC, PRIMARY
SOURCE, LLC, AND PRIMARY
SERVICES, INC.

By: _____
RICHARD S. ORDER, ESQ.
Federal Bar No. ct02761
E-mail: rso@avhlaw.com
ERIC D. BEAL, ESQ.
Federal Bar No. ct23167
E-mail: exb@avhlaw.com
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103-3702
Telephone:   860-275-8100
Facsimile:   860-275-8101

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing has been served by hand this 18th day of July, 2005 to:

Eric W. Wiechmann Esq.
Mark D. Giarratana, Esq.
Alexandra B. Stevens, Esq.
Eric E. Grondahl, Esq.
McCarter & English
CityPlace I
185 Asylum Street
Hartford, CT 06103

_____
Eric D. Beal
AXINN, VELTROP & HARKRIDER LLP