Jarrow Formulas vs International Nutrition Co.

2/22/2002                                     Norman H. Zivin, Esq. - CONFIDENTIAL

Page 3

1              (The following excerpts of the tesimony

2     of NORMAN H. ZIVIN, ESQ., February 22, 2002, are

3     designated strictly confidential.)

4     DIRECT EXAMINATION

5     BY MR. WIECHMANN:

6          Q     In connection with your participation as an

7     attorney with this assignment, did you become aware of

8     whether SCIPA received good and valuable consideration

9     for the -- for its assigning its ownership interest to

10    INC?

11         A     Yes.

12         Q     Do you recall how much that was?

13         A     I think that information is highly

14    confidential.

15         Q     Well, we'll designate it as highly

16    confidential.

17         A     Then ask Mr. Rogovin to leave.

18              MR. WIECHMANN:  Fine.

19              (Mr. Rogovin left the deposition room.)

20              MR. WIECHMANN:  This is designated on

21    the record as highly confidential.

22              MR. ORDER:  Strictly confidential.

23              MR. WIECHMANN:  Strictly confidential,

24    and will be sealed separately.

25         A     As I recall, INC paid SCIPA 200,000 French

Page 4

1  francs.

2  Q   Going back again to Exhibit D which you were
3  referring to before the agreement, do you know whether
4  SCIPA shared any of the monies it received for that
5  assignment with Horphag?

6  A   The monies they received from INC?

7  Q   Yes.

8  A   I have no idea.

9  Q   Do you know whether Horphag ever made a claim
10 that it was due that money under Article 5 of the
11 agreement?

12 A   Not to my knowledge.

13         MR. WIECHMANN:  Why don't we go get him
14 again.

15         (Off the record discussion.)

16         (Second portion of strictly confidential
17 designation of testimony of NORMAN H. ZIVIN, ESQ.,
18 follows:)

19         MR. WIECHMANN:  For the record, I'm
20 going to refer to a document that has a restricted
21 confidential designation.

22 Q   (By Mr. Wiechmann)  Were you involved in the
23 negotiation of the license between International
24 Nutrition Company and Canandaigua Wine?

25 A   Yes.

Page 102

1   A    Without waiving the attorney-client or work
2   product privileges and with reference to the briefs
3   filed on the summary judgment motions and in the Court
4   of Appeals, there were two positions: One position was
5   that Horphag had written several letters agreeing that
6   either party could proceed with the patent infringement
7   action.

8        In fact, there were three positions. A second
9   position was that Horphag itself had brought an action
10  against Consac without seeking any permission of the
11  joint owner.

12       And the third position -- give me a moment
13  here. (Pause.) Was that in Exhibit D to the Tobin
14  declaration which you have marked Exhibit 34, the
15  essence of this agreement was that the parties would
16  cooperate in order to protect the invention.

17  Q    Looking at Exhibit D, when you say the essence
18  of the agreement, can you point to any specific
19  language?

20  A    I'm looking at it. I'm not certain that I'm
21  familiar with this exact translation. (Pause.) I think
22  it's in the, what I'll call the whereas clauses,
23  although they don't use the word "whereas."

24  Q    Can you point specifically to where in the
25  introductory clauses you see the language that you, I

Page 44

1  that representation?

2      A    I represented International Nutrition Compa

3  in a lawsuit filed by a company called Consac.

4      Q    Who were the parties to that lawsuit?

5      A    Consac and International Nutrition Company.

6      Q    What were the claims -- and what did the

7  claims raised by Consac involve in that lawsuit?

8      A    Consac brought a declaratory judgment action

9  and then sought against some other -- against some

10 other parties, and then sought to substitute

11 International Nutrition Company as a party.

12     Q    And what was the gravamen of Consac's

13 declaratory judgment?

14          MR. ORDER:  Objection.

15     A    To the extent that anyone could understand

16 what they were trying to claim in that case, I believe

17 they were claiming that the 360 patent was invalid and

18 not infringed.

19     Q    (By Mr. Wiechmann)  Was Horphag a party to

20 that suit?

21     A    No.

22     Q    Was anybody -- was SCIPA a party to the suit?

23     A    Yes.

24     Q    Were you representing SCIPA?

25     A    No.

Page 45

```
1    Q   Who was representing SCIPA?
2    A   As I recall, a lawyer named Joe Davis.
3    Q   From what law firm?
4    A   Lacher & Lovell-Taylor.
5    Q   What city are they headquartered in?
6    A   I'm sorry?
7    Q   What city are they located in?
8    A   New York.
9    Q   Was Mr. Schwitters a party to the lawsuit?
10   A   No.
11   Q   Was PSI, Primary Services, a party to the
12  lawsuit?
13   A   No.
14   Q   What was the outcome of that lawsuit?
15   A   Consac voluntarily dismissed the case before
16  an answer was filed.
17   Q   Were you aware at that time in 1994 of any
18  other suits involving Consac that related to the 360
19  patent?
20   A   Yes.
21   Q   And what suit was that?
22   A   A lawsuit brought by Horphag against Consac
23  for infringement of the 360 patent.
24   Q   And how did you become aware of that suit?
25   A   I don't recall.
```

