# AFFIDAVIT OF CRAIG ALLEN NARD

STATE OF NEW JERSEY  )
                     :  SS.:
COUNTY OF CAMDEN     )

CRAIG ALLEN NARD, being duly sworn, deposes and says:

1. I am a Visiting Associate Professor of Intellectual Property Law at Rutgers University School of Law at Camden. Prior to entering academia, I was a judicial clerk for the Honorable Giles S. Rich of the United States Court of Appeals for the Federal Circuit. I have two law degrees, a J.D. and a LL.M., and I am currently completing the requirements for a doctorate (J.S.D.) degree in patent law from the Columbia University School of Law. In addition, I practiced patent law for nearly three years with an intellectual property law firm and have over two years of teaching experience in patent law. I have published several articles pertaining to patent law, and I am presently under contract to write a patent law casebook to be used in the law school classroom.

2. Under United States patent law, questions of ownership of a United States patent can only be governed by the Patent Law, 35 U.S.C. § 1 et. seq.

3. A patent has the attributes of personal property directly related to the territory of the United States and may be wholly or partially assigned. The Patent Law, 35 U.S.C. § 261, states in part as follows:

> Subject to the provisions of this title, patents shall have the attributes of personal property.


DEFENDANT'S EXHIBIT 166

D 00 7016

Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

According to United States law, the right to further assign a patent is implicit in any assignment and need not be expressly stated in an assignment document.

4. Since a patent is created by the United States Patent Law, it may be assigned or transferred only in the manner provided by the Patent Law of the United States.

5. In the absence of a contrary agreement, each of the joint owners of a patent may make, use or sell the patented invention without the consent of other joint owners and without accounting to other joint owners. The Patent Law, 35 U.S.C. § 262, provided as follows prior to December 8, 1994:

In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use or sell the patented invention without the consent of and without accounting to the other owners.

This provision was amended so to be applicable only to the United States, effective December 8, 1994, but the amendment is not retroactive.

6. It is required that any agreement reflecting ownership of a United States patent be recorded in the Patent and Trademark Office. The consequence of not doing so is that the assignment is void as against any subsequent purchaser for valuable

2

D 00 7017

consideration who took title without notice of the prior transfer. The Patent Law, 35 U.S.C. § 261, states in part as follows:

> An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortagee for a valuable consideration, without notice, unless it is recored in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortage.

7. It is not necessary that a United States patent be assigned for the entire term of the patent. The rights can be assigned for a limited period. At the expiration of the limited period, the rights revert to the inventor in the absence of any other agreement to the contrary.

8. I have reviewed an assignment dated April 1, 1985 from Jack Masquelier to Societe Civile D' Investigations Pharmacologiques D'Aquitaine ("S.C.I.P.A.") and Horphag Overseas Ltd. The assignment, a copy of which is attached as Exhibit A, reflects that it was recorded in the Patent and Trademark Office on April 9, 1985. That assignment is on a typical printed form used by American patent attorneys for United States patent applications. The assignment is for an application which eventually resulted in U.S. Patent No. 4,698,360.

9. I have reviewed an English translation of an agreement dated April 26 and 29, 1985 between S.C.I.P.A. and Horphag Overseas Ltd. There is no indication on that agreement, a copy of which is attached as Exhibit B, that it was recorded in the United

D 00 7018

States Patent and Trademark Office. I have checked the records of the Patent and Trademark Office and have found no evidence that the agreement was recorded.

10. I understand that this agreement is limited to a maximum time period of ten years (five plus five) and therefore terminated on April 29, 1995. The agreement does not mention that one of the co-owners has any right to prevent an assignment of the patent by the other co-owner or any right of first refusal to purchase the other co-owner's share.

11. Any agreement which purports to govern ownership of a United States patent is enforceable only if it is consistent with the Patent Law.

12. I have reviewed an assignment, dated March 18, 1994, from S.C.I.P.A. to International Nutrition Company. The assignment is of a share of U.S. Patent No. 4,698,360 and a copy is attached as Exhibit C. The assignment shows that it was recorded in the Patent and Trademark Office on March 28, 1994.

