UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INTERNATIONAL NUTRITION COMPANY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| HORPHAG RESEARCH LTD., MW INTERNATIONAL, INC., KAIRE INTERNATIONAL, INC., TRACO LABS, INC., CHEMCO INDUSTRIES, INC., GREATER CONTINENTS, INC., INDENA U.S.A., TWIN LABORATORIES, INC., USANA, INC., FREE LIFE INTERNATIONAL LTD., NOW FOODS, ENZYMATIC THERAPY, INC., NUTRACEUTICAL CORPORATION, ARKOPHARMA, INC., JARROW FORMULAS, INC., and NEW VISION INTERNATIONAL, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 396CV00386 (DJS) |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT JARROW FORMULAS' MOTION TO DISMISS

Defendant Jarrow Formulas, Inc. ("JFI") submits that the patent infringement claim in this case is ripe for dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

JFI acknowledges the Court's Order of April 16, 1997 (Docket No. 199) indicating receipt of the decision of the Bordeaux High Court, First Chamber, in France (the "French Court"), and confirming that the stay of all proceedings shall remain in effect until further notice.

JFI respectfully submits, however, that there is no federal subject matter jurisdiction over the patent claim -- particularly in light of the decision of the French Court -- and therefore this claim must be dismissed.

1

ORAL ARGUMENT REQUESTED

D 000 313

## Statement of Relevant Facts

It is undisputed that the French Court has declared the transfer of the patent in suit ("the '360 patent") from S.C.I.P.A. to Plaintiff International Nutrition Company ("INC") void *ab initio* based on a prior agreement between Defendant Horphag and S.C.I.P.A. (Copies of the pertinent pages of Plaintiff's English translation of the French Decision are attached as Exhibit A.)

Plaintiff has been stripped of its purported ownership of the '360 patent and, accordingly, its allegation of ownership in the Complaint is unfounded. Plaintiff must now seek equitable relief from an appropriate court in order to obtain ownership of the patent before it may charge any Defendant with infringement and avail itself of the jurisdiction of this Court.

## Argument

In order to determine whether federal subject matter jurisdiction exists, this Court must assess whether Plaintiff's claim "arises under" the patent laws, and in doing so, must consider as a whole the substance of the claim and any relevant jurisdictional facts outside the pleadings. Jim Arnold Corp. v. Hydrotech Systems, Inc. et al., Nos. 95-1335, 95-1432, 1997 U.S. App. LEXIS 5467, at *26-27 (Fed. Cir. March 21, 1997); citing Air Products and Chemicals, Inc. v. Reichold Chemicals, Inc., 755 F.2d 1559, 1561 (Fed. Cir. 1985).

Where a plaintiff must, as a prerequisite to maintaining an infringement claim, seek specific equitable relief in order to secure ownership or title to the patent, a federal court has no subject matter jurisdiction:

D 000 314

> To invoke the jurisdiction of a federal court under §
> 1338, it is necessary that plaintiff allege facts that
> demonstrate the he, and not the defendant, owns the
> patent rights on which the infringement suit is
> premised.  Federal jurisdiction cannot lie based on
> allegations that are frivolous or insubstantial.
> [Citation omitted.]  Thus, if plaintiff cannot in good
> faith allege such facts because, absent judicial
> intervention to change the situation, under the terms of
> a contract or deed of assignment the rights at issue are
> held by the defendant, federal court is not the place to
> seek that initial judicial intervention.

Hydrotech Systems, 1997 U.S. App. Lexis 5467, at *10-11.

Since the French court has declared the assignment from S.C.I.P.A. to INC void *ab initio*, and Defendant Horphag and S.C.I.P.A. are the sole owners of the '360 patent, Plaintiff's allegations of ownership of the patent are frivolous, and insufficient to support federal subject matter jurisdiction. Hydrotech Systems, 1997 U.S. App. Lexis 5467, at *28.

Plaintiff's only recourse is to now affirmatively seek equitable relief from an appropriate court to secure ownership of the '360 patent.  This is a matter of applicable state (French), not federal law.  Hydrotech Systems, 1997 U.S. App. Lexis 5467, at *11 ("[T]he question of who owns the patent rights and on what terms typically is a question exclusively for state courts.") Indeed, this Court has implicitly deferred jurisdiction over this issue to the French Court by ordering a stay of all proceedings in this case pending resolution of the French litigation.  (Docket No. 198.)

Until and unless Plaintiff receives equitable relief from the French Court restoring to Plaintiff title to the patent, this Court has no subject matter jurisdiction over the patent

3

D 000 315

claim.   Hydrotech Systems, 1997 U.S. App. Lexis 5467, at *31

("[W]ithout first receiving equitable relief that restores to the

[plaintiff] title to the patent, any claim of ownership by the

[plaintiff] will be unfounded.").

