IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| INTERNATIONAL NUTRITION COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>HORPHAG RESEARCH LTD., MW INTERNATIONAL, INC., KAIRE INTERNATIONAL, INC., TRACO LABS, INC., CHEMCO INDUSTRIES, INC., GREATER CONTINENTS, INC., INDENA U.S.A., TWIN LABORATORIES, INC., USANA, INC., FREE LIFE INTERNATIONAL LTD., NOW FOODS, ENZYMATIC THERAPY, INC., NUTRACEUTICAL CORPORATION, ESTEE LAUDER, INC., ARKOPHARMA, INC., JARROW FORMULAS, INC., NEW VISION INTERNATIONAL, INC. and CHANGES INTERNATIONAL OF FORT WALTON BEACH, ) INC., )<br><br>Defendants. ) | Civil Action No.<br>396 CV 00386 (DJS) |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Norman H. Zivin (ct 08103)
Robert D. Katz (ct 20108)
Donna A. Tobin (ct 14698)
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 278-0400

Jonathan A. Flatow (ct 03115)
WAKE, SEE, DIMES & BRYNICZKA
27 Imperial Avenue
P.O. Box 777
Westport, Connecticut 06881
(203) 227-9545

Attorneys for Plaintiff
International Nutrition Company

ORAL ARGUMENT REQUESTED

TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 2

1.   SUMMARY JUDGMENT IS IMPROPER BECAUSE THERE ARE MANY GENUINE
     ISSUES OF FACT TO BE TRIED REGARDING OWNERSHIP OF THE '360
     PATENT-IN-SUIT . . . . . . . . . . . . . . . . . . . . 2

II.  INC OWNS THE RIGHT AND TITLE TO SUE FOR INFRINGEMENT OF THE
     '360 PATENT . . . . . . . . . . . . . . . . . . . . . . 4

     A.   U.S. Patent Ownership Is a Matter of U.S. Patent
          Law . . . . . . . . . . . . . . . . . . . . . . . . 4

     B.   INC Is a *Bona Fide* Purchaser for Value of a 50%
          Interest in the '360 Patent Under U.S. Patent Law . . 6

     C.   INC Acquired at Least an Additional 50% Interest
          in the '360 Patent by a Confirmatory Assignment
          From Dr. Masquelier . . . . . . . . . . . . . . . . 9

     D.   INC is at Least a Joint Owner of the '360 Patent
          and Can Sue for Infringement . . . . . . . . . . . 10

     E.   Horphag's Prior Agreement to Join in Infringement
          Actions . . . . . . . . . . . . . . . . . . . . . . 11

III. THE FRENCH DECISIONS ARE NOT ENTITLED TO COMITY . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 17

i

TABLE OF AUTHORITIES

Cases

Afros S.p.A. v. Krauss-Maffei Corp.,
671 F.Supp. 1402 (D. Del. 1987),
aff'd. w/o opinion, 848 F.2d 1244
(Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . 4

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 91 L.Ed.2d 202,
106 S.Ct. 205 (1986) . . . . . . . . . . . . . . . . . . . . . 2

Celotex Corp. v. Catrett,
477 U.S. 317 91 L.Ed.2d 265,
106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . . . . . . 2, 3

Cuno, Inc. v. Pall Corp.,
729 F.Supp. 234 (E.D.N.Y. 1989) . . . . . . . . . . . . . . 14

Filmtec Corp. v. Allied-Signal, Inc.,
939 F.2d 1568 (Fed. Cir. 1991) . . . . . . . . . . . . . . . 7

Gayler v. Wilder,
51 U.S. (10 How.) 477,
13 L.Ed. 504 (1850) . . . . . . . . . . . . . . . . . . . . . 4

Heidelberg Harris, Inc. v. Loebach,
145 F.3d 1454 (Fed. Cir. 1998) . . . . . . . . . . . . . . . 8

Hendrie v. Sayles, 98 U.S. 546 (1879) . . . . . . . . . . . 6, 7

Horphag Research, Ltd. v. Consac Industries, Inc.,
116 F.3d 1450 (Fed. Cir. 1997) . . . . . . . . . . . . . . 12

In re Peregrine Entertainment Ltd.,
16 U.S.P.Q.2d 1017 (C.D. Cal. 1990) . . . . . . . . . . . . 7

Laker Airways Ltd. v. Sabena,
Belgian World Airlines,
731 F.2d 909 n.104 (D.C.Cir. 1984) . . . . . . . . . . . . 13

