Aoril 19

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

INTERNATIONAL NUTRITION COMPANY,

          Plaintiff,

          v.

HORPHAG RESEARCH LTD., MW INTERNATIONAL, INC., KAIRE INTERNATIONAL, INC., TRACO LABS, INC., CHEMCO INDUSTRIES, INC., GREATER CONTINENTS, INC., INDENA U.S.A., TWIN LABORATORIES, INC., USANA, INC., FREE LIFE INTERNATIONAL LTD., NOW FOODS, ENZYMATIC THERAPY, INC., NUTRACEUTICAL CORPORATION, ARKOPHARMA, INC., JARROW FORMULAS, INC., and NEW VISION INTERNATIONAL, INC.,

          Defendants.

Civil Action No.
3:96-CV-00386 (DJS)

---

**DEFENDANTS', INDENA U.S.A. AND ENZYMATIC THERAPY, INC.,
MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR ATTORNEYS FEES PURSUANT TO
35 U.S.C. § 285, FED. R. CIV. P. 54(d), AND CIVIL LOCAL RULE 9(f)**

NY2 - 1072406.2

TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PERTINENT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    INC's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    The Indena Defendants' Original Motion to Dismiss . . . . . . . . . . . . . . . . . . . . 3

      C.    The Indena Defendants' Renewed Motion to Dismiss . . . . . . . . . . . . . . . . . . . 5

      D.    The Indena Defendants' Second Renewed Motion to
            Dismiss and Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . 7

      E.    INC's Motion for Reconsideration and Leave to
            Amend the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    Legal Standards For An Exceptional Case And Award Of Attorney's
            Fees Under 35 U.S.C. § 285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    An Award of Attorney Fees Is Appropriate Under 35 U.S.C.
            § 285 Since INC Knew or Should Have Known that Its Allegations
            of Ownership in Its Complaint Were Frivolous and It Could Not Bring
            This Suit Without Horphag's Voluntarily Joining the Suit . . . . . . . . . . . . . . . . 12

      C.    This Case Is Exceptional Under 35 U.S.C. § 285 Since
            INC Maintained This Suit By Raising Arguments
            Concerning Ownership That It Knew or Should
            Have Known Were Frivolous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            1.    INC Knew That Its Arguments in Opposing The
                  Motions to Dismiss and Motion for Summary
                  Judgment Were Baseless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

NY2 - 1072406.2

Page(s)

    2.    This Case Is Exceptional Under 35 U.S.C. § 285 Since
INC Maintained This Suit Despite The French Courts'
Decisions Finding That It Was Not an Owner of the
'360 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    3.    INC Should Be Sanctioned for Continuing to Raise
Arguments That It Knew or Should Have Known
Are Frivolous in Its Motion for Reconsideration and
for Leave to Amend the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D.    This Case Is Exceptional Under 35 U.S.C. § 285 . . . . . . . . . . . . . . . . . . . . . . . . 22

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

NY2 - 1072406.2

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Afros S.P.A. v. Krauss-Maffei Corp.,*
    671 F. Supp. 1402 (D. Del. 1987),
    *aff'd,* 848 F.2d 1244 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Automated Business Companies, Inc. v. NEC America, Inc.,*
    202 F.3d 1353 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 16

*Beckman Instruments, Inc. v. LKB Produkter AB,*
    892 F.2d 1547 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

*Eltech Systems Corp. v. PPG Industries, Inc.,*
    903 F.2d 805 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Encomp Inc. v. L-Com, Inc.,*
    999 F. Supp. 264 (D. Conn. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Ethicon, Inc. v. U. S. Surgical Corp.,*
    135 F.3d 1456 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hughes v. Novi American, Inc.,*
    724 F.2d 122 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Interspiro USA, Inc. v. Figgie Int'l Inc.,*
    18 F.3d 927 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lans v. Gateway 2000, Inc.,*
    84 F. Supp. 2d 112 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Pressroom Unions-Printers League Incore Security Fund v. Continental Assurance, Co.,*
    700 F.2d 889 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Site Microsurgical Systems, Inc. v. Cooper Cos., Inc.,*
    797 F. Supp. 333 (D. Del. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Standard Oil Co. v. American Cyanamid Company,*
    774 F.2d 448 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*University Patents, Inc. v. Kligman,*
    762 F. Supp. 1212 (E.D. Pa. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Willingham v. Lawton,*
    555 F.2d 1340 (6th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Yamanouchi Pharmaceutical Co., v. Danbury Pharmacal, Inc.,*
    51 F. Supp. 2d 302 (S.D. N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

NY2 - 1072406.2

## STATUTES

35 U.S.C. § 261 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

35 U.S.C. § 285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 54(d)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## I.    INTRODUCTION

More than four years ago, Plaintiff International Nutrition Company ("INC") brought this baseless patent infringement action, and thus, caused Defendants Indena U.S.A. and Enzymatic Therapy, Inc. (collectively, "the Indena Defendants") to expend significant resources, which they would not otherwise have spent, in litigating this case. Under 35 U.S.C. § 285, INC's frivolous lawsuit and vexatious litigation practices render this case "exceptional" and entitle the Indena Defendants to recapture the attorneys fees they incurred in battling INC before this Court.

