UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INTERNATIONAL NUTRITION COMPANY | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 396CV00386 (DJS) |
| v. | ) ) | |
| HORPHAG RESEARCH LTD., et al. | ) | MAY 31, 2000 |

## DEFENDANT JARROW FORMULAS, INC.'S MOTION FOR ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 1927 AND 35 U.S.C. § 285

Pursuant to Fed. R. Civ. P. 54(d)(2) and Local Rule 9(f), Defendant Jarrow Formulas, Inc. ("Jarrow") respectfully moves for an order requiring plaintiff International Nutrition Company ("INC") and its counsel to pay Jarrow's attorneys' fees incurred in its defense of this action. As set forth in detail in the Memorandum of Law filed herewith, INC and its counsel have acted in bad faith in this action by initiating this meritless suit and maintaining this suit by making misstatements of fact, mischaracterizing court decisions and making unsupported arguments. Accordingly, this is an exceptional case under 35 U.S.C. § 285, and INC should be required to reimburse Jarrow for its attorneys' fees incurred in defending this action. Moreover, because INC's counsel has acted in bad faith, INC's counsel is jointly liable for Jarrow's attorneys' fees pursuant to 28 U.S.C. § 1927.

**ORAL ARGUMENT REQUESTED**

The amount of attorneys' fees and disbursements incurred by Jarrow to date in defending this action is set forth in the Declaration of Jarrow L. Rogovin attached as Exhibit G filed herewith. If the Court grants Jarrow's' Motion, Jarrow will promptly submit appropriate declarations setting forth in detail the amount and nature of its attorneys' fees and disbursements.

DEFENDANT JARROW FORMULAS, INC.,
BY ITS ATTORNEYS

By _____
Mark D. Giarratana(CT 10410)
CUMMINGS & LOCKWOOD
CityPlace I
Hartford, Connecticut 06103-3495
(860) 275-6700
      and
Philip Scott Polisky
450 West 24th Street
Suite 2F
New York, New York 10011     (212) 206-7283

.HrtLib1:331202.1 05/31/00

Evant Kent, Esq.
Russ, August & Kabit
12424 Wilshire Blvd.
Suite 1200
Los Angeles, CA  90025

Of Counsel for Chemco Industries, Inc.

Marvin Gittes, Esq.
Michael A. Adler, Esq.
Cobrin, Gittes & Samuel
750 Lexington Avenue
New York, NY  10022

Attorneys for Horphag Research, Kaire, M.W.
International & Now Foods, Inc.

Stuart D. Rosen, Esq.
Bingham, Dana & Gould, LLP
100 Pearl Street
Hartford, CT  06103-4507

Attorneys for Horphag Research, Kaire, M.W.
International & Now Foods, Inc.

Mr. Terry Paulson
President
Changes International of
  Ft. Walton Beach, Inc.
548 Mary Esther Cutoff
Unit 325
Fort Walton Beach, CA  32548

_____
Mark D. Giarratana (CT 10410)

.HrtLib1:327127.1 05/31/00

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INTERNATIONAL NUTRITION COMPANY | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 396CV00386 (DJS) |
| v. | ) ) | |
| HORPHAG RESEARCH LTD., et al. | ) | MAY 31, 2000 |

**DEFENDANT JARROW FORMULAS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR ATTORNEYS' FEES PURSUANT
TO 28 U.S.C. § 1927 AND 35 U.S.C. § 285**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

I.      STATEMENT OF FACTS ..................................................................................2

        A.      The 1985 Assignment Of The '360 Patent  To Horphag And
                SCIPA, And The 1985 Agreement Governing Their
                Ownership Of The Patent. .......................................................................3

        B.      The Purported 1994 Assignment To INC. .................................................4

        C.      The French And Connecticut Litigations Following The
                1994 Assignment. ...................................................................................5

II.     INC'S FALLBACK CLAIM TO OWNERSHIP OF THE '360
        PATENT. ...........................................................................................................9

III.    ARGUMENT ....................................................................................................14

        A.      INC's Counsel Should Be Ordered to Pay  Jarrow's
                Attorneys' Fees Pursuant to 28 U.S.C. § 1927. ....................................14

        B.      This Is An Exceptional Case Under 35 U.S.C. § 285, and
                INC Should Be Ordered to Pay Jarrow's Attorneys' Fees
                Incurred in Defending This Action. .......................................................22

# TABLE OF AUTHORITIES

ACLI Government Securities, Inc. v. Rhoades, 907 F. Supp. 66, 68 (S.D.N.Y. 1995) (citations omitted)................................................................................15

Alvarado-Morales v. Digital Equipment Corp., 843 F.2d 613, 618 (1st Cir. 1988)........16

Beghin-Say Int'l v. Rasmussen, 733 F.2d 1568 (Fed. Cir. 1984).................................20

Ethicon v. United States Surgical Corp., 135 F.3d 1456 (Fed. Cir. 1998) ...................17

Fifth Third Bank v. Boswell, 125 F.R.D. 460 (S.D. Ohio 1989)..................................20

