BRIEF OF APPELLANT

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Appeal No. 00-1408

INTERNATIONAL NUTRITION COMPANY,

Plaintiff-Appellant,

v.

HORPHAG RESEARCH, LTD., MW INTERNATIONAL, INC., KAIRE INTERNATIONAL, INC., NOW FOODS, TRACO LABS, INC., CHEMCO INDUSTRIES, INC., GREATER CONTINENT, INC., TWIN LABORATORIES, INC., USANA, INC., FREE LIFE INTERNATIONAL LTD., ENZYMATIC THERAPY, INC., INDENA U.S.A., NUTRACEUTICAL CORPORATION, ARKOPHARMA, INC., JARROW FORMULAS, INC., and NEW VISION INTERNATIONAL, INC.

Defendants-Appellees.

Appeal from the United States District Court for the District of Connecticut in Civil No. 96-CV-386, Judge Dominic J. Squatrito

Norman H. Zivin
Donna A. Tobin
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 278-0400

Attorneys for Appellant
INTERNATIONAL NUTRITION COMPANY

Dated: August 14, 2000

250  D 00 5887

## CERTIFICATE OF INTEREST

Pursuant to Rule 47.4 of the Rules of the Court of Appeals for the Federal Circuit, counsel for International Nutrition Company certify the following:

1.    The full names of every party represented by me is: International Nutrition Company.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  none.

3.    The parent companies, subsidiaries (except wholly-owned subsidiaries), and affiliates that have issued shares to the public, of the party represented by me are:  none.

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

> Norman H. Zivin
> Donna A. Tobin
> COOPER & DUNHAM LLP
> 1185 Avenue of the Americas
> New York, New York  10036
>
> Jacob P. Bryniczka
> Jonathan A. Flatow
> WAKE, SEE, DIMES & BYRNICZKA
> 27 Imperial Avenue
> Westport, Connecticut 06880

i

D 00 5888

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF RELATED CASES  . . . . . . . . . . . . . . . . vii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION  . . . . 1

APPELLANT'S STATEMENT OF ISSUES ON APPEAL . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . 2

    1.   NATURE OF THE CASE. . . . . . . . . . . . . . . . . . 2

    2.   THE PROCEEDINGS AND DISPOSITION BELOW. . . . . . . . 2

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . 4

    A.   Professor Masquelier's Research and Development
       of Proanthocyanidins  . . . . . . . . . . . . . . . 4

    B.   INC . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.   Horphag . . . . . . . . . . . . . . . . . . . . . . 6

    D.   Horphag's Prior Agreement to Join in Infringement
       Actions. . . . . . . . . . . . . . . . . . . . . . . 7

    E.   The French Proceedings. . . . . . . . . . . . . . . 8

    F.   The Concealed Patent License  . . . . . . . . . . . 9

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.   STANDARD OF REVIEW ON APPEAL. . . . . . . . . . . . 11

    II.  THE COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT IN
       DEFENDANTS' FAVOR AND DISMISSING THE COMPLAINT, AS
       GENUINE ISSUES OF MATERIAL FACT EXIST. . . . . . . 13

    III. THE COURT ERRED IN GIVING COMITY TO A FRENCH COURT
       DECISION APPLYING FRENCH STATUTORY LAW TO OVERRIDE A DULY
       RECORDED ASSIGNMENT OF A U.S. PATENT  . . . . . . 14

        A.   The Situation Here Weighs Against the Mechanical
           Application of Comity. . . . . . . . . . . . . 14

        B.   U.S. Patent Ownership is a Matter of U.S. Patent
           Law.  . . . . . . . . . . . . . . . . . . . . . 16

D 00 5889

    C.    INC Acquired at Least an Additional 50% Interest in the `360 Patent by a Confirmatory Assignment from Dr. Masquelier. . . . . . . . . . . . . . . 17

    D.    INC is a Bona Fide Purchaser for Value of a 50% Interest in the `360 Patent Under U.S. Patent Law. . . . . . . . . . . . . . . . . . . . . . . 18

IV.    THE COURT ERRED IN DISMISSING THE COMPLAINT, AND SHOULD HAVE PERMITTED INC LEAVE TO AMEND THE COMPLAINT, AS GENUINE ISSUES OF MATERIAL FACT REMAIN. . . . . . 20

    A.    Leave To Amend Should Be Freely Given When Justice So Requires. . . . . . . . . . . . . . . . . 20

        1.    CEP Does Not Require The Consent Of Horphag To Maintain This Patent Infringement Lawsuit In Its Own Name. . . . . . . . . . . . . . . 21

        2.    Horphag, by its Actions, Consented to the Institution of The Lawsuit Below by the Patent Owners. . . . . . . . . . . . . . . . . 22

    B.    Defendants Would Not Suffer Prejudice if the Complaint is Amended. . . . . . . . . . . . . 24

    C.    There Had Been No Undue Delay. . . . . . . . 24

    D.    The Proposed Amendment Was Not Futile. . . . . 25

V.    THE COURT ERRED IN DENYING INC'S REQUEST FOR DISCOVERY PURSUANT TO FED. R. CIV. P. RULE 56(F). . . . . . . 26

VI.    THE COURT ERRED IN SEALING THE LICENSE AGREEMENT BETWEEN HORPHAG AND A LICENSEE OF THE PATENT-IN-SUIT. . . . 28

CONCLUSION AND STATEMENT OF RELIEF SOUGHT . . . . . . . . . . 30

D 00 5890

TABLE OF AUTHORITIES

CASES:

Afros S.P.A. v. Krauss-Maffei Corp., 671 F. Supp. 1402
(D. Del. 1987), aff'd. w/o opinion, 848 F.2d 1244
(Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . 16

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106
S. Ct. 2505 (1986) . . . . . . . . . . . . . . . . . . . . 12

Avenal v. United States, 100 F.3d 933
(Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . 11, 12

Berry Sterling Corp. v. Pescor Plastics, 122 F.3d 1452  U.S.P.Q. 2d
1953 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . 11

Celotex Corp. v. Catrett,
477 U.S. 317 (1986),
cert. denied, 484 U.S. 1066 (1988) . . . . . . . . . . . . 26

Cooper v. Ford Motor Co., 748 F.2d 677
(Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 12

Ethicon, Inc. v. United States Surgical Corp., 135 F. 3d 1456 (Fed.
Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 22

