1 of 1 DOCUMENT

**INTERNATIONAL NUTRITION COMPANY, Plaintiff-Appellant, v. HORPHAG RESEARCH LTD., MW INTERNATIONAL, INC., KAIRE INTERNATIONAL, INC., and NOW FOODS, and TRACO LABS, INC., and CHEMCO INDUSTRIES, INC., and GREATER CONTINENTS, INC., and TWIN LABORATORIES, INC., and USANA, INC., and FREE LIFE INTERNATIONAL LTD., and ENZYMATIC THERAPY, INC. and INDENA U.S.A., and NUTRACEUTICAL CORPORATION, and ARKOPHARMA, INC., and JARROW FORMULAS, INC., and NEW VISION INTERNATIONAL, INC., Defendants-Appellees.**

00-1408

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

257 F.3d 1324; 2001 U.S. App. LEXIS 15807; 59 U.S.P.Q.2D (BNA) 1532

**July 16, 2001, Decided**

**PRIOR HISTORY:** [**1] Appealed from: United States District Court for the District of Connecticut. Judge Dominic J. Squatrito.

**DISPOSITION:** AFFIRMED.

**LexisNexis(R) Headnotes**

**COUNSEL:** Norman H. Zivin, Cooper & Dunham, LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief was Donna A. Tobin. Of counsel was Robert D. Katz.

Joseph A. Calvaruso, Morgan & Finnegan. L.L.P., of New York, New York, argued for appellee Arkopharma, Inc. With him on the brief was Richard C. Komson.

Daniel Ebenstein, and Anthony Francis Lo Cicero, Amster, Rothstein, of New York, New York, for defendant-appellee Twin Laboratories, Inc.

Marvin S. Gittes, Cobrin & Gittes, of New York, New York, argued for defendants-appellees Horphag Research, Ltd., et al. With him on the brief was Michael A. Adler.

Edwin D. Schindler, of Coram, New York, for defendant-appellee New Vision International, Inc. with him on the brief were Charles L. Howard, Patrick M. Fahey, and Sheila A. Huddleston, Shipman & Goodwin LLP, of Hartford, Connecticut.

Thomas G. Rowan, Pennie & Edmonds LLP, of New York, New York, argued for defendants-appellees Enzymatic Therapy, Inc. and Indena U.S.A. With him on the brief were Brian M. Poissant and Anthony M. [**2] Insogna. Of counsel on the brief was Carl P. Bretscher.

Brent P. Lorimer, Workman, Nydegger & Seeley, of Salt Lake City, Utah, for defendant-appellee USANA, Inc. With him on the brief was David R. Todd.

Mark D. Giarratana, and Eric E. Grondahl, Cummings & Lockwood, of Hartford, Connecticut, for defendant-appellee Jarrow Formulas, Inc.

Michael J. Rye, and Philmore H. Colburn II, Cantor Colburn LLP, of Bloomfield, Connecticut, for defendant-appellee Chemco Industries, Inc. Of counsel was Charles F. O'Brien.

Steven P. Ciardiello, of Hamden, Connecticut, for defendant-appellee Free Life International Ltd.

Mark A. Pals, Jay I. Alexander, and Christina M. Sarris, Kirkland & Ellis, of Chicago, Illinois, for defendant-appellee Nutraceutical Corporation.

JUDGES: Before MAYER, Chief Judge, MICHEL and CLEVENGER, Circuit Judges.

OPINIONBY: MAYER

OPINION: [*1326]

MAYER, Chief Judge.

International Nutrition Company ("INC") appeals the summary judgment of the United States District Court for the District of Connecticut holding that (1) Horphag Research Ltd. ("Horphag") and numerous other defendants are not liable for infringement of United States Patent No. 4,698,360 (" '360 patent") [**3] directed to a "plant extract with a proanthocyanidins content as therapeutic agent having radical scavenger effect and use thereof", and (2) Horphag, MW International, Inc., and Kaire International, Inc. are not liable for unfair competition in violation of the Lanham Act by representing that INC is not an owner of the '360 patent. Int'l Nutrition Co. v. Horphag Research Ltd., 2000 U.S. Dist. LEXIS 18083, No. 3:96CV386 (DJS) (D. Conn. March 18, 2000). INC additionally appeals the district court's denial of its motions for leave to join a party and for leave to file an amended complaint. Int'l Nutrition Co. v. Horphag Research Ltd., 2000 U.S. Dist. LEXIS 18082, No. 3:96CV386 (DJS) (D. Conn. April 14, 2000). We affirm.

