UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INTERNATIONAL NUTRITION COMPANY | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.: 396-CV-00386 (DJS) |
| v. | ) ) | |
| HORPHAG RESEARCH LTD., et al. | ) ) | AUGUST 15, 2001 |
| Defendants. | ) | |

**DEFENDANT JARROW FORMULAS, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED
MOTION FOR ATTORNEYS' FEES PURSUANT
TO 28 U.S.C. § 1927 AND 35 U.S.C. § 285**

MARK D. GIARRATANA (CT 10410)
ERIC E. GRONDAHL (CT 08988)
ERIC W. WIECHMANN (CT 04331)
Cummings & Lockwood
CityPlace I
185 Asylum Street
Hartford, Connecticut 06103-3495
(860) 275-6700

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

I.    STATEMENT OF FACTS ................................................................................ 1

    A.    The 1985 Assignment Of The '360 Patent To Horphag And
    SCIPA, And The 1985 Agreement Governing Their
    Ownership Of The Patent. ................................................................ 2

    B.    The Purported 1994 Assignment To INC. ............................................ 4

    C.    The French And Connecticut Litigations Following The
    1994 Assignment. ........................................................................ 5

II.   INC'S FALLBACK CLAIM TO OWNERSHIP OF THE '360
    PATENT. ............................................................................................ 8

III.  ARGUMENT ........................................................................................ 14

    A.    INC's Counsel Should Be Ordered to Pay Jarrow's
    Attorneys' Fees Pursuant to 28 U.S.C. § 1927. ................................... 14

    B.    This Is An Exceptional Case Under 35 U.S.C. § 285, and
    INC Should Be Ordered to Pay Jarrow's Attorneys' Fees
    Incurred in Defending This Action. ................................................... 22

IV.   CONCLUSION ...................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

ACLI Government Securities, Inc. v. Rhoades,
    907 F. Supp. 66 (S.D.N.Y. 1995) ...................................................................14

Alvarado-Morales v. Digital Equip. Corp.,
    843 F.2d 613 (1st Cir. 1988)..........................................................................15

Baker Hughes, Inc. v. Jim Arnold Corp.,
    522 U.S. 933 (1997)......................................................................................16

Beghin-Say Int'l v. Rasmussen,
    733 F.2d 1568 (Fed. Cir. 1984) .....................................................................19

Ethicon v. United States Surgical Corp.,
    135 F.3d 1456 (Fed. Cir. 1998), cert. denied, 525 U.S. 923 (1998)................16

Fifth Third Bank v. Boswell,
    125 F.R.D. 460 (S.D. Ohio 1989)..................................................................20

Jim Arnold Corp. v. Hydrotech Systems, Inc.,
    109 F.3d 1567 (Fed. Cir. 1997), reh'g denied, 1997 U.S. App. LEXIS 15403 (Fed.
    Cir. 1997), cert ............................................................................................16

Lewis v. Brown & Root, Inc.,
    711 F.2d 1287 (5th Cir. 1983), on reconsideration,
    722 F.2d 209 (1984), cert. denied, 467 U.S. 1231 (1984) ..............................15

Michod v. Walker Magnetics Group, Inc.,
    115 F.R.D. 345 (N.D. Ill. 1987).....................................................................15

Oliveri v. Thompson,
    803 F.2d 1265 (2d Cir. 1986), cert. denied, 480 U.S. 918 (1987)...................14

Steimel v. Incorporated Village of Rockville Centre,
    965 F. Supp. 366 (E.D.N.Y. 1997) ................................................................14

Strain v. Kaufman County District Attorney's Office,
 23 F. Supp. 2d 698 (N.D. Tex. 1998) ................................................................................15

Viola Sportswear, Inc. v. Claude Clement Mimun,
 574 F. Supp. 619 (E.D.N.Y. 1983) ....................................................................................15

Williams v. Star Sand Co.,
 35 F. 369 (W.D. Pa. 1888), citing Wilson v. Sandford, 51 U.S. (10 How.) 99, 13
 L. Ed. 344 (1850).............................................................................................................19

Willingham v. Lawton,
 555 F.2d 1340 (6th Cir. 1997) ..........................................................................................16

### STATUTES

28 U.S.C. § 1927...........................................................................................1, 2, 14, 15, 22, 25

35 U.S.C. § 261.....................................................................................................................3

35 U.S.C. § 285.....................................................................................................................1

35 U.S.C. § 285.............................................................................................2, 12, 20, 21, 22, 23, 25

Fed. R. Civ. P. 9(f).............................................................................................................23

Fed. R. Civ. P. 12 (b)(6) .......................................................................................................6

Fed. R. Civ. P. Rule 15 .........................................................................................................9

Fed. R. Civ. P. Rule 21 .........................................................................................................9

Defendant Jarrow Formulas, Inc. ("Jarrow") submits this memorandum of law in support of its motion for attorneys' fees pursuant to 28 U.S.C. § 1927 and 35 U.S.C. § 285. This action for patent infringement was filed on behalf of International Nutrition Company ("INC") in March 1996. At the time the action was filed, INC, through its counsel, made allegations in the Complaint that it knew or should have known were false. Moreover, even if these allegations in the Complaint were true (which they are not), they were insufficient to maintain a patent infringement claim as a matter of law. Finally, in the face of rulings by two French courts and this Court rejecting its meritless positions and claims, INC and its counsel made additional false statements and continued to advance meritless arguments in this Court to prolong this litigation unreasonably and vexatiously. These actions were taken by and on behalf of INC for an improper purpose, namely, to allow INC to gain an unfair competitive advantage by using its meritless lawsuit as a tool for unfair marketing and competition. Therefore, Jarrow respectfully requests that the Court order INC and its counsel to pay its attorneys' fees incurred in defending this meritless action.

