UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JARROW FORMULAS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:01-CV-578 (DJS) |
| ·v. | ) | |
| | ) | |
| INTERNATIONAL NUTRITION | ) | |
| COMPANY, EGBERT SCHWITTERS, | ) | |
| NORMAN H. ZIVIN, and JACK | ) | |
| MASQUELIER, | ) | |
| | ) | |
| Defendants. | ) | July 24, 2001 |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

ERIC W. WIECHMANN (CT 04331)
MARK D. GIARRATANA (CT 10401)
ERIC E. GRONDAHL (CT 08988)
ALEXANDRA B. STEVENS (CT 20300)
Cummings & Lockwood
CityPlace I
185 Asylum Street
Hartford, CT 06103
Tel: (860) 275-6700
Fax: (860) 724-3397

**Oral Argument Requested**

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. STATEMENT OF FACTS ............................................................................... 1
   A. OWNERSHIP OF THE '360 PATENT. ........................................................ 2
   B. THE PURPORTED 1994 ASSIGNMENT TO INC. ....................................... 2
   C. THE FRENCH AND CONNECTICUT LITIGATION FOLLOWING THE 1994 ASSIGNMENT. 3
   D. THE SECOND PATENT INFRINGEMENT LITIGATION IN CALIFORNIA. ........... 4
   E. THE FRENCH TRIAL COURT DECISION. ................................................... 5
   F. THE 1996 "CONFIRMATORY" ASSIGNMENT. ........................................... 5
   G. THE FRENCH APPELLATE, CONNECTICUT AND CALIFORNIA DECISIONS. ..... 6
   H. THE FEDERAL CIRCUIT AND FRENCH COMMERCIAL COURT DECISIONS. ..... 8

III. STANDARD OF REVIEW .............................................................................. 8

IV. ARGUMENT ................................................................................................. 9
   A. JARROW'S ALLEGATION THAT DEFENDANTS ASSERTED A PATENT THEY KNEW
      THEY DID NOT OWN IS A QUESTION OF FACT. ...................................... 9
   B. JARROW'S THIRD CLAIM UNDER CUTPA STATES A CLAIM FOR RELIEF. ..... 15
   C. JARROW'S FOURTH CLAIM FOR UNFAIR COMPETITION UNDER THE LANHAM ACT
      ASSERTS SUFFICIENT FACTS SUPPORTING ITS CLAIM. ............................ 16
   D. JARROW'S FIFTH CLAIM FOR VEXATIOUS LITIGATION STATES
      A CLAIM FOR RELIEF. ........................................................................ 16
   E. JARROW'S SIXTH CLAIM FOR TORTIOUS INTERFERENCE WITH ADVANTAGEOUS
      BUSINESS RELATIONS STATES A CLAIM FOR RELIEF. .............................. 19
   F. JARROW'S CLAIMS WERE NOT COMPULSORY COUNTERCLAIMS IN THE UNDERLYING
      PATENT INFRINGEMENT SUIT. ............................................................. 20

V. CONCLUSION ............................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

Adams v. Jacobs,
     950 F.2d 89 (2d Cir. 1991)................................................................................21

Ancona v. Manafort Bros., Inc.,
     56 Conn. App. 701 (Conn. App. 2000)......................................................15, 16

CVD, Inc. v. Raytheon Co.,
     769 F.2d 842 (1st Cir. 1985), cert. denied, 475 U.S. 1016 (1986) ...................10

Cortec Indus., Inc. v. Sum Holding L.P.,
     949 F.2d 42 (2d Cir. 1991)...........................................................................10, 11

Couldock & Bohan, Inc. v. Societe Generale Secs. Corp.,
     93 F. Supp. 2d 220 (D. Conn. 2000).............................................................19, 20

Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.,
     233 F.3d 697 (2d Cir. 2000)...............................................................22, 23, 24

DeLaurentis v. City of New Haven,
     220 Conn. 225, 597 A.2d 807 (1991) ...................................................9, 17, 18

Ethicon, Inc. v. United States Surgical Corp.,
     135 F.3d 1456 (Fed. Cir. 1998)...........................................................................13

FilmTec v. Hydranautics,
     67 F.3d 931 (Fed. Cir. 1995)................................................................................9

Handgards, Inc. v. Ethicon, Inc.,
     601 F.2d 986 (9th Cir. 1979) .............................................................................10

Hydranautics v. FilmTec Corp.,
     70 F.3d 533 (9th Cir. 1995) .............................................12, 13, 22, 23, 24

International Nutrition Company v. Horphag Research Ltd. et al.,
     Slip Op. No. 00-1408 (Fed. Cir. July 16, 2001)............................................8, 14

Litton Systems, Inc. v. American Telephone and Telegraph Co.,
     700 F.2d 785 (2d Cir. 1982)................................................................................9

Mercoid Corp. v. Mid-Continent Inv. Co.,
     320 U.S. 661, 88 L. Ed. 376, 64 S. Ct. 268 (1944)..........................................21

Nobelpharma AB et al. v. Implant Innovations, Inc.,
     151 F.3d 1059 (Fed. Cir. 1997)..........................................................................10

Official Publications, Inc. v. Fredericks,
  884 F.2d 664 (2d Cir. 1989)............................................................................8

Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,
  508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)...............................9, 11

Schering Corp. v. Roussel-Uclaf SA,
  104 F.3d 341 (Fed. Cir. 1997)........................................................................13

Shea v. Berry,
  93 Conn. 475 (1919) .....................................................................................18

State of Connecticut v. Physicians Health Servs. of Connecticut, Inc.,
  103 F. Supp. 2d 495 (D. Conn. 2000)..............................................................8

Stone v. Crocker,
  41 Mass. 81 (1833) ...................................................................................9, 10

Suburban Restoration Co., Inc. v. ACMAT Corp.,
  700 F.2d 98 (2d Cir. 1983)............................................................................15

Vandersluis v. Weil,
  176 Conn. 353 (1978) ...................................................................................18

Weinstein & Wisser v. Arnold L. Beizer,
  1994 Conn. Super. LEXIS 1799 (1994)..........................................................17

## OTHER

Teague I. Donahey, Antitrust Counterclaims in Patent Infringement Litigation: Clarifying
the Supreme Courts Enigmatic Mercoid Decision,
  39 IDEA: J.L. & TECH. 225 (1999)................................................................22

## STATUTES

C.G.S. § 52-568 ............................................................................................................16

## RULES

F.R.C.P. 12(b)(6) ..........................................................................................................12

F.R.C.P. 13(b)................................................................................................................23

F.R.C.P. 56....................................................................................................................11

## I.    INTRODUCTION

Plaintiff Jarrow Formulas, Inc. ("Jarrow"), submits this Memorandum of Law in opposition to the Motion of Defendants International Nutrition Company ("INC"), Egbert M. Schwitters, ("Schwitters"), Norman H. Zivin ("Zivin"), and Jack Masquelier ("Masquelier"), collectively the "Defendants," to Dismiss all counts against them for failure to state a claim upon which relief can be granted.

