# TAB A

Westlaw.

Not Reported in F.Supp.2d
2000 WL 1863560 (D.Conn.), 56 U.S.P.Q.2d 1732
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 1

▷

United States District Court, D. Connecticut.

INTERNATIONAL NUTRITION COMPANY
v.
HORPHAG RESEARCH LTD. et. al.

No. 3:96CV386(DJS).

April 14, 2000.
Order on Reconsideration April 14, 2000.

*RULING ON THE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

SQUATRITO, J.

\*1 The plaintiff brings this action against eighteen defendants pursuant to 35 U.S.C. § 271, 15 U.S.C. § 1125(a) and 15 U.S.C. § 1114(1), alleging that the sale of products containing certain plant extracts constitutes patent infringement, unfair competition, and trademark infringement.

The Court has jurisdiction in this matter under 28 U.S.C. § 1331 and § 1338, and venue is proper under 28 U.S.C. § 1391.

Now pending before the Court are twelve motions for summary judgment on Counts I and II by various defendants. [FN1] For the reasons discussed below, the defendants' motions for summary judgment are GRANTED, in part.

> FN1. Claim I asserts that all named defendants have infringed or are infringing United States Patent 4,698,360. Claim II alleges that defendants Horphag, MW International, and Kaire International engaged in unfair competition in violation of the Lanham Act by representing that INC is not an owner of the '360 patent.

I. Facts

This case involves the sale of plant extracts containing proanthocyanidans, a class of organic molecules extracted from pine bark. The use of this family of compounds allegedly confers health benefits, due to their ability to act as free radical scavengers.

In April, 1985 Horphag Overseas Limited ('Horphag') and Societe Civile d'Investigations Pharmacologiques d'Aquitane ('SCIPA') entered into a joint development contract for the invention of new products for medical use. The contract was written in French and executed in France. The expressed intent of this agreement was to unite the parties' efforts and pool their resources for the development of new products with medical utility. Article 5 of the agreement specifies that any patent applications resulting from this collaboration "shall be filed jointly" by the parties. "In the event of the transfer or licensing of the industrial property rights, resulting from the present contract, the proceeds will be shared equally by the parties." *Id.* Article 7 specifies that "any litigation regarding the interpretation or performance of the present contract shall be [in] the exclusive jurisdiction of the courts of Bordeaux." By its terms, the contract expired in April 1990, with the possibility of a automatic renewal period for five additional years. INC claims that the contract expired in 1995.

On April 9, 1985, work covered by the terms of the joint development contract resulted in the filing of a patent application with the United States Patent and Trademark Office ('PTO'), claiming that proanthocyandins were useful for the treatment of certain human diseases. On October 6, 1987, United States Patent 4,698,360 (the '360 patent) issued, listing Dr. Jack Masquelier as its sole inventor. Pursuant to the terms of the joint development agreement. Masquelier assigned his invention to the Society Civile d'Investigations Pharmacologiques d'Aquitane ('SCIPA') and Horphag Overseas Limited ('Horphag').

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2000 WL 1863560 (D.Conn.), 56 U.S.P.Q.2d 1732
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 2

On March 11, 1994, SCIPA assigned its rights in the '360 patent to International Nutrition Company ('INC'), the plaintiff in this action.

In October 1995, Horphag commenced litigation in France to determine which parties possessed an ownership interest in the '360 patent. Horphag, SCIPA and INC were parties to the French litigation.

On March 6, 1996, INC filed this action. In support of the claim of infringement, it stated that it owned "at least an undivided one-half interest" in the '360 patent. Complaint at ¶ 23

*2 On October 30, 1996 Jack Masquelier assigned to INC any ownership interest in the '360 patent that "may possibly revert" to him.

On March 25, 1997, the French Court of First Instance of Bordeaux held that SCIPA's assignment to INC was void. This decision was appealed to the French Court of Appeals.

On May 28, 1998, the French Court of Appeals affirmed the lower court's ruling. The French appeals court based its decision on the fact that the 1994 assignment from SCIPA to INC was controlled by the terms of the 1985 joint development contract. The court concluded that under French law, the jurisprudence specified in the joint development contract, the assignment from SCIPA to INC was invalid. Therefore, INC "no longer has any right whatsoever appertaining to the patent '360 [and] is no longer able to exploit the same." *SCIPA et. al. v. Horphag,* Certified Translation of the Judgment of the French Court of Appeals at 48. [FN2]

> FN2. The Parties submitted multiple copies of an English translation the French decision that have different pagination. *Compare* Declaration of Michael Adler. Doc. 232. Exhibit 1, with the Declaration of Michael Adler. Doc. 296. Exhibit H. All of the citations to the decision of the French Court of Appeals in this opinion reference the pagination of the version submitted in Doc. 296.

II. Legal Standard for Summary Judgment

A motion for summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute." ' *American Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319-20 (2d Cir.1975)). A dispute concerning a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ' *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)), *cert. denied,* 113 S.Ct. 440 (1992). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.). *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

III. Discussion
A. Ownership of the '360 Patent

The threshold issue for the Court to address is the ownership of the '360 patent. It is axiomatic that a party without an ownership interest in a patent has no standing to sue for its infringement. "To invoke the jurisdiction of a federal court under § 1338, it is necessary that the plaintiff allege facts that demonstrate that he, and not the defendant, owns the patent rights on which the infringement suit is premised." *Jim Arnold Corp. v. Hydrotech Systems, Inc.,* 109 F.3d 1567, 1572 (Fed.Cir.) *reh'g denied* U.S.App. Lexis 15403 (en banc), *cert. denied* 522 U.S. 933, 118 S.Ct. 338, 139 L.Ed.2d 262 (1997).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2000 WL 1863560 (D.Conn.), 56 U.S.P.Q.2d 1732
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 3

*3 The defendants argue that, pursuant to the decision of the French Court of Appeals, the plaintiff does not possess any ownership interest in the '360 patent and therefore lacks the requisite standing to maintain an action for infringement.

