UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JARROW FORMULAS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NO. 3:01-CV-00478 (AVC) |
| ) | |
| INTERNATIONAL NUTRITION ) | |
| COMPANY, INTEGRATED ) | |
| BIOCEUTICALS, LLC, PRIMARY ) | |
| SERVICES, INC., PRIMARY SOURCE, ) | |
| LLC, EGBERT SCHWITTERS, NORMAN ) | |
| H. ZIVIN, and JACK MASQUELIER, ) | |
| ) | |
| Defendants ) | AUGUST 10, 2005 |

**PLAINTIFF JARROW FORMULAS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PATENT INVALIDITY, INEQUITABLE CONDUCT, OR FRAUD**

Plaintiff Jarrow Formulas, Inc. ("JFI") submits this Memorandum of Law in Opposition to the Motion in Limine to Exclude Evidence of Patent Invalidity, Inequitable Conduct, or Fraud ("Motion in Limine") filed by Defendants International Nutrition Company ("INC"), Integrated BioCeuticals, LLC, Primary Services, Inc., Primary Source, LLC, Egbert Schwitters, Norman H. Zivin, and Jack Masquelier ("Defendants") [Dkt. # 236]. In their Motion in Limine, Defendants ask the Court to prohibit JFI from offering evidence showing that INC, Masquelier and Zivin withheld and hid material information from the Patent & Trademark Office ("PTO") during the reexamination of U.S. Patent No. 4,698,360 ("the '360 patent"). As set forth in detail below, the evidence that JFI seeks to introduce is relevant to its complaint as filed, as it is further evidence that Defendants conspired to illegally monopolize the United States market for proanthocyanidins. This evidence is also relevant to rebut evidence relied upon by

**ORAL ARGUMENT REQUESTED**

Defendants in their Motion for Summary Judgment [Dkt. # 234] filed concurrently with their Motion in Limine ("Summary Judgment Motion"). Because the evidence is relevant and admissible, the court should deny Defendants' Motion in Limine.

## STATEMENT OF FACTS

### Procedural Background

JFI filed the present action on March 23, 2001 ("Verified Complaint") [Dkt. # 1]. It thereafter filed an Amended Verified Complaint on November 1, 2002 ("Amended Complaint") [Dkt. # 114]. In its Amended Complaint JFI alleged that defendants' unlawful conduct included (1) claiming ownership in the '360 patent when they knew or should have known that they did not own the '360 patent; (2) terrorizing market participants through false and misleading publications, threatening correspondence and initiating and maintaining two meritless lawsuits without probable cause; (3) coercing market participants to enter into supply and licensing agreements with Defendant IBC; and (4) "threaten[ing] their competitors with legal action which had no legal or factual basis" and undertaking "numerous baseless and vexatious litigation in various venues" as part of a scheme of anti-competitive conduct to monopolize the market in the United States for nutritional supplements containing proanthocyanidins. See Amended Complaint at ¶ 14. Among the specific allegations of misconduct, JFI alleged that Defendants has fraudulently obtained and recorded assignments of the '360 patent to INC. See Amended Complaint at ¶¶ 18 and 25.

In response to JFI's Complaint, Defendants filed a Motion to Dismiss the Verified Complaint alleging lack of subject matter jurisdiction on July 3, 2001 [Dkt. # 12]. Among the arguments made by Defendants as grounds for dismissal was that JFI's antitrust claims were

compulsory counterclaims in INC's dismissed patent infringement suit against JFI and others. See International Nutrition Co. v. Horphag Research, Ltd., Civil Action No.: 3:96-CV-0386 (DJS). As set forth by JFI in its Opposition to Defendants' Motion to Dismiss [Dkt. # 18], JFI's antitrust claims in this case were not compulsory counterclaims in INC's prior meritless patent infringement suit at least because:

- JFI never filed an answer to INC's patent infringement claim. JFI filed a motion to dismiss for lack of standing. The case was stayed by Judge Squatrito without any discovery being conducted, and the case was reopened for the limited purpose of filing summary judgment motions on the standing issue, which were granted.[1]

- Many of the facts giving rise to the antitrust claims arose after the filing of INC's patent infringement suit and the stay imposed by the Court in that action.

- JFI's claims in this case raise numerous issues distinct from the patent issues raised in INC's prior patent infringement suit.

