UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JARROW FORMULAS, INC.<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL NUTRITION COMPANY, INTEGRATED BIOCEUTICALS, LLC, PRIMARY SERVICES, INC., PRIMARY SOURCE, LLC, EGBERT SCHWITTERS, NORMAN H. ZIVIN, and JACK MASQUELIER,<br><br>Defendants | )<br>)<br>)<br>)<br>) CIVIL ACTION NO. 3:01-CV-00478 (AVC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) AUGUST 10, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF JARROW FORMULAS, INC.'S MOTION IN LIMINE
TO LIMIT THE TESTIMONY AT TRIAL OF NORMAN ZIVIN**

Plaintiff Jarrow Formulas, Inc. ("JFI") submits this Memorandum of Law in Support of Its Motion to Limit the Testimony at Trial of Norman Zivin ("Zivin"). As set forth in detail below, JFI seeks an order (1) prohibiting Zivin from rendering expert testimony and prohibiting Defendants and their attorneys from soliciting testimony from Zivin concerning legal opinions on the legal effect of Defendants' actions related to the '360 patent at any time before or during trial of this action and (2) prohibiting Zivin from testifying regarding the following subjects on which Zivin or INC invoked the attorney-client privilege during Zivin's deposition: (a) the legal basis or any advice given to INC regarding the grounds for INC's suit against JFI for infringement of U.S. Patent No. 4,698,360 ("the '360 patent"), (b) the legal basis or any advice given to INC regarding INC's claim of ownership of the '360 patent, (c) any legal advice given to INC regarding the effect of the various purported assignments of the '360 patent to INC and the recording of those assignments at the Patent and Trademark Office, (d) any advice that Zivin

ORAL ARGUMENT REQUESTED

provided INC regarding INC's press releases regarding the '360 patent and the infringement suit against JFI, (e) any analysis or advice given to INC regarding SCIPA's right to transfer its interest in the '360 patent to INC.[1] JFI requests that this order be entered because Defendants did not provide any summary of expert testimony to be provided by Zivin in accordance with Federal Rule of Civil Procedure 26(a), Zivin was not disclosed as an expert witness in response to JFI's interrogatories, and JFI will be prejudiced if Zivin is allowed to testify at trial regarding matters on which the attorney-client or work product privileges were invoked during Zivin's deposition in this matter.

## STATEMENT OF FACTS

This is an action against Defendants International Nutrition Company ("INC"), Egbert Schwitters ("Schwitters"), Jack Masquelier ("Masquelier"), Integrated Bioceuticals LLC ("IBC"), Primary Services, Inc. ("PSI") and Primary Source LLC ("Primary Source") for alleged violations of the Sherman-Clayton Antitrust Act, 15 U.S.C. §§ 1, 2 & 15, the Connecticut Antitrust Act, Conn. Gen. Stat. §§ 35-24, et seq., the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq., and the Lanham Act, 15 U.S.C. § 1125(a). JFI alleges that these Defendants also initiated and maintained a vexatious lawsuit in violation of Conn. Gen. Stat. § 52-568 and tortiously interfered with the JFI's advantageous business relations in violation of common law. All of this was done to the injury of a particular market and the JFI. JFI also claims to be injured by the conduct of Defendant Norman H. Zivin ("Zivin"). Zivin was

---

[1] Because Zivin should be precluded from testifying as an expert or on the subjects on which he invoked the attorney-client privilege during his deposition, the Court should not consider such evidence offered by Zivin in any affidavit in support of the Defendants' Motion for Summary Judgment dated July 18, 2005 {Dkt. # 234]. Under Rule 56(e), affidavits supporting or opposing summary judgment "shall set forth such facts as would be admissible in evidence."

and is counsel to certain of the Defendants and was involved in the initiation and maintenance of the afore-referenced alleged vexatious lawsuit.

JFI's claims center on Defendants' efforts and conspiracy to dominate and monopolize the sale of oligomeric proanthocyanidins ("OPCs") in the United States. That market was an emerging market in the United States in the mid to late 1990's. Certain uses of OPCs were claimed in U.S. Patent No. 4,698,360 ("the '360 patent"). The '360 patent issued with one independent and six dependent claims, all of which claim methods of using a plant extract with a "proanthocyanidin" content as a therapeutic agent having "radical scavenger effect."

