UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JARROW FORMULAS, INC.,

Plaintiff,

v.

INTERNATIONAL NUTRITION COMPANY, INTEGRATED BIOCEUTICALS, LLC, PRIMARY SERVICES, INC., PRIMARY SOURCE, LLC, EGBERT SCHWITTERS, NORMAN H. ZIVIN, and JACK MASQUELIER,

Defendants

CIVIL ACTION NO. 3:01-CV-00478 (AVC)

AUGUST 10, 2005

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE REGARDING UNRELATED PRIOR LAWSUITS AND STATEMENTS**

Plaintiff Jarrow Formulas, Inc. ("JFI") submits this Memorandum of Law in support of its motion in limine to preclude Defendants International Nutrition Company, Integrated Bioceuticals, LLC, Primary Services, Inc., Primary Source, LLC, Egbert Schwitters, Norma H. Zivin, and Jack Masquelier ("Defendants") in this case (1) from offering any evidence at trial regarding prior lawsuits to which JFI was a party, (2) from offering any evidence of statements or communication made by Jarrow Rogovin ("Rogovin") connected with those prior lawsuits, and (3) from offering any evidence regarding events connected with Rogovin's attendance at a trade show in Baltimore, Maryland in 1996.

At Rogovin's January 29, 2002 and March 15, 2002 depositions, Defendants inquired at length regarding JFI's involvement in several lawsuits completely unrelated to this litigation, Rogovin's statements and activities regarding these lawsuits and other disputes, and events which occurred at a trade show in Baltimore, Maryland in 1996. It appears that

Defendants intend to introduce this irrelevant evidence at trial to improperly influence the jury by portraying JFI or Rogovin in a negative light due to these unrelated disputes. This evidence should be excluded because it is irrelevant to any claims or defenses in this case. Fed. R. Evid. 402. Moreover, even if such evidence were found to have some marginal relevance, it should be excluded because any such marginal relevance is far outweighed by its prejudicial effect, Fed. R. Evid. 403, and the evidence relates to prior acts, which is not properly admissible to show present action in conformity with the prior acts. Fed. R. Evid. 404(b).

**BACKGROUND**

Like most successful businesses, JFI has been involved in business disputes with other companies or individuals. In most cases, JFI has resolved these disputes. Rogovin January 29, 2002 Depo. (Ex. 1) at 89-90. In some cases, like the underlying litigation in this case, JFI has been subjected to claims that clearly had no merit. In a few of these cases, JFI has pursued remedies against the parties that pursued frivolous claims against it, including the attorneys who maintained the frivolous actions. None of those cases have any relevance to any of the claims or defenses in this case. Nevertheless, it appears that Defendants intend to interject these unrelated cases into the trial of this action in an attempt to improperly influence the jury by inferring that JFI and Rogovin are unduly litigious.

During the two days of deposition of JFI's President, Jarrow Rogovin, counsel for Defendants questioned Rogovin in detail regarding the following unrelated lawsuits:

- Three lawsuits in California involving Bio-Genesis, Inc, its principals, and one of its attorneys, Cynthia Harf. The claims in these actions included trade libel, false advertising, unfair competition and Bio-genesis's bankruptcy. After the claims by Bio-Genesis were resolved in favor of JFI, JFI and another

party, Nutren, Inc. brought a suit against Harf under California law for malicious prosecution. Rogovin January 29, 2002 Depo. (Ex. 1) at 19-59; Rogovin March 15, 2002 Depo. (Ex. 2) at 344-46.

- A California small claims action brought by JFI against Attorney William Verrick seeking to recover fees and costs related to a false claim made by Verrick and his client that JFI had sold contaminated fish oil products. Rogovin January 29, 2002 Depo. (Ex. 1) at 68-71.
- A California small claims action brought by JFI against Attorney Nicholas Browning seeking to recover costs incurred by JFI related to a patent infringement suit brought against JFI by JFI's supplier of a patented product, chromium picolinate. JFI brought the claim after the supplier's patent infringement claim was voluntarily dismissed and the supplier refused to explain why JFI had been sued in the first place. Rogovin January 29, 2002 Depo. (Ex. 1) at 71-75, 81-83.
- An action brought in California by JFI for malicious prosecution against an individual and her attorney, Mark Brutzkus. JFI had been sued for allegedly interfering with a business relationship which in fact never existed. JFI brought the malicious prosecution suit after prevailing on a motion for summary judgment in the underlying action. Rogovin January 29, 2002 Depo. (Ex. 1) at 76-78.

In addition to these specific suits, JFI has been involved in other business disputes involving intellectual property, bill disputes, potential product liability litigation, and contested

trademark proceedings. Rogovin January 29, 2002 Depo. (Ex. 1) at 90-100.[1] None of these prior lawsuits have any relevance to the claims or defenses in this case.

