UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JARROW FORMULAS, INC., Plaintiff,

v.

INTERNATIONAL NUTRITION COMPANY, et al., Defendants.

CIVIL ACTION NO. 3:01 CV 478 (AVC)

AUGUST 24, 2005

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants respectfully submit this reply in further support of their motion for summary judgment dated July 18, 2005 and in response to plaintiff Jarrow Formulas' ("JFI") opposition dated August 10, 2005 ("JFI Br."). JFI has failed to show a genuine issue of material fact concerning whether INC's underlying litigation was objectively baseless. Moreover, JFI has not contested defendants' arguments and evidence regarding the Lanham Act, CUTPA, or vexatious litigation claims, particularly with respect to defendant Norman H. Zivin, Esq.

JFI also does not dispute defendants' point that Federal Circuit law governs the determination of whether INC is immune from antitrust laws and state law claims premised on patent enforcement. See Def. Br. at 13-19. The Federal Circuit recognizes only two exceptions to such immunity: (1) an infringement defendant may prove that "the asserted patent was obtained through knowing and willful fraud within the meaning of Walker Process . . ."; or (2) "an antitrust claim can also be based on [an] allegation that a suit is baseless; in order to prove that a suit was within Noerr's 'sham' exception to immunity." In re Independent Service Orgs. Antitrust Litigation, 203 F.3d 1322, 1326 (Fed. Cir. 2000). JFI is barred from claiming the first exception and has no evidence regarding the second exception.

## ARGUMENT

### I. JFI FAILS TO DEMONSTRATE ANY GENUINE ISSUE OF MATERIAL FACT AND FAILS TO PROVIDE CLEAR AND CONVINCING EVIDENCE THAT INC'S PATENT ENFORCEMENT WAS OBJECTIVELY BASELESS

In an attempt to show a dispute of material fact regarding whether INC's enforcement of the '360 patent was objectively baseless, JFI lists ten "facts" it claims preclude summary judgment, JFI Br. 19, which also appear as the ten "Facts Not Previously decided" in Part B of its Local Rule 56 (a) (2) Statement ("JFI Statement") but without specific citation to evidence.[1] Such unsupported assertions are not evidence and cannot create a genuine issue to be tried. See L. Civ. R. 56(a)(3); Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."); Dow Chemical Co. v. Exxon Corp., 139 F.3d 1470, 1476 n.6 (Fed. Cir. 1998) ("[T]o survive a motion for summary judgment, more than a mere allegation of knowledge of the patent's unenforceability would be required."). JFI's emphasis on defendants' knowledge and good faith in nine of the ten "facts" indicates that JFI is trying to prove the subjective prong of the sham litigation test rather than the objective prong that is the subject of the motion.

JFI lists another handful of "facts" (JFI Br. at 21-22), again without citation to any evidence, all of which either are not disputed or are irrelevant. The first "fact" is not in dispute. See Stipulation of Fact No. 14 on page 58 of the Joint Trial Memorandum. The second and third "facts" pertain to fraud on the PTO, which is irrelevant to this case as explained in defendants' summary judgment brief and motion in limine filed on July 18. The fourth "fact" describes an irrelevant French case brought in 1999 by Horphag in a French Court regarding a merger between CEP and SCIPA, to which JFI maintained the parties should stipulate. Joint Trial

[1] Indeed, of the approximately 80 "facts" JFI claims are material and disputed in its Statement, it provides no evidentiary citation or support for over 50 such "facts."

Memo. at 61, No. 23. While defendants do not contest that Horphag brought that case, they did not stipulate to that "fact" simply because neither CEP nor SCIPA is a party to this case. Indeed, the French Court of Appeals suspended the lower court's dissolution of the merger and ultimately vacated the decision. The final "fact" relates to press releases, which are irrelevant to the determination of whether the underlying litigation was objectively baseless.[2]

