UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JARROW FORMULAS, INC., | ) | CIVIL ACTION NO. |
| | ) | 3:01 CV 478 (AVC) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL NUTRITION COMPANY, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | AUGUST 24, 2005 |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PATENT INVALIDITY, INEQUITABLE CONDUCT, OR FRAUD**

Defendants respectfully submit this reply in further support of their motion in limine dated July 18, 2005 and in response to plaintiff Jarrow Formulas' ("JFI") opposition dated August 10, 2005 ("Opp."). JFI cannot oppose the summary judgment motion by relying on claims of patent invalidity, inequitable conduct or fraud that it did not allege in its Amended Complaint. In addition, JFI is estopped from making such claims in this case. Even if JFI had made such allegations in its complaint, JFI's claimed evidence of invalidity, inequitable conduct, and fraud is insufficient as a matter of law and is barred as a waived compulsory counterclaim.

**ARGUMENT**

**I.    APPLICATION OF JUDICIAL ESTOPPEL IS LEGALLY AND FACTUALLY APPROPRIATE**

JFI's argument (Opp. 12-15) that the doctrine of judicial estoppel does not apply mischaracterizes the law and the facts. JFI's attempt to introduce evidence of patent invalidity, inequitable conduct, or fraud is an obvious circumvention of this Court's denial on December 1, 2004 of JFI's motion for leave to amend the Complaint to add these allegations.

CTDOCS:14725.1

The ambush JFI is trying to lay for the defendants fits perfectly within the test for judicial estoppel enunciated in State of New Hampshire v. State of Maine, 532 U.S. 742, 750-51 (2001). First, JFI's position this month in its opposition to the defendants' motion for summary judgment dated August 10, 2005 ("JFI Br.") is "clearly inconsistent," id. at 750, with the representations JFI made years earlier in opposing INC's motion to dismiss this case in 2001. For example:

| JFI's Position in Opposing INC's Motion to Dismiss | JFI'S Position in Opposing Defendants' Motion for Summary Judgment ("JFI Br.") |
|---|---|
| "Jarrow does not concede that the '360 patent is valid. However, **the validity of the '360 patent is not an issue raised by Jarrow's claims in this case.**" Plaintiff's Surreply Memorandum in Opposition to Defendants' Motion to Dismiss for Failure to State a Claim dated August 21, 2001, at 8 n.2 (emphasis added).<br><br>"**Thus, antitrust counterclaims of the type at issue here that are based on patent misuse, not invalidity**, are typically permissive, not compulsory . . ." Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss For Failure to State a Claim dated July 24, 2001, at 21-22 (emphasis added). | "JFI demonstrates that the invalidity of the '360 patent strips Defendants of their . . . immunity and that Defendants' conduct before the PTO had the practical consequence of rendering the '360 patent unenforceable or invalid . . . ." (JFI Br. at 29)<br><br>"[T]he '360 patent is invalid if the methods for administering proanthocyanidins claimed in the '360 patent were described in a printed publication before April 9, 1984 ("the Critical Date")." (Id. at 14). |
| "**Jarrow has not claimed in this suit, as the plaintiff had in Critical-Vac, that the '360 patent is invalid.** Rather, Jarrow has claimed that INC falsely claimed ownership of the '360 patent for economic advantage. Thus, even under Critical-Vac, Jarrow's claims in this action should not be dismissed." JFI Surreply at 8 (emphasis added). | "Thus, the '360 patent is invalid for failing to satisfy the criteria for patentability under 35 U.S.C. § 102 in view of the prior art describing administration of proanthocyanidins to humans within the ranges claimed in the '360 patent . . . ." (JFI Br. at 31). |

| | |
|---|---|
| "Defendants' reliance on <u>Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.</u>, 233 F.3d 697, 703-704 (2d Cir. 2000), is misplaced. **In contrast to the antitrust claims at issue here, <u>Critical-Vac</u> asserted that Minuteman committed fraud on the Patent Office and tried to enforce a patent it knew was invalid.**" Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss For Failure to State a Claim dated July 24, 2001 at 23-24 (emphasis added). | "Defendants, during prosecution of the '360 patent, committed inequitable conduct or fraud by failing to bring to the attention of the PTO prior art that was material to patentability" (JFI Br. at 32); <br><br> "Defendants' frauds on the PTO preclude them from Noerr-Pennington immunity as well." (<u>Id.</u> at 34.); <br><br> "[T]hey withheld material prior art from the PTO, and made misleading statements regarding the information considered by the PTO. The material prior art was not provided to the PTO during the prosecution of the '360 patent, and was withheld during the reexamination of the '360 patent. This additional evidence . . . is relevant to JFI's claim that Defendants conspired to illegally monopolize the market for proanthocyanidins." (JFI Br. at 13-14). |

Second, JFI used its representations to the Court regarding its claims to persuade this Court to accept JFI's earlier position, <u>State of New Hampshire</u>, 532 U.S. at 750-51, that its antitrust claims were not based upon patent invalidity, inequitable conduct or fraud and, therefore, were not barred as compulsory counterclaims under <u>Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.</u>, 233 F.3d 697 (2d Cir. 2000). See <u>Jarrow Formulas, Inc. v. International Nutrition Co.</u>, 175 F. Supp. 2d 296, 308-09 (D. Conn. 2001).

