UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JARROW FORMULAS, INC., | ) | CIVIL ACTION NO. |
| | ) | 3:01 CV 478 (AVC) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL NUTRITION COMPANY, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | NOVEMBER 5, 2004 |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FURTHER AMEND COMPLAINT

Defendants International Nutrition Company ("INC"), Egbert Schwitters, Jack Masquelier, Norman H. Zivin, Integrated BioCeuticals, LLC ("IBC), Primary Source, LLC ("PS"), and Primary Services, Inc. ("PSI") respectfully submit this memorandum in opposition to the plaintiff's belated attempt to amend its complaint by way of its Motion for Leave to Further Amend Complaint dated October 13, 2004.

The Court should not permit plaintiff to amend its complaint once again. Plaintiff is admittedly trying to now pursue a litigation strategy – attacking the validity of the '360 patent – that it abandoned long ago, and it fails to provide an adequate excuse for the undue delay in raising this claim. The addition of this new theory of liability, well after the close of discovery, fundamentally changes the nature of this case. The plaintiff's amended allegations will require extensive discovery, including international discovery, additional expert reports and depositions, and a much longer and more complex trial including construction of the claims of the '360 patent by this Court. Moreover, the validity of the '360 patent cannot be adjudicated without the absent patent owners, which are indispensable parties. Consequently,

**ORAL ARGUMENT IS REQUESTED**
CTDOCS:12827.1

the proposed amendment is not only untimely, but it also is unduly prejudicial to the defendants and futile and should not be allowed.

Plaintiff's "new" allegations are, in reality, old news. It has been threatening Dr. Masquelier, Mr. Schwitters, and INC with claims of fraud on the United States Patent & Trademark Office ("USPTO") and challenges to the validity of the '360 patent since as early as 1996. Indeed, those claims were compulsory counterclaims to the underlying patent enforcement action begun in 1996, and the plaintiff is barred, therefore, from asserting them here. Furthermore, the plaintiff fails to provide a sensible explanation for why this Court should allow it to resurrect in this action these nearly decade-old contentions, which will require extensive additional discovery, expert opinions and testimony that will delay and substantially lengthen the upcoming trial.

## BACKGROUND

This is the plaintiff's third effort to amend the complaint that originally was filed in March 2001. On May 14, 2002, the plaintiff moved to amend its complaint. That motion was granted and the Amended Complaint was filed on November 1, 2002. On January 30, 2003, the plaintiff filed another motion to amend its complaint, which was denied on February 28, 2003.

Discovery, including production of documents and numerous depositions by both parties, has been closed for well over two years. In addition, motions to dismiss and for summary judgment were filed and decided long ago, as well as two motions in limine that the defendants intend to renew prior to trial in accordance with the Court's orders denying them without prejudice to renewal ten days before trial. A settlement conference is scheduled for

December 8, 2004, and the joint trial memorandum is due in a month and a half on December 20, 2004.

## ARGUMENT

### POINT I

### STANDARDS FOR AMENDING COMPLAINTS

Under Rule 15(a), plaintiffs have no right to amend their pleadings a second time. Denny v. Barber, 576 F.2d 465, 471 (2d Cir. 1978). Leave to amend "may only be given when factors such as undue delay or undue prejudice to the opposing party are absent." SCS Communications, Inc. v. The Herrick Co., 360 F.3d 329, 345 (2d Cir. 2004). A court may also refuse to grant leave to amend under Rule 15(a) on grounds such as bad faith or futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962) (leave denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."). An amendment causes undue prejudice where it would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); see also Monahan v. New York City Dept. of Corrections, 214 F.3d 275, 283 (2d Cir. 2000).

In this case, the plaintiff's last-minute effort to add allegations is untimely and unduly prejudicial to the defendants. In addition, because the new allegations were compulsory counterclaims to the underlying 1996 action for infringement and because the proposed

amended complaint could not withstand a motion to dismiss, the amendment would be futile. Accordingly, the plaintiff's motion should be denied.

