

90/004223

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Inventor: | Jack Masquelier | ) |
| Patent No.: | 4,698,360 | ) |
| Issued: | October 6, 1987 | ) |
| For: | PLANT EXTRACT WITH A PROANTHOCYANIDINS CONTENT AS THERAPEUTIC AGENT HAVING RADICAL SCAVENGER EFFECT AND USE THEREOF | ) |

## REQUEST FOR REEXAMINATION

Honorable Commissioner of
 Patents and Trademarks
Washington, D.C.  20231

Box: REEXAM

Dear Sir:

The undersigned hereby requests that the Commissioner reexamine U.S. Patent No. 4,698,360 ("the '360 patent) pursuant to the provisions of 35 U.S.C. Sections 302-307 and 37 C.F.R. Sections 1.501-570.  A copy of the '360 patent is attached as Exhibit A in the form required by 37 C.F.R. Section 1.510(b)(4).

I.   Claims For Which Reexamination Is Sought

Reexamination of all claims (claims 1-7) of the '360 patent is sought in view of the following prior art patents and publications:

1.   United States Patent No. 3,549,661 to Masquelier issued December 22, 1970 and entitled METHOD OF MANUFACTURING CHEMICALLY PURE FLAVANEDIOLS (hereinafter "Masquelier '661," Exhibit B);

-1-

**JAR  0001**

2.      United States Patent No. 3,436,407 to Masquelier issued April 1, 1969 and entitled HYDROXYFLAVIN 3,4-DIOLS, A METHOD OF PRODUCING THEM AND MEDICAMENT BASED THEREON (hereinafter "Masquelier '407," Exhibit C);

3.      E.C. Bate-Smith and T. Swain, "Identification of Leuco-Anthocyanins as 'Tannins' in Foods," Chemistry and Industry, pp. 377-378, April 18, 1953, (hereinafter, "Bate-Smith", Exhibit D);

4.      Bert Schwitters, OPC in Practice--Bioflavanols and Their Application, written in collaboration with Jack Masquelier, 1993, (hereinafter "OPC in Practice", Exhibit E);

5.      United States Patent No. 4,255,336 to Albert et al. issued March 10, 1981 and entitled PROCESS FOR THE PREPARATION OF O-SUBSTITUTED DERIVATIVES OF (+)-CYANIDAN-3-OL (hereinafter "Albert et al.," Exhibit F);

6.      United States Patent No. 4,285,964 to Niebes et al. issued August 25, 1981 and entitled SALTS OF (+)-CATECHINE, THEIR PREPARATION AND USE, AND COMPOSITIONS CONTAINING THESE SALTS, (hereinafter "Niebes et al. '964," Exhibit G);

7.      United States Patent No. 4,268,517 to Niebes et al. issued May 19, 1981 and entitled PHARMACEUTICAL COMPOSITIONS AND THERAPEUTICAL METHOD FOR TREATING DEGERATIVE AFFECTIONS OF THE ARTICULAR CARTILAGE, (hereinafter "Niebes et al. '517," Exhibit H);

8.      United States Patent No. 4,376,781 to Lietti et al. issued March 15, 1983 and entitled PHARMACEUTICAL COMPOSITIONS (hereinafter "Lietti et al.," Exhibit I);

9.      United States Patent No. 4,613,672 to Hara issued September 23, 1986 and entitled PROCESS FOR THE PRODUCTION OF TEA CATECHINS (hereinafter "Hara," Exhibit J);

10.     United States Patent No. 4,644,011 to Ballenegger et al. issued February 17, 1987 and entitled PHARMACEUTICAL PREPARATIONS CONTAINING (+)-CYANIDAN-3-OL DERIVATIVES, THE USE THEREOF, NOVEL SUBSTITUTED (+)-CYANIDAN-3-OL DERIVATIVES, AND PROCESSES FOR PRODUCING THEM (hereinafter "Ballenegger et al.," Exhibit K).

JAR  0002

## II.    New Substantial Questions of Patentability

The following new substantial questions of patentability are presented in view of the above-identified prior art patents and publications:

1.    Whether claims 1-7 are anticipated under 35 U.S.C. § 102(b) or unpatentable under 35 U.S.C. § 103 in view of the disclosure of Masquelier '407.

2.    Whether claims 1-7 are unpatentable under 35 U.S.C. § 103 as being obvious over Masquelier et al. '661 in view of Masquelier '407.

3.    Whether claims 1-7 are unpatentable under 35 U.S.C. § 103 as being obvious over Masquelier '407 in view of Albert et al.

4.    Whether claims 1-7 are unpatentable under 35 U.S.C. § 103 as being obvious over Masquelier '407 in view of Niebes et al. '964 and Niebes et al. '517.

5.    Whether claims 1-7 are unpatentable under 35 U.S.C. § 103 as being obvious over Masquelier '407 in view of Lietti et al.

