UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JARROW FORMULAS, INC. ) | CIVIL ACTION NO. |
| ) | 3:01 CV 478 (AVC) |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| INTERNATIONAL NUTRITION COMPANY, ) | |
| et al., ) | |
| ) | AUGUST 31, 2005 |
| Defendants. ) | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO LIMIT THE TESTIMONY AT TRIAL OF NORMAN ZIVIN

Defendants International Nutrition Company ("INC"), Egbert Schwitters, Jack Masquelier, Norman H. Zivin, Integrated BioCeuticals, LLC ("IBC), Primary Source, LLC ("PS"), and Primary Services, Inc. ("PSI") respectfully submit this memorandum in opposition to Jarrow Formulas, Inc.'s ("JFI") Motion in Limine to Limit the Testimony at Trial of Norman Zivin dated August 10, 2005. Since, with one exception,[1] no evidence from Attorney Zivin was presented in connection with defendants' summary judgment motion dated July 18, 2005, the Court need not consider this motion in limine in order to rule on the summary judgment motion.

### BACKGROUND

On March 23, 2001, JFI filed a complaint against INC, Bert Schwitters, Dr. Masquelier, and Norman Zivin, alleging federal and state antitrust violations, federal and state unfair competition, vexatious litigation and tortious interference with advantageous business relations. Specifically, JFI's claims against Attorney Zivin allegedly arose from his representation of INC

---

[1] See Defendants' L. Civ. R. 56(a)(1) Statement ¶24, which summarizes Attorney Zivin's deposition testimony that a Rule 11 investigation was conducted prior to filing the underlying litigation. Zivin Depo. Tr. at 75.

**ORAL ARGUMENT IS REQUESTED**

CTDOCS:14744.1

as counsel in underlying infringement litigation brought by INC against a number of companies, including JFI.

On February 22, 2002, JFI conducted a full-day examination of Attorney Zivin. The non-confidential portion of the deposition transcript is attached hereto in its entirety as **Exhibit A**.

On August 23, 2002, Attorney Zivin moved for summary judgment, seeking dismissal of all counts asserted against him. At the same time, Attorney Zivin served a Rule 11 motion seeking sanctions against JFI for filing frivolous claims against him if JFI did not withdraw the claims pursuant to Rule 11's safe harbor provision.

On October 23, 2002, JFI served its opposition to the motion for summary judgment in which it opposed the entry of summary judgment only with respect to its vexatious litigation claim under Conn. Gen. Stat. § 52-568 (Count Five) and stated that "[a]fter reviewing discovery received to date, JFI has decided to withdraw certain of its claims as to Defendant Zivin." Despite JFI's professed decision to withdraw most of its claims against Attorney Zivin, on November 1, 2002, JFI filed an Amended Complaint, the truth of which was verified by JFI President Jarrow Rogovin, which retained all the previous factual allegations against Attorney Zivin but removed him as a defendant on all claims except the vexatious litigation claim. While maintaining only the vexatious litigation claim against Attorney Zivin, JFI nevertheless refused to agree to judgment in Attorney Zivin's favor on the other five claims it had withdrawn. Instead, on January 29, 2003, JFI sought leave to amend its complaint further to withdraw those five claims without prejudice.

On February 24, 2003, the Court granted Attorney Zivin's motion for summary judgment as to all counts except the vexatious litigation claim, and denied as moot JFI's motion to amend to withdraw claims against him.

CTDOCS:14744.1

2

**ARGUMENT**

JFI argues that Attorney Zivin "should be precluded from offering any testimony at trial beyond the facts to which he testified at his deposition." JFI Mem. at 5. For the reasons discussed below, JFI's requested limitations on Attorney Zivin's testimony are unreasonable and unfounded and are premature and impractical for the Court to rule upon at this time. Any objections JFI has can be more fairly and efficiently addressed later if there is need for a trial. Cf. Bell v. City of Miamisburg, 1992 U.S. Dist. LEXIS 22764, at *68-69 (S.D. Ohio Jan. 17, 1992) (denying motion in limine because "[i]n the absence of the particular questions to which Plaintiffs object and the context within which the questions will be asked, this Court cannot rule that all opinion testimony of lay witnesses must be excluded."). Accordingly, JFI's motion in limine regarding Attorney Zivin should be denied.

**I.    ATTORNEY ZIVIN IS A FACT AND LAY WITNESS**

JFI's argument that Attorney Zivin was not disclosed as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2) incorrectly assumes that he will be testifying as an expert. Rather, Attorney Zivin is a fact witness who may testify about his opinions and inferences as a lay witness.

The core allegations made by JFI focus on INC's alleged sham litigation in commencing and maintaining a patent and trademark infringement action against JFI and others in this Court and a patent infringement action against others in the Northern District of California. These allegations form the nucleus for JFI's federal and Connecticut antitrust claims (Counts 1 and 2), Connecticut Unfair Trade Practices Act ("CUTPA") claim (Count 3), Lanham Act claim (Count 4), Connecticut vexatious litigation claim (Count 5), and Connecticut tortious interference claim

(Count 6). See Plaintiff's Summary in the Joint Trial Memorandum dated January 7, 2005 at 5-11.

To succeed on any of these claims, therefore, Jarrow must prevail on the preliminary, fundamental issue of whether the underlying patent and trademark infringement litigation was "objectively baseless" under the sham litigation exception to the Noerr-Pennington doctrine[2] or, put another way, whether that litigation was commenced or maintained without probable cause. Only if it is determined that the underlying litigation was objectively baseless will JFI be permitted to present evidence of INC's subjective intent and motivation under the second prong of the test set forth in Professional Real Estate Investors, Inc. v. Columbia Pictures Indust., 508 U.S. 49, 60-61 (1993) ("PRE"). Furthermore, the second prong of the vexatious litigation statute permits treble damages if an action was commenced and prosecuted "(2) without probable cause, and with a malicious intent unjustly to vex and trouble" the plaintiff. Conn. Gen. Stat. § 52-568.

Clearly, then, JFI's own claims are focused on what occurred before the filing of the underlying litigation, the circumstances surrounding the filing, and what occurred during the pendency of the underlying litigation. Attorney Zivin has personal knowledge of all of these events and occurrences from his perspective as INC's lawyer and, therefore, is a fact witness in this case. For that matter, Marvin Gittes, Esq., Horphag's counsel in the underlying case, and Mark Giarratana, Esq., JFI's counsel in the underlying case and in the present case, are likewise fact witnesses from their perspectives as lawyers for defendants in the underlying case.

---

[2] Noerr-Pennington immunity also applies to JFI's state and common law causes of action, namely, CUTPA, vexatious litigation, and tortious interference with business relations that rely on allegations of sham litigation. Jarrow Formulas, Inc. v. International Nutrition Company, 175 F. Supp. 2d 296, 310 n.12 (D. Conn. 2001). To prove its Lanham Act claim, JFI must demonstrate bad faith under standards virtually identical to the PRE test. Zenith Electronics Corp. v. Touchsystems, Inc., 182 F.3d 1340, 1353 (Fed. Cir. 1999); Eastman Outdoors, Inc. v. Blackhawk Arrow Co., 329 F. Supp. 2d 955, 959-61 (E.D. Mich. 2004).

Attorney Zivin has practiced in the field of patent, trademark, and copyright law since 1968 and has represented INC in patent, trademark, and copyright law matters since 1990. Specifically, Attorney Zivin represented INC in its infringement case against JFI and others and in its infringement case brought in the Northern District of California. In addition, Attorney Zivin represented INC in the reexamination of the '360 patent at the USPTO. The very deposition questions posed by JFI's counsel and Attorney Zivin's answers demonstrate that his testimony may be pertinent and necessary to understanding what happened in the underlying litigation. Indeed, Mr. Rogovin has admitted that Jarrow's claims are directed to Attorney Zivin's activities as a lawyer.[3] Although Attorney Zivin's recitation of the facts involving the various cases might describe certain legal matters, such factual testimony is not thereby converted into expert testimony. Moreover, defendants do not plan to ask Attorney Zivin hypothetical questions.

As indicated in the Joint Trial Memorandum, if trial testimony is required, Attorney Zivin would testify both as a defendant in this case and as INC's attorney during the underlying infringement litigation. As disclosed on page 20 of the Joint Trial Memorandum dated January 7, 2005, Attorney Zivin possesses direct, personal knowledge of (1) the underlying action; (2) the '360 patent; (3) re-examination of the '360 patent; (4) litigation in connection with the '360 patent; (5) communications with Mr. Jarrow Rogovin; (6) prior action by Horphag under the '360 patent; (7) ownership of the '360 patent; (8) licensing of the '360 patent; (9) cease and

---

[3] Mr. Rogovin testified as follows:

    Q:    Do you have any claims in this case against Norman Zivin for doing anything other than serving as a lawyer?

    A:    It's what he did as a lawyer.

Transcript of Jarrow Rogovin dated March 15, 2002, at 393, a copy of which is attached as **Exhibit B**.

desist letters; (10) patent and trademark law. Attorney Zivin testified about many of these topics, including the patent laws, in his deposition testimony in response to questions from plaintiff's counsel. Of course, JFI's counsel had his own agenda in the deposition, and Attorney Zivin certainly is free to testify in his and the other defendants' defense about facts and issues other than those JFI thought to ask about in his deposition.

In the course of Attorney Zivin's factual testimony, he may also provide lay opinions and inferences. Rule 701 of the Federal Rules of Evidence[4] permits lay witness testimony as to conclusions based upon the witness' perceptions where the conclusions would aid the jury in understanding the witness' testimony. See, e.g., Brady v. Chemical Constr. Corp., 740 F.2d 195, 200 (2d Cir. 1984); Fireman's Fund Ins. Co. v. Alaskan Pride Partnership, 106 F.3d 1465, 1468 (9th Cir. 1997); Weese v. Schukman, 98 F.3d 542, 550 (10th Cir. 1996); Newport Electronics, Inc. v. Newport Corp., 157 F. Supp. 2d 202, 208-09 (D. Conn. 2001) (Hall, J.), aff'd, 56 Fed. Appx. 63 (2d Cir. 2003).

For example, in Newport Electronics, the defendant moved to strike declarations of plaintiff's employees on the ground that they constituted expert testimony under Rule 702. 157 F. Supp. 2d at 208. The court declined to weigh the reliability of these declarations under the standards of Rule 702 because these witnesses were not offered as experts:

> As lay witnesses, the court finds their declarations admissible. Hollander, the president of Newport Electronics, is able to testify to what products his company sells and what he understood Newport Corporation was selling. In addition, he can testify as to actual confusion that he and his company have experienced as such information goes to his state of mind regarding his understanding of possible infringement of his company's marks. Such testimony stems from his own experience and is relevant to the issue of when Newport Electronics learned of the

---

[4] Federal Rule of Evidence 701 provides that lay witnesses can testify about "opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witnesses' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

> possible infringement and any actual confusion that exists. Drucker can testify as to his involvement with the patent registrations and about discussions with Newport Corporation about the French subsidiary. Drucker can certainly state that the meeting with Newport Corporation was the first time that "we realized a serious infringement problem had developed. . ." (Drucker Decl. P4), if it is offered, as the court reads it, to show his state of mind at the time and is not offered for the factual assertion that there was an infringement problem.

Id. at 208-09.

In the patent context in particular, courts have concluded that non-expert opinion testimony based on first-hand experience is admissible, even where such testimony touches on technical matters or where the witness' understanding is rooted in a specialized field. See Union Pacific Resources Co. v. Chesapeake Energy Corp., 236 F.3d 684, 692-93 (Fed. Cir. 2001) (rejecting argument that Rule 26(a)(2) disclosure is required; testimony of witnesses with "extensive experience in the oil drilling industry . . . based on their own personal experiences" permitted under Rule 701); DeGraffenried v. United States, 2 Ct. Cl. 640, 643 (Ct. Cl. 1983) ("Because he is technically conversant with the factual subject matter of this suit, [the patentee's] opinions and inferences regarding his patent, the prior art, and the alleged infringement would assist this court in developing a clear understanding of the facts in issue."); Braun Corp. v. Maxon Lift Corp., 282 F. Supp. 2d 931, 933-34 (D. Ind. 2003) ("Mr. Wolff's extensive personal experience in the wheelchair lift field gives him specialized knowledge to support his testimony about his patented invention and Maxon's accused product and how it works. . . . This specialized knowledge of wheelchair lift technology and personal examination and study of Maxon's accused device permit him to testify on the structure and function of the patented invention, Maxon's accused wheelchair lift, and other technical issues.").

Additionally, JFI's argument that Attorney Zivin cannot testify because he was not disclosed as an expert reflects a misreading of Fed. R. Civ. P. 26(a)(2)(B), which provides in

pertinent part that an expert "disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness." Since Attorney Zivin is a defendant in this case, has not been "retained or specially employed to provide expert testimony in the case," and is not an employee of any party, the defendants were not required to provide JFI with an expert report disclosing Attorney Zivin as an expert in order to permit him to testify.

In any event, even if Attorney Zivin were somehow deemed an expert who should have been disclosed at least under Rule 26(a)(2)(A), JFI has not been prejudiced at all. The purpose of the disclosure requirement of Rule 26(a)(2)(A) "is to give parties a reasonable opportunity to prepare an effective cross-examination of the opposing parties' expert witnesses and, if necessary, arrange for testimony from other experts." Byrne v. Gracious Living Industries, 2003 WL 446474 (S.D.N.Y. February 25, 2003), citing 6 Moore's Federal Practice ¶ 26.23[2][a][i] (3d ed. 2000). See also Rule 26(a)(2), 1993 advisory committee note. The court in Byrne found that "inasmuch as defendants are well aware of the identity of [the undisclosed expert] and claim no prejudice from any delay in its disclosure, any failure to comply strictly with Rule 26(a)(2)(A) was harmless and will not result in preclusion." Byrne, 2003 WL 446474 at * 2. See also Brandon v. Village of Maywood, 179 F. Supp. 2d 847, 860 (N.D. Ill. 2001) (failure to formally disclose expert may be harmless when defendants took the witness' deposition anyway and "had plenty of time after that to retain an opposing expert or seek further discovery").

In the present case, JFI took Attorney Zivin's deposition on February 22, 2002. JFI's counsel asked Attorney Zivin every imaginable question and cannot now argue that it has been prejudiced by a failure to formally disclose Attorney Zivin as an "expert." JFI had the

opportunity to prepare an effective cross-examination of Attorney Zivin and could have arranged for additional fact or expert witnesses after his deposition.

II. **ATTORNEY ZIVIN CANNOT BE PRECLUDED FROM TESTIFYING FOR NOT DISCLOSING ATTORNEY-CLIENT COMMUNICATIONS**

JFI claims that Attorney Zivin engaged in vexatious litigation. JFI's vexatious litigation claim is preempted by federal patent law and Noerr-Pennington immunity unless JFI presents clear and convincing evidence that the underlying patent litigation was "objectively baseless" and brought without probable cause under the stringent state law test for a plaintiff asserting a vexatious litigation claim against an attorney. Falls Church Grp., Ltd. v. Tyler, Cooper and Alcorn, LLP, 89 Conn. App. 459 (2005). In Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1377 (Fed. Cir. 2004), the Federal Circuit stated:

> Our decision to permit state-law tort liability for only objectively baseless allegations of infringement rests on both federal preemption and the First Amendment. The federal patent laws preempt state laws that impose tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation. In addition, the same First Amendment policy reasons that justify the extension of Noerr immunity to pre-litigation conduct in the context of federal antitrust law apply equally in the context of state-law tort claims.

JFI, however, has no witness to testify that INC's infringement litigation was baseless or lacked probable cause. JFI cannot use Attorney Zivin's refusal to answer inappropriate questions as proof to try to meet its burden of coming forward with clear and convincing evidence that the underlying action was baseless. In In Re: Terazosin Hydrochloride Antitrust Litigation, 335 F. Supp. 2d 1336, 1366-67 (D. Fla. 2004), the district court, applying Federal Circuit law to allegations of sham patent litigation, reasoned:

> Plaintiffs seek to meet their burden by raising a negative inference from Abbott's invocation of the attorney-client privilege regarding the information it had before filing the suits. However, no such negative inference can arise from the assertion of the privilege and, even if it did, such a negative inference cannot substitute for

CTDOCS:14744.1                              9

the requisite clear and affirmative evidence of bad faith. See, e.g., Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 225-26 (2d Cir. 1999) ("we are particularly troubled by the court's reliance on Nabisco's assertion of the attorney-client privilege"). . . .

In Attorney Zivin's deposition, JFI's counsel repeatedly asked questions that called for privileged information. For example, most of the questions from Attorney Zivin's deposition that JFI relies on, Pl. Mem. 11, openly ask for him to reveal attorney-client communications. Now, JFI unfairly is trying to use defendants' appropriate invocation of privilege as grounds for sweeping preclusion, by arguing that "Zivin should be precluded from testifying or providing evidence beyond the limited testimony provided at his deposition." JFI Mem. at 11. The Court should reject this tactic.

During his deposition, Attorney Zivin refused to answer inappropriate questions that asked for his beliefs and understandings (attorney work product) or attorney-client privileged communications. For example:

- "Did there come a time when you understood that INC believed that its agreement with Horphag over the ownership of the 360 patent was no longer effective, that it had lapsed?" (Depo. at 73)

- "When you reviewed [the "Confirmatory Assignment"], what was your understanding of the effect and purpose of that document?" (Depo. at 99)

- "Do you believe the fact that you recorded this document had any legal effect on INC's position that it was an owner, at least a one-half owner, of the '360 patent?" (Depo. at 115)

- "Do you believe that sentence is an accurate summary of U.S. patent law?" (Depo. at 129)

- "Why did INC not bring Horphag in as an involuntary plaintiff?" (Depo. at 92)

- "Do you have any basis to believe that Dr. Masquelier understood what this document [confirmatory assignment] – what the effect in terms of this document were?" (Depo. at 110)

- "Did the recordation of those assignments have any legal effect, in any way strengthen INC's claims that it was owner of at least a one-half interest in the '360 patent?" (Depo. at 118)

- "What did Mr. Schwitters tell you [that Attorney] Sapone told him?" (Depo. at 132)

- "Did you ever discuss with Mr. Schwitters his use in the press release of the term 'INC is a rightful owner' without qualifying the percentage of ownership he had?" (Depo. at 151-52)

- "Why did you decide not to submit the document containing Mr. Rogovin's analysis of the other prior art references?" (Depo. at 171)

- "Did you ever have any – did anybody ever tell you that they wanted that suit started prior to the middle of March of that year?" (Depo. at 185)

In an attempt to reach a balance between divulging attorney work product and attorney-client communications (which was not his privilege to waive but rather INC's), on one hand, and providing answers to deposition questions, on the other hand, Attorney Zivin referred repeatedly throughout the deposition to the briefs in the underlying litigation which were of public record and which provided the answers to JFI's questions about the bases for the underlying litigation. See, e.g., Depo. at 87-95, 100-05.

For example:

Q . . . First, what was the basis for the allegation [in the Complaint in the underlying litigation] that defendant Horphag continues to own a one-half interest in the patent?

       \*       \*       \*

  A  Without waiving any attorney-client or work product privileges, I refer to the responses to the summary judgment motion and the briefs on appeal, and I refer to the 360 patent which on its face states that there are joint owners, Horphag and SCIPA.

Depo. 91-92.

  The rationale to this approach was explained during the deposition. Depo. 83-87. Nevertheless, at no point did JFI's counsel follow up on Attorney Zivin's references to the briefs from the underlying litigation by marking them as exhibits and questioning him further on the briefs even though JFI had all the briefs. Thus, Attorney Zivin appropriately and fully answered JFI's counsel's questions about the bases for actions and positions taken in the underlying litigation. JFI cannot now exploit its own counsel's failure to ask the right questions at the deposition (or perhaps his intentional strategy not to inquire further) to somehow limit Attorney Zivin's testimony at trial.

  Attorney Zivin refused to disclose privileged work product or communications in his deposition and has no intention of doing so if this case goes to trial. Thus, the cases cited by JFI, in which parties or witnesses sought to use at trial privileged information withheld during discovery, are inapplicable. Furthermore, simply because JFI was unhappy with some of the answers to its questions does not mean that the answers, or other related testimony, is inadmissible.

## CONCLUSION

For the foregoing reasons, the Court should deny JFI's motion in limine.

> DEFENDANTS,
> INTERNATIONAL NUTRITION COMPANY,
> EGBERT SCHWITTERS, NORMAN H. ZIVIN,
> JACK MASQUELIER, INTEGRATED
> BIOCEUTICALS, LLC, PRIMARY SOURCE,
> LLC, AND PRIMARY SERVICES, INC.
>
> By: /s/ Richard S. Order
>     RICHARD S. ORDER, ESQ.
>     Federal Bar No. ct02761
>     E-mail: rso@avhlaw.com
>     ERIC D. BEAL, ESQ.
>     Federal Bar No. ct23167
>     E-mail: exb@avhlaw.com
>     Axinn, Veltrop & Harkrider LLP
>     90 State House Square
>     Hartford, CT 06103-3702
>     Telephone:   860-275-8100
>     Facsimile:    860-275-8101

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing has been served by U.S. mail, postage prepaid, this 31st day of August, 2005 to:

Eric W. Wiechmann Esq.
Mark D. Giarratana, Esq.
Alexandra B. Stevens, Esq.
Eric E. Grondahl, Esq.
McCarter & English
CityPlace I
185 Asylum Street
Hartford, CT 06103

/s/    Eric D. Beal
Eric D. Beal
AXINN, VELTROP & HARKRIDER LLP