UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JARROW FORMULAS, INC., | ) | CIVIL ACTION NO. |
| | ) | 3:01 CV 478 (AVC) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL NUTRITION COMPANY, et al., | ) ) | |
| | ) | |
| Defendants. | ) | AUGUST 31, 2005 |

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE REGARDING PRIOR LAWSUITS AND STATEMENTS

Defendants International Nutrition Company ("INC"), Egbert Schwitters, Jack Masquelier, Norman H. Zivin, Integrated BioCeuticals, LLC ("IBC"), Primary Source, LLC ("PS"), and Primary Services, Inc. ("PSI") respectfully submit this memorandum of law in opposition to plaintiff Jarrow Formulas, Inc.'s ("JFI") motion in limine dated August 10, 2005 to exclude certain evidence at trial regarding (1) prior lawsuits to which JFI was a party, (2) statements or communication made by JFI President Jarrow Rogovin ("Rogovin") connected with those prior lawsuits, and (3) events connected with Rogovin's attendance at a trade show in Baltimore, Maryland in 1996.

Plaintiff's motion should be denied for a number of reasons. First, JFI's routine practice of threatening opposing counsel and then initiating civil actions against adverse litigation parties and their lawyers is admissible under Fed. R. Evid. 406. Second, JFI's previous litigation establishes a pattern of very similar, unsuccessful, and fraudulent claims, admissible under Fed. R. Evid. 404(b) and Outley v. City of New York, 837 F.2d 587 (2d Cir.

**ORAL ARGUMENT IS REQUESTED**

CTDOCS:14781.1

1988), and also supports defendants' affirmative defense of unclean hands. Third, JFI's litigation against Attorney Cynthia Harf is relevant and admissible for the additional reason that its existence was communicated by JFI as a threat to Attorney Zivin in the course of the underlying litigation, establishing a critical date for defendants' affirmative defenses of statute of limitations and laches. Fourth, JFI's litigation against Sandra Hogan LaMarche and her attorney, Mark Brutzkus, Esq., is admissible to impeach Rogovin's credibility, as his characterization of the dispute under oath during his January 29, 2002 deposition was at least incomplete, if not plainly false. Fifth, in the Joint Trial Memorandum, defendants indicated that certain witnesses might testify about Rogovin's misconduct at the Baltimore trade show only to counter evidence about that trade show that JFI indicated it would be presenting. Since JFI now contends that the Baltimore trade show is irrelevant and presumably will not itself offer any evidence about that trade show, defendants have no objection to preclusion of any evidence from any party regarding the Baltimore trade show.[1]

## ARGUMENT

I. **EVIDENCE OF PREVIOUS LAWSUITS IN WHICH JFI WAS INVOLVED IS RELEVANT AND ADMISSIBLE AS TO JFI AND ROGOVIN'S ROUTINE PRACTICE, HABIT, AND TRUTHFULNESS, AND AS TO DEFENDANTS' DEFENSES OF STATUTE OF LIMITATIONS, LACHES, AND UNCLEAN HANDS**

Plaintiff has moved to exclude reference to previous lawsuits in which it was involved. Such evidence should be admitted because it is relevant and its relevance would not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The evidence should be generally admissible under both Fed. R. Evid.

---

[1] Since no evidence about JFI's previous lawsuits or the Baltimore trade show was presented in connection with defendants' summary judgment motion dated July 18, 2005, the Court need not consider this motion in limine in order to rule on the summary judgment motion.

2

406 as routine practice evidence and Fed. R. Evid. 404(b) as evidence of motive and intent. In addition to these rules, specific instances of contested evidence should also be admitted for other purposes.

### A. JFI's Routine Practice of Filing Meritless Malicious Prosecution Actions Against Litigation Adversaries and Their Attorneys

Fed. R. Evid. 406 provides that "Evidence of . . . the routine practice of an organization . . . is relevant to prove that the conduct of the . . . organization on a particular occasion was in conformity with the . . . routine practice." Evidence of a routine practice may be admitted if the practice is established by "adequacy of sampling and uniformity of response." United States Football League v. National Football League, 842 F.2d 1335, 1373 (2d Cir. 1988). The record in this case establishes such a uniformity of response, certainly greater than the "three or four times over a 20-year period" in United States Football League.

Between 1997 and 2001, a much shorter period of time than in United States Football League and before commencing the present action, JFI filed four separate actions against parties that had sued JFI and against the attorneys for such parties. In this action, JFI has sued INC, a party that had sued JFI in the underlying infringement litigation, and Norman H. Zivin, Esq., INC's attorney in that case, along with Bert Schwitters of INC, and others.

The other four cases, against Attorneys Cynthia Harf, William Verick, Nicholas Browning, and Mark Brutzkus and their clients, were strikingly uniform and similar to the current case. In three of the cases, JFI alleged malicious prosecution by the defendants of earlier cases they had brought against JFI. See Rogovin Dep. Tr. at 48 (Harf), 74 (Browning), 78 (Brutzkus). A copy of all cited pages from the transcript of the deposition of JFI President Jarrow Rogovin is attached as **Exhibit A**. In the fourth case (Verick), JFI argued that a California Proposition 65 notice was "a functional equivalent of a lawsuit" and sued the

3

CTDOCS:14781.1

attorney who served that notice. Id. at 69. JFI ultimately lost all four cases. See id. at 50 (judgment for Harf), 70 (judgment for Verick), 75 (judgment for Browning); Jarrow Formulas, Inc. v. LaMarche, 118 Cal. Rptr. 2d 388, 405 (Cal. Ct. App. 2002), aff'd, 74 P.3d 737, 740 (Cal. 2003) (judgment for Brutzkus).

From 1997 to 2001, according to Rogovin's own deposition testimony, JFI either threatened to sue or did sue many attorneys representing parties asserting legal claims against JFI. Since the sample size is certainly adequate and there was a uniformity of response, the standard of United States Football League has been met. JFI has demonstrated a routine practice and litigation tactic of suing adverse parties and attorneys in retaliation for filing claims against JFI. Under Fed. R. Evid. 406, therefore, evidence of the previous lawsuits is relevant and admissible to demonstrate JFI's routine practice of threatening to sue opposing parties and their counsel and then, as explained below, filing meritless cases simply to harass them.

> **B.** **JFI's Previous Retaliatory Litigation Reveals a Pattern of Very Similar, Unsuccessful, and Fraudulent Claims Admissible Under Fed. R. Evid. 404(b) and in Support of Defendants' Affirmative Defense of Unclean Hands**

Rogovin's deposition testimony reveals JFI's pattern of initiating retaliatory actions against adverse litigation parties and the attorneys who represent them. This fraudulent pattern was set forth in detail by the California Court of Appeal in a decision in JFI's malicious prosecution claim against Susan Hogan LaMarche and her attorney, Mark Brutzkus, Esq., in which JFI was ordered to pay attorney's fees under the California anti-SLAPP statute. Jarrow Formulas, Inc. v. LaMarche, 118 Cal. Rptr. 2d 388, 405 (Cal. Ct. App. 2002) (attached as **Exhibit B**), aff'd, 74 P.3d 737, 747 (Cal. 2003) (attached as **Exhibit C**), award of $120,903 in attorney's fees on remand aff'd, No. B173168, 2005 Cal. App. Unpub. LEXIS 1824, at *9

4

(Cal. Ct. App. Mar. 2, 2005) (attached as **Exhibit D**). The court of appeal described how outrageous it found Rogovin and JFI's conduct. 118 Cal. Rptr. 2d at 392-98. In particular, the court stated:

> In July 1997, Mr. Harris [cinematographer who worked with LaMarche] received a telephone call from Mr. Rogovin and Jarrow's attorney, Neal Wiener . . . . Mr. Rogovin was yelling about how he was going to ruin Ms. LaMarche and her business reputation. Mr. Rogovin stated that Ms. LaMarche had ruined a deal for him and he was "going to 'finish [her].'" Mr. Harris indicated that he felt because the telephone call was so insulting, rude, and unprofessional to Ms. LaMarche he terminated it. Mr. Wiener and Mr. Rogovin called right back. Mr. Rogovin continued to scream and make disparaging statements about Ms. LaMarche. Mr. Harris was told that he would be subpoenaed. Mr. Rogovin wanted Mr. Harris to sign a declaration concerning the Merical video. **Mr. Harris was threatened that, if he did not sign such a declaration, Jarrow would sue him.** Mr. Rogovin stated that Ms. LaMarche was the most unprofessional and crooked person "'he had ever done business with.'" Mr. Rogovin called her a "snake" and indicated that she "'ripped everybody off.'" Mr. Rogovin threatened to sue Ms. LaMarche "'so heavy that she wouldn't even have a chance to go bankrupt.'" Mr. Harris subsequently received a letter and declaration to be signed from Mr. Wiener. Mr. Harris did not sign the declaration. The declaration, which was attached as an exhibit, in essence, denied that there was an agreement with Merical to produce the video.

Id. at 394-95 (emphasis added) (detailing an effort by Rogovin and JFI to defeat LaMarche's claim of slander of title and interference with economic advantage).

\*          \*          \*

> Ms. LaMarche wanted to meet with Mr. Rogovin in order to "work out" their disagreement. In the conversation, Mr. Rogovin refused to meet in person with her and stated to Ms. LaMarche, "I hate your fucking guts, you bitch." Mr. Rogovin also called Ms. LaMarche a "pathological liar."

Id. at 396 (from a transcript of a phone conversation between Rogovin and LaMarche in October 1996).

\*          \*          \*

> "[D]uring a mediation, when I mentioned that Sandra Hogan LaMarche had a potential copyright infringement action against JFI, Mr. Rogovin began screaming

5

CTDOCS:14781.1

  and yelling at me.  He attempted to leap over the table to physically attack me.
  The mediator was forced to intervene."

Id. at 396 (Attorney Brutzkus describing events at a mediation during the underlying

litigation).

        &ast;       &ast;       &ast;

  Mr. Phillips wrote to Jarrow regarding his representation of Ms. LaMarche for her
  rights against it for copyright infringement.  Mr. Rogovin telephoned Mr. Phillips
  and called Ms. LaMarche a "'pathological liar.'"  During the conversation, Mr.
  Rogovin threatened to sue Mr. Phillips and anyone else involved for malicious
  prosecution should a copyright infringement action be filed.  Mr. Phillips
  declared: "Mr. Rogovin unequivocally stated that he would make my life
  miserable for years to come if I prosecuted a claim against him on behalf of Ms.
  LaMarche."

Id. at 396-97 (describing October 1999 communications between Rogovin and Attorney Gary

Phillips, who counseled LaMarche regarding a potential copyright claim).

        &ast;       &ast;       &ast;

  "[B]e assured that I will sue you as I have sued two attorneys in the past.  **The
  outcome of a malicious prosecution suit is less important to me than putting
  you through the expense of being a defendant . . . ."**

Id. at 397 (emphasis added) (letter from Rogovin to Attorney Phillips).

        &ast;       &ast;       &ast;

  "What I said was that people who file bullshit suits—AND THEIR LAWYERS—
  should know what it is to have their lives made miserable by crap litigation just as
  mine has been."

Id. (capitalization in original) (excerpt from a second letter from Rogovin to Phillips).

        &ast;       &ast;       &ast;

  "After a lengthy discussion with [LaMarche], I elected to discontinue my
  representation of her based principally on my personal preference not to get
  involved with someone possessing the antisocial and irresponsible characteristics
  exhibited by Mr. Rogovin, and who specifically had threatened to make my life
  miserable for years to come."

6

CTDOCS:14781.1

Id. (Attorney Phillips's testimony regarding his decision to terminate his representation of LaMarche).

JFI cites Outley v. City of New York, 837 F.2d 587 (2d Cir. 1988), as support for its motion in limine. The Second Circuit in Outley, however, recognized the long established proposition that there is no undue prejudice to a chronic litigant of admitting evidence of previous litigation if "the previous claims made by a party are shown to have been fraudulent." Id. at 592. Given JFI's history of fraudulent conduct, evidence of JFI's previous lawsuits is relevant and admissible and not unduly prejudicial. See Outley at 594 (noting a distinction "where a party has filed a series of fraudulent lawsuits and there is substantial evidence that the prior lawsuits amounted to a fraudulent pattern"); 1 John W. Strong, McCormick on Evidence § 196, at 831-32 (4th ed. 1992) ("If evidence reveals that a party has made previous, very similar claims and that these claims were fraudulent, then almost universally the evidence will be admissible.").

In this case, Rogovin and JFI's conduct has been a continuation of their pattern of fraudulent threats and lawsuits against opposing parties and their counsel. Just as Rogovin did in his letters to and conversations with Attorney Phillips and other attorneys whom JFI eventually sued, Rogovin made clear threats to Attorney Zivin as early as April 5, 1996, less than a month after the filing of the underlying lawsuit. On that date, responding to Attorney Zivin's indication that he would only communicate with Rogovin through counsel, Rogovin wrote, "You answer or else I'll take you to court on bad faith." Rogovin facsimile to Attorney Zivin, April 5, 1996 (Def. Ex. 129) (attached as **Exhibit E**).

Rogovin further threatened Attorney Zivin in a series of voice mail messages left for Attorney Zivin that very evening:

> Now you two lawyers get out of my face! Because if you don't I'm going to sue you two. You understand that! You hold me responsible for my actions, I hold you responsible for your actions. I'm sick and tired of lawyers, you people are scum! You're liars!
>
> You people think you can just go and drop lawsuits on people's desks and walk away and then you're immune. You've [sic] full of it. You're not immune. The buck stops here on my desk. Any lawyer wants to sue me they better be righteous and not full of it like their clients are. And I'll tell you something about your clients, ok. They're running around the country defaming all the defendants in this suit. That's right your clients are defaming everybody. So you tell your clients to stop behaving rudely.
>
>    *     *     *
>
> So you people better get yourselves under control and you cut out these phony lawsuits, these phony claims, defaming people in the marketplace, because Jarrow Formulas isn't going to put up with it.
>
>    *     *     *
>
> This is a fraud. This is a scam lawsuit. You're liable to me for my time.
>
>    *     *     *
>
> No, no games about have your lawyer call me. No you call me, you deal with me, you look, you talk to me straight, like a mensch. You tell me what's going on here. You understand me?

Transcript of Rogovin's voicemail messages to Attorney Zivin on April 5, 1996 (Def. Ex. 130) (attached as **Exhibit F**).

Subsequently, on August 28, 1996, JFI asserted wide-ranging and numerous threats to initiate the current litigation in a lengthy letter to Attorney Zivin and Attorney Jonathan Flatow:

> [T]he risk to plaintiff (and his counsel) of being sued for malicious prosecution is rather evident.
>
>    *     *     *
>
> Mr. Flatow and Mr. Zivin, read this section carefully. I'm not bluffing. Call my lawyers, Mr. Neal T. Wiener, 310/276-2889 or Mr. P. Scott Polisky,

212/206-7283, and see whether I bluff about such things. In the end, I'll go after you: Not just Rule 11 but a suit for malicious prosecution and abuse of process. I think lawyers who act in bad faith ought to be held liable for their conduct. It's called quid pro quo. If more litigants were like me, lawyers would be a lot more careful. And don't take this as a challenge to ignore me and think you'll walk away afterwards: You won't: I'll sue you along with Schwitters, Masquelier and probably PSI. Mr. Zivin already hung up the phone on Mr. Polisky stating, "I won't discuss the merits of this case on the phone with you. Just answer the complaint." I really do sue lawyers who act in bad faith. The detail of this mailing should give you pause to consider that since I'm willing to personally prepare such an in-depth analysis, I certainly would not hesitate to sue both of you.

Further, the cavalier attitude and bad faith of Bert Schwitters is evident from his testimony in deposition wherein he isn't the sort of person to let litigation disturb him. This coupled with his evasion of service and refusal to answer Horphag's complaint in Bordeaux betray Schwitters to be a scofflaw and a bully. If JFI sues him, he will be summoned by publication to Washington, D.C., if necessary and then after judgment I will seek assets in the form of any shipment or earned royalty in the U.S. **Schwitters will not succeed in his gamesmanship with Jarrow Formulas. He will pay his bills or be driven out of business in the United States.**

\*       \*       \*

This misrepresentation was fraudulent and shall become one basis for JFI claiming costs, legal fees and other damages, and it is placing INC's licensees at risk of being sued by JFI.

\*       \*       \*

I informed Mr. LeFebvre that I could—and would—sue PSI under the Lanham Act if compelled to do so. . . .

\*       \*       \*

Zivin's position that PSI is not his client is likewise questionable: There is at least an agency relationship between INC and PSI, and Zivin's latter day disavowal of PSI as a client will do little more than help fuel a malicious prosecution suit against him.

\*       \*       \*

Additionally, the patent itself is fraudulent and will constitute the basis of an additional claim for unfair competition, particularly against Jack Masquelier.

9

        \*        \*        \*

> Masquelier, Schwitters, Zivin and PSI are deemed to by Jarrow Formulas to have conspired to file a meritless and malicious suit while your clients have conspired to violate the Lanham Act if not RICO as well. Flatow's exposure, if he continues to participate in this farce, will be abuse of process.

        \*        \*        \*

> Though JFI would prefer to avoid further litigation, we will not shrink from taking rigorous action. The length, vigor and detail of this presentation should convince you of Jarrow Formula's [*sic*] earnestness in following through. . . .

        \*        \*        \*

> If JFI is not dismissed within ten (10) days of the date hereof, JFI will sue INC and its cohorts for Lanham Act violations, file motions for summary judgment to invalidate the patent and trademark, and then sue at the conclusion all parties involved—including plaintiff's lawyers and Jack Masquelier—for conspiracy, malicious prosecution, and abuse of process.

        \*        \*        \*

> Don't push me gentlemen. I push back.

Rogovin letter to Attorney Zivin and Jonathan A. Flatow, Esq. dated August 28, 1996, at 2, 5, 7, 9, 10, 11, 15, 16, 17 (Def. Ex. 144) (attached as **Exhibit G**).

Rogovin's demands continued in a fax a month later:

> I am returning from abroad 7 October. Shortly afterward, I will direct suit be filed against you, Schwitters, INC, PSI and Masquelier if this obnoxious little farce isn't over.

Rogovin facsimile to Attorney Zivin dated September 26, 1996 (Def. Ex. 150) (attached as **Exhibit H**).

Rogovin's threats even extended to JFI's co-defendants in the underlying case, as he vehemently contested their litigation strategies. In a communication with Henkel Corp., the

United States distributor for Horphag, he takes the opportunity to call Attorney Zivin a "pathological liar," utilizing the same language he used against Sandra Hogan LaMarche (Jarrow Formulas Inc. v. LaMarche, 118 Cal. Rptr. 2d at 396):

> [O]nly Zivin (who is, in my experience in this case, a compulsive if not **pathological liar**) is going to file a response.
>
>     *        *        *
>
> We want our legal fees back and we want to sue the hell out of Schwitters and Zivin for malicious prosecution and Masquelier for inequitable conduct by lying to the patent office when he applied for the 360—and then conspiring with Schwitters and Zivin to concoct this disgusting farce.

Rogovin letter to Ken Fox of Henkel Corp. dated February 20, 1997 (Def. Ex. 185) (attached as **Exhibit I**) (emphasis added).

JFI publicized its intention to undertake the current litigation in an industry trade magazine in July 1997:

> Jarrow Formulas intends to sue the parties responsible for this meritless suit, including their attorney Norman H. Zivin, for malicious prosecution and abuse of process.

Rogovin's letter to the editor published in *Health Foods Business* magazine, July 1997 (Def. Ex. 198) (attached as **Exhibit J**).

Furthermore, in a letter dated February 4, 1998 to Attorney Zivin, a copy of which is attached as **Exhibit K**, JFI, through Rogovin, again threatened to institute the current litigation in an effort to force withdrawal of the underlying suit:

> Enclosed is a copy of the lawsuit we filed against Cynthia Harf, Esq. for malicious prosecution. Harf was served on January 12. She too considered Jarrow's threats 'hollow.' To quote Bob Dylan, 'Will they ever learn?'"

Defendants intend to demonstrate that JFI's previous claims were fraudulent. The LaMarche decisions expose JFI and Rogovin's sham litigation techniques, and the evidence JFI

11

now seeks to exclude parallels its actions, through Rogovin, in this case. Rogovin admitted in his deposition that this case is the fifth time JFI has responded to a lawsuit or legal challenge by suing the adverse party and its attorney for bringing the action. Rogovin Dep. Tr. at 78-79. Not one of JFI's four previous suits has been successful. Id. at 50 (judgment for Harf), 70 (judgment for Verick), 75 (judgment for Browning); 74 P.3d at 740 (judgment for Brutzkus). The attached decisions in the LaMarche case precisely illustrate why JFI has continued to lose these suits—JFI and Rogovin have systematically engaged in outrageous and fraudulent conduct to economically punish parties with whom it has disagreements and discourage them from exercising their rights to seek redress.

JFI and Rogovin have duplicated this conduct here, vehemently threatening to sue the defendants since April 1996, impugning the character of adverse parties and their counsel on multiple occasions during the underlying litigation, directly and repeatedly threatening and berating opposing counsel in an effort to earn a dismissal, and retaliating with a sham action against all persons whom Rogovin believed to have aggrieved JFI or him personally. As a result, evidence of JFI and Rogovin's conduct regarding other lawsuits should be admissible.[2]

---

[2] JFI is requesting equitable relief. Compl., Prayer for Relief ¶¶ 8-9. All defendants have asserted the affirmative defense of unclean hands. INC's Answer, Affirmative Defense No. 2; Integrated BioCeuticals' Answer, Affirmative Defense No. 2; Primary Source LLC's Answer, Affirmative Defense No. 2; Primary Services, Inc.'s Answer, Affirmative Defense No. 2; Zivin's Answer, Affirmative Defense No. 3; Masquelier's Answer, Affirmative Defense No. 4; Schwitters' Answer, Affirmative Defense No. 2. The doctrine of unclean hands provides that "the equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abettor of iniquity." PenneCom B.V. v. Merrill Lynch & Co., 372 F.3d 488, 493 (2d Cir. 2004) (quoting Bein v. Heath, 47 U.S. 228, 247 (1848)). Defendants are entitled to present evidence of JFI's fundamentally unclean hands through its pattern of threatening and filing meritless lawsuits in an attempt to bully or cause financial hardship to its adversaries and their counsel.

C. **Evidence of JFI's Previous Litigation Against Attorney Harf Is Relevant and Admissible Also Because Rogovin Communicated That Lawsuit to Attorney Zivin During the Underlying Infringement Case and That Communication Helps Prove Defendants' Affirmative Defenses of Statute of Limitations and Laches**

As explained in Point I(B), above, Rogovin threatened Attorney Zivin with this lawsuit on multiple occasions between April 5, 1996 (the date of his initial fax and telephone threats of litigation) and at least until February 4, 1998, when he sent a letter (Exhibit K) to Attorney Zivin transmitting a copy of JFI's Complaint against Attorney Cynthia Harf and her client in an obvious attempt to show Attorney Zivin that JFI and Rogovin follow through with their threats to sue opposing counsel:

> Your above-referenced letter states, *inter alia*, "[Y]our client's [Jarrow Formulas] repetitive, hollow threats and spurious allegations do not provide a climate for any meaningful dialogue."
>
> Enclosed is a copy of the lawsuit we filed against Cynthia Harf, Esq. for malicious prosecution. Harf was served on January 12. She too considered Jarrow's threats "hollow." To quote Bob Dylan, "When will they ever learn?"

The dates of these communications establish that Rogovin was aware of the facts on which JFI has based its claims in this case as early as April 5, 1996 and no later than February 4, 1998. JFI repeatedly threatened to file the current litigation and communicated the type of action it intended to bring. All the communications described above and, more particularly, Rogovin's letter of February 4, 1998 transmitting JFI's Complaint against Attorney Harf, establish JFI's intention to sue as of the dates on which they were made, and defendants are entitled to admit such communications to support their defenses that JFI's delay in bringing the current action bars this suit under the three-year statue of limitations for the CUTPA, Lanham Act, tortious interference, and vexatious litigation causes of action, under the four-year statute of limitations for the antitrust claims, and by virtue of laches for all claims. Jarrow Formulas,

13

CTDOCS:14781.1

Inc. v. Nutrition Now, Inc., 304 F.3d 829 (9th Cir. 2002) (dismissing JFI's action for false advertising and unfair competition on the ground of laches).

Rogovin's February 4, 1998 letter is admissible for the additional reason that it was sent by JFI and Rogovin in the course of the underlying litigation on which JFI bases all its claims.

**D.     Evidence of the LaMarche Case is Admissible to Impeach Rogovin's Credibility**

In his deposition, Rogovin was directly asked about the nature of his malicious prosecution lawsuit against Attorney Mark Brutzkus and his client Sandra Hogan LaMarche, but Rogovin did not fully and truthfully disclose the nature of the underlying dispute with Ms. LaMarche:

> Q.   [H]ad Attorney Brutzkus brought a lawsuit against Jarrow Formulas?
>
> A.   Yes.
>
> Q.   Who were his clients in that lawsuit?
>
> A.   Sandra Hogan-LaMarche. . . .
>
> Q.   What happened in the case that Sandra Hogan-LaMarche brought against Jarrow Formulas, Inc.?
>
> A.   . . . We filed a motion for summary judgment. It was granted. And we brought an action against her and her lawyer.

Rogovin Dep. Tr. at 76-78.

The full story is revealed in the California Supreme Court's summary of the case:

> Plaintiff Jarrow Formulas, Inc. (Jarrow), a manufacturer of vitamins and nutritional supplements, engaged defendant Sandra Hogan LaMarche (individually and doing business as The Network, hereafter LaMarche), a graphic designer, to design labels for its products. A dispute arose about the ownership of certain artwork, and **Jarrow sued LaMarche for rescission and fraud**. Represented by Mark Brutzkus, LaMarche cross-complained against Jarrow for slander of title and interference with economic advantage. Jarrow obtained a summary judgment and dismissal of the cross-complaint.

14

>After a bench trial on Jarrow's complaint, **the court entered judgment in favor of LaMarche.**

Jarrow Formulas, Inc. v. LaMarche, 74 P.2d 737, 739-40 (Cal. 2003) (emphasis added). Rogovin mischaracterized the dispute with Brutzkus as originating with LaMarche's slander of title cross-complaint. In reality, Brutzkus was defending LaMarche in an action initiated by JFI and then asserted counterclaims against JFI. Rogovin mischaracterized the case by making it seem that JFI had won, but in reality JFI merely defeated a counterclaim before losing its own claim and initiating the malicious prosecution claim, which has been discussed in Point I(B), above.

Additionally, Rogovin's letters and testimony in his role as JFI's President constitute admissions and are admissible for any inference which the jury can reasonably draw under Fed. R. Evid. 801(d)(2)(A). United States v. Matlock, 415 U.S. 164, 172 (1974); see United States v. Pedoroza, 750 F.2d 187, 202 (2d Cir. 1984).

## II.    EVIDENCE OF ROGOVIN'S MISCONDUCT AT THE BALTIMORE TRADE SHOW SHOULD BE PRECLUDED ONLY IF ALL EVIDENCE FROM ANY PARTY REGARDING THAT TRADE SHOW IS PRECLUDED

JFI has also moved to exclude as irrelevant evidence regarding Rogovin's attendance at a Baltimore, Maryland trade show in 1996. JFI contends that "[t]he events at the trade show are plainly irrelevant to any of the claims or defenses in this case, and are therefore inadmissible under Fed. R. Evid. 402." Pl. Mem. at 10.

On pages 59-63 of the Joint Trial Memorandum dated January 7, 2005, however, JFI added a section entitled, "*B. The Plaintiff contends that the following facts should also be uncontroverted facts. Defendants disagree.*" On page 60, JFI stated: "13. In October 1996, Prof. Masquelier presented a talk in Baltimore, Maryland, on the history and development of proanthocyanidins."

15

In light of JFI's indication that it would be presenting evidence about the Baltimore trade show, defendants disclosed on pages 20-21 of the Joint Trial Memorandum that Gary Senecal's and Richard LeFebvre's testimony might include the topic of "Mr. Rogovin's misconduct at the October 1996 trade show in Baltimore."

Since JFI now contends that the Baltimore trade show is irrelevant and presumably will not itself offer any evidence about that trade show, defendants have no objection to preclusion of any evidence from any party regarding the Baltimore trade show. On the other hand, if JFI is permitted to proffer evidence about that trade show, defendants should not be precluded from offering evidence about Rogovin's misconduct at the same trade show.

## CONCLUSION

Accordingly, the Court should deny plaintiff's motion in limine.

> DEFENDANTS,
> INTERNATIONAL NUTRITION COMPANY,
> EGBERT SCHWITTERS, NORMAN H. ZIVIN,
> JACK MASQUELIER, INTEGRATED
> BIOCEUTICALS, LLC, PRIMARY SOURCE,
> LLC, AND PRIMARY SERVICES, INC.
>
> By: /s/ Richard S. Order
>     RICHARD S. ORDER, ESQ.
>     Federal Bar No. ct02761
>     E-mail: rso@avhlaw.com
>     ERIC D. BEAL, ESQ.
>     Federal Bar No. ct23167
>     E-mail: exb@avhlaw.com
>     Axinn, Veltrop & Harkrider LLP
>     90 State House Square
>     Hartford, CT 06103-3702
>     Telephone:    860-275-8100
>     Facsimile:    860-275-8101

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing has been served by U.S. mail, postage prepaid, this 31st day of August, 2005 to:

Eric W. Wiechmann Esq.
Mark D. Giarratana, Esq.
Alexandra B. Stevens, Esq.
Eric E. Grondahl, Esq.
McCarter & English
CityPlace I
185 Asylum Street
Hartford, CT 06103


/s/   Eric D. Beal
Eric D. Beal
AXINN, VELTROP & HARKRIDER LLP