Page 46

1      Q      Did you communicate with any attorneys
2      relating -- any attorneys defending -- strike that.
3             Did you communicate with any Horphag attorneys
4      in connection with their lawsuit against Consac?
5      A      Yes.
6      Q      And who was that attorney?
7      A      Marvin Gittes.  I'm sorry.  What was that
8      question?
9      Q      I said did you communicate --
10     A      I want to have him read it back.
11            MR. WIECHMANN:  Okay.
12            (Record read.)
13     A      Marvin Gittes.
14     Q      (By Mr. Wiechmann)  Okay.  Now, just for the
15     record, the 1994 case brought by Consac against INC
16     seeking declaratory judgment, did that relate solely to
17     the 360 patent?
18            MR. ORDER:  Objection to form.
19     A      No.  I think it also related to the trademark
20     Pycnogenol.
21     Q      (By Mr. Wiechmann)  And what were the claims
22     involving the trademark Pycnogenol?
23     A      As best as I can recall, Consac claimed that
24     the trademark was invalid and unenforceable.  But that
25     claim was not against International Nutrition Company.

1   Q   That claim was against whom?

2   A   Consac's pleadings were so convoluted that no
3   one knew what their claims were against anybody.

4   Q   Okay. And I assume, because you said their
5   complaint was withdrawn, there was no decision rendered
6   on any issue by the court; is that a fair statement?

7   A   No, it's not a fair statement.

8   Q   Okay. Did the court rule, make any
9   substantive rulings in connection with the Consac
10  versus INC case?

11  A   A magistrate made a ruling that there was
12  jurisdiction in New York over International Nutrition
13  Company; an appeal was filed to the district judge.
14  The case was voluntarily withdrawn before the district
15  judge could rule on the appeal.

16  Q   Do you recall the names of the magistrate or
17  the district judge?

18  A   I don't recall the magistrate. I think the
19  district judge was Platt.

20  Q   That would be Eastern District of New York?

21  A   Correct.

22  Q   And the second case, the case brought by
23  Horphag against Consac, that was pending where?

24  A   The same court.

25  Q   And did that involve simply the 360 patent or

Jarrow Formulas vs International Nutrition Co.

2/22/2002                                                                 Norman H. Zivin, Esq

Page 48

1  did it have trademark issues?
2      A    I believe it had trademark issues as well.
3      Q    Involving the same trademark Pycnogenol?
4      A    Yes.
5      Q    Were there any substantive rulings made by the
6  court, either the magistrate or the judge, Platt,
7  Thomas Platt, in that case?
8      A    The judge entered a consent judgment.  I
9  assume that's a substantive ruling.
10     Q    Other than the consent judgment, were there
11 any rulings or decisions made by the court?
12     A    Not during the original pendency of the case.
13     Q    Just to clarify it for me, what do you mean by
14 the original pendency?
15     A    It was a very convoluted case, but in order to
16 be helpful, I will explain what I mean.
17     Q    Thank you.
18     A    After a judgment was entered, Horphag made a
19 motion before Judge Platt to join International
20 Nutrition Company as a party to the judgment.  Judge
21 Platt granted the motion, and it was reversed on appeal
22 by the Federal Circuit Court of Appeals.
23     Q    What was the title of the appeal to the
24 federal circuit?
25     A    Horphag Research versus International

1   Nutrition Company or the reverse of that.

2       Q    And do you recall the year of the federal
3   circuit's decision?

4       A    About 1998.

5       Q    And the year that -- do you recall when
6   Horphag made the motion to join INC as the party to the
7   consent judgment?

8       A    About 1997.

9       Q    In connection with your representation of INC
10  in either of these two cases, either as counsel of
11  record or advising INC, did you ever become aware of
12  the dispute between Horphag and its principals and INC
13  or SCIPA and its principals over the ownership of the
14  360 patent?

15      A    As I understand your question, not until
16  Horphag filed a lawsuit in France.

17      Q    That was the first time you were aware of the
18  dispute over ownership of the 360 patent?

19      A    Yes.

20           MR. ORDER:  Would now be a good time to
21  take a break?

22           MR. WIECHMANN:  That's fine.  It's
23  11:12.

24           (Recess:  11:15 to 11:28 a.m.)

25      Q    (By Mr. Wiechmann)  Going back for a second,

1   A   Probably.

2   Q   Did you review the complaint before it was

3   filed?

4   A   Yes.

5   Q   Did you or any of your partners undertake a

6   due diligence process to make sure that the allegations

7   set forth in this complaint were accurate to the best

8   of your belief?

9   A   What do you mean by a due diligence process?

10  I'm not sure there is any such requirement.

11  Q   The Rule 11 requirement.

12  A   Oh, the Rule 11 requirement.  Yes, we did.

13  Q   I'd like you to look at paragraph 24, please.

14          MR. ORDER:  Did you say 24?

15          MR. WIECHMANN:  Twenty-four, page 7.

16          MR. ORDER:  I've got it.  Just didn't

17  hear you.

18  Q   (By Mr. Wiechmann)  First sentence of

19  paragraph 24 says, "Defendant Horphag claims to be, at

20  all times relevant herein claimed to be, the owner, by

21  assignment, of an undivided one-half interest in the

22  360 patent."

23          MR. ORDER:  You misread it.  It says,

24  "The other owner," not just "the owner."

25          MR. WIECHMANN:  Thank you.