13. The records of the Patent and Trademark Office show that the assignments of Exhibits A and C were duly recorded. Attached as Exhibit D is a copy of the computer records of the Patent and Trademark Office showing the recordals.

D 00 7019

14. It is conventional practice in the United States to recite a nominal consideration, such as One Dollar, for an assignment, rather than the actual consideration. The reason is that the document, when recorded, becomes a public record. It was not unusual for the assignments of Exhibits A and C to recite that the consideration was One Dollar.

　　　　　　　　　　　　　　　　　　　　　　　Craig Allen Nard

Subscribed and sworn to
before me this _8_ day
of November 1996

Notary Public

TOMMI D MORGAN
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES NOV. 08, 2000

5

D 00 7020

in consideration of the sum of One Dollar ($1.00) in hand paid, and other good and valuable consideration, the receipt whereof is hereby acknowledged, the undersigned,

Jack Masquelier

hereby sell, assign and transfer to
1) SOCIETE CIVILE D'INVESTIGATIONS PHARMACOLOGIQUES D'AQUITAINE of Résidence _____, _____, rue de Ségur, 33000 Bordeaux, France, and
2) HORPHAG OVERSEAS LTD. of P.O. Box 165, St. Peter Port, Guernsey, Channel Islands, United Kingdom

(hereinafter called the Assignee) the entire right, title, and interest in and to any and all improvements which are disclosed in the application for United States Letters Patent entitled

A plant extract with a proanthocyanidins content as therapeutic agent having a radical scavenger effect and use thereof

which application was

(a) executed by the undersigned on the __1st__ day of __April__ 19 __85__

(b) filed on the ____ day of ____ 19__, Serial No. ____

including any and all United States Letters Patents which may be granted therefor and any and all extensions, divisions, reissues, substitutes, renewals or continuations thereof, and the right to all benefits under the International Convention for the Protection of Industrial Property.

It is hereby authorized and requested that the Commissioner of Patents issue any and all of said Letters Patent, when granted, to said Assignee

Further, it is agreed that, when requested, without charge to but at the expense of the Assignee, the undersigned will execute all divisional, continuing, substitute, renewal, reissue patent applications; execute all rightful other papers; and generally do everything possible which said Assignee shall consider desirable for aiding in securing and maintaining proper patent protection.

ended at BORDEAUX FRANCE

the first day of April 1985.

INVENTOR:

___Jack Masquelier___

_____
ACTING COMMISSIONER OF
PATENTS & TRADEMARKS

WITNESSES:

ELIAN BARRAU

JEAN LAPARRA

Entre les soussignés :

1. SOCIETE CIVILE D'INVESTIGATIONS PHARMACOLOGIQUES D'AQUITAINE (S.C.I.P.A)
   Résidence Maintenon, app.211, entrée B, rue de Ségur
   33000 BORDEAUX (France)

   représentée par M. J. LAPARRA
   Ci-après dénommée "le DONNEUR"                D'UNE PART

2. HORPHAG OVERSEAS LTD
   PO Box 165, Commerce House, les Banques
   SAINT PETER PORT (Guernesey CI)

   Représentée par M. Ch. HAIMOFF
   Ci-après dénommée "le PRENEUR"                D'AUTRE PART

## IL A ETE EXPOSE CE QUI SUIT :

La S.C.I.P.A. a acquis une grande expérience dans la recherche des procédés d'obtention d'extraits végétaux, l'analyse de leurs principes actifs, leurs possibilités d'utilisation à des fins médicales, ainsi que les études pharmacologiques, toxicologiques et chimiques nécessaires à leur exploitation.

HORPHAG OVERSEAS, de son côté, bénéficie d'un réseau de relations commerciales international, susceptible de promouvoir des produits nouveaux, à utilisation médicale ou cosmétologique, ou d'orienter de nouvelles recherches.

C'est pourquoi, les parties sont convenues d'unir leurs efforts et de mettre en commun leurs moyens pour intensifier ces recherches et aboutir, le cas échéant, à l'invention de nouveaux produits à destination médicale ou à tout autre usage qui pourrait être découvert.

Elles ont conclu la convention suivante :

### ARTICLE UN - MISSION

Le preneur est, par les présentes, chargé auprès des clients éventuels des travaux de promotion des produits que le donneur juge utile de proposer.

### ARTICLE DEUX - PROCEDURE

Périodiquement, à l'initiative de l'une des parties, une réunion est convoquée pour faire le point sur les recherches en cours ainsi que sur les démarches entreprises auprès des clients éventuels.

D 00 7022

ARTICLE TROIS - MOYENS A METTRE EN OEUVRE

Le présent contrat de recherche en commun suppose la participation de chacun, soit par apports en industrie, soit par apports financiers ou matériels.

- Moyens financiers -

Les dépenses financières à mettre en oeuvre seront partagées à parts égales. Seules les dépenses décidées d'un commun accord entre les deux parties peuvent être prises en compte.

Les dépenses engagées par chacune des parties pour couvrir les frais consécutifs à sa part d'industrie n'entrent pas dans ce cadre.

## ARTICLE QUATRE - SECRET

De convention expresse, les innovations réalisées au cours du présent contrat doivent rester strictement confidentielles entre les parties.

## ARTICLE CINQ - PROTECTION INDUSTRIELLE

Dans le cas où les travaux visés aux présentes permettraient la demande d'un brevet d'invention, une demande de brevet d'application serait déposée au nom des soussignés indivisement.

Les frais et les honoraires de cette demande seraient avancés par la S.C.I.P.A.

Dans le cas de cession ou concession des droits de propriété industrielle, issus du présent contrat, les produits seraient partagés en parts égales entre les parties.

## ARTICLE SIX - DUREE

Les présentes sont conclues pour une durée de CINQ ANNEES, avec possibilité de prolongation d'une nouvelle période de cinq ans, par tacite reconduction. Toutefois, chacune des parties conserve la possibilité de mettre fin unilatéralement à cette collaboration à la fin de chacune des périodes, par simple lettre recommandée adressée à l'autre partie six mois avant l'expiration de cette période.

## ARTICLE SEPT - LITIGE

Tout litige sur l'interprétation ou l'exécution du présent contrat sera de la compétence exclusive des Tribunaux de BORDEAUX.

Fait à Bordeaux           Fait à Saint-Peter Port
Le                        Le 29 Avril 1985

Pour la S.C.I.P.A.        Pour HORPHAG OVERSEAS LTD

J. LAPARRA                Ch. HAIMOFF

D 00 7023



Between the undersigned :

1. SOCIETE CIVILE D'INVESTIGATIONS PHARMACOLOGIQUES
   D'AQUITAINE (S.C.I.P.A.)
   Résidence Maintenon, app. 211, entrée B, rue de Ségur
   33000 BORDEAUX (France)

   Represented by Mr J. LAPARRA
   Hereafter named the "GIVER"

   ON ONE HAND

2. HORPHAG OVERSEAS LTD
   PO Box 165, Commerce House, les Banques
   SAINT PETER PORT (Guernesey CI)

   Represented by Mr Ch. HAIMOFF
   Hereafter named the "TAKER"

   ON THE OTHER HAND

IT HAS BEEN EXPLAINED THAT WHICH FOLLOWS :

S.C.I.P.A. has acquired a wide experience in the research of proceedings for the obtention of vegetable extracts, the analysis of their active constituents, their possibilities of use to medical ends as well as the pharmacological, toxicological and chemical studies necessary for their utilization.

HORPHAG OVERSEAS, benefit of an international network of commercial relations, susceptible of promoting new products, for medical or cosmetlogical uses, or to direct new researches.

This is why the parties have agreed to unite their efforts and put their means in common to intensifie researches, and reach, should the occasion arise, the invention of new products for medical ends or for any other use which could be discovered.

They have entered the following agreement :

ARTICLE ONE - MISSION

The Taker is, herewith, in charge of the promotion of the products the Giver deems useful to propose with the possible customers.

ARTICLE TWO - PROCEDURE

Periodically, upon initiative of one of the parties, a meeting will be summoned to take bearings on the researches underway as well as on the contacts taken up with possible customers.

ARTICLE THREE - MEANS TO BE BROUGHT INTO OPERATION

This agreement of research in common supposes the participati(on) of each party, be it by industrial inputs or by financial and material inputs.

D 00 7024

- 2 -

- financial means -

The financial spendings to be brought into operation will be equally shared. Only the spendings agreed upon through common agreement between the two parties can be taken into account.

The spendings undertaken by each party to cover the costs resulting from their share of industry do not enter into this frame.

## ARTICLE FOUR - SECRECY

Through express agreement, the innovations achieved during this agreement must remain strictly confidential between the parties

## ARTICLE FIVE - INDUSTRIAL PROTECTION

In the case the works herein mentionned enabled to request letters patent, a request for a patent of application would be deposited in the names of the undersigned jointly.

The costs and fees of this request would be advanced by S.C.I.P.A.

In the case of a transfer or concession of the industrial property rights, issuing from this agreement, the products would be split into equal shares between the parties.

## ARTICLE SIX - DURATION

The present agreement is entered into for a period of FIVE YEA with the possibility of extension for another five year period by tacit reconduction. Nevertheless, each of the parties keept the possibility of one sidedely bringing an end to this collaboration at the end of each of the periods, by simple registered mail sent to the other party before the expiration of this period.

## ARTICLE SEVEN - LITIGATION

Any litigation concerning the interpretation of this agreemen shall be of the exclusive jurisprudency of the Courts of Bordeaux

Drawn up at Bordeaux
On Apr. 26 1985

For S.C.I.P.A.

J. Laparra

Drawn up at Saint-Peter Port
On Apr. 29th 1985

For HORPHAG OVERSEAS LTD

Ch. WAIMOFF

For and on behalf of
HORPHAG OVERSEAS LIMITED
(........) Director

Traduction certifiée conforme     24. OCT. 1990
A. Billaud -Traducteur-interprète

D 00 7025

U.S. PATENT
============
A S S I G N M E N T

WHEREAS, SOCIETE CIVILE D'INVESTIGATIONS PHARMACOLOGIQUES D'AQUITAINE ("SCIPA"), having a place of business at Bordeaux, France, is the owner of the undivided fifty percent (50 %) of the right, title and interest, for the United States, in and to any invention which is disclosed and claimed in, and any invention which is disclosed but not claimed in, United States Patent No. 4,698,360, issued October 6, 1987, entitled PLANT EXTRACT WITH A PROANTHOCYANIDINS CONTENT AS THERAPEUTIC AGENT HAVING RADICAL SCAVENGER EFFECT AND USE THEREOF, and in and to any reissue, certificate of reexamination, and related property right in the United States (hereinafter "Patent");

and, WHEREAS, INTERNATIONAL NUTRITION COMPANY ("INC"), a corporation of Liechtenstein, having a place of business at Josef Rheinbergerstrasse 6, Vaduz, Liechtenstein, is desirous of acquiring such undivided fifty percent (50 %) of the right, title and interest in said Patent;

NOW, THEREFORE, in consideration of One Dollar ($ 1.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, SCIPA hereby sells, assigns and transfers to INC, and its successors and assigns, all of the undivided fifty percent (50 %) of the right, title and interest in and to such Patent as is owned by SCIPA; authorizes the Commissioner of Patents and Trademarks of the United States to issue to INC, and its successors and assigns, any and all United States Patent on the invention disclosed in the aforesaid United States Patent; and conveys to INC, and its successors and assigns, all rights to sue for past, present or future infringement of such Patent.

SOCIETE CIVILE D'INVESTIGATIONS
PHARMACOLOGIQUES D'AQUITAINE

By: _____

Title: _____

D 00 7026

U.S. PATENT
=============
A S S I G N M E N T

On this _____th day of _____, 1994, before me personally appeared: _____
the person who signed this instrument on behalf of SOCIETE CIVILE D'INVESTIGATIONS PHARMACOLOGIQUES D'AQUITAINE, a company of the Republic of France, who acknowledged to me that he signed it on behalf of the company as an authorized signatory thereof and that he has the authority to sign the instrument on behalf of the company.

_____
Notary Public

Ce jour, le _18 mars_____, 1994, s'est personellement présnté devant moi:
_Le Professeur MICHAUD Jean_____,
qui est la personne ayant signé cet acte au nom de SOCIETE D'INVESTIGATIONS PHARMACOLOGIQUES D'AQUITAINE, société française, et qui m'a déclaré l'avoir signé pour le compte de la société, en sa qualité de représentant légal de celle-ci et être habilité à signer cet acte pour le compte de la société.

A Léognan le 18 mars 1994
Notaire

RECORDED
PATENT & TRADEMARK OFFICE

MAR 28 94

Je soussigné, M⁰ Paul FABRE, Notaire Associé à Léognan (Gironde), certifie exacte et véritable signature de M. _Jean_ _PICARD_____ annexée ci-dessus

D 00 7027

```
                                                    PAGE:  1
                                      ISSUE DATE: 10/06/87
PATENT NUMBER:  4698360               FILING DATE: 04/09/85
SERIAL NUMBER:  06/721434
TITLE:  "PLANT EXTRACT WITH A PROANTHOCYANIDINS CONTENT AS THERAPEUTIC
         AGENT HAVING RADICAL SCAVENGER EFFECT AND USE THEREOF"
APPLICANT:  MASQUELIER, JACK

REEL: 4394   FRAME: 0995   DATE RECORDED: 04/09/85   NUMBER OF PAGES: 001
ASSIGNOR:  MASQUELIER, JACK
                EXC DATE:  04/01/85
ASSIGNEE:  SOCIETE CIVILE D'INVESTIGATIONS PHARMACOLOGIQUES D'AQUITAINE
           MAINTENON, ENTREE B, APPT. 211, RUE DE SEGUR, 33000 BORDEA
           UX, FRANCE
           HORPAH OVERSEAS LTD., PO BOX 165, ST. PETER PORT, GUERNSEY,
           CHANNEL ISLANDS, UNITED KINGDOM
BRIEF:  ASSIGNMENT OF ASSIGNORS INTEREST.


                                                       01/17/96 12:33
PRESS XMIT FOR NEXT PAGE OR FOR A SPECIFIC PAGE
ENTER PAGE NUMBER (2 DIGITS MAX.), PRESS XMIT     PAGE:  2

RETURN ADDRESS:  ROBERT OSANN
                 BALOGH, OSANN, KRAMER, DVORAK,
                 GENOVA & TRAUB
                 TWO WORLD TRADE CTR., STE. 9768
                 NEW YORK, NY 10048

REEL: 6911   FRAME: 0655   DATE RECORDED: 03/28/94   NUMBER OF PAGES: 003
ASSIGNOR:  SOCIETE CIVILE D'INVESTIGATIONS PHARMACOLOGIQUES D'AQUITAINE
                EXC DATE:  03/18/94
ASSIGNEE:  INTERNATIONAL NUTRITION COMPANY
           JOSEF RHEINBERGERSTRASSE 6, VADUZ
           LIECHTENSTEIN
BRIEF:  ASSIGNMENT OF ASSIGNORS INTEREST 50% UNDIVIDED
RETURN ADDRESS:  NORMAN H. ZIVIN, ESQ.
                 COOPER & DUNHAM
                 30 ROCKEFELLER PLAZA
                 NEW YORK, NEW YORK  10112


*** LAST PAGE ***  ENTER PAGE NUMBER (2 DIGITS MAX.)    01/17/96 12:33
AND PRESS XMIT TO GO BACK TO DESIRED PAGE
```

D 00 7028