**The Prior Agreement Between
Horphag And S.C.I.P.A.,
And Its Affect on INC, Are
Not Governed By Federal Law**

Plaintiff's argument in its letter to the Court of April

11, 1997 to the effect that this case now presents an interesting

question of federal law, is misplaced.  The prior agreement

between Defendant Horphag and S.C.I.P.A. does not fall within the

purview of 35 U.S.C. § 261 because it is not an "assignment, grant

or conveyance" of the '360 patent.  Rather, the prior agreement is

a collateral one between the owners of the patent governing their

joint proprietorship of the patent, and restricting their ability

to transfer the patent.[1]  (French Decision, pp. 24-25, Exhibit A.)

> [A] collateral agreement between [joint owners of a
> patent], restrictive of the power to dispose of their
> respective interests in the patent, and governing their
> rights in the use of the invention, whether incorporated
> in the instrument of assignment or not, is not provided
> for or regulated under section 4898 [now 35 U.S.C. §
> 261], or by any act of Congress.  That the rights of the
> parties under such contracts depend altogether on
> common-law and equity principles, is the declared
> doctrine of all the above-cited decisions of the Supreme
> Court.

Williams v. Star Sand Co., 35 F. 369, 371 (W.D. Pa. 1888), citing

Wilson v. Sandford, 51 U.S. (10 How.) 99, 13 L. Ed. 344 (1850).

Accordingly, the prior agreement between Horphag and S.C.I.P.A.,

---

[1]     The assignment of the 50% interest in the '360 patent to
Horphag, on the other hand, was recorded in the U.S. Patent &
Trademark Office ("USPTO") in accordance with § 261 and,
furthermore, is reflected on the face of the patent.

4

D 000 316

and its affect on INC, is not covered by 35 U.S.C. § 261, or any other federal law.

Plaintiff's argument that the prior agreement between Horphag and S.C.I.P.A. is void against the purported transfer from S.C.I.P.A. to INC because the agreement was not recorded in the USPTO is therefore baseless. Even if the prior agreement were recorded in the USPTO, its recordation would have no legal effect because the agreement is not covered by § 261. See, e.g., Talbot v. Quaker State Oil Refining Co., 28 F. Supp. 544, 548 (W.D. Pa. 1938), aff'd, 104 F.2d 967 (3d Cir. 1939)(an agreement between joint owners of a patent is not an "assignment, grant or conveyance", and therefore is not recordable with the USPTO.)[2]

In sum, Plaintiff's argument that it is a bona fide purchaser for value of an interest in the '360 patent, purportedly without notice of the prior agreement between Horphag and S.C.I.P.A., is controlled by the applicable state (or French) law, and this Court has no jurisdiction to decide the matter.

**The Patent Claim Should
Be Dismissed At This Time**

Judicial economy and the potential prejudice to the Defendants dictate dismissal of the patent claim now, not after the French litigation and USPTO reexamination proceedings are

_____

[2]      The statutory provision interpreted and applied by the courts in these cases, Section 4898 (35 U.S.C. § 47), was the predecessor to 35 U.S.C. § 261, and was virtually identical to § 261 in pertinent part: "An assignment, grant, or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent Office within three months from the date thereof or prior to such subsequent purchase or mortgage." R.S. Section 4898, 35 U.S.C. § 47.

D 000 317

finally resolved. When Plaintiff initiated this suit, it was already involved in the French litigation and was fully aware of the prior agreement between Defendant Horphag and S.C.I.P.A. which, as ruled by the French Court, nullifies Plaintiff's purported ownership of the patent in suit. Nevertheless, Plaintiff brought this suit against 16 Defendants -- nearly an entire industry -- claiming infringement of a patent that it knew, or should have known it did not own. As a result, the Defendants in this case have been subjected collectively to hundreds of thousands of dollars (if not more than one million dollars) in attorney fees defending against a case which never should have been brought.

Although the Court has stayed all proceedings in this case pending the outcomes of the French litigation and the USPTO reexamination proceeding (Docket No. 198), the Defendants will be nevertheless subjected to continuing legal expense associated with the patent infringement claim. For example, Defendant JFI must continually monitor the reexamination proceeding, investigate and assess the various bases establishing invalidity of the '360 patent, and otherwise anticipate and prepare for its defense of the patent infringement claim in the event that the patent survives reexamination. Moreover, even if the inherently defective '360 patent were to survive reexamination, this would not change the fact that Plaintiff has no ownership interest in the patent and thus would not solve Plaintiff's jurisdictional problems.

D 000 318

In addition, Defendants have been, and continue to be subjected to prejudice in the marketplace as a result of Plaintiff's course of conduct taken in connection with this lawsuit. Plaintiff has intimidated and harassed Defendant JFI and its customers and potential customers by unfairly publicizing this lawsuit with disparaging statements about JFI and its products, and by claiming, among other things, that Plaintiff is the owner of the '360 patent, that Plaintiff is the only authorized source of products allegedly covered by the patent, and by threatening to sue alleged infringers. Plaintiff's patent infringement claim must be brought to an end to terminate this needless and damaging behavior.[3]

Finally, dismissal of the patent infringement claim would significantly reduce the number of parties and issues before the Court. Plaintiff's only remaining claim would be the third claim for trademark infringement against Defendants Neutraceutical, JFI and New Vision. This claim is unrelated to both the patent reexamination and French litigation, and involves Plaintiff's alleged mark "OPC 85" which is an inherently weak, if not unprotectable grade mark. Accordingly, dismissal of the patent infringement claim at this juncture will significantly reduce the burden on this Court, and permit the remaining parties to move toward disposing of the unrelated trademark claim.

---

[3]     Attached as Exhibit B are copies of two more recent, exemplary press releases disseminated by Plaintiff in connection with this lawsuit and typical of the prejudicial conduct complained of.

D 000 319

Finally, for the reasons set forth in the Memorandum of
the Horphag Defendants (Docket No. 201), Defendant JFI submits
that if Plaintiff is permitted to persist in its patent
infringement claim, that it be required to post a bond.  Defendant
JFI further submits that the bond should be set at the upper end
of the range requested by the Horphag Defendants ($800,000 to
$1,600,000), particularly in light of Plaintiff's tenuous position
in initiating and persisting in this suit, the substantial
expenses incurred by Defendants in defending against the unfounded
patent infringement claim, and Plaintiff's conduct in the
marketplace relating to this claim.

### Conclusion

For the foregoing reasons, it is respectfully requested
that Defendant's Motion to Dismiss be granted, and in the
alternative, that the Court require Plaintiff to post a bond.

Respectfully submitted,

Dated:   April 22, 1997

Mark D. Giarratana (ct 10401)
Joseph S. Kentoffio (ct03148)
McCORMICK, PAULDING & HUBER LLP
CityPlace II, 185 Asylum St.
Hartford, CT   06103-4102
(860) 549-5290

Philip Scott Polisky
450 West 24th Street
Suite 2F
New York, NY 10011
(212) 206-7283

Attorneys for Defendant
Jarrow Formulas, Inc.

8

D 000 320

## Certificate of Service

    This is to certify that a copy of the foregoing has been furnished by U.S. Mail, postage prepaid, this 22nd day of April, 1997, to each of the following counsel of record:

Norman H. Zivin, Esq.
Cooper & Dunham LLP
1185 Avenue of the Americas
New York, NY  10036

Attorneys for the Plaintiff

Jonathan A. Flatow, Esq.
Wake, See, Dimes & Bryniczka
27 Imperial Avenue
P.O. Box 777
Westport, CT  06881

Attorneys for the Plaintiff

Thomas L. Casagrande, Esq.
Wiggin & Dana
One Century Tower
New Haven, CT  06508

Attorneys for Arkopharma, Inc.

Richard Komson, Esq.
Morgan & Finnegan
345 Park Avenue
New York, NY  10154

Attorneys for Arkopharma, Inc.

Eric Maschoff, Esq.
Workman Nydegger & Seeley
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah  84111

Attorneys for Usana, Inc.

Philmore H. Colburn, Esq.
Fishman Dionne Cantor & Colburn
88 Day Hill Road
Windsor, CT  06905

Attorneys for Chemco Industries,
Inc. and Usana, Inc.

Steven P. Ciardiello, Esq.
2840 Whitney Avenue
Hamden, CT  06518

Attorneys for FreeLife
International Ltd.

Mr. Richard A. Merriman,
President
Greater Continents, Inc.
140 Arrowood Lane
San Mateo, CA  94403

Brian M. Poissant, Esq.
Pennie & Edmonds
1155 Avenue of the Americas
New York, NY  10036

Attorneys for Indena U.S.A. and
Enzymatic Therapy, Inc.

William I. Garfinkel, Esq.
Carmody & Torrence
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT  06721

Of Counsel for Indena U.S.A.,
and Enzymatic Therapy, Inc.

D 000 321

Edwin P. Schindler, Esq.
Five Hirsch Avenue
P.O. Box 966
Coram, NY  11727

Attorney for New Vision
International, Inc.

Charles L. Howard, Esq.
Shipman & Goodwin
One American Way
Hartford, CT  06103

Attorneys for New Vision
International, Inc.

Matthew J. Becker, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT  06103

Attorneys for Nutraceutical
Corporation

Ann V. Pellegrini, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL  60601

Attorneys for Nutraceutical
Corporation

Eric Daniels, Esq.
Robinson & Cole
One Commercial Plaza
Hartford, CT  06103

Attorneys for Traco Labs, Inc.

Robert Ullman, Esq.
Bass & Ullman, P.C.
747 Third Avenue
New York, NY  10017

Attorneys for Traco Labs, Inc.

Bennett H. Last, Esq.
Gilbride, Tusa, Last &
   Spellane LLC
31 Brookside Drive
P.O. Box 658
Greenwich, CT  06386

Attorneys for Twin Laboratories,
Inc.

Charles R. Macedo, Esq.
Amster, Rothstein & Ebenstein
90 Park Avenue
New York, NY  10016

Attorneys for Twin Laboratories,
Inc.

Joel David Deutsch, Esq.
Jeffer, Mangels, Butler &
Marmaro LLP
2121 Avenue of the Stars
10th Floor
Los Angeles, CA  90067

Of Counsel for Chemco
Industries, Inc.

Stuart D. Rosen, Esq.
Bingham, Dana & Gould
100 Pearl Street
Hartford, CT  06103-4507

Attorneys for Horphag Research,
Kaire, M.W. International & Now
Foods, Inc.

D 000 322

Marvin Gittes, Esq.
Corbin, Gittes & Samuel
750 Lexington Avenue
New York, NY  10022

Attorneys for Horphag Research,
Kaire, M.W. International & Now
Foods, Inc.

Mark D. Giarratana

11

D 000 323

**TRANSLATION**

from:

| | |
|---|---|
| **FIRST CHAMBER** | **THE BORDEAUX HIGH COURT**<br>**FIRST CHAMBER** |
| **THE MERITS** | JUDGMENT OF 25 MARCH 1997 |

**COMPOSITION OF THE COURT**
At the hearing and in chambers

**General Roll No.**

Mr. FRUGIER, Vice President

Mrs. GOUNOT, Judge of the court of first instance

Miss DUPOUY, Judge of the court of first instance

**13618/95**

Mrs. I BOUILLON, Court Clerk

**IN THE MATTER OF**

**HEARING**
in open court on 11 FEBRUARY 1997

**HORPHAG RESEARCH**

**JUDGMENT**

v

in a contentious matter at first instance
pronounced in open court

**SCIPA**
**MASQUELIER**
**BARRAUD**
**MICHAUD**
**THE NUTRITION COMPANY**
**THE NUTRITION COMPANY**

Engrossments served on
dated

**PLAINTIFF**

HORPHAG RESEARCH LTD, PO BOX 132, Quai House, South Esplanade, ST PETER PORT GUERNSEY - CHANNEL ISLANDS

\* <u>Represented by</u>: Me LASSERRE (Messrs RUSTMANN), lawyer and Me Jean-Pierre HERMANT, trial lawyer (PARIS)

**LAWYERS' AND MERCHANTS' TRANSLATION BUREAU INC.**
Legal. Financial. Scientific. Technical and Patent Translations
11 BROADWAY. NEW YORK. NY 10004

Tel: (212) 344-2930/2931
Consultant
WM. BERTSCHE. J.D.. CH.E.. A.C.S.

Fax: (212) 422-6877
Founded in 1903 by
CARL V. BERTSCHE

D 000 324          Ex. A

**TRANSLATION**    — 2 —

*from:*

---

**DEFENDANTS**

SCIPA, Société d'Investigations Pharmacologiques d'Aquitaine, Résidence Maintenon, Entree B - Apartement 211, rue de Ségur - 33000 BORDEAUX

Mr. MASQUELIER, les Magnolias - Parc des Tourelles, rue Sainte Elisabeth - 33200 BORDEAUX

Mr. BARRAUD Elian, 118 rue Camille Godard - 33000 BORDEAUX

Mr. MICHAUD, Résidence Maintenon - appartement 211, rue de Ségur - 33000 BORDEAUX

\*    Represented by :    Me LIEF, lawyer

The INTERNATIONAL NUTRITION COMPANY, Vreeandseweg 69, 1393 PD NIGTEVECHT - The Netherlands, through its Director in office, Mr. SCHWITTERS,

The INTERNATIONAL NUTRITION COMPANY, Rheinberstrasse 6, 9490 VADUZ-LIECHTENSTEIN, through its Director in office, Mr. SCHWITTERS,

\* Represented by : Me DE LESTRANGE, lawyer, Me BENECH, trial lawyer

---

**LAWYERS' AND MERCHANTS' TRANSLATION BUREAU INC.**
Legal, Financial, Scientific, Technical and Patent Translations
11 BROADWAY, NEW YORK, NY 10004

Tel: (212) 344-2930/2931
Consultant
WM. BERTSCHE, J.D., CH.E., A.C.S.

Fax: (212) 422-6877
Founded in 1903 by
CARL V. BERTSCHE

D 000 325

**TRANSLATION**
*from:*

- 20 -

---

## THE LAW APPLICABLE TO THE ASSIGNMENT OF THE PATENT

Insofar as patent 360 was filed in the UNITED STATES, American law must necessarily apply to its form, its issue procedure, the notification formalities and to the possibility and legality of the principle of assignment.

However, the law applicable to contracts involving a patent is not necessarily the law of the country giving protection since it is then the autonomy of the wishes of the parties which again prevails.

The form of the deed of 18 March 1994 therefore complies with American law, since (in particular) notice of it must be given in the UNITED STATES, in the same way as the deed of assignment of the invention dated 1 April 1985, without this affecting the rules of substance governing the relationship between the parties. The parties involved in the assignment are not just SCIPA and the INC Company, but also the HORPHAG Company, against which the wording of the deed cannot be relied upon (according to American law) as proof of the application of that law, since it was not a party thereto.

On the contrary, the solution can only be sought in the business relationship which existed between the HORPHAG Company and the SCIPA Company.

It is necessary, first of all, to analyze the various contracts which were executed by the INTERHORPHAG Company, the HORPHAG OVERSEAS Company (the rights to which were

---

**LAWYERS' AND MERCHANTS' TRANSLATION BUREAU INC.**
Legal, Financial, Scientific, Technical and Patent Translations
11 BROADWAY, NEW YORK, NY 10004

Tel: (212) 344-2930/2931
Consultant
WM. BERTSCHE, J.D., CH.E., A.C.S.

Fax: (212) 422-6877
Founded in 1903 by
CARL V. BERTSCHE

D 000 326

assumed by the HORPHAG RESEARCH Company) and the SCIPA

Company or CEP, which are clearly companies which are very

close in terms of members and objects, even though they are

separate corporate bodies.

The contracts of 1971, 1982 and 1986 do, in fact, enable

the general context to be established, even if the intention

of the parties, in its strictest sense, cannot be absolutely

inferred therefrom.

The contract in the month of February 1971, which was

concluded for 10 years and was called a contract of sale on

commission, gave the INTERHORPHAG Company the exclusive right

to sell a product in countries other than FRANCE which (it is

not disputed) was of the same kind as that which was later to

be called PYCNOGENOL.  The signatories had their registered

offices in FRANCE as far as CEP was concerned and in

SWITZERLAND as far as INTERHORPHAG was concerned.  It was

expressly stipulated that the contract was to be governed by

French law and that any disputes would be submitted to the

BORDEAUX Courts.

The contract of 1982 was called a new contract of sale

on commission, with the addition "amended pursuant to the

contract of 10 and 12 February 1971", even though it was

granted by CEP to the HORPHAG OVERSEAS Company.

The latter company was given exclusive authority to sell

on its behalf, as commission agent, the product known as

LAWYERS' AND MERCHANTS' TRANSLATION BUREAU INC.
Legal, Financial, Scientific, Technical and Patent Translations
11 BROADWAY, NEW YORK, NY 10004

Tel: (212) 344-2930/2931
Consultant
WM. BERTSCHE, J.D., CH.E., A.C.S.

Fax: (212) 422-6877
Founded in 1903 by
CARL V. BERTSCHE

D 000 327

TRANSLATION 
from:

- 22 -

PROCYANIDOLIC OLIGOMERS, which was still based on the same active substance. The contract was for a term of 10 years, renewable automatically for the same length of time unless terminated on notice being given. It applied to all countries apart from FRANCE and contained the same stipulation that French law should apply and that the BORDEAUX Courts should have jurisdiction.

Finally, the 1986 contract associates the DRT Company with CEP and HORPHAG OVERSEAS, referring to the contracts of 1971 and 1982 and granting DRT exclusivity in the supply of PROCYANIDINES of pine intended for HORPHAG's customers. It again makes provision for French law to apply and for the French courts to have jurisdiction.

It would appear, at this stage, that CEP was choosing its national law to govern the contracts which it entered into.

As far as it is concerned, the contract of 26 and 29 April 1985 is concluded between the parties in their strictest sense.

It is clearly stated that SCIPA has acquired a great deal of experience in researching processes for obtaining vegetable extracts and that the HORPHAG Company, for its part, has the benefit of an international network of commercial contacts so that the parties have decided to combine forces and pool their resources in order to intensify

**LAWYERS' AND MERCHANTS' TRANSLATION BUREAU INC.**

Legal, Financial, Scientific, Technical and Patent Translations

11 BROADWAY, NEW YORK, NY 10004

Tel: (212) 344-2930/2931
Consultant
WM. BERTSCHE, J.D., CH.E., A.C.S.

Fax: (212) 422-6877
Founded in 1903 by
CARL V. BERTSCHE

D 000 328


research and promote the products.

The parties also made provision, as was normal practice in research contracts, for the possibility of applying for a patent filed in their joint names.

In the event of a transfer or grant of industrial property rights deriving from the contract they also decided that the products would be split between them in equal shares.

The contract was concluded for a term of 5 years, continuing automatically thereafter unless their association was terminated 6 months prior to the expiry of each period.

No reference was made to the law which was to apply.

It should nevertheless be noted that:

- exclusive jurisdiction was awarded to the BORDEAUX Courts;
- the research work carried out by SCIPA, a French company, was intended to be carried out in FRANCE;
- the party called "the donor" was SCIPA;
- the sole international feature was the mention of the HORPHAG Company's international network of commercial contacts, although no specific reference was made to the UNITED STATES.

In these circumstances, this contract would not have any point of contact with American law, any more than with any other foreign legal system, and it would appear that the only law applicable is French law, as implemented by the French

**LAWYERS' AND MERCHANTS' TRANSLATION BUREAU INC.**
Legal. Financial. Scientific. Technical and Patent Translations
11 BROADWAY. NEW YORK. NY 10004

Tel: (212) 344-2930/2931
Consultant
WM. BERTSCHE. J.D.. CH.E.. A.C.S.

Fax: (212) 422-6877
Founded in 1903 by
CARL V. BERTSCHE

D 000 329



courts.

As far as the patent in question is concerned, the letter of 7 May 1985 on SCIPA letterheading quite specifically confirms that "the cooperation agreement signed on 26 and 29 April between HORPHAG OVERSEAS and SCIPA takes effect on 1 April 1985 and does indeed relate to the patent application of 9 April." 1 April 1985 is also the date of the deed of assignment of the invention by Mr. MASQUELIER.

Patent 360 is therefore indeed covered by the research contract, of which it constitutes a term and of which it forms an integral part, so that, apart from questions of form and procedure, it would appear that the parties did not intend to disassociate the patent issue from the issue of their other contractual relations.

Another letter on SCIPA letterheading, dated 24 July 1987, also confirms the intention of the parties in these words: "We would remind you that the US patent was taken out jointly ... no transaction can therefore be entered into by just one of the joint proprietors, on penalty of the operation being null and void." This is indeed a reminder and not a request for consent. These are confirmations and not queries. No reply by the HORPHAG Company was therefore required at all.

The Court cannot therefore deny the existence of all these objective pointers so as to apply only the law of the

LAWYERS' AND MERCHANTS' TRANSLATION BUREAU INC.
Legal, Financial, Scientific, Technical and Patent Translations
11 BROADWAY, NEW YORK, NY 10004

Tel: (212) 344-2930/2931
Consultant
WM. BERTSCHE, J.D., CH.E., A.C.S.

Fax: (212) 422-6877
Founded in 1903 by
CARL V. BERTSCHE

D 000 330

TRANSLATION
from:

- 25 -

place in which the patent was filed, which does establish the principle of freedom of assignment, something which was clearly not desired by the parties at the time that the agreements were executed and the patent filed.

Within the context of contractual relations governed by French law, it was indeed machinery in accordance with that law which the parties envisaged as governing the joint proprietorship of the patent in relation to its assignment.

Article L 613-29(e) of the Code of Intellectual Property must therefore be declared applicable.

It should also be noted that American law expressly reserves any agreement by the parties to the contrary. In this particular case there was indeed an agreement restricting freedom of assignment of the patent and the penalty incurred by SCIPA for not having consulted the HORPHAG Company would have been the same.

## THE ANNULMENT OF THE PATENT ASSIGNMENT BY SCIPA TO THE INC COMPANY

Insofar as the HORPHAG Company was not able to exercise its preemption right, the assignment must be pronounced null and void without good faith on the part of the INC Company having any effect, since this does not make it possible to rely upon the assignment as against those proprietors whose rights have been disregarded.

LAWYERS' AND MERCHANTS' TRANSLATION BUREAU INC.

Legal, Financial, Scientific, Technical and Patent Translations

11 BROADWAY, NEW YORK, NY 10004

Tel: (212) 344-2930/2931
Consultant
WM. BERTSCHE, J.D., CH.E., A.C.S.

Fax: (212) 422-6877
Founded in 1903 by
CARL V. BERTSCHE

D 000 331

TRANSLATION
from:

- 26 -

It is also an established fact that the INC Company is a competitor of the HORPHAG Company, as expressly acknowledged by SCIPA in its pleadings in reliance upon the principle of free trade and industry. In this particular case, however, this was competition which was unfairly organized, as joint proprietorship of the same patent is not, generally speaking, intended to be shared by competitors and, in any event, this was not the intention of the parties since they had stipulated an obligation of confidentiality in relation to the innovations achieved and had forbidden any transactions in relation to the patent without the consent of the other.

Whatever the reasons for the deterioration in their relationship, SCIPA could not, in its relationship with HORPHAG, assume the right to dispose of its share of the patent on its own as part of its strategy of "changing horses" but was obliged to abide by the contractual procedure and, in particular, give the HORPHAG Company formal notice to comply with its obligations and give notice to terminate the contracts on their expiry, which was never done.

In an attempt to avoid the assignment agreed by it being set aside, SCIPA argues that the patent assignment which was concluded between the HORPHAG OVERSEAS Company and the HORPHAG RESEARCH Company at the time of the merger on 18 September 1990 should be declared null and void and declares that it exercises its preemption right.

LAWYERS' AND MERCHANTS' TRANSLATION BUREAU INC.
Legal, Financial, Scientific, Technical and Patent Translations
11 BROADWAY, NEW YORK, NY 10004

Tel: (212) 344-2930/2931
Consultant
WM. BERTSCHE, J.D., CH.E., A.CS.

Fax: (212) 422-6877
Founded in 1903 by
CARL V. BERTSCHE

D 000 332

**TRANSLATION**

*from:*

- 42 -

### ON THESE GROUNDS

THE COURT,

Sitting in open court in a contentious matter and at first instance,

- DISREGARDS the memorandum lodged by the HORPHAG Company,

- DECLARES the action brought by the HORPHAG Company inadmissible as against the Dutch INC Company,

- RECORDS the fact that SCIPA and Messrs MASQUELIER, MICHAUD and BARRAUD have not maintained the inadmissibility of the action brought by the HORPHAG RESEARCH Company after the latter proved that it had acceded to the rights of the HORPHAG OVERSEAS Company,

- DECLARES French law applicable to the assignment of American patent 360,

- PRONOUNCES the annulment of the assignment by SCIPA of its share of patent 360 in favor of the LIECHTENSTEIN INC Company,

**LAWYERS' AND MERCHANTS' TRANSLATION BUREAU INC.**
Legal, Financial, Scientific, Technical and Patent Translations
11 BROADWAY, NEW YORK, NY 10004

Tel: (212) 344-2930/2931
Consultant
WM. BERTSCHE, J.D., CH.E., A.C.S.

Fax: (212) 422-6877
Founded in 1903 by
CARL V. BERTSCHE

D 000 333

N T E R N A T I O N A L ● U T R I T I O N ● C O M P A ● Y   E S T A B L I S H M E N T



Press Contact:
ADinfinitum
19 W. 44th St. 9th Fl.
New York, NY 10036
Tel: (212) 768-9830
Fax: (212) 768-1039
e-mail: adinflg@aol.com

February 7, 1997

## An announcement from the International Nutrition Company/ INC
## FOR IMMEDIATE RELEASE

### Alert
### Misinformation About US Patent '360 Continues
### But the Battle Isn't Over Yet!
### INC Files Suit in San Francisco

Contrary to the misleading misinformation spread by irresponsible companies like Jarrow Formulas, the reexamination of U.S. Patent 4,698,360 has not ended in a "victory" for those who frantically fight against it to defend their vested interests by attempting to destroy Dr. Masquelier's work.

The reality is that patent owner INC vigorously continues its actions against infringement on Dr. Masquelier's invention. INC filed suit in San Fransisco against InterHealth, Natrol, GNC, Nat-troop, Melaleuca and Horphag.

INC's Bert Schwitters comments: "We are confident that the patent will pass the reexamination unscathed and we will not let these and other companies get away with infringement. We see no reason why we should let infringers 'borrow' this important scientific discovery without our consent. These infringers would not allow us to 'borrow' their brand names and trademarks. Likewise they should respect our intellectual property rights."

### The reexamination

As is typically the case in a reexamination procedure, the Examiner in a January 15, 1997 Office Action has <u>initially</u> rejected the claims made in the '360 patent. However, the Examiner's Office Action is NOT FINAL, but just an interim step in an ongoing procedure.

-more-

D 000 334

Fv  B

Per U.S. Patent Law, the inventor and owner of a patent have the right to respond during a statutory period for response, which the Examiner must grant in a reexamination procedure. Dr. Masquelier (the inventor), INC (an owner of the patent) and INC's patent lawyers shall reply to the Examiner during this official statutory period for response. The response is scheduled before the 15th of March 1997.

In the majority of reexamination cases the Examiner's initial rejection of claims does not result in a final rejection of the patent. The latest statistics from the Patent Office show that while 89% of reexamination requests are granted, 89% of the reexaminations end up with all or some of the claims confirmed.

### Comment

INC's Bert Schwitters comments: "Fortunately the U.S. Patent Office does not operate with the fanaticism of distorted zealots like Jarrows' Mr. Rogovin. People like Mr. Rogovin hate intellectual property rights. They love "science" only as long as they can "borrow" it with or without the consent of the owner. We shall explain to the Examiner that all attacks on Dr. Masquelier's '360 invention are based on hindsight and attempts to cash in on 'borrowed' science."

Bert Schwitters confirms that, "Dr. Masquelier was the first to demonstrate the antioxidant effects of proanthocyanidins in 1984. When he subsequently filed his patent application in 1985, Mr. Rogovin wasn't there. When the U.S. Patent Office granted the patent in 1987, Mr. Rogovin and his likes were nowhere in sight. When we brought Dr. Masquelier's extracts to the United States in the late eighties, Mr. Rogovin didn't object. It was in 1996, when INC filed suit because we had caught Jarrow and others in the act of 'borrowing science' (infringement on our intellectual property rights), that Mr. Rogovin and his co-infringes began to mind. The invention only started to disturb the latecomers when they found that this piece of science wasn't 'for grabs'."

"The request for reexamination was not the initiative of Jarrow's Mr. Rogovin. It was filed by an anonymous opportunist, who lacks the guts to make himself known. The patent was filed in good faith. It represents an important scientific discovery. We will continue to fight for its validity."

# # #

D 000 335

# NTERNATIONAL NUTRITION COMPANY ESTABLISHMENT



Press Contact:
Adinfinitum
19 W. 44th St., 9th Floor
New York, NY 10036
Tel: (212) 768-9830
Fax: (212) 768-1039
e-mail: adinflg@aol.com

## FOR IMMEDIATE RELEASE

International Nutrition Company / INC
## ANNOUNCEMENT
27 March 1997

## INC REACHES AGREEMENT WITH DR. MASQUELIER
## OWNERSHIP POSITION IN US PATENT 4,698,360 STRENGTHENED

International Nutrition Company (INC) has strengthened its ownership position in the much debated US Patent 4,698,360 by reaching an agreement with Dr. Jack Masquelier and his colleagues Dr. Jean Michaud and Mr. Elian Barraud. In addition to the already acquired share of the patent (at least 50%), INC shall now also have control over any and all interests that may possibly revert to Dr. Masquelier and co-scientists.

### French court case now no longer significant
Moreover, the agreement significantly thwarts the legal attempts of Horphag Research to undermine Dr. Masquelier's and INC's interests in the '360 patent by means of a French lawsuit. In that case, the Bordeaux Court has just provided a not yet enforceable decision securing the patent in the hands of Dr. Jack Masquelier contrary to the claim of ownership made by Horphag. Due to the agreement reached with Dr. Masquelier, the patent now remains squarely with INC. However, due to the fact that this decision is not yet enforceable and that appeal is possible, the case may last another 2 to 3 years. But this French case has lost much of its impact, since it is now clear hat INC is and will remain in control of at least 50% in the patent. Moreover, INC has also acquired control over the share of the patent that may possibly revert from Horphag to the inventor, Dr. Masquelier.

D 000 336

-2-

**Cover up**
The French court is based on an expired agreement between Dr. Masquelier and Horphag. The case has never been more than an element in Horphag's ongoing strategy to spread falsehoods and misinformation. Trying to revise history, Horphag is attempting to cover up the fact that the pine bark extract that is being manufactured by a company called BioLandes and that is being distributed in the USA by Henkel, is an outright imitation of Dr. Masquelier's authentic product.


**Horphag's role expired**
Even though Henkel is now marketing this imitation pine bark extract under the '360 patent, neither Henkel nor Horphag have significantly contributed to the maintenance and defense of the '360 patent. Horphag's rights in the patent expired in April 1995, and consequently the Guernsey company ended up as a defendant in INC's pending lawsuit against a number of infringers. INC and its patent attorneys have taken complete responsibility for all matters related to the patent, such as e.g. its current reexamination.

**INC strives for 100% ownership in valid patent**
Currently owning at least 50% in US Patent 4,698,360 plus all rights that may revert to the inventor Dr. Masquelier and his colleagues, it is INC's goal to establish full ownership in the invention that describes the use of proanthocyanidins as free radical scavengers and to uphold its validity at all times.

### ###

D 000 337