Medtronic Inc. v. Daig Corp.,
789 F.2d 903 (Fed. Cir. 1986),
cert. denied, 479 U.S. 931 (1986) . . . . . . . . . . . . . 14

Opryland, USA, Inc. v. The Great
American Music Show, Inc.,
970 F.2d 847 (Fed. Cir. 1992),
reh'g. denied, 1992 U.S. App. Lexis
20510 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . 3

<u>Overseas Inns S.A. P.A. v. United States</u>
<u>of America</u>, 911 F.2d 1146 (5th Cir. 1990),
<u>reh'g denied</u> 1990 U.S. App. Lexis 19628
(5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . 13

<u>Ramirez & Feraud Chili Co. v. Las Palmas Food Co.</u>,
146 F. Supp. 594, 602 (S. D. Cal. 1956), aff'd,
245 F.2d 874 (9th Cir. 1957), <u>cert denied</u>,
355 U.S. 927 (1958) . . . . . . . . . . . . . . . . . . 14

<u>University Patents, Inc. v. Kligman</u>,
762 F. Supp. 1212 (E.D. Pa. 1991) . . . . . . . . . . . . 4


<u>Statutes and Rules</u>

35 U.S.C. § 261 . . . . . . . . . . . . . . . . . . . . 5, 6

35 U.S.C. § 262 . . . . . . . . . . . . . . . . . . . . 5, 13

Rule 56 (f) F.R.Civ.P . . . . . . . . . . . . . . . . . 3


<u>Other Authorities</u>

<u>Lipscomb's Walker on Patents</u> § 19:11 . . . . . . . . . . . 9

INTRODUCTION

Plaintiff, INTERNATIONAL NUTRITION COMPANY ("INC"), hereby submits this memorandum in opposition to the motions by the various defendants seeking summary judgment dismissing the complaint. INC incorporates by reference its memoranda in opposition to the prior motions by defendants to dismiss the complaint, as well as its sur-reply memoranda. The purpose of this memorandum is to summarize INC's positions for the convenience of the Court. INC will not repeat all of the facts and arguments regarding its ownership of the '360 patent-in-suit, and its standing to sue for infringement of the patent, which are contained in the numerous affidavits and exhibits already before the Court.

INC's positions are as follows:

(1)    INC is the owner of all right, title and interest in and to the '360 patent and can sue the defendants for infringement.

(2)    Alternatively, INC is at the least a joint owner of the '360 patent and can sue the defendants for infringement.

(3)    French court decisions purporting to apply a French statute to change the ownership of a U.S. patent are not entitled to comity and cannot oust INC of ownership of the patent.

For all these reasons, INC is entitled to maintain this action. Since defendants maintain that ownership of the '360 patent is in doubt, there are genuine material issues of fact in dispute which require a trial to determine.

1

<u>ARGUMENT</u>

1.   SUMMARY JUDGMENT IS IMPROPER BECAUSE THERE ARE MANY GENUINE
     ISSUES OF FACT TO BE TRIED REGARDING OWNERSHIP OF THE '360
     PATENT-IN-SUIT

A movant for summary judgment must demonstrate the absence of
a triable issue of fact and that the movant is entitled to a
judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S.
317, 326, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 91 L.Ed.2d 202, 106 S.Ct.
205 (1986).  There exist here several genuine issues of material
fact for trial which preclude the Court from granting defendants'
summary judgment motions, including:

-    the intent of the parties to the 1985 agreement
     between defendant Horphag and S.C.I.P.A.

-    Horphag's consideration for the agreement.

-    the effect of expiration of the agreement on Horphag's
     rights in the '360 patent.

-    Horphag's breaches of the agreement, including licensing
     Indena under the patent.

-    INC's bona fides and good faith in acquiring
     S.C.I.P.A.'s interest in the '360 patent.

-    the effect of the Confirmatory Assignment from
     Professor Masquelier to INC.

-    Horphag's bad faith in obtaining a French judgment by
     concealing its licensing of Indena and perhaps other
     defendants.

Indeed, summary judgment relating to the narrow issue of

2

ownership of the '360 patent <u>can</u> be granted in INC's favor. The records of the U.S. Patent and Trademark Office ("PTO") reflect that INC is the owner of the entire right, title and interest in the patent under the U.S. Patent Law. The Court could find on the evidence of record that:

(1) INC acquired a 50% interest in the patent in March 1994 from S.C.I.P.A. as a bona fide purchaser for value.

(2) Horphag's 50% interest in the patent expired in April 1995.

(3) Horphag's expired interest reverted to Dr. Masquelier in April 1995.

(4) INC acquired the reversionary rights from Dr. Masquelier in October 1996, effective as of April 1995.

Therefore, INC now owns the entire interest in the '360 patent. The Court can enter judgment to that effect in INC's favor.

If the court reaches the conclusion that there is not enough evidence to grant summary judgment in INC's favor on this issue, then INC should be permitted to take discovery of defendant Horphag in opposition to defendants' motions for summary judgment.

Rule 56(f) F.R.Civ.P. authorizes a Court to permit discovery by a non-moving party prior to requiring an opposition to a summary judgment motion. <u>Opryland, USA, Inc. v. The Great American Music Show, Inc.</u>, 970 F.2d 847, 852 (Fed. Cir. 1992), <u>reh'g. denied</u>, 1992 U.S. App. Lexis 20510 (Fed. Cir. 1992). Rule 56(f) was designed to prevent non-movants from being "railroaded" by premature summary judgment motions. <u>Celotex</u>, <u>supra</u> at 326.

The Court invited INC to request needed discovery and INC has

3

done so.    INC needs to take discovery of defendant Horphag on issues including ownership of the '360 patent; licensing of the '360 patent by Horphag; and the intent of the parties to the various agreements at issue here, in order to fully respond to the motions.    Horphag has refused to appear for discovery.    The Court has not ruled on INC's request.    Until Horphag appears, any motion for summary judgment should be deferred.

II.    INC OWNS THE RIGHT AND TITLE TO SUE FOR INFRINGEMENT OF THE '360 PATENT.

Defendants rely upon decisions of French courts which purportedly establish that INC has no ownership interest in the '360 patent-in-suit and, thus, no standing to maintain this lawsuit.    The French decisions do not change the fact that INC owns the right and title in the '360 patent under U.S. law and is entitled to maintain this infringement action.

A.    U.S. Patent Ownership Is a Matter of U.S. Patent Law.

The ownership of a U.S. patent can be determined only pursuant to U.S. law.    Gayler v. Wilder, 51 U.S. (10 How.) 477, 13 L.Ed. 504 (1850).    University Patents, Inc. v. Kligman, 762 F. Supp. 1212 (E.D. Pa. 1991).    A United States patent is "created by the act of Congress; and no rights can be acquired in it unless authorized by statute, and in the manner the statute prescribes." Gayler, supra, at 494.    As more recently stated in University Patents, supra, "[S]ince a patent is a creature of federal statutory law, it may be transferred only in the manner provided by such law." Id. at 1219. Further, in Afros S.p.A. v. Krauss-Maffei Corp., 671 F.Supp. 1402,

4

1446 (D. Del. 1987), aff'd. w/o opinion, 848 F.2d 1244 (Fed. Cir. 1988), the Court held that U.S. law determines whether a party was a valid assignee of a patent at the time it filed a claim for infringement.

Indeed, U.S. law specifically provides that patents shall be assignable, 35 U.S.C. § 261, and joint owners of a patent may sell, or assign, the patent without the consent of, and without accounting to, any other joint owner, 35 U.S.C. § 262. No limitation is placed on the nationality of the owner. Those statutory provisions, as of March 1994, provided as follows:

> "§262 Joint Owners.
>
> In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, or sell the patented invention without the consent of and without accounting to the other owners."[1]

There was no "agreement to the contrary" recorded in the PTO in March 1994.

> "§261 Ownership; assignment.
>
> Subject to the provisions of this title, patents shall have the attributes of personal property. . .
>
> An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgage for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage."

There were no "recorded" documents in the PTO in March 1994 which precluded INC from becoming at that time a bona fide purchaser for value, and indeed, there was no recorded document even as late as

---

[1]  Section 262 was amended on December 8, 1994, but the amendments are not relevant here.

5

April 30, 1997 (Tobin Decl. Ex. F).

Clearly, a joint owner of a U.S. patent may transfer its rights to a third-party, and does not need the agreement or consent of the co-owner. A purchaser may rely upon U.S. law to determine the validity of the transfer. Under U.S. law, a patent has the attributes of personal property and can be assigned by a written instrument. 35 U.S.C. § 261.

Under the U.S. Patent Law, therefore, INC became the valid owner of the '360 patent in March 1994 by assignment from S.C.I.P.A., and any unrecorded conveyance or foreign statute to the contrary cannot deprive INC of its title.

B.   INC Is a *Bona Fide* Purchaser for Value of a 50% Interest in the '360 Patent Under U.S. Patent Law.

INC had no notice in March 1994 that S.C.I.P.A. was precluded from assigning its interest in the '360 patent. A 1985 agreement between Horphag and S.C.I.P.A. was not recorded in the PTO. INC knew only that S.C.I.P.A. and Horphag were recorded as joint owners in the PTO, as shown on the face of the '360 patent. It is well established, pursuant to the common law *bona fide* purchaser for value rule, that when a legal title holder of a patent transfers its title to a third party purchaser for value without notice of an outstanding equitable claim or title, the purchaser takes ownership of the patent, free and clear of any prior equitable encumbrance. Hendrie v. Sayles, 98 U.S. 546, 549 (1879).

The Patent Law, 35 U.S.C. § 261, specifically provides that any transfer of rights in a United States patent must be recorded in the PTO within three months from its date. If no such recordal

6

is made, the transfer will be void as against a subsequent purchaser for value. Section 261 cuts off any alleged rights of an "assignee" who fails to record its interest in the PTO.

In Filmtec Corp. v. Allied-Signal, Inc., 939 F.2d 1568, 1573-1574 (Fed. Cir. 1991), the Federal Circuit said:

> "It is well established that when a legal title holder of a patent transfers his or her title to a third party purchaser for value without notice of an outstanding equitable claim or title, the purchaser takes the entire ownership of the patent, free of any prior equitable encumbrance. Hendrie v. Sayles, 98 U.S. 546, 549, 25 L.Ed. 176 (1879). This is an application of the common law bona fide purchaser for value rule.
>
> Section 261 of Title 35 goes a step further. It adopts the principle of the real property recording acts, and provides that the bona fide purchaser for value cuts off the rights of a prior assignee who has failed to record the prior assignment in the Patent and Trademark Office by the dates specified in the statute. Although the statute does not expressly so say, it is clear that the statute is intended to cut off prior legal interests, which the common law rule did not."

So long as the subsequent purchaser has paid valuable consideration and is without notice of a prohibition on transfer, it obtains clear title "as a matter of law." Id. at 1574. INC has shown that it paid valuable consideration to S.C.I.P.A. and that it was without notice of any prior restriction on transfer of S.C.I.P.A.'s 50% undivided ownership interest in the '360 patent-in-suit (Schwitters Decl. paragraph 7). Horphag's purported right to preclude the transfer by S.C.I.P.A. of its interest has been cut-off by Horphag's failure to record any agreement to that effect. See also In re Peregrine Entertainment Ltd., 16 U.S.P.Q.2d

7

1017 (C.D. Cal. 1990) (holding that failure to comply with the federal title recordation scheme under the Copyright Law extinguishes a state law claim).

Since INC was a *bona fide* purchaser for value of S.C.I.P.A.'s interest in the '360 patent, it cannot be divested of its title. In <u>Heidelberg Harris, Inc. v. Loebach</u>, 145 F.3d 1454 (Fed. Cir. 1998), the Court of Appeals for the Federal Circuit specifically affirmed the applicability of the *bona fide* purchaser for value rule. The District Court opinion in <u>Heidelberg</u>, which was affirmed on appeal, set forth four requirements to rely upon the *bona fide* purchaser for value rule:

    (1)  the transferor must have legal title to the patent when the transfer occurs;

    (2)  the transfer must be to a third party;

    (3)  the transfer must be for value; and

    (4)  the transferee must take title without notice of any competing equitable claims.

<u>Id.</u>, 43 U.S.P.Q.2d 1049, 1052 (D.N.H. 1997).

Here, S.C.I.P.A. clearly had legal title on March 18, 1994, when it transferred its undivided share of the '360 patent to INC (See, Tobin Decl. Ex. F). Indeed, according to the French decisions relied upon defendants, S.C.I.P.A. still has the legal title. INC paid valuable consideration to S.C.I.P.A. for that title, not the nominal consideration recited in the assignment[2]

---

    [2]  It should be noted that the April 1985 assignment by Dr. Masquelier to S.C.I.P.A. and Horphag Overseas also recited nominal consideration (Tobin Decl. Ex. C). Horphag never paid any consideration to S.C.I.P.A. It also is not known whether Horphag Research paid any consideration to Horphag Overseas in

(Schwitters Decl. paragraph 5).    INC had no knowledge of any
competing claims by Horphag, and INC was not aware of any
impediment in the S.C.I.P.A.-Horphag 1985 agreement to an
assignment (Schwitters Decl. paragraph 7). To the contrary, that
agreement provides that, "[i]n the case of assignment or grant of
the industrial property rights arising from the present contract,
the proceeds will be shared equally by the parties." (Tobin Decl.,
Ex. D. para.4). Accordingly, INC is a *bona fide* purchaser for
value. Since defendants challenge the good faith of the purchaser,
there is a genuine issue of material fact for trial.

C.    INC Acquired at Least an Additional 50% Interest in
      the '360 Patent by a Confirmatory Assignment From
      Dr. Masquelier.

INC acquired at least another 50% interest in the patent by a
Confirmatory Assignment from Dr. Masquelier, when the 1985
S.C.I.P.A.- Horphag agreement expired and Horphag's rights reverted
to Dr. Masquelier.  By the terms of the 1985 agreement, Horphag's
ownership of the patent was dependent on a condition subsequent,
namely that the agreement remained in effect between the parties.
Lipscomb's Walker on Patents § 19:11 (Tobin Decl. Ex. M).  When
such a condition no longer exists, the title "reverts to the
assignor by operation of law."    Id.    The French Appeals Court
specifically confirmed the expiration of Horphag's rights in the
1985 agreement in April 1995, and specifically declined to pass on

_____

connection with its alleged transfer.

9

the validity of the Confirmatory Assignment to INC by Dr.
Masquelier, leaving that issue to an American Court. INC has shown
that it is at least a 50% owner of the '360 patent-in-suit by
virtue of the Confirmatory Assignment and as such is entitled to
maintain this lawsuit. To the extent that the defendants challenge
the expiration of Horpag's right or the validity of the
Confirmatory Assignment, there is a genuine material issue of fact
for trial precluding grant of summary judgment for defendants.

> D.   INC is at Least a Joint Owner of the '360 Patent
>      and Can Sue for Infringement.

INC submits that it now owns all right, title and interest in
and to the '360 patent. At the very least, however, INC owns a 50%
interest in the patent. INC acquired S.C.I.P.A.'s share of the
'360 patent in accordance with U.S. Patent Law. INC acquired
Horphag's share of the '360 patent after that interest reverted to
Dr. Masquelier upon expiration of the 1985 agreement and pursuant
to the Confirmatory Assignment. S.C.I.P.A. is willing to join this
case as a plaintiff should the Court deem it necessary, even though
S.C.I.P.A. no longer claims any ownership rights in the patent
(Tobin Decl. Ex. Q). S.C.I.P.A. has merged with CEP, a company
controlled by INC Agency BV. Even if Horphag has somehow retained
ownership of a part of the patent, it is present as a party before
this Court. The Court has denied Horphag's motion to dismiss for
lack of personal jurisdiction. Since all potential owners are
before the Court, there is no reason for the Court not to proceed
with this patent infringement action.

E.  Horphag's Prior Agreement to Join in Infringement
    Actions.

The 1985 agreement between Horphag and S.C.I.P.A. contemplated
that the parties would cooperate in infringement suits brought by
each other relating to the '360 patent.  Horphag itself confirmed
to its own patent attorney, Robert P. Simpson, Esq., that "a clear
understanding has been signed in April 1985 between the two co-
owners of the ['360] patent to the effect that both parties will
inform and take steps to protect the other of any infringement" of
the patent (Tobin Decl. Ex. O).

Horphag itself believes that it has the right to enforce the
'360 patent against infringers without seeking cooperation from
S.C.I.P.A. or INC, and it should be estopped from taking a contrary
position.  In April 1994, Robert P. Simpson, Esq., Horphag's patent
attorney, sent a letter to Momentum Marketing, Inc. ("Momentum")
demanding that Momentum cease *inter alia* infringement of the '360
patent (Tobin Decl. Ex. P, p. 2).  Horphag did not seek agreement
from S.C.I.P.A. or INC to do so.  In response to issues raised by
Momentum's counsel, Mr. Simpson stated:

> "With respect to our claim of patent infringement you are
> correct that U.S. Patent No. 4,698,360 has been assigned
> to co-assignees.  As you are aware, under U.S. patent
> law, absent an agreement to the contrary, either assignee
> may license a patent without permission of the other
> assignee.  Also, either assignee may bring an
> infringement action without the permission of the other
> assignee."

(Tobin Decl. Ex. P, p. 2).

Horphag also has maintained a patent infringement lawsuit
against at least one accused infringer without seeking S.C.I.P.A.'s

11

or INC's permission or joinder.    In August 1993, Horphag sued

Consac Industries, Inc. (Country Life) in the Eastern District of

New York for infringement of the '360 patent (Tobin Decl. Ex. L).

Horphag never sought to join S.C.I.P.A. or INC as parties to the

case, although Consac made a convoluted effort to do so.    Horphag

eventually settled with Consac and a Judgment was entered on July

26, 1995, holding the '360 patent to be valid and infringed.[3]

Horphag proceeded to collect damages from Consac.    Neither INC nor

S.C.I.P.A. was a party to the settlement and neither shared in the

proceeds (Tobin Decl. Ex. B).    Thus, Horpag's actions and course of

conduct show that it can be joined as an involuntary party if it

continues to own any rights in the patent-in-suit and its presence

is necessary.    As defendants deny that Horphag has consented to

join this suit, there is a genuine issue of material fact for trial

precluding summary judgment.

III.  THE FRENCH DECISIONS ARE NOT ENTITLED TO COMITY

        Defendants again rely on the general proposition that foreign

judgments are entitled to comity and with great simplicity conclude

that certain French decisions must be accorded comity. However, the

principle of comity is not to be applied blindly or mechanically.

Rather, "comity is a recognition which one nation extends within

its own territory to the legislative, executive or judicial acts of

_____

        [3]  After the Judgment was entered, Horphag sought to join
INC as a party to the Judgment to the extent it related to a
trademark issue.  Although the District Court granted the motion,
the Court of Appeals vacated the Order as improper.  <u>Horphag</u>
<u>Research, Ltd. v. Consac Industries, Inc.</u>, 116 F.3d 1450 (Fed.
Cir. 1997).

12

another. It is not a rule of law, but one of practice, convenience and expediency." <u>Overseas Inns S.A. P.A. v. United States of America</u>, 911 F.2d 1146, 1148 (5th Cir. 1990), <u>reh'g denied</u> 1990 U.S. App. Lexis 19628 (5th Cir. 1990). Comity can be withheld when its acceptance would be "contrary or prejudicial to the interest of the nation called upon to give it effect." <u>Id</u>. Thus, American Courts have declined to accord comity to foreign decisions where to do so would "prejudice American interests or policies," or where the foreign law is not "comparable to United States law." <u>Id</u>. In <u>Overseas Inns</u>, a Court of Appeals affirmed a refusal by a district court to extend comity to a decision of a Luxembourg bankruptcy court where the decision was in conflict with American law. <u>Id</u>. Indeed, "authorities have recognized that the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act." <u>Laker Airways Ltd. v. Sabena, Belgian World Airlines</u>, 731 F.2d 909, 937, n.104 (D.C.Cir. 1984). Even defendant Horphag admits that comity is not extended where "the laws and public policy of the forum state" will be violated (Reply on Motion to Dismiss p. 2). Certainly, comity should not be extended to the tainted foreign judgment obtained by Horphag here.

The facts here weigh against the extension of comity to the French decision. The French Court ignored U.S. law and applied a French statute which purports to prohibit assignment by one co-owner of a French patent without approval of the other owner. This French law directly conflicts with our law which permits such assignments under 35 U.S.C. §262. The French decision also

13

undermines the statutory *bona fide* purchaser for value rule (the "BFP rule") set forth in 35 U.S.C. §262. Comity should not be granted where, as here, it would result in prejudice to American interests or policies and where French law is not comparable to U.S. law. Id.

With regard to the validity of an assignment of a jointly owned U.S. patent, there is no reason for a U.S. Court to defer to the jurisdiction of a foreign forum, particularly where the foreign forum applied its own law, and did not consider either U.S. law or the agreement before it. There is no possible affront to the French courts in this scenario, nor does comity come into play. Ramirez & Feraud Chili Co. v. Las Palmas Food Co., 146 F. Supp. 594, 602 (S. D. Cal. 1956), aff'd, 245 F.2d 874 (9th Cir. 1957), cert denied, 355 U.S. 927 (1958).

The Federal Circuit has made it clear that the judgments of foreign courts on issues of patent law are not entitled to comity. That is because U.S. Patent Law and foreign patent laws simply are not the same. In Medtronic Inc. v. Daig Corp., 789 F.2d 903, 907 (Fed. Cir. 1986), cert. denied, 479 U.S. 931 (1986), the Court described as "specious" an assertion that the Court should adopt the conclusion reached by a German tribunal on the issue of obviousness. The Federal Circuit stated that the "patent laws of the United States are the laws governing a determination of obviousness/nonobviousness of a United States patent in a federal court." Id. at 907-908. See also Cuno, Inc. v. Pall Corp., 729 F.Supp. 234, 238 (E.D.N.Y. 1989), declining to follow a British

14

judgment because of the differences in laws between the United States and Great Britain. Of course, Great Britain is a common law country with a legal system akin to our own, while France has a Napoleonic code which is entirely different than American law. This difference is one reason for the rule that U.S. Patent Law, and the title recording scheme provided by that law, must control on questions of ownership of U.S. patents.

Even a cursory review of the agreement discussed by the French courts (Tobin Decl. Ex. D) shows that their judgments could not have been based on the same principles which govern relations under American Patent Law or under common law jurisprudence. The French courts found that S.C.I.P.A. improperly assigned its 50% undivided interest in the '360 patent-in-suit to INC in violation of the agreement. But, there is no clause in the 1985 agreement which precludes assignments. That agreement specifically contemplates assignments by providing that the parties would share the proceeds (Tobin Decl., Ex. D. para, 4). And, the agreement makes no mention of, and was signed after, the application for the '360 patent was filed. Further, Horphag itself understood that the agreement permitted assignments and licenses under U.S. Patent Law (Tobin Decl Ex. P, p.2.). The French courts could not have been applying U.S. Patent Law, and indeed, it is clear that they applied only French Statutory law. Thus, the French courts' decisions are not entitled to any deference.

Even more compelling is the new information that recently has come to light showing that Horphag obtained the French judgment by

15

withholding critical evidence.  The French statute relied upon by
the French courts precludes a co-owner from assigning a French
patent without consent of the other co-owner.  It likewise
precludes a co-owner from licensing the patent without first
offering an assignment to the other co-owner (Benech Decl. para.
7).  The French statute is directly in conflict with §262 of the
U.S. Patent Law, which governs SCIPA's assignment to INC.  To the
extent it is not in conflict, the French judgment should not be
given comity because of Horphag's unclean hands in failing to
disclose that it had licensed Indena.  If S.C.I.P.A. could not
dispose of its rights without Horphag's consent, then Horphag could
not dispose of its rights without S.C.I.P.A.'s consent.  Indeed,
the French appeals court made it clear that it was not deciding the
effect of Horphag's licensing of the '360 patent, on the ground
that the licensees were not present (decision pp.49-50).  To the
extent there is any doubt about what was before the French court,
summary judgment must be denied.

Defendants contend that this Court should give <u>res</u>
<u>judicata</u> effect to the French court's decision.  To do so would
greatly prejudice INC.  In France, <u>no</u> discovery was permitted, <u>no</u>
witnesses were examined or cross-examined and <u>no</u> trial was held
(Benech Decl. para. 4).  Thus, Horphag was able to conceal from the
French courts the license it had granted to Indena.  Its unclean
hands clearly would have resulted in a different judgment had the
French court had access to the agreement and had Indena been before
it.  To accept the resulting tainted determination based on French

16

law, which is contrary to U.S. Patent Law, would not only prejudice INC, but the public's ability to rely on the U.S. Patent Law and its title provisions.

The French suspect decision should not be given comity or <u>res judicata</u> effect to the extent contrary to U.S. law.

CONCLUSION

Based upon the facts and authorities set forth above, it is respectfully submitted that all the motions by defendants for summary judgment should be denied.

Dated this 29th day of April 1999.

Respectfully,

Norman H. Zivin  (ct 08103)
Robert D. Katz   (ct 20108)
Donna A. Tobin   (ct 14698)
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 278-0400

Jonathan A. Flatow (ct 03115)
WAKE, SEE, DIMES & BRYNICZKA
27 Imperial Avenue
P.O. Box 777
Westport, Connecticut   06881
(203) 227-9545

Attorneys for Plaintiff
International Nutrition Company