First, this case is exceptional because INC filed suit for patent infringement of U.S. Patent No. 4,698,360 ("the '360 patent") based on allegations of ownership (*i.e.*, that INC was an owner and defendant Horphag Research Ltd. ("Horphag") was no longer an owner) that it knew or should have known were not true. Further, INC brought this action even though it knew ownership was already being litigated in the proper forum in France. Further evidence that this case is exceptional can be seen from the fact that INC sued for patent infringement even though it knew or should have known that it could not sue for patent infringement because Horphag, a co-owner of the '360 patent, had not voluntarily joined the suit, as required by the United States patent laws.

Second, this case is exceptional because INC maintained this frivolous action even when it knew or should have known that its arguments concerning its purported ownership of the '360 patent were meritless. Specifically, despite the numerous motions to dismiss and motions for summary judgment, which should have apprised INC that its ownership arguments were unfounded, INC continued this litigation to harass the defendants.

Third, INC chose to disregard the decisions of both the French trial court and French appeals court, which found that INC had no ownership interest in the '360 patent. In

-1-

view of these well-reasoned decisions, INC should have been aware that its arguments were frivolous. Nevertheless, INC persisted in making its baseless allegations (*e.g.,* that the French decisions should not be entitled to comity) in order to maintain the lawsuit.

Finally, even after the two French court decisions and this Court's Order, INC continued to pursue this action, with arguments which it knew were meritless, by requesting reconsideration of this Court's March 21, 2000 decision and for leave to amend the complaint at this late date. Ironically, INC has now admitted that it is not an owner of the '360 patent in its motion papers, yet it frivolously argues that it should be allowed to maintain this suit.

Because INC has engaged in frivolous and vexatious litigation tactics by bringing and continuing this lawsuit based upon allegations that it knew or should have known were devoid of merit, this case is exceptional under 35 U.S.C. § 285. The Indena Defendants spent substantial amounts of time and effort in litigating this case, which should never have been brought by INC in the first place. Therefore, the Indena Defendants seek to recover the attorneys fees incurred in defending this baseless suit. As required by Fed. R. Civ. P. 54(d)(2)(B), a fair estimate of the amount of fees sought is provided in the Declaration of Thomas G. Rowan submitted herewith. Further details of the attorneys fees incurred by the Indena Defendants will be provided should the Court grant this motion and deem it necessary.

-2-

## II.    PERTINENT FACTS

### A.    INC's Complaint

On March 6, 1996, INC brought the present action against eighteen defendants, including Horphag, a co-owner of the '360 patent. In Count One of the complaint, which accused the defendants of infringement of the '360 patent, INC alleged that it is the owner of at least an undivided one-half interest in the '360 patent.[1] INC also alleged, merely based "upon information and belief" that Horphag was no longer a co-owner of the '360 patent.[2] INC could not allege, and did not allege, that it had the full right, title and interest needed to file the patent infringement suit. Indeed, at the commencement of the suit, INC was already embroiled in a French lawsuit concerning ownership of the '360 patent.

Perhaps most telling of INC's abuse of the federal courts, is the fact that INC used the pendency of this litigation as a marketing tool.

### B.    The Indena Defendants' Original Motion to Dismiss

In response to INC's complaint, the majority of the defendants, including the Indena Defendants, moved to dismiss Count One pursuant to Rule 12(b), Fed. R. Civ. P., because INC had not established the requisite ownership interest in the '360 patent, and thus it had no standing to sue for alleged patent infringement.[3] More importantly, INC knew that Horphag, a

---

[1]    *See* Complaint at ¶ 23 (Docket No. 1).

[2]    *See* Complaint at ¶ 24.

[3]    *See* the Indena Defendants' May 17, 1996 Memorandum in support of their original motion to dismiss (Docket No. 29) (hereinafter "Indena Defendants' 1996 motion").

-3-

NY2 - 1072406.2

co-defendant and co-owner of the '360 patent, refused to voluntarily join the action. Indeed, Horphag moved to dismiss the action.

The Indena Defendants, also moved to stay the action pending resolution of the earlier filed French action involving, *inter alia*, INC and the original co-owners of the '360 patent, Horphag and SCIPA, since ownership of the '360 patent was already being properly addressed in the French action. Specifically, the French trial court was deciding, *inter alia*, whether a purported assignment by SCIPA to INC of SCIPA's one-half interest in the '360 patent was void *ab initio* in view of a 1985 joint development contract between SCIPA and Horphag ("the '85 Contract").[4] This purported assignment of a one-half interest in the '360 patent was the only basis for INC's claim of any ownership interest in the '360 patent.

In response to the Indena Defendants' motion to dismiss, INC set forth several baseless arguments many of which were contradictory to the facts known to INC. For example, INC asserted that it was a bona fide purchaser for value without notice of the '85 Contract between Horphag and SCIPA.[5] INC also asserted that Horphag was no longer an owner of the '360 patent because the '85 Contract had expired.[6] Finally, in order to further its vexatious litigation and attempt to avoid a stay, INC alleged that the French action could not be dispositive

---

[4]    The '85 Contract was written in French, executed in France and specified that disputes concerning the contract would be resolved by the French courts. *See* Order ("Order") at 2 (Docket No. 326).

[5]    *See* INC's June 6, 1996 opposition to the Indena Defendants' 1996 motion at 9 (Docket No. 46) (hereinafter "INC's 1996 original opposition").

[6]    *Id.* at 10.

-4-

of the question of ownership of the '360 patent because the ownership of a U.S. patent must be decided under U.S. law.[7]

On March 21, 1997, this Court stayed this action pending the outcome of the French action.[8] While the present action was stayed, INC not only used its unfounded allegation of ownership to maintain this action but also to disrupt the marketplace and the defendants' businesses, by publicizing the suit, and threatening to sue, as well as suing others for patent infringement. In particular, INC filed an action for alleged infringement of the '360 patent in the District Court for the Northern District of California against four other parties, including Horphag and customers of Indena.[9] Once again, INC frivolously engaged judicial resources for an unfair business advantage in the marketplace.

## C.     The Indena Defendants' Renewed Motion to Dismiss

On March 25, 1997, the French trial court declared the assignment from SCIPA to INC void *ab initio*.[10] In other words, the French Court addressed the issue of ownership of the '360 patent and found that INC was *not* an owner. The French trial court also explicitly held -- as this Court clearly recognized by staying the case -- that the ownership of the '360 patent was to

---

[7]     *Id.* at 13.

[8]     Docket No. 198.

[9]     *See* Exhibit A of the Indena Defendants' July 10, 1997 renewed motion to dismiss. (Docket No. 217) (hereinafter "Indena Defendants' 1997 motion").

[10]     A copy of an English translation of the French trial court's decision is annexed as Exhibit E to the Indena Defendants' 1997 motion

-5-

be determined under the laws of France and *not* "U.S. Patent Law," as INC argued before the French Court and continued to argue before this Court.[11]

In view of the French trial court's decision, the Indena Defendants, renewed their motion to dismiss and requested the Court to accord comity to the French trial court's decision. INC did not withdraw its complaint and pursued its frivolous arguments. On October 31, 1997, this Court continued the stay and denied the motions to dismiss, without prejudice to renewing it following resolution of INC's appeal of the French trial court's decision.[12]

Subsequently, on May 28, 1998, the French appeals court affirmed the decision of the French trial court.[13] More specifically, the French appeals court held that (1) INC was not an owner because the purported assignment of an ownership interest in the '360 patent from SCIPA to INC was void *ab initio* and (2) Horphag was and is a co-owner of the '360 patent.[14]

---

[11]    *Id.* at pp. 16(a), 17(A)-18(B) and 25.

[12]    Docket No. 227.

[13]    A copy of an English translation of the French appeals court's decision is annexed as Exhibit C to Plaintiff's Motion for Reconsideration, for Leave to Join a Party as Plaintiff Pursuant to Fed. R. Civ. P. Rule 21, and to File an Amended Complaint Pursuant to Fed. R. Civ. P. Rule 15, and Supporting Memorandum (hereinafter "Reconsideration Motion") (Docket No. 328).

[14]    *Id.*

-6-

**D.    The Indena Defendants' Second Renewed Motion to Dismiss and Motion for Summary Judgment**

After the French appeals court decision, in August 1998, the Indena Defendants renewed their motion to dismiss. On February 11, 1999, the Court converted the Indena Defendants' motion to dismiss to a motion for summary judgment and required additional submissions.[15]

The Indena Defendants, based on the Federal Circuit decision in *Ethicon, Inc. v. U. S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998), emphasized that even if INC were an owner, (which it was not), it could not have brought this suit without Horphag's voluntary participation. As a matter of substantive patent law a co-owner of a patent cannot sue for infringement without the other co-owner voluntarily joining suit, absent an agreement to the contrary.[16] INC contended that it could bring suit without Horphag's voluntary participation merely because Horphag had agreed in the '85 Agreement to protect its co-owner's interest in the '360 patent.

Notwithstanding the fact that the French appeals court affirmed that INC was not an owner of the '360 patent, INC continued to pursue this lawsuit. In addition to reiterating its prior frivolous arguments, (*e.g.*, that ownership must be decided under U.S. law and that INC is a

---

[15]    Docket No. 285.

[16]    *See* the Indena Defendants' August 21, 1998 motion to dismiss at 8-9 (Docket No. 248) (hereinafter "Indena Defendants' 1998 motion"); the Indena Defendants' October 21, 1998 reply brief in support of their motion to dismiss (Docket No. 259) (hereinafter "Indena Defendants' 1998 reply"); and the Indena Defendants' March 26, 1999 motion for summary judgment at 2 (Docket No. 297) (hereinafter "Indena Defendants' 1999 motion").

NY2 - 1072406.2

bona fide purchaser for value), INC also asserted that it acquired an additional 50% interest in the '360 patent by virtue of a confirmatory assignment from the inventor, Dr. Masquelier.[17]

On March 21, 2000, the Court granted the defendants' summary judgment motions finding that INC was not a co-owner and that it had no standing to sue for patent infringement.[18] The Court found that the French appeals court presented a well-reasoned decision based on the proper law, French law, and thus the Court accorded comity to that decision. The Court also found that INC was not a bona fide purchaser for value because at the time INC allegedly obtained an ownership interest from SCIPA, INC knew that Horphag was a co-owner and there was an ownership dispute between SCIPA and Horphag. The Court also found that the 1996 assignment from Dr. Masquelier to INC did not confer any ownership interest in the '360 patent to INC since it was only a prospective assignment and Dr. Masquelier had no rights to assign. Finally, the Court held that even if INC had an ownership interest (which it did not), it could not sue without Horphag, a co-owner, voluntarily joining because there was no agreement to the contrary allowing INC to bring suit without Horphag.

E.    **INC's Motion for Reconsideration and Leave to Amend the Complaint**

Even after the Court dismissed Counts One and Two of INC's complaint, INC has continued to raise additional baseless arguments in seeking reconsideration of the Court's

---

[17]    *See* INC's September 30, 1998 opposition to the defendants' motions to dismiss at 22-23 (Docket No. 254) (hereinafter "INC's 1998 opposition"); INC's April 30, 1999 Opposition to the Defendants' Motions for Summary Judgment at 9-12 (Docket No. 318) (hereinafter "INC's 1999 opposition").

[18]    Docket No. 326.

NY2 - 1072406.2

decision and to amend its complaint.[19]  In its motion, INC argues that the Court erred by

overlooking SCIPA's willingness to join the suit and not considering "new evidence" that

SCIPA was merged into a company named CEP.[20]  INC also attempts to improperly cure its lack

of standing by attempting to join CEP, who is alleged owned by INC and who purportedly owns

an interest in the '360 patent.  By doing so, INC finally admits it is not a co-owner.[21]

In sum, for over four years, and three adverse court decisions, INC has continued

to pursue a patent infringement suit that it had no right to bring.  Why?  From the day on which it

commenced the lawsuit to date, INC has used this lawsuit in the marketplace as a marketing tool,

to intimidate defendants and their customers.  For the reasons set forth below, this litigation

conduct renders this case exceptional and warrants an award of attorney fees to the Indena

Defendants.


## III.    ARGUMENT

### A.    Legal Standards For An Exceptional Case And Award Of Attorney's Fees Under 35 U.S.C. § 285

A party can obtain attorney fees under Fed. R. Civ. P. 54(d) "when express

provision therefor is made . . . in a statute of the United States."  Title 35 of United States Code,

which INC invoked to bring this patent infringement action, expressly provides such a provision.

Specifically, 35 U.S.C. § 285 ("Section 285") provides that "[t]he court in exceptional cases may

award reasonable attorney fees to the prevailing party."  Exceptional cases include ones

---

[19]    *See* Reconsideration Motion.

[20]    *Id.* at 2 and 6.

[21]    *Id.*

involving vexatious or unjustified litigation, and frivolous lawsuits. *Eltech Systems Corp. v. PPG Industries, Inc.*, 903 F.2d 805, 808 (Fed. Cir. 1990) (finding assertion of infringement was meritless and warranted attorneys fees); *Standard Oil Co. v. American Cyanamid Company*, 774 F.2d 448, 455 (Fed. Cir. 1985) (remanded to determine if litigation was baseless so as to warrant awarding attorneys fees to prevailing party); *Encomp Inc. v. L-Com, Inc.*, 999 F. Supp. 264, 266 (D. Conn. 1998) (awarding attorneys fees for frivolous suit where plaintiff failed to assess laches and equitable estoppel defenses that would have precluded its claims).

The purpose for awarding attorney fees under Section 285 is to prevent improper suits and "abuse of the courts through manifestly unreasonable lawsuits based on uninvestigated allegations" *Eltech*, 903 F.2d at 811. Another purpose of Section 285 is to "compensate the prevailing party for its monetary outlays in . . . [defending a meritless] suit." *Automated Business Companies, Inc. v. NEC America, Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000) (citation omitted); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989) ("to require the . . . [prevailing party] to pay its attorneys to defend against . . . vexatious litigation strategy and misconduct would be a gross injustice").

As a result, courts have awarded attorney fees when a party brings or maintains a lawsuit for frivolous or oppressive reasons. *E.g., Eltech*, 903 F.2d at 810-11 (finding an exceptional case warranting attorneys fees where defendant made baseless arguments and misstatements of the record); *Hughes v. Novi American, Inc.*, 724 F.2d 122, 125 (Fed. Cir. 1984) (awarding attorney fees for plaintiff's continuance of suit in bad faith and misconduct during litigation).

A party must prove that a case is exceptional by clear and convincing evidence in light of the totality of the circumstances. *Encomp*, 999 F. Supp. at 266; *Eltech*, 908 F.2d at 811.

-10-

Before awarding attorney fees under Section 285, a court must determine: (1) whether the case is exceptional; and (2) if so, whether an award of attorney fees to the prevailing party is justified. *See Interspiro USA, Inc. v. Figgie Int'l Inc.*, 18 F.3d 927, 933 (Fed. Cir. 1994). The first part of the determination involves a question of fact while the second part is discretionary. *Interspiro,* 18 F.3d at 933-34.

To establish that a frivolous or vexatious litigation constitutes an exceptional case, conduct in excess of simple negligence, but short of fraud, is sufficient. *Encomp,* 999 F. Supp. at 266 (finding that suit was frivolous because the plaintiff should have known its claims were precluded). Where the plaintiff is "manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." *Eltech,* 908 F.2d at 811.

Accordingly, courts have awarded sanctions where a plaintiff knew or *should have known* that its claims were frivolous. *Eltech*, 908 F.2d at 810 (a party may "prove facts establishing [what an] . . . adversary should have known"). A "frivolous suit is one in which the patentee knew or, on reasonable investigation, should have known, was baseless." *Encomp,* 999 F. Supp. at 266 (citation omitted).

Upon a finding that the case is exceptional, a court has discretion in awarding reasonable attorney fees. *Automated Business,* 202 F.3d at 1355; *Encomp,* 999 F. Supp. at 266. An award under Section 285 may include not only attorney fees, but also paralegal fees, costs, and disbursements. *Yamanouchi Pharmacuetical Co. v. Danbury Pharmacal, Inc.,* 51 F. Supp.2d 302, 304-08 (S.D. N.Y 1999). Thus, reasonable expenses in litigating the entire action, including time spent in seeking attorney fees, are recoverable. *Id.* at 308.

NY2 - 1072406.2

The amount of the award may be determined under the "lodestar" approach, which is a two-part analysis. *Yamanouchi*, 51 F. Supp.2d at 304. First, a "lodestar" amount is obtained by multiplying a reasonable hourly billing rate by the number of reasonable hours billed. The prevailing rates in the community for similar work are used, and the skill and experience of the attorney are considered. *Id.* at 305. Reasonable number of hours billed include those that are "(1) thoroughly documented; (2) spent upon the issues which gave rise to the finding of exceptional circumstances; (3) non-duplicative; and (4) not spent in a manner inconsistent with a standard of reasonable efficiency and productivity." *Id.* at 304 (citation omitted). Second, the court may adjust the "lodestar" amount to account for factors not considered in the first step of the analysis. *Id.* at 309.

**B.    An Award of Attorney Fees Is Appropriate Under 35 U.S.C. § 285 Since INC Knew or Should Have Known that Its Allegations of Ownership in Its Complaint Were Frivolous and It Could Not Bring This Suit Without Horphag's Voluntarily Joining the Suit**

Even at the inception of this lawsuit, INC knew or should have known that it was not an owner of the '360 patent. Nevertheless, INC made frivolous allegations that it was at least an owner of an undivided one-half interest in the '360 patent.[22] Merely, "upon information and belief" INC averred that Horphag was no longer an owner of the '360 patent.[23] INC had no basis for asserting either of these allegations and knew or should have known they were meritless. Moreover, INC should have known that it could not bring the present suit without Horphag, a co-owner of the '360 patent, voluntarily joining the suit. Because INC nevertheless brought this

---

[22]    Complaint at ¶23.

[23]    *See Id.* at ¶24.

-12-

frivolous litigation, this case is exceptional under 35 U.S.C. § 285. *Encomp*, 999 F.Supp. at 269-70.

First, with respect to INC's purported ownership in the '360 patent, INC was aware that there was a dispute over ownership between SCIPA and Horphag before receiving the purported assignment from SCIPA in 1994.[24] Thus, as the Court found, INC knew or should have known that it was *not* a bona fide purchaser for value and therefore did not receive rights in the '360 patent from SCIPA.[25] Hence, INC knew it did not have any ownership rights in the '360 patent when it filed this suit and, therefore, this is an exceptional case.[26] *Encomp*, 999 F.Supp. at 266.

Moreover, INC's allegation in the complaint that it may be more than a half owner of the '360 patent, (*i.e.*, that it owns at least a half interest), is without basis, even assuming that INC obtained rights from SCIPA. Specifically, INC only argued that the '85 Contract expired and then all right, title, and interest in the patent reverted to Dr. Masquelier, who then attempted to assign any of his rights to INC.[27] Since this purported assignment did not occur until seven months *after* INC filed its complaint, INC knew when it filed the complaint that it had no ownership rights from Dr. Masquelier and that it was *not* more than a half owner of the '360 patent. Nevertheless, INC made the baseless allegation that it was.

---

[24]    *See* Order at 9.

[25]    *Id.*

[26]    At a minimum, INC knew that whether or not it had any ownership of the '360 patent was already in serious dispute and the French Court was the proper forum that was addressing this issue. Thus, INC should not have brought the suit until the dispute was resolved.

[27]    *See* INC's 1998 opposition at 22-23.

NY2 - 1072406.2

Similarly, INC knew or should have known that its allegation in the complaint that Horphag was no longer a co-owner was without basis and contrary to the evidence. All the evidence available to INC showed that Horphag was a co-owner. For instance, Horphag received a half interest in the '360 patent through Dr. Masquelier's assignment to Horphag and SCIPA pursuant to the '85 Contract. This contract did not provide that ownership would revert back to Dr. Masquelier, even upon expiration of the contract.[28]    Moreover, as the Court found, INC was aware that Horphag was a co-owner of the '360 patent.[29]  Therefore, INC knew that the allegation in its complaint that Horphag was not an owner was baseless.

Even if INC was at least a half-owner of the '360 patent (which as the Court found it was not), it should have known that it could not bring this litigation without the voluntary participation of Horphag, a co-owner of the '360 patent. Even at the time this suit was filed, the case law clearly required that all co-owners of a patent must voluntarily join the suit.[30] *See e.g., Willingham v. Lawton*, 555 F.2d 1340, 1344-45 (6th Cir. 1977). INC and its attorneys had an obligation to investigate the law concerning ownership and should have known that it could not bring suit without Horphag, who it knew was an owner of the '360 patent. *Encomp*, 999 F. Supp. at 269-70. However, INC nevertheless filed this meritless lawsuit without Horphag voluntarily joining suit when it should have known that it could not do so.

Therefore, INC knew or should have known that its allegations in its complaint concerning ownership were baseless and/or contrary to the evidence. By bringing this suit (1)

---

[28]    Order at 2 and 12.

[29]    *Id.* at 9.

[30]    *Id.* at 11.

-14-

based on these allegations concerning ownership, that it knew or should have known were

meritless and (2) without Horphag's voluntarily joining the suit, which it knew or should have

known was required, INC has engaged in frivolous litigation for which an award of attorneys

fees against it is warranted under Section 285. *Eltech*, 903 F.2d at 810-11.

  **C.**  **This Case Is Exceptional Under 35 U.S.C. § 285 Since**
     **INC Maintained This Suit By Raising Arguments**
     **Concerning Ownership That It Knew or Should**
     <u>**Have Known Were Frivolous**</u>

    Not only did INC bring this suit based on frivolous allegations, it continued to

litigate this action by perpetuating arguments concerning its purported ownership in the '360

patent that it knew or should have known were meritless. In particular, although the arguments

in the Indena Defendants' motions to dismiss and motion for summary judgment, as well as

those of the other defendants, should have apprised INC that its arguments relating to ownership

of the '360 patent were without merit, it nonetheless, disregarded them and continued to raise

such baseless arguments.

    Furthermore, the decisions of both the French trial court and French appeals court

clearly showed that INC had no ownership interest in the '360 patent. In view of these well-

reasoned decisions, INC should have been aware that its arguments are devoid of merit and

withdrew its case. *Eltech*, 903 F.2d at 811. Instead, INC argued that these decisions should be

disregarded and maintained this litigation.

    In fact, it continues to raise arguments that it knew or should have known were

frivolous in seeking reconsideration of this Court's decision dismissing Counts One and Two of

its complaint and moving to amend the complaint. Ironically, instead of demonstrating that it

-15-

should be granted the relief it seeks, INC has admitted that it is not an owner. Since INC has and

persists in maintaining this litigation by raising arguments that it knew or should have know

were frivolous, attorneys fees should be imposed upon it. *Automated Business*, 202 F.3d at

1354-55; *Encomp*, 999 F.Supp. at 269-70.

### 1.    INC Knew That Its Arguments in Opposing The Motions to Dismiss and Motion for Summary Judgment Were Baseless

In opposing the Indena Defendants' motions to dismiss and motion for summary

judgment, INC persisted in raising the arguments that it knew or should have known were

baseless. As the Indena Defendants' motions demonstrated and the Court has found, INC's

arguments concerning its ownership allegations were either unsupported by or contrary to the

evidence and/or the law.

For instance, INC argued that the French courts, which applied French law, could

not decide the ownership of the '360 patent and hence the French decisions should not be entitled

to comity because ownership of U.S. patents must be decided under "U.S. law, not French

law."[31]

As the Indena Defendants repeatedly pointed out[32] and the Court has recognized[33], it is axiomatic

that state contract law, such as that of France, governs the question of who owns a U.S. patent.

*See e.g., Afros S.P.A. v. Krauss-Maffei Corp.*, 671 F. Supp. 1402, 1442-44 (D. Del. 1987), *aff'd,*

---

[31]    INC's 1996 opposition at 13; INC's 1998 opposition at 13-18; INC's 1999 opposition at 4 and 5.

[32]    Indena Defendants' 1996 motion at 12; Indena Defendants' 1997 motion at 5; and Indena Defendants 1998 motion at 5 and 7.

[33]    Order at 5-6.

-16-

848 F.2d 1244 (Fed. Cir. 1988); *University Patents, Inc. v. Kligman,* 762 F. Supp. 1212, 1219 n.8 (E.D. Pa. 1991) ("State law rather than federal patent law, generally governs ownership rights in patentable inventions"). In view of this well-settled principle of law, INC knew or should have known that its arguments that the ownership of the '360 patent must be decided under "U.S. law" was contrary to law.

Likewise, INC should have known that its argument, in its oppositions, that it is an owner of the '360 patent because it was a bona fide purchaser for value of SCIPA's rights in the patent under 35 U.S.C. § 261 ("Section 261") was completely meritless.[34] As the Indena Defendants previously showed,[35] INC was not a bona fide purchaser under Section 261, because Section 261 requires that the purchaser take title *without notice* of any competing equitable claim. As the Court found, since "INC was aware of the SCIPA-Horphag dispute prior to receiving the purported assignment from SCIPA, under American law it cannot be a bona fide purchaser of the '360 patent."[36] Therefore, although INC knew it was not a bona fide purchaser, it continued to maintain this suit by making frivolous arguments that it was.

Similarly, INC should have known that its allegation that it is at least a 50% owner of the '360 patent because of the purported 1996 Masquelier assignment was baseless.[37] This agreement was only a prospective assignment that transferred no actual ownership interest to INC because, as INC should have known, Dr. Masquelier had nothing to transfer since he gave

---

[34]    *Id.* at 9.

[35]    Indena Defendants' 1998 reply at 5-8.

[36]    Order at 9.

[37]    *Id.* at 11-12.

-17-

away all his rights when he assigned the '360 patent to SCIPA and Horphag.[38] Moreover, in view of the fact that the '85 Contract, which INC was aware of, contained no provision that ownership would revert to Dr. Masquelier upon expiration of the '85 Contract,[39] INC should have known it received no rights from Dr. Masqulier.

Furthermore, INC knew or should have known that its arguments that (1) Horphag was no longer an owner of the '360 patent and (2) INC could sue without Horphag voluntarily joining the suit because there is an "agreement to the contrary" (*i.e.* the '85 Contract") are both meritless.[40] First, there was no evidence that Horphag's ownership interest terminated with the expiration of the '85 Contract. To the contrary, the '85 Contract contained no provision that such termination would occur upon its expiration. Likewise, there was also no evidence supporting INC's argument that it can unilaterally bring this suit without Horphag's voluntary participation. As the Court found, the '85 Contract contains nothing that requires Horphag to be involuntarily joined as a plaintiff in a suit for infringement.[41] In view of this complete absence of evidence, INC should have known that its arguments concerning the alleged termination of Horphag's rights in the '360 patent and INC's ability to bring suit without Horphag were frivolous.

Therefore, in opposing the motions to dismiss and the motion for summary judgment, INC raised allegations that it knew or should have known were baseless so that it

---

[38]    *Id.*

[39]    *See Id.* at 12.

[40]    *Id.* at 8-9.

[41]    *Id.* at 12.

NY2 - 1072406.2

could continue this litigation, which it had no right to bring in the first place. These facts render

this case exceptional under Section 285. *Encomp*, 999 F. Supp. at 269-70.

<strong>2.    This Case Is Exceptional Under 35 U.S.C. § 285 Since<br>INC Maintained This Suit Despite The French Courts' Decisions<br><u>Finding That It Was Not an Owner of the '360 Patent</u></strong>

Despite the French trial and appeals courts' findings that INC is not an owner of

the '360 patent, INC maintained this vexatious suit and affirmatively disregarded the fact that the

French courts were the appropriate tribunals deciding the question of ownership under the

appropriate law, French law. INC instead made frivolous arguments that the French courts'

decisions are not entitled to comity because they applied the wrong law and because Horphag

had concealed evidence from the French courts.[42] INC should have known that these arguments

were meritless and its disregard of the French courts decisions against INC was improper.

Specifically, INC should have known that ownership was decided under the

proper law in the appropriate tribunal because France is the jurisdiction with the most significant

relationship to the issues concerning ownership of the '360 patent.[43] In fact, the '85 Contract

even includes a Forum Selection Clause requiring that disputes concerning the contract

(including those relating to the ownership of the '360 patent) be brought in the French Court in

Bordeaux.[44] Furthermore, INC also knew or should have known that its allegation that Horphag

withheld evidence from the French courts, by failing to disclose Horphag's licenses to third

---

[42]    *Id.* at 5-9.

[43]    Order at 2.

[44]    *Id.*

-19-

parties under the '360 patent, is without basis. As the Court recognizes, the French courts were aware of Horphag's licenses to third parties.[45]

Against the overwhelming weight of this evidence, INC chose to disregard the French courts' decisions and prolonged this litigation by raising arguments that it knew or should have known were without merit. Clearly, the totality of the circumstances render this case exceptional. *Encomp*, 999 F. Supp. at 269-70.

3.  **INC Should Be Sanctioned for Continuing to Raise Arguments That It Knew or Should Have Known Are Frivolous in Its Motion for Reconsideration and for Leave to Amend the Complaint**

Even after this Court's finding that INC's arguments are without basis, INC continues to make arguments that it knows or should know are baseless in its motion for reconsideration and for leave to amend the complaint.[46] Specifically, INC provides two meritless arguments for why reconsideration is appropriate. First, INC alleges that the Court made an error of fact by overlooking SCIPA's willingness to join as a plaintiff.[47] INC should know that this argument is baseless because, as it concedes, the Court was made aware of SCIPA's purported willingness to join.[48] The fact that the Court did not act upon this information is not an error. Second, INC's argument that there is "new evidence" relating to SCIPA being purportedly

---

[45]     *Id.* at 10.

[46]     Reconsideration Motion at 6-10.

[47]     *Id.*

[48]     *Id*

NY2 - 1072406.2

merged into a company named CEP is clearly baseless. By INC's own admissions, this is not new evidence because the purported merger occurred in 1998 - approximately two years ago.[49]

Similarly, INC knows or should know that its arguments for amending the complaint, particularly to add CEP as a plaintiff, are meritless. In particular, the law is clear that a plaintiff that does not have standing to assert a claim, also does not have standing to amend the complaint by substituting or adding new plaintiffs and new causes of action.[50] The law is also well-settled that a plaintiff that lacks standing when the complaint is filed, cannot retroactively create such standing as INC seeks to do in moving to amend the complaint to add CEP as a plaintiff. *See e.g., Pressroom Unions-Printers League Incore Security Fund v. Continental Assurance, Co.*, 700 F.2d 889, 893 (2d Cir. 1983).

INC's argument that it has standing to bring this suit because it has an ownership interest in a company, CEP, that allegedly merged with a purported co-owner of the '360 patent is contrary to law.[51] The law is clear that merely holding or partially owning another company that owns a patent is insufficient to convey standing to bring a patent infringement suit. *Site Microsurgical Systems, Inc. v. Cooper Cos., Inc.* 797 F. Supp. 333, 338 (D. Del. 1992). In fact, by arguing that it has standing to sue because it owns a company that owns the '360 patent, INC has conceded that it is not an owner of this patent.

---

[49]     *Id.* at 2.

[50]     *See e.g., Lans v. Gateway 2000, Inc.*, 84 F. Supp.2d 112, 115-116 (D.D.C. 1999); *see also* Memorandum of Defendants Horphag, MW, Kaire, NOW, Indena U.S.A. and Enzymatic Therapy, Inc. in Opposition to Plaintiff's Motion for Reconsideration, for Leave to Join a Party as Plaintiff Pursuant to Fed. R. Civ. P. Rule 21, and to File an Amended Complaint Pursuant to Fed. R. Civ. P. Rule 15 (hereinafter "Reconsideration Opposition") at 7.

[51]     Reconsideration Motion at 4.

NY2 - 1072406.2

Moreover, INC should have known that it cannot satisfy the requirements under Fed. R. Civ. P. 15 to amend the complaint because such amendment is made in bad faith and is futile. Specifically, by waiting until the Court granted summary judgment against it to amend the complaint, INC has acted in bad faith.[52] Also, since INC cannot sue for patent infringement without Horphag voluntarily joining the suit, such amendment to the complaint is futile. Hence, INC should have known that its arguments for reconsideration and amending the complaint are frivolous because they are clearly contrary to well-settled principles of law and are unsupported by the evidence.

### D.    This Case Is Exceptional Under 35 U.S.C. § 285

As demonstrated above, INC engaged in frivolous and vexatious litigation by bringing and continuing this lawsuit, which it had no right to bring. *Encomp*, 999 F. Supp. at 269-70. In filing and maintaining this suit by taking positions it knew or should have known were baseless, INC has greatly prejudiced the Indena Defendants. *Beckman*, 892 F.2d 1553. INC's meritless suit, which has lasted more than four years, has forced the Indena Defendants to spend a great amount of time and effort in litigating this case.

As a direct result of INC's frivolous lawsuit, the Indena Defendants have been compelled to incur significant legal fees in defending this case. These attorneys fees include, *inter alia*, those incurred for activities undertaken in preparing and filing the Indena Defendants' (1) three motions to dismiss (including the opening and reply briefs); (2) motion for summary judgment (including the opening and reply brief); (3) opposition to INC's motion for

---

[52]    Reconsideration Opposition at 10.

-22-

reconsideration and (4) the present motion for attorneys fees . Such activities include, *inter alia*, conducting legal research as well as drafting, revising, reviewing and finalizing the briefs and other papers in support of these motions or the opposition. As required by Fed. R. Civ. P. 54(d)(2)(B), a fair estimate of the amounts of attorneys fees being sought is provided the Declaration of Thomas G. Rowan submitted herewith in support of this motion. Further details concerning the Indena Defendants' attorneys fees will be provided, if necessary, should this motion be granted.

Since courts have awarded attorneys fees in exceptional cases such as this one where a party has engaged in frivolous or vexatious patent litigation, the Indena Defendants should be compensated for all their efforts in defending INC's meritless suit. *See e.g., Encomp*, 999 F. Supp. at 266 (awarding attorneys fees incurred during a frivolous suit).

-23-

## IV.    CONCLUSION

For the foregoing reasons, the Indena Defendants' Motion for Attorneys Fees should be granted so that INC will be required to compensate the Indena Defendants for all their time and efforts spent in connection with litigating this frivolous and vexatious lawsuit.

Dated: April 19, 2000

Respectfully submitted,

_____
Brian M. Poissant (CT 16416)
Thomas G. Rowan (CT 16431)
Anthony M. Insogna (CT 16430)

PENNIE & EDMONDS LLP
1155 Avenue of the Americas
New York, New York  10036-2711
(212) 790-9090

*OF COUNSEL:*
Maureen Danehy Cox
Federal Bar No. 06275

CARMODY & TORRANCE LLP
50 Leavenworth Street
Waterbury, CT 06721
(203) 573-1200

Attorneys for Defendants
Indena U.S.A. and
Enzymatic Therapy, Inc.

NY2 - 1072406.2