Jim Arnold Corp. v. Hydrotech Systems, Inc., 109 F.3d 1567, 1571-72 (Fed. Cir. 1997), reh'g denied, 1997 U.S. App. LEXIS 15403 (Fed. Cir. 1997)......................17

Lewis v. Brown & Root, Inc., 711 F.2d 1287 (5th Cir. 1983)......................................15

Michod v. Walker Magnetics Group, Inc., 115 F.R.D. 345 (N.D. Ill. 1987) .................16

Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986), cert. denied, 480 U.S. 918 (1987)..............................................................................................................15

Steimel v. Incorporated Village of Rockville Centre, 965 F. Supp. 366, 374 (E.D.N.Y. 1997)...................................................................................................15

Strain v. Kaufman County District Attorney's Office, 23 F. Supp. 2d 698, 702 (N.D. Tex. 1998)..................................................................................................15

Williams v. Star Sand Co., 35 F. 369, 371 (W.D. Pa. 1888).......................................20

Willingham v. Lawton, 555 F.2d 1340, 1344-45 (6th Cir. 1997)................................17

Wilson v. Sandford, 51 U.S. (10 How.) 99, 13 L. Ed. 344 (1850) ..............................20

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INTERNATIONAL NUTRITION COMPANY | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. 396CV00386 (DJS) |
| v. | ) ) | |
| HORPHAG RESEARCH LTD., et al. | ) | MAY 31, 2000 |

### DEFENDANT JARROW FORMULAS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1927 AND 35 U.S.C. § 285

Defendant Jarrow Formulas, Inc. ("Jarrow") submits this memorandum of law in support of its motion for attorneys' fees pursuant to 28 U.S.C. § 1927 and 35 U.S.C. § 285. This action for patent infringement was filed on behalf of International Nutrition Company ("INC") in March 1996. At the time the action was filed, INC, through its counsel, made allegations in the Complaint that it knew or should have known were false. Moreover, even if these allegations in the Complaint were true (which they are not), they were insufficient to maintain a patent infringement claim as a matter of law. Finally, in the face of rulings by two French courts and this Court rejecting its meritless positions and claims, INC made additional false statements and continued to advance meritless arguments in this Court to prolong this litigation unreasonably and vexatiously. These actions were taken by and on behalf of INC for an improper purpose, namely, to allow INC to gain an unfair competitive advantage by using its meritless lawsuit as a

-1-

tool for unfair marketing and competition.  Therefore, Jarrow respectfully requests that the Court order INC and its counsel to pay its attorneys' fees incurred in defending this meritless action.


## I.    STATEMENT OF FACTS

Beginning with the Complaint in this case filed in March 1996, INC and its counsel have showered this Court with misstatements and mischaracterizations of fact, and frivolous, unsupported legal arguments to avoid the inevitable conclusion that INC's patent ownership claims have never had any merit.  The filing of this suit, and counsel's campaign to needlessly prolong this suit, were undertaken to allow INC to make false claims in its marketing regarding ownership of U.S. Patent No. 4,698,360 ("the '360 patent") and to threaten defendants' customers and potential customers with litigation.  When the smokescreen created by INC's counsel is cleared away, the facts and the law plainly demonstrate that this case was frivolous from the start, that counsel knew or reasonably should have known that INC's claims were frivolous, and that the suit was brought for an improper purpose.  Therefore, it is appropriate for this Court to order INC's counsel to pay Jarrow its attorneys' fees incurred in defending this action pursuant to 28 U.S.C. § 1927, and to order INC to pay Jarrow's attorneys fees pursuant to 35 U.S.C. § 285.

The material facts and history of this case are summarized below in order to show the tangled web woven by INC and its counsel to pursue this meritless case at all costs.  INC and its counsel repeatedly resorted to misstating facts, mischaracterizing Court decisions and

-2-

advancing unsupported legal claims, not because INC had a good faith claim to ownership or patent infringement, but to intimidate the marketplace into purchasing the purported patented products only from INC and its distributors.

### A.   The 1985 Assignment Of The '360 Patent To Horphag And SCIPA, And The 1985 Agreement Governing Their Ownership Of The Patent.

On April 1, 1985, Jack Masquelier, the alleged inventor of the '360 patent, executed an Assignment (the "1985 Assignment") whereby he unconditionally assigned the "entire right, title and interest in and to" the '360 patent, jointly to Societe Civile d'Investigations Pharmacologiques d'Aquitaine ("SCIPA") and Horphag Overseas Ltd., the predecessor of Defendant Horphag Research Ltd. ("Horphag"). SCIPA is a French company founded and controlled by Jack Masquelier for the purpose of holding an interest in the '360 patent. Horphag and SCIPA recorded the 1985 Assignment in the U.S. Patent & Trademark Office ("USPTO") upon filing the application of the patent, and thereafter were the joint owners of record of the patent.[1]

On April 26 and 29, 1985, several weeks after Masquelier executed the 1985 Assignment, Horphag and SCIPA entered into a joint development agreement ("the 1985 Agreement") that ratified the 1985 Assignment and governed their joint ownership of the '360

---

[1]   A copy of the 1985 Assignment is attached as Exhibit A to the "Declaration of Michael A. Adler" (Docket No. 232) filed in support of Defendant Horphag's Motion to Dismiss.

-3-

patent. Under the 1985 Agreement, the ownership rights of the parties were governed by French law, thereby restricting the ability of either owner to transfer its interest in the patent.[2]

Contrary to the baseless assertion repeated made by INC, the 1985 Agreement was not an "assignment, grant or conveyance" of the '360 patent, and did not change or otherwise affect the earlier 1985 Assignment from Masquelier to Horphag and SCIPA. Accordingly, it was not necessary to record the 1985 Agreement in the USPTO, and the Agreement was not recorded. Section 261 of the Patent Statutes only provides for recording an "assignment, grant or conveyance" of a patent, and does not contemplate or otherwise require recordation of an agreement between co-owners of a patent. It has been established law for over 100 years that collateral agreements like the 1985 Agreement governing the rights of co-owners of a patent are not within the purview of 35 U.S.C. § 261.[3] Despite this black letter law, INC and its counsel continue to frivolously assert that the non-recordation of the 1985 Agreement was "contrary to 35 U.S.C. § 261." See INC's Memorandum in Opposition to Motion for Attorneys Fees at 2.

**B.    The Purported 1994 Assignment To INC.**

Plaintiff INC is a Liechtenstein company, and is believed to be solely owned and controlled by Egbert Schwitters. Neither INC nor Schwitters were ever parties to the 1985

---

[2]  A copy of a certified English translation of the 1985 Agreement is attached as Exhibit B to the Declaration of Michael A. Adler (Docket No. 232) filed in support of Defendant Horphag's Motion to Dismiss.

[3]  See Williams v. Star Sand Co., 35 F. 369, 371 (W.D. Pa. 1888), citing Wilson v. Sandford, 51 U.S. (10 How.) 99, 13 L. Ed. 344 (1850). See also Beghin-Say Int'l v. Rasmussen, 733 F.2d 1568 (Fed. Cir. 1984).

Assignment or the 1985 Agreement, and therefore they do not have any rights in the '360 patent under either of those documents.

INC (Schwitters) and SCIPA (Masquelier), with the aid of INC's counsel, engineered a scheme with the ostensible intent of wresting ownership of the '360 patent from Horphag in 1994. Despite the terms of the 1985 Agreement, and Horphag's conspicuous use and commercialization of products covered by the '360 patent, SCIPA and its counsel caused to be executed on March 18, 1994, without notice to co-owner Horphag, an "Assignment" purporting to assign SCIPA's 50% interest in the '360 patent to INC ("the 1994 Assignment"). To give the transaction an air of legitimacy, INC's counsel recorded the 1994 Assignment in the USPTO which, in turn, caused the USPTO to erroneously list INC as an owner of record of the patent.[4] At the time of the 1994 Assignment, INC was aware that SCIPA and Horphag were already embroiled in disputes regarding ownership of the '360 Patent. Indeed, this Court and both French courts rejected as meritless INC's claim that it was a bona fide purchaser without notice.

**C.    The French And Connecticut Litigations Following The 1994 Assignment.**

In October 1995, after learning of the 1994 Assignment and INC's claim to ownership of the '360 patent, Horphag brought suit in Bordeaux, France, against INC, Schwitters, SCIPA and Masquelier, seeking to void the 1994 Assignment and reach a final resolution of the ownership dispute between those parties. Horphag rightfully brought suit in

---

[4]  The USPTO merely records assignments but does not review documents purporting to be assignments for legitimacy.

France because the 1985 Agreement governing Horphag's and SCIPA's joint ownership of the patent required such action. Horphag made clear from the start that the 1994 Assignment violated the 1985 Agreement and French law governing the rights of co-owners of intellectual property; that SCIPA itself had previously warned Horphag that "no transaction can be made by any single co-owner" of the patent; and that the 1994 Assignment was made in bad faith. (French appeals decision, p. 14, Exhibit I to the Declaration of Michael A. Adler, Docket No. 232).

Then, on March 6, 1996, nearly six months after Horphag had initiated suit in France and put INC on notice of the specious nature of its ownership claim, INC brought suit here in Connecticut claiming, among other things, that Horphag and eighteen of its customers had infringed the '360 patent. INC -- blatantly ignoring that it had yet to resolve the question of whether it had any ownership interest in the '360 patent -- nevertheless claimed to be the owner of "at least an undivided one-half interest in the '360 patent" and that, "on information and belief," Horphag was no longer a co-owner of the '360 patent. (Complaint ¶ 23, Docket No. 1).

INC's rush to file its Complaint for patent infringement without establishing ownership of the '360 patent was precipitated by INC's desire to use the lawsuit to gain an unfair competitive advantage. INC meanwhile pursued and publicized its patent ownership claims, and used its frivolous infringement claims to intimidate the relevant industry, with near reckless abandon. The suit was filed days before the largest industry trade show. INC publicized the suit heavily at the trade show and afterwards, and continued threatening to sue the defendants'

customers and generally disrupted the marketplace. Copies of exemplary publications disseminated by INC during the course of this lawsuit in order to promote its unfair and deceptive aims are attached as Exhibit A.[5]

In response to INC's meritless Complaint, numerous defendants filed early motions to dismiss under Fed. R. Civ. P. 12 (b)(6). Because INC had not established its requisite ownership interest in the '360 patent and, in any event, had not joined all owners as plaintiffs, INC did not have standing to bring this suit. Indeed, INC filed this suit in response to Horphag having commenced litigation in France (the forum specified in the 1985 Agreement for resolution of such disputes) to resolve the conflicting claims to ownership of the '360 patent. Relying on well established law, the eighteen defendants, including Horphag, argued that they should not be put to the expense and burden of defending a patent infringement suit when there was a pre-existing dispute over ownership of the patent being litigated. In the alternative, the defendants requested a stay of this case pending the outcome of the French litigation and a reexamination of the '360 patent in the USPTO.

INC vigorously opposed defendants' motions to dismiss or to stay. INC instead insisted that it should be permitted to drag the defendants through expensive litigation over a patent that it did not own. To further its ends, INC's counsel made false representations of fact and arguments contrary to well-established law. For example, INC's counsel falsely asserted

---

[5]  These publications are already of record in this case, and were attached as Exhibit K to the Declaration of Michael A. Adler (Docket No. 232) submitted in support of Horphag's Motion to Dismiss, and as Exhibit B to the Memorandum In Support of Defendant Jarrow Formulas' first Motion To Dismiss (Docket No. 205).

that INC was a bona fide purchaser for value without notice of the 1985 Agreement between Horphag and SCIPA, an assertion that the French court found could not be seriously made and that this Court found meritless. INC's counsel also contrived the argument that Horphag was no longer an owner of the '360 patent because the 1985 Agreement had expired, an assertion that cannot be supported by any language in the 1985 Agreement or the 1985 Assignment of the patent to Horphag and SCIPA. In addition, contrary to well established law, INC argued that the French action regarding ownership of the '360 patent could not be dispositive because the ownership of a U.S. patent purportedly should be decided under federal law, as opposed to the applicable state (or foreign) law.

On March 21, 1997, this Court stayed this suit pending the outcome of the French litigation. In concert with its tactic to pursue its meritless infringement claim at any cost (and without first resolving the dispute over ownership of the patent), INC continued to publicize to the trade that it was the owner of the '360 patent, that it was the only authorized source of products allegedly covered by the patent, and that it would sue any competitor believed to infringe. (See Exhibit A).

On March 25, 1997 the French trial court declared the 1994 Assignment to INC void, *ab initio*, because the 1985 Agreement between Horphag and SCIPA required the parties to litigate in France under French law, and French law prevented SCIPA from assigning its interest in the '360 patent to INC without offering Horphag a right of first refusal. (French appeals decision, Exhibit I to the Declaration of Michael A. Adler, Docket No. 232).

## II.    INC'S FALLBACK CLAIM TO OWNERSHIP OF THE '360 PATENT.

By the time the French trial court issued its decision confirming that INC had no ownership interest in the '360 patent, INC and its counsel had already concocted INC's fallback position. In an argument obviously engineered by INC's counsel to prolong this litigation, INC and Masquelier claimed that Horphag somehow lost its ownership interest in the '360 patent (apparently by virtue of the 1985 Agreement, which INC, other than for the purpose of this, otherwise refused to recognize), and that Horphag's interest had somehow reverted to Masquelier. On October 10, 1996, Masquelier executed a second purported assignment ("the 1996 Assignment"), also obviously engineered by INC's counsel, stating that he believed that Horphag's interest in the '360 patent had reverted to him, and that he, in turn, assigned his interest in the '360 patent to INC (which, at the time of this assignment, was nil). In an attempt to legitimize the transaction and give INC the appearance of ownership, INC's counsel recorded the 1996 Assignment in the USPTO.

Following the decision of the French trial court, the defendants renewed their motion to dismiss and requested the Court to accord comity to the French trial court's decision. INC did not withdraw its Complaint in the face of the French trial court's decision on ownership of the '360 patent. Instead, INC pressed its frivolous claims, now adding the meritless contention concocted by INC's counsel that Masquelier's 1996 Assignment, in which Masquelier purported to assign ownership rights he no longer had, conferred the requisite ownership interest on INC. On October 31, 1998, this Court continued the stay and denied the motions to dismiss

without prejudice to renew following resolution of INC's appeal of the French trial court's decision.

On May 28, 1998, the French Appellate Court affirmed the decision of the French trial court.[6] The French Appellate Court specifically held that (1) INC was not an owner of the '360 patent because the purported 1994 Assignment from SCIPA was void *ab initio*, and (2) Horphag was and is a co-owner of the '360 patent.

Notwithstanding the French Appellate Court's decision affirming that INC was not an owner of the '360 patent, INC and its counsel continued to pursue this lawsuit and press their frivolous claims. Jarrow attempted on several occasions to urge INC and its counsel to reasonably assess and withdraw their meritless claims and, in turn, mitigate the continuing damage to Jarrow and the other defendants. In January 1998, Jarrow provided INC and its counsel with a detailed written analysis and supporting evidence establishing the frivolous nature of INC's trademark infringement claim, and urged INC and its counsel to withdraw the baseless claim. (A copy of Jarrow's January 8, 1998 letter to INC's counsel with supporting evidence is attached as Exhibit B). INC's counsel airily dismissed Jarrow's request, and refused to address, much less refute, the substantive points raised by Jarrow establishing the frivolous nature of INC's claim. (A copy of the January 9, 1998 reply letter from INC's counsel is attached as

---

[6]  A copy of an English translation of the French Appellate Court's decision is annexed as Exhibit C to Plaintiff's Motion for Reconsideration, for Leave to Join a Party as Plaintiff Pursuant to Fed. R. Civ. P. Rule 21, and to file an Amended Complaint Pursuant to Fed. R. Civ. P. Rule 15, and Supporting Memorandum (hereinafter "Reconsideration Motion") (Docket No. 328).

Exhibit C). Rather, INC and its counsel waited more than a year -- and after losing on the patent infringement claim -- to dismiss with prejudice the bogus trademark infringement claim. Similarly, in March 1999, prior to preparing and filing the motions for summary judgment, and in the wake of the decision of the French Appellate Court, Jarrow urged INC and its counsel to rationally assess and drop their meritless patent infringement. (A copy of Jarrow's March 15, 1999 letter is attached as Exhibit D). Again, INC and its counsel offhandedly dismissed Jarrow's urgings. INC's counsel responded: "your views and those of your client are best kept to yourself." (A copy of the March 17, 1999 reply letter from INC's counsel is attached as Exhibit E). INC's and its counsel's callous indifference to the effects of having brought and maintained for over four years frivolous claims against virtually an entire industry should not go unpunished. In addition, the needless expense and damage caused to Jarrow and other defendants by such conduct should not go unremedied.

As a result of the needless persistence of INC and its counsel, in August 1998, the defendants renewed their motions to dismiss. In response, INC and its counsel resorted to misstating the French court's decision in numerous respects. Exemplary misstatements by INC and its counsel are set forth in Exhibit F attached. On February 11, 1999, this Court converted the motions to dismiss to motions for summary judgment.

On March 21, 2000, this Court granted defendants' summary judgment motions based on clear documentary evidence and well established law.[7]  This Court found that: (1) INC was not a co-owner of the '360 patent and that INC had no standing to sue for infringement of that patent; (2) INC was not a bona fide purchaser for value because at the time INC allegedly obtained an ownership interest from SCIPA, INC knew that Horphag was a co-owner and there was an ownership dispute between SCIPA and Horphag; (3) the 1996 Assignment from Masquelier to INC did not confer any ownership interest in the '360 patent to INC since it was only a prospective assignment and Masquelier had no rights to assign; and (4) even if INC had an ownership interest (which it did not), it could not bring this suit without Horphag voluntarily joining as a plaintiff.

With its array of frivolous arguments soundly rejected by two French courts and this Court, INC still refused to cease harassing the defendants and instead filed yet another frivolous motion.  On March 31, 2000, INC filed a motion asking this Court to reconsider its decision.  In that motion, INC argued that the Court overlooked SCIPA's willingness to join the suit, an irrelevant contention since Horphag has made clear that it will not join as a plaintiff to sue its own customers.  INC also argued that the Court did not consider purported "new evidence" that SCIPA was merged into a company named CEP that is allegedly owned by INC.  First, this contention is irrelevant in view of  Horphag's indisputable co-ownership of the patent.

---

[7]  No discovery was necessary for the Court to dismiss INC's meritless claims.  The documentary evidence submitted to the Court in support of defendants' summary judgment motions had been readily available to INC for many months.

Second, by INC's own admission, the evidence of CEP was not "new", but rather was in INC's possession at the time INC originally responded to Defendants' motions for summary judgment. Finally, INC futilely attempted to resuscitate its case by seeking to amend its Complaint to join CEP, which purportedly is now a co-owner with Horphag, as a plaintiff. By doing so, INC finally conceded, albeit indirectly, that it is not a co-owner of the '360 patent, and therefore that INC never had standing under the Patent Statutes to bring its patent infringement claim.

In April 2000, while INC's motion for reconsideration was pending , several defendants moved for an award of attorneys' fees pursuant to 35 U.S.C. § 285. In opposing those motions, INC advances the absurd proposition that, despite invoking the jurisdiction of this Court under the Patent Statutes, the attorney fee provision of the Patent Statutes is inapplicable because "only non-patent issues were litigated in this case." See INC's Memorandum at 5 (Docket No. 355). In sum, INC asserts that attorneys' fees cannot be awarded under the Patent Statutes when a party that plainly does not have standing under the Patent Statutes nevertheless files a bogus patent infringement claim. INC's pettifoggery would turn the statute on its head, as the most egregious misuse of the Courts would not be sanctionable under a statute specifically intended to prevent such rampant abuse.

In any event, consistent with INC's disingenuous practice in this case of misstating the record and the law, INC has filed a Notice of Appeal to the United States Court of Appeals for the Federal Circuit. Thus, INC claims out of one side of its mouth that no patent issues have been litigated, while out of the other side of its mouth, INC invokes the jurisdiction

of the Federal Circuit -- which is limited to consideration of patent issues -- for purposes of appeal.

This litigation is the latest incarnation of nearly a decade of on-going suits between Horphag, on the one hand, and SCIPA (Masquelier) and INC (Schwitters), on the other hand. The battle between these parties has raged relentlessly over the underlying product trademark (Pycnogenol), marketing territories, attribution for development of the product, and since 1994, ownership of the '360 patent. Plaintiff has since the outset of this case had no more than a frivolous basis for alleging ownership of the '360 patent, and therefore has had no good faith basis for suing Jarrow Formulas and the other defendants for infringement of the '360 patent. As a result, Jarrow has incurred enormous expense, and has had to divert precious corporate resources -- including expenditure of hundreds of hours by its President/CEO -- to address INC's meritless claims. ( See Declaration of Jarrow L. Rogovin, Exhibit G attached). By this motion, Jarrow seeks to recover that portion of its expenses directed to payment of attorneys' fees, a total to date of $257,175.62 (See Rogovin Declaration, Exhibit G).

III. **ARGUMENT**

   A.   **INC's Counsel Should Be Ordered to Pay**
        **Jarrow's Attorneys' Fees Pursuant to 28 U.S.C. § 1927.**

The authority to require INC's counsel to pay Jarrow's attorneys' fees and expenses is set forth in 28 U.S.C. § 1927, which provides.

-14-

> Any attorney or other person admitted to conduct cases in any
> court of the United States or any territory thereof who so multiplies
> the proceedings in any case unreasonably and vexatiously may be
> required by the court to satisfy personally the excess costs,
> expenses, and attorneys' fees reasonably incurred because of such
> conduct.

This Court has the power to impose sanctions under § 1927 where there is clear evidence

that the attorneys' actions in pursuing a claim or suit were undertaken in bad faith. Oliveri v.

Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986), cert. denied, 480 U.S. 918 (1987). Bad faith

may be inferred "when the attorney's actions are so completely without merit as to require the

conclusion that they must have been undertaken for some improper purpose such as delay." See

also Steimel v. Incorporated Village of Rockville Centre, 965 F. Supp. 366, 374 (E.D.N.Y.

1997). Id. "Bad faith conduct may include pursuing 'frivolous contentions,' 'frivolous

motions,' or 'intentionally dilatory' conduct." ACLI Government Securities. Inc. v. Rhoades,

907 F. Supp. 66, 68 (S.D.N.Y. 1995) (citations omitted).

While § 1927 applies to unreasonable and vexatious multiplication of proceedings,

sanctions in the form of attorneys' fees may be awarded for the entire course of the proceedings

where, as in this case, the claim should never have been brought. Lewis v. Brown & Root, Inc.,

711 F.2d 1287 (5th Cir. 1983), on reconsideration, 722 F.2d 209 (1984), cert. denied, 467 U.S.

1231 (1984); Strain v. Kaufman County District Attorney's Office, 23 F. Supp. 2d 698, 702

(N.D. Tex. 1998) ("[A] district court may invoke this provision [§ 1927] to award fees and costs

for an entire course of proceedings if the case never should have been brought in the first

place."). Attorneys' fees are a proper sanction under § 1927 where counsel fails to adequately

-15-

investigate a claim prior to filing suit, or fails to withdraw the claim promptly when the facts

become known. <u>Alvarado-Morales v. Digital Equipment Corp.</u>, 843 F.2d 613, 618 (1st Cir.

1988).

INC's counsel should be sanctioned under § 1927 because, from the filing of this action

to the present time, counsel has misstated facts and made arguments that he knew or should have

known were meritless. The original Complaint in this case should never have been filed. "It is

hornbook law that only a patent owner or an exclusive licensee may sue for patent infringement."

<u>Michod v. Walker Magnetics Group, Inc.</u>, 115 F.R.D. 345 (N.D. Ill. 1987) (plaintiff ordered to

pay defendant's attorneys' fees pursuant to Fed. R. Civ. P. 11 because plaintiff was not an owner

or exclusive licensee under patent). INC did not and could not allege in its Complaint that it was

the owner of all of the rights in the '360 patent, or that all of the owners of the '360 patent had

been joined as plaintiffs. INC knew that it could not make such an allegation because it knew

that SCIPA and Horphag were already embroiled in litigation over ownership of the '360 patent

in France.[8] Despite this fundamental deficiency in its patent infringement claim, INC

nevertheless filed the Complaint, alleging that it was the owner of "at least 50%" of the '360

patent. Even if true, which it was not, this allegation was insufficient for INC to bring its claim

under existing law. It is axiomatic that the plaintiff in a patent infringement suit must hold full

---

[8]  In fact, INC was on notice as early as October 28, 1994, when it appeared at a hearing in the Eastern District of
New York. At that hearing, SCIPA agreed that it would not affirmatively assert a cross-claim for certain
proceeds related to the '360 patent. INC was represented at that hearing by Cooper & Dunham, the firm
representing INC in this action.

title in the patent under suit, or that all co-owners must voluntarily join the suit as plaintiffs. See Ethicon v. United States Surgical Corp., 135 F.3d 1456 (Fed. Cir. 1998), cert. denied, 525 U.S. 923 (1998); Willingham v. Lawton, 555 F.2d 1340, 1344-45 (6th Cir. 1997).

Moreover, the law is clear that if there is a dispute over ownership of a patent, the ownership dispute must be resolved before the suit is brought. Jim Arnold Corp. v. Hydrotech Systems, Inc., 109 F.3d 1567, 1571-72 (Fed. Cir. 1997), reh'g denied, 1997 U.S. App. LEXIS 15403 (Fed. Cir. 1997), cert. denied, sub nom., Baker Hughes, Inc. v. Jim Arnold Corp., 522 U.S. 933 (1997).

The reasons for this rule are amply demonstrated by this case. In its meritless Complaint, INC, which owns no part of the '360 patent, filed suit claiming that Horphag, a co-owner of the patent, infringed the very patent that it owned. INC also named 19 other companies as defendants, claiming wrongly that they infringed the '360 patent by purchasing product from Horphag. If INC had merely done what the law and its contract required it to do -- resolve the dispute over ownership of the patent in France before bringing suit -- all of the defendants and this Court would have avoided years of needless litigation, attorneys' fees and expense.

Indeed, INC did not seek to litigate its incorrect claim that ownership of the '360 patent should be decided under U.S. law. If INC had stated its claim in such a clear manner, it would have resulted in a prompt adverse ruling. Instead, INC's counsel created a legal ruse to disguise the matter as a patent infringement case, blithely making numerous assertions that INC and its counsel knew, or should have known, were false. Viewed in its proper light, INC and its counsel

attacked an entire industry using its patent infringement claim as a gimmick in the face of an insurmountable jurisdictional problem.

INC did not want to wait, however, because the real purpose of this litigation was to attempt to gain an unfair marketing advantage. INC's Complaint was filed just days before the industry's largest trade show. At that show and since, INC has falsely claimed that it is the sole owner of the '360 patent and that the defendants were infringing the '360 patent. INC also threatened to sue anybody that purchased allegedly infringing products from the defendants.[9] These actions demonstrate that INC filed its frivolous suit for the improper purpose of gaining an unfair competitive advantage in the market.

After filing its frivolous Complaint, INC kept the suit alive by misstating facts and making frivolous, unsupported legal arguments. For example, INC asserted that it was a bona fide purchaser for value without notice of the 1985 Agreement between Horphag and SCIPA, a contention that both French courts found could not be seriously asserted. This Court similarly found that this claim was without merit since "INC was aware of the SCIPA-Horphag dispute prior to receiving the purported assignment from SCIPA, under American law it cannot be a bona fide purchaser of the '360 patent." Order at 9. Thus, while INC plainly knew it could not

---

[9] INC made good on this threat by commencing a second suit, approximately one year later, in California against Horphag and several additional Horphag customers. In that case, unlike this one, INC conceded that it did not possess the proper ownership in the '360 patent to have standing to bring the suit, so it created yet another fiction to bring the suit by naming Horphag as an "involuntary defendant."

be a bona fide purchaser under French or American law, it continued to make the meritless claim that it was.

INC also made the meritless claim that Horphag could not be an owner of the '360 patent because the 1985 Agreement had expired. There is no evidence to support a claim that Horphag's ownership interest has ever terminated. The 1985 Assignment unequivocally transferred ownership of a 50% interest in the '360 patent to Horphag, and nothing in the terms of the 1985 Assignment would divest Horphag of ownership. Moreover, nothing in the 1985 Agreement supports a claim that Horphag was divested of its ownership interest. Simply put, this specious claim, concocted by INC's counsel, was pure bombast designed solely to prolong this litigation needlessly.

Similarly, INC's even more irrational argument regarding the 1996 Assignment from Masquelier was never more than an illusory spin concocted by INC's counsel in order to force defendants to continue defending their meritless claims. There was no reasonable basis for INC's claim that Horphag's ownership rights had "reverted" to Masquelier, not in law or in fact. Even a cursory examination of the 1985 Assignment and the 1985 Agreement demonstrates that there is nothing in those documents that could possibly divest Horphag of its ownership interest. Rather, knowing that INC's claim as originally filed was doomed, INC and its counsel futilely attempted to create a claim out of a whole cloth woven from one legal fiction after another.

Additionally, contrary to clearly established law, INC claimed that French courts could not address ownership of the '360 patent because ownership of a U.S. patent had to be decided

-19-

under U.S. (federal) law.  Interpretation of collateral agreements relating to ownership of a patent has long been held to be a matter to be decided under applicable state law (in this case the law of France as agreed upon in the 1985 Agreement.  See Williams v. Star Sand Co., 35 F. 369, 371 (W.D. Pa. 1888), citing Wilson v. Sandford, 51 U.S. (10 How.) 99, 13 L. Ed. 344 (1850).  See also Beghin-Say Int'l v. Rasmussen, 733 F.2d 1568 (Fed. Cir. 1984).  INC has never presented any cogent argument or precedent that would support its meritless argument.

Even after the French appeals court affirmed that INC was not a co-owner of the '360 patent, and that Horphag was and is a co-owner of the patent, INC refused to withdraw its claims.  Instead, INC and its counsel forced the defendants to renew their motions to dismiss and then to recast their motions as motions for summary judgment.  INC responded by raising the same frivolous arguments and misstating the findings of the French courts.  See Exhibit A attached.  This conduct further supports Jarrow's request for attorneys' fees in this case.  See Fifth Third Bank v. Boswell, 125 F.R.D. 460 (S.D. Ohio 1989) (sanctions awarded under § 1927 where counsel for plaintiff failed to withdraw meritless claim and forced defendant to file summary judgment motion).

Nothing if not persistent, in the face of this Court's Order granting summary judgment on INC's patent infringement claims, INC and its counsel attempted to fabricate new arguments in their motion for reconsideration (Docket No. 320).  INC claimed that there was "new evidence" regarding the merger of SCIPA into CEP, a company purportedly owned by INC, blithely ignoring Horphag's ownership interest that is fatal to any infringement claim against Jarrow or

the other defendants. INC also made a thirteenth hour request to amend its Complaint -- a Complaint it never had standing to bring -- to add CEP as a plaintiff and make a new claim against Horphag. Thus, even at this late date, INC continued to waste this Court's time and impose unnecessary expense on the defendants by making frivolous arguments.

Disingenuous to the end, even after entry of judgment by this Court on May 1, 2000, INC and its counsel continues to misstate facts and to make specious, contradictory legal arguments. In its May 10, 2000 memorandum opposing certain defendants' motions for attorneys' fees pursuant to 35 U.S.C. § 285, INC relies entirely on its own discredited version of the "facts" in order to argue that it brought this action in good faith. Completely ignoring this Court's findings and the indisputable evidence, INC and its counsel continue to argue that INC was a bona fide purchaser from SCIPA, and that SCIPA had the right to assign its interest in the '360 patent under the 1985 Agreement.

Moreover, INC and its counsel make the incredible argument that § 285 does not apply because only "non-patent issues" were litigated. Having invoked this Court's jurisdiction under the Patent Statutes and pursued claims of patent infringement for over four years, INC and its counsel now claim that the Patent Statute allowing sanctions does not apply because INC never owned the patent it sought to enforce. INC's counsel makes this conclusory argument without pointing to any specific evidence. This argument is frivolous on it face. Indeed, on May 8, 2000, two days before arguing to this Court that this case did not involve litigation of patent issues, INC filed a Notice of Appeal to the Federal Circuit. As counsel for INC surely knows,

-21-

the Federal Circuit's jurisdiction is limited to cases involving at least one issue arising under the Patent Statutes. Thus, consistent with counsel's bad faith tactics pursued throughout this litigation, counsel for INC seeks to avoid the consequences of its actions by making further frivolous arguments.

From the beginning of this case, INC and its counsel have made frivolous arguments plainly contradicted by well established law. Whenever their arguments were rejected, INC and its counsel prolonged this litigation by changing factual assertions, mischaracterizing court decisions, and concocting new, though equally frivolous, legal arguments. This conduct, particularly when viewed in conjunction with INC's marketing activity, leads inexorably to the conclusion that this action has been prosecuted in bad faith. Therefore, Jarrow requests that this Court sanction counsel for INC under 28 U.S.C. § 1927 by ordering counsel to reimburse Jarrow for its attorneys' fees expended in defending this action.

**B.    This Is An Exceptional Case Under 35 U.S.C. § 285, and INC Should Be Ordered to Pay Jarrow's Attorneys' Fees Incurred in Defending This Action.**

Jarrow also seeks an order that INC be required to reimburse Jarrow for its attorneys fees incurred in defending itself against INC's meritless claims under 35 U.S.C. § 285. In order to avoid burdening the Court with repetitious briefs and arguments on this issue, Jarrow hereby incorporates the arguments in the following briefs previously filed:

-22-

(1)  Memorandum of Defendants Horphag, M.W., Kaire and NOW for Attorneys' Fees Pursuant to 35 U.S.C. § 285 dated April 19, 2000;

(2)  Defendants' Indena U.S.A. and Enzymatic Therapy, Inc., Memorandum in Support of Their Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285, Fed. R. Civ. P. 54(d), and Civil Local Rule 9(f) dated April 19, 2000;

(3)  Reply of Defendants Horphag, M.W., Kaire and NOW to Plaintiff's Opposition to the Defendants' Motions for Attorneys' Fees dated May 22, 2000; and

(4)  Defendants' Indena U.S.A. and Enzymatic Therapy, Inc.'s Reply to Opposition to Defendants' Motion for Attorneys' Fees dated May 24, 2000.

### CONCLUSION

For the reasons stated above, defendant Jarrow Formulas respectfully requests that the

Court order INC and its counsel to pay Jarrow Formulas' attorneys' fees incurred in defending this case.

DEFENDANT JARROW FORMULAS, INC.,
BY ITS ATTORNEYS

By _____

Mark D. Giarratana(CT 10410)
Eric E. Grondahl (CT 08988)
CUMMINGS & LOCKWOOD
CityPlace I
Hartford, Connecticut 06103-3495
(860) 275-6700
     and
Philip Scott Polisky
450 West 24th Street
Suite 2F
New York, New York 10011    (212) 206-7283

.HrtLib1:331216.1 05/31/00

-24-