Evans Cooling Sys. v. GMC,
125 F.3d 1448, 1450, 44 U.S.P.Q.2d 1037
(Fed. Cir. 1997), cert. denied 522 U.S. 1115 (1998) . . . . . 11

Exxon Corp. v. National Foodline Corp., 579 F.2d 1244 198 U.S.P.Q.
407 (C.C.P.A. 1978) . . . . . . . . . . . . . . . . . . . . 12

FilmTec Corp. v. Allied-Signal, Inc., 939 F.2d 1558
(Fed. Cir. 1991), reh'g denied, 1991
U.S. App. Lexis 33969 (Fed. Cir. 1993) . . . . . . . . . . 19

Foman v. Davis, 371 U.S. 178
83 S. Ct. 227, 9 L.Ed.2d 222 (1962) . . . . . . . . . . . . 20

Gayler v. Wilder, 51 U.S. 477, 13 L.Ed. 504 (1850) . . . . . 16

Heidelberg Harris Inc. v. Loebach, 145 F. 3d 1454
(Fed. Cir. 1998), reh'g denied, 1998
U.S. App. Lexis 17719 (Fed. Cir. 1998) . . . . . . . . . . 19

Hendrie v. Sayles, 98 U.S. 546 (1879) . . . . . . . . . . . 18

Meyerson v. Wickes Cos. (In re Boesky Sec. Lit.), 882 F. Supp. 1371
(S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . 25

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 106

D 00 5891

S. Ct. 1348, 89 L.Ed. 2d 538 (1986) . . . . . . . . . . . . . 12

Medtronic, Inc. v. Daig Corp., 789 F. 2d 903 (Fed. Cir. 1986),
cert. denied, 479 U.S. 931 (1986) . . . . . . . . . . . . . . 15

Molinaro v. Fannon/Courier Corp., 745 F.2d 651, 223 U.S.P.Q. 706
(Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . 12

National Life Insurance Co. v. Solomon, 529 F.2d 59
(2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . 27

Opryland USA, Inc. v. The Great American Music Show, Inc., 970 F.2d
847 23 U.S.P.Q.2d 1471
(Fed. Cir. 1992), reh'g denied, 1992
U.S. App. Lexis 20510 (Fed. Cir. 1992) . . . . . . . . . 26, 27

Overseas Inns S.A.P.A. v. United States of America, 911 F.2d 1146
(5th Cir. 1990), reh'g denied 1990
U.S. App. Lexis 19628 (5th Cir. 1990) . . . . . . . . . . . . 14

Ramirez & Feraud Chili Co. v. Las Palmas Food Co., 146 F. Supp. 594
(S. D. Cal. 1956), aff'd, 245 F. 2d 874 (9th Cir. 1957), cert.
denied, 355 U.S. 927 (1958) . . . . . . . . . . . . . . . . . 15

Schering Corp. v. Zeneca, Inc., 104 F. 3d 341 (Fed. Cir. 1997) 22

Tonka Corp. v. Rose Art Industries, Inc., 836 F. Supp. 200, 29
U.S.P.Q.2d 1801 (D.N.J. 1993) . . . . . . . . . . . . . . . . 13

University Patents, Inc. v. Kligman, 762 F. Supp. 1212 (E.D. Pa.
1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wells v. Harris, 185 F.R.D. 128 (D. Conn. 1999) . . . . . . . 21

STATUTES AND OTHER AUTHORITIES:

28 U.S.C. §1295 . . . . . . . . . . . . . . . . . . . . . . . . 1

35 U.S.C. § 261 . . . . . . . . . . . . . . . . . . . . . 16, 19

28 U.S.C. §1331,

28 U.S.C. §1338. . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. Rule 56(f) . . . . . . . . . . . . . . . . . . 1

Rule 15(a) Fed. R. Civ. P. . . . . . . . . . . . . . . . . 20, 21

Rule 26 F.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . 28

Rule 56(f) F.R.Civ.P. . . . . . . . . . . . . . . . . . . 26, 27

D 00 5892

STATEMENT OF RELATED CASES

1.    No other appeal from the Order of the United States District Court for the District of Connecticut was previously before this or any other appellate court under the same or similar title. An appeal from an Order of the United States District Court for the Eastern District of New York was before this Court in Horphag Research Ltd. et al. v. International Nutrition Company and Egbert Schwitters, No. 96-1520. This Court vacated and remanded that Order on April 22, 1997. The panel issuing the decision was Circuit Judges Rich, Plager and Schall. This decision is reported at 116 F.3d 1450, 42 U.S.P.Q.2d 1567. An appeal from an Order of the Trademark Trial and Appeal Board was before this Court in International Nutrition Company v. Horphag Research Ltd., No. 99-1385. This Court vacated and remanded that Order on July 27, 2000. The panel issuing the decision was Circuit Judges Lourie, Clevenger and Bryson. The decision is not yet reported. Both of those cases involved trademark matters.

2.    International Nutrition Company and Centre D' Experimentation Pycnogenol v. Interhealth Nutritional, Inc. et al, C97-0377 MJJ, a case for infringement of the patent at issue here, presently is pending in the United States District Court for the Northern District of California. That case may be directly affected by this Court's decision in the pending appeal.

D 00 5893

## STATEMENT OF SUBJECT MATTER
### AND APPELLATE JURISDICTION

The District Court had jurisdiction over the original parties and subject matter of this action under the Patent Laws of the United States, 35 U.S.C. §1 et. seq., pursuant to 28 U.S.C. §1331 and 1338.  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. §1295 (a)(1).

## APPELLANT'S STATEMENT OF ISSUES ON APPEAL

Did the District Court err in granting Summary Judgment in favor of defendants?

Did the District Court err in giving comity to a French Court decision applying French statutory law to void a duly recorded assignment of a U.S. patent?

If French statutory law is applicable, did the District Court err in dismissing the Complaint for lack of standing?

If U.S. Patent law is applicable, did the District Court err in dismissing the Complaint for lack of standing?

Did the District Court err in finding that INC was not a bona fide purchaser for value of an interest in the patent in suit?

Did the District Court err in failing to find that INC is the owner of all rights in the patent in suit?

Did the District Court err in sealing the Horphag-Indena license agreement?

Did the District Court err in refusing INC leave to amend the Complaint to add CEP as a party?

Did the District Court err in effectively denying INC's motion for discovery pursuant to Fed. R. Civ. P. Rule 56(f)?

1

D 00 5894

## STATEMENT OF THE CASE

1.   NATURE OF THE CASE.

International Nutrition Company ("INC") appeals from an order of the United States District Court for the District of Connecticut granting partial Summary Judgment to defendants, based on a decision of a French Court of Appeals, and dismissing INC's Complaint for Patent Infringement.

2.   THE PROCEEDINGS AND DISPOSITION BELOW.

On March 6, 1996, INC filed a complaint in the United States District Court in Connecticut against Horphag and several other defendants. INC alleged infringement by all defendants of United States Patent No. 4,698,360, entitled "Plant Extract with a Proanthocyanadins Content as Therapeutic Agent Having Radical Scavenger Effect and Use Thereof ("the `360 patent") (A 37-41).[1]

On March 21, 2000, the District Court granted Defendants' Motion for Partial Summary Judgment, determining that INC owned no rights in the `360 patent, on the ground that a 1994 assignment of rights in the patent from the original assignee, named Societe Civile D'Investigations Pharmacologiques D'Acquitane ("S.C.I.P.A.") to INC was invalid under French law (A 2-14). The Court's determination was based on its ruling that pursuant to a 1985 agreement between defendant Horphag and S.C.I.P.A., French law controls all issues of ownership of the `360 patent (A 7). The Court extended comity to a decision of the Bordeaux Court of

---

[1] INC also brought trademark infringement and unfair competition claims against several of the defendants which were later withdrawn.

2

D 00 5895

Appeals which had determined that the assignment from S.C.I.P.A. to INC was invalid.  The Court specifically found that the French decision was not in conflict with American Patent Law because it "merely determined who owned an American patent pursuant to a French contract" (A 9).

The Court proceeded to dismiss INC's claim that it was a bona fide purchaser for value on the ground that "after reviewing all of the facts, the French Court found that when S.C.I.P.A. attempted to assign its rights to INC in 1994, INC was aware both that the `360 patent was co-owned by Horphag and that S.C.I.P.A. and Horphag were in serious disagreement over the ownership of the `360 patent" (A 10).

The Court dismissed INC's assertion that the French Appeals Court decision should not be granted comity because of Horphag's unclean hands in failing to disclose that it had licensed the `360 patent to others in violation of the very French statute it sought to enforce against INC.  The Court specifically found that "the French Court was aware of Horphag's dealings" (A 11).[2]

The Court also found that an assignment from the inventor of the `360 patent, Dr. Masquelier to INC, which conveyed to INC any rights he may have retained, or which may have reverted to him, in the `360 patent, transferred nothing to INC.  Finally, the Court concluded that even if Horphag was a 50% joint owner of the patent-in-suit, it could not be joined as an involuntary plaintiff.

---

[1]It was INC who learned about the licenses in a news article and called them to the attention of the French Court.

3

D 00 5896

INC moved for reconsideration of the Court's ruling granting partial Summary Judgment to defendants and to amend its Complaint to add as a plaintiff Centre D' Experimentation Pycnogenol ("CEP"), the party which logically held the rights in the patent with Horphag given the Court's ruling. S.C.I.P.A. had merged into CEP, in which INC holds a controlling interest. Indeed, in April of 1997, S.C.I.P.A. provided INC with an authorization of attorney to join it in patent infringement suits and gave INC's counsel a power of attorney to represent it in those suits (A 331). The Court, without support, found that French law applied to "ownership" issues relating to the patent in suit, but that U.S. law applied to "other issues" including an owner's ability to sue for patent infringement (A 16). The Court also concluded that INC's effort to join CEP was "futile" (A 16).

## STATEMENT OF FACTS

A.    Professor Masquelier's Research and Development of Proanthocyanidins

Since the end of the Second World War, Professor Jack Masquelier, now Professor Emeritus of Pharmacology at the University of Bordeaux II, Bordeaux, France, has conducted extensive research in the field of pharmaceuticals. Professor Masquelier discovered that proanthocyanidins, which can be extracted from various plant substances, such as pine bark and grape seed, can be used as pharmaceuticals and nutritional supplements. Professor Masquelier has been issued several United States patents in connection with his work, including the `360 patent (A 37).

4

D 00 5897

In 1969, Professor Masquelier formed CEP to market pharmaceuticals. In July 1971, CEP appointed as broker or agent for the sale of its pharmaceuticals a company known as Interhorphag, controlled by Mr. Charles Haimoff. Interhorphag is the predecessor of Appellee Horphag. The `360 patent has been re-examined and the patentability of all claims was confirmed by the PTO. Certificate of Re-examination No. B1 4,698,360 issued on November 4, 1997 (A 42-45).

In April 1985, Professor Masquelier filed the patent application which led to the `360 patent in suit. The application is directed to nutritional supplements containing proanthocyanidins, primarily from grape seed or pine bark extract, used as anti-oxidants, which scavenge damaging free oxygen radicals from humans. At the time of filing, the application was assigned jointly to S.C.I.P.A. and Horphag, although at the time there was no agreement to do so (A 1016).

B.   INC

INC was organized in Liechtenstein in 1981 and is an operating company with a substantial worldwide business in the sale of nutritional supplements. INC has its principal place of business in Vaduz, Liechtenstein. (A 198).

INC obtained its rights in the '360 patent through an arms-length transaction with S.C.I.P.A., which had been formed by Dr. Masquelier, the inventor of the '360 patent, and his colleagues to hold their patent rights in the '360 patent. A copy of the S.C.I.P.A-INC assignment, dated March 18, 1994, was duly and

D 00 5898

promptly recorded in the U.S. Patent and Trademark Office ("PTO") (A 208-210).

At the time INC purchased its rights in the '360 patent, a 1985 agreement between S.C.I.P.A. and Horphag ("the '85 agreement") existed, unbeknownst to INC (A 215-218). That agreement provided that S.C.I.P.A. and Horphag would share the fruits of the agreement but did not mention the '360 patent, the application for which had already been filed.  In any event, the '85 Agreement was not recorded in the PTO, and INC was not a party to it.  The 1985 S.C.I.P.A.-Horphag agreement contains no provision preventing S.C.I.P.A. from assigning its share of ownership of any patents, including the '360 patent, to INC or anyone else (A 215-218).  The agreement, by its terms, was to last for five years, and could be renewed for an additional five years (A 217A).  Thus the '85 agreement ended no later that April 1995.

S.C.I.P.A. subsequently merged into CEP and INC owns a controlling interest in CEP (A 392).

In October 1996, Dr. Masquelier gave a Confirmatory Assignment to INC, transferring any reversionary rights that he might have in the '360 patent upon the expiration of Horphag's rights in 1995 (A 219-222).  The Confirmatory Assignment also was duly and promptly recorded in the PTO (A 219-222).

C.    Horphag

Horphag is a company organized in Guernsey in the Channel Islands.  Horphag originally obtained rights in the '360 patent when Dr. Masquelier, the inventor, assigned a 50% interest in the

6

D 00 5899

patent application to Horphag. The term agreement expired, by its own terms, on April 29, 1995, ten years from its making (A 217A).

D.   Horphag's Prior Agreement to Join in Infringement Actions.

The 1985 agreement between Horphag and S.C.I.P.A. contemplated that the parties would cooperate with each other in exploiting the invention of the `360 patent (A 217).  Horphag itself confirmed to its own patent attorney, Robert P. Simpson, Esq., in a letter dated October 16, 1990 that "a clear understanding has been signed in April 1985 between the two co-owners of the [`360] patent to the effect that both parties will inform and take steps to protect the other of any infringement" of the patent (A 328).

Horphag itself has sought to enforce the `360 patent against infringers without seeking cooperation from S.C.I.P.A. or INC.  In April 1994, Mr. Simpson sent a letter to Momentum Marketing, Inc. ("Momentum") demanding that Momentum cease inter alia infringement of the `360 patent  (A 330).  Horphag did not seek agreement from S.C.I.P.A. or INC to do so.   In response to issues raised by Momentum's counsel, Mr. Simpson stated:

> "With respect to our claim of patent infringement you are
> correct that U.S. Patent No. 4,698,360 has been assigned
> to co-assignees.  As you are aware, under U.S. patent
> law, absent an agreement to the contrary, either assignee
> may license a patent without permission of the other
> assignee.   Also, either assignee may bring an
> infringement action without the permission of the other
> assignee" (A 330).

Horphag also has maintained a patent infringement lawsuit against at least one accused infringer without seeking S.C.I.P.A.'s or INC's permission or joinder.   In August 1993, Horphag sued

7

D 00 5900

Consac Industries, Inc. (Country Life) in the Eastern District of New York for infringement of the `360 patent (A 300-304). Horphag never sought to join S.C.I.P.A. or INC as parties to the case, although Consac made a convoluted effort to do so. Horphag eventually settled with Consac and a Judgment was entered on July 26, 1995, holding the `360 patent to be valid and infringed (A 211-213).

Horphag proceeded to collect damages from Consac. Neither INC nor S.C.I.P.A. was a party to the settlement and neither shared in the proceeds (A 211-213).

E.    The French Proceedings.

In October 1995, Horphag filed a law suit in Bordeaux, France, against INC as well as Dr. Masquelier, S.C.I.P.A., and several individuals. In the French Complaint, Horphag contended inter alia that it was entitled to preempt entire ownership of the `360 patent because S.C.I.P.A. improperly assigned its share of the `360 patent to INC, thereby breaching the 1985 agreement between S.C.I.P.A. and Horphag.

In a decision dated March 25, 1997, a lower French Court used a French statute, Article L. 613-29 of the Intellectual Property Code (A 463-464), to annul the assignment by S.C.I.P.A. of the `360 patent to INC. The Court ignored both U.S. Patent Law and the language of the contract regarding assignments. However, the Court ruled that Horphag was not entitled to preempt S.C.I.P.A.'s share of the patent. The French Court decision was rendered without trial. There was no examination or testimony of witnesses at any

8

D 00 5901

point, nor was any discovery conducted or obtained by any party (A 348, para. 4).

On appeal, the Court of Appeals of Bordeaux made several findings and rulings, including the following:

-it held that the `85 agreement related to the `360 patent in suit (A 267);

-it held that Horphag's rights under the `85 agreement relating to the `360 patent expired in 1995 (A 282);

-it held that Horphag had no right of preemption to S.C.I.P.A.'s share of the patent (A 293);

-it dismissed Horphag's petition for annulment of Dr. Masquelier's Confirmatory Assignment to INC (A 293);

-it held that the validity of Dr. Masquelier's Confirmatory Assignment to INC of his reversionary rights is a determination to be made by an American Court (A 281);

-it held that Horphag had no authority to grant licenses under the `360 patent (A 292); and

-it reversed the lower court's award of damages to Horphag against S.C.I.P.A. and dismissed Horphag's petition for damages against INC (A 292).

The French Court of Appeals decision issued on May 28, 1998.

The French statute upon which Horphag relied not only precludes assignments of French patents without the consent of a co-owner, but it also precludes licensing without the co-owner's consent (A 348, para. 7).

F.    The Concealed Patent License

During the course of the French Court proceedings, INC sought to show that, if the French statute were applicable to the S.C.I.P.A.-INC assignment, it would similarly be applicable to any license granted by Horphag.    Thus, no party should have been

9

D 00 5902

entitled to any relief. However, since there was no discovery or testimony in France (A 348), and since Horphag's licensees were not parties, the Court could not find that Horphag had improperly licensed the patent or void any such licenses, although INC called to the Court's attention news articles regarding the licenses. The French Court, however, expressly gave S.C.I.P.A. the right to attack any such license in the future (See, A 293).

Defendant USANA subsequently filed one suspected license agreement in the Court below, attaching it to a Declaration of a John B. McCandless (A 332 - 346), and marked it Confidential Subject to a Stipulated Protective Order. However, there was no such Stipulated Protective Order. USANA and Horphag then filed "emergency motions" to place the license agreement under seal. The motions were granted by the Court (A 360-361).

## SUMMARY OF ARGUMENT

In granting partial Summary Judgment, the Court below relied on the decision of a French Court, which affirmed a trial court decision where no witnesses were presented, no discovery was had and no trial was held. The Court erroneously extended comity to the decision of the French Court, which applied French law to ownership issues relating to a U.S. Patent. Thus, the lower Court erred in holding that INC has no rights in the `360 patent. There are numerous disputed facts concerning whether INC is a bona fide purchaser for value of an interest in the `360 patent which were not resolved by the French Court. Nonetheless, the lower Court made its own improper factual inferences from the French decision.

10

D 00 5903

The Court also improperly refused INC the opportunity to take discovery, so INC did not have all the evidence it needed to respond to defendants' Summary Judgment motions.  Further, the Court improperly denied INC's motion to join CEP as a plaintiff so that all possible claimants would be before the Court.  Finally, the District Court erred in sealing a Horphag-Indena license agreement, which would have shown Horphag's perfidy before the French Court and the U.S. Courts.

ARGUMENT

I.    STANDARD OF REVIEW ON APPEAL.

In reviewing a grant of summary judgment, this Court is "not bound to give deference to the District Court's grant of summary judgment, but must make an independent determination that the standards for summary judgment have been met." Berry Sterling Corp. v. Pescor Plastics, 122 F.3d 1452, 1454, 43 U.S.P.Q.2d 1953, 1955 (Fed. Cir. 1997)(reversing grant of summary judgment and remanding).  This Court reviews de novo the lower Court's grant of summary judgment.  Evans Cooling Sys. v. GMC, 125 F.3d 1448, 1450, 44 U.S.P.Q.2d 1037, 1039 (Fed. Cir. 1997), cert. denied, 522 U.S. 1115 (1998).  Such review is "without special deference" to the lower Court's decision. Avenal v. United States, 100 F.3d 933, 936 (Fed. Cir. 1996).

Summary judgment is appropriate where "there exists no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." Avenal, supra at 936.  Thus, this Court must determine for itself whether there existed any genuine

11

issue of material fact below. Molinaro v. Fannon/Courier Corp., 745 F.2d 651, 653-654, 223 U.S.P.Q. 706, 707 (Fed. Cir. 1984).

The burden of establishing the non-existence of genuine issues of material fact is upon the moving party, in this case, the defendants. Cooper v. Ford Motor Co., 748 F.2d 677, 679 (Fed. Cir. 1984). Moreover, all evidence submitted "must be viewed in a light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986), cert. denied, 475 U.S. 574 (1986).

Summary judgment is to be granted cautiously, in order to preserve substantive rights.   Exxon Corp. v. National Foodline Corp., 579 F.2d 1244, 1246, 198 U.S.P.Q. 407, 408 (C.C.P.A. 1978). In order to defeat a motion for summary judgment, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986).

The lower Court's wholesale adoption of the French Court of Appeals decision and reliance on its own unsupported factual inferences from that decision directed it away from considering that genuine issues of material fact were, and are, disputed by the parties.

The Court's grant of partial summary judgment in defendants' favor must be reversed in view of the existence of disputed issues of genuine, material facts.

12

D 00 5905

II. THE COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT IN DEFENDANTS' FAVOR AND DISMISSING THE COMPLAINT, AS GENUINE ISSUES OF MATERIAL FACT EXIST.

There simply is no support for the lower Court's determination that the French Court of Appeals decision is controlling on issues of U.S. Patent law. At the very least, genuine issues of material fact exist as to:

- the intent of the parties to the 1985 agreement between Horphag and S.C.I.P.A.;

- the effect of the 1995 expiration of the agreement on Horphag's rights in the `360 patent;

- Horphag's breaches of the agreement, including granting licenses under the patent;

- INC's bona fide and good faith behavior in acquiring S.C.I.P.A.'s interest in the `360 patent;

- the effect of the Confirmatory Assignment from Professor Masquelier to INC; and

- Horphag's bad faith in obtaining a French judgment by concealing its licensing of Indena and perhaps other defendants.

These disputes raised sufficient genuine issues of material fact which rendered summary judgment inappropriate. "Summary Judgment may not be granted if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." Tonka Corp. v. Rose Art Indus., Inc., 836 F. Supp. 200, 208, 29 U.S.P.Q.2d 1801, 1807 (D.N.J. 1993).

The lower Court's grant of Summary Judgment was improper, as genuine issue of material fact exist to be determined at trial.

13

D 00 5906

III. THE COURT ERRED IN GIVING COMITY TO A FRENCH COURT DECISION APPLYING FRENCH STATUTORY LAW TO OVERRIDE A DULY RECORDED ASSIGNMENT OF A U.S. PATENT

A. The Situation Here Weighs Against the Mechanical Application of Comity.

Comity is not to be applied blindly or mechanically. It can be withheld when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect. Overseas Inns S.A.P.A. v. United States, 911 F.2d 1146, 1148 (5th Cir. 1990), reh'g denied 1990 U.S. App. Lexis 19628 (5th Cir. 1990).

The facts here weigh against the extension of comity to the French decisions. The French Courts ignored U.S. law and applied a French statute, Article L. 613-29, which purports to prohibit assignment by one co-owner of a French patent without approval of the other owner. This French law directly conflicts with U.S. law which permits such assignments under 35 U.S.C. §262. The French decision also undermines the statutory bona fide purchaser for value (the "BFP rule") codified in 35 U.S.C. §262. Comity should not be granted where, as here, it would result in prejudice to American interests or policies and where French law is not comparable to U.S. law. Id.

With regard to the validity of an assignment of a jointly owned U.S. patent, there is no reason for a U.S. Court to defer to the jurisdiction of a foreign forum, particularly where the foreign forum applied its own law, and did not consider either U.S. law or the agreement before it. There is no possible affront to the French courts in this scenario, nor does comity come into play. Ramirez & Feraud Chili Co. v. Las Palmas Food Co., 146 F. Supp.

D 00 5907

594, 602 (S. D. Cal. 1956), aff'd, 245 F. 2d 874 (9ᵗʰ Cir. 1957), cert. denied, 355 U.S. 927 (1958).

This Court has made it clear that the judgments of foreign courts on issues of patent law are not entitled to comity. That is because U.S. Patent Law and foreign patent laws simply are not the same. Medtronic Inc., v. Daig Corp., 789 F. 2d 903, 907 (Fed. Cir. 1986), cert. denied, 479 U.S. 931 (1986) (issue of obviousness).

Moreover, the French Court of Appeals decision was tainted by Horphag's withholding of evidence. The French statute relied upon by the French courts precludes a co-owner from licensing the patent without first offering an assignment to the other co-owner (A 392 para. 7). INC asserted below that the French judgment should not be given comity because of Horphag's unclean hands in failing to disclose that it had licensed the `360 patent without any such consent. The lower Court dismissed INC's argument, holding that "the French court was aware of the existence" of Horphag's licenses. What the lower Court failed to consider was that the French Court was only aware of the licenses because INC had called them to the lower Court's attention. To the extent there is any doubt about what was before the French court, and to the extent Horphag denies licensing the `360 patent in contravention of the French law upon which it relies, summary judgment must be denied.

Further, the French Court did not resolve the genuine issues of material fact that existed below, including particularly:

- Horphag's rights, if any in the `360 patent after expiration of the 1985 agreement in 1995;

- the effect of Dr. Masquelier's Confirmatory Assignment to

D 00 5908

INC when Horphag's rights expired; and

— the effect of Horphag's illegal licensing of the `360 patent.

Genuine issues of material fact existed which precluded summary judgment. INC should have been permitted to have its day in court.

B.    U.S. Patent Ownership is a Matter of U.S. Patent Law.

The ownership of a U.S. patent can be determined only pursuant to U.S. law. Gayler v. Wilder, 51 U.S. 477, 13 L.Ed. 504 (1850). University Patents, Inc. v. Kligman, 762 F. Supp. 1212 (E.D. Pa. 1991). As more recently stated in University Patents, supra, "[S]ince a patent is a creature of federal statutory law, it may be transferred only in the manner provided by such law." Id. at 1219. Further, in Afros S.P.A. v. Krauss-Maffei Corp., 671 F. Supp. 1402, 1446 (D. Del. 1987), aff'd. w/o opinion, 848 F.2d 1244 (Fed. Cir. 1988), the Court held that U.S. law determines whether a party was a valid assignee of a patent at the time it filed a claim for infringement.

Indeed, U.S. law specifically provides that patents shall be assignable, 35 U.S.C. § 261, and joint owners of a patent may sell, or assign, the patent without the consent of, and without accounting to, any other joint owner in the absence of an agreement to the contrary, 35 U.S.C. § 262. There was no "agreement to the contrary" which was recorded in the PTO in March 1994 when INC purchased its rights from S.C.I.P.A. Certainly, the 1985 agreement between S.C.I.P.A. and Horphag says nothing to the contrary, and INC had no knowledge of that agreement in any event. The

16

D 00 5909

Connecticut Court simply was wrong in stating that a French contract determined ownership of the U.S. patent.

Under the U.S. Patent Law, therefore, INC became a valid owner of at least 50% in the `360 patent in March 1994 by assignment from S.C.I.P.A., and any unrecorded conveyance or foreign statute to the contrary cannot deprive rest of its title.

   C.   INC Acquired at Least an Additional 50% Interest in the `360 Patent by a Confirmatory Assignment from Dr. Masquelier.

INC acquired at least another 50% interest in the patent by a Confirmatory Assignment from Dr. Masquelier, when the 1985 S.C.I.P.A.- Horphag agreement expired and Horphag's rights reverted to Dr. Masquelier. The French and Connecticut Courts in effect have agreed with INC that the 1985 Agreement expired in 1995, although no specific finding was made concerning the consequences (A 282, A 13). The French Court left it to the American Courts to determine the effect, if any of the Masquelier assignment (A 282). The Connecticut Court, without the benefit of facts, determined that no interest reverted to Dr. Masquelier upon expiration of the contract (A 13). This flies in the face of the U.S. law regarding assignments.

By the terms of the 1985 agreement, Horphag's ownership of the patent was dependent on a condition subsequent, namely that the assignment terminated when the agreement terminated between the parties. Lipscomb's Walker on Patents § 19:11 (A 305-308). When such a condition occurs, the title "reverts to the assignor by operation of law." Id. Therefore, when the `85 agreement expired

D 00 5910

in April 1995, the rights in the ˋ360 patent reverted to Dr.
Masquelier.  He then duly assigned those reversionary rights to INC
by his Confirmatory Assignment.  To the extent that the defendants
challenge the expiration of Horphag's right or the validity of the
Confirmatory Assignment, there were genuine material issue of fact
for trial precluding grant of summary judgment in favor of
defendants.

     D.    **INC is a Bona Fide Purchaser for Value of a 50% Interest
          in the ˋ360 Patent Under U.S. Patent Law.**

Contrary to the conclusory findings based on no facts by the
Connecticut Court, INC had no notice in March 1994 that S.C.I.P.A.
was precluded from assigning its interest in the ˋ360 patent.  The
1985 agreement between Horphag and S.C.I.P.A. was not recorded in
the PTO.  INC knew only that S.C.I.P.A. and Horphag were recorded
as joint owners in the PTO, as shown on the face of the ˋ360
patent.  It is well established, pursuant to the common law <u>bona
fide</u> purchaser for value rule,  that when a legal title holder of
a patent transfers its title to a third party purchaser for value
without notice of an outstanding equitable claim or title, the
purchaser takes ownership of the patent, free and clear of any
prior equitable encumbrance.  <u>Hendrie v. Sayles</u>, 98 U.S. 546, 549
(1879).

The Patent Law,  35 U.S.C.  § 261,[3] specifically provides that
any transfer of rights in a patent must be recorded in the PTO
within three months from its date.  If no such recordal is made,

---

[3]Section §261 was amended on December 8, 1994 but the
amendments are not relevant here.

D 00 5911

the transfer will be void as against a subsequent purchaser for value.    Section 261 cuts off any alleged rights of an "assignee" who fails to record its interest in the PTO.    <u>FilmTec Corp. v. Allied-Signal, Inc.</u>, 939 F.2d 1568, 1573-1574 (Fed. Cir. 1991), <u>reh'g denied</u>, 1991 U.S. App. Lexis 33969 (Fed. Cir. 1993).

To defeat the <u>bona fide</u> purchaser doctrine on the basis of notice requires a specific factual determination that the purchaser had notice before paying the required consideration.    <u>Heidelberg Harris, Inc. v. Loebach</u>, 145 F. 3d 1454, 1459 (Fed. Cir. 1998), <u>reh'g denied</u>, 1998 U.S. App. Lexis 17719 (Fed. Cir. 1998).    The Connecticut Court somehow found that "after reviewing all of the facts, the French Court found that ... INC was aware of the S.C.I.P.A - Horphag dispute prior to receiving the purported assignment from S.C.I.P.A" and therefore could not be a <u>bona fide</u> purchaser for value (A 10).    First, the French Court could not have reviewed all the facts as no discovery was held either in the French case (or for that matter in the Connecticut Action) (A 348). Second, that INC was aware of a dispute between S.C.I.P.A. and Horphag did not mean that INC was aware of any impediment to S.C.I.P.A.'s ability to transfer title to the patent.    Third, even if INC had been aware of the `85 agreement, there is nothing in that agreement prohibiting an assignment.

This Court should not adopt the decision of a Court which in turn relies on the decision of another Court which never relied on any facts.    Indeed, defendants are proposing a game of judicial telephone.    INC should be permitted to present its case, replete

19

D 00 5912

with facts, on its ownership of the `360 patent.

In any event, according to the French decision relied upon by defendants, S.C.I.P.A. retained the legal title to the `360 patent and that title now is held by CEP, INC's subsidiary. INC and/or CEP should be entitled to proceed below.

At the very least, INC or its controlled subsidiary CEP is the owner of at least a 50% interest in the extremely valuable `360 patent. It should be permitted to have its day in Court against the infringers and not be stymied by Horphag's obstructionist tactics.

IV. THE COURT ERRED IN DISMISSING THE COMPLAINT, AND SHOULD HAVE PERMITTED INC LEAVE TO AMEND THE COMPLAINT, AS GENUINE ISSUES OF MATERIAL FACT REMAIN.

A. Leave To Amend Should Be Freely Given When Justice So Requires.

Rule 15(a) Fed. R. Civ. P. provides for amendment of pleadings and specifically provides that "leave shall be freely given when justice so requires." As the Supreme Court stated, the mandate of Rule 15 is to be heeded: "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claims on the merits." Roman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962). Amendment should be permitted where the moving party has not been guilty of bad faith and is not acting for the purpose of delay, the opposing party will not be unduly prejudiced by the amendment, and the proposed amendment is not futile. Id.

Generally, Rule 15(a) is to be "broadly construed to comport with the general policy of the Federal Rules to permit and

20

D 00 5913

encourage disposition of litigation on the merits." <u>Wells v.</u>
<u>Harris</u>, 185 F.R.D. 128, 131(D. Conn. 1999) (granting leave to
amend). Indeed, it is "rare" that leave to amend is denied. <u>Id</u>.

Since the lower Court determined that French Law is applicable
to the 1994 assignment from S.C.I.P.A. to INC, CEP does not require
Horphag's consent to bring a patent infringement claim in its own
name, and the defendants would not have been prejudiced by an
Amended Complaint. INC did not act in bad faith, and the proposed
amendment was not futile. Leave to amend should have been granted
by the lower Court.

> 1.  CEP Does Not Require The Consent Of Horphag To
>     Maintain This Patent Infringement Lawsuit In Its
>     Own Name.

The lower Court noted that Horphag "has the right to impede
the other co-owner's ability to sue infringers by refusing to
voluntarily join in such a suit" (A 13). However, this conclusion
is reached under American patent case law and is not applicable
here, as the Court already had determined that "the 1985 joint
development contract subjected the ownership of any applicable
intellectual property, including the `360 patent, to French law" (A
9-10). The very same French law applied by the Bordeaux Court of
Appeals permits a co-owner of a patent to bring an action for
patent infringement for its own benefit without the consent of the
other co-owner (A 463-464). Thus, Horphag's permission was not
required for CEP to bring the Amended Complaint.

D 00 5914

> 2.   Horphag, by its Actions, Consented to the Institution of The Lawsuit Below by the Patent Owners.

If U.S. law applies, and if Horphag is a co-owner, Horphag has consented to bringing the lawsuit.[4] Since Appellees contend that Horphag is a co-owner and that Horphag has not consented to this suit, there are genuine material issues of fact for trial below.

Assuming that U.S. law applies, the 1985 agreement between Horphag and S.C.I.P.A. contemplated that the parties would cooperate with each other in exploiting the `360 patent. Horphag itself confirmed to its own patent attorney, Robert P. Simpson, Esq., that "a clear understanding has been signed in April 1985 between the two co-owners of the [`360] patent to the effect that both parties will inform and take steps to protect the other of any infringement" of the patent (A 328).

Horphag itself believes that it has the right to enforce the `360 patent against infringers without seeking cooperation from S.C.I.P.A. or INC, and it should be estopped from taking a contrary

---

[4]Appellant is aware of the decisions in Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456 (Fed. Cir. 1998) and Schering Corp. v. Zeneca, Inc., 104 F.3d 341 (Fed. Cir. 1997). Both are inapplicable here. In Ethicon, the factual scenerio was such that, if the infringement suit were permitted to proceed, the practical result would have been an infringement suit between co-owners. Here, INC did not seek to join Horphag as a party unless it no longer had rights under the `360 patent. In the event Horphag does own an interest in the `360 patent, it can be realigned as a plaintiff. The Schering decision and the plain language of Fed. R. Civ. P. Rule 19 do not support the dicta in Ethicon that a joint patent owner may not sue for infringement unless all joint owners voluntarily join the lawsuit. As the dissent noted in Ethicon, "there is no barrier to the involuntary joinder of a joint inventor and/or co-owner under Rule 19, if such is needed to bring before the Court all persons deemed necessary to the suit. Ethicon, supra at 1472.

D 00 5915

position.  Its attorney has sent at least one letter to an alleged
infringer demanding that it cease infringement of the `360 patent
(A 329-330).  Horphag did not seek agreement from S.C.I.P.A. or INC
to do so.  In connection with that matter, Horphag's counsel
admitted that U.S. patent law applies and neither owner needs
permission from the other to enforce the `360 patent (A 330).

Horphag also has maintained a patent infringement lawsuit
against at least one accused infringer without seeking S.C.I.P.A.'s
or INC's permission or joinder (A 300-304).  Horphag never sought
to join S.C.I.P.A. or INC as parties to the case.  Horphag
eventually settled that case and a Judgment was entered on July 26,
1995, holding the `360 patent to be valid and infringed.  Horphag
proceeded to collect damages.  Neither INC nor S.C.I.P.A. was a
party to the settlement and neither shared in the proceeds (A 211-
213).

Thus, Horphag's actions and course of conduct show that it can
be joined as an involuntary party if it continues to own any rights
in the patent-in-suit and its presence is necessary.  As defendants
deny that Horphag has consented to this lawsuit, there was a
genuine issue of material fact for trial precluding summary
judgment.

B.    Defendants Would Not Suffer Prejudice if the Complaint is
      Amended.

The Amended Complaint sought to add as plaintiff the party
determined by the lower Court to be the co-owner of the `360
patent, upon the defendants' own summary judgment motions.
Clearly, such addition would have caused no prejudice to

D 00 5916

defendants, since they would have got what they asked for.
Moreover, the patent infringement claim in the proposed Amended
Complaint was the same as that in the original Complaint (A 52-54,
A 559-562).   In the Amended Complaint, INC dropped its trademark
infringement and unfair competition claims, which obviously could
have caused no prejudice to the defendants. Finally, the Amended
Complaint contained a new claim, directed solely against Horphag,
and based upon the French law which Horphag so adamantly insisted
was applicable below.  It relates directly to the defense, raised
by at least one defendant, that it is licensed under the `360
patent.   Moreover, no discovery had occurred at the time INC
sought to amend the Complaint.  The overwhelming lack of prejudice
to defendants merited the grant of INC's leave to amend and the
Court's Order refusing to do so should be vacated.

> C.   There Had Been No Undue Delay.

INC obviously was not acting for the purpose of delay when it
sought to amend the Complaint.   This motion to amend was
necessitated by the Court's Order of March 21, 2000, wherein the
Court determined that INC had no rights in the `360 patent and that
the French statute applied to ownership issues of the `360 patent.
INC filed its motion to amend within ten days thereafter.

> D.   The Proposed Amendment Was Not Futile.

The lower Court held that INC's amendment to add CEP as a
plaintiff would be "futile", because such amendment would not remedy
the "inherent deficiencies" caused by INC's "attempt to sue a co-
owner of an American patent in an American Court" (A 16).   The

D 00 5917

Court's determination was incorrect since INC had pleaded in the alternative.  If Horphag's rights in the `360 patent expired in 1995, as INC alleged, then Horphag no longer was a co-owner and could be sued.  If Horphag's rights had not expired, then INC simply sought to join Horphag as an involuntary party, and did not seek any relief against Horphag for patent infringement.

The denial of leave to amend on the basis of futility is restricted to those rare instances where the "proposed amendment is clearly frivolous or legally insufficient on its face." <u>Meyerson v. Wickes Cos. (In re Boesky Sec. Lit.)</u>, 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995).

In the Court below, INC sought to add the co-owner of the `360 patent as plaintiff, as the Court had determined that INC has no rights in the patent. By amendment, CEP sought to raise the same patent claim raised previously, together with a viable claim against one defendant, based on the French law which the lower Court determined was applicable, and which is directly related to the defendants' defenses.  Such a claim is not "clearly frivolous or legally insufficient on its face."  Indeed, as the lower Court determined to apply French law to all ownership issues surrounding the `360 patent, it follows that the party the Court had determined was the owner of the patent should be permitted to assert those claims which then were available to it under that same French law. The lower Court inexplicably determined that although French law applied to determine ownership interests in the `360 patent, "other issues, including a party's ability to sue for patent infringement,

25

outcome in France.  There was no reason for such drastic relief. As USANA conceded in its "emergency motion," the license agreement was not confidential, but rather was well known in the industry. The exact terms of the license cannot be proven, however, under the present circumstances.[5]

VI.  **THE COURT ERRED IN SEALING THE LICENSE AGREEMENT BETWEEN HORPHAG AND A LICENSEE OF THE PATENT-IN-SUIT.**

Rule 26 F.R.Civ.P. provides for the issuance of protective orders for _confidential_ information.   It does not authorize restrictions upon non-confidential information.   There is no provision in the Federal Rules of Civil Procedure permitting a party to seal a document so as to gain a tactical advantage.

Clearly, defendants were interested in concealing this non-confidential document because Horphag had unclean hands in obtaining the French Court's judgment.  Horphag had complained there that S.C.I.P.A. had violated the French statute by assigning its interest in the ˜360 patent to INC without giving Horphag a right of first refusal or preemption.  At the same time, Horphag had secretly licensed its own interest in the ˜360 patent to Indena without giving S.C.I.P.A. a right of first refusal or preemption mandated under the same French statute.   Regardless of the correctness of applying a French statute to an American patent, if the French Court had been fully aware of Horphag's bad faith concealment, it surely would have dismissed Horphag's complaint. It is assumed that the French courts would have applied something

---

[5]Indeed, the financial terms of the license agreement had been redacted, so nothing remaining could have been confidential.

D 00 5921

akin to the maxim, "he who seeks equity must do equity." Under the circumstances, the judgment of the French Court was tainted by Horphag's misconduct. The concealed license raised a genuine issue of material fact and should not have been sealed by the Court.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Based upon the facts and authorities set forth above, it is respectfully submitted that the judgment of the District Court granting summary judgment in defendants' favor should be reversed and the case remanded for proceedings on the merits.

Respectfully,

Dated: August 14, 2000

_____
Norman H. Zivin
Donna A. Tobin
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, N.Y. 10036
(212) 278-0400

Attorneys for Appellant
International Nutrition Company

29

D 00 5922

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that two true copies of the foregoing BRIEF OF APPELLANT was served this 14th day of August, 2000, By mail to:

Joseph A. Calvarusso, Esq.
Richard C. Komson, Esq.
MORGAN & FINNEGAN, L.L.P.
345 Park Avenue
New York, NY  10154-0053

*Indena & Enzymatic:*
Thomas G. Rowan, Esq.
Brian M. Poissant, Esq.
Anthony M. Insogna, Esq.
Carl P. Bretscher, Esq.
PENNIE & EDMONDS
1155 Avenue of the Americas
New York, New York  10036

*Twin Labs:*
Daniel Ebenstein, Esq.
Anthony F. LoCiecero, Esq.
Charles R. Macedo, Esq.
AMSTER, ROTHSTEIN
90 Park Avenue
New York, NY  10016

*Horphag, Kaire, M.W. & Now:*
Marvin S. Gittes, Esq.
Michael A. Adler, Esq.
COBRIN, GITTES & SAMUEL
750 Lexington Avenue
New York, New York  10022

*Jarrow:*
Mark D. Giarrantana, Esq.
CUMMINGS AND LOCKWOOD
CityPlace I, 185 Asylum St.
Hartford, CT  06103-3495

*Nutraceutical:*
Mark A. Pals, Esq.
Jay I. Alexander, Esq.
Christina M. Sarris, Esq.
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601

*New Vision: (1 copy)*
Charles L. Howard, Esq.
SHIPMAN & GOODWIN
One American Row
Hartford, CT  06103-2819

*New Vision: (1 copy)*
Edwin P. Schindler, Esq.
Five Hirsch Avenue
P.O. Box 966
Coram, NY  11727-0966

*Usana: (1 copy)*
Michael J. Rye, Esq.
Cantor Colburn LLP
55 Griffin Road South
Bloomfield, CT  06002

*Usana: (1 copy)*
Brent P. Lorimer, Esq.
David R. Todd, Esq.
WORKMAN, NYDEGGER & SELLEY
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT  84111

*Free Life International Ltd.:*
Steven P. Ciardiello, Esq.
2840 Whitney Avenue
Hamden, CT 06518

D 00 5923