Background

Jack Masquelier, Elian Barraud, Jean Michaud, and Jean Laparra formed Societe Civile D'Investigations Pharmacologiques D'Aquitane (SCIPA), a company incorporated under French law and with a registered office in Bordeaux, France, in April 1970. In April 1985, Horphag Overseas Limited, a company incorporated under [*1327] English law and registered in the Channel Islands, executed in France a joint development contract with SCIPA, to develop new products for medical use. Article 5 of the development contract specifies [**4] that any patent applications resulting from the collaboration shall be filed jointly by the parties. It further specifies that "in the case of assignment or grant of the industrial property rights arising from the present contract, the proceeds will be shared equally by the parties." Article 7 requires that any litigation regarding the interpretation or performance of the present contract shall be the exclusive jurisdiction of the courts of Bourdeaux. The development contract was set to expire in April 1990 with the possibility of an automatic renewal period for five additional years.

On April 9, 1985, a United States patent application based on work covered by the '360 patent was filed listing Masquelier as its sole inventor. The substance of Masquelier's invention was a method for the extraction from plants of an active ingredient capable of combating the principal free radicals responsible for the aging of cells. On April 1, 1985, Masquelier assigned his rights in the future '360 patent to SCIPA and Horphag.

In 1994, SCIPA assigned its rights in the '360 patent to INC, a company organized under the law of Liechtenstein. In 1995, Horphag initiated litigation against SCIPA and [**5] INC in the French Court of Primary General Jurisdiction of Bordeaux under Article L 613-29(e) n1 of the French Code of Intellectual Property in an effort to void the 1994 assignment to INC. Horphag v. SCIPA, Certified Translation of the Judgment of the French Court of Primary General Jurisdiction of Bordeaux at 6A (March 25, 1997). In 1996, Masquelier executed a confirmatory assignment of any rights to the '360 patent that might revert to him to INC.

> n1 Article 613-29(e) provides, in pertinent part, that "each joint owner may, at any time, assign his share. The joint owners have a right of preemption during a period of three months from the notification of the intention to assign." SCIPA v. Horphag, Certified Translation of the Judgment of the Bordeaux Court of Appeals at 37.

The French trial court stated that "the law applicable to the contracts involving the patent is not necessarily the law of the country of protection, because it is then the autonomy of the intent of the parties which prevails." [**6] Id. at 15A. It further noted that (1) the development contract had no choice of law provision but did explicitly select the choice of forum as the courts of Bordeaux, (2) the research under the development contract was to be carried out by SCIPA, a French company, in France, (3) the only international reference was to Horphag's international network of commercial relationships, and (4) no particular reference is made to the United States. Id. at 16A. Thus, the trial court concluded that "under these circumstances, no criterium exists for linking this contract with American law, no more than with any other foreign law, and it appears that the only law applicable is the law of France, as implemented by the courts of France." Id. It declared the 1994 assignment void for violating French statutory prohibitions against joint owners unilaterally assigning their ownership stakes in patents. Id. at 17A-18A.

The French court of appeals concluded that INC received no interest in the '360 patent from Masquelier's 1996 confirmatory assignment because he "lost his rights as soon as he assigned them on April 1, 1985, [and] is

also unable to devote himself to any exploitation whatsoever. [**7] " SCIPA v. Horphag, Certified Translation of the Judgment of the Bordeaux Court of Appeals at 48 (May 28, 1998). It affirmed the [*1328] trial court's judgment on the ownership issue and held that INC "no longer has any right whatsoever appertaining to the patent 360 [and] is no longer able to exploit the same." Id.

INC brought the present suit in the United States District Court for the District of Connecticut alleging, inter alia, that the defendants (including Horphag) were infringing the '360 patent. The district court extended comity to the French court decisions because they determined the ownership interests under the development contract and were not contrary to United States patent law, and granted summary judgment that INC lacked standing to bring its patent infringement claims because it has no ownership interest in the '360 patent. INC then moved to amend its complaint to join Centre d'Experimentation Pycnogenol ("CEP") as a party, alleging that CEP had acquired SCIPA and its interest in the '360 patent in 1998. INC further alleged that it owned a controlling interest in CEP and therefore in SCIPA's interest in the '360 patent. The district court denied INC's motions [**8] to amend the complaint and to join CEP as a party because they were futile. This appeal followed.

Discussion

"We review a district court's grant of summary judgment de novo." Vanmoor v. Wal-Mart Stores, Inc., 201 F.3d 1363, 1365, 53 U.S.P.Q.2D (BNA) 1377, 1378 (Fed. Cir. 2000) (citing Petrolite Corp. v. Baker Hughes, Inc., 96 F.3d 1423, 1425, 40 U.S.P.Q.2D (BNA) 1201, 1203 (Fed. Cir. 1996)). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor. See id. at 255.

We first consider the decision of the district court to extend international comity to that of the French Court of Appeals regarding ownership of the '360 patent. We apply regional [**9] circuit law to procedural issues that are not themselves substantive patent law issues so long as they do not (1) pertain to patent law, Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362, 1365, 57 U.S.P.Q.2D (BNA) 1635, 1637 (Fed. Cir. 2001) ("We will apply our own law to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right'" (citation omitted)), (2) bear an essential relationship to matters committed to our exclusive control by statute, or (3) clearly implicate the jurisprudential responsibilities of this court in a field within its exclusive jurisdiction. Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359, 50 U.S.P.Q.2D (BNA) 1672, 1675 (Fed. Cir. 1999) (en banc in relevant part). Because the extension of comity to the decision of a foreign court does not meet any of these criteria, we apply the law of the Second Circuit to our review of the district court's judgment.

> Analysis of comity often begins with the definition proffered by Justice Gray in Hilton v. Guyot, 159 U.S. 113, 163-64, 16 S. Ct. 139, 143, 40 L. Ed. 95 (1895): "'Comity,' in the legal sense, is neither a [**10] matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are [*1329] under the protection of its laws." Although Hilton addressed the degree to which a foreign judgment is conclusive in a court of the United States, the principle expressed is one of broad application.

In re Maxwell Comm. Corp., 93 F.3d 1036, 1046 (2d Cir. 1996). Under the principles of comity, United States courts "ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States." Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru, 109 F.3d 850, 854 (2d Cir. 1997) (citations omitted). As a general rule, comity may be granted where "it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy [**11] of the forum state and the rights of its residents will not be violated." Cunard S.S. Co. v. Salen Reefer Serv. AB, 773 F.2d 452, 457 (2d Cir. 1985). Indeed, as long as the foreign court abides by "fundamental standards of procedural fairness," granting comity is appropriate. Id. Under the circumstances of this case, comity may be viewed as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly

adjudicated in a foreign state--the so-called comity among courts. In re Maxwell, 93 F.3d at 1047.

"Although courts in this country have long recognized the principles of international comity and have advocated them in order to promote cooperation and reciprocity with foreign lands, comity remains a rule of 'practice, convenience, and expediency' rather than of law." Pravin, 109 F.3d at 854 (citing Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir. 1971)). Courts will not extend comity to foreign proceedings when doing so would be contrary to the policies or prejudicial to the interests of the United States. Id. (citing Allied Bank Int'l v. Banco Credito Agricola de Cartago, 757 F.2d 516, 522 (2d Cir. 1985)). [**12] "'No nation is under unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum. Thus, from the earliest times, authorities have recognized that the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act.'" Id. (quoting Laker Airways Ltd. v. Sabena, Belgian World Airlines, 235 U.S. App. D.C. 207, 731 F.2d 909, 937 (DC Cir. 1984)).

The district court's extension of international comity is reviewed for abuse of discretion. Jota v. Texaco, Inc., 157 F.3d 153, 160 (2d Cir. 1998) (citing Pravin, 109 F.3d at 856). We also recognize that, since comity is an affirmative defense, Horphag and its co-defendants had the burden of proving that comity was appropriate. Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 999 (2d Cir. 1993) (citing Drexel Burnham Lambert Group, Inc. v. Galadari, 777 F.2d 877, 880 (2d Cir. 1985)).

INC argues that the ownership of a United States patent is a matter of United States patent law and granting comity based on a determination of ownership under French [**13] law would be contrary to United States patent law. But comity is appropriate because the French courts merely determined who owned a United States patent pursuant to a French contract. Contrary to INC's position, the question of who owns patent rights, and on what terms, typically is a question exclusively for state courts and not one arising under United States patent laws. Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1572, 42 U.S.P.Q.2D (BNA) 1119, 1123 (Fed. Cir. 1997). A contractual agreement to apply French law as to ownership is just as valid as an agreement to apply the law of a particular state. Beghin-Say Int'l, Inc. v. Rasmussen, 733 F.2d 1568, 1573 n.5, [*1330] 221 U.S.P.Q. (BNA) 1121, 1125 n.5 (Fed. Cir. 1984). There is, therefore, no conflict between United States patent law, and enforcing the intent of the parties to the development contract that it should be interpreted under the laws of a foreign country.

The development contract does not contain an explicit choice of law clause but does have a choice of forum clause that required the case to be tried in Bordeaux. Horphag v. SCIPA, Certified Translation of the Judgment of the French Court of Primary [**14] General Jurisdiction of Bordeaux at 16A. The French courts looked to the objective indicia of the parties about the choice of law, and concluded that French law governed the question of ownership of the '360 patent. The French courts are courts of competent jurisdiction, and the laws and public policy of the forum state, here Connecticut, and the rights of its residents will not be violated by extending comity. Cunard, 773 F.2d at 457. Indeed, the French courts abided by "fundamental standards of procedural fairness," id., and we see no abuse of discretion in the district court's judgment that international comity should be extended to the French courts' adjudication of the choice of law issue.

The French courts additionally held that under French law the development contract barred the parties from unilaterally assigning their individual interests. Under Article L. 613-29-e of the French Intellectual Property Code governing co-ownership of patents, "each joint owner may, at any time, assign his share. The joint owners have a right of preemption during a period of three months from the notification of the intention to assign." SCIPA v. Horphag, Certified [**15] Translation of the Judgment of the Bordeaux Court of Appeals at 37. It is uncontested that SCIPA's 1994 assignment of its share of the '360 patent to INC was made without notice to Horphag. This prevented Horphag from asserting its right of preemption of the assignment and rendered that assignment a nullity. Id. INC argues that the French decisions are in conflict with 35 U.S.C. § 262 (1994) n2 because they held invalid SCIPA's unilateral assignment to INC in 1994. However, Section 262 only permits unilateral exploitation "in the absence of any agreement to the contrary." The district court properly concluded that, because the development contract is an agreement to the contrary, there is no conflict between the French decisions and section 262. In the absence of any conflict, we see no abuse of discretion in the district court's extension of comity to the French court's determination that INC had no ownership stake in the '360 patent.

>    n2  35 U.S.C. § 262 provides that: "in the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners."

[**16]

INC also asserts that it was a bona fide purchaser and is therefore entitled to the benefit of the 1994 assignment. The district court correctly deflected this argument because the French courts had determined that INC was aware of the disputed nature of the ownership of the '360 patent at the time of the 1994 assignment. SCIPA v. Horphag, Certified Translation of the Judgment of the Bordeaux Court of Appeals at 38 (INC "could not be unaware that it was acquiring only a share of the patent and that the other joint proprietor was one of its principal competitors on the American market", and that SCIPA, its assignor, had not had dealings with its co-owner since a dispute in 1990.) [*1331]

INC's position that it obtained a 50 percent share in the '360 patent as a result of the 1996 confirmatory assignment is also without merit because there was no provision in the development contract for any rights to revert to Masquelier. Id. at 42. Masquelier could assign no greater interest in the '360 patent than he owned in 1996. In 1985, Masquelier assigned equal portions of the '360 patent to SCIPA and Horphag, divesting himself of any ownership interest in the patent. Id. The 1996 confirmatory [**17] assignment notes Masquelier's 1985 assignment to SCIPA and Horphag and states that, because the development contract expired by its terms in April 1995, the interest granted to SCIPA and Horphag may have terminated and reverted to Masquelier. Id. at 43. The assignment purports to convey any reversionary or other right, title and interest which Masquelier has had or may have in and to the '360 patent. Id. The French courts held that, in the absence of any reversion of the rights assigned away in 1985, Masquelier had no ownership interest in the '360 patent in 1996, and the confirmatory assignment remains a prospective assignment of any rights he may eventually regain. Id. The district court did not abuse its discretion by extending comity to this ruling.

While the ownership of the '360 patent is properly the subject of French law, the right to bring suit on the United States patent in the district court is governed by United States patent law, which requires that all co-owners normally must join as plaintiffs in an infringement suit. Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1468, 45 U.S.P.Q.2D (BNA) 1545, 1554 (Fed. Cir. 1998). Even if CEP does [**18] hold the 50 percent interest in the '360 patent that formerly belonged to SCIPA, INC would still be barred from bringing suit without the consent of Horphag, the co-owner of the patent. Schering Corp. v. Roussel-UCLAF SA, 104 F.3d 341, 345, 41 U.S.P.Q.2D (BNA) 1359, 1363 (Fed. Cir. 1997) ("Ordinarily, one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."). A co-owner may waive his right to refuse to join a suit to enforce the patent, in which case his co-owners may subsequently force him to join in a suit, Ethicon, 135 F.3d at 1468 n.9, 45 U.S.P.Q.2D (BNA) at 1554 n.9, but Horphag did not waive this right. The district court correctly granted summary judgment against INC, and INC's motion to amend was properly denied as futile.

Conclusion

Accordingly, the judgment of the United States District Court for the District of Connecticut is affirmed.

AFFIRMED