## I.    STATEMENT OF FACTS

Beginning with the Complaint in this case filed in March 1996, INC and its counsel have showered this Court with misstatements and mischaracterizations of fact, and frivolous, unsupported legal arguments to avoid the inevitable conclusion that INC's patent ownership claims have never had any merit. The filing of this suit, and counsel's campaign to needlessly prolong this suit, were undertaken to allow INC to make false claims in its marketing regarding ownership of U.S. Patent No. 4,698,360 ("the '360 patent") and to threaten defendants'

customers and potential customers with litigation. When the smokescreen created by INC's counsel is cleared away, the facts and the law plainly demonstrate that this case was frivolous from the start, that INC's counsel knew or through any reasonable investigation should have known that INC's claims were frivolous, that the suit was brought for an improper purpose, and that INC and its counsel continued to vexatiously multiply the proceedings after each argument proffered by them failed. Therefore, it is appropriate for this Court to order INC's counsel to pay Jarrow its attorneys' fees incurred in defending this action pursuant to 28 U.S.C. § 1927, and to order INC to pay Jarrow's attorneys fees pursuant to 35 U.S.C. § 285.

The material facts and history of this case are summarized below in order to show the tangled web woven by INC and its counsel to pursue this meritless case at all costs. INC and its counsel repeatedly resorted to misstating facts, mischaracterizing Court decisions and advancing unsupported legal claims, not because INC had a good faith claim to ownership or patent infringement, but to intimidate the marketplace into purchasing the purported patented products only from INC and its distributors.

### A. The 1985 Assignment Of The '360 Patent To Horphag And SCIPA, And The 1985 Agreement Governing Their Ownership Of The Patent.

On April 1, 1985, Jack Masquelier, the alleged inventor of the '360 patent, executed an Assignment (the "1985 Assignment") whereby he unconditionally assigned in perpetuity the "entire right, title and interest in and to" the '360 patent, jointly to Societe Civile d'Investigations Pharmacologiques d'Aquitaine ("SCIPA") and Horphag Overseas Ltd., the predecessor of Defendant Horphag Research Ltd. ("Horphag"). SCIPA is a French company

-2-

founded and controlled by Jack Masquelier for the purpose of holding an interest in the '360 patent. Horphag and SCIPA recorded the 1985 Assignment in the United States Patent & Trademark Office ("USPTO") upon filing the application of the patent, and thereafter were the joint owners of record of the patent.[1]

On April 26 and 29, 1985, several weeks after Masquelier executed the 1985 Assignment, Horphag and SCIPA entered into a joint development agreement ("the 1985 Agreement") that ratified the 1985 Assignment and governed their joint ownership of the '360 patent. Under the 1985 Agreement, the ownership rights of the parties were governed by French law, thereby restricting the ability of either owner to transfer its interest in the patent.[2]

Contrary to the baseless assertion repeatedly made by INC and its counsel, the 1985 Agreement was not an "assignment, grant or conveyance" of the '360 patent, and did not change or otherwise affect the earlier 1985 Assignment from Masquelier to Horphag and SCIPA of the "entire right, title, and interest in and to" the '360 patent. Accordingly, it was not necessary to record the 1985 Agreement in the USPTO, and the Agreement was not recorded. In clear derogation of controlling precedent to the contrary, INC and its counsel continued to frivolously assert that the non-recordation of the 1985 Agreement was "contrary to 35 U.S.C. § 261." See INC's Memorandum in Opposition to Motion for Attorneys Fees at pg. 2. (Docket No. 355).

---

[1]  A copy of the 1985 Assignment is attached as Exhibit A to the "Declaration of Michael A. Adler" (Docket No. 232) filed in support of Defendant Horphag's Motion to Dismiss.

[2]  A copy of a certified English translation of the 1985 Agreement is attached as Exhibit B to the Declaration of Michael A. Adler (Docket No. 232) filed in support of Defendant Horphag's Motion to Dismiss.

## B. The Purported 1994 Assignment To INC.

Plaintiff INC is a Liechtenstein company, and is believed to be solely owned and controlled by Egbert Schwitters. Neither INC nor Schwitters were ever parties to the 1985 Assignment or the 1985 Agreement, and therefore they do not have any rights in the '360 patent under either of those documents.

INC (Schwitters) and SCIPA (Masquelier), along with INC's counsel, engineered a scheme with the ostensible intent of wresting ownership of the '360 patent from Horphag in 1994. Despite the terms of the 1985 Agreement, and Horphag's conspicuous use and commercialization of products covered by the '360 patent, SCIPA and its counsel caused to be executed on March 18, 1994, without notice to co-owner Horphag, an "Assignment" purporting to assign SCIPA's 50% interest in the '360 patent to INC ("the 1994 Assignment"). To give the transaction an air of legitimacy, INC's counsel recorded the 1994 Assignment in the USPTO which, in turn, caused the USPTO to erroneously list INC as an owner of record of the patent.[3] At the time of the 1994 Assignment, INC was aware that SCIPA and Horphag were already embroiled in disputes regarding ownership of the '360 Patent. Indeed, both French courts, this Court, and the Federal Circuit Court of Appeals rejected as meritless INC's claim that it was a bona fide purchaser without notice.

---

[3]    The USPTO merely records assignments but does not review documents purporting to be assignments for legitimacy.

## C. The French And Connecticut Litigations Following The 1994 Assignment.

In October 1995, after learning of the 1994 Assignment and INC's claim to ownership of the '360 patent, Horphag brought suit in Bordeaux, France, against INC, Schwitters, SCIPA and Masquelier, seeking to void the 1994 Assignment and reach a final resolution of the ownership dispute between those parties. Horphag rightfully brought suit in France because the 1985 Agreement governing Horphag's and SCIPA's joint ownership of the patent required such action. Horphag made clear from the start that the 1994 Assignment violated the 1985 Agreement and French law governing the rights of co-owners of intellectual property; that SCIPA itself had previously warned Horphag that "no transaction can be made by any single co-owner" of the patent; and that the 1994 Assignment was made in bad faith. (French appeals decision, p. 14, Exhibit I to the Declaration of Michael A. Adler, Docket No. 232).

Then, on March 6, 1996, nearly six months after Horphag had initiated suit in France and put INC and its counsel on notice of the specious nature of INC's ownership claim, INC, through its counsel, brought suit here in Connecticut claiming, among other things, that Horphag and seventeen other primary vendors and resellers had infringed the '360 patent. INC -- blatantly ignoring that it had yet to resolve the question of whether it had any ownership interest in the '360 patent -- nevertheless claimed to be the owner of "at least an undivided one-half interest in the '360 patent" and that, "on information and belief," Horphag was no longer a co-owner of the '360 patent. (Complaint ¶ 23, Docket No. 1).

The rush by INC and its counsel to file the Complaint for patent infringement without establishing ownership of the '360 patent was precipitated by INC's desire to use the lawsuit to gain an unfair competitive advantage. INC meanwhile pursued and publicized its patent ownership claims, and used its frivolous infringement claims to intimidate the relevant industry, with near reckless abandon. The suit was filed days before the largest industry trade show. INC publicized the suit heavily at the trade show and afterwards, and continued threatening to sue the defendants' customers and generally disrupted the marketplace. Copies of exemplary publications disseminated by INC during the course of this lawsuit in order to promote its unfair and deceptive aims are attached as Exhibit A.[4]

In response to INC's meritless Complaint, numerous defendants filed early motions to dismiss under Fed. R. Civ. P. 12 (b)(6). Because INC had not established its requisite ownership interest in the '360 patent and, in any event, had not joined all owners as plaintiffs, INC did not have standing to bring this suit. Indeed, INC filed this suit in response to Horphag having commenced litigation in France (the forum specified in the 1985 Agreement for resolution of such disputes) to resolve the conflicting claims to ownership of the '360 patent. Relying on well established law, the eighteen defendants, including Horphag, argued that they should not be put to the expense and burden of defending a patent infringement suit when there was a pre-existing dispute over ownership of the patent being litigated. In the alternative, the

---

[4]    These publications are already of record in this case, and were attached as Exhibit K to the Declaration of Michael A. Adler (Docket No. 232) submitted in support of Horphag's Motion to Dismiss, and as Exhibit B to the Memorandum In Support of Defendant Jarrow Formulas' first Motion To Dismiss (Docket No. 205).

defendants requested a stay of this case pending the outcome of the French litigation and a reexamination of the '360 patent in the USPTO.

INC and its counsel vigorously opposed defendants' motions to dismiss or to stay. INC instead insisted that it should be permitted to drag the defendants through expensive litigation over a patent that it did not own. To further its ends, INC's counsel made false representations of fact and arguments contrary to well-established law. For example, INC's counsel falsely asserted that INC was a bona fide purchaser for value without notice of the 1985 Agreement between Horphag and SCIPA, an assertion that the French court found could not be seriously made and that this Court and the Federal Circuit found meritless. INC's counsel also contrived the argument that Horphag was no longer an owner of the '360 patent because the 1985 Agreement had expired, an assertion that cannot be supported by any language in the 1985 Agreement or the 1985 Assignment of the patent to Horphag and SCIPA. In addition, contrary to well established law, INC's counsel argued that the French action regarding ownership of the '360 patent could not be dispositive because the ownership of a U.S. patent purportedly should be decided under federal law, as opposed to the applicable state (or foreign) law.

On March 21, 1997, this Court stayed this suit pending the outcome of the French litigation. In concert with its tactic to pursue its meritless infringement claim at any cost (and without first resolving the dispute over ownership of the patent), INC continued to publicize to the trade that it was the owner of the '360 patent, that it was the only authorized source of products allegedly covered by the patent, and that it would sue any competitor believed to infringe. (See Exhibit A).

On March 25, 1997 the French trial court declared the 1994 Assignment to INC void, *ab initio*, because the 1985 Agreement between Horphag and SCIPA required the parties to litigate in France under French law, and French law prevented SCIPA from assigning its interest in the '360 patent to INC without offering Horphag a right of first refusal. (French appeals decision, Exhibit I to the Declaration of Michael A. Adler, Docket No. 232).

## II.    INC'S FALLBACK CLAIM TO OWNERSHIP OF THE '360 PATENT.

By the time the French trial court issued its decision confirming that INC had no ownership interest in the '360 patent, INC and its counsel had already concocted INC's fallback position. In an argument obviously engineered by INC's counsel to prolong this litigation, INC and Masquelier claimed that Horphag somehow lost its ownership interest in the '360 patent (apparently by virtue of the 1985 Agreement, which INC, other than for the purpose of this, otherwise refused to recognize), and that Horphag's interest had somehow reverted to Masquelier. On October 10, 1996, Masquelier executed a second purported assignment ("the 1996 Assignment"), also obviously engineered by INC's counsel, stating that he believed that Horphag's interest in the '360 patent had reverted to him, and that he, in turn, assigned his interest in the '360 patent to INC (which, at the time of this assignment, was nil). Again, in an attempt to bolster the spurious "assignment" by giving INC the appearance of ownership, INC's counsel recorded the 1996 Assignment in the USPTO.

Following the decision of the French trial court, the defendants renewed their motion to dismiss and requested the Court to accord comity to the French trial court's decision. INC did not withdraw its Complaint in the face of the French trial court's decision on ownership

-8-

of the '360 patent. Instead, INC pressed its frivolous claims, now adding the meritless

contention concocted by INC's counsel that Masquelier's 1996 Assignment, in which Masquelier

purported to assign ownership rights he no longer had, conferred the requisite ownership interest

on INC. On October 31, 1998, this Court continued the stay and denied the motions to dismiss

without prejudice to renew following resolution of INC's appeal of the French trial court's

decision.

On May 28, 1998, the French Appellate Court affirmed the decision of the French

trial court.[5] The French Appellate Court specifically held that (1) INC was not an owner of the

'360 patent because the purported 1994 Assignment from SCIPA was void *ab initio*, and (2)

Horphag was and is a co-owner of the '360 patent.

Notwithstanding the French Appellate Court's decision affirming that INC was

not an owner of the '360 patent, INC and its counsel continued to pursue this lawsuit and press

their frivolous claims. Jarrow attempted on several occasions to urge INC and its counsel to

reasonably assess and withdraw their meritless claims and, in turn, mitigate the continuing

damage to Jarrow and the other defendants. In January 1998, Jarrow provided INC and its

counsel with a detailed written analysis and supporting evidence establishing the frivolous nature

of INC's trademark infringement claim, and urged INC and its counsel to withdraw the baseless

claim. (A copy of Jarrow's January 8, 1998 letter to INC's counsel with supporting evidence is

attached as Exhibit B). INC's counsel airily dismissed Jarrow's request, and refused to address,

---

[5]  A copy of an English translation of the French Appellate Court's decision is annexed as Exhibit C to Plaintiff's
Motion for Reconsideration, for Leave to Join a Party as Plaintiff Pursuant to Fed. R. Civ. P. Rule 21, and to file
an Amended Complaint Pursuant to Fed. R. Civ. P. Rule 15, and Supporting Memorandum (hereinafter
"Reconsideration Motion") (Docket No. 328).

much less refute, the substantive points raised by Jarrow establishing the frivolous nature of INC's claim. (A copy of the January 9, 1998 reply letter from INC's counsel is attached as Exhibit C). Rather, INC and its counsel waited more than a year -- and after losing on the patent infringement claim -- to dismiss with prejudice the bogus trademark infringement claim. Similarly, in March 1999, prior to preparing and filing the motions for summary judgment, and in the wake of the decision of the French Appellate Court, Jarrow urged INC and its counsel to rationally assess and drop their meritless patent infringement. (A copy of Jarrow's March 15, 1999 letter is attached as Exhibit D). Again, INC and its counsel offhandedly dismissed Jarrow's urgings. INC's counsel responded: "your views and those of your client are best kept to yourself." (A copy of the March 17, 1999 reply letter from INC's counsel is attached as Exhibit E). INC's and its counsel's callous indifference to the effects of having brought and maintained for over four years frivolous claims against virtually an entire industry should not go unpunished. In addition, the needless expense and damage caused to Jarrow and other defendants by such conduct should not go unremedied.

As a result of the needless persistence of INC and its counsel, in August 1998, the defendants renewed their motions to dismiss. In response, INC and its counsel resorted to misstating the French court's decision in numerous respects. Exemplary misstatements by INC and its counsel are set forth in Exhibit F attached. On February 11, 1999, this Court converted the motions to dismiss to motions for summary judgment.

On March 21, 2000, this Court granted defendants' summary judgment motions based on clear documentary evidence and well established law.[6]  This Court found that: (1) INC was not a co-owner of the '360 patent and that INC had no standing to sue for infringement of that patent; (2) INC was not a bona fide purchaser for value because at the time INC allegedly obtained an ownership interest from SCIPA, INC knew that Horphag was a co-owner and there was an ownership dispute between SCIPA and Horphag; (3) the 1996 Assignment from Masquelier to INC did not confer any ownership interest in the '360 patent to INC since it was only a prospective assignment and Masquelier had no rights to assign; and (4) even if INC had an ownership interest (which it did not), it could not bring this suit without Horphag voluntarily joining as a plaintiff.

With its array of frivolous arguments soundly rejected by two French courts and this Court, INC and its counsel still refused to cease persecuting the defendants and instead filed yet another frivolous motion.  On March 31, 2000, INC filed a motion asking this Court to reconsider its decision.  In that motion, INC's counsel argued that the Court overlooked SCIPA's willingness to join the suit, an irrelevant contention since Horphag has made clear that it will not join as a plaintiff to sue its own customers.  INC's counsel also argued that the Court did not consider purported "new evidence" that SCIPA was merged into a company named CEP that is allegedly owned by INC.  First, this contention is irrelevant in view of Horphag's indisputable co-ownership of the patent.  Second, by INC's own admission, the evidence of CEP was not

---

[6]  No discovery was necessary for the Court to dismiss INC's meritless claims. The documentary evidence submitted to the Court in support of defendants' summary judgment motions had been readily available to INC for many months.

"new", but rather was in INC's possession at the time INC originally responded to Defendants' motions for summary judgment. Finally, INC futilely attempted to resuscitate its case by seeking to amend its Complaint to join CEP, which purportedly is now a co-owner with Horphag, as a plaintiff. By doing so, INC and its counsel finally conceded, albeit indirectly, that INC is not a co-owner of the '360 patent, and therefore that INC never had standing under the Patent Statutes to bring its patent infringement claim.

In April 2000, while INC's motion for reconsideration was pending, several defendants moved for an award of attorneys' fees pursuant to 35 U.S.C. § 285. In opposing those motions, INC's counsel advanced the absurd proposition that, despite invoking the jurisdiction of this Court under the Patent Statutes, the attorney fee provision of the Patent Statutes is inapplicable because "only non-patent issues were litigated in this case." See INC's Memorandum at 5 (Docket No. 355). In sum, INC and its counsel assert that attorneys' fees cannot be awarded under the Patent Statutes when a party that plainly does not have standing under the Patent Statutes nevertheless files a bogus patent infringement claim. This pettifoggery would turn the statute on its head, as the most egregious misuse of the Courts would not be sanctionable under a statute specifically intended to prevent such rampant abuse.

In any event, consistent with their practice in this case of misstating the record and the law, INC filed a Notice of Appeal to the United States Court of Appeals for the Federal Circuit. Thus, INC claims out of one side of its mouth that no patent issues have been litigated, while out of the other side of its mouth, INC invoked the jurisdiction of the Federal Circuit -- which is limited to consideration of patent issues -- for purposes of appeal.

-12-

On July 16, 2001, the Federal Circuit affirmed the District of Connecticut's

decision, determining that the District Court correctly granted summary judgment against INC.

International Nutrition Co. v. Horphag, et al. No. 00-1408 (Fed. Cir. July 16, 2001) (attached

hereto as Exhibit H). Still other litigation in France, in which Horphag brought suit in the

Commercial Court of Grasse against CEP, Schwitters, INC, and Masquelier, annulled the merger

between CEP and SCIPA as fraudulent. The Commercial Court of Grasse further found that

INC's exploitation of the products under the '360 patent was fraudulent and declared the

conditional conveyance of the '360 patent by Masquelier to INC void. (See February 5, 2001

verdict RG no.: 1999F00237, attached hereto as Exhibit I).[7]

        The District of Connecticut litigation is one of the latest incarnations of nearly a

decade of on-going suits between Horphag, on the one hand, and SCIPA (Masquelier) and INC

(Schwitters), on the other. The battle between these parties has raged relentlessly over the

underlying product trademark (Pycnogenol), marketing territories, attribution for development of

the product, and since 1994, ownership of the '360 patent. Plaintiff has since the outset of this

case had no more than a frivolous basis for alleging ownership of the '360 patent, and therefore

has had no good faith basis for suing Jarrow Formulas and the other defendants for infringement

of the '360 patent. As a result, Jarrow has incurred enormous expense, and has had to divert

precious corporate resources -- including expenditure of hundreds of hours by its President/CEO

-- to address INC's meritless claims. ( See Declaration of Jarrow L. Rogovin, Exhibit G attached

hereto). By this motion, Jarrow seeks to recover that portion of its expenses directed to payment

---

[7]  INC has appealed this decision to the Court of Appeals of Aix-En-Provence.

of attorneys' fees for this litigation and its appeal, a total of approximately $313,175. (See

Rogovin Declaration, Exhibit G).

### III.    ARGUMENT

#### A.  INC's Counsel Should Be Ordered to Pay Jarrow's Attorneys' Fees Pursuant to 28 U.S.C. § 1927.

The authority to require INC's counsel to pay Jarrow's attorneys' fees and

expenses is set forth in 28 U.S.C. § 1927, which provides.

> Any attorney or other person admitted to conduct cases in any
> court of the United States or any territory thereof who so multiplies
> the proceedings in any case unreasonably and vexatiously may be
> required by the court to satisfy personally the excess costs,
> expenses, and attorneys' fees reasonably incurred because of such
> conduct.

This Court has the power to impose sanctions under § 1927 where there is clear

evidence that the attorneys' actions in pursuing a claim or suit were undertaken in bad faith.

Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986), cert. denied, 480 U.S. 918 (1987).

Bad faith may be inferred "when the attorney's actions are so completely without merit as to

require the conclusion that they must have been undertaken for some improper purpose such as

delay." See also Steimel v. Incorporated Village of Rockville Centre, 965 F. Supp. 366, 374

(E.D.N.Y. 1997). Id. "Bad faith conduct may include pursuing 'frivolous contentions,'

'frivolous motions,' or 'intentionally dilatory' conduct." ACLI Government Securities, Inc. v.

Rhoades, 907 F. Supp. 66, 68 (S.D.N.Y. 1995) (citations omitted).

While § 1927 applies to unreasonable and vexatious multiplication of

proceedings, sanctions in the form of attorneys' fees may be awarded for the entire course of the

proceedings where, as in this case, the claim should never have been brought. Lewis v. Brown & Root, Inc., 711 F.2d 1287 (5th Cir. 1983), on reconsideration, 722 F.2d 209 (1984), cert. denied, 467 U.S. 1231 (1984); Strain v. Kaufman County District Attorney's Office, 23 F. Supp. 2d 698, 702 (N.D. Tex. 1998) ("[A] district court may invoke this provision [§ 1927] to award fees and costs for an entire course of proceedings if the case never should have been brought in the first place."). Attorneys' fees are a proper sanction under § 1927 where counsel fails to adequately investigate a claim prior to filing suit, or fails to withdraw the claim promptly when the facts become known. Alvarado-Morales v. Digital Equip. Corp., 843 F.2d 613, 618 (1st Cir. 1988). An award of attorneys' fees in this case will not chill legitimate, zealous advocacy on behalf of a client with a colorable claim or position. Courts have not hesitated to award attorneys' fees when a party has prosecuted a meritless claim in bad faith. See Viola Sportswear, Inc. v. Claude Clement Mimun, 574 F. Supp. 619 (E.D.N.Y. 1983)(awarding attorneys' fees under 28 U.S.C. § 1927 and Court's inherent power for prosecution of frivolous claim).

INC's counsel should be sanctioned under § 1927 because, from the filing of this action to the present time, counsel has misstated facts and made arguments that he knew or should have known were meritless. The original Complaint in this case should never have been filed. "It is hornbook law that only a patent owner or an exclusive licensee may sue for patent infringement." Michod v. Walker Magnetics Group, Inc., 115 F.R.D. 345 (N.D. Ill. 1987) (plaintiff ordered to pay defendant's attorneys' fees pursuant to Fed. R. Civ. P. 11 because plaintiff was not an owner or exclusive licensee under patent). INC did not and could not allege in its Complaint that it was the owner of all of the rights in the '360 patent, or that all of the

-15-

owners of the '360 patent had been joined as plaintiffs. INC's counsel knew that it could not

make such an allegation on behalf of INC because INC was already embroiled in litigation over

ownership of the '360 patent in France.[8] Despite this fundamental deficiency in its patent

infringement claim, INC nevertheless filed the Complaint, alleging that it was the owner of "at

least 50%" of the '360 patent. Even if true, which it was not, this allegation was insufficient for

INC to bring its claim under existing law. It is axiomatic that the plaintiff in a patent

infringement suit must hold full title in the patent under suit, or that all co-owners must

voluntarily join the suit as plaintiffs. See Ethicon v. United States Surgical Corp., 135 F.3d 1456

(Fed. Cir. 1998), cert. denied, 525 U.S. 923 (1998); Willingham v. Lawton, 555 F.2d 1340,

1344-45 (6th Cir. 1997).

Moreover, the law is clear that if there is a dispute over ownership of a patent, the

ownership dispute must be resolved before the suit is brought. Jim Arnold Corp. v. Hydrotech

Systems, Inc., 109 F.3d 1567, 1571-72 (Fed. Cir. 1997), reh'g denied, 1997 U.S. App. LEXIS

15403 (Fed. Cir. 1997), cert. denied, sub nom., Baker Hughes, Inc. v. Jim Arnold Corp., 522

U.S. 933 (1997).

The reasons for this rule are amply demonstrated by this case. In its meritless

Complaint, INC, which owns no part of the '360 patent, filed suit claiming that Horphag, a co-

owner of the patent, infringed the very patent that it owned. INC also named 19 other companies

---

[8]  In fact, INC and its counsel were on notice at least as early as 1994. On October 28, 1994, they appeared at a
hearing in the Eastern District of New York. At that hearing, SCIPA agreed that it would not affirmatively assert
a cross-claim for certain proceeds related to the '360 patent. INC was represented at that hearing by Cooper &
Dunham, the firm representing INC in this action. Further, Attorney Norman H. Zivin of Cooper & Dunham
recorded the 1994 Assignment in the USPTO on March 28, 1994.

as defendants, claiming wrongly that they infringed the '360 patent by purchasing product from Horphag. If INC had merely done what the law and the 1985 Agreement required it do -- resolve the dispute over ownership of the patent in France before bringing suit -- all of the defendants and this Court would have avoided years of needless litigation, attorneys' fees and expense.

Indeed, INC did not seek to litigate its incorrect claim that ownership of the '360 patent should be decided under U.S. law. If INC had stated its claim in such a clear manner, it would have resulted in a prompt adverse ruling. Instead, INC's counsel created a legal ruse to disguise the matter as a patent infringement case, blithely making numerous assertions that INC and its counsel knew, or should have known, were false. Viewed in its proper light, INC and its counsel attacked an entire industry using INC's patent infringement claim as a gimmick in the face of an insurmountable jurisdictional problem.

INC did not want to wait, however, because the real purpose of this litigation was to attempt to gain an unfair marketing advantage. INC's Complaint was filed just days before the industry's largest trade show. At that show and since, INC has falsely claimed that it is the sole owner of the '360 patent and that the defendants were infringing the '360 patent. INC also threatened to sue anybody that purchased allegedly infringing products from the defendants.[9]

---

[9] INC made good on this threat by commencing a second suit, approximately ten months later, in federal court in California against Horphag and several additional Horphag customers. In that case, unlike this one, INC conceded that it did not possess the proper ownership in the '360 patent to have standing to bring the suit, so it and its counsel created yet another fiction to bring the suit by naming Horphag as an "involuntary defendant." The Northern District of California granted summary judgment against INC, finding that the French court decision was entitled to comity, the French Court's decision was not inconsistent with United States patent law, the District of Connecticut Court's decision deserved full preclusive effect with regard to INC's Motion for Leave to Amend its Complaint, and INC's and Attorney Zivin's strategy of suing Horphag as an "involuntary defendant" did not cure INC's lack of standing.

These actions demonstrate that INC filed its frivolous suit for the improper purpose of gaining an unfair competitive advantage in the market.

After filing its frivolous Complaint, INC and its counsel kept the suit alive and continued to unreasonably and vexatiously multiply the proceedings by misstating facts and making frivolous, unsupported legal arguments. For example, counsel for INC asserted that INC was a bona fide purchaser for value without notice of the 1985 Agreement between Horphag and SCIPA, a contention that both French courts found could not be seriously asserted. This Court similarly found that this claim was without merit since "INC was aware of the SCIPA-Horphag dispute prior to receiving the purported assignment from SCIPA, under American law it cannot be a bona fide purchaser of the '360 patent." (Order at 9). Thus, while INC plainly knew it could not be a bona fide purchaser under French or American law, it continued to make the meritless claim that it was.

INC also made the meritless claim that Horphag could not be an owner of the '360 patent because the 1985 Agreement had expired. There is no evidence to support a claim that Horphag's ownership interest has ever terminated. The 1985 Assignment unequivocally transferred ownership of a 50% interest in the '360 patent to Horphag, and nothing in the terms of the 1985 Assignment would divest Horphag of ownership. Moreover, nothing in the 1985 Agreement supports a claim that Horphag was divested of its ownership interest. Simply put, this specious claim, concocted by INC's counsel, was pure bombast designed solely to prolong this litigation needlessly.

Similarly, INC's specious argument regarding the 1996 Assignment from Masquelier was never more than an illusory spin concocted by INC's counsel in order to force defendants to continue defending their meritless claims. There was no reasonable basis for INC's claim that Horphag's ownership rights had "reverted" to Masquelier, not in law or in fact. Even a cursory examination of the 1985 Assignment and the 1985 Agreement demonstrates that there is nothing in those documents that could possibly divest Horphag of its ownership interest. Rather, knowing that INC's claim as originally filed was doomed, INC and its counsel futilely attempted to create a claim out of a whole cloth woven from one legal fiction after another.

Additionally, contrary to clearly established law, INC claimed that French courts could not address ownership of the '360 patent because ownership of a U.S. patent had to be decided under U.S. (federal) law. Interpretation of collateral agreements relating to ownership of a patent has long been held to be a matter to be decided under applicable state law (in this case the law of France as agreed upon in the 1985 Agreement.) See Williams v. Star Sand Co., 35 F. 369, 371 (W.D. Pa. 1888), citing Wilson v. Sandford, 51 U.S. (10 How.) 99, 13 L. Ed. 344 (1850). See also Beghin-Say Int'l v. Rasmussen, 733 F.2d 1568 (Fed. Cir. 1984). INC's counsel has never presented any cogent argument or precedent that would support this meritless argument.

Even after the French appeals court affirmed that INC was not a co-owner of the '360 patent and that Horphag was and is a co-owner of the patent, INC and its counsel refused to withdraw the claims. Instead, INC and its counsel forced the defendants to renew their motions to dismiss and then to recast their motions as motions for summary judgment. INC responded by

raising the same frivolous arguments and misstating the findings of the French courts. See

Exhibit A attached. This conduct further supports Jarrow's request for attorneys' fees in this

case. See Fifth Third Bank v. Boswell, 125 F.R.D. 460 (S.D. Ohio 1989) (sanctions awarded

under § 1927 where counsel for plaintiff failed to withdraw meritless claim and forced defendant

to file summary judgment motion).

Nothing if not persistent, in the face of this Court's Order granting summary

judgment on INC's patent infringement claims, INC and its counsel attempted to further multiply

the proceedings by fabricating new arguments in their motion for reconsideration (Docket No.

320). INC claimed that there was "new evidence" regarding the merger of SCIPA into CEP, a

company purportedly owned by INC, blithely ignoring Horphag's ownership interest that is fatal

to any infringement claim against Jarrow or the other defendants. INC also made a thirteenth

hour request to amend its Complaint -- four years after bringing a Complaint that it never had

standing to bring -- to add CEP as a plaintiff and make a new claim against Horphag. Thus, even

at this late date, INC continued to waste this Court's time and impose unnecessary expense on

the defendants by making frivolous arguments. The Commercial Court of Grasse recently

annulled the merger of CEP and SCIPA for fraud (See Exhibit I).

Disingenuous to the end, even after entry of judgment by this Court on May 1,

2000, INC and its counsel continued to misstate facts and to make specious, contradictory legal

arguments. In its May 10, 2000 memorandum opposing certain defendants' motions for

attorneys' fees pursuant to 35 U.S.C. § 285, INC relied entirely on its own discredited version of

the "facts" in order to argue that it brought this action in good faith. Completely ignoring this

Court's findings and the indisputable evidence, INC and its counsel continued to argue that INC was a bona fide purchaser from SCIPA, and that SCIPA had the right to assign its interest in the '360 patent under the 1985 Agreement.

Moreover, INC and its counsel made the incredible argument that § 285 does not apply because only "non-patent issues" were litigated. Having invoked this Court's jurisdiction under the Patent Statutes and pursued claims of patent infringement for over four years, INC and its counsel now claimed that the Patent Statute allowing sanctions does not apply because INC never owned the patent it sought to enforce. INC's counsel makes this conclusory argument without pointing to any specific evidence. This argument is frivolous on it face. Indeed, on May 8, 2000, two days before arguing to this Court that this case did not involve litigation of patent issues, INC filed a Notice of Appeal to the Federal Circuit. As counsel for INC surely knows, the Federal Circuit's jurisdiction is limited to cases involving at least one issue arising under the Patent Statutes. Thus, consistent with counsel's bad faith tactics pursued throughout this litigation, counsel for INC seeks to avoid the consequences of such actions by making further frivolous arguments.

From the beginning of this case, INC and its counsel have made frivolous arguments plainly contradicted by well established law. Whenever their arguments were rejected, INC and its counsel unreasonably and vexatiously prolonged this litigation by changing factual assertions, mischaracterizing court decisions, and concocting new, though equally frivolous, legal arguments. It is clear from the record of this case and the various French actions that INC's counsel was intimately aware of the significant controversy surrounding the

ownership of the '360 patent through the French litigation at least as early as six months prior to initiating this suit, and was or with a modicum of investigation could have been aware of the ownership dispute as early as 1994. Despite this knowledge, INC's counsel continued to unjustly multiply the proceedings for more than five years, wasting the time and money of this Court and the 18 defendants.[10]  Their conduct, particularly when viewed in conjunction with INC's marketing activity, leads inexorably to the conclusion that this action has been prosecuted in bad faith. Therefore, Jarrow requests that this Court sanction counsel for INC under 28 U.S.C. § 1927 by ordering counsel to reimburse Jarrow for its attorneys' fees expended in defending this action. An award of attorneys' fees under the circumstances present in this case will send a clear message that irresponsible advocacy and pursuit of meritless claims for an improper purpose will not be tolerated.

**B. This Is An Exceptional Case Under 35 U.S.C. § 285, and INC Should Be Ordered to Pay Jarrow's Attorneys' Fees Incurred in Defending This Action.**

Jarrow also seeks an order that INC be required to reimburse Jarrow for its attorneys fees incurred in defending itself against INC's meritless claims under 35 U.S.C. § 285. In order to avoid burdening the Court with repetitious briefs and arguments on this issue, Jarrow hereby incorporates the arguments in the following briefs previously filed:

(1) Memorandum of Defendants Horphag, M.W., Kaire and NOW for Attorneys' Fees Pursuant to 35 U.S.C. § 285 dated April 19, 2000 (Docket No. 341);

---

[10] If the Court determines that there is not sufficient evidence to support a 28 U.S.C. § 1927 finding, Jarrow requests that it be permitted to conduct further factual discovery as necessary.

(2) Defendants' Indena U.S.A. and Enzymatic Therapy, Inc., Memorandum in Support of Their Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285, Fed. R. Civ. P. 54(d), and Civil Local Rule 9(f) dated April 19, 2000 (Docket No. 338);

(3) Reply of Defendants Horphag, M.W., Kaire and NOW to Plaintiff's Opposition to the Defendants' Motions for Attorneys' Fees dated May 22, 2000 (Docket No. 357); and

(4) Defendants' Indena U.S.A. and Enzymatic Therapy, Inc.'s Reply to Opposition to Defendants' Motion for Attorneys' Fees dated May 24, 2000 (Docket No. 358).

Jarrow also joins in Defendants Horphag, M.W., Kaire, and Now's Renewed Motion for Attorneys' Fees filed on August 9, 2001 (Docket No. 374) and Indena U.S.A., and Enzymatic Therapy, Inc's Renewed Motion for Attorneys' Fees filed on August 8, 2001 (Docket No. 376).

## IV.    CONCLUSION

For the reasons stated above, defendant Jarrow Formulas respectfully requests that the Court order INC and its counsel to pay Jarrow Formulas' attorneys' fees incurred in defending this case.

DEFENDANT JARROW FORMULAS, INC.,
BY ITS ATTORNEYS

By_____
    Mark D. Giarratana(CT 10410)
    Eric E. Grondahl (CT 08988)
    Eric W. Wiechmann (CT 04331)
    CUMMINGS & LOCKWOOD
    CityPlace I
    185 Asylum Street
    Hartford, Connecticut 06103-3495
    (860) 275-6700
       and
    Philip Scott Polisky
    450 West 24th Street
    Suite 2F
    New York, New York 10011
    (212) 206-7283

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing DEFENDANT JARROW

FORMULAS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED

MOTION FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1927 AND 35 U.S.C. § 285

has been mailed, postage prepaid, this 15th day of August, 2001 to:

*Horphag Research, Ltd., Kaire*
*Int'l Inc., MW Int'l Inc., &*
*NOW Foods*:
Marvin S. Gittes
COBRIN & GITTES
750 Lexington Avenue
New York, NY 10022

Stuart D. Rosen, Esq.
BINGHAM, DANA & GOULD, LLP
100 Pearl Street
Hartford, CT 06103-4507

*Arkopharma, Inc.:*
Joseph A. Calvaruso
Richard C. Komson
MORGAN & FINNEGAN
345 Park Avenue
New York, NY 10154-0053

Thomas L. Casagrande, Esq.
WIGGIN & DANA
One Century Tower
New Haven, CT 06508-1832

*Chemco Industries, Inc. & USANA:*
Philmore H. Colburn
Michael J. Rye
CANTOR COLBURN LLP
55 Griffin Road South
Bloomfield, CT 06002

*Indena U.S.A. & Enzymatic Therapy, Inc.:*
Thomas G. Rowan
Brian M. Poissant
PENNIE & EDMONDS
1155 Avenue of the Americas
New York, NY 10036

Maureen Danehy Cox, Esq.
CARMODY & TORRENCE
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721

*International Nutrition Co.:*
Norman H. Zivin
Donna A. Tobin
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, NY 10036

Jonathan A. Flatow, Esq.
WAKE, SEE, DIMES & BRYNICZKA
27 Imperial Avenue
P.O. Box 777
Westport, CT 06881

*Free Life Int'l Ltd.:*
Steven P. Ciardiello
2840 Whitney Avenue
Hamden, CT  06518

*New Vision Int'l, Inc.:*
Edwin D. Schindler
Five Hirsch Avenue
P.O. Box 966
Coram, NY  11727-0966

Patrick M. Fahey
SHIPMAN & GOODWIN
One American Row
Hartford, CT  06103

*Traco Labs, Inc.:*
Robert Ullman
ULLMAN SHAPIRO & ULLMAN
299 Broadway, Suite 1700
New York, NY  10007

Eric D. Daniels
ROBINSON & COLE
One Commercial Plaza
Hartford, CT  06103

*Nutraceutical Corp.:*
Mark A. Pals
Jay I. Alexander
KIRKLAND & ELLIS
200 East Randolph Drive
Suite 5300
Chicago, IL  60601

James Sicilian, Esq.
Matthew J. Becker, Esq.
DAY, BERRY & HOWARD
CityPlace I
Hartford, CT  06103-3499

*Twin Laboratories, Inc.:*
Daniel Ebenstein
Charles Macedo
AMSTER, ROTHSTEIN & EBENSTEIN
90 Park Avenue
New York, NY  10016

Bennett H. Last, Esq.
GILBRIDE, TUSA, LAST &
  SPELLANE LLC
31 Brookside Drive
P.O. Box 658
Greenwich, CT  06386

*USANA, Inc.:*
Brent Lorimer
Eric Maschoff
H. Ross Workman
WORKMAN, NYDEGGER & SEELEY
100 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT  84111

*Greater Continents, Inc.:*
Richard A. Merriam
President, Greater Continents, Inc.
140 Arrowwood Lane
San Mateo, CA  94403

Eric W. Wiechmann

.HrtLib1:372952.1 08/15/01