The detailed allegations in the Verified Complaint clearly satisfy all procedural and legal standards appropriately applied to antitrust and related claims at the pleading stage. Jarrow has alleged in detail in the Verified Complaint that Defendants initiated two patent litigations against virtually the entire PAC industry, and that at the time each lawsuit was initiated, and thereafter, the Defendants knew that INC did not own the '360 patent and that INC did not possess a good faith basis for asserting ownership of the patent. The Verified Complaint further alleges that Defendants filed and maintained these lawsuits, and promoted their false claims of ownership and their infringement suits throughout the PAC market to intimidate the market into buy PACs from Defendants, all as part of a program to monopolize the PAC market. Thus, the question of whether the underlying litigations were objectively baseless is, at the very least, replete with disputed issues of fact, and therefore the motion to dismiss should be denied for at least this reason.

## II.    STATEMENT OF FACTS

The material facts and history underlying Jarrow's antitrust and related claims as alleged in the Verified Complaint are summarized below in order to show the tangled web woven by Defendants to pursue meritless litigation at all costs in order to obtain a monopoly and to restrain trade in the PAC market.

### A.    Ownership Of The '360 Patent.

On April 1, 1985, Jack Masquelier, the alleged inventor of the '360 patent, executed an Assignment (the "1985 Assignment") whereby he unconditionally assigned the "entire right, title and interest in and to" the '360 patent, jointly to Societe Civile d'Investigations Pharmacologiques d'Aquitaine ("SCIPA") and Horphag Overseas Ltd., the predecessor of Horphag Research Ltd. ("Horphag"). SCIPA is a French company founded and controlled by Jack Masquelier for the purpose of holding an interest in the '360 patent. Horphag and SCIPA recorded the 1985 Assignment in the U.S. Patent & Trademark Office ("USPTO") upon filing the application of the patent, and thereafter were the joint owners of record of the patent. (Verified Complaint ¶ 10).

On April 26 and 29, 1985, several weeks after Masquelier executed the 1985 Assignment, Horphag and SCIPA entered into a joint development agreement ("the 1985 Agreement") governing their joint ownership of the '360 patent. Under the 1985 Agreement, the ownership rights of the parties were governed by French law, thereby restricting the ability of either owner to transfer its interest in the patent. (Verified Complaint ¶ 11).

### B.    The Purported 1994 Assignment To INC.

INC is a Liechtenstein company, and was solely owned and controlled by Egbert Schwitters at all times relevant to this litigation. Neither INC nor Schwitters were ever parties to the 1985 Assignment or the 1985 Agreement, and therefore never acquired any rights in the '360 patent under either of those documents. (Verified Complaint ¶¶ 3, 11).

In 1994, Defendants engineered a scheme with the ostensible intent of wresting ownership of the '360 patent from Horphag. Despite the terms of the 1985 Agreement, and Horphag's conspicuous use and commercialization of products covered by the '360 patent, Defendants caused to be executed on March 18, 1994, without notice to co-owner Horphag, an

-2-

"Assignment" purporting to assign SCIPA's 50% interest in the '360 patent to INC ("the 1994 Assignment"). To give the transaction an air of legitimacy, Defendants recorded the 1994 Assignment in the USPTO which, in turn, caused the USPTO to erroneously list INC as an owner of record of the patent.[1]  At the time of the 1994 Assignment, INC was aware that SCIPA and Horphag were already embroiled in disputes regarding ownership of the '360 Patent. Indeed, two French courts, this Court, and the Federal Circuit rejected as meritless INC's claim that it was a bona fide purchaser without notice. (Verified Complaint ¶¶ 12, 13, 24, 26, 28, 29, 31, 34).

### C.   The French And Connecticut Litigation Following The 1994 Assignment.

In October 1995, after learning of the 1994 Assignment and INC's claim to ownership of the '360 patent, Horphag brought suit in Bordeaux, France, against INC, Schwitters, SCIPA and Masquelier, seeking to void the 1994 Assignment and reach a final resolution of the ownership dispute between those parties. Horphag rightfully brought suit in France because the 1985 Agreement governing Horphag's and SCIPA's joint ownership of the patent required such action. Horphag made clear from the start that the 1994 Assignment violated the 1985 Agreement and French law governing the rights of co-owners of intellectual property; that SCIPA itself had previously warned Horphag that "no transaction can be made by any single co-owner" of the patent; and that the 1994 Assignment was made in bad faith. (Verified Complaint ¶ 14).

Then, on March 6, 1996, nearly six months after Horphag had initiated suit in France and put INC on notice of the specious nature of its ownership claim, Defendants brought suit here in Connecticut claiming, among other things, that Horphag and eighteen of its customers had infringed the '360 patent. INC -- blatantly ignoring that it had yet to resolve the question of whether it had any ownership interest in the '360 patent -- nevertheless claimed, with all evidence

---

[1]  The USPTO merely records assignments but does not review documents purporting to be assignments for legitimacy.

to the contrary, that INC was the owner of "at least an undivided one-half interest in the '360 patent" and that, "on information and belief," Horphag was no longer a co-owner of the '360 patent. (Verified Complaint ¶ 15).

At the time of filing the Connecticut lawsuit, Defendants knew, or reasonably should have known, that INC did not have a good faith basis to claim ownership of the '360 patent, and that INC did not have a good faith basis to assert that Jarrow was infringing the purported trademark "OPC-85". (Verified Complaint ¶ 16). Further, the Defendants knew they were going to lose the litigation over patent ownership in France, and they brought the patent infringement litigation in Connecticut in bad faith as part of a program to monopolize the PAC market. Defendants meanwhile pursued and widely publicized their patent ownership claims, using the frivolous infringement lawsuit to intimidate the PAC market, all with near reckless abandon. The Connecticut infringement suit was filed days before the largest industry trade show in the world with close to 3,000 booths and more than 30,000 attendees. INC and Schwitters publicized the suit heavily at the trade show, and afterwards continually threatened to sue the competitors and customers and to generally disrupt the PAC marketplace. (Verified Complaint ¶ 15-18).

**D.    The Second Patent Infringement Litigation in California.**

On January 31, 1997, Defendants initiated another baseless patent infringement suit in the United States District Court for the Northern District of California, against Horphag and five other defendants falsely claiming that INC owned the '360 patent and asserting infringement of the patent. The second suit was filed after this Court had stayed the Connecticut litigation pending the outcome of the earlier-filed French litigation and a reexamination of the '360 patent in the USPTO. The Defendants knew that they did not own the '360 patent, and

nevertheless pursued this second infringement litigation as part of a series of predatory litigations directed to monopolizing the PAC market. (Verified Complaint ¶ 22).

**E.    The French Trial Court Decision.**

On March 21, 1997, this Court stayed the Connecticut infringement litigation pending the outcome of the French litigation. In concert with their tactic to pursue meritless infringement claims at any cost (and without first resolving the dispute over ownership of the patent), Defendants continued to publicize to the trade that INC was the owner of the '360 patent, that INC was the only authorized source of products allegedly covered by the patent, and that INC would sue any competitor believed to infringe. (Verified Complaint ¶ 24).

On March 25, 1997 the French trial court declared the 1994 Assignment to INC void, *ab initio*, because the 1985 Agreement between Horphag and SCIPA required the parties to litigate in France under French law, and French law prevented SCIPA from assigning its interest in the '360 patent to INC without offering Horphag a right of first refusal. Despite this ruling, Defendants continued to aggressively pursue the two U.S. infringement actions and otherwise promote their patent ownership and infringement threats. (Verified Complaint ¶ 24).

**F.    The 1996 "Confirmatory" Assignment.**

In an argument obviously engineered to prolong the patent infringement litigation, Defendants claimed that Horphag lost its ownership interest in the '360 patent (apparently by virtue of the 1985 Agreement, which INC, other than for the purpose of this, otherwise refused to recognize), and that Horphag's interest had somehow reverted to Masquelier. On October 10, 1996, Masquelier executed a second purported assignment ("the 1996 Assignment"), stating that he believed that Horphag's interest in the '360 patent had reverted to him, and that he, in turn, assigned his interest in the '360 patent to INC (which, at the time of this assignment, was nil). In an attempt to legitimize the transaction and give INC the appearance of ownership, Defendants

recorded the 1996 Assignment in the USPTO. The 1996 Assignment was based on Defendants'

contrived assumption that the 1995 Assignment expired, and that the rights reverted to

Masquelier, despite there being no such language outside of such conclusions uttered and written

by Defendants. The fact that such conclusions needed to be litigated first did not phase

Defendants from using them to multiply the underlying litigation. (Verified Complaint ¶ 19).

Defendants did not withdraw the patent infringement Complaint in the face of the

French trial court's decision on ownership of the '360 patent. Instead, Defendants pressed their

frivolous claims, now adding their meritless contention that Masquelier's 1996 Assignment, in

which Masquelier purported to assign ownership rights he no longer had, conferred the requisite

ownership interest on INC. (Verified Complaint ¶¶ 19, 24)

G.    **The French Appellate, Connecticut and California Decisions.**

On May 28, 1998, the French Appellate Court affirmed the decision of the French

trial court. The French Appellate Court specifically held that (1) INC was not an owner of the

'360 patent because the purported 1994 Assignment from SCIPA was void *ab initio*, and

(2) Horphag was and is a co-owner of the '360 patent. (Verified Complaint ¶ 26).

On March 21, 2000, this Court granted summary judgment in favor of Jarrow and

the other patent infringement defendants based on clear documentary evidence and well

established law.[2] This Court found that: (1) INC was not a co-owner of the '360 patent and that

INC had no standing to sue for infringement of that patent; (2) INC was not a bona fide purchaser

for value because at the time INC allegedly obtained an ownership interest from SCIPA, INC

knew that Horphag was a co-owner and there was an ownership dispute between SCIPA and

---

[2]    No discovery was necessary for the Court to dismiss INC's meritless claims. The documentary evidence
submitted to the Court in support of the summary judgment motions had been readily available to Defendants
before they had even filed the underlying suit.

Horphag; (3) the 1996 Assignment from Masquelier to INC did not confer any ownership interest in the '360 patent to INC; and (4) even if INC had an ownership interest (which it did not), it could not bring this suit without Horphag voluntarily joining as a plaintiff. (Verified Complaint ¶ 28).

With their array of frivolous arguments soundly rejected by two French courts and this Court, Defendants still refused to cease harassing the industry and instead filed yet another baseless motion. On March 31, 2000, Defendants filed a motion asking this Court to reconsider its summary judgment decision. In that motion, Defendants argued that the Court should allow Masquelier's company, SCIPA, to join the suit. Defendants further argued that SCIPA was merged into a company named CEP allegedly owned by Schwitters and INC, and that CEP should be allowed to replace INC as the plaintiff. By doing so, Defendants finally conceded, albeit indirectly, that INC was not a co-owner of the '360 patent and did not have standing to bring suit for patent infringement. This Court denied INC's motion and entered judgement in favor of Jarrow and the other defendants. (Verified Complaint ¶ 29).

On September 5, 2000, the Northern California District Court also granted summary judgment against INC, finding that the French Court decision was entitled to comity, the French Court's decision was consistent with United States patent law, the Connecticut Court's decision deserved full preclusive effect with regard to INC's Motion for Leave to Amend its Complaint, and Defendants' strategy of suing Horphag as an "involuntary defendant" did not cure INC's lack of standing. (Verified Complaint ¶ 31).

-7-

**H.**    **The Federal Circuit and French Commercial Court Decisions.**

Despite the existence of numerous court rulings against them in France and the

United States which held that INC had no ownership rights in the '360 patent, Defendants'

appealed the judgment of this Court to the Court of Appeals for the Federal Circuit. (Verified

Complaint ¶ 30).

On August 6, 1999, Horphag brought another suit in France against INC,

Schwitters and Masquelier seeking to enjoin their continued attempts to misuse the '360 patent.

On February 2, 2001, the French commercial court ruled that the exploitation by INC of the '360

patent was fraudulent, that the merger of CEP and SCIPA is annulled for fraud, that INC and CEP

are enjoined under penalty of fine from exploiting the '360 patent, and that Horphag may exercise

its right of preemption to become the sole owner of the '360 patent. (Verified Complaint ¶ 34).

On July 16, 2001, the Federal Circuit affirmed the decision of this Court in its

entirety. International Nutrition Company v. Horphag Research Ltd. et al., Slip Op. No. 00-1408

(Fed. Cir. July 16, 2001).

**III.    STANDARD OF REVIEW**

In deciding a motion to dismiss for failure to state a claim upon which relief can be

granted, the Court is required to "accept as true all factual allegations in the complaint" and

construe well pleaded factual allegations in favor of the plaintiff. State of Connecticut v.

Physicians Health Servs. of Connecticut, Inc., 103 F. Supp. 2d 495, 500 (D. Conn. 2000). The

standard of review is "heavily weighted in favor of the plaintiff. Official Publications, Inc. v.

Fredericks, 884 F. 2d 664 (2d Cir. 1989). Of importance in determining whether a complaint will

be dismissed is "not whether the plaintiff will prevail, but whether [it] is entitled to offer evidence

to support [its] claims." Physicians Health, 103 F. Supp. at 501 (citing U.S. v. Yale New Haven

Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990)).

-8-

## IV.    ARGUMENT

### A.    Jarrow's Allegation That Defendants Asserted A Patent They Knew They Did Not Own Is A Question Of Fact.

Defendants invite legal error by positing the core issue on their motion to dismiss - - whether Defendants were objectively reasonable in bringing the underlying litigation -- as a question of law for the Court to decide. (Defendants' Memo. at pp. 8-13, Dkt. # 13).

In support, Defendants cite the Federal Circuit's decision in FilmTec v. Hydranautics, 67 F.3d 931 (Fed. Cir. 1995), which held that a suit could not be objectively baseless as a matter of law where the antitrust defendant prevailed in the district court in the underlying patent litigation. FilmTec, 67 F.3d at 936. The holding is of no help to Defendants here, where INC lost in the District Court as a matter of law, and the judgment was affirmed by the Court of Appeals for the Federal Circuit.

Defendants also cite PRE to support their argument that the issue of objective reasonableness is one of law. PRE's holding is also readily distinguishable. In PRE, the alleged rationale for bad faith litigation was assertion of a claim of copyright infringement that was unsettled as a legal matter. Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 53-54, 113 S. Ct. 1920, 123 L.Ed. 2d 611 (1993). No such unsettled legal issues were involved here.

It is well established that the question of whether patent litigation is brought in bad faith is an issue of fact to be decided by the jury. Litton Systems, Inc. v. American Telephone and Telegraph Co., 700 F.2d 785, 811-813 (2d Cir. 1982) (question of whether the suit was objectively baseless was submitted to the jury). See also DeLaurentis v. City of New Haven, 220 Conn. 225, 597 A.2d 807 (1991) (the question of whether a defendant's claims lacked "probable cause" should be submitted to the jury where the underlying facts are disputed); and

-9-



Stone v. Crocker, 41 Mass 81, 84-85 (1833) (whether the facts and circumstances exist to show probable cause is a question of fact that necessarily must be submitted to the jury) (cited with approval in Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 53-54, 113 S. Ct. 1920, 123 L.Ed. 2d 611 (1993)).

In Handgards, Inc. v. Ethicon, Inc., 601 F.2d 986, 996 (9th Cir. 1979) ("Handgards I"), the court considered the tension between the exclusionary rights which patent law affords to a patentee and the anti-monopolistic goals of antitrust law. Handgards I, 610 F.2d at 996. The court held that the jury plays the key role in resolving this tension. Id. See also CVD, Inc. v. Raytheon Co., 769 F.2d 842, 852 (1st Cir. 1985), cert. denied, 475 U.S. 1016 (1986), where the court considered a number of factors relating to the issue of bad faith, and determined that it was appropriate for the jury to conclude that the defendant had acted in bad faith. CVD, 769 F.2d at 852-54.

Any doubt on the legal standard for antitrust claims based on patent activities, and the role of the jury in determining liability, was put to rest by the Federal Circuit in Nobelpharma AB et al. v. Implant Innovations, Inc., 151 F.3d 1059, 1068 (Fed. Cir. 1997), which addressed "whether conduct in processing or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws . . . ." Nobelpharma affirmed a jury verdict of antitrust liability based on a Walker-Process-type antitrust claim (fraud on the Patent Office). However, the underlying district court decision made clear that both Walker Process- and Handgards-type claims are jury questions. Nobelpharma, 151 F.3d at 1063.

The case law cited by Defendants at page 7 of their Memorandum for the proposition that a court may, at times, look somewhat beyond the Complaint, does not compel a different result. Under Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991), a

court may assess allegations of fraud which are expressly framed or based upon particular statements or documents by looking at the entire statement or document in which the statement is contained, even though the plaintiff may not have attached the documents to the Complaint. Cortec does not, however, authorize Defendants to re-characterize Jarrow's allegations in the Complaint or to evade Defendants' heavy burden under Rule 56 by submitting voluminous, but selective, extra-complaint evidence, to attempt to refute a fact allegation on the merits.

Jarrow has specifically alleged that Defendants knew that they did not have a good faith basis to assert ownership of the '360 patent, and nevertheless undertook baseless and vexatious litigation in Connecticut and California against Jarrow and numerous other defendants as part of a program to monopolize the PAC market. (See, e.g., the Verified Complaint at ¶¶ 9 and 16). It is axiomatic that no reasonable litigant would have initiated or maintained suit for patent infringement knowing that he did not own the patent. Accordingly, the underlying patent infringement suit was objectively baseless for at least this reason.

Defendants argue at pages 11-12 of their Memorandum (Dkt. #13) that the underlying patent infringement suit was not objectively baseless because:

- At the commencement of the suit, INC held "what it believed to be" a valid assignment from S.C.I.P.A. of a one-half interest in the '360 patent.[3]

- INC "believed" Horphag's interest in the '360 patent had reverted to Masquelier.

---

[3]    Although INC now claims it believed at the time that it filed the patent infringement suit it owned only one-half of the patent, INC nevertheless alleged throughout the patent infringement litigation that it owned the entire patent. This further demonstrates that at the very least there are disputed issues of fact as to whether INC possessed a good faith belief that it owned the patent, and whether the facts giving rise to INC's purported ownership beliefs were sufficiently reliable or complete to cause a litigant under the circumstances to reasonably expect success on the merits. PRE, 508 U.S. at 63; 113 S. Ct. at 1930, and 123 L. Ed. 2d at 626.

-11-

- In 1996 (after commencing the patent infringement suit), Masquelier executed the Confirmatory Assignment, and INC received "what it believed" was full ownership of the '360 patent.

Jarrow alleges that INC and the other Defendants did not, in good faith, possess any of these "beliefs", and moreover, that any reasonable litigant under the circumstances either would have known that these beliefs were not true, or that they were sufficiently unreliable or incomplete to prevent reasonable reliance on them. Moreover, Defendants have failed to introduce any evidence to controvert the allegation that they knew INC did not own the patent and they nevertheless filed and maintained the underlying infringement suits in bad faith. To the extent that Defendants ask this Court to dismiss the present suit based upon their purported "beliefs", the argument is replete with factual determinations that cannot be resolved on a motion to dismiss. Accordingly, the ultimate question of whether the underlying patent litigation was brought in bad faith is one of fact that must be decided by the jury.

In Hydranautics v. FilmTec Corp., 70 F.3d 533 (9th Cir. 1995), a similar Rule 12(b)(6) motion was denied, and Defendants' motion should be denied for the same reasons here. Like Jarrow, Hydranautics claimed that FilmTec fraudulently obtained ownership of the patent at issue, and that FilmTec sued Hydranautics for patent infringement to drive it out of the relevant market, in bad faith, without any reasonable belief that it owned the patent. Hydranautics, 70 F.3d at 535. The court held:

> In the procedural posture of the case before us, it would not be correct to say that there is no dispute as to the facts. Hydranautics alleges fraud, and FilmTec denies it. We must assume for the purposes of Rule 12(b)(6) that Hydranautics could prove that FilmTec obtained the patent fraudulently.

-12-

Id., 70 F.3d at 538. This case presents similar disputed issues of fact underlying the determination of the whether the patent infringement litigation was objectively baseless, and therefore Defendants' motion to dismiss should be denied.

Defendants' argument at pages 11 and 12 of their Memorandum (Dkt. #13) that there was unsettled case law that might otherwise render their frivolous behavior objectively reasonable, is disingenuous and misrepresents the state of the law at the time they filed the patent infringement suit. The Federal Circuit's decisions in Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456 (Fed. Cir. 1998) and Schering Corp. v. Roussel-Uclaf SA, 104 F.3d 341 (Fed. Cir. 1997) did not change in any way the long-standing rule requiring all co-owners of a patent to be joined as plaintiffs in a suit for infringement. Indeed, in Ethicon, the Federal Circuit stated that the rule requiring joinder of all co-owners in an infringement suit was a "settled principle", and cited U. S. Supreme Court decisions more than one hundred years old in support of the rule. Ethicon, 135 F.3d at 1467. The court in Ethicon also found that this long-standing rule was dictated by Section 262 of the Patent Statutes, stating: "[T]he congressional policy expressed by section 262 is that patent co-owners are 'at the mercy of each other.'" Ethicon, 135 F.3d at 1468 (quoting Willingham v. Lawton, 555 F.2d 1340, 1344, 194 U.S.P.Q. 249, 252 (6th Cir. 1977)). See also Schering, 104 F.3d at 344 (absent an agreement, one co-owner cannot bring infringement suit if other co-owner declines to join suit; citing cases going back to 1937).

Accordingly, Defendants' argument that they could not have known at the time they filed the patent infringement suit that the voluntary consent of all co-owners of the '360 patent was necessary to maintain such suit, is completely without merit.

Defendants' attempt at page 12 of their Memorandum (Dkt. # 13) to divert the Court by resurrecting an argument that they have already litigated and lost in three courts.

-13-

Defendants argue that they "believed" that Horphag had consented to join a suit to enforce the '360 patent. First, this argument based upon Defendants' "beliefs" is replete with the need for factual determinations that dictate denial of the motion to dismiss . Second, Defendants have failed to introduce any facts demonstrating how they could have reasonably formed such a "belief". Defendants' argument is absurd on its face in view of Horphag's suit in France filed six months prior to the filing of INC's patent infringement suit in this Court. In the French action, Horphag claimed that INC had no ownership interest in the '360 patent. It is inconceivable that anybody could reasonably believe that Horphag had consented to join an infringement suit brought by an entity that Horphag simultaneously maintained had no ownership interest in the patent. Not surprisingly, both this Court and the Federal Circuit twice dismissed this frivolous argument and held that Horphag had never waived its right to refuse to join a suit brought by a co-owner. See, INC v. Horphag Research, No. 00-1408, Slip Op. at 11-12 (Fed. Cir. July 16, 2001).

Moreover, when INC filed its patent infringement suit in this Court, it did not name Horphag as a co-plaintiff, nor did it seek determination of the ownership issue, but rather sued Horphag as a defendant for infringement. Defendants' belated "belief" that Horphag had somehow consented to join a suit to enforce the '360 patent is, at best, a concocted excuse designed to avoid the consequences of their sham patent infringement suit.

In sum, Jarrow's straightforward and simple allegation that Defendants asserted a patent that they knew they did not own in order to monopolize the PAC market passes muster under all the procedural and legal standards appropriately applied to antitrust claims at the pleading stage.

-14-

**B.**    **Jarrow's Third Claim Under CUTPA States a Claim for Relief.**

As discussed in Defendants' Memorandum of Law, to determine whether or not

Defendants have violated CUTPA, the Court must apply the "cigarette rule."[4]  Jarrow has

properly made out a valid CUTPA claim in that Jarrow alleged that Defendants' conduct was

unfair and oppressive and that it caused substantial injury to competitors and thereby to

consumers as well.

Although Defendants are correct that the Second Circuit has determined that the

filing of a "single non-sham lawsuit cannot form the basis of a claim under CUTPA," Suburban

Restoration Co., Inc. v. ACMAT Corp., 700 F.2d 98, 102 (2d Cir. 1983), Defendants mislead the

Court as to what Jarrow actually pled.  Suburban Restoration recognized that appellant's case

would not be dismissed if it fit within the sham exception. Id., 700 F.2d at 101.  As set forth

above, Jarrow properly alleged that Defendants' Connecticut patent infringement suit was a sham,

and therefore Defendants are not entitled to Noerr-Pennington immunity.

Furthermore, Jarrow's CUTPA claim goes beyond simply alleging that the filing

of only one sham lawsuit violated CUTPA.  In addition to alleging that Defendants subjected

Jarrow to baseless litigation in Connecticut, Jarrow alleged that Defendants' conspired to

monopolize or attempted to monopolize PACs by:  bringing and publicizing baseless litigations to

threaten the PAC industry; deceptively recording assignments in the USPTO; falsely and

deceptively misleading the public as to who the true owners of the '360 patent were; and publicly

disparaging Jarrow's activities and that of other members of the PAC industry.  Thus, Jarrow has

---

[4]    The "cigarette rule" requires a determination of: " (1) whether the practice, without necessarily having been
previously considered unlawful, offends public policy as it has been established by statutes, the common law, or
otherwise - whether, in other words, it is within at least the penumbra of some common-law, statutory, or other
established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it
causes substantial injury to consumers (or competitors or other businessmen)."  Ancona v. Manafort Bros., Inc.,
56 Conn. app. 701, 714 (Conn. App. 2000) (citing Prishwalko v. Bob Thomas Ford, Inc., 33 Conn. App. 575
(1994)).

clearly alleged that Defendants' conduct constituted "either an actual deceptive practice . . . or a practice amounting to a violation of public policy" as required to allege a CUTPA violation. Ancona, 56 Conn. App. at 714 (citations omitted).

**C.    Jarrow's Fourth Claim for Unfair Competition Under the Lanham Act Asserts Sufficient Facts Supporting its Claim.**

Defendants' assertion that Jarrow does not provide sufficient facts supporting its Lanham Act claim is absurd. Jarrow clearly states in its Verified Complaint that it "re-alleges and incorporates Paragraphs 1 - 52" of the Verified Complaint in its Lanham Act Count. (Verified Complaint ¶ 53). Defendants apparently would have Jarrow overburden the Court by fully restating each and every paragraph of the Verified Complaint in each and every Count. However, instead of burdening the Court with a recitation of facts from Counts one through three, Jarrow instead chose to allege why those facts constituted a valid Lanham Act claim - that is, the Defendants' false and misleading descriptions and representations of fact as to the owners of the ʻ360 patent, Jarrow's right to sell OPC's without being subjected to Defendants' sham lawsuit and baseless infringement claims, and the disparagement of Jarrow's commercial activities, all served to violate the Lanham Act. Accordingly, Jarrow clearly alleged facts sufficient for a Lanham Act claim, including but not limited to, Paragraphs 15, 16, 17, 18, 21, 23, 25, 27, 33, and 35 of the Verified Complaint.

**D.    Jarrow's Fifth Claim for Vexatious Litigation States a Claim for Relief.**

According to Defendants, there are four reasons why Jarrow's claim for vexatious litigation pursuant to C.G.S. § 52-568 should be dismissed: (1) the underlying proceeding has not yet terminated; (2) there was no disposition in Jarrow's favor; (3) Jarrow did not allege any facts that the underlying lawsuit was filed without probable cause; and (4) Jarrow has not alleged that INC acted with malice. (Defendants' Memorandum at pp. 17-19, Dkt. #13). Contrary to

-16-

Defendants' arguments, Jarrow has clearly stated a claim for vexatious litigation and each of these points is without merit.

Defendants' argument that the underlying proceeding has not yet terminated is moot in view of the decision of the Court of Appeals for the Federal Circuit on July 16, 2001 affirming in its entirety the decision of this Court in the underlying patent infringement case. Accordingly, there are no longer any pending actions relating to the underlying infringement suits. However, even if INC's appeal were still pending, Jarrow would be permitted to bring its claim for vexatious litigation as the underlying proceedings terminated in Jarrow's favor. <u>See,</u> <u>Weinstein & Wisser v. Arnold L. Beizer,</u> 1994 Conn. Super. LEXIS 1799 (1994).

As to Defendants' second argument, it is indisputable that the underlying infringement litigation terminated in Jarrow's favor. The District of Connecticut afforded the French Court of Appeals comity and concluded that "INC has no ownership interest in the '360 patent and thus lacks the requisite standing to pursue an action for infringement." (Ruling on Defendants' Motion for Partial Summary Judgment, Squatrito, J., pp. 8, 12-13). The District Court determined that a crucial element was missing in Defendants' infringement claims against Jarrow - i.e., INC did not own the '360 patent. The Court took judicial notice of a dispositive French decision in order to terminate the proceedings in Jarrow's favor.

Defendants' assertion on page 18 of their Memorandum to the effect that Jarrow cannot succeed on the vexatious litigation claim on grounds that the underlying case was purportedly not terminated in Jarrow's favor on the merits, is misplaced. Connecticut has "never required a plaintiff in a vexatious suit action to prove a favorable termination either by pointing to an adjudication on the merits in his favor or by showing affirmatively that the circumstances of

the termination indicated his innocence or nonliability." <u>DeLaurentis v. City of New Haven</u>, 220

Conn. 225, 251 (1991).

   With regard to Defendants' third proposition, Jarrow clearly pled facts alleging

that there were no reasonable grounds for INC's patent infringement action. With a vexatious

litigation claim, probable cause consists of the "'knowledge of facts, actual or apparent, strong

enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the

defendant in the matter complained of.'" <u>Id.</u>, 220 Conn. at 256. (citing <u>Shea v. Berry</u>, 93 Conn.

475, 477 (1919)). Here, Jarrow clearly alleges that Defendants knew that INC did not own the

'360 patent, and did not have any good faith basis for asserting so in the underlying patent

litigation. <u>Id.</u> Jarrow alleged in its Verified Complaint that, at the time that INC brought suit and

throughout the time it prosecuted the suit, Defendants knew the following: that there was an

Agreement governing the ownership of the '360 patent to which INC was not a party, that there

was an ongoing dispute over ownership of the '360 patent, that one of the joint owners to the '360

patent contested INC's claim to the patent, that one of the joint owners to the '360 patent had

brought a lawsuit against INC and Masquelier contesting ownership rights, that one of the joint

owners to the '360 patent did not join INC in bringing the District of Connecticut action as

required by law, that the French trial court had determined that INC did not own the '360 patent,

that the French Court of Appeals affirmed that decision, that Defendants knew or reasonably

should have known that INC did not have a good faith basis to claim ownership of the '360

patent, and that the French commercial court held that the exploitation of the '360 patent by INC

was fraudulent. These facts clearly demonstrate that there were no reasonable grounds for

Defendants to prosecute Jarrow for patent infringement.

Finally, it is well settled that "[m]alice may be inferred from lack of probable cause." Vandersluis v. Weil, 176 Conn. 353 (1978). As stated above, Jarrow clearly alleged that INC did not have a good faith basis to pursue its claims against Jarrow, and in fact formulated a conspiracy whereby Defendants would gain control of the PAC market through the use of multiple baseless litigations, threats to other members of the PAC industry and their customers, and misleading statements to the public as to the ownership of the '360 patent.

**E.    Jarrow's Sixth Claim for Tortious Interference with Advantageous Business Relations States a Claim for Relief.**

Jarrow properly pled that Defendants tortiously interfered with advantageous business relations in that it alleged facts demonstrating that Defendants acted fraudulently and maliciously and made many misrepresentations to the public and various courts. At this juncture of the case, as Defendants brought a Motion to Dismiss, Jarrow need only plead that Defendants had improper motive or improper means. See, Couldock & Bohan, Inc. v. Societe Generale Secs. Corp., 93 F. Supp. 2d 220, 235 (D. Conn. 2000) (citing Blake v. Levy, 191 Conn. 257, 260 (1983)). Among other things, Jarrow alleged that Defendants publicized their "false claim to ownership of the '360 patent," utilized their lawsuits to "threaten substantially the entire nutritional supplement industry, including Jarrow's present and potential customers," deceptively recorded the 1994 and 1996 Assignments with the USPTO in order to misrepresent their ownership claims, misrepresented the proper owners of the '360 patent to the public, and disparaged Jarrow, all for the improper motive of monopolizing "the relevant product and geographic markets for the sale of PACs and/or unreasonably attempt[ing] to restrain trade" in the United States.[5] (Verified Complaint ¶¶ 9, 12, 13, 17, 18, 19, 20, 23, and 33).

---

[5]    Not only did Jarrow properly allege that Defendants' conduct was improper and done for an improper motive, but Jarrow's pleading refers primarily to documents that are either public documents and/or are within the possession of Defendants. Jarrow saw no reason to overburden the Court by attaching copies of all of the documents

-19-

Furthermore, the Defendants' improper conduct did not escape the notice of the French commercial court which ruled that the exploitation of the '360 patent by INC was fraudulent and that the merger of CEP and SCIPA is annulled for fraud. (Verified Complaint ¶ 34).

Unlike <u>Couldock & Bohan</u>, in which the Court found no implication of impropriety on behalf of the defendants in a summary judgment context, Jarrow alleges that Defendants continued to prosecute Jarrow for infringement and misrepresent to the courts and the public its ownership rights in the '360 patent despite overwhelming evidence to the contrary, as well as the decisions from the French, Connecticut, and California Courts determining that INC did not own the '360 patent and, at the very least, that INC not bring a good faith infringement suit without the consent of Horphag.

### F.    Jarrow's Claims Were Not Compulsory Counterclaims In The Underlying Patent Infringement Suit.

First, Jarrow never had an opportunity to assert the antitrust counterclaim to the patent infringement count in the underlying litigation. At the outset of the patent infringement suit, Jarrow filed a motion to dismiss and, in the alternative, a motion to stay the suit pending a decision in the earlier-filed French litigation. In response, this Court stayed the case, and only re-opened the case to allow the parties to file motions for summary judgment. No discovery was conducted and summary judgment was entered in Jarrow's favor. Thus, Jarrow was never

---

connected with the prior litigation or the documents related to the publicity connected with the '360 patent that were authored by Defendants, as all of these documents are within the control or possession of Defendants and the majority of these documents are part of the Court's record of the prior proceeding. However, should the Court determine that it is necessary to provide all of these documents to Defendants and the Court as an addendum to the Complaint, Jarrow would be pleased to do so.

-20-

required to answer the patent infringement count, much less assert any antitrust counterclaims to that count.[6]

In addition, many of the facts giving rise to the antitrust and related claims arose after the filing of the patent infringement suit, including Defendants' bad faith litigation in the California District Court, Defendants' bad faith prosecution of both the Connecticut and California patent infringement suits despite the clear rulings of the French courts that INC did not own any part of the '360 patent, and Defendants' threats and intimidation of competitors and customers in the PAC market.

Second, even if Jarrow did have an opportunity to assert the antitrust counterclaims in the underlying infringement litigation (which did not occur), it would have been entirely permissible for Jarrow to delay suing the Defendants for predatory patent litigation until it had succeeded in defeating the underlying infringement case. The Supreme Court in <u>Mercoid Corp. v. Mid-Continent Inv. Co.</u>, 320 U.S. 661, 88 L.Ed. 376, 64 S. Ct. 268 (1944), stated that "the fact that [an antitrust counterclaim for damages] might have been asserted . . . in the prior suit . . . does not mean that the failure to do so renders the prior judgment res judicata as respects it." <u>Mercoid</u>, 320 U.S. at 671. A claim is compulsory only if "a logical relationship exists between the claim and the counterclaim and [if] the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." <u>Adams v. Jacobs</u>, 950 F.2d 89, 92 (2d Cir. 1991) (internal quotation marks omitted).

Thus, antitrust counterclaims of the type at issue here that are based on patent misuse, not invalidity, are typically permissive, not compulsory:

---

[6] The one antitrust counterclaim that was filed at the outset of the suit (Nutraceuticals) was dismissed by the Court <u>without</u> prejudice, thus leaving open the possibility of such claims being asserted in a subsequent suit.

Antitrust claims based on patent misuse, such as the counterclaims in Mercoid, are likely to involve factual issues distinct from those involved in patent infringement litigation between the same parties.

* * *

'[In] antitrust counterclaims related to patent validity . . ., the determination of validity bears directly on the issue of infringement, thus suggesting that the two claims should be litigated in tandem. On the other hand, counterclaims related to misuse and other more economically oriented antitrust claims would seem generally to be distinct in nature and substance from patent validity and infringement issues. These types of antitrust claims should be tried separately as a general rule and, accordingly, should usually be deemed permissive under Rule 13(b), subject of course to the court's discretion.'

Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 703-704 (2d Cir. 2000), quoting, in part, Teague I. Donahey, Antitrust Counterclaims in Patent Infringement Litigation: Clarifying the Supreme Court's Enigmatic Mercoid Decision, 39 IDEA: J.L. & TECH. 225, 249-50 (1999).

The antitrust and related claims at issue in this case involve numerous factual issues distinct from those involved in the underlying patent infringement litigation, including whether the Defendants knew they did not own the patent at the time they commenced the patent infringement suit; whether the Defendants knew they did not own the patent after commencing the patent infringement suit, but nevertheless continued to prosecute the several litigations in bad faith; whether the Defendants fraudulently exploited the '360 patent by, for example, issuing false and misleading press releases concerning the patent litigations, the litigations in France, and INC's purported ownership of the '360 patent, and by threatening competitors and customers in the PAC market over a patent they did not own, all in an effort to monopolize the PAC market.

The Court did not decide any of these issues in the underlying patent infringement litigation, and necessarily will begin this antitrust case with a clean slate on these issues.

Hydranautics v. FilmTec Corp., 70 F.3d 533 (9th Cir. 1995) further illustrates why Defendants' compulsory counterclaim argument should be dismissed. In FilmTec, Hydranautics claimed that FilmTec fraudulently obtained ownership of the patent at issue, and that FilmTec sued Hydranautics for patent infringement to drive it out of the relevant market, in bad faith, without any reasonable belief that it owned the patent. Id. at 535. The court stated:

> [T]here was not much point in litigating Hydranautics' antitrust
> claims until FilmTec's infringement case was resolved. The
> Federal Circuit held that the government owned the patent on the
> reverse osmosis membrane, not FilmTec . . . . Thus the patent
> infringement judgment was vacated on the ground that FilmTec did
> not own the patent, without a determination whether FilmTec had
> fraudulently obtained the patent. Because the Federal Circuit did
> not decide whether FilmTec obtained its patent fraudulently, the
> district court will now begin the antitrust case with a blank slate on
> the fraud issue. * * * The difference in which facts control show
> why there may be a significant difference, and there is a significant
> difference in this case, between the facts which control the patent
> infringement claim and the facts which control the antitrust claim.

Id., 70 F.3d at 537 (emphasis added). Similarly, in this case, there is a significant difference between the facts which control the antitrust and related claims, and the claims decided in the underlying patent infringement suit, and therefore these claims were permissive, not compulsory.

Defendants' reliance on Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 703-704 (2d Cir. 2000), is misplaced. In contrast to the antitrust claims at issue here, Critical-Vac asserted that Minuteman committed fraud on the Patent Office and tried to enforce a patent it knew was invalid. 233 F.3d at 699. Thus, the court held that because the antitrust claims were based on patent invalidity, and involved the same factual issues as the underlying patent infringement litigation, the antitrust claims were compulsory. Id. at 703, 704.

-23-

However, the court explicitly recognized that claims related to misuse and other more economically oriented antitrust claims, as is the case here, would generally be distinct in nature and substance from the patent infringement and validity issues, and thus would be permissive under Fed. R. Civ. P. 13(b). Id. at 703-704. Moreover, in stark contrast the claims at issue here, the court specifically found that Critical-Vac did not allege any facts that arose after the filing of its answer in the underlying patent infringement litigation. Id., 233 F.3d at 700.

Thus, Critical-Vac is entirely consistent with FilmTec on the facts of this case, and Defendants' argument that Jarrow's antitrust claims were compulsory counterclaims is directly contrary to the holding in Critical-Vac. As set forth above, there are significant factual issues involved in the antitrust claims that were not involved in any way in the underlying patent infringement litigation. In addition, Jarrow never filed an answer and therefore never had the opportunity to assert counterclaims to the patent infringement claim in the underlying litigation. Accordingly, these antitrust and related claims were permissive, not compulsory, and therefore Jarrow is entitled to raise them at this time.

## V.    CONCLUSION

For the foregoing reasons, it is respectfully requested that Defendants' motion to dismiss for failure to state a claim be denied.

THE PLAINTIFF,
JARROW FORMULAS, INC.
BY CUMMINGS & LOCKWOOD
ITS ATTORNEYS

By_____
ERIC W. WIECHMANN (CT 04331)
MARK D. GIARRATANA (CT 10401)
ERIC E. GRONDAHL (CT 08988)
ALEXANDRA B. STEVENS (CT 20300)
CityPlace I
185 Asylum Street
Hartford, CT  06103
(860) 275-6700
(860) 724-3397 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing PLAINTIFF'S MEMORANDUM IN

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A

CLAIM has been mailed, postage prepaid, this 24th day of July, 2001 to:


RICHARD S. ORDER, ESQ.
THOMAS W. EDGINGTON, ESQ.
Updike, Kelly & Spellacy, P.C.
One State Street
P.O. Box 231277
Hartford, CT  06123-1277



ERIC WATT WIECHMANN


.HrtLib1:370989.1 07/24/01

-26-