The plaintiff responds that it owns all right and title to the patent in suit. It claims that it acquired 50% ownership as a result of the 1994 assignment from SCIPA, and subsequently acquired the remaining 50% in 1996 pursuant to the assignment from Dr. Masquelier. [FN3]

> FN3. This claim is premised on the plaintiff's assertion that Horphag's 50% ownership interest lapsed in 1995 when the joint development contract expired. INC claims that Horphag's 50% interest reverted to Dr. Masquellier upon the expiration of the 1985 joint development agreement and was subsequently transferred to INC pursuant to the 1996 assignment from Masquellier.

### 1. Ownership of the '360 Patent is a State Law Question

While the issues of patent validity and infringement are questions of federal law, "it is well settled that if a patentee pleads a cause of action based on rights created by a contract ... the case is not one 'arising under' the patent laws." *Jim Arnold Corp.,* 109 F.3d at 1572; *see also New Marshall Engine Co. v. Marshall Engine Co.,* 223 U.S. 473, 32 S.Ct. 238, 56 L.Ed. 513 (1912)(state court has proper jurisdiction in a lawsuit for specific performance of a contract to assign a patent). If a party contractually transfers his ownership interest in a United States patent, "the question of whether a patent is valid and infringed is one for federal courts, while the question of who owns the patent rights and on what terms is a question exclusively for state courts." *Jim Arnold,* 109 F.3d at 1572; *see also Beghin-Say Int'l Inc. v. Rasmussen,* 773 F.2d 1568, 1571 (Fed.Cir.1984).

In this case, the ownership of the '360 patent is controlled by the 1985 joint development agreement between SCIPA and Horphag. The terms of this document indicate that the parties will jointly develop and own certain scientific inventions and share any proceeds resulting from the transfer or licensing of any industrial property rights. The parties expressly agreed to "pool their resources" toward developing "new products intended for medical use." The contract indicates that any inventions shall be the subject of a joint patent applications--- and consequently joint ownership--- and proceeds derived from the licensing of any industrial rights shall be shared equally. It is the clear intent of the contract that any inventions stemming from the SCIPA/Horphag collaboration would be governed by the terms of the contract, including the possible future determination of ownership interests.

Because the contract specifically requires that any applications shall be "filed jointly," it necessarily contemplates that all patents arising from this agreement shall be jointly owned by SCIPA and Horphag. Under American law, it is well settled that the "question of who owns the patent rights and on what terms is a question exclusively for state courts." *Jim Arnold* 109 F.3d at 1572; *see also Beghin-Say Int'l Inc. v. Rasmussen,* 773 F.2d 1568, 1571 (Fed.Cir.1984). Here, rather than a state, the parties specified the law of France. It is undisputed that the '360 patent is a product of the 1985 joint development contract. Because the 1985 contract specifies French law as the parties' choice of law under which to resolve disputes, the rights of the joint owners of the '360 patent must be determined pursuant to French law.

### 2. Comity to the 1998 Decision of the French Court of Appeals

*4 Having determined that the ownership of the '360 patent is controlled by the 1985 agreement, the next step is to determine who owns the '360 patent under French law.

The issue of the ownership of the '360 patent under French law has been previously litigated. On May 28 1998, the French Court of Appeals ruled that INC "no longer has any right whatsoever appertaining to the patent '360 [and] is no longer able to exploit the same." *SCIPA et al. v. Horphag,* Certified Translation of the Judgment of the French Court of Appeals of Bordeaux at 48. This Court

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2000 WL 1863560 (D.Conn.), 56 U.S.P.Q.2d 1732
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 4

must determine whether it is appropriate to extend comity to the French Court's decision.

The plaintiff argues that comity should not be extended because the French decision is in conflict with American patent law. Specifically, the plaintiff contends that American law allows for the unilateral assignment of patent rights, while French law does not. Additionally, the plaintiff contends that comity should not be extended since it was a bona fide purchaser for value and Horphag has unclean hands.

The defendants respond that the French court's decision does not conflict with American patent law since the plaintiff contracted away its right to unilaterally assign his ownership interest. Furthermore, they argue that the facts clearly reveal that INC took ownership with full knowledge of the contested nature of the '360 patent and that there are no facts supporting an unclean hands defense against Horphag.

"Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another ." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3rd Cir.1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972); *see also Hilton v. Goyot*, 159 U.S. 113, 205-6, 16 S.Ct. 139, 40 L.Ed. 95 (1895)(a decision of a competent foreign court can be prima facie evidence of the truth of the matter adjudged). Comity should be withheld only "when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Somportex*, 453 F.2d at 440. For example, it would be inappropriate to extend comity to a decision of a foreign court that purported to interpret the patent laws of the United States. *See Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 907 (Fed.Cir.1986)(refusing to extend comity to a German court's decision that an American patent is 'obvious' under 35 U.S.C. § 103).

After careful review, it is apparent that the decision of the French Court of Appeals should be afforded comity. In this instance, the French court's decision determined the ownership interests of intellectual property under a French contract with a French choice of law provision. The French Court did not interpret American patent law. It merely determined who owned an American patent pursuant to a French contract. As discussed previously, it is well settled that "the question of whether a patent is valid and infringed is one for federal courts, while the question of who owns the patent rights and on what terms is a question exclusively for state courts." *Jim Arnold Corp. v. Hydrotech Systems, Inc.*, 109 F.3d 1567, 1572 (Fed.Cir.). *reh'g denied* U.S.App. Lexis 15403 (en banc), *cert. denied* 522 U.S. 933, 118 S.Ct. 338, 139 L.Ed.2d 262 (1997). If the issue of the ownership of the '360 patent were presented directly to an American court, a proper analysis would entail a determination of the ownership rights under French law. In this case, a French court has already presented a well reasoned analysis of this issue, presenting a clear case for extending comity to the decision.

*5 Furthermore, the plaintiff's claim that the French court's decision is in conflict with American law is incorrect. Section 262 of Title 35 of the United States Code reads:

> "In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, or sell the patented invention without the consent of and without accounting to the other owners." (Emphasis added).

While the plaintiff correctly points out that a co-owner's unilateral assignment of an American patent would be permitted under 35 U.S.C. § 262, it ignores that an 'agreement to the contrary' exists in this case. The 1985 joint development contract subjected the ownership of any applicable intellectual property, including the '360 patent, to French law. This type of agreement is specifically contemplated by the American statute. Section 262 allows a co-owner of a United States patent to subject its ownership rights to other bodies of law. In this case, SCIPA and Horphag chose to do exactly that when they signed the 1985 contract subjecting the ownership of any jointly owned patents, American or foreign, to French law. Since French law does not allow a co-owner to unilaterally assign its patent rights, the French court concluded that the 1994 assignment from SCIPA to INC was void. The French court's decision neither interprets nor is in conflict with American law.

Additionally, the plaintiff's claim that it was a *bona fide* purchaser for value is without merit. It is axiomatic that to be a bona fide purchaser, the party must take title without notice of any competing

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2000 WL 1863560 (D.Conn.), 56 U.S.P.Q.2d 1732
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 5

equitable claims. *See Heidelberg Harris, Inc. v. Loebach*, 145 F.3d 1454, 1458 (Fed.Cir.1998); *see also Filmtec Corp. v. Allied Signal, Inc.*, 939 F.2d 1568, 1573-4 (Fed.Cir.1991). This is simply not the case in this instance. After reviewing all of the facts, the French court found that when SCIPA attempted to assign its rights to INC in 1994, INC was aware both that the '360 patent was co-owned by Horphag and that SCIPA and Horphag were in serious disagreement over the ownership of the '360 patent. *SCIPA et al. v. Horphag*, Certified Translation of the Judgment of the French Court of Appeals of Bordeaux at 38. Since INC was aware of the SCIPA-Horphag dispute prior to receiving the purported assignment from SCIPA, under American law it can not be a bona fide purchaser of the '360 patent. [FN4] *See Heidelberg Harris, Inc. v. Loebach*, 145 F.3d 1454, 1458 (Fed.Cir.1998)

> FN4. Furthermore, the plaintiff's contention that 35 U.S.C. § 261 supports their position is incorrect. This statute "provides that the bona fide purchaser for value cuts off the rights of a prior assignee who has failed to record the prior assignment [with the PTO]." *Filmtec Corp. v. Allied Signal, Inc.*, 939 F.2d 1568, 1573-4 (Fed.Cir.1991). It is undisputed that the 1985 contract signed in France was not registered with the PTO. However, section 261 is only applicable to an "assignment, grant or conveyance" of a patent. *See* 35 U.S.C. § 261. Because the 1985 joint development agreement is a prospective bilateral contract between Horphag and SCIPA, it does not fall within the purview of the statute. *See Talbot v. Quaker State Oil Refining Co.*, 28 F.Supp. 544, 548 (W.D.Pa.1938), *aff'd* 104 F.2d 967 (3d Cir.1939)(an agreement between joint patent owners is not an 'assignment, grant or conveyance' under the patent statute); *see also Beghin-Say Int'l v. Rasmussen*, 733 F.2d 1568, 1571 (Fed.Cir.1984).

Finally, the plaintiff's arguments that comity should not be extended on the basis of Horphag's unclean hands are not persuasive. INC claims that "the French judgment should not be given comity because of Horphag's unclean hands in failing to disclose that it has licensed [to a third party]." [FN5] Plaintiff's reply brief at 16. Its theory is that "Horphag was able to conceal from the French courts the license it had granted to [a third party and its] unclean hands would have resulted in a different judgment." *Id.*

> FN5. The third party referred to is Indena.

*6 This is simply not the case. Horphag did not conceal the existence of third party licenses. It is apparent that the French court was aware of the existence of these parties, but declined to act because the licensees were not parties to the French action. *SCIPA et. al. v. Horphag*, Certified Translation of the Judgment of the French Court of Appeals of Bordeaux at 49-50. Contrary to INC's assertions, the French court was aware of Horphag's dealing with third parties and thus INC's assertion that the French Court's decision would have been different is not persuasive.

The Court concludes that comity should be extended to the decision of the French court on the issue of ownership of the '360 patent. INC does not possess an ownership interest in the '360 patent and therefore lacks the requisite standing to sustain an action for infringement.

B. Impact of the 1996 Masquelier Assignment

The plaintiff next argues that even if this court extends comity to decision of the French Court of Appeals, it still has standing to bring this action. It contends INC is at least a 50% owner of the '360 patent as a result of its 1996 agreement with Dr. Masquelier and because "all potential owners are before the Court and there is no reason ... not to proceed with this patent infringement action." Plaintiff's brief at 10. Alternatively, it contends that, as a partial owner, the 1985 joint development agreement requires Horphag to join in any infringement action.

The defendants respond that the 1996 Masquelier assignment transferred no ownership interest to Horphag. Alternatively, they contend that all

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2000 WL 1863560 (D.Conn.), 56 U.S.P.Q.2d 1732
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 6

co-owners of a patent must join as plaintiffs in an infringement action, and any action brought by one co-owner must be dismissed for lack of proper standing.

It is well settled that "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." *Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1468 (Fed.Cir.1998). "One co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Schering Corp. v.. Roussel-UCLAF SA,* 104 F.3d 341, 345 (Fed.Cir.1997). The one relevant exception to this rule is "if, by agreement, a co-owner waives his right to refuse to join a suit, his co-owners may subsequently force him to join in a suit." [FN6] *Ethicon,* 135 F.3d at n. 9; *see also Willingham v. Lawton,* 555 F.2d 1340, 1344-45 (6th Cir.1977).

   FN6. The other exception is in the case of an exclusive licensee, which is not relevant to this action. See *Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1468, n. 9 (Fed.Cir.1998).

It is readily apparent that INC's 1996 agreement with Dr. Masquelier was a prospective assignment that transferred no actual ownership interest to INC. In April 1985, Masquelier assigned the '360 patent in equal portions to SCIPA and Horphag, effectively giving away all of his "proprietary sticks from [his] bundle of patent rights," and leaving himself with nothing. *Ortho Pharmaceutical Corp. v. Genetics Instit. Inc.,* 52 F.3d 1026, 1031 (Fed.Cir.1995). The expiration of the 1985 joint development agreement in 1995 did nothing to change the ownership interests in the '360 patent. There is no provision in the 1985 agreement stating that ownership would revert to Masquelier upon its expiration. Thus, since Masquelier had nothing to transfer to INC in 1996, the assignment did not alter the ownership interests in the '360 patent. Under the terms on the 1996 agreement, INC will acquire an ownership interest from Masquelier only if any such interest is assigned to him in the future. Thus, the 1996 assignment does nothing to alter the conclusion that INC has no ownership interest in the '360 patent . [FN7]

   FN7. The French Court of Appeals also reached the same conclusion in 1998. "[T]he deed dated October 30, 1996 cannot be interpreted as constituting an assignment of current rights ... but only as a conditional deed including the assignment of these rights in the event that they should return to [Masquelier's] ownership." Certified Translation of the Judgment of the French Court of Appeals of Bordeaux. *SCIPA et. al. v. Horphag,* at 42.

\*7 Further, even if the 1996 Masquelier agreement transferred a 50% ownership interest to INC--- which it did not--- such partial ownership is insufficient to confer standing. See *Ethicon. Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1468 (Fed.Cir.1998). There is nothing in the 1985 joint development contract that requires Horphag to be involuntarily joined as a plaintiff in an suit for infringement. Therefore, Horphag "has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Schering Corp. v. Roussel-UCLAF SA,* 104 F.3d 341, 345 (Fed.Cir.1997).

IV. Conclusion

The Court concludes that INC has no ownership interest in the '360 patent and thus lacks the requisite standing to pursue an action for infringement. Further, because INC does not own the '360 patent, it can not sustain its claim that certain defendants engaged in unfair competition.

For the foregoing reasons, the defendants' motions for summary judgment as to Counts I and II of the complaint (Docs. 291, 294, 297, 299, 301, 303, 305, 306, and 307) are GRANTED, in part. By granting these motions in part, the Court directs the Clerk to grant summary judgment for all named defendants on Counts I and II of the complaint, but denies the additional equitable relief sought by some of the defendants in their motions for summary judgement.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2000 WL 1863560 (D.Conn.), 56 U.S.P.Q.2d 1732
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 7

Furthermore, the motions of defendants Usana Inc. and **Jarrow Formulas** Inc. to dismiss (Doc. 301 and 307) are DENIED, as moot. The motion for limited discovery (Doc. 286) is DENIED.

The only remaining cause of action in this case is Count III, a trademark infringement claim against defendants Nutraccutical Corporation, **Jarrow Formulas** Inc., New Visions International Inc. and Changes International. The Parties shall jointly contact the chambers of the undersigned no later than March 27, 2000 to schedule a status conference.

*RULING ON THE PLAINTIFF'S MOTIONS FOR RECONSIDERATION, FOR LEAVE TO JOIN A PARTY AND FOR LEAVE TO FILE AN AMENDED COMPLAINT*

On March 18, 2000, the Court granted the defendants' motions for partial summary judgment on Counts One and Two of the original complaint. The plaintiff now moves for reconsideration of this decision, as well as permission to join Centre d'Experimentation Pycnogenol ('CEP') as a plaintiff and permission to file an amended complaint.

For the reasons set forth below, the motion for reconsideration is granted, but the requested relief is DENIED. The motions to amend the complaint and join a new party are both DENIED.

Discussion
A. Motion for Reconsideration

In its ruling on the defendants' motion for partial summary judgment, the Court concluded that the Parties subjected their ownership interests in the '360 patent to the terms of the 1985 Joint Development Agreement. This contract contained a choice of law provision that specified French law. The Court extended comity to a decision by the French Court of Appeals concluding that, under French law, INC did not have an ownership interest in the '360 patent. Because INC does not own the patent, it can not sustain its action for infringement.

*8 The plaintiff now represents that in 1998 SCIPA was acquired by CEP. In its motion for reconsideration, it claims that if CEP is joined as a plaintiff, under French law it "is entitled to maintain this patent infringement action without the consent of [the patent's co-owner] Horphag." Plaintiff's brief at 2.

In its ruling, the Court utilized French law only to determine the ownership interests in the '360 patent. The plaintiff's attempt to import French patent law into other aspects of this case is misplaced. Other issues, including a party's ability to sue for patent infringement, are controlled by American law. In its ruling, the Court expressly noted that, in accordance with American patent law, "Horphag 'has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in [an infringement action].' ' Ruling on the Defendants' Motion for Partial Summary Judgment at 12, quoting *Schering Corp. V. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed.Cir.1997). The plaintiff can not remedy this defect merely by adding CEP as an additional plaintiff.

Therefore, the relief requested in the plaintiff's motion for reconsideration is denied.

B. Motions to Amend the Complaint and to Join CEP as a Party.

The motions to amend the complaint and to add CEP as a plaintiff are denied because they are futile. *See Leonelli v. Penwalt Corp.*, 887 F.2d 1195, 1198 (2d Cir.1989); *In re Boesky Securities Litigation*, 882 F.Supp. 1371, 1379 (S.D.N.Y.1995). As mentioned above, adding CEP as a plaintiff does not remedy the inherent deficiencies in INC's attempt to sue a co-owner of an American patent in an American court. Further, the amended complaint seeks to add a French statutory claim. Because there are no viable federal claims pending against these defendants, even if the motion to amend was granted this Court would decline to exercise jurisdiction over the remaining non-federal claim. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (it is inappropriate for a federal court to retain jurisdiction over pendent state law claims absent federal claims).

Conclusion

For the reasons stated above, the plaintiff's motion for reconsideration (Doc 328) is granted, but the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2000 WL 1863560 (D.Conn.), 56 U.S.P.Q.2d 1732
**(Cite as: 2000 WL 1863560 (D.Conn.))**

Page 8

requested relief is DENIED. The plaintiff's motions to join a party and to amend the complaint (Doc. 328) are both DENIED. By agreement of the Parties, Count III is hereby dismissed *with prejudice* and all pending counterclaims are dismissed *without prejudice*. All Parties shall bear their own costs. The clerk is directed to close this case.

2000 WL 1863560 (D.Conn.), 56 U.S.P.Q.2d 1732

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# TAB B

| Defendants' Purportedly Undisputed Facts | JFI's Response |
|---|---|
| "INC purchased SCIPA's 50% interest in the '360 patent for valuable consideration." Defendants' Summary Judgment Memorandum at 2, 29. | On March 25, 1997, the District Court of Bordeaux France ruled that the attempted assignment was invalid. (Whitney Decl., Ex. 4.) Moreover, the courts found that INC knew when it attempted to receive assignment of SCIPA's interest that ownership of the patent was disputed, and that INC's claim that it was a bona fide purchaser for value was "without merit." Int'l Nutrition Co. v. Horphag Research Ltd., 3:96-CV-386 (DJS), 2000 WL 186350, at *5 (D.Conn. Apr. 14, 2000) |
| "SCIPA's assignment of its interest in the patent to INC was recorded in the U.S. Patent & Trademark Office (the "PTO") on March 28, 1994." Defendants' Summary Judgment Memorandum at 2, 29. | The recording of an assignment by the PTO is a ministerial act and "is not an Office determination of the validity of the assignment document nor the effect of the assignment document on the ownership of the patent property." Manual of Patent Examining Procedure § 301 (citing 37 C.F.R. 3.54) (TAB C). Thus, the act of recording the assignment is immaterial to the objective baselessness of the suit on the '360 patent. |
| The Defendants cite to the 1994 Eastern District of New York case between Horphag Research, Ltd., Consac Industries, SCIPA and INC. Defendants' Summary Judgment Memorandum at 2-3, 29. The Defendants claim that "Horphag had brought its action against Consac without seeking the permission or consent of INC or SCIPA." | On September 21, 1993, Horphag wrote to SCIPA "to invite [SCIPA] to voluntarily join this lawsuit as a party plaintiff." (Whitney Decl. Ex. 28 - letter from Robert Simpson to SCIPA of 9/24/93 (emphasis added.)) |
| "In October 1996, Dr. Masquelier, as the inventor of the '360 patent, executed a Confirmatory Assignment to INC of any interest in the patent that may have reverted to him, and the Confirmatory Assignment was recorded in the PTO." Defendants' Summary Judgment Memorandum at 3, 29. | Masquelier had no interests in the '360 patent when such "assignment" was made. Moreover, as described above, the recording of the assignment by the PTO is a ministerial act, and is not probative of ownership. |
| "The French statute on which the decisions rested (which required a co-owner to give a right of first refusal to the other co-owner if it wanted to sell) did not apply to the ownership | This is not a "fact" at all, and was always an incorrect statement of the law. New Marshall Engine Co. v. Marshall Engine Co., 223 U.S. 973, 478-79 (1212). See also Beghin-Say Int'l, Inc.. v. Rasmusse, 773 F. Rd 1568, 1573 n. 5 |

| | |
|---|---|
| or assignment of a U.S. patent." | (Fed. Cir. 1984). To the extent this is intended to refer to opinions on the law that may have been provided to Zivin or other attorneys, this evidence should not be considered by the Court because Defendants refused to produce this information during discovery claiming attorney-client privilege. See Plaintiff Jarrow Formulas, Inc.'s Memorandum of Law in Support of Its Motion to Limit the Testimony at Trial of Norman Zivin filed August 10, 2005. |
| "Without informing SCIPA or INC, Horphag licensed Indena after commencement of the Connecticut action in 1996, which would have violated the same French statute relied on in the French courts' rulings if that statute applied to the '360 patent. Because there was no discovery in the French civil justice system, INC could not obtain and present evidence of Horphag's license to Indena." Defendants' Summary Judgment Memorandum at 3, 30. | This "fact" is immaterial and irrelevant. This action occurred after Horphag had initiated legal action over ownership of the '360 patent in France, and after INC had commenced a suit when it had no standing to sue. |
| Judge Squatrito did not permit INC to use a copy of the Horphag license agreement with Indena that one of the defendants in the Connecticut action produced. Defendants' Summary Judgment Memorandum at 3, 30. | This "fact" is immaterial and irrelevant. Indeed, Judge Squatrito's refusal to consider this demonstrates that is was never material evidence. |
| "The French Appeals court did not grant Horphag's request to preempt SCIPA's interest in the patent." Defendants' Summary Judgment Memorandum at 3, 30. | This "fact" is immaterial and irrelevant to INC's suit on a patent it did not own and on which it had no standing to sue. |
| "The complexity of international law and the use of a foreign court's ruling to determine ownership of a U.S. patent weighed against according comity to the French courts' rulings." Defendants' Summary Judgment Memorandum at 3, 30. | This is not a fact at all, but at best a legal opinion which was rejected by the District of Connecticut and the Federal Circuit. To the extent this is intended to refer to opinions on the law that may have been provided to Zivin or other attorneys, this evidence should not be considered by the Court because Defendants refused to produce this information during discovery claiming attorney-client privilege. See Plaintiff Jarrow Formulas, Inc.'s Memorandum of Law in Support of Its Motion to Limit the Testimony at Trial of Norman |

| | |
|---|---|
| | Zivin filed August 10, 2005. |
| "INC's appeal to the Federal Circuit, which had the final word on the issues raised in INC's infringement action under the '360 patent, was not decided until June 2001." Defendants' Summary Judgment Memorandum at 3, 30. | This is immaterial and irrelevant. All the Federal Circuit decided was that the District of Connecticut was correct in granting comity to the French Court and that any amendments to the defendants' complaint would be futile because Horphag was not a voluntary party plaintiff. Int'l. Nutrition Co. v. Horphag Research Ltd., 257 F.3d 1324, 1331 (Fed. Cir. 2001). During and after 2001 the defendants continued to make false claims as to patent ownership. (Whitney Decl., Ex. 33 - 41) Moreover, the Federal Ciruit did not have before it the history of the defendants misrepresentations to the district court and the PTO, or the actions taken by Defendants in the market place to further their attempt to monopolize the markct. |
| "In August 1993, Horphag sued Consac (an American manufacturer of food supplements) for infringing the '360 patent without any other owner of the patent joining the suit voluntarily as a plaintiff or being joined by Horphag as a plaintiff or a defendant." Defendants' Summary Judgment Memorandum at 4, 30. | Horphag's improper action, if any, does not validate the Defendants' conduct. In any event, on September 21, 1993, Horphag wrote to SCIPA "to invite [SCIPA] to <u>voluntarily join this lawsuit as a party plaintiff.</u>" (Whitney Decl. Ex. 28 - letter from Robert Simpson to SCIPA of 9/24/93 (emphasis added.)) |
| "Horphag had stated in 1994 that either owner of the '360 patent could proceed with a patent infringement action without the other owner joining." Defendants' Summary Judgment Memorandum at 4, 30. | Horphag's improper action, if any, does not validate the Defendants' conduct. In any event, on September 21, 1993, Horphag wrote to SCIPA "to invite [SCIPA] to <u>voluntarily join this lawsuit as a party plaintiff.</u>" (Whitney Decl. Ex. 28 - letter from Robert Simpson to SCIPA of 9/24/93 (emphasis added.)) |
| "The case law in 1996 and thereafter regarding the procedure for a single patent co-owner to sue for patent infringement was uncertain." Defendants' Summary Judgment Memorandum at 4, 30. | This is not a fact, and it is not true. Indeed, this law has been well settled since <u>Waterman v. Mackenzie,</u> 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891). Indeed, defendant Zivin was reminded of <u>Mackenzie</u> by Consac's counsel in court on October 28 ,1994. (Whitney Decl., Ex. 30 - Transcript of Motion dated 10/28/04, at 13, ll 3-9.) |

| | |
|---|---|
| "There were grounds for questioning whether Horphag's interest in the '360 patent had reverted to Dr. Masquelier in 1995 and before INC began the Connecticut action." Defendants' Summary Judgment Memorandum at 4, 30. | This is an unsubstantiated legal fiction uniformly rejected by the courts in the underlying actions. To the extent this is intended to refer to opinions on the law that may have been provided to Zivin or other attorneys, this evidence should not be considered by the Court because Defendants refused to produce this information during discovery claiming attorney-client privilege. See Plaintiff Jarrow Formulas, Inc.'s Memorandum of Law in Support of Its Motion to Limit the Testimony at Trial of Norman Zivin filed August 10, 2005. |
| "If Horphag still retained an interest in the '360 patent after 1995 but refused to join the underlying litigation as a co-plaintiff, Fed. R. Civ. P. 19(a) provided a mechanism for joining Horphag, and if it was determined that Horphag was incorrectly named as a defendant, realigning it as a plaintiff." Defendants' Summary Judgment Memorandum at 4, 30. | Whether Horphag could have been joined as a co-plaintiff by a proper owner of the '360 patent is immaterial and irrelevant to INC's improper actions in bringing the suit. |
| "INC relied on Judge Platt's ruling that, even though Horphag had sued Consac without joining SCIPA or INC, INC could be vouched in and bound by a judgment." Defendants' Summary Judgment Memorandum at 4, 30. | Judge Platt's actions in joining INC are immaterial and irrelevant to whether INC was properly an owner of the '360 patent. At the time of Judge Platt's action, INC had recorded its wrongly obtained assignment from SCIPA, leading Judge Platt to joining them in the lawsuit. |

# TAB C

Case 3:01-cv-00478-AVC    Document 244-2    Filed 08/10/2005    Page 15 of 18

# Chapter 300 Ownership and Assignment

| | | |
|---|---|---|
| 301 | | Ownership/Assignability of Patents and Applications |
| 301.01 | | Accessibility of Assignment Records |
| 302 | | Recording of Assignment Documents |
| 302.01 | | Assignment Document Must Be Original or True Copy for Recording |
| 302.02 | | Translation of Assignment Document |
| 302.03 | | Identifying Patent or Application |
| 302.04 | | Foreign Assignee May Designate Domestic Representative |
| 302.05 | | Address of Assignee |
| 302.06 | | Fee for Recording |
| 302.07 | | Assignment Document Must Be Accompanied by a Cover Sheet |
| 302.08 | | Mailing Address for Submitting Assignment Documents |
| 302.09 | | Facsimile Submission of Assignment Documents |
| 303 | | Assignment Documents Not Endorsed on Pending Applications |
| 306 | | Assignment of Division, Continuation, Substitute, and Continuation-in-Part in Relation to Parent Application |
| 306.01 | | Assignment of an Application Claiming the Benefits of a Provisional Application |
| 307 | | Issue to Assignee |
| 309 | | Restrictions Upon Employees of Patent and Trademark Office |
| 310 | | Government License Rights to Contractor-Owned Inventions Made Under Federally Sponsored Research and Development |
| 311 | | Filing of Notice of Arbitration Awards |
| 313 | | Recording of Licenses, Security Interests, and Other Documents Other Than Assignments |
| 314 | | Certificates of Change of Name or of Merger |
| 315 | | Indexing Against a Recorded Certificate |
| 317 | | Handling of Documents in the Assignment Division |
| 317.01 | | Recording Date |
| 317.02 | | Correction of Returned Documents and Cover Sheets |
| 317.03 | | Effect of Recording |
| 318 | | Documents Not to be Placed in Files |
| 320 | | Title Reports |
| 323 | | Procedures for Correcting Errors in Recorded Assignment Document |
| 323.01 | | Correction of Error in Recorded Cover Sheet |
| 324 | | Establishing Right of Assignee to Take Action |

## 301  Ownership/Assignability of Patents and Applications

*35 U.S.C. 261. Ownership; assignment.*

Subject to the provisions of this title, patents shall have the attributes of personal property.

Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

A certificate of acknowledgment under the hand and official seal of a person authorized to administer oaths within the United States, or, in a foreign country, of a diplomatic or consular officer of the United States or an officer authorized to administer oaths whose authority is proved by a certificate of a diplomatic or consular officer of the United States, or apostille of an official designated by a foreign country which, by treaty or convention, accords like effect to apostilles of designated officials in the United States, shall be prima facie evidence of the execution of an assignment, grant, or conveyance of a patent or application for patent.

An assignment, grant, or conveyance shall be void as against any subsequent purchaser or mortgagee for valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.

*35 U.S.C. 262. Joint owners.*

In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners.

*37 CFR 3.1. Definitions.*

For purposes of this part, the following definitions shall apply:

*Application* means a national application for patent, an international application that designates the United States of America, or an application to register a trademark unless otherwise indicated.

*Assignment* means a transfer by a party of all or part of its right, title and interest in a patent or patent application, or a transfer of its entire right, title and interest in a registered mark or a mark for which an application to register has been filed.

*Document* means a document which a party requests to be recorded in the Office pursuant to § 3.11 and which affects some interest in an application, patent, or registration.

*Office* means the Patent and Trademark Office.

*Recorded document* means a document which has been recorded in the Office pursuant to § 3.11.

*Registration* means a trademark registration issued by the Office.

### OWNERSHIP

Ownership of a patent gives the patent owner the right to exclude others from making, using, offering

for sale, selling, or importing into the United States the invention claimed in the patent. 35 U.S.C. 154(a)(1). Ownership of the patent does not furnish the owner with the **right** to make, use, offer for sale, sell, or import the claimed invention because there may be other legal considerations precluding same (e.g., existence of another patent owner with a dominant patent, failure to obtain FDA approval of the patented invention, an injunction by a court against making the product of the invention, or a national security related issue).

The ownership of the patent (or the application for the patent) initially vests in the named inventors of the invention of the patent. See *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248, 26 USPQ2d 1572, 1582 (Fed. Cir. 1993). The patent (or patent application) is then assignable by an instrument in writing, and the assignment of the patent, or patent application, transfers to the assignee(s) an alienable (transferable) ownership interest in the patent or application. 35 U.S.C. 261.

### ASSIGNMENT

"Assignment," in general, is the act of transferring to another the ownership of one's property, i.e., the interest and rights to the property. In 37 CFR 3.1, assignment of <u>patent rights</u> is defined as "a transfer by a party of all or part of its right, title and interest in a patent or patent application...." An assignment of a patent, or patent application, is the transfer to another of a party's **entire** ownership interest or a percentage of that party's ownership interest in the patent or application. In order for an assignment to take place, the transfer to another must include the entirety of the bundle of rights that is associated with the ownership interest, i.e., all of the bundle of rights that are inherent in the right, title and interest in the patent or patent application.

### LICENSING

As compared to assignment of patent rights, the licensing of a patent transfers a bundle of rights which is less than the entire ownership interest, e.g., rights that may be limited as to time, geographical area, or field of use. A patent license is, in effect, a contractual agreement that the patent owner will not sue the licensee for patent infringement if the licensee makes, uses, offers for sale, sells, or imports the claimed invention, as long as the licensee fulfills its obligations and operates within the bounds delineated by the license agreement.

An exclusive license may be granted by the patent owner to a licensee. The exclusive license prevents the patent owner (or any other party to whom the patent owner might wish to sell a license) from competing with the exclusive licensee, as to the geographic region, the length of time, and/or the field of use, set forth in the license agreement.

A license is not an assignment of the patent. Even if the license is an exclusive license, it is **not** an assignment of patent rights in the patent or application.

### INDIVIDUAL AND JOINT OWNERSHIP

Individual ownership - An individual entity may own the entire right, title and interest of the patent property. This occurs where there is only one inventor, and the inventor has not assigned the patent property. Alternatively, it occurs where all parties having ownership interest (all inventors and assignees) assign the patent property to one party.

Joint ownership - Multiple parties may **together** own the entire right, title and interest of the patent property. This occurs when any of the following cases exist:

(A) Multiple partial assignees of the patent property;

(B) Multiple inventors who have not assigned their right, title and interest; or

(C) A combination of partial assignee(s), and inventor(s) who have not assigned their right, title and interest.

Each individual inventor may only assign the interest he or she holds; thus, assignment by one joint inventor renders the assignee a partial assignee. A partial assignee likewise may only assign the interest it holds; thus, assignment by a partial assignee renders a subsequent assignee a partial assignee. All parties having any portion of the ownership in the patent property must act **together** as a composite entity in patent matters before the Office.

### MAKING THE ASSIGNMENT OF RECORD

An assignment can be made of record in the United States Patent and Trademark Office (Office) in two

different ways, for two different purposes. The differences are important to note:

(A) An assignment can be made of record in the assignment records of the Office. Recordation of the assignment provides legal notice to the public of the assignment. <u>It should be noted that recording of the assignment is merely a ministerial act; it is not an Office determination of the validity of the assignment document nor the effect of the assignment document on the ownership of the patent property. See 37 CFR 3.54 and MPEP § 317.03</u>; and

(B) An assignment can be made of record in the file of a patent application, patent, or other patent proceeding (e.g., reexamination proceeding). This step is necessary to permit the assignee to "take action" in the application, patent, or other patent proceeding under the conditions set forth in 37 CFR 3.73 and MPEP § 324. Recordation of an assignment in the assignment records of the Office does **not**, by itself, permit the assignee to take action in the application, patent, or other patent proceeding.

## 301.01 Accessibility of Assignment Records

*37 CFR 1.12. Assignment records open to public inspection.*

(a)(1) Separate assignment records are maintained in the United States Patent and Trademark Office for patents and trademarks. The assignment records, relating to original or reissue patents, including digests and indexes (for assignments recorded on or after May 1, 1957), published patent applications, and assignment records relating to pending or abandoned trademark applications and to trademark registrations (for assignments recorded on or after January 1, 1955), are open to public inspection at the United States Patent and Trademark Office, and copies of those assignment records may be obtained upon request and payment of the fee set forth in § 1.19 and § 2.6 of this chapter.

(2) All records of assignments of patents recorded before May 1, 1957, and all records of trademark assignments recorded before January 1, 1955, are maintained by the National Archives and Records Administration (NARA). The records are open to public inspection. Certified and uncertified copies of those assignment records are provided by NARA upon request and payment of the fees required by NARA.

(b)    Assignment records, digests, and indexes relating to any pending or abandoned patent application which has not been published under 35 U.S.C. 122(b) are not available to the public. Copies of any such assignment records and related information shall be obtainable only upon written authority of the applicant or applicant's assignee or attorney or agent or upon a showing that the person seeking such information is a bona fide prospective or actual purchaser, mortgagee, or licensee of such application, unless it shall be necessary to the proper conduct of business before the Office or as provided in this part.

(c)    Any request by a member of the public seeking copies of any assignment records of any pending or abandoned patent application preserved in confidence under § 1.14, or any information with respect thereto, must:

(1)    Be in the form of a petition including the fee set forth in § 1.17 (h); or

(2)    Include written authority granting access to the member of the public to the particular assignment records from the applicant or applicant's assignee or attorney or agent of record.

(d)    An order for a copy of an assignment or other document should identify the reel and frame number where the assignment or document is recorded. If a document is identified without specifying its correct reel and frame, an extra charge as set forth in § 1.21(j) will be made for the time consumed in making a search for such assignment.

Assignment documents relating to patents, published patent applications, registrations of trademarks, and applications for registration of trademarks are open to public inspection.

The Office will not open only certain parts of an assignment document to public inspection. If such a document contains two or more items, any one of which, if alone, would be open to such inspection, then the entire document will be open. Thus, if a document covers either a trademark or a patent in addition to one or more patent applications, it will be available to the public *ab initio*; and if it covers a number of patent applications, it will be so available as soon as any one of them is published or patented. Documents relating only to one or more pending applications for patent which have not been published under 35 U.S.C. 122(b) will not be open to public inspection.

Copies of assignment records relating to pending or abandoned patent applications not published under 35 U.S.C. 122(b) and information related thereto are obtainable upon a showing of written authority from the applicant or applicant's assignee or from the attorney or agent of either, or upon a showing that the person seeking such information is a *bona fide* prospective or actual purchaser, mortgagee, or licensee of such application.

If the application on which a patent was granted is a division or continuation of an earlier application, the assignment records of that earlier application will be open to public inspection; similar situations involving continuation-in-part applications will be considered