Although it was certainly not the only reason, in opposing Defendants' motion to dismiss, JFI stated that it was not asking the Court in this case to find the '360 patent invalid. At the time that JFI's complaint was filed, none of Defendants was an owner of the '360 patent. Therefore, JFI could not have requested such a finding, as none of the patent owners was a party to the action. The Court ultimately denied Defendants' motion to dismiss, finding that "the complaint does allege, as part of its antitrust action, facts that arose after the filing of [JFI's]

---

[1] Because standing is a jurisdictional defect which existed from the time that INC filed suit, the Court was required to dismiss the complaint. Media Tech. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1369-70 (Fed. Cir. 2003). Moreover, because INC did not own any interest in the '360 patent, and therefore did not have standing, the Court in the underlying action could not have made any findings on validity or enforceability of the '360 patent even if a counterclaim had been filed. It would be incongruous, to say the least, for the Court to hold that a counterclaim that could not have been adjudicated was compulsory.

motion to dismiss and related motion for summary judgment in the prior patent litigation. In addition, Jarrow's antitrust action is not based solely on the same defenses it raised in its successful motion for summary judgment in the prior litigation." Ruling on Defendants' Motion to Dismiss at 22 [Dkt. #32].

Discovery in this case closed on August 31, 2002 [Dkt. #66]. After discovery had closed, on or about April 24, 2003, INC and Horphag reached an agreement to settle their long running dispute over ownership of the '360 patent, with INC's subsidiary, CEP, and Horphag each owning an undivided half interest in the patent. In September 2003, JFI received a letter from counsel for INC revealing the settlement agreement, INC's and CEP's newly acquired interest in the '360 patent, and stating that INC and CEP were considering "reinstituting" the patent infringement action against JFI and others (copy attached as **Exhibit A**).[2] Because of that threat of litigation, JFI revisited the issue of patent invalidity and enforceability of the '360 patent, including searching for additional prior art and reviewing in detail the actions taken by INC, Masquelier and Zivin in connection with the reexamination of the '360 patent.[3] In the course of this review of the '360 patent, JFI identified the evidence set forth in detail below which demonstrates further acts undertaken by INC, Masquelier and Zivin in connection with the

---

[2] JFI is not privy to any arrangements between INC and CEP regarding ownership of, or other rights in, the '360 patent. However, the letter threatening to reinstitute an infringement suit stated that it was "INC and CEP" that were considering such action.

[3] Defendants have gone to great lengths to avoid having the evidence of their conduct before the PTO reviewed by a fact finder. After discovering the evidence of misconduct, and in response to INC's and CEP's threat to sue JFI for infringement, JFI filed a declaratory judgment action seeking to invalidate the '360 patent or have the patent declared unenforceable for inequitable conduct. Jarrow Formulas, Inc. v. Centre D'Experimentation Pycnogenol SARL, Civil Action No. 3:04-CV-535 (JBA). After some initial procedural attempts to have the suit dismissed, INC, CEP and Horphag filed covenants not to sue JFI on the '360 patent to divest the court of declaratory judgment jurisdiction. Thus, after several years of patent infringement litigation, and threats of renewed litigation, INC chose to walk away from the patent rather than have the evidence of misconduct presented to the court.

reexamination of the '360 patent as part of their conspiracy to illegally monopolize the United States market for proanthocyanidins.

**The Evidence Related to the '360 Patent**

In their Motion in Limine, defendants ask the Court to rule in a vacuum, without identifying for the Court the specific evidence that they would like excluded. As described below, the evidence that JFI intends to offer plainly shows that the '360 patent was maintained by withholding material prior art from the PTO, and making misleading statements regarding the information considered by the PTO. The material prior art was not provided to the PTO during the prosecution of the '360 patent, and was withheld during the reexamination of the '360 patent. This evidence of misconduct, particularly in the reexamination of the '360 patent, is relevant to JFI's claim that Defendants conspired to illegally monopolize the market for proanthocyanidins. It is also relevant to rebut the defense that defendants have raised in their summary judgment papers, and presumably intend to raise at trial, that INC's patent infringement suit was not objectively baseless because the '360 patent is presumed valid, and it survived reexamination. See Defendants International Nutrition Company, Egbert Schwitters, Norman H. Zivin, Jack Masquelier, Integrated Bioceuticals, LLC, Primary Source, LLC and Primary Services, Inc. Memorandum of Law In Support of Their Motion for Summary Judgment at 22 ("Defendants' Summary Judgment Brief") [Dkt. # 235].

The '360 patent issued on October 6, 1987 (copy attached as **Exhibit B**). The patent application that matured into the '360 patent was filed on April 9, 1985. Under 35 U.S.C. § 102(b) a person is not entitled to a patent if "the invention was patented or described in a printed publication or in public use or on sale in this country, more than one year prior to the date

of the application for patent in the United States." Therefore, the '360 patent is invalid if the methods for administering proanthocyanidins claimed in the '360 patent were described in a printed publication before April 9, 1984 ("the Critical Date"). The '360 patent claims methods of administering proanthocyandins extracted from a plant source to reduce free radicals "in an amount effective to reduce said harmful free radical effect." Ex. B, col. 7, lines 4-6. The '360 patent provides examples of oral administration of therapeutically effective amounts of proanthocyanidins in the range of 100 mg to 200 mg per day. Ex. B, col. 6, lines 48-54.

Beginning in approximately 1978, a product containing proanthocyanidins was made and sold in France under the trade name Endotelon. Endotelon was a product comprised of proanthocyanidins extracted from grapes. Endotelon was produced under a license from Societe Civile d'Investigations Pharmaceutiques d'Aquitaine (SCIPA), a French partnership in which Masquelier was a partner. In 1980, four years prior to the Critical Date, an article was published in the *Gazette Medicale de France* entitled "Therapeutical Trial of Endotelon, a peripheral angioprotector" reporting the results of tests performed by administering Endotelon to humans at a dosage of 150 milligrams per day ("the French Endotelon article"). Copies of the French article and an English translation of the article are attached as **Exhibit C**.

The French Endotelon article describes administration of proanthocyanidins obtained from a plant source to humans in the same dosage range described and claimed in the '360 patent. Administering the proanthocyanidins in Endotelon in the dosage range described in the '360 patent inherently and necessarily results in scavenging of free radicals in humans. Therefore, the French Endotelon article describes, explicitly or inherently, each and every step of the methods claimed in the '360 patent.

6

In addition to the French Endotelon article, there were several other articles published prior to 1984 which describe administration of proanthocyanidins derived from plant sources to humans at dosages within the range claimed in the '360 patent. For example, in the book OPC in Practice published in 1993 by Bert Schwitters (at the time a Director of INC) in collaboration with Jack Masquelier, several studies of "the OPC-based product 'Endotelon' (Sanofi/Labaz)" are summarized at pages 57-61. Copies of these pages are attached as **Exhibit D**. In the studies described in Exhibit C, which took place 1980 and 1981, Endotelon was administered to human subjects at dosages within the dosage ranges claimed in the '360 patent. None of the papers described in OPC in Practice were provided to the PTO during prosecution of the '360 patent application.

In the 3rd edition of OPC in Practice published in 1995, at pages 111-117, additional information regarding testing of Endotelon in 1980 and 1981 is provided, including citations to references describing in detail the tests previously summarized in the 1993 edition of the book. Copies of pages 111-117 of the 3rd edition of OPC in Practice are attached as **Exhibit E**.

In addition to the published articles on Endotelon, INC's marketing materials in the United States state that products containing proanthocyanidins had been sold overseas for years, demonstrating that INC was aware of Endotelon. INC offers for sale in the United States an OPC product under the trade name Flavay™. A photograph of a bottle of Flavay™ offered through a distributor is shown in **Exhibit F**. The label on the bottle of Flavay™ shown in Exhibit F includes the Masquiler's® trademark owned by INC, includes the '360 patent number, and further states "Scientifically Defined, Patented and isolated from Natural Extracts as used in

the Actual Research Since 1947." Product literature regarding Flavay™ is attached as **Exhibit G**. As shown in the underlined passages in Exhibit F, the product literature states that Flavay™ "is proven fully bioavailable, safe and effective by numerous human studies, manufactured in France and used worldwide since 1950." The product literature for Flavay™ further states that Resivit™, Flavan™ and Endotelon™ are the early French brand names for Flavay™.

On April 17, 1996, a Request for Reexamination of the '360 patent was filed with the PTO. During prosecution of the reexamination of the '360 patent, Zivin, on behalf of INC and Masquelier, submitted an Information Disclosure Statement citing seventy-one separate references without any explanation of any of the references other than the titles and dates of the references.[4] A copy of the Information Disclosure Statement is provided as **Exhibit H**. The Information Disclosure Statement does not cite or provide the Examiner with the French Endotelon article or any of the articles regarding testing of OPCs cited at pages 111-117 of the 3rd edition of OPC in Practice.

In addition to failing to cite material prior art during the reexamination, INC and Zivin made misleading statements to the Examiner during prosecution of the '360 reexamination. Following a rejection of the claims of the '360 patent based in part on pages 57-61 of the 1993

---

[4] In August 1996, Jarrow Rogovin, President of JFI, had provided INC with a letter containing a detailed analysis of the seventy-one references INC cited, including why the references rendered the '360 patent invalid. Although INC was in possession of a detailed analysis of these references prepared by Mr. Rogovin, INC did not provide to the Examiner *any* explanation of the relevance or significance of any of the publications. INC's failure to point out the relevance of any of the numerous references dumped on the Examiner is itself evidence of misconduct in the reexamination. See Molins PLC v. Textron, Inc., 48 F.3d 1172, 1184 (Fed. Cir. 1995)("'[B]urying' a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith.").

edition OPC in Practice, INC submitted the following statement in the Office Action response filed by Zivin on behalf of INC and Masquelier on March 17, 1997 (copy attached as **Exhibit I**):

> Patentee respectfully points out that the Examiner's use of OPC In Practice as a secondary reference in the 35 U.S.C. §§102/103 rejection of the claims is improper. OPC In Practice was published in 1993, which is long subsequent to the April 9, 1985 filing date of the '360 patent. Therefore, OPC In Practice is not a proper basis for the Examiner to establish a 35 U.S.C. §§102/103 rejection. . .

This statement in the March 17, 1997 Office Action response was misleading at least because INC, Masquelier and Zivin knew that OPC In Practice included information regarding published papers reporting tests of Endotelon conducted in 1980 and 1981 within the dosage ranges claimed in the '360 patent. INC, Masquelier and Zivin argued that OPC in Practice itself was not prior art, but failed to direct the Examiner to the published articles referred to in the book which they knew were material prior art.

## ARGUMENT

In their Motion in Limine, Defendants argue that the evidence of misconduct related to the prosecution and reexamination of the '360 patent should be excluded because it is irrelevant, and because JFI should be judicially estopped from presenting the evidence either in response to Defendants' Summary Judgment Motion or at trial. As set forth below, the evidence is plainly relevant to JFI's claims in this case, and it is relevant in response to the defenses raised by Defendants. In addition, judicial estoppel does not apply.

### A.     The Evidence Related to Withheld References and Misleading Statements Is Relevant.

JFI should be permitted to offer evidence regarding INC's, Masquelier's, and Zivin's conduct in connection with the '360 patent, and in particular with the reexamination of the '360 patent. This conduct, which involved withholding material information and making misleading statements to the PTO, was part of Defendants' scheme to illegally monopolize the United States market for proanthocyanidins. JFI's original complaint charged Defendants with conspiring to illegally monopolize the United States market for proanthocyanidins by, among other things, undertaking legal action with no legal or factual basis, and undertaking baseless and vexatious litigation. INC's and Masquelier's conduct in connection with the '360 patent, and in particular with respect to the reexamination which took place while the underlying suit was pending, is relevant evidence on these issues, and JFI should be permitted to introduce this evidence.

Defendants argue that the evidence regarding the prior art and Defendants' actions before the PTO should be excluded because it is not relevant to the claims alleged in JFI's complaint. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Fed. R. Evid. 401. Evidence showing that INC, Masquelier and Zivin withheld material information and made misleading statements to the PTO is relevant to JFI's claim that Defendants "had undertaken legal action with no legal or factual basis." Verified Complaint ¶ 9. It also is further evidence of a conspiracy among Defendants to illegally monopolize the United States market for proanthocyanidins. In addition, this evidence is relevant to show that INC, Masquelier and Zivin had knowledge regarding the '360 patent which

10

would cause a reasonable litigant to conclude that there was no legitimate basis for an infringement suit on the '360 patent, and that these Defendants withheld the information from the PTO to improperly obtain a favorable result in the reexamination of the '360 patent. Accordingly, the evidence is relevant to JFI's claims in this case, and JFI should be allowed to offer the evidence.

The relevance of this evidence is further demonstrated by Defendants' recent Summary Judgment Motion. Defendants rely on the *Noerr-Pennington* doctrine, and argue that their actions in bringing the underlying suit were not "objectively baseless." The evidence of misconduct before the PTO is relevant to the issue of whether the *Noerr-Pennington* doctrine applies to Defendants' conduct at all. As set forth in detail in Section V(B) of JFI's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment filed herewith, Defendants' fraud and misrepresentations to the PTO and the courts are not covered by the *Noerr-Pennington* doctrine. See Calabrese v. CSC Holdings, Inc., 2:02-CV-5171, 2004 WL 3186787, at *2-3 (W.D.N.Y. 2004) ("For all of the reasons stated above, execution of fraud and deliberate submission of misleading information do not enjoy immunity under the Noerr-Pennington anti-trust immunity doctrine.")

Moreover, Defendants cite on the statutory validity of the patent and the results of the reexamination of the '360 patent as evidence that their actions were not "objectively baseless." See Defendants' Summary Judgment Brief at 22, 25-27. Plainly, JFI should be allowed to put on evidence to demonstrate that Defendants withheld material information and made misleading statements to the PTO to wrongly obtain the favorable result at the PTO on which they rely. It would be grossly unfair to allow Defendants to wrongly obtain a favorable

result from the PTO by withholding information, and then allow Defendants to benefit from their misconduct by relying on that result without any presentation of evidence showing that it was wrongly obtained.[5]

Defendants also make much of the Court's December 1, 2004 endorsement order denying JFI's Motion to Further Amend its Complaint [Dkt. # 210]. It is not clear from the endorsement order why the Court did not allow further amendment to the complaint. In any event, because the evidence that JFI seeks to introduce is relevant both to JFI's claims as filed and to rebut the defenses raised by Defendants, JFI should be allowed to introduce the evidence in response to Defendants' Summary Judgment Motion and at trial.

B.   **Judicial Estoppel Does Not Apply.**

In their Summary Judgment Brief, Defendants misstate and misapply the doctrine of judicial estoppel. Judicial estoppel is an equitable doctrine invoked at the Court's discretion. New Hampshire v. Maine, 532 U.S. 742, 750 (2001). "The courts invoke judicial estoppel as a means to 'preserve the sanctity of the oath' or to 'protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.'" Simon v. Safelite Glass Corp., 128 F.3d 68, 71 (2d Cir. 1997). In this case, neither reason for invoking judicial estoppel applies. JFI's prior arguments do not implicate sworn testimony. Moreover, allowing JFI to put on the evidence that it discovered while this case has been pending does not create a risk of inconsistent results in two proceedings. See Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Co., 99 F.Supp.2d 450,

---

[5] The reexamination process at the time of the reexamination of the '360 patent was an *ex parte* process in which, after the initial reexamination petition is submitted, only the patent owner is allowed to submit information to the PTO. See Manual of Patent Examining Procedure § 2254 (copy attached hereto as **Exhibit J**). Therefore, even if JFI or other defendants in the underlying action had been aware of the misleading statements made by INC, Masquelier and Zivin in the reexamination, JFI could not have addressed the issue in the reexamination.

457 n.3 (S.D.N.Y. 2000)(noting that the Second Circuit has never held that judicial estoppel can apply to inconsistent positions in the same proceeding). See also Adler v. Pataki, 185 F.3d 35, 41 n.3 (2d Cir. 1999)(refusing to apply judicial estoppel to position taken on appeal because "[i]n this Circuit, judicial estoppel applies only when a tribunal in a prior *separate* proceeding has relied on a party's inconsistent factual representations and rendered a favorable decision.").

In New Hampshire v. Maine, the Court noted that application of judicial estoppel is dependent on the facts and circumstances of each case, but identified three factors

> that inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept the party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

532 U.S. at 750 (citations omitted).

As to the first factor, in arguing that its antitrust claims were not compulsory counterclaims in the underlying litigation, JFI made several arguments, each of which was independently sufficient for the Court to deny the Defendants' Motion to Dismiss. Because INC did not have standing to bring a claim for infringement of the '360 patent, JFI filed a motion to dismiss the claim. The Court subsequently stayed the case and eventually dismissed INC's claim due to a lack of standing. JFI never answered the patent infringement claim in the prior patent infringement suit, and therefore JFI did not have the opportunity to raise patent related

counterclaims in that proceeding.[6] In addition, JFI argued that its antitrust claims were not compulsory counterclaims because many of the facts supporting JFI's antitrust claim arose after JFI had filed its motion to dismiss INC's patent infringement suit. In fact, Defendants' misconduct in the reexamination of the '360 patent also occurred after JFI had filed its motion to dismiss in the underlying action.[7] These reasons remain sufficient by themselves to support JFI's previous position. Therefore, there is no "clear inconsistency" in JFI's position. See Simon, 128 F.3d at 72-73 ("If the statements can be reconciled there is no occasion to apply an estoppel.").

As to the second factor, allowing JFI to introduce evidence that Defendants improperly withheld information and made misstatements to the PTO would not create an impression that the "first or second" court had been misled. First of all, the proceedings in this case do not involve two courts, but rather a party seeking to introduce evidence that it became aware of during the pendency of the proceeding before the same court. See Tuff-N-Rumble Mgmt., 99 F.Supp.2d at 457 n.3 (Second Circuit has never applied judicial estoppel in same proceeding). In any event, allowing this evidence is consistent with the reasoning of the Court in denying the prior motion to dismiss:

> In contrast to Critical-Vac, here, the complaint does allege, as part of its antitrust action, facts that arose after the filing of its motion to dismiss and related motion for summary judgment in the prior

---

[6] "A claim that should have been pleaded as a compulsory counterclaim in the first suit will only be barred in a subsequent action if a responsive pleading, such as an answer, was required to be or was served in the earlier action. Federal courts ruling on the issue have uniformly held that a motion to dismiss pursuant to Rule 12 is not a responsive pleading." 3 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 13.15. In any event, INC was not an owner of the '360 patent, INC did not have standing to make its infringement claim, and the court could not have adjudicated the validity or enforceability of the '360 patent as between JFI and INC.

[7] The request for reexamination of the '360 patent was filed on April 17, 1996, and JFI's motion to dismiss in the underlying action was filed on May 17, 1996. All of the substantive proceeding regarding the request for reexamination took place after JFI's motion to dismiss was filed.

14

>    patent litigation. In addition, Jarrow's antitrust action is not based
>    solely on the same defenses it raised in its successful motion for
>    summary judgment in the prior litigation.

Ruling on the Defendants' Motion to Dismiss at 22 [Dkt. # 32].

The additional evidence that JFI seeks to introduce related to the reexamination of the '360 patent similarly arose after JFI had filed its motion to dismiss in the prior litigation, and it was not a defense raised by JFI's motion for summary judgment in the prior proceeding. Accordingly, allowing this evidence is consistent with the Court's previous ruling.

As to the third factor to be considered, JFI will not derive an unfair advantage or impose an unfair detriment on Defendants if it is allowed to introduce evidence related to the reexamination of the '360 patent. Defendants do not even make mention to this factor in the analysis in the memorandum in support of their Motion in Limine. The evidence that JFI seeks to introduce consists of documents that were authored by one or more of Defendants and publicly available articles that were described by Defendants in their book. Therefore, there is no prejudice to Defendants in allowing these documents to be introduced into evidence.

In fact, JFI will be prejudiced if it is not allowed to introduce evidence related to Defendants conduct during the reexamination of the '360 patent. Defendants rely on the outcome of the reexamination to support their defense that the prior litigation was not objectively baseless. See Defendants' Summary Judgment Brief at 22, 25-27. JFI should be allowed to introduce evidence showing that Defendants had knowledge that the '360 patent was invalid when the prior litigation was filed, and evidence showing that the outcome of the reexamination of the '360 patent was tainted by Defendants' failure to disclose information to the PTO and misleading statements made in the reexamination process.

## CONCLUSION

For the reasons set forth above, Defendants' motion to exclude evidence should be denied, and JFI should be permitted to introduce evidence related to material prior art known to the Defendants and Defendants' actions during the reexamination of the '360 patent.

THE PLAINTIFF,
JARROW FORMULAS, INC.
BY MCCARTER & ENGLISH, LLP
ITS ATTORNEYS

By _____
ERIC WATT WIECHMANN (CT 04331)
ERIC E. GRONDAHL (CT 08988)
JASON C. WELCH (CT 23418)
CityPlace I
185 Asylum Street
Hartford, CT 06103
(860) 275-6700
(860) 724-3397 (fax)
egrondahl@mccarter.com
    -and-
ALEXANDRA B. STEVENS (CT 20300)
Four Stamford Plaza
107 Elm Street
Stamford, CT 06901
(203) 965-0823
(203) 323-6513 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing PLAINTIFF JARROW FORMULAS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PATENT INVALIDITY, INEQUITABLE CONDUCT, OR FRAUD has been mailed, postage prepaid, this 10th day of August, 2005, to

>RICHARD S. ORDER, ESQ.
>ERIC D. BEAL, ESQ.
>Axinn, Veltrop & Harkrider LLP
>90 State House Square
>Hartford, CT 06103

_____
ERIC E. GRONDAHL

HARTFORD: 645928.01