JFI alleges that Defendants' unlawful conduct included (1) claiming ownership in the '360 patent when they knew or should have known that they did not own the '360 patent; (2) terrorizing market participants through false and misleading publications, threatening correspondence and initiating and maintaining two meritless lawsuits without probable cause; (3) coercing market participants to enter into supply and licensing agreements with Defendant IBC; and (4) bringing and maintaining a lawsuit on the '360 patent when INC knew that it did not have an ownership interest, and with knowledge that the '360 patent is invalid and unenforceable.

Defendant Zivin is an attorney specializing in intellectual property law. Zivin represented INC in the underlying litigation and prior actions in New York involving the '360 patent, filed various assignments with the United States Patent & Trademark Office ("PTO") purporting to transfer ownership of the '360 patent to INC, and represented INC before the PTO in connection with reexamination of the '360 patent. Zivin also reviewed press releases issued by INC regarding OPCs and the '360 patent.

As Defendants' legal advisor regarding the underlying litigation and other matters regarding the '360 patent, Zivin has first-hand knowledge regarding the actions that were taken by INC, INC's knowledge regarding the merits of the litigation, the positions taken by INC in the reexamination of the '360 patent, and statements made in at least some of INC's press releases. At his deposition, however, Zivin repeatedly refused to answer numerous questions regarding these topics, either because they allegedly called for expert testimony, or on grounds of attorney-client privilege. Accordingly, JFI seeks an order precluding Zivin from offering testimony on these subjects at trial.

In the Joint Trial Memorandum filed on January 7, 2005 [Dkt. # 216] at page 20, Defendants identify several subjects for which Zivin may offer testimony at trial:[2]

> Mr. Zivin's testimony may include without limitation the following topics: (1) the underlying action; (2) the '360 patent; (3) re-examination of the '360 patent; (4) litigation in connection with the '360 patent; (5) communications with Mr. Jarrow Rogovin; (6) prior action by Horphag under the '360 patent; (7) ownership of the '360 patent; (8) licensing of the '360 patent; (9) cease and desist letters; (10) patent and trademark law.

At page 24 of their Memorandum of Law in Support of their Motion for Summary Judgment filed on July 18, 2005 [Dkt. 235], Defendants foreshadow their intended use of Zivin's testimony at trial by raising as one of the "undisputed facts" supporting summary judgment Zivin's purported Rule 11 investigation prior to the filing of the complaint in the underlying lawsuit. However, no written summary of any such investigation has ever been produced, and when JFI attempted to question Zivin on topics that necessarily would have been considered in any such investigation – such as the basis for INC's ownership claim in the '360 patent – Zivin and INC invoked the attorney-client privilege to stonewall JFI.

---

[2] As set forth in the Joint Trial Memorandum at page 18, JFI may call Zivin as a witness to testify regarding certain factual matters, or to authenticate documents if necessary.

4

Indeed, with the exception of his communications with Jarrow Rogovin, Zivin refused to answer questions at his deposition concerning the topics listed by Defendants in the Joint Trial Memorandum on the grounds that he was not providing expert testimony, or on grounds that the questions sought information protected by the attorney-client privilege or the attorney work product doctrine. Zivin limited his testimony to facts regarding the filing of certain documents, whether he reviewed or prepared documents, and whether meetings or conferences took place. Zivin refused to testify regarding the legal effect of documents, his conclusions regarding the legal effect of documents, the content of meetings or conferences, or any discussions with INC or Schwitters regarding the merits of the underlying litigation. Instead, Zivin merely referred to the content of documents, such as legal briefs filed with the court, and refused to elaborate beyond the content of the documents. Accordingly, Zivin should be precluded from offering any testimony at trial beyond the facts to which he testified at his deposition.

## ARGUMENT

JFI requests that the Court enter an order prior to trial limiting the testimony that Zivin may provide at trial. "The trial court has considerable discretion in determining whether to admit or exclude evidence, . . ., and to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion, or by its cumulative nature." Gierlinger v. Gleason, 160 F.3d 858, 871 (2nd Cir. 1998)(citations omitted). See Fed. R. Evid. 403. "The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" Palmieri v. Defaria, 88 F.3d 136, 141 (2nd Cir. 1996)(quoting Banque Hypothecaire Du Canton De Geneve

5

v. Union Mines, 652 F.Supp. 1400, 1401 (D. Md. 1987)). In this case, JFI will be unfairly prejudiced if Defendants are permitted to introduce testimony from Zivin at trial that constitutes expert testimony, or that is in areas where Defendants have previously invoked the attorney-client privilege during Zivin's deposition.

      A.    <u>Zivin Must Be Precluded From Testifying As An Expert At Trial</u>.

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert witnesses and their opinions, and provides that the required disclosures be made at the time directed by the Court. In this case, the amended Scheduling Order set a deadline of April 15, 2002 for production of expert disclosures required under Rule 26(a)(2). Zivin has never been disclosed as an expert witness, and Defendants have never produced a Rule 26(a)(2) disclosure for Zivin. Federal Rule of Civil Procedure 37(c)(1) provides that if a party fails to comply with the disclosure requirements of Rule 26(a)(2), the party "*shall* not, unless such failure is harmless, be permitted to use as evidence at trial . . . any . . . information not so disclosed" (emphasis added). Exclusion of expert testimony not properly disclosed is automatic and mandatory unless the party attempting to introduce the expert testimony can show that the failure to comply with Rule 26(a)(2) was either justified or harmless. Finley v. Marathon Oil Co., 75 F.3d 1225, 1230 (7th Cir. 1996). In this case, there is no justification for failing to disclose Zivin as an expert if Defendants intended to have him offer such testimony, and the failure to disclose Zivin as an expert is not harmless.

Aside from their disclosure obligation under Rule 26(a)(2), Defendants also did not disclose Zivin as an expert witness in response to JFI's interrogatories, and Zivin should be precluded from offering expert testimony for this additional reason. JFI served interrogatories on Defendants on July 30, 2001, requesting the identity of any experts on which Defendants

6

expected to call as an expert witness at trial. **Exhibit 1**. Defendants responded on August 29, 2001 and January 15, 2002 by stating that the interrogatory was premature given the discovery schedule. **Exhibits 2 and 3**. Defendants never identified any specific experts other than Nels Pearsall during the discovery period in this case. Discovery closed in this case on August 30, 2002 [Dkt. # 66].

Federal Rule of Civil Procedure 26(e)(2) requires a party to supplement or to amend its responses to interrogatories "if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Rule 26(e) and Rule 37(c) were amended in 1993 specifically to impose "a broad requirement on parties to update their earlier disclosures and discovery responses." 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2049.1 (2d ed. 1994 & Supp. 1998). The rule "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and <u>the required sanction in the ordinary case is mandatory preclusion</u>." Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998), *cert. denied*, 526 U.S. 1039, 119 S. Ct. 1334 (1999) (emphasis added).[3] See also LaPlace-Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002) (noting that exclusion of evidence is a standard Rule 37(c) sanction but that "sanctions can range from limited exclusion to dismissal of the case entirely."). The importance of enforcing the discovery rule and imposing sanctions is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to

---

[3] Other sanctions that the Court may impose in addition to or in lieu of prohibiting undisclosed witness or information from testifying at trial under Rule 37(c) include "requiring payment of reasonable expenses, including attorney's fees", an order that certain designated facts are to be taken to be established for purposes of the action, an order prohibiting that party from introducing designated matters into evidence in support of its claims, an order striking out pleadings, and/or informing the jury of the party's failure to make the disclosure. See Fed.R.Civ.P 37(b)(2)(A), 37(b)(2)(B), 37(b)(2)C, and 37(c)(1).

deter those who might be tempted to such conduct in the absence of such a deterrent." Klonoski, 156 F.3d at 269 (citing Nat'l Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778 (1976)).

Precluding Zivin from testifying as an expert is particularly appropriate in this case, as Zivin, during his deposition in this case, repeatedly refused to answer questions regarding the legal effect of certain actions that he had taken on behalf of INC on the grounds that he was not providing expert testimony. For example, Zivin refused to answer questions regarding the legal effect of various purported assignments to INC, later found to be void *ab initio*, or the legal effect of recording these assignments at the PTO:

> Q. Do you believe the fact that you recorded this document had any legal effect on INC's position that it was an owner, at least a one-half owner, of the '360 patent?
>
> [Objection]
>
> A. I don't think I have to give you legal opinions.
>
> Q. Was INC required by law to record this assignment?
>
> A. Again, you're asking me for a legal opinion.

Zivin Transcript (Ex. 4) at 115.

> Q. As a patent attorney, do you believe that the recording of this assignment has any legal effect as to the ownership interest referred to in the assignment itself?
>
> [Colloquy by counsel]
>
> A. If you're asking me for a legal opinion, I don't think that I have to give you one.

Zivin Transcript (Ex. 4) at 117.

> Q. Did you think that the record – at that time did you think that the recordation of that assignment in any way had any legal effect on your patent infringement claim?
>
> [Objection]
>
> A. The legal effect of recording assignments is stated in the patent law. You can read it as well as I can. I'm not going to give you legal opinions about what my thought processes are or were with respect to why I did certain things. It's in English. It says what it says.
>
> Q. Fine. Now we're at trial –
>
> A. That's right. That's exactly what I'd – I'd do. If you asked me that question at trial, I would pull out a copy of the patent statute and read it into the record. It says what it says.
>
> Q. And whatever it says, you don't believe there's any interpretation that's been given by courts or administrative agencies that would aid me in reading that statute?
>
> A. Sir, I'm not here –
>
> [MR. ORDER: Objection]
>
> A. -- as a patent expert. I'm here as a witness because you insisted I be here. You can't take my deposition for the purpose of knowing what my legal opinions are. I didn't appear here to be examined as an expert witness.

Zivin Transcript (Ex. 4) at 125. See also Zivin Transcript (Ex. 4) at pp. 136-37.

Zivin also refused to answer questions regarding the French court decisions regarding INC's bogus claim of ownership of the '360 patent on the grounds that he was not providing expert testimony. See Zivin Transcript (Ex. 4) at 204-05.

In this case, Zivin was not disclosed as an expert witness, and Zivin refused to answer questions at his deposition that he deemed as calling for expert testimony on the specific grounds that he was not testifying as an expert in this matter. Because Zivin was never disclosed as an expert witness pursuant to Rule 26(a)(2), and because he refused to answer questions, JFI was unable to explore Zivin's opinions during discovery and prepare for trial. On these facts, there is no possible justification which would allow Zivin to testify as an expert at trial. Accordingly, JFI requests an order precluding Zivin from offering expert testimony at trial or in support of any dispositive motions, including without limitation providing any opinions regarding the legal effect of the French court decisions regarding INC's claim to ownership of the '360 patent, the legal effect of any of the purported assignments to INC, or the legal effect of recording assignments at the PTO.

B. <u>Zivin Should Be Precluded From Testifying on Any Subject Concerning Which the Attorney-Client Privilege or Work Product Doctrine Was Invoked.</u>

During his deposition, Zivin also refused to answer numerous questions, or was instructed by Defendants' counsel not to answer questions, based upon the attorney-client privilege or the attorney work product doctrine. Before the deposition had even begun, Defendants' counsel instructed Zivin not to respond to questions that might require disclosure of information covered by the attorney-client privilege or the work product doctrine. Zivin Depo., Ex. 4, at 4. Midway through the deposition, Defendants reiterated their refusal to waive the privileges and permit Zivin to testify fully. Zivin Depo., Ex. 4, at 84-86. Instead, Zivin provided incomplete answers to JFI's questions by merely referring to pleadings filed in the underlying

10

litigation. See, e.g. Zivin Depo., Ex. 4, at 91-92. In particular, Zivin invoked the attorney-client privilege and refused to answer questions regarding the legal basis or advice given to INC regarding the grounds for INC's suit against JFI for infringement of the '360 patent, including:

- INC's understanding, or the legal basis or advice provided to INC, regarding INC's claim of ownership of the '360 patent (Zivin Depo., Ex. 4, at 73, 76, 103-04).

- INC's understanding, or advice provided to INC, regarding the legal effect of the various purported assignments of the '360 patent to INC (Zivin Depo., Ex. 4, at 99, 108, 110, 112).

- INC's understanding or advice provided to INC regarding the effect of recordation of the purported assignments at the Patent & Trademark Office (Zivin Depo., Ex. 4, at 115, 118).

- Discussions with, or advice provided to, INC regarding INC's press releases on the '360 patent and the infringement suit against JFI (Zivin Depo., Ex. 4, at 151-54, 161-62).

- INC's understanding, or advice provided to INC, regarding the law on patent ownership or SCIPA's right to transfer ownership of the '360 patent (Zivin Transcript, Ex. 4, at 162, 206-09).

Zivin should be precluded from testifying or providing evidence beyond the limited testimony that he provided at his deposition. It is well established that a party may not use the attorney client privilege and the attorney work product doctrine as both "a shield and a sword" by invoking the privileges during discovery to refuse to divulge information on particular subjects, then introducing testimony or other evidence at trial on those very subjects. See U.S. v.

Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991)(attorney-client privilege cannot be used at once as a shield and a sword); U.S. v. Duke Energy Corp., 208 F.R.D. 553, 557-58 (M.D.N.C. 2002)("A party may not use a privilege (or work product) as a shield during discovery and then hammer it into a sword for trial."). Courts have applied this principle to preclude a party from introducing evidence at trial in subject areas where the party had refused to provide information during discovery by invoking a privilege. See, e.g. Galaxy Computer Services, Inc. v. Baker, 2005 U.S. Dist. LEXIS 10344, *31-35 (E.D. Va. 2005)(granting motion in limine to limit testimony at trial to only those areas where attorney-client privilege was not invoked during deposition of witness); Engineered Prods. Co. v. Donaldson Co., 313 F. Supp 2d 951, 1022-23 (N.D. Iowa 2004)(plaintiff barred from introducing testimony at trial on issues that plaintiff had prevented the defendant from exploring during a deposition by invoking the attorney-client privilege).

        In this case, Zivin refused to testify regarding any communications with INC on the various assignments of the '360 patent, INC's bogus claim of ownership of the '360 patent, INC's press releases and other communications regarding the '360 patent, or the basis for INC's claims in the underlying litigation regarding the '360 patent. Zivin merely confirmed the existence and filing of certain documents, the fact that meetings or conferences took place, and the fact hat certain arguments had been made by INC in pleadings filed with court in the underlying litigation or with the PTO during reexamination of the '360 patent. Accordingly, Zivin's testimony at trial should be limited to these factual matters, and Zivin should be precluded from testifying regarding the substance of any of his communications with INC or any advice given to INC by Zivin regarding the various actions taken by or on behalf of INC relating to the '360 patent. In addition, the Court should not consider any evidence on these topics

offered by Zivin in support of Defendants' Motion for Summary Judgment filed on July 18, 2005 [Dkt. # 234].

## CONCLUSION

For the reasons set forth above, Plaintiff Jarrow Formulas, Inc.'s Motion in Limine to Limit the Testimony of Norman Zivin at Trial should be granted, and Zivin should be precluded from offering any expert testimony, and from offering any testimony regarding the substance of any of his communications with INC or any advice given to INC by Zivin regarding the various actions taken by or on behalf of INC relating to the '360 patent beyond the factual information which Zivin provided at his deposition.

THE PLAINTIFF,
JARROW FORMULAS, INC.
BY MCCARTER & ENGLISH, LLP
ITS ATTORNEYS

By /s/ 
ERIC WATT WIECHMANN (CT 04331)
ERIC E. GRONDAHL (CT 08988)
JASON C. WELCH (CT 23418)
CityPlace I
185 Asylum Street
Hartford, CT 06103
(860) 275-6700
(860) 724-3397 (fax)
jwelch@mccarter.com
	-and-
ALEXANDRA B. STEVENS (CT 20300)
Four Stamford Plaza
107 Elm Street
Stamford, CT 06901
(203) 965-0823
(203) 323-6513 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF JARROW FORMULAS, INC.'S MOTION IN LIMINE TO LIMIT THE TESTIMONY AT TRIAL OF NORMAN ZIVIN has been hand-delivered this 10th day of August, 2005, to

        RICHARD S. ORDER, ESQ.
        ERIC D. BEAL, ESQ.
        Axinn, Veltrop & Harkrider LLP
        90 State House Square
        Hartford, CT  06103

                                  _____
                                  JASON C. WELCH

HARTFORD: 641650.01