Counsel for Defendants also questioned Rogovin regarding his statements and activities connected to these lawsuits and other disputes. In the course of defending these prior meritless lawsuits, Rogovin wrote letters to the attorneys involved to persuade them and their clients to drop their lawsuits, and to reimburse JFI's attorney's fees incurred in defending the meritless actions.[2] Rogovin also informed the parties in voicemail messages and in person about JFI's intention to pursue legal actions to recover its costs.[3] None of these statements or activities is relevant to any of the claims or defenses in this action.

Finally, Defendants' counsel questioned Rogovin regarding his removal from a lecture at a trade show in Baltimore. On October 18, 1996, Rogovin tried to attend Dr. Masquelier's presentation at a trade show in Baltimore, Maryland, and, before Masquelier had even begun his presentation, Rogovin was removed from the room by security guards.[4] Whatever the reason for the actions taken in removing Rogovin from the trade show, these events also have no relevance to any of the issues raised in the present action, and defendants should not be permitted to introduce evidence on these matters at trial.

---

[1] In addition, Rogovin was a plaintiff in a breach of contract class action lawsuit against Southwest Lease, an auto lease company. (Rogovin Jan. 29, 2002 Depo. (Ex. 1) at 18, 24, 25, 28, 29, 52-54.) Plainly, Rogovin's personal dispute over a car lease is not relevant to any claim or defense in this action.

[2] Rogovin Jan. 29, 2002 Depo. (Ex. 1) at 55, 56, 60-63, 67, 81, 88, 95, 96.; Rogovin Mar. 15, 2002 Depo. (Ex. 2) at 411, 435, 454.

[3] Rogovin Jan. 29, 2002 Depo. (Ex. 1) at 83-87; Mar. 15, 2002 Depo. (Ex. 2) at 413-14, 455, 456.

[4] Rogovin Mar. 15, 2002 Depo. (Ex. 2) at 458-463.

## ARGUMENT

JFI's prior unrelated litigation and Rogovin's past statements described above are all inadmissible under Fed. R. Evid. 402, 403 and 404(b) because: (1) there is no proper purpose for the evidence, as it is irrelevant and immaterial to any of the claims or defenses of this antitrust case; (2) the prejudicial effect of this evidence far outweighs any marginal relevance this evidence could possibly have; (3) evidence of other acts is not admissible to show "bad character." In addition, interjection of these unrelated suits into this action will necessarily result in those cases being essentially retried in this case, thereby lengthening the trial and distracting the jury from the issues to be decided in this case.

A. Evidence of unrelated lawsuits and past statements has no proper purpose as it is irrelevant and immaterial to the claims and defenses of the present antitrust matter.

JFI's claims against Defendants arise under the Sherman-Antitrust Act, 15 U.S.C. §§ 1, 2 &15, the Connecticut Antitrust Act, Conn. §§ Gen. Stat. 35-24, et seq., the Connecticut Unfair Trade Practices Act, Conn. §§ Gen. Stat. 42-110a, et seq., and the Lanham Act, 15 U.S.C. § 1125(a). JFI alleges that the Defendants also initiated and maintained a vexatious lawsuit in violation of Conn. Gen. Stat. § 52-568 and tortiously interfered with JFI's advantageous business relations in violation of common law. All of this was done to the injury of a particular market and JFI. JFI also claims to be injured by the conduct of Defendant Norman H. Zivin ("Zivin"). Zivin was and is counsel to certain of Defendants and was involved in the initiation and maintenance of the afore-referenced alleged vexatious lawsuit.

Plaintiff's claims center on Defendants efforts and conspiracy to dominate and monopolize the sale of oligomeric proanthocyanidins ("OPCs") in the United States. That

market was an emerging market in the United States in the mid to late 1990's. Certain uses of OPCs were claimed in U.S. Patent No. 4,698,360 ("the '360 patent"). The '360 patent issued with one independent and six dependent claims, all of which claim methods of using a plant extract with a "proanthocyanidin" content as a therapeutic agent having "radical scavenger effect."

JFI alleges that Defendants' unlawful conduct included (1) claiming ownership in the '360 patent when they knew or should have known that they did not own the '360 patent; (2) terrorizing market participants through false and misleading publications, threatening correspondence and initiating and maintaining two meritless lawsuits without probable cause; (3) coercing market participants to enter into supply and licensing agreements with Defendant Integrated Bioceuticals, LLC ("IBC"); and (4) bringing and maintaining a lawsuit on the '360 patent when International Nutrition Company ("INC") knew that it did not have an ownership interest, and with knowledge that the '360 patent is invalid and unenforceable.

Defendants, in addition to denying liability under JFI's claims, have filed various affirmative defenses. Defendants' affirmative defenses are (1) failure to state a claim upon which relief can be granted, (2) unclean hands, (3) laches, (4) statute of limitations, and (5) immunity under the Noerr-Pennington doctrine.[5]

Relevant evidence is defined as "evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In this case, the "fact[s]

---

[5] In addition, Defendants Masquelier and Zivin allege that they cannot be liable for any restraints of trade, attempts to monopolize, unfair trade practices or false descriptions or representations because they do not sell products, and Zivin alleges as an affirmative defense that he had a good faith belief in the validity of the actions brought on behalf of Defendant INC.

that [are] of consequence," in this matter, are Defendants actions in restraining trade and attempting to monopolize the Oligomeric Proanthocyanidics ("OPC") market in the United States through a sham lawsuit on an invalid patent and other conduct, unfair competition, and violations of the Lanham Act through false and misleading advertising and public statements, or facts of consequence to one of the affirmative defenses to JFI's claims.

From the inquiries at Rogovin's deposition, it appears that Defendants intend to deflect the attention of the jury from their own wrongful conduct by offering evidence regarding JFI's involvement in completely unrelated litigation. Evidence of other litigation involving JFI has no relevance to any of the issues in this case, and introduction of such evidence will unduly prejudice JFI. The only possible reason that defendants would want to offer evidence of prior unrelated lawsuits is to portray JFI as unduly litigious. Indeed, Defendants all but admit that this is their intent in the Joint Trial Memorandum where defendants state "[t]his case is simply one of a series of retaliatory lawsuits brought by the plaintiff and its principal, Mr. Jarrow Rogovin, to harass whatever parties and counsel have dared to sue plaintiff." Joint Trial Memorandum at 11-12 [Dkt. # 216]. As set forth below, the Second Circuit has held that evidence of prior unrelated lawsuits cannot be introduced except under very narrow circumstances, none of which exist in this case.

In Outley v. City of New York, 837 F.2d 587 (2d Cir. 1988), the court reversed a jury verdict in favor of the City of New York, finding that the trial court had improperly permitted the defendant to introduce evidence of prior lawsuits brought by the plaintiff, Outley. Outley had filed a civil rights action against the city and individual police officers. The trial court permitted the defendants to introduce evidence that Outley had filed six prior lawsuits against police officers, government agencies and other individuals. Id. at 592 n.3. Thus, "[a]n

important part of the City's overall defense was to undermine Outley's credibility by, inter alia, portraying him as a chronic litigant." Id. at 591.

The Second Circuit held that the evidence of Outley's prior litigation was unduly prejudicial and that the trial court should not have allowed the evidence to be presented to the jury. "The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent." Id. at 592 (citing McCormick on Evidence § 196 at 578-81 (3d ed. 1984)). In this case, there is no evidence that any of JFI's prior claims were fraudulent. Therefore, evidence of JFI's prior unrelated lawsuits is not admissible under Fed. R. Evid. 402 or 403.

The Outley court also considered the admissibility of the evidence of prior lawsuits under Fed. R. Evid. 404(b) regarding admissibility of character evidence. Rule 404(b) generally prohibits evidence of other acts "to prove character as a basis for suggesting the inference that conduct on a particular occasion was in conformity with it." Id. at 593, quoting Fed. R. Evid. 404(b) Advisory Committee Notes. "Rule 404(b) requires a two-part analysis: first, consideration of whether the evidence fits within one of the exceptions listed in the rule and, second, balancing the probative value of the evidence against the likelihood of undue prejudice, equivalent to the analysis under Rule 403." Id. at 592 (citations omitted).

The defendants in Outley argued that the evidence of prior lawsuits was admissible for impeachment or to show bias against the police. The court rejected both arguments. As to impeachment, the court noted that, with one exception, the defendants had not introduced evidence of the prior suits to impeach Outley by inconsistent statements made in the prior suits. Id. at 593. The court stated that allowing evidence of prior lawsuits on the grounds that it was impeachment evidence "would permit the exception to swallow the rule." Id. As to

bias, the court stated that to infer bias against the particular police officer defendants on the basis of prior claims against other police officers was too remote, and would necessarily require a detailed inquiry into the particular details of each claim. "Opening up this area thus invites detailed inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of issues." Id. at 595.

Other courts have followed Outley and refused to allow introduction of evidence of other claims or lawsuits absent evidence of a fraudulent pattern of claims. See Mathis v. Phillips Chevrolet, Inc., 269 F.3d 771, 775-77 (7th Cir. 2001) (affirming exclusion of evidence of other claims due to likelihood of prejudice to plaintiff); Young v. Calhoun, 1995 WL 169020 (S.D.N.Y. 1995)(evidence of prior claims not admissible unless defendant can show similar claims were found to be fraudulent) (Tab A). See also Kent v. Avco Corp., 815 F. Supp. 67, 71 (D. Conn. 1992)(striking allegations regarding other lawsuits from complaint because "[r]eferences to other litigation and the context in which they are made, are improper and irrelevant when they are asserted in an unrelated complaint before the court."). In this case, there is no evidence that any of JFI's prior lawsuits were fraudulent or brought for any improper purpose. Instead, defendants plainly hope to offer this evidence to show "bad character" on the part of JFI. As the Second Circuit held in Outley, use of evidence of prior lawsuits for this purpose is plainly forbidden by Rule 404(b).

Moreover, if this evidence is admitted, JFI would be forced to introduce evidence regarding those prior actions to demonstrate the merits of its position in those actions. This would necessitate a series of mini-trials on claims that have nothing to do with the issues in the present litigation. See Mathis, 269 F.3d at 776 (noting that "the district court was

understandably reluctant to plunge into a series of mini-trials on the merits of each of the prior suits.").

As in Outley, JFI's prior lawsuits are unrelated to the present antitrust suit, and there is no evidence of any pattern of fraudulent claims by JFI. To the extent any of the prior lawsuits brought by JFI may have any marginal relevance, that is far outweighed by the potential for prejudice by introducing evidence of other lawsuits, and the introduction of such evidence by defendants would necessarily spawn satellite litigation over the merits of those other claims. Accordingly, the court should grant JFI's motion in limine prohibiting the defendants from offering evidence or testimony regarding JFI's other lawsuits.

B. Evidence regarding Rogovin's attendance at a trade show in Baltimore in 1996 is not relevant and should not be introduced.

Defendants have also focused during discovery on events which occurred at an industry trade show held in Baltimore, Maryland in 1996. See March 15, 2002 Rogovin Deposition (Ex. 2), at 455-63. Rogovin was at the trade show and intended to attend a lecture by Masquelier that was part of the show. Apparently at the behest of Masquelier, Rogovin was removed from the room prior to the lecture by Masquelier. Defendant Zivin, counsel for INC in the underlying action, subsequently filed a Declaration stating that Rogovin had created a disturbance at the show, an assertion that Rogovin vehemently denies. See Rogovin Deposition, (Ex. 2), at 462-63.

It appears that Defendants intend to introduce evidence of the events which occurred at the 1996 Baltimore trade show to distract the jury from the issues in this case by impugning the character of Rogovin. The events at the trade show are plainly irrelevant to any of the claims or defenses in this case, and are therefore inadmissible under Fed. R. Evid. 402.

Moreover, even if there were some marginal relevance to this evidence, which there is not, allowing even disputed testimony on this subject has a likelihood of creating prejudice which far outweighs any marginal relevance. Accordingly, this evidence is also inadmissible under Fed. R. Evid. 403.

The only real purpose that defendants could have for offering evidence of these communications is to unfairly influence the jury by presenting an unflattering portrayal of Rogovin, or to impugn Rogovin's character. Either purpose is improper under the Federal Rules of Evidence. "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 686 (1988). Evidence of the events which may or may not have occurred at the 1996 Baltimore trade show is not material to any issue in this case. Allowing Defendants to present evidence on the events which occurred at the 1996 Baltimore trade show will require JFI to present rebuttal evidence, and require the jury to decide questions having no bearing on any of the real issues in the case. Accordingly, defendants should be prohibited from presenting evidence regarding events associated with Rogovin's attendance at the 1996 Baltimore trade show.

## CONCLUSION

For the reasons set forth above, Plaintiff Jarrow Formulas, Inc.'s Motion in Limine to Exclude Certain Evidence Regarding Unrelated Prior Lawsuits and Statements should be granted, and Defendants should be precluded (1) from offering any evidence at trial regarding prior lawsuits to which JFI was a party, (2) from offering any evidence of statements or communication made by Jarrow Rogovin connected with those prior lawsuits, and (3) from

offering any evidence regarding events connected with Jarrow Rogovin's attendance at a trade show in Baltimore, Maryland in 1996.

THE PLAINTIFF,
JARROW FORMULAS, INC.
BY MCCARTER & ENGLISH, LLP
ITS ATTORNEYS

By ______________________
ERIC WATT WIECHMANN (CT 04331)
ERIC E. GRONDAHL (CT 08988)
JASON C. WELCH (CT 23418)
CityPlace I
185 Asylum Street
Hartford, CT 06103
(860) 275-6700
(860) 724-3397 (fax)
egrondahl@mccarter.com
-and-
ALEXANDRA B. STEVENS (CT 20300)
Four Stamford Plaza
107 Elm Street
Stamford, CT 06901
(203) 965-0823
(203) 323-6513 (fax)

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT ITS MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE REGARDING UNRELATED PRIOR LAWSUITS AND STATEMENTS has been hand-delivered, this 10th day of August, 2005, to

RICHARD S. ORDER, ESQ.
ERIC D. BEAL, ESQ.
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103

Jason C. Welch

HARTFORD: 641659.02