JFI also argues that "the Defendants are not entitled to summary judgment because they knew they lacked standing to sue." JFI. Br. 23. Again, JFI conflates the objective and subjective prongs of the PRE test. The determination of objective baselessness, as opposed to subjective intent, does not depend upon a defendant's or its counsel's thought processes, but rather depends on the court's assessment of the merits of the lawsuit. Professional Real Estate Investors v. Columbia Pictures Indust., Inc., 508 U.S. 49, 63-64 (1993) ("The question is not whether [the defendant] thought the facts to constitute probable cause, but whether the court thinks they did."); Brooks Furniture Man v. Dutailier, Int'l, 393 F.3d 1378, 1382 (Fed. Cir. 2005) ("the inquiry does not depend on the state of mind of the plaintiff at the time the action was commenced, but rather requires an objective assessment of the merits."). In PRE, the antitrust plaintiff opposed summary judgment by arguing that Columbia did not have an honest belief that

[2] JFI also lists several press releases on pages 33-36. A cursory review of these documents shows that the press releases, which comment on litigation brought by Horphag against INC as well as the underlying infringement action, simply do not satisfy JFI's burden to prove that INC's enforcement of the '360 patent was objectively baseless. The ten year-old case JFI cites, Laitram Mach., Inc. v. Carnitech, 901 F. Supp. 1155 (E.D. La 1995), squarely contradicts well-established Federal Circuit law. See, e.g., Glass Equip. Dev., Inc. v. Beston, Inc., 174 F.3d 1337, 1343-44 (Fed. Cir. 1999). Also, JFI fails to identify any publication of the press releases or any company or person who read the press releases or whose purchase decisions were influenced by them. JFI cites no case where a press release commenting on litigation was considered anticompetitive conduct violative of the Sherman Act. That is not surprising because the First Amendment trumps the antitrust laws and the only exceptions to First Amendment immunity from the antitrust laws have been for sham lobbying and litigation under Noerr and California Motor Transport v. Trucking Unlimited, 404 U.S. 508 (1972). JFI has cited no case carving out a "sham free speech" exception to the First Amendment immunity from the antitrust laws.

its infringement claim was meritorious. 508 U.S. at 54. The Court rejected this argument because it related only to subjective, as opposed to objective, considerations and affirmed immunity under Noerr: "Even in the absence of supporting authority, Columbia would have been entitled to press a novel copyright claim as long as a similarly situated reasonable litigant could have perceived some likelihood of success. A court could reasonably conclude that Columbia's infringement action was an objectively plausible effort to enforce rights." Id. at 65.

In Globetrotter Software, Inc. v. Elan Computer Group, 362 F.3d 1367, 1375 (Fed. Cir. 2004), the alleged infringer argued that communications threatening an infringement action were baseless because "Globetrotter believed that the patent was invalid." The Federal Circuit concluded that that assertion was not relevant to an objective assessment of the merits. Id. Thus, JFI's entire premise that the underlying litigation was objectively baseless because defendants "knew" that INC lacked standing is not a factor to be considered in deciding this motion.[3]

None of the documents cited by JFI (JFI Br. 23-24) even come close to showing that INC's patent enforcement was objectively baseless. Judge Squatrito held that INC's Complaint was not frivolous and denied attorney's fees. INC Statement ¶ 49 (**TAB 34** at 10-12). The Barraud letter is written by a non-lawyer in France affiliated with a nonparty (SCIPA) long before the 1995 expiration of the Joint Research Agreement between SCIPA and Horphag and does not show that INC's lawsuit against JFI for patent and trademark infringement was

[3] JFI relies on the factually inapposite case of Landmarks Holding Corp. v. Bermant, 664 F.2d 891, 896-97 (2d Cir. 1981), JFI Br. 24-25, in which the court came to the unremarkable conclusion that the "bringing of numerous meritless appeals" was baseless. In addition, Landmarks is of no utility since PRE was decided, Baltimore Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 400-01 (4th Cir. 2001) ("post-PRE cases . . . have recognized that the defendant's standing to bring a lawsuit is not germane in deciding whether the lawsuit itself was objectively meritless"), and is not controlling law. Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc., 375 F.3d 1341, 1355-57 (Fed. Cir. 2004), cert. denied, 125 S. Ct. 1399 (2005).

baseless. Likewise, Attorney Zivin's representation of INC in the Consac case does not show that INC's later suit, which named Horphag as a party, was baseless.[4]

Further, the Federal Circuit's views on the applicable law were not known. It was not until after the underlying case was brought that the Federal Circuit held in Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1468 (Fed. Cir. 1998), that it was necessary for all co-owners to voluntarily join a patent infringement suit (rather than being joined involuntarily), and it was not until the decision on the appeal in the underlying case that the Federal Circuit held that a waiver by a co-owner of a right to refuse to join the suit could not be inferred. It was not until after deciding the underlying case, which held that bona fide purchaser status was governed by French law, that the Federal Circuit held that such status is determined by federal law and that Federal Circuit law governs. Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp., 284 F.3d 1323, 1328 (Fed. Cir. 2002).

JFI incorrectly argues that its patent and trademark infringements are irrelevant to this case. JFI Br. 38-39.[5] See, e.g., PRE, 508 U.S. at 64 (addressing question of copyright infringement); Q-Pharma, Inc. v. Jergens Co., 360 F.3d 1295, 1304-06 (Fed. Cir. 2004) (infringement lawsuit not baseless in light of defendant's "advertising and labeling statements

[4] Additionally, JFI takes Attorney Zivin's statements in the Consac case out of context. There, he argued that the case should be dismissed because there was no personal jurisdiction over INC at that time (1994). In the underlying litigation here, however, this Court had personal jurisdiction over Horphag, which was joined as a defendant either as a co-owner of the patent that did not voluntarily join or, if its ownership rights had expired, as an infringer. Thus, INC was up front in ¶¶ 24-25 of its Complaint about the unusual situation and presented logical, alternative ways to deal with the procedural issue of how to sue for patent infringement when a former co-owner of the patent was contending that it still had ownership rights but did not voluntarily join the suit. Such an approach did not constitute an admission that INC lacked standing. Such alternative and even inconsistent pleading is permitted by FRCP 8(e)(2), and the pleadings "shall be so construed as to do substantial justice." FRCP 8(f). Moreover, FRCP 11(b)(2) permits "a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

[5] Compare JFI's "predicate fact" No. 7. JFI Br. 19-20.

touting the therapeutic effects of the Curel (R) CoQ[10] lotion"). JFI fails to provide any evidence whatsoever to show that it was not infringing the '360 patent and OPC 85 trademark.

In sum, JFI presents no evidence – much less clear and convincing evidence – to show a genuine issue of material fact whether INC's claim of ownership and enforcement of the '360 patent was objectively baseless. The factual disputes JFI tries to construct do not exist, relate to immaterial matters, or reflect JFI's spin on documents or testimony that is not accurate.[6]

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Vann v. City of New York, 72 F.3d 1040, 1048 (2d Cir. 1995). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996). Here, in light of the clear and convincing standard, JFI has failed to carry its heavy burden of proving the essential element that INC's actions were objectively baseless. Globetrotter Software, 362 F.3d at 1377.[7]

---

[6] For example, there was no choice of French law clause in the 1985 Agreement (JFI Br. 9; International Nutrition Co. v. Horphag Research Ltd., 257 F.3d 1324, 1330 (Fed. Cir. 2001); see Tab 2 to Defendants' L.R. 56(a)(1) Statement); Whitney Decl. Ex. 6-10 do not involve the trade show (JFI Br. 10-11); the California action was filed on January 31, 1997, before and not after Judge Squatrito stayed the Connecticut action on March 21, 1997 (JFI Br. 11-12; Whitney Decl. Ex. 12); any adverse rulings against INC were issued after commencement of the Connecticut and California actions (JFI Br. 24). Some of these misstatements also appear in the chart attached as Exhibit B to JFI's brief. That chart also includes a statement, made three times, that incorrectly implies Horphag invited SCIPA to join the case against Consac before Horphag started its suit against Consac. Whitney Decl. Ex. 28 shows that any such offer was made after the suit had started. For the most part, the chart simply quibbles with whether certain facts supporting defendants' summary judgment motion are material.

[7] JFI's reliance on In re Relafen Antitrust Litigation, 346 F. Supp. 2d 349 (D. Mass. 2004), is misplaced. In that case, the court concluded that the antitrust plaintiffs had produced evidence, namely, internal communications among the defendant's scientists regarding a publication that

## II. INC DID NOT BRING A SERIES OR PATTERN OF LAWSUITS

Previously, JFI alleged only two prior lawsuits on which its claims are based. Amended Compl. ¶¶ 20, 27; Joint Trial Memo. at 6 ("Defendants initiated . . . the filing and prosecution of two meritless lawsuits"). Now, JFI argues this case involves multiple sham legal proceedings, relying on Primetime 24 Joint Venture v. NBC, 219 F.3d 92 (2d Cir. 2000). JFI Br. 28.

Courts routinely have held, however, that even ten or more lawsuits cannot constitute "automatic petitioning" that would serve to deprive the antitrust defendant of Noerr-Pennington protection. See In re Terazosin Hydrochloride Antitrust Litigation, 335 F. Supp. 2d 1336, 1367 (S.D. Fla. 2004) (11 suits); Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag, 207 F. Supp. 2d 221, 224 n.2 (S.D.N.Y. 2002) (individual actions against each of ten generic-drug applicants). Thus, the two previous suits brought by INC do not constitute a "series of legal proceedings" within the purview of Primetime 24.[8] See Marchon Eyewear, Inc. v. Tura LP, 2002 U.S. Dist. LEXIS 19628, *24 (E.D.N.Y. Sept. 30, 2002) (no "series" of baseless claims where only two lawsuits cited in sham litigation counterclaim).

## III. IT IS TOO LATE FOR JFI TO RAISE FRAUD CLAIMS

JFI consumes most of the Argument section of its brief claiming fraud on the PTO and the Court and invalidity of the patent. JFI Br. 25-35. JFI cannot prevail on these claims, which are not alleged in JFI's Amended Complaint, by raising them to oppose summary judgment.

---

would have invalidated the defendant's patent, sufficient to meet the Federal Circuit's clear and convincing evidence standard for the objective prong of the PRE test. Id. at 366. As discussed above, JFI has no such evidence and the validity of the '360 patent is not at issue.

[8] The Federal Circuit has not endorsed the rationale of the decision in Primetime 24. See Glass Equip. Dev. v. Besten, Inc., 174 F.3d 1337 (Fed. Cir. 1999); Applera Corp. v. MJ Research Inc., 303 F. Supp. 2d 130, 133-34 (D. Conn. 2004) ("Federal Circuit has found the Noerr-Pennington doctrine to apply even if the patent holder threatened more than one infringement suit.").

Cheminor Drugs, Ltd. v. Ethyl Corp., 993 F. Supp. 271, 281 (D.N.J. 1998) (granting summary judgment where "although misrepresentation is a big part of plaintiff's argument in its opposition to this motion, the Amended Complaint does not include a fraud claim [pursuant to Rule 9(b)] against the defendants"); Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp., 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) ("[Plaintiff] is in effect apparently attempting to add a claim it never addressed, or even hinted at, in the complaint. Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a motion.").

JFI argues that the defendants do not have Noerr immunity under Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172 (1965). JFI Br. 32, 34-35. While Noerr immunity may be overcome by proof of clear and convincing evidence that "the asserted patent was obtained through knowing and willful fraud within the meaning of Walker Process," In re Independent Service Orgs., 203 F.3d at 1326, it is too late for JFI to raise this claim, which is barred even if JFI had timely alleged it in this action.

Even if the Court were to consider JFI's Walker Process claim, JFI fails to identify any evidence sufficient to defeat this summary judgment motion. A Walker Process claim requires:

> independent and clear evidence of deceptive intent together with a clear showing of reliance, i.e., that the patent would not have issued but for the misrepresentation or omission. Therefore, for an omission such as a failure to cite a piece of prior art to support a finding of Walker Process fraud, the withholding of the reference must show evidence of fraudulent intent. A mere failure to cite a reference to the PTO will not suffice.

Nobelpharma, 141 F.3d at 1070-71 (emphasis added). Here, JFI merely points to citations it claims, without evidentiary support, are prior art. JFI fails, moreover, to provide a shred of

evidence that such publications were material or that any defendant had deceptive intent.[9] Cf. Miller Pipeline Corp. v. British Gas PLC, 69 F. Supp. 2d 1129, 1135-37 (D. Ind. 1999).

In addition, JFI's devotes several pages to its latest theory, namely, that "Defendants' frauds and misrepresentations in an adjudicatory setting preclude them from immunity." (JFI Br. 26-34). This argument fails for several reasons. First, the Federal Circuit, which governs the determination of immunity from or preemption of JFI's claims, Unitherm Food Systems, Inc., 375 F.3d at 1355-57, has not adopted the theory suggested by JFI. Nobelpharma, 141 F.3d at 1071; Cheminor Drugs, 993 F. Supp. at 280-81. Neither, observed the Fourth Circuit in Baltimore Scrap, 237 F.3d at 404, has the Supreme Court. See also Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 123 (3d Cir. 1999) ("We decline to carve out a new exception to the broad immunity that Noerr-Pennington provides. Rather, we will determine whether Ethyl's position was objectively baseless under the Supreme Court's test in PRE, without regard to those facts that Cheminor alleges Ethyl misrepresented."). Indeed, the Federal Circuit has rejected the proposition that mere inequitable conduct before the USPTO, as opposed to fraud, is sufficient to provide an exception to Noerr immunity. Nobelpharma, 141 F.3d at 1068-73. Thus, JFI's "misrepresentation" theory has no legal basis under the relevant law.

Second, as a matter of law, JFI cannot prevail under its "misrepresentation" theory. JFI claims that INC made three misrepresentations in its complaints in the underlying litigation: (1) INC's ownership interests in the '360 patent (JFI Br. 29); (2) the validity of the '360 patent (id.); and (3) Horphag's interest in the '360 patent (JFI Br. 33). As JFI's own cited authority states, however, "a plaintiff should not be allowed to invoke the sham exception in this manner by

---

9 For example, in JFI's Motion to Amend, it admitted it would need expert testimony to explain materiality. See Memorandum in Support of Plaintiff's Motion for Leave to Further Amend Complaint dated October 13, 2004, at 6. JFI has no such evidence and no expert witness and, in all fairness, cannot disclose a new expert now.

simply recasting disputed issues from the underlying litigation as misrepresentations by the other party." Bath Petroleum Storage v. Market Hub Partners, 129 F. Supp. 2d 578, 593 (W.D.N.Y. 2000). Since INC lost, the outcome would have been the same in the underlying cases, and none of these supposed misrepresentations in INC's allegations could have "infected the core" of the underlying infringement litigation. Baltimore Scrap, 237 F.3d at 403.

Further reasons for rejecting JFI's arguments are in Defendants' Reply Brief in Further Support of Their Motion in Limine dated August 24, 2005, which is adopted by reference.

## IV. THE COURT SHOULD CONSIDER EVIDENCE REGARDING PRE-COMPLAINT INVESTIGATION AND LEGAL COUNSEL

JFI argues that defendants cannot rely on evidence about legal opinions or advice rendered to INC on the grounds that Attorney Zivin did not answer certain questions at his deposition in light of the attorney-client privilege or work product doctrine. JFI Br. 37. Defendants' reliance on such evidence, however, is based on Mr. Schwitters' deposition testimony. See Defendants' Summary Judgment Brief at 23; L.R. 56(a)(1) Statement ¶ 22. Other reasons for rejecting JFI's argument will be set forth in defendants' opposition to JFI's motion in limine to limit Attorney Zivin's trial testimony, which are adopted by reference.

DEFENDANTS,
INTERNATIONAL NUTRITION COMPANY, EGBERT SCHWITTERS, NORMAN H. ZIVIN, JACK MASQUELIER, INTEGRATED BIOCEUTICALS, LLC, PRIMARY SOURCE, LLC, AND PRIMARY SERVICES, INC.

By: /s/ Richard S. Order
RICHARD S. ORDER, ESQ.
Federal Bar No. ct02761
E-mail: rso@avhlaw.com
ERIC D. BEAL, ESQ.
Federal Bar No. ct23167
E-mail: exb@avhlaw.com

Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103-3702
Telephone: 860-275-8100
Facsimile: 860-275-8101

**CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing has been served by U.S. mail, postage prepaid, this 24th day of August, 2005, to:

Eric W. Wiechmann Esq.
Mark D. Giarratana, Esq.
Alexandra B. Stevens, Esq.
Eric E. Grondahl, Esq.
McCarter & English
CityPlace I
185 Asylum Street
Hartford, CT 06103

/s/ Eric D. Beal
Eric D. Beal
AXINN, VELTROP & HARKRIDER LLP