JFI's assertion that judicial estoppel applies only if "the proceedings . . . involve two courts," Opp. 14, is wrong. Judicial estoppel applies also to different phases of the same case. See <u>State of New Hampshire</u>, 532 U.S. at 749 (judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to

prevail in another phase"); Sandisk Corp. v. Memorex Products, Inc., 2005 U.S. App. LEXIS 13518 at *30 (Fed. Cir. July 8, 2005) ("Judicial estoppel is an equitable doctrine that prevents a litigant from 'perverting' the judicial process by, after urging and prevailing on a particular position in one litigation, urging a contrary position in a subsequent proceeding - or at a later phase of the same proceeding - against one who relied on the earlier position.").[1] As these cases reflect, judicial estoppel is also not limited to conduct involving sworn testimony, contrary to JFI's argument. Opp. 12.

Third, if not estopped, JFI would "derive an unfair advantage," State of New Hampshire, 532 U.S. at 751, because JFI is trying to avoid summary judgment by bringing up new claims, allegations, and issues it never pleaded and that INC had no opportunity to challenge in earlier dispositive motions or to prepare a defense against. "Because a failure to raise a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." Beckman v. U.S. Postal Serv., 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000). See also Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp., 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) ("[Plaintiff] is in effect apparently attempting to add a claim it never addressed,

---

[1] Because JFI incorrectly believes that judicial estoppel applies only in the latter of two separate suits, it discusses only its inconsistent positions between the underlying litigation and this case. It incorrectly states that it never answered the patent infringement claim in the underlying case and "did not have the opportunity to raise patent related counterclaims in that proceeding." Opp. at 3, 13-14. On the contrary, JFI did file an Answer dated May 17, 1996, a copy of which is attached as **Exhibit A**, in which it answered the patent infringement claim by reference to its motion to dismiss. Additionally, within that Answer, JFI asserted a counterclaim against INC for invalidation of INC's trademark. Moreover, although JFI contends that many of the facts it now wishes to rely on "arose after JFI filed its motion to dismiss in the prior litigation," Opp. at 15, it fails to explain why it did not supplement its motion to dismiss or amend its Answer in that case to include the later facts, such as the reexamination. In the present case, JFI has repeatedly supplemented its papers and filed many sur-replies to defendants' motions, virtually as a routine practice.

or even hinted at, in the complaint. Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a motion.");

Here, JFI chose not to allege that the '360 patent was invalid, unenforceable, or obtained by fraud on the USPTO and represented to this Court and the defendants that it was not making such claims. JFI cannot raise these issues now in an attempt to escape summary judgment or to bolster its weak antitrust claims at trial. Cheminor Drugs, Ltd. v. Ethyl Corp., 993 F. Supp. 271, 281 (D.N.J. 1998) (granting summary where "although misrepresentation is a big part of plaintiff's argument in its opposition to this motion, the Amended Complaint does not include a fraud claim [pursuant to Rule 9(b)] against the defendants").

JFI continues its theme, first set forth in its Memorandum in Support of Plaintiff's Motion for Leave to Further Amend Complaint dated October 13, 2004, that it only investigated the validity of the patent in reaction to a letter sent in September 2003 by defendants' counsel to JFI's counsel. Opp. at 4. As pointed out on pages 4-7 of Defendants' Memorandum in Opposition to Plaintiff's Motion for Leave to Further Amend Complaint dated November 5, 2004, a copy of which is attached as **Exhibit B**, however, JFI had repeatedly indicated early on in the underlying case that it believed the patent was invalid. Additionally, JFI contends on page 5 of its opposition to defendants' summary judgment motion dated August 10, 2005 that "no new evidence has arisen" since 2002.

Thus, JFI's claims of fraud and invalidity should be barred by the doctrine of judicial estoppel and cannot be raised for the first time to create the appearance of disputed facts in opposing the defendants' motion for summary judgment.

## II. JFI'S PROPOSED EVIDENCE OF PATENT INVALIDITY, INEQUITABLE CONDUCT, OR FRAUD IS IRRELEVANT, UNRELIABLE, AND MISLEADING AND SHOULD BE EXCLUDED FROM EVIDENCE

Although JFI's claims of patent invalidity, inequitable conduct and fraud (Opp. 5-12) are irrelevant to any pleaded issue in this case and are barred by judicial estoppel and the Court's denial of JFI's motion to further amend its complaint, defendants briefly respond to the claims so that the record is clear and to demonstrate that it would be futile to consider any of the proposed evidence in deciding the summary judgment motion or to admit it at trial.

First, all documents relied on by JFI as "prior art" were submitted to the PTO during the reexamination of the '360 patent, and all the information about the supposedly withheld prior art was before the PTO Examiner. As JFI knows, the entire book OPC in Practice published in 1993 (of which only extracts are attached to JFI's opposition as Exhibit D) was submitted to the PTO by the requester for reexamination.[2] See Request for Reexamination dated April 16, 1996 and OPC in Practice attached thereto at Exhibit E (produced in discovery by JFI as JAR 0001 – JAR 0026, JAR 0147 – JAR 0201), a copy of which is attached hereto as **Exhibit C**. The book summarized and translated into English a slew of prior articles regarding Endotelon, a French herbal medicine presenting oligomeric proanthocyanidins for use as a vascular protector, including the French article relied on by JFI (Opp. Ex. C). See **Ex. C** at 96-97 (JAR 0196). Indeed, the same French article JFI relies on (referred to in the book as Excerpt 42) was specifically called to the Examiner's attention by the requester. **Ex. C** at 20 (JAR 0020) ("Excerpt Nos. 38-44, pages 95-99, OPC in Practice disclose the beneficial vascular effects of proanthocyanidins.") Thus, to the extent that the book or the French article is of any relevance, which JFI has not shown, they were before the PTO Examiner.

---

[2] The studies cited by JFI in the 1995 edition of OPC in Practice are materially the same as the excerpts from the 1993 edition. Cf. JFI Opp. Ex. E with Ex. D.

CTDOCS:14725.1                          6

INC and Horphag's joint response to the Examiner that a later-published book is not a proper reference against an earlier-filed patent application (Opp. at 9) is a legal argument which is fully in accordance with applicable patent law, 35 U.S.C. §§ 102 and 103. The Federal Circuit has made it clear that if the references are before the Examiner, legal argument about the references cannot be inequitable conduct: "An applicant can not be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner." Fiskars, Inc. v. Hunt Mfg. Co., 221 F.3d 1318, 1327 (Fed. Cir. 2000). Thus, such references also cannot, as a matter of law, support a claim of fraud on the USPTO. Nobelpharma v. Implant Innovations, Inc., 141 F.3d 1059, 1070-71 (Fed. Cir. 1998).

Second, the documents JFI mischaracterizes as "prior art" are unrelated to the invention claimed in the '360 patent (JFI Opp. Ex. B). The '360 patent claimed a new use of an existing product: a method for scavenging free radicals in humans by administering proanthocyanidins. The use of an existing product for a new use clearly is patentable under the patent law, 35 U.S.C. §§ 100 and 101. See Howes v. Great Lakes Press Corp., 679 F.2d 1023, 1029 (2d Cir. 1982). There is no claim in the '360 patent to proanthocyanidins as such. They were known and in use as vascular protectors in France since the early 1950s. All the cited so-called prior art relied on by JFI relates only to proanthocyanidins and to other uses for that product, not the use claimed in the '360 patent. Consequently, since the documents JFI relies on were unrelated to the new method of use claimed in the '360 patent, they were not prior art and the defendants involved in the reexamination did not withhold prior art from the Examiner.

Even JFI does not now claim that there is prior art disclosing the '360 patent's claimed invention. At most, JFI contends that use of the product "inherently and necessarily results in scavenging of free radicals in humans." Opp. 6. This "inherency" argument was made in the

Request for Reexamination, **Ex. C** at 17, which was considered and ultimately rejected by the USPTO. Moreover, "inherency" has nothing to do with a new use patent like that claimed in the '360 patent. That doctrine concerns "newly discovered results of a known process directed to the same purpose," as JFI acknowledges by citing Bristol-Myers Squibb Co. v. Ben Venue Labs, Inc., 246 F.3d 1368, 1376 (Fed. Cir. 2001), on page 15 of its opposition to defendants' motion for summary judgment.

JFI also claims that the invention of the '360 patent was anticipated by sales of products known as Endotelon and another French herbal medicine called, "Flavan." Opp. 7. When the patent was examined and reexamined, Endotelon and Flavan were sold only in France and, therefore, are not prior art under the patent law, 35 U.S.C. §102, and JFI has no evidence that those products invalidate the '360 patent. Endotelon and Flavan present oligomeric proanthocyanidins for use as vascular protectors. Flavay (as opposed to Flavan) is not a product offered for sale by any of the defendants, contrary to JFI's speculation (Opp. 7, Ex. F), and JFI has no evidence that Flavay was sold prior to the filing of the application for the '360 patent. In any event, Endotelon and Flavan (not Flavay) were discussed at length in the book OPC in Practice which was before the USPTO Examiner. See **Ex. C** at 11-13; text at 57 – 63 with associated excerpt nos. 37-53.

In addition, the validity of the '360 patent cannot be determined without the owners, who are necessary parties. See Suprex Corp. v. Lee Scientific, Inc., 660 F. Supp. 89, 93-94 (W.D. Pa. 1987); 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1614 at 206 (2001). Here, the '360 patent is jointly owned by two non-parties: Centre d'Exploitation des Procyanidines Sarl f/k/a Centre d'Experimentation Pycnogenol Sarl ("CEP") and Horphag Research Ltd. ("Horphag"). JFI knows this very well because in March 2004 it brought a

separate declaratory judgment action against CEP, INC, and Horphag in this district claiming that the '360 patent is invalid. JFI can only prove its proposed theory of antitrust sham litigation due to patent invalidity or fraud by first establishing the invalidity of the patent.[3] It can only prove the invalidity of the patent, however, by joining the patent owners who currently are not parties. By never seeking to join CEP and Horphag as parties, JFI's own actions illustrate that its Amended Complaint does not allege fraud or invalidity.

Aside from failing to plead fraud, JFI fails to come forward with any evidence to create a Walker Process fraud claim. A Walker Process claim requires:

> independent and clear evidence of deceptive intent together with a clear showing of reliance, i.e., that the patent would not have issued but for the misrepresentation or omission. Therefore, for an omission such as a failure to cite a piece of prior art to support a finding of Walker Process fraud, the withholding of the reference must show evidence of fraudulent intent. A mere failure to cite a reference to the PTO will not suffice.

Nobelpharma, 141 F.3d at 1070-71 (emphasis added). Here, JFI merely points to publications already considered by the PTO that it claims, without evidentiary support, are prior art. JFI fails, moreover, to provide any evidence that such publications were material or that any of the defendants involved in the reexamination had deceptive intent. Cf. Miller Pipeline Corp. v. British Gas PLC, 69 F. Supp. 2d 1129, 1135-37 (D. Ind. 1999). Thus, JFI's unsupported argument that the defendants lose antitrust immunity because the '360 patent is invalid, or that there was inequitable conduct or fraud, is specious.

Finally, JFI argues that it would be unfair not to allow evidence of patent invalidity if defendants plan to offer evidence of the patent's validity. Opp. 11-12, 15. The defendants,

---

[3] JFI's statement that "JFI, however, is not asking this Court to declare the '360 patent invalid," JFI Opp. to Motion for Summary Judgment at 29, is misleading because in order to find that INC's litigation was objectively baseless in light of the alleged invalidity, the Court must necessarily declare the patent invalid. Nobelpharma, 141 F.3d at 1071-72 ("Walker Process antitrust liability is based on the knowing assertion of a patent procured by fraud on the PTO").

however, merely are responding to JFI's assertion that the '360 patent is invalid. Moreover, Judge Squatrito granted JFI and the other defendants' motion to stay that case pending the outcome of the reexamination and the French litigation and directed the parties to report to him the results of both. Whitney Decl. Ex. 12. Evidence of the reexamination determination was filed in the underlying litigation and should be considered in this case, while none of JFI's present evidence of patent invalidity, inequitable conduct, or fraud was of record in that case. Thus, it is fair to consider the record in that case.

## CONCLUSION

Accordingly, the Court should grant the defendants' motion in limine to exclude evidence offered by JFI to prove patent invalidity, inequitable conduct, or fraud.

          DEFENDANTS,
          INTERNATIONAL NUTRITION COMPANY,
          EGBERT SCHWITTERS, NORMAN H. ZIVIN,
          JACK MASQUELIER, INTEGRATED
          BIOCEUTICALS, LLC, PRIMARY SOURCE,
          LLC, AND PRIMARY SERVICES, INC.


By: /s/ Richard S. Order
     RICHARD S. ORDER, ESQ.
     Federal Bar No. ct02761
     E-mail: rso@avhlaw.com
     ERIC D. BEAL, ESQ.
     Federal Bar No. ct23167
     E-mail: exb@avhlaw.com
     Axinn, Veltrop & Harkrider LLP
     90 State House Square
     Hartford, CT 06103-3702
     Telephone:   860-275-8100
     Facsimile:   860-275-8101

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing has been served by U.S. mail, postage prepaid, this 24th day of August, 2005 to:

Eric W. Wiechmann Esq.
Mark D. Giarratana, Esq.
Alexandra B. Stevens, Esq.
Eric E. Grondahl, Esq.
McCarter & English
CityPlace I
185 Asylum Street
Hartford, CT 06103


/s/     Eric D. Beal
Eric D. Beal
AXINN, VELTROP & HARKRIDER LLP