## POINT II

## AMENDMENT IS UNTIMELY AND PREJUDICIAL TO DEFENDANTS AND WILL UNDULY DELAY TRIAL

A.  **Plaintiff Asserted the Same Allegations as Early as 1996 But Made the Tactical Decision Not to Assert Them in This Action**

The plaintiff's statement that "[t]he factual allegations that [Jarrow] seeks to add to its complaint only came to [its] attention in late 2003 and 2004," Pl. Br. 6, is incredible. Rather, the plaintiff has had knowledge of the "new" claims it now seeks to add to this case since at least 1996 and, contrary to its assertions, did not start investigating the validity of the patent simply in response to a letter written last September. Accordingly, plaintiff cannot show good cause to amend.

Jarrow Rogovin, plaintiff's CEO, and his counsel made numerous claims in 1996 that Dr. Masquelier committed fraud on the USPTO in connection with the '360 patent. See letter dated August 28, 1996, from Jarrow L. Rogovin to Norman Zivin and Jonathan Flatow with exhibits, a copy of which is attached as **Exhibit A**.[1] Mr. Rogovin's letter even includes a section on page twelve entitled, "5. Claim of Plaintiff re 360 Patent is Invalid and Obtained by Fraudulent Means," and elsewhere he asserts that "Masquelier himself stands accused of inequitable conduct in that it is herein alleged he defrauded the PTO." Ex. A at 15. On page fifteen of his 1996 letter, Mr. Rogovin specifically mentions "OPCs in Practice" and on page forty-three of his fifty-seven page "patent addendum" he discusses the literature on Endotelon

---

[1] Defendants point out that Mr. Rogovin's prior art literature was forwarded to the USPTO by Attorney Zivin during the reexamination of the '360 patent in 1996. The proceeding concluded in the grant of a certificate confirming the validity of all claims of the '360 patent.

CTDOCS:12827.1                           4

– two of the sources of prior art the plaintiff now claims "only came to JFI's attention in late 2003 and 2004." Pl. Br. 6; proposed Second Amended Compl. ¶¶ 26, 32. Mr. Rogovin stated: "Having authored 'OPCs in Practice,' it is impossible to believe that Schwitters is unaware of . . . the 360 patent's prior art problems."[2] Ex. A at 15.

Furthermore, less than two months later in 1996, Jarrow's counsel made similar claims regarding validity and inequitable conduct before the USPTO: "the evidence invalidating the patent is overwhelming . . . JFI will almost certainly take the matter to trial in order to seek damages for inequitable conduct . . . ." See letter dated October 16, 1996 from JFI's counsel, Neal T. Weiner, to Norman H. Zivin and Jonathan A. Flatow at 1, a copy of which is attached as **Exhibit B.**

In addition, Mr. Rogovin confirmed in his deposition testimony that, after devoting "at least 20 hours a week for, easily, three months" in the summer of 1996 to search for prior art to invalidate the '360 patent, he "had come to the well-founded conclusion that the ['360] patent was a fraud." See p. 203 of the transcript of Jarrow Rogovin's deposition on January

---

[2] Mr. Rogovin's 1996 letter claims that he had conducted "several months of meticulous, hard-labored study" regarding the validity and inequitable conduct and fraud issues the plaintiff now asserts it only recently undertook to perform: "It seemed inconceivable that anyone could obtain a patent on the free radical scavenging (FRS) effect of 'proanthocyanidins,' . . . I have concluded that my initial reaction was correct, and further, that you [Zivin] and your clients have committed fraud . . . ." Ex. A at 2. "JFI is seriously considering sending a letter exposing Masquelier and Schwitter's defrauding of the U.S. Patent and Trademark Office (PTO) concerning . . . the 360 patent . . . ." Id. at 4. "How much of a premium will [Dr. Masquelier's name] be worth when the patent is stripped – particularly if it is found (as it should be) that Masquelier defrauded the patent office . . . ." Id. at 5. "[Dr. Masquelier] is more likely to be remembered as the man who failed to disclose prior art on monomers, dimers, oligomers, existing OPC-containing preparations, the state-of-the art on molecular structure and its effect on FRS – all in favor of a red herring argument against bioflavonoids. He will be remembered as the man who scammed the U.S. Patent Office with a phony study using an expired bioflavonoid product while absenting reams of data on flavanol compounds including Nozaki's 1984 study demonstrating FRS by grapeseed PACs." Id. at 16-17.

29, 2002 and pp. 457-58 of the transcript of the March 15, 2002 deposition, which are attached as **Exhibit C**.

Finally, on pages 2 and 3 of a Jarrow Press Release dated January 28, 1997, a copy of which is attached as **Exhibit D,** during reexamination of the '360 patent, the plaintiff essentially summed up – almost eight years ago – the so-called "astonishing" allegations it now wants to add to the complaint in this case:

> Jarrow points out that the PTO action cites prior patents by Masquelier and Schwitters [sic] own book, "OPCs in Practice," among the prior art. "That one of Masquelier's own patents from 1969 concerns essentially the same matter as the 1987 360 patent seems to provide grounds for a suit for inequitable conduct," said Jarrow's president. "And as far as Schwitters is concerned, by citing his book, the PTO provides a rationale to sue him for malicious prosecution because Schwitters' book refers to prior art that precludes Masquelier's claim of discovery. In other words, they both had prior knowledge the patent was a phony."

Thus, the plaintiff's own words demonstrate it believed over eight years ago that it had claims against the defendants based on invalidity of the '360 patent and fraud on the USPTO in obtaining that patent. It is too late now to assert them in this action.

As the court in <u>In Re Wireless Telephone Services Antitrust Litigation</u>, 2004 U.S. Dist. LEXIS 19977 at *19 (S.D.N.Y. Oct. 6, 2004), noted in denying a motion to amend under similar circumstances: "It is obvious that the plaintiffs had a sufficient understanding of the alleged conspiracy . . . to allege that conduct in their first pleading. . . . What stands out is that the plaintiffs have, for tactical reasons, decided to reassert the conspiracy allegations they initially abandoned. This does not constitute good cause for a substantial and untimely amendment."

In the present case, plaintiff has been convinced since 1996 that the '360 patent was invalid and was fraudulently obtained. Nevertheless, it made a conscious litigation strategy

decision to abandon that claim in favor of pursuing what it believed would be a simpler and less expensive tack of basing its sham litigation solely on the grounds that the defendants allegedly knew INC had no ownership rights in the patent when it commenced and maintained the patent infringement suit:

> Prior to the threatened lawsuit, JFI had no reason to contest the validity of the '360 patent. The Federal Circuit already affirmed this Court's ruling that 1) INC was not a co-owner of the '360 patent; and 2) that INC had no standing to sue for infringement of that patent. . . . Thus, JFI justly thought the technical issues relating to validity or enforceability of the patent were moot and that the proper focus for discovery should be Defendants' knowledge that INC did not own the '360 patent and that it did not have standing to sue. This is distinct from claims that the patent is invalid or unenforceable because of prior art or inequitable conduct perpetrated on the USPTO.

Pl. Br. 4.

This last sentence also demonstrates that, contrary to plaintiff's attempt to portray the proposed amendments as adding "no new claims" but simply reflecting a conformity of the "allegations to evidence that will be presented at trial," Pl. Br. 1, plaintiff is in fact adding new and "distinct" claims.

Plaintiff made its bed and now must lie in it.

### B.  Amendment Would Unduly Prejudice Defendants

As noted above, discovery closed over two years ago, numerous pre-trial motions have been filed and decided, and the parties' joint pre-trial memorandum is due in a month and a half. Under such circumstances, further amendment to the complaint as requested by the plaintiff is inappropriate. See, e.g., Ansam Assocs. v. Cola Petroleum, 760 F.2d 442, 446 (2d Cir. 1985); CL-Alexanders Laing & Cruickshank v. Goldfeld, 739 F. Supp. 158, 166-67 (S.D.N.Y. 1990) ("When the motion is made after discovery has been completed and a motion

for summary judgment has been filed, leave to amend is particularly disfavored because of the resultant prejudice to defendant.").

In its proposed allegations, the plaintiff appears to be setting up a claim for so-called "Walker Process" fraud, which can provide an alternative avenue to establishing the sham exception of Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49 (1993), to defeat Noerr-Pennington antitrust immunity for commencement of litigation. See Nobelpharma v. Implant Innovations, Inc., 141 F.3d 1059, 1071-72 (Fed. Cir. 1998) ("if the above described elements of Walker Process fraud, as well as the other criteria for antitrust liability, are met, such liability can be imposed without the additional sham inquiry required under [Professional Real Estate]").

Thus, contrary to the plaintiff's assertions, the proposed amendments would require extensive additional discovery, including, by the plaintiff's own admission, disclosures of expert opinions and further depositions.[3]  While plaintiff tries to minimize the amount of extra discovery that will be necessary and simply asserts that it will "likely require an expert," Pl. Br. 6, it ignores the fact that defendants will have to search for and retain one or more experts. Furthermore, defendants will have to depose again plaintiff's principal, Jarrow Rogovin, because, as demonstrated above, he performed extensive research into prior art but defendants had no notice of plaintiff's new legal theory at the time they deposed Mr. Rogovin two and a half years ago. Plaintiff also ignores that its new legal theory will open the door to the full panoply of discovery (e.g., document requests, interrogatories, requests for admission,

---

[3] The additional discovery burdens would be multiplied many times over with the addition of the co-owners of the '360 patent as indispensable parties to this action. See Point III (D), below.

CTDOCS:12827.1                                   8

nonparty discovery) that would have been utilized if it had asserted the theory before or even during discovery.[4]

Given the current deadline for the joint pre-trial memorandum of December 20, 2004, plaintiff cannot realistically contend that "allowing this amendment will not delay trial and will not prejudice Defendants." (Memo at 1.) Moreover, plaintiffs' new validity issues and claims will at least double the complexity and length of the trial by requiring the Court to perform claim construction with respect to the '360 patent, including possibly a Markman hearing to do so, all without indispensable parties – the co-owners of the '360 patent. Thus, not only would the plaintiff's proposed amendment cause undue prejudice as it would require the defendants "to expend significant additional resources to conduct discovery and prepare for trial . . . .", Block v. First Blood Assocs., 988 F.2d at 350, but it would also require the addition to this action of two defendants located in Europe who undoubtedly will contest the Court's jurisdiction over them.[5]

Not only has the plaintiff has been mulling over its allegations of fraud and invalidity for years before bringing the instant action but it failed to make this motion to amend when it

---

[4] Indeed, out of caution the defendants' first request for documents did ask for "[a]ll documents concerning any opinions, investigations, searches, studies, or opinions of counsel concerning the validity or enforceability of the . . . '360 patent . . . ." In response, the plaintiff pointed to over 1,000 pages of materials -- including Jarrow's validity analysis and reexam papers related to the '360 patent. Defendants note that, despite claiming to have recently discovered prior art, plaintiff has failed to provide these materials in response to that discovery request.

[5] The owners of the '360 patent are Centre D'Exploitation des Procyanidines f/k/a Centre D'Experimentation Pycnogenol Sarl ("CEP") and Horphag Research Ltd. ("Horphag"). The plaintiff's proposed allegations in the present case simply duplicate a separate declaratory judgment action it commenced more than half a year ago on March 31, 2004 against CEP, INC, and Horphag in this district claiming that the '360 patent is invalid. See Jarrow Formulas v. Centre D'Experimentation Pycnogenol Sarl et al., CV 3:04 cv 535 (JBA) (D. Conn. 2004).

filed a new action in March 2004 seeking a declaration that the patent was invalid. If the Court were to believe plaintiff's story about how a letter sent in September 2003 was the "impetus" for it to investigate the validity of the patent, Pl. Br. 3, plaintiff still has failed to explain adequately why it took six months to file a declaratory judgment in March 2004 and stalled another six and a half months after that before making this motion to amend. The settlement conference and service of the complaint in plaintiff's declaratory judgment action, Pl. Br. 6, are irrelevant to the issue of why plaintiff delayed making this motion even after filing the declaratory judgment action. Moreover, with respect to the settlement conference, the Court had not even referred the parties to Magistrate Judge Smith for a settlement conference until April 16, 2004, and the settlement conference scheduled for mid-August was postponed in early August to December 8 but plaintiff waited another two months to file this motion.

Finally, the defendants note that, to this point, Dr. Masquelier, who is over eighty years old and whose health has been declining over the years, is no longer in a position to vigorously defend himself. Plaintiff inexcusably delayed almost a decade in finally bringing its meritless allegations of fraud against Dr. Masquelier.

Because of the inexcusable delay and because amendment would result in prejudice to the defendants, plaintiff has failed to show good cause to amend the complaint.

### POINT III

### AMENDMENT WOULD BE FUTILE

"Although Fed. R. Civ. P. 15(a) provides that the district court should freely grant leave to amend when justice so requires, it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." Hunt v. Alliance North

Amer. Gov't Income Trust, 159 F.3d 723, 728 (2d Cir. 1998). Leave to amend is properly denied when the amended complaint "would not survive a motion to dismiss." Prudential Ins. Co. of America v. BMC Indus., Inc., 655 F. Supp. 710, 711 (S.D.N.Y. 1987); see also S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Building 1 Housing Dev. Fund Co., 608 F.2d 28, 42 (2d Cir. 1979); Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) ("where . . . there is not merit to the proposed amendments, leave to amend should be denied") Id.

In the present case, to begin with, the plaintiff's new allegations improperly inject Mr. Zivin back into claims on which he was granted summary judgment by this court. In addition, amendment would be futile because the plaintiff's allegations are barred as compulsory counterclaims to the underlying 1996 patent enforcement action and because the proposed amended complaint fails to state a claim for relief. Furthermore, because the plaintiff's new theory is premised on a finding of patent invalidity, if its motion is granted, the owners of the '360 patent would become indispensable parties to this action. Because the foreign patent owners are not parties to this action and will contest jurisdiction, the plaintiff's proposed allegations of invalidity cannot withstand a motion to dismiss and, therefore, would be futile.

A.  **The Amendments Improperly Attempt to Implicate Mr. Zivin in Claims that Previously Were Dismissed**

On February 24, 2003, this Court granted Mr. Zivin's motion for summary judgment as to all of the plaintiff's claims except vexatious litigation. The plaintiff's proposed amended complaint should not be allowed to the extent it continues improperly to seek relief against Mr. Zivin. See Proposed Second Amended Compl. claim 1, ¶ 25.

CTDOCS:12827.1                                     11

B.  **A Claim of Invalidity or Unenforceability Due to Fraud or Inequitable Conduct was a Compulsory Counterclaim to the 1996 Infringement Action**

Rule 13(a) of the Federal Rules of Civil Procedure provides in relevant part: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." A claim is compulsory if "a logical relationship exists between the claim and the counterclaim and [if] the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991) (internal quotation marks omitted). "If a party has a compulsory counterclaim and fails to plead it, the claim cannot be raised in a subsequent lawsuit." Critical-Vac Filtration Corp., v. Minuteman Int'l, 233 F.3d 697, 699 (2d Cir. 2000).

The plaintiff's proposed amended complaint alleges a violation of antitrust laws based upon the alleged invalidity of the '360 patent due to fraud, inequitable conduct, anticipation or obviousness. See Proposed Amended Complaint ¶ 25 ("At the time of filing the Connecticut lawsuit, INC, Schwitters, Masquelier and Zivin knew or reasonably should have know that the '360 patent was unenforceable and or invalid."); ¶ 40 ("As a result of the inequitable conduct committed by Masquelier . . . the '360 patent is unenforceable. Nonetheless, Defendants Schwitters, INC, Masquelier and Zivin initiated and prosecuted baseless litigation against JFI and others in the District of Connecticut."); ¶ 41 ("Masquelier, Schwitters and INC all had or should have had knowledge that the '360 patent is invalid pursuant to 35 U.S.C. §§ 102 & 103. Notwithstanding, Defendants Schwitters, INC, Masquelier and Zivin initiated and prosecuted baseless litigation against JFI and others . . . .").

These antitrust claims arise out of the same facts as the patent infringement action brought by INC against Jarrow and others in 1996 and, therefore, were compulsory counterclaims to that action. See Critical-Vac, 233 F.3d at 699-701 (antitrust plaintiff's allegations that patentee "intentionally deceived the Patent Office and knowingly tried to enforce an invalid patent by pursuing sham litigation" barred as compulsory counterclaim to patentee's earlier patent infringement action against plaintiff). The allegations of the plaintiff in Critical-Vac are precisely the same allegations the plaintiff is now trying to make in the present action: the antitrust plaintiff in Critical-Vac alleged that the patentee had: "(1) committed a fraud on the Patent Office; (2) tried to enforce a patent it knew was invalid; and (3) engaged in sham litigation against [the plaintiff] and other companies." 233 F.3d at 699. The Second Circuit's conclusion in Critical-Vac applies, therefore, with equal force to the facts here: "antitrust claims based on patent *invalidity,* such as C-Vac's claims in the instant case, will generally involve the *same* factual issues as those involved in patent infringement litigation between the same parties . . . ." Id. at 703 (emphasis in original).

In addition, the Federal Circuit has repeatedly stressed the logical relationship between patent infringement claims and claims and counterclaims of invalidity of that patent. See, e.g., Polymer Indust. Prod. Co. v. Bridgestone/Firestone, Inc., 347 F.3d 935, 937-39 (Fed. Cir. 2003). Accord Philips Petroleum Co. v. U.S. Steel Corp., 566 F. Supp. 1093 (D. Del. 1983) (declaratory judgment action for invalidity of patent was a compulsory counterclaim to action to enforce the same patent).

In ruling on the motion to dismiss in this action, this Court distinguished Critical-Vac, reasoning that the Second Circuit decision created a distinction between antitrust claims based on patent misuse and those based on patent validity. Jarrow Formulas, Inc. v. International

Nutrition Co., 175 F. Supp. 2d 296, 308-09 (D. Conn. 2001). Under the present circumstances, however, the plaintiff's proposed amendments fall squarely within the reasoning of the Second Circuit in Critical-Vac: "[a]n obvious 'logical relationship' exists between [claims of sham litigation on a patent allegedly known to be invalid] and the issues addressed by the earlier patent infringement suit, and 'the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues [should have been] resolved in one lawsuit . . . ." 233 F.3d at 700. Furthermore, as discussed above, plaintiff had the same allegations of patent invalidity due to prior art and fraud in 1996 as it now proposes to add to its complaint. Thus, it "'had' those claims and could have raised them at the time" of the underlying infringement action. Critical-Vac, 233 F.3d at 700.

In sum, the plaintiff's proposed allegations of patent invalidity were compulsory counterclaims in the underlying patent infringement litigation and, under Rule 13(a), should have been asserted there. Its claims in the instant action are, therefore, barred.

### C. The Proposed Amended Complaint Fails to State a Claim for Relief

The plaintiff seeks to allege violations of the antitrust laws under Section 2 of the Sherman Act for attempted monopoly and conspiring to monopolize. The proposed amended complaint simply fails to allege properly either a market or a monopoly. Consequently, the proposed Second Amended Complaint cannot withstand a motion to dismiss, and amendment would be futile.

First, antitrust claims that fail to make allegations regarding potential product substitutes should be dismissed. See, e.g., Hack v. President and Fellows of Yale College, 16 F. Supp. 2d 183, 196 (D. Conn. 1998), aff'd, 237 F.3d 81 (2d Cir. 2000) ("A complaint may be dismissed if it fails to define a relevant market by reference to the rule of reasonable

interchangeability or cross-elasticity of demand. In other words, a complaint may be dismissed if the definition of relevant market excludes any reasonably interchangeable substitute products."); Subsolutions, Inc. v. Doctor's Assocs., Inc., 62 F. Supp. 2d 616, 629 (D. Conn. 1999) (antitrust complaint dismissed because "complaint contains no allegations regarding substitute products . . . and does not include any facts regarding cross-elasticity of demand"); B.V. Optische Industrie v. Hologic, Inc., 909 F. Supp. 162, 172 (S.D.N.Y. 1995) ("plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal"); Re-Alco Indust. v. Nat'l Center for Health Ed., 812 F. Supp. 387, 391 (S.D.N.Y. 1993) ("If a complaint fails to allege facts regarding substitute products, to distinguish apparently comparable products, or to allege other pertinent facts relating to cross-elasticity of demand, as the complaint here fails to do, a court may grant a Rule 12(b) (6) motion.").

In the present antitrust action, the proposed Second Amended Complaint does not allege a cognizable market by reference to product substitutes.[6] The plaintiff's proposed

---

[6] Plaintiff's naked allegation of the relevant product market is improperly focused on the '360 patent. A patent is not, without evidence of substitutes of demand and supply, a relevant market for antitrust purposes, and its holder, therefore, is not presumed to have market power. See Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 177 (1965) ("To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would then be necessary to appraise the exclusionary power of the illegal patent claim in terms of the relevant market for the product involved. Without a definition of that market there is no way to measure [the defendant's] ability to lessen or destroy competition."); Jefferson Parrish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 37 n.7 (1984) (O'Connor, J., concurring) ("A common misconception has been that a patent . . . or unique product that competitors are not able to offer suffices to demonstrate market power. While each of these . . . factors might help to give market power to a seller, it is also possible that a seller in those situations will have no market power: for example, a patent holder has no market power in any relevant sense if there are close substitutes for the patented product."); Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 872 (Fed. Cir. 1997) ("Violation of the antitrust laws always requires . . . market power in a defined relevant market (which may be broader than that defined by the

CTDOCS:12827.1                                15

Second Amended Complaint fails to allege the extent to which the use of other widely available nutrients that have radical scavenging effect in humans, such as, e.g., vitamin C, vitamin E, selenium, beta-carotene, zinc, lycopene, and CoQ10, are viewed by consumers as substitutes for the use of oligomeric proanthocyanidins ("PACs") as contemplated by the '360 patent.[7] Thus, the proposed Second Amended Complaint fails to state a cause of action. Hack, 16 F. Supp. 2d at 197 ("A legally sufficient definition of a relevant market is . . . defined . . . by reference to services or commodities that are reasonably interchangeable . . . and must be defined by reference to the commodities or services purchased by general consumers . . . .").

Second, the plaintiff's allegations regarding the "dangerous probability" element of an attempt to monopolize under § 2 of the Sherman Act fail as a matter of law. In Paragraph 62 of its proposed Second Amended Complaint, the plaintiff alleges that "INC, IBC, PSI, PS, Schwitters and Masquelier were likely to achieve a monopoly within the OPC market." IBC, PSI, and PS are alleged to be distributors of products containing PACs produced by INC and Masquelier. Proposed Second Amended Compl. ¶¶ 8, 9. The plaintiff's allegation is that, together, INC, Schwitters, Masquelier, and the three distributors were dangerously close to sharing a monopoly of the OPC market. In other words, the plaintiff appears to claim that, as

---

patent)"); Abbott Laboratories v. Brennan, 952 F.2d 1346, 1354 (Fed. Cir. 1991) ("A patent does not of itself establish a presumption of market power in the antitrust sense."); Orion Electric Co. v. Funai Electric Co., 2002 U.S. Dist. LEXIS 3928 at *20 (S.D.N.Y. March 11, 2002) ("To demonstrate market power flowing from a patent, a plaintiff must show that, within the relevant market, there are no acceptable substitutes for the patented product and that the patent, therefore, enables the patentee to exclude competition.")

[7] The '360 patent is a "method of use" patent in that it covers only the use of products containing proanthocyanidins ("PACs") for scavenging of free radicals and does not cover the products themselves or use of the products for other purposes.

a result of enforcement of a patent allegedly known to be invalid, INC, Schwitters, Masquelier, IBC, PSI and PS <u>together</u> would share a monopoly.

The plaintiff's shared monopoly theory has been considered and rejected in the Second Circuit. A § 2 attempt claim, and the dangerous probability element of that claim, apply only to single firm conduct, not six firms or entities as alleged by the plaintiff. See <u>H.L. Hayden Co. v. Schein Dental Equip.</u>, 879 F.2d 1005, 1018 (2d Cir. 1989) (affirming district court's conclusion that "the market shares of [the two defendants] could not be aggregated to establish an attempt to monopolize in violation of Sherman Act section two"); <u>Kramer v. The Pollock-Krasner Foundation</u>, 890 F. Supp. 250, 256 (S.D.N.Y. 1995) ("the offense of monopolization under Section 2 refers to market dominance by a 'single firm'") (quoting <u>Spectrum Sports</u>, 113 S. Ct. at 889); <u>Consolidated Terminal Sys., Inc., v. ITT World Comm., Inc.</u>, 535 F. Supp. 225, (S.D.N.Y. 1982) (rejecting attempt theory based on combined market shares of five defendants because "in order to sustain a charge of monopolization or attempted monopolization, a plaintiff must allege the necessary market domination of a particular defendant"); <u>H.L. Hayden Co. v. Schein Dental Equip.</u>, 672 F. Supp. 724, 741 (S.D.N.Y. 1987), <u>aff'd</u>, 879 F.2d 1005, 1018 (2d Cir. 1989) ("The section 2 offense of attempted monopolization is directed at unilateral conduct, and plaintiffs' theory of combining market shares must fail for that reason."). Because the plaintiff's proposed Second Amended Complaint fails to allege a dangerous probability of monopolization, its § 2 claim must fail as a matter of law. See, e.g., <u>Consolidated Terminal Sys., Inc., v. ITT World Comm., Inc.</u>, 535 F. Supp. at 229.

### D. Amendment Would be Futile Because the Owners of the '360 Patent are Indispensable Parties That Have Not Been Joined as Defendants

It is well-established that a patent owner is an indispensable party to an action that will decide the validity of the patent. See Suprex Corp. v. Lee Scientific, Inc., 660 F. Supp. 89, 93-94 (D. Pa. 1987); 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1614 at 206 (2001). "Moreover, when the patent or copyright is jointly owned all proprietors have been viewed [by courts] as indispensable parties." Id. at 207-08 (citing cases).

In the instant action, the '360 patent is jointly owned by two non-parties: Centre D'Exploitation des Procyanidines f/k/a Centre D'Experimentation Pycnogenol Sarl ("CEP") and Horphag Research Ltd. ("Horphag"). The plaintiff knows this very well because in March 2004 it brought a separate declaratory judgment action against CEP, INC, and Horphag in this district claiming that the '360 patent is invalid. See Jarrow Formulas v. Centre D'Experimentation Pycnogenol Sarl et al., CV 3:04 cv 535 (JBA) (D. Conn. 2004). Because Horphag and CEP are indispensable parties to the plaintiff's claims of patent invalidity, and are not parties to this action, the plaintiff's claims could not withstand a motion to dismiss and amendment, therefore, is futile. In other words, plaintiff can only prove its proposed theory of antitrust sham litigation due to patent invalidity, fraud, or misuse by first establishing the invalidity of the patent. It can only prove the invalidity of the patent, however, by joining the indispensable patent owners who currently are not parties.

Thus, because the plaintiff's allegations are barred as compulsory counterclaims to the underlying 1996 patent enforcement action, the proposed Second Amended Complaint fails to state a claim for relief, and the amended claims would be dismissed for failure to add the patent owners as indispensable parties, amendment would be futile and should be denied.

## CONCLUSION

The plaintiff's request to add allegations of patent invalidity and fraud is untimely and unduly prejudicial to the defendants. Furthermore, because the new allegations were compulsory counterclaims to the underlying 1996 action for infringement and because the proposed Second Amended Complaint fails to state a claim for relief, the amendment would be futile. Accordingly, for the foregoing reasons, the Court should deny the plaintiff's Motion for Leave to Further Amend Complaint.

DEFENDANTS,
INTERNATIONAL NUTRITION CO.,
EGBERT SCHWITTERS, NORMAN H.
ZIVIN, JACK MASQUELIER,
INTEGRATED BIOCEUTICALS,
LLC, PRIMARY SOURCE, LLC, AND
PRIMARY SERVICES, INC.

By: _____
RICHARD S. ORDER, ESQ.
Federal Bar No. ct02761
E-mail: rso@avhlaw.com
ERIC D. BEAL, ESQ.
Federal Bar No. ct23167
E-mail: exb@avhlaw.com
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103-3702
Telephone: 860-275-8100
Facsimile: 860-275-8101

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing has been served by first class U.S. mail this 5th day of November, 2004 to:

Eric Watt Wiechmann, Esq.
Mark D. Giarratana, Esq.
Eric E. Grondahl, Esq.
McCarter & English
CityPlace I
185 Asylum Street
Hartford, CT 06103

Alexandra B. Stevens, Esq.
McCarter & English
107 Elm Street
Stamford, CT 06902

_____
Eric D. Beal
AXINN, VELTROP & HARKRIDER LLP