6.    Whether claims 1-7 are unpatentable under 35 U.S.C. § 103 as being obvious over Masquelier '407 in view of Hara.

7.    Whether claims 1-7 are unpatentable under 35 U.S.C. § 103 as being obvious over Masquelier '407 in view of Ballenegger et al.

8.    Whether claims 1-7 are anticipated under 35 U.S.C. § 102(b) based on the doctrine of inherency by the disclosure of Masquelier '407 and the admitted prior art discussed in the '360 patent.

9.    Whether claims 1-7 are unpatentable under 35 U.S.C. § 103 as being obvious from the prior art disclosed in OPC in Practice.

## III.    Masquelier '360 Patent

The Masquelier '360 patent is based on an application filed April 9, 1985 and issued as United States Patent No. 4,698,360 on October 6, 1987. The patent issued with 7 total claims, including 1 independent claim and 6 dependent claims. The '360 patent claims a

JAR 0003

method of using a plant extract with a "proanthocyanidin" content as a therapeutic agent having "radical scavenger effect."[1] Claim 1 contains a single method step:  the step of administering extracted proanthocyanidin to an animal.  The entire claim 1 reads as follows:

> 1.    A method for preventing and fighting the harmful biological effect of free radicals in a warm blooded animals [sic], including a human being, comprising administering the extracted proanthocyanidin content from a plant containing same, said extract having a bioavailable radical scavenger effect, to an animal exposed to said free radicals in an amount effective to reduce said harmful free radical effect, said extracted proanthocyanidin content being incorporated into a pharmaceutically acceptable medicament.

The claim states that the (A) proanthocyanidin (B) be a plant extract, (C) have a bioavailable radical scavenger effect, (D) be administered in an amount effective to reduce the harmful free radical effect, and (E) be incorporated into a pharmaceutically acceptable medicament. These limitations are discussed below.

A.    Proanthocyanidin Definition

The chemical structure of "proanthocyanidin" is not given in the Masquelier '360 patent.  According to the '360 patent, "proanthocyanidins form a class of natural polyphenols, defined by an exclusive property, namely the production of a red pigment (anthocyanidin) by the Bate-Smith reaction."  Column 2, lines 7-12.  According to the Bate-Smith reaction, a colorless proanthocyanidin will form a red anthocyanidin when heated with acid.  E.C. Bate-Smith and T. Swain, "Identification of Leuco-Anthocyanins as 'Tannins' in Foods," Chemistry and Industry, pp. 377-378, April 18, 1953 (Exhibit D).  The '360 patent

---

[1]According to the applicant, the essence of the invention resides in suppressing the effects of free radicals by administration of a plant extract containing a proanthocyanidin.  Preliminary Amendment, dated December 18, 1985, at page 2.

JAR  0004

further states that "the Bate-Smith reaction, because of its specificity, is one of the processes used for detecting proanthocyanidins in a plant extract." Column 2, lines 14-16. Thus, according to the '360 patent definition, natural polyphenols which form the red pigment (anthocyanidin) upon heating with acid are proanthocyanidins.

A large variety of compounds are "proanthocyanidins" as defined in the '360 patent. The original Bate-Smith article describes the Bate-Smith reaction in connection with a bark extract of *Pinus maritimus* containing "leuco-anthocyanins." Leuco-anthocyanins have been referred to in the literature as "hydroxyflavan 3,4-diols," "leucoanthocyans," and "tetrahydroxy 5,7,3',4'-flavan-3,4-diol."[2] This compound is a monomeric proantho-cyanidin[3] which converts to anthocyanidin with heat and acid as shown below:



Hydroxyflavan-3,4-diol                                 Anthocyanidin
Proanthocyanidin monomer

Several different names have been used in the past to describe "proanthocyanidins." The "Prior Art" section of the '360 patent refers to the Masquelier '407 patent as disclosing

---

[2] See, e.g., Masquelier '407 and Masquelier '661.

[3] The book OPC In Practice, written in collaboration with the inventor, Jack Masquelier, suggests that proanthocyanidins were known as "leukocyanidol" back in 1956. OPC In Practice, page 50.

-5-

the use of maritime pine bark (*Pinus maritima*) as a raw material for extracting medicaments. The "Description of the Invention" section of the '360 patent states that the therapeutic constituents of pine bark extracts "are at present known under the name of 'proanthocyanidins.' It is under this new name ... that the substances responsible for the ... medicinal activity claimed will be designated. '360 patent, column 1, lines 36-42 and 53-63. Thus, the '360 patent suggests that the active ingredient in pine bark previously known as hydroxyflavan 3,4-diols, leucoanthocyans, and tetrahydoxy 5,7,3',4'-flavan-3,4-diol, is now known under the name of "proanthocyanidins."

In the prosecution history of the '360 patent, the applicant, Jack Masquelier, used several different terms to describe "proanthocyanidins." The applicant submitted a signed declaration dated April 30, 1986 (Masquelier Declaration I) distinguishing "procyanidins" from "bioflavonoids." The Masquelier Declaration I repeatedly referred to "procyanidins" instead of the claimed "proanthocyanidins." See, page 4, lines 14, 17, and 25 and page 5, lines 2, 8, 10, 12, 14, 24, and 26 of the Masquelier Declaration I. It appears the inventor considered the term "procyanidins" to be "proanthocyanidins."

The Masquelier Declaration I included an English translation of Masquelier et al., "Flavonoids and Pycnogenols," International Journal for Vitamin and Nutrition Research, Vol. 49, No. 3, pp. 307-311, 1979. This article presented an argument for the separate classification of compounds based on the flavan-3-ol structure (catechin) such as catechin tannins, condensed tannins, procyanidols, and other catechin derivatives. Masquelier coined the term "pycnogenol" to describe such compounds.

OPC In Practice, written in collaboration with the inventor, Jack Masquelier, at pages 11-15, teaches that compounds based on the flavan-3-ol structure (catechin) are known as

-6-

dins have been "used in therapeutical treatment for 30 years" and have never given rise to toxic effects. Masquelier '360, column 3, lines 9-21.

"Radical Scavenger Effect" (R.S.E.). Claim 1 requires that the extracted proanthocyanidins have a radical scavenger effect and be administered in an amount effective to reduce harmful effects of free radicals. The Masquelier '360 patent lists several "harmful effects" of free radicals in animals such as:

1. Cerebral involution caused by hypoxia. Abstract and column 5, lines 12-28.
2. Hypoxia following atherosclerosis. Abstract and column 5, lines 30-33.
3. Cardiac or cerebral infarction, including the formation of thrombi and vascular deposits of atherosclerosis and lipid peroxidation. Abstract and column 5, lines 33-42.
4. Tumor promotion. Abstract; column 2, lines 63-68; and column 5, lines 43-60.
5. Inflammation. Abstract and column 6, lines 9-10.
6. Ischaemia. Abstract and column 6, line 10.
7. Alterations of the synovial liquid. Abstract and column 6, lines 12-14.
8. Collagen degradation. Abstract and column 6, lines 14- 15.
9. Vascular tissue degradation. Column 2, lines 53-60.
10. Ionizing radiation and chemical carcinogens. Column 5, lines 56-60.

D.    Dosage amount. The Masquelier '360 patent teaches an oral dosage of 1.5 to 3 mg/kg body weight per day. For intravenous administration, a dosage of 5 to 10 mg per day for an adult male is disclosed. Masquelier '360, column 6, lines 48-64.

E.    Pharmaceutical medicament. Conventional pharmaceutical medicaments include aqueous solutions, tablets, pills, capsules, suppositories, ointments, etc. Masquelier '360, column 6, lines 20-47.

JAR 0008

"flavanols" or "bioflavanols."[4]  In France, the dimers based on flavan-3-ol have been called "procyanidols," "procyanidines," and "oligomeres procyanidoliques" or OPC.  The Bate-Smith reaction applied to a proanthocyanidin dimer is illustrated below:



Proanthocyanidin dimer.                                   Anthocyanidin

In summary, natural polyphenols which form the red pigment (anthocyanidin) upon heating with acid are proanthocyanidins according to the '360 patent.  A number of different terms have been used in the past to describe proanthocyanidins.

B.    Plant extract.  The Masquelier '360 patent states that proanthocyanidins can be extracted from raw plant materials.  Conifer bark, particularly maritime pine bark and Canadian spruce, and other arborescent or herbaceous plant species contain proanthocyanidins.

C.    Bioavailable radical scavenger effect.  According to the Masquelier '360 patent, proanthocyanidins are bioavailable based on animal studies published in 1977. Masquelier '360, column 3, lines 23-27.  The '360 patent further states that proanthocyani- .

_____

[4]The Masquelier '407 patent states that tetrahydroxy 5,7,3',4'-flavan-3,4,-diol is an "active element of a bioflavanoid or vitamin P factor."  Column 1, lines 45-47.  Bioflavanoids must be distinguished from the broader class of compounds known as bioflavonoids.

JAR  0007

IV.    Discussion of the New Questions of Patentability

Background. The inventor, Jack Masquelier, began investigating the therapeutic activity of various plant extracts nearly 50 years ago.[5] An active ingredient in these early plant extracts was identified as hydroxyflavan-3,4-diol, also known as leukocyanidol and leucocyanidin. Leucocyanidin is a "proanthocyanidin" possessing a large number of well known therapeutic activities, including several that are within the scope of the "harmful free radical effects" disclosed in the '360 patent. The '360 patent itself states that proanthocyanidins have been "used in therapeutical treatment for 30 years." Column 3, lines 16-17.

It appears that the inventor was successful at obtaining the '360 patent by using the newer term "proanthocyanidins" to describe the same pine bark extracts that had been used therapeutically for over 30 years and by using the modern term "harmful free radical effects" to describe the several illnesses and diseases previously treated with pine bark extracts containing proanthocyanidins. As established below, the prior art discloses and suggests every limitation of the claimed invention.

Masquelier '407 patent. U.S. Patent No. 3,436,407 to Masquelier (hereinafter the "Masquelier '407 patent") teaches a method of extracting proanthocyanidins from maritime pine bark (Pinus maritima). According to the Masquelier '407 patent, the pine bark extract contains "less polymerized forms" of hydroxyflavan 3,4-diols, "in particular, the monomer, the dimers, trimers, tetramers, and pentamers." Masquelier '407, Abstract and column 2,

---

[5] OPC In Practice, page 6, in the "Forward" written by Jack Masquelier states that the first OPC (i.e., proanthocyanidin) from plant sources was isolated in 1947.

JAR 0009

lines 1-5. The "hydroxyflavan 3,4-diols" and "leucoanthocyans" are described in connection with the specific compound "tetrahydroxy 5,7,3',4'-flavan-3,4-diol" having the formula:



tetrahydroxy 5,7,3',4'-flavan-3,4-diol
leucocyanidin

The Merck Index, 11th edition, no. 5334, page 857, defines this structure as "leucocyanidin."

According to the Masquelier '407 patent, the "hydroxyflavan 3,4-diols" can be identified "by a highly specific reaction when treated with a warm dilute mineral acid" which converts the hydroxyflavan 3,4-diol into "anthocyanidol, a pigment with an intense red colour." Masquelier '407, column 3, lines 35-39. This describes the Bate-Smith reaction used by the '360 patent to define "proanthocyanidins." Therefore, the pine bark extracts of the Masquelier '407 patent contain "proanthocyanidins."

Therapeutic activity. The Masquelier '407 patent (column 4, lines 42-65) discloses several therapeutic uses of the proanthocyanidin, tetrahydroxy 5,7,3',4'-flavan-3,4-diol, including treatment of the following diseases or disorders:

JAR  0010

-10-

I.      Capillary fragility
        Tendency to ecchymosis (bruise)
        Vascular disorders in cases of hypertension
        Diabetic retinopathy
        Capillary fragility of renal insufficiency, hepatic insufficiency,
                infectious diseases
        Hemorrhoidal outbreaks
        Capillary fragility in the course of treatment by anticoagulants

II.     Abnormally high capillary permeability
        Edema of the legs, "heavy legs"
        Various conditions, varicose ulcers
        Sequels of phlebitis
        Edema of premature infants
        Edema of hepatic insufficiency
        Pleural effusions of cardiac cases
        Pleurisy
        Periarthritis
        Allergic accidents (urticaria, eczema, Quincke's edema, dyshidrosis)
        Dermatosis (pemphigus, psoriasis)
        Cellulitis

See also, OPC In Practice, pp. 88-89.

Although the Masquelier '407 patent does not specifically state these diseases or

disorders are "harmful effects of free radicals," many, if not all, of them are harmful effects

of free radicals. For instance, edema is swelling or inflammation, and inflammation is one

of the specific "harmful free radical effects" mentioned in the '360 patent. Masquelier '360,

Abstract and column 6, lines 9-10.

Similarly, well known "vascular disorders in cases of hypertension" include

atherosclerosis, heart failure, and cerebral hemorrhage. The Bantam Medical Dictionary,

page 212, 1990 (Exhibit L). These are within the scope of one or more "harmful free

radical effects" mentioned in the '360 patent, including "cardiac or cerebral infarction ..."

(Abstract and column 5, lines 33-42) and "ischaemia" (Abstract and column 6, line 10.)

-11-

In addition, the book OPC In Practice states that free radicals cause "drastic disorders in the vascular wall." They can "stimulate vasoconstriction" and "vasodilation." Regarding vasodilation, OPC In Practice at page 47 states:

> Vasodilation occurs as part of the inflammation process and is accompanied by the flow of macromolecules in the tissue because the capillary membranes have become more permeable. The result is pain and swelling (edema). A free radical fighter such as OPC [i.e., proanthocyanidins] can combat the undesired influences in the affected area.

The beneficial vascular affects of proanthocyanidins and anti-edema activity are a result of their radical scavenging activity. The clinical tests reported at columns 5-6 of Masquelier '407 report the effectiveness of the pine bark extract containing proanthocyanidins at fighting the harmful biological effect of free radicals in humans. Therefore, the Masquelier '407 patent discloses the use of proanthocyanidins to combat "the harmful biological effect of free radicals in a warm blooded animal, including a human being."

The Masquelier '407 patent suggests a dosage of 5 to 10 mg per day, administered orally or topically "in any known manner." column 4, lines 10-11. This disclosed dosage range is within the scope of dependent claim 5 in the '360 patent. Because Masquelier '407 discloses pine bark extract, the subject matter of dependent claims 2, 3, 4, 6, and 7 is anticipated. From the foregoing, every claim limitation of claims 1-7 is disclosed by the Masquelier '407 patent. These claims are either anticipated under Section 102(b) or obvious under Section 103 from the disclosure of Masquelier '407.

Masquelier '661 patent in combination with the Masquelier '407 patent. The Masquelier '661 patent discloses tetrahydroxy 5,7,3',4'-flavan-3,4-diol and various

JAR 0012

therapeutic uses of the compound. Like the Masquelier '407 patent, the Masquelier '661 patent teaches that the monomeric hydroxyflavan 3,4-diol is identified by using "the specific reaction for hydroxyflavanediols," that is, "heating in the presence of a dilute inorganic acid" which "leads to their conversion to anthocyanins." Masquelier '661, column 5, lines 14-21. The product of this reaction has an "intense red color." Masquelier '661, column 4, lines 70-74. This describes the Bate-Smith reaction. Masquelier '661 further teaches that from an analysis of the "anthocyanins" produced by the foregoing reaction, it is "possible to characterize the proanthocyanin from which they are derived." Masquelier '661, column 5, lines 14-21. Thus, the tetrahydroxy 5,7,3',4'-flavan-3,4-diol of the Masquelier '661 patent is a "proanthocyanidin" according to the '360 patent definition.

Therapeutic activity. The Masquelier '661 patent (columns 6 and 7) discloses several therapeutic uses of tetrahydroxy 5,7,3',4'-flavan-3,4-diol. "[I]t possess, by itself, to a high degree and without any unfavorable secondary actions all the therapeutic indications of the bioflavanoids or vitamin P factors." Column 6, lines 4-7. More specific therapeutic indications include:

1.    Action on capillaries and vessels
    a.    Capillary fragility [see list from Masquelier '407].
    b.    Abnormally high capillary permeability [see list from Masquelier '407].
2.    Vitamin C metabolism. "Flavanediol ... can thus be used for its action on: Scurvy--general growth--bone and tooth growth--toxic and infectious syndromes--collagen (trophic action)--asthenias--anaphylactic shock." Column 6, lines 61-65.
3.    Protective activity against radiation. Masquelier '661 suggests administering flavanediol to provide a "protective effect" to irradiation with X-rays or even alpha radiation. Column 7, lines 1-12.

-13-

JAR 0013

In addition to the radical scavenging activity of the Masquelier '407 patent discussed above, the Masquelier '661 patent lists protection against radiation (X-rays and alpha radiation). This, of course, is identical to the "radical scavenger effect" claimed in the Masquelier '360 patent as a protector against "ionizing radiation." Column 5, lines 56-60. Therefore, the Masquelier '661 patent discloses the use of proanthocyanidins to combat "the harmful biological effect of free radicals in a warm blooded animal, including a human being."

The Masquelier '661 patent suggests an oral dosage of 5 to 200 mg per day for adults and from 5 to 50 mg for children and a parenteral dosage of 5 to 100 mg per day. These dosages are within the scope of Masquelier '360 claim 5.

The Masquelier '661 does not appear to disclose tetrahydroxy 5,7,3',4'-flavan-3,4-diol extracted from pine bark, but because this compound is identical to the proanthocyanidin compound disclosed in the Masquelier '407 patent, it is known that tetrahydroxy 5,7,3',4'-flavan-3,4-diol can be extracted from pine bark. From the foregoing, every claim limitation of claims 1-7 is disclosed by the combination of Masquelier '661 and Masquelier '407. These claims are unpatentable under Section 103 from the disclosure of Masquelier '661 and '407

Albert et al. discloses pharmaceutical preparations containing (+)-cyanidan-3-ol derivatives which are close analogues to the proanthocyanidins disclosed in the Masquelier '407. Albert et al.'s compounds are used to inhibit lipoperoxidation and collagen degradation. Albert et al., Abstract and column 6, lines 9-30. Lipoperoxidation and collagen degradation are harmful effects of free radicals disclosed in the '360 patent. '360 patent, Abstract; column 6, lines 14-15; and column 5, lines 34-35. It would have been

-14-

obvious to use the proanthocyanidins disclosed by Masquelier '407 to treat the harmful

effects of free radicals disclosed by Albert et al. based on the close structural similarity

between the compounds of Lietti et al. and the Masquelier '407 proanthocyanidins.

Niebes et al. '964 teaches that catechin is used in the treatment of degenerative

diseases of the connective tissue and diseases of the articular cartilage. Niebes et al., column

1, lines 33-41. This is also taught by Niebes et al. '517 at column 3, lines 47-50. Because

collagen is connective tissue and because "collagen degradation" is a harmful effect of free

radicals listed in the '360 patent (Abstract and column 6, lines 14-15), the Niebes et al. '964

and '517 patents teach the use of catechin against the harmful effects of free radicals.

Because proanthocyanidins are catechin derivatives, it would have been obvious to use

proanthocyanidins, such as those described in the Masquelier '407 patent, to treat the

harmful biological effect of free radicals disclosed in the Niebes et al. '964 and '517 patents.

Lietti et al. discloses flavylium salts, including naturally occurring anthocyanins and

synthetic analogues, possessing remarkable pharmaceutical properties such as epithelium-

regenerating, anti-inflammatory, vasoprotective properties. Lietti et al., Abstract; column 1,

lines 6-27; and column 6, lines 10-17. As discussed above, these are harmful effects of free

radicals disclosed in the '360 patent. The compounds of Lietti et al. can be obtained from

plant extracts. Lietti et al., column 1, lines 53-60 and column 5, line 34. The compounds

are administered to the subject at dosages within the scope of the '360 patent claim 5. The

anthocyanin derivatives of Lietti et al. are close analogues to the proanthocyanidins of

Masquelier '407. It would have been obvious to use the proanthocyanidins disclosed by

Masquelier '407 to treat the harmful effects of free radicals disclosed by Lietti et al. based

**JAR 0015**

on the close structural similarity between the anthocyanins of Lietti et al. and the Masquelier '407 proanthocyanidins.

Hara discloses a tea leaf extraction process to produce various catechin derivatives. The "tea catechins possess a strong antioxidant action." Antioxidants and free radical scavengers are functionally similar and are often interchanged in the art. Because proanthocyanidins are catechin derivatives, it would have been obvious to use proanthocyanidins described by Masquelier '407 as an antioxidant/free radical scavenger according to Hara.

Ballenegger et al. discloses pharmaceutical preparations containing (+)-cyanidan-3-ol derivatives having a structure very close to the proanthocyanidins disclosed in the Masquelier '407. Ballenegger et al.'s compounds are used to treat liver and venous diseases. Ballenegger et al., Abstract. The compounds are also used to treat several harmful effects of free radicals reported by the '360 patent, including lipoperoxidation[6] and inflammation.[7] Ballenegger et al., column 4, lines 37-52 and column 6, lines 47-53. The Ballenegger et al. compounds possess antitumor[8] properties against ascitic tumors, leukemia, and on solid tumors. Ballenegger et al., column 6, lines 11-13. It would have been obvious to use the proanthocyanidins disclosed by Masquelier '407 to treat the harmful effects of free radicals disclosed by Ballenegger et al. based on the close structural similarity between the Ballenegger et al. compounds and the Masquelier '407 proanthocyanidins.

---

[6]'360 patent, column 5, lines 34-35.

[7]'360 patent, Abstract and column 6, lines 9-10.

[8]'360 patent, Abstract, column 2, lines 63-68 and column 5, lines 43-60.

-16-

JAR 0016

Patent Invalidity based on the Doctrine of Inherency. A patent claim may be invalid when the claim limitations are "inherent" or otherwise implicit in the prior art reference. The key to whether a prior art reference anticipates under the doctrine of inherency is whether the limitation is necessarily present in the prior art reference.

Each of Masquelier '360, Masquelier '407, and Masquelier et al. '661 discloses the same use (orally administering to an animal) of the same composition (proanthocyanidin) as claimed in the '360 patent. To the extent, if any, that these references do not disclose the entire method claimed in the '360 patent *in haec verba* for failing to expressly state that the result of practicing this method is the reduction of a "harmful free radical effect," the inherency doctrine dictates that the references still anticipate.

Preventing a harmful biological effect of free radicals in warm blooded animals inherently occurs upon administering a proanthocyanidin extract. The '360 patent states that proanthocyanidin extracts "are endowed with the 'radical scavenger effect' (R.S.E.)." Column 5, lines 4-5. Hence, the "radical scavenger effect" is an inherent property of proanthocyanidins.

The present case is virtually identical to the case of *Ex parte Novitski*, 26 U.S.Q.P.2d 1389 (BPIA 1993) in which the Board of Patent Appeals and Interference rejected claim 1 of the Novitski application as anticipated by a patent to Dart (U.S. Patent No. 4,798,723). The rejected claim recited: ,

> 1. A method for protecting a plant from plant pathogenic nema-
> todes which comprises the step of inoculating said plant with a nematode-
> inhibiting strain of *P. cepacia* which strain colonizes said plant.

The prior Dart patent disclosed the step of inoculating a plant with *Pseudomonas cepacia* type Wisconsin 526, which colonizes the plant. The Board noted that "Dart does not

-17-

JAR 0017

expressly disclose that *Pseudomonas cepacia* type Wisconsin 526 possesses nematode-inhibiting activity, nor does the reference expressly disclose a method for protecting a plant from plant pathogenic nematodes." *Id.* at 1390. The applicant admitted that *Pseudomonas cepacia* type Wisconsin 526 possessed an 18% nematode-inhibition rating. The Board held:

> *A fortiori*, we find the conclusion inescapable that Dart's method of inoculating a plant with *Pseudomonas cepacia* type Wisconsin 526 constitutes a method of inoculating with a nematode-inhibiting strain of *Pseudomonas cepacia* as recited in independent claim 1 on appeal. ... We fully appreciate that Dart does not disclose appellants' claimed method *in haec verba*. Nevertheless, Dart's disclosure fully meets the terms of the claimed method because *Pseudomonas cepacia* type Wisconsin 526 inherently possesses nematode-inhibiting activity. (Emphasis supplied.)

*Id.* at 1391.

In the present case, the '360 patent states that proanthocyanidins have been "used in therapeutical treatment for 30 years." Column 3, lines 16-17. The '360 further states that proanthocyanidins are endowed with the "radical scavenger effect." If proanthocyanidins possessing a radical scavenger effect have been administered to humans for over 30 years, then the claimed method is inherently anticipated by the disclosed method.

Furthermore, recognition that proanthocyanidins possess a "radical scavenger effect" cannot impart patentability to an otherwise known process. In *Verdegaal Bros. Inc. v. Union Oil Co. of California*, 2 U.S.P.Q.2d 1051, 1054 (Fed. Cir. 1987) the Court of Appeals for the Federal Circuit reversed the lower court, holding that a motion for JNOV that the claims were anticipated should have been granted. The prior art disclosed all elements of the claimed process but failed to explicitly identify the heel in the process as a "heat sink." The patentee maintained that because the prior art did not recognize the "inventive concept" that

-18-

JAR 0018

the heel functioned as a heat sink, the prior art process cannot anticipate. The Federal
Circuit held that "[t]his argument is wrong as a matter of fact and law." *Id.* at 1054.

The Federal Circuit noted:

> Even assuming [the prior art] did not recognize that the heel of [the prior art]
> process functioned as a heat sink, that property was <u>inherently possessed</u> by
> the heel in [the prior art] process, and thus, [the prior art] process anticipates
> the claimed invention. (Emphasis supplied.)

*Id.*

In the present case, because the radical scavenger effect is an inherent property of
proanthocyanidins, the prior art administration of proanthocyanidins to humans anticipated
the claimed invention.

OPC in Practice is a book written in collaboration with the inventor Jack Masquelier.
It describes the historical development of proanthocyanidins and discusses the nomenclature
evolution for term proanthocyanidins. The acronym OPC, which stands for the French term
"oligomeres procyanidoliques," includes proanthocyanidins. A list of literature reference
excerpts relevant to OPC or proanthocyanidins is included beginning at page 70. Many of
these excerpts are dated well before to the filing date of the '360 patent and discuss the prior
use of proanthocyanidins in treating the harmful effects of free radicals.

Excerpt No. 24, page 90, OPC In Practice refers to J. Masquelier et al.,
"Stabilisation du Collagene par les Oligomeres Procyanidoliques," Acta Therapeutica, vol. 7,
pp. 101-05, 1981, discloses the collagen stabilizing effect of proanthocyanidins.

Excerpt No. 32, page 94, OPC In Practice refers to G. Blaszo et al., "Edema-
Inhibiting Effect of Procyanidin," Acta Physiologica Academiae Hungaricae, Tomus 65 (2),
pp. 235-240, 1980, discloses the anti-inflammatory activity of proanthocyanidins.

-19-

JAR 0019

Excerpt Nos. 38-44, and 47, pages 95-99, OPC In Practice disclose the beneficial vascular effects of proanthocyanidins.

Excerpt No. 46, page 99, OPC In Practice refers to MM. Ph. Vérin et al., "Retinopathies and O.P.C.," Bordeaux Médicale, vol. 11, no. 16, p. 1467, 1978, concludes that "O.P.C. ... is a therapeutic instrument of choice in all exudates of diabetic, arteriosclerotic [sic atherosclerotic], imflammatory [sic inflammatory], degenerative and myopic origins which are accompanied by ischemia ...." Atherosclerosis, inflammation, and ischemia are harmful free radical effects disclosed in the '360 patent. This reference plainly suggests the use of "OPC" which includes proanthocyanidins for the treatment of these diseases.

Excerpt Nos. 51 and 52, pages 101-02, OPC In Practice disclose the anti-edema (inflammation) properties of ENDOTELON, an OPC-based product sold by Sanofi/Labaz.

From the foregoing excerpts, proanthocyanidins have been widely used to treat the harmful effects of free radicals well before the filing date of the '360 patent. As such, claims 1-7 would have been obvious from the prior art disclosed in OPC In Practice.

Summary

Accordingly, it is submitted that each of the claims of the Masquelier '360 patent is invalid as being anticipated or obvious in view of the prior art. The Commissioner is respectfully requested to commence reexamination proceedings in order to invalidate the overly broad claims of Masquelier '360.

JAR 0020

Dated this _16th_ day of April, 1996.

Respectfully submitted,

John L. Welsh
Reg. No. 33,621

AQUILINO & WELSH
2121 Crystal Drive, Suite 503
Arlington, Virginia 22202

c:\amendmen\1957-1.rex

-21-

JAR 0021



91/004223

<u>Certification of Service Under 37 C.F.R.§ 1.510(b)(5)</u>

The undersigned hereby certifies that a copy of the foregoing Request For

Reexamination has been served in its entirety on the patent owner at the address provided

for in 37 C.F.R. Section 1.33(c) by transmission by first class mail upon the following

attorney or agent of record in the patent file at the address listed on the register of patent

attorneys and agents maintained by the Patent Office, deposited on the date set forth

below:

> International Nutrition Company
> c/o Norman H. Zivin, Esq.       *SERVICE*
> COOPER AND DUNHAM              *OWNER*
> 1185 Avenue of the Americas
> New York, N.Y  10036

Dated this 17th day of April 1996.

John L. Welsh
Reg. No. 33,621

AQUILINO & WELSH, P.C.
2121 Crystal Drive, Suite 503
Arlington, VA  22202

JAR 0022

22

99/004223

<u>Certification of Service Under 37 C.F.R.§ 1.510(b)(5)</u>

The undersigned hereby certifies that a copy of the foregoing Request For

Reexamination has been served in its entirety on the patent owner at the address provided

for in 37 C.F.R. Section 1.33(c) by transmission by first class mail upon the following

attorney or agent of record in the patent file at the address listed on the register of patent

attorneys and agents maintained by the Patent Office, deposited on the date set forth

below:

> Societe Civile d'Investigations Pharmacologiques d'Aquitaine
> and
> Horphag Overseas Ltd.
> c/o Julius Balogh
> <u>BALOGH, OSANN, KRAMER, DVORAK, GENOVA &</u>
> <u>TRAUB</u>
> <u>39 Broadway, Suite 1815</u>
> <u>New York, NY  10006</u>

Dated this 17th day of April 1996.

John L. Welsh
Reg. No. 33,621

AQUILINO & WELSH, P.C.
2121 Crystal Drive, Suite 503
Arlington, VA  22202

**JAR  0023**

2453

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:  Jack Masquelier

Reexam Control No.: 90/004,223

Patent No.:   4,698,360   06/721,434

Issued     :   10/06/1987

Title      :   PLANT EXTRACT WITH A PROANTHOCYANIDINS CONTENT AS
               THERAPEUTIC AGENT HAVING RADICAL SCAVENGER EFFECT
               AND USE THEREOF

Commissioner of Patents
 and Trademarks
Box REEXAM
Washington, D.C. 20231

Sir:

     Further to our Request for Reexamination and Certificate of
Service filed on April 17, 1996 (copies enclosed), we have
attempted to serve a copy of the Reexamination Request to the
Societe Civile d'Investigations Pharmacologiques d'Aquitaine and
Horphag Overseas Ltd. c/o Julius Balogh to the below listed three
addresses and have had it returned each time.

BALOGH, OSANN, KRAMER, DVORAK,          BALOGH, OSANN, KRAMER, DVORAK,
 GENOVA & TRAUB                          GENOVA & TRAUB
39 Broadway                             2 World Trade Center
Suite 1815                              Suite 9768
New York, NY  10006                     New York, NY  10048

Julius Balogh
1046 Lorraine Drive
Franklin Square, NY  11010

     We have been informed that Mr. Balogh died three years ago and
that the law firm of BALOGH, OSANN, KRAMER, DVORAK, GENOVA & TRAUB
is now defunct.  Therefore, we will make no further attempt to
serve the Reexamination Request to this party.  Service has been
accepted by Norman H. Zivin of Cooper & Dunham, 1185 Avenue of the
Americas, New York, NY  10006.

                                Respectfully submitted,

                                John L. Welsh
                                Registration No. 33,621

AQUILINO & WELSH, P.C.
2121 Crystal Drive, Suite 503
Arlington, VA  22202
(703) 920-1122
Docket No. 1957.7.2

**JAR  0024**