B

LEXSEE 97 CAL. APP. 4TH 1

JARROW FORMULAS, INC., Plaintiff and Appellant, v. SANDRA HOGAN La-MARCHE et al., Defendants and Appellants.

B146708

COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT, DIVISION FIVE

97 Cal. App. 4th 1; 118 Cal. Rptr. 2d 388; 2002 Cal. App. LEXIS 3214; 2002 Cal. Daily Op. Service 2706; 2002 Cal. Daily Op. Service 3039; 2002 Daily Journal DAR 3239

March 25, 2002, Filed

**NOTICE:** [***1] CERTIFIED FOR PARTIAL PUBLICATION - Pursuant to rules 976 and 976.1 of the California Rules of Court, the opinion is certified for partial publication with the exception of parts III.D. and III.E.

NOT CITABLE - SUPERSEDED BY GRANT OF REVIEW.

**SUBSEQUENT HISTORY:** As Modified April 4, 2002. No Change in Judgment.

Review or Rehearing granted, Depublished: *Jarrow Formulas, Inc. v. Lamarche, 2002 Cal. LEXIS 3790* (Cal. June 12, 2002).

Reprinted without change in the Review Granted Opinions Cumulative Supplement (July 2002) to permit tracking pending review and disposition by the Supreme Court.

Reprinted without change in the January 2003 Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Ct.   Review granted, *Depublished by Jarrow Formulas, Inc. v. Lamarche, 121 Cal. Rptr. 2d 371, 48 P.3d 406, 2002 Cal. LEXIS 3790* (Cal., 2002)
*Affirmed by, Superseded by Jarrow Formulas v. Lamarche, 2003 Cal. LEXIS 6091* (Cal., Aug. 18, 2003)

**PRIOR HISTORY:** APPEAL from an order of the Superior Court of Los Angeles County. Super. Ct. No. SCO61964. Lorna K. Parnell, Judge.

**DISPOSITION:** Order denying the special motion to strike reversed; cross appeal dismissed as abandoned.

**LexisNexis(R) Headnotes**

**COUNSEL:** Law Office of Neal T. Wiener, and Neal T. Wiener for Plaintiff and Appellant.

Robie & Matthai, Edith R. Matthai, Kyle Kveton, Marta A. Alcumbrac; Stephan, Oringher, Richman & Theodora, Harry W. R. Chamberlain II, Robert M. Dato, and Brian P. Barrow for Defendants and Appellants.

**JUDGES:** TURNER, P.J. We concur: ARMSTRONG, J., MOSK, J.

**OPINIONBY:** TURNER

**OPINION:**

[*3] [**390] I. INTRODUCTION

This is an appeal and a cross-appeal from an order denying a special motion to strike under *Code of Civil Procedure section 425.16.* n1 In their appeal defendants, Mark Brutzkus, an attorney, and his client, Sandra Hogan LaMarche individually and doing business as The Network, contend the trial court erred in finding a malicious [***2] prosecution complaint could not be subject to a special motion to strike. Representing Ms. LaMarche, Mr. Brutzkus filed a cross-complaint on her behalf in a municipal court action in 1997. The cross-complaint named the plaintiff in the municipal court lawsuit, Jarrow Formulas, Inc. (Jarrow) as the cross-defendant. Jarrow secured a summary adjudication order dismissing the cross-complaint. Jarrow's complaint proceeded to a bench trial in the former municipal court and judgment was entered in favor of Ms. LaMarche. Thereupon, Jarrow filed the present malicious action claim based on the

Case 3:01-cv-00478-AVC    Document 257-3    Filed 08/31/2005    Page 3 of 12

Page 2
97 Cal. App. 4th 1, *; 118 Cal. Rptr. 2d 388, **;
2002 Cal. App. LEXIS 3214, ***; 2002 Cal. Daily Op. Service 2706

filing of the municipal court cross-complaint against both Ms. LaMarche and her attorney Mr. Brutzkus. Ms. [*4] LaMarche and her counsel who filed the municipal court cross-complaint, Mr. Brutzkus, moved to strike Jarrow's malicious prosecution complaint pursuant to section 425.16. The trial court held that a malicious prosecution lawsuit is not subject to a section 425.16 special motion [**391] to strike. In the published portion of this opinion, we explain why a section 425.16 special motion to strike can apply to a malicious prosecution cause of action. We further explain why both Ms. LaMarche and her attorney, [***3] Mr. Brutzkus, met their initial burdens of proof and thereby can secure the benefit of the special motion to strike remedy.

n1 All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Jarrow has cross-appealed arguing that the trial court erred in refusing to award sanctions against defendants pursuant to section 425.16, subdivision (c). In the unpublished portion of the opinion, we explain Jarrow is not entitled to any sanctions. Additionally, Jarrow cross-appealed from a protective order directing its president, Jarrow Rogovin, not to contact defendants' attorneys. Jarrow has indicated that issue has been abandoned and the appeal as to that issue will be dismissed as moot. The appeal from the order denying plaintiff's request for sanctions is dismissed as moot.

II. BACKGROUND

A. Procedural History

In the first amended complaint for malicious prosecution, plaintiff alleged Ms. LaMarche filed a cross-complaint against Jarrow in a municipal court action, entitled [***4] Jarrow Formulas, Inc. v. Sandra Hogan LaMarche, d.b.a. The Network, case No. 97T00312. The first amended malicious prosecution complaint alleged that the municipal cross-complaint contained claims for general damages according to proof for slander of title and interference with economic advantage. Mr. Brutzkus was the attorney representing Ms. LaMarche who filed the cross-complaint in the underlying municipal court action for slander of title and interference with economic advantage. The basis of the cross-complaint in the underlying action was that Jarrow had prevented Ms. LaMarche from securing an agreement to produce a video for $ 29,000 for Merical Distributors, Inc. (Merical). Jarrow allegedly distributed untruthful information about Ms. LaMarche to her customers. The malicious prosecution first amended complaint alleged that, on July 6, 1999, a summary judgment was entered on Ms. LaMarche's cross-complaint in favor of Jarrow and against her.

Jarrow alleged that the municipal court cross-complaint had been brought without probable cause in that Ms. LaMarche and Mr. Brutzkus did not have an honest and reasonable belief that there were grounds for the cross-action. [*5] The first amended [***5] complaint further alleged that Ms. LaMarche and Mr. Brutzkus unreasonably neglected to investigate the facts before filing the municipal cross-complaint. It was alleged that Ms. LaMarche knew: there was no pending proposal to produce a video with Merical; there was no agreement for a video with Merical; and there were no false, misleading, or unprivileged statements disseminated by Jarrow to Ms. LaMarche's customers. The first amended complaint further alleged that Mr. Brutzkus knew Ms. LaMarche's credibility was in question based upon correspondence and negotiations in the municipal court lawsuit. Mr. Brutzkus was alleged to have acted maliciously in maintaining the cross-action after he gained actual knowledge that no factual support existed for the material allegations in the municipal court cross-complaint. Mr. Brutzkus and Ms. LaMarche were alleged to have acted maliciously in an effort to force Jarrow to expend money and time contesting the untrue allegations in the municipal court cross-complaint. Jarrow alleged as damages its costs and attorney fees associated with defending the municipal court cross-complaint.

B. The Special Motion to Strike

On August 28, 2000, Ms. LaMarche [***6] and Mr. Brutzkus filed a section 425.16 special [**392] motion to strike the malicious prosecution first amended complaint. Ms. LaMarche and Mr. Brutzkus argued the special motion to strike should be granted because the conduct alleged in the municipal court cross-complaint was based on conduct protected by the United States and California Constitutions and Jarrow could not establish the required evidentiary showing of a probability of success on the merits in the present lawsuit.

Because we independently weigh the evidence in finding whether there is a probability Jarrow will prevail on the merits of the litigation, we set forth the facts in some detail. Ms. LaMarche and Mr. Brutzkus presented the following evidence as support of the special motion to strike. Ms. LaMarche declared that she was a graphic artist, illustrator, and, designer who had worked as an independent contractor since 1965. She met Mr. Jarrow Rogovin, Jarrow's president in December 1995. They met to discuss his retention of her services for artwork to be used on packaging and other promotional materials for Jarrow which manufactures vitamins and nutritional supplements. During the 1995 meeting, Ms. LaMarche mentioned that [***7] she was engaged by Merical to

prepare a promotional brochure. Ms. LaMarche mentioned the brochure because she knew Merical was a substantial supplier of Jarrow. Ms. LaMarche believed her association with Merical would provide credibility to her presentation with Mr. Rogovin. Ms. LaMarche and Jarrow entered into an agreement for her to create artwork to be used as a label for one of its products. Over the next several months, they [*6] entered into numerous other agreements for her artwork to be used on other packaging and promotional materials. The agreements contained identical contract terms for the ownership of the artwork. The agreements granted a limited license to Jarrow to use the artwork. In August 1996, Jarrow and Ms. LaMarche became involved in a dispute as to the ownership rights of and its prerogative to use the artwork created by her.

Ms. LaMarche further declared that in August 1996, she had completed a brochure for Merical. Dean Baltzell, the president of Merical, was extremely pleased with the work performed on the brochure. In September 1996, she contacted Mr. Baltzell to determine if he would be interested in having a promotional video produced for Merical. He seemed [***8] very interested and a meeting was scheduled for October 2, 1996. The meeting involved Mr. Baltzell, Ms. LaMarche, and Carl Meisner. Mr. Meisner wrote the copy for the Merical brochure designed by Ms. LaMarche. Prior to the October 2, 1996, meeting, she began investigating having the video produced, including discussions with Mr. Meisner. Ms. LaMarche also had numerous discussions with a cinematographer, Frank Harris. Ms. LaMarche supplied Mr. Harris with copies of the Merical brochure and the two discussed various aspects concerning the production of the video. At Ms. LaMarche's request, Mr. Harris prepared a bid for the proposed Merical video project.

On October 2, 1996, Mr. Meisner, Ms. LaMarche, and Mr. Baltzell met. The purpose of the meeting was to discuss Mr. Baltzell's retention of the services of Mr. Meisner and Ms. LaMarche to produce the promotional video for Merical. During the meeting, Mr. Baltzell seemed very interested in proceeding with the project. They presented Mr. Baltzell with the bid of Mr. Harris, the cinematographer. Further, they viewed videotapes they had brought with them which had been produced by Mr. Harris. Because one of the videotapes was not working [***9] properly, Mr. Baltzell stated he would take it home and view it later. On October 8, 1996, Ms. [**393] LaMarche contacted Mr. Baltzell's secretary, Faye Guerra. Ms. Guerra requested that Ms. LaMarche pick up the faulty video. Ms. LaMarche indicated that she would get an operable copy of the video and deliver it to Merical's offices. Ms. Guerra did not indicate that Mr. Baltzell was not interested in proceeding with the video.

Ms. LaMarche declared that in mid October 1996, she received a telephone call from Mr. Rogovin. He was extremely upset about their contract. Mr. Rogovin screamed and yelled at her while using profanity. He threatened to "'bury'" her and to prevent Ms. LaMarche from doing any further business in the industry. Mr. Rogovin told her that he would keep her in litigation forever. Mr. Rogovin stated he had more money "'to play with the situation'" [*7] and that he would not stop until Ms. LaMarche was "'broke completely.'" Mr. Rogovin advised Ms. LaMarche that he was going to interfere with her relationship with Merical. Mr. Rogovin stated that he spoke with "Merical" on a daily basis and that the 2 companies had a 20-year business relationship. Ms. LaMarche's declaration states, [***10] "He was going to speak with Mr. Baltzell, send him copies of letters I had received from an attorney representing [Jarrow], and ruin my relationship with Merical." Ms. LaMarche was concerned because she was working on the aforementioned videotape project for Merical. Mr. Baltzell had also told Ms. LaMarche that because he was pleased with her work, he would introduce her to other clients. Around October 30, 1996, Ms. LaMarche received another telephone call from Mr. Rogovin. During this call, he continued to threaten her, including threats to contact Merical and ruin her reputation in the industry, which is particularly small.

Within the first few days of November 1996, Ms. LaMarche called Mr. Baltzell at his office to arrange delivery of an operable copy of the malfunctioning videotape. However, Mr. Baltzell was very cold and distant to her. Mr. Baltzell told Ms. LaMarche for the first time that he would not be interested in proceeding with the videotape project.

Ms. LaMarche then hired Mr. Brutzkus to protect her interests when Mr. Rogovin continued to threaten litigation against her over the artwork contracts. Ms. LaMarche also advised Mr. Brutzkus of the threats against her [***11] business reputation, specifically with respect to the video project with Merical. Each time Ms. LaMarche saw Mr. Rogovin, he threatened to sue her and Mr. Brutzkus for malicious prosecution. During the municipal court litigation, she learned that Jarrow continued to use her artwork on its packaging and promotional materials. Mr. Brutzkus advised Ms. LaMarche that she might have a copyright infringement claim against Jarrow and referred her to another attorney, Gary Phillips. Mr. Phillips reviewed Ms. LaMarche's artwork and Jarrow's packaging and promotional materials. Mr. Phillips advised her that she had a viable copyright claim. Mr. Phillips agreed to represent Ms. LaMarche and advised her to have her artwork copyrighted and registered, which she did. However, Mr. Phillips subsequently declined to represent Ms. LaMarche because of

Case 3:01-cv-00478-AVC    Document 257-3    Filed 08/31/2005    Page 5 of 12

Page 4
97 Cal. App. 4th 1, *; 118 Cal. Rptr. 2d 388, **;
2002 Cal. App. LEXIS 3214, ***; 2002 Cal. Daily Op. Service 2706

threats made by Mr. Rogovin. Mr. Phillips was threatened that, if he represented Ms. LaMarche, he would be sued. Ms. LaMarche prevailed in the municipal court trial of Jarrow's contract action.

Mr. Meisner, who wrote the copy for the Merical brochure, declared that he had been involved in advertising and marketing for over 30 years. He owned his own agency [***12] for over 27 years. When the declaration [**394] was executed, Mr. Meisner had retired from the agency which employed over 50 [*8] people and had annual gross billings in excess of $ 27 million. Mr. Meisner had worked with Ms. LaMarche for over 25 years. Mr. Meisner hired Ms. LaMarche to work as a graphic artist for clients. During the summer of 1996, she requested that Mr. Meisner work with her on a brochure she was developing for Merical. Mr. Meisner wrote the copy for the brochure. Mr. Meisner met with Mr. Baltzell and interviewed him at length. When the brochure was completed, Mr. Baltzell was very pleased with the work. Mr. Meisner suggested to Ms. LaMarche that she determine if Mr. Baltzell was interested in having a promotional video produced for Merical. Mr. Baltzell indicated that he was interested in having a promotional video produced for Merical. Ms. LaMarche requested that Mr. Meisner assist her because she had little to no experience in video production. Mr. Meisner had been involved in the production of numerous promotional videos for clients. In October 1996, Mr. Meisner, Mr. Baltzell, and Ms. LaMarche met for a presentation of the concept for the video for Merical. They discussed [***13] the benefits of the video to Mr. Baltzell's company. They estimated the production cost based on the budget prepared by Mr. Harris, the cinematographer. Mr. Baltzell did not indicate that he was uninterested in having a video produced for Merical. The meeting was very positive and cordial. Mr. Baltzell viewed videotapes produced by Mr. Harris and Mr. Meisner. Mr. Baltzell stated he liked what he saw and would like to see more. After the meeting Mr. Meisner never saw or spoke to Mr. Baltzell again.

Frank Harris declared that for 30 years he had done business as Frank Harris Cinematography. He produced and directed commercial videos and films, including 20 promotional videos. In September 1996, Ms. LaMarche contacted Mr. Harris regarding producing and directing a promotional video for Merical. Ms. LaMarche advised Mr. Harris that she had recently finished creating a new brochure for Merical and it was very pleased with her work. Mr. Harris and Ms. LaMarche had several discussions about the production of the video. Based upon the discussions, Mr. Harris prepared a 15-page budget for the project. Mr. Harris sent a copy of the bid to Ms. LaMarche and a videotape of other promotional videos [***14] he had produced and directed. After Mr. Harris presented the budget and videotape, he did not hear from Ms. LaMarche again. In July 1997, Mr. Harris received a telephone call from Mr. Rogovin and Jarrow's attorney, Neal Wiener, both of whom were on a speaker telephone. Mr. Rogovin was yelling about how he was going to ruin Ms. LaMarche and her business reputation. Mr. Rogovin stated that Ms. LaMarche had ruined a deal for him and he was "going to 'finish [her].'" Mr. Harris indicated that he felt because the telephone call was so insulting, rude, and unprofessional to Ms. LaMarche he terminated it. Mr. Wiener and Mr. Rogovin called right back. Mr. Rogovin continued to scream and make disparaging statements about Ms. LaMarche. Mr. Harris was told that he [*9] would be subpoenaed. Mr. Rogovin wanted Mr. Harris to sign a declaration concerning the Merical video. Mr. Harris was threatened that, if he did not sign such a declaration, Jarrow would sue him. Mr. Rogovin stated that Ms. LaMarche was the most unprofessional and crooked person "'he had ever done business with.'" Mr. Rogovin called her a "snake" and indicated that she "'ripped everybody off.'" Mr. Rogovin threatened to sue Ms. LaMarche [***15] "'so heavy that she wouldn't even have a chance to go bankrupt.'" Mr. Harris subsequently received [**395] a letter and declaration to be signed from Mr. Wiener. Mr. Harris did not sign the declaration. The declaration, which was attached as an exhibit, in essence, denied that there was an agreement with Merical to produce the video.

Mr. Brutzkus declared that he had practiced law in California since 1987. Mr. Brutzkus's practice focused on business and commercial litigation. In October or early November 1996, Ms. LaMarche, who is a graphic artist, contacted him about representing her in a dispute concerning product design artwork she had created for Jarrow. She indicated that she had already received letters from an attorney representing plaintiff. The dispute was based on provisions printed on the reverse side of the five contracts which had been executed and approved by Mr. Rogovin for the creation of product design artwork she had designed for Jarrow to use on packaging and promotional materials. The contracts provided that the she retained ownership rights in her artwork and placed limitations on its use. Jarrow disputed that the contracts called for a one-year limited license for the [***16] artwork.

Mr. Brutzkus further declared that, after agreeing to represent Ms. LaMarche, he attempted to reach an agreement with Jarrow for the purchase of the artwork. When the negotiations failed, Jarrow filed the underlying action against Ms. LaMarche on January 22, 1997, for rescission and fraud. After being served with the complaint in the municipal court action, Ms. LaMarche advised Mr. Brutzkus that she believed that Mr. Rogovin had intentionally interfered with a potential business arrangement involving the production of a promotional

97 Cal. App. 4th 1, *; 118 Cal. Rptr. 2d 388, **;
2002 Cal. App. LEXIS 3214, ***; 2002 Cal. Daily Op. Service 2706

video for Merical. The potential contract exceeded $29,000. Ms. LaMarche explained that Mr. Rogovin was aware that she had presented the idea of producing a promotional video to Mr. Baltzell, Merical's president. Mr. Rogovin was also aware that Ms. LaMarche had produced a promotional brochure for Merical, a supplier of Jarrow. Ms. LaMarche said that after her relationship with Jarrow began to deteriorate, she had two telephone conversations with Mr. Rogovin. Mr. Rogovin threatened to "'bury'" her and not to permit her to do any further business in the industry. Ms. LaMarche indicated that both telephone calls took place in October 1996. The second [***17] call occurred on approximately October 30, 1996. Ms. LaMarche advised Mr. Brutzkus of Mr. Rogovin's threats to continue [*10] litigating until she was "'broke completely'" and to ruin her financially and her reputation in the industry. Specifically, Ms. LaMarche told Mr. Brutzkus that Mr. Rogovin threatened to interfere with her relationship with Merical. She explained that, within weeks of the threats, she and Mr. Meisner had met with Mr. Baltzell to present the promotional video concept. At that time, Mr. Baltzell was very interested in producing a promotional video. According to Ms. LaMarche, however, by November 1, 1996, or sometime within two days after she Mr. Rogovin threatened her, Mr. Baltzell advised her was no longer interested in proceeding with the video. Mr. Brutzkus declared that, based on his discussions with his client and his independent investigation, he believed that a valid cross-complaint for slander of title could be filed.

Mr. Brutzkus declared that during the prosecution of the underlying action, he received a letter dated May 8, 1997, from Mr. Wiener. The letter confirmed that Mr. Rogovin had threatened Ms. LaMarche's business reputation. The letter, which was [***18] attached as exhibit C to Mr. Brutzkus's declaration, also set forth a portion of a transcript of a telephone conversation between Ms. LaMarche and Mr. Rogovin. According to Mr. Brutzkus and [**396] the context of the conversation, it appeared to have taken place in October 1996. Ms. LaMarche wanted to meet with Mr. Rogovin in order to "work out" their disagreement. In the conversation, Mr. Rogovin refused to meet in person with her and stated to Ms. LaMarche, "I hate your fucking guts, you bitch." Mr. Rogovin also called Ms. LaMarche a "pathological liar." Mr. Wiener stated in the letter that the conversation ended with threats of "legal action and business threats." In the May 1997, letter, Mr. Weiner admitted, "Jarrow indeed called Merical . . . ."

In July 1997, Mr. Brutzkus received a letter from Mr. Wiener, which enclosed two separate declarations from Mr. Baltzell. The declarations seemed to indicate that Mr. Baltzell did not intend to enter into a contract with Ms. LaMarche for the production of the videotape. There was also a declaration from Ms. Guerra, Mr. Baltzell's secretary, in which she indicated that Merical was not satisfied with Ms. LaMarche's work on the brochure. However, [***19] when Mr. Baltzell was deposed, he contradicted Ms. Guerra's declaration in this regard. Moreover, Mr. Baltzell confirmed that he did not tell Ms. LaMarche that he did not want to proceed with production of the video until approximately November 1, 1996. This occurred after Mr. Rogovin threatened that he would speak to Mr. Baltzell and ruin Ms. LaMarche's reputation with Merical.

Mr. Brutzkus referred Ms. LaMarche to Mr. Phillips based on the fact that Jarrow continued to use the disputed artwork during the litigation. Mr. Phillips concluded that that a copyright action against Jarrow existed and [*11] agreed to represent Ms. LaMarche. However, Mr. Phillips ultimately declined to proceed with the copyright infringement action because of threats of litigation made by Mr. Rogovin. In terms of threats directed at Mr. Brutzkus, he declared: "As a matter of fact, during a mediation, when I mentioned that Sandra Hogan LaMarche had a potential copyright infringement action against [plaintiff], Mr. Rogovin began screaming and yelling at me. He attempted to leap over the table to physically attack me. The mediator was forced to intervene."

The municipal court granted a summary adjudication motion [***20] in favor of Jarrow and against Ms. LaMarche on the cross-complaint for slander of title in May 1999. However, in July 1999, Ms. LaMarche prevailed on the complaint brought against her on the contract dispute following a three-day bench trial. Jarrow's appeal from the judgment in favor of Ms. LaMarche was dismissed as untimely.

Mr. Phillips declared that he was licensed to practice law in California and focused on business litigation with a particular emphasis in intellectual property. At a meeting with Ms. LaMarche, he examined her artwork and the alleged infringing product. In Mr. Phillip's opinion, there was a sufficient quantum of substantial similarity to conclude that a reasonable person could find that Jarrow was infringing upon Ms. LaMarche's copyright rights in the subject artwork. Mr. Phillips agreed to represent her in such an action against Jarrow. On October 7, 1999, after being informed that she had prevailed on the complaint regarding the subject artwork, Mr. Phillips wrote to Jarrow regarding his representation of Ms. LaMarche for her rights against it for copyright infringement. Mr. Rogovin telephoned Mr. Phillips and called Ms. LaMarche a "'pathological liar.'" During [***21] the conversation, Mr. Rogovin threatened to sue Mr. Phillips and anyone else involved for malicious prosecution should a copyright infringement action be filed. Mr. Phillips declared: "Mr. Rogovin unequivocally stated that he

would make my life miserable [**397] for years to come if I prosecuted a claim against him on behalf of Ms. LaMarche."

Mr. Phillips subsequently received a letter dated October 15, 1999, from Mr. Rogovin, which confirmed the telephone threat to sue Mr. Phillips for malicious prosecution if Ms. LaMarche pursued a copyright infringement action against Jarrow. The letter stated in part: "Please be advised that my company will absolutely and with no doubt whatsoever sue you for malicious prosecution -- and certainly [Ms. LaMarche] -- if you proceed further with these meritless, reckless and malicious threats. My experience is that attorneys have a reckless disregard for the facts because malicious prosecution is very difficult to prosecute. Nevertheless, be assured that I will sue [*12] you just as I have sued two attorneys in the past. The outcome of a malicious prosecution suit is less important to me than putting you through the expense of being a defendant -- with one difference [***22] -- my suit against you will be justified while that of you and your client will not."

Mr. Phillips wrote a letter to Mr. Wiener dated November 3, 1999. In the letter, he requested that Mr. Wiener counsel Mr. Rogovin on laws involving libel and malicious prosecution. On November 9, 1999, Mr. Rogovin sent a response to Mr. Phillips via facsimile transmission. The response provided in part: "What I said was that people who file bullshit suits -- AND THEIR LAWYERS -- should know what it is to have their lives made miserable by crap litigation just as mine has been." Mr. Phillips indicated: "After a lengthy discussion with her, I elected to discontinue my representation of her based principally on my personal preference not to get involved with someone possessing the antisocial and irresponsible characteristics exhibited by Mr. Rogovin, and who specifically had threatened to make my life miserable for years to come."

C. The Opposition to the Special Motion to Strike

Jarrow opposed the special motion to strike on the grounds: (1) section 425.16 did not apply to the malicious prosecution action because there is no current dispute between the parties except for an alleged copyright dispute; [***23] (2) malicious prosecution was a distinctive cause of action that does not require the protection of section 425.16; (3) defendants failed to cite any decisional authority that section 425.16 applied to malicious prosecution actions; and (4) there was a probability plaintiff will prevail on the claim. Plaintiff also requested its attorney fees for the request.

In opposition to the special motion to strike, Mr. Rogovin declared that Mr. Brutzkus violated the mediator's instructions that nothing mentioned in the mediation was to be disclosed. Mr. Rogovin admitted using profanity during the mediation. But Mr. Brutzkus lied about Mr. Rogovin yelling and screaming during the mediation and attempting to leap over the table. Mr. Rogovin stated that it was Mr. Brutzkus who was warned by the mediator to "'cut it out.'" Further, Mr. Rogovin stated, "[The mediator] did not blame me for being angry." Mr. Rogovin described the incident at the mediation as follows, "After he shouted out [Jarrow] was in violation of the copyright, I quickly stood up, shouted we're leaving and turn toward my right where the exit door was."

In a second declaration, Mr. Rogovin admitted yelling at Mr. Harris, [***24] the cinematographer. Mr. Harris and Mr. Wiener were using a speaker phone. [*13] Mr. Rogovin merely "spoke up" at Mr. Harris' request. Mr. Rogovin denied threatening Mr. Harris. Mr. Rogovin stated that Mr. Harris was surprised to hear that Ms. LaMarche [**398] was suing based on the video project because it had not been confirmed as a "deal." Mr. Rogovin admitted that he threatened to sue Mr. Phillips. Mr. Rogovin stated: "I confronted him with the accusation that his threat was solely to scare me into dropping the appeal and the malicious prosecution claim. I told him he was, 'full of crap,' 'that he was refusing to answer my questions,' and that he 'was on inquiry notice,' that I would 'sue the hell out of him' if he sued me because 'I'm sick and tired of the crap lying bastards like [Mr. Phillips] and Mr. Brutzkus pull." However, he stated that the threats were made because of the tone of Mr. Phillips' October 7, 1999, letter directed to plaintiff about copyright infringement issues. Mr. Rogovin believed those issues had been settled. Mr. Rogovin also believed that the copyright issue was only being raised to force him to abandon Jarrow's appeal of the adverse judgment in the municipal court [***25] lawsuit and in an effort to persuade him not to bring the current malicious prosecution action.

Mr. Wiener filed a declaration which supported Mr. Rogovin's claims that Mr. Harris was surprised that Ms. LaMarche filed the cross-complaint in the underlying municipal court lawsuit. Mr. Rogovin was speaking up and not yelling because they were on a speaker phone. Mr. Wiener also denied that threats were made to sue Mr. Harris. Rather, Mr. Harris was informed that he may be subpoenaed for a deposition. In a second declaration, Mr. Wiener agreed with Mr. Rogovin concerning the events that transpired at the mediation of the municipal court lawsuit. Mr. Wiener denied that Mr. Rogovin ever attempted to leap over the conference table at Mr. Brutzkus.

In a third declaration, Mr. Rogovin declared that Ms. LaMarche had deceived him regarding the contracts for the artwork. However, Mr. Rogovin offered to pay Ms. LaMarche $ 3,000 or he would file suit. To which she replied: "'Go ahead and sue, Jarrow. My lawyer's a real

Case 3:01-cv-00478-AVC   Document 257-3   Filed 08/31/2005   Page 8 of 12

Page 7

97 Cal. App. 4th 1, \*; 118 Cal. Rptr. 2d 388, \*\*;
2002 Cal. App. LEXIS 3214, \*\*\*; 2002 Cal. Daily Op. Service 2706

SOB. He knows how to handle these things.'" Without denying that he contacted Mr. Baltzell about Ms. LaMarche, Mr. Rogovin claimed that the sequence of events established that [\*\*\*26] her claim of having a completed contractual relationship with Merical was baseless. Mr. Rogovin's conclusion was based on discovery responses including Mr. Baltzell's deposition testimony. Mr. Baltzell stated he told Ms. LaMarche he was not interested in making a video on October 8 or 9 of 1996. This was before the October 30, 1996, telephone call in which Mr. Rogovin was alleged to have threatened to contact Mr. Baltzell.

Mark Dunn Giarratana, an attorney, declared that his practice of law focused on intellectual property. Mr. Giarratana had been representing Jarrow since 1996. Mr. Giarratana advised Jarrow that Ms. LaMarche's claims [\*14] regarding copyright claims were baseless and it had the right to continue using the original artwork. Mr. Rogovin gave Mr. Giarratana a copy of Mr. Phillips' letter dated October 7, 1999, regarding alleged copyright infringement of Ms. LaMarche's work. On November 16, 1999, Mr. Giarratana sent a letter via facsimile transmission to Mr. Phillips disputing Ms. LaMarche's claim. Mr. Giarratana never received a response to his letter. Therefore, Mr. Giarratana concluded Mr. Phillips had conceded the issue.

Peilin Guo declared that, in 1996 she was employed [\*\*\*27] by Jarrow as a registered dietician. She met with Ms. LaMarche regarding the artwork for the product. Ms. LaMarche never stated that the contract was only for a year and a license.

[\*\*399] D. Defendants' Reply to Opposition

In reply to the opposition to the special motion to strike, Ms. LaMarche and Mr. Brutzkus argued that plaintiff's reading of section 425.16 was too narrow. Ms. LaMarche and Mr. Brutzkus further argued that Jarrow had not provided any evidence establishing a probability of prevailing on the merits of the malicious prosecution claim.

E. The Trial Court's Ruling

The trial court denied the special motion to strike. The trial court, however, granted defendants' request for a protective order prohibiting Mr. Rogovin from directly communicating with defense counsel. The court denied Jarrow's request for sanctions of attorney fees incurred for opposing the special motion to strike. Ms. LaMarche and Mr. Brutzkus filed a timely appeal from the order denying the special motion to strike. Plaintiff cross-appealed from the order granting the protective order and the trial court's denial of its requests for attorney fees incurred in opposing the special motion to strike. As noted [\*\*\*28] above, in its opening brief, Jarrow has abandoned its cross-appeal from the order granting the protective order against Mr. Rogovin.

III. DISCUSSION

A. The Standard of Review

A special motion to strike may be filed in response to "'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.'" ( *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman (1996) 47 Cal.App.4th 777, 783,* quoting *Wilcox v. Superior Court* [\*15] *(1994) 27 Cal.App.4th 809, 815, fn. 2.)* Section 425.16, which was enacted in 1992, authorizes a court to summarily dismiss such meritless suits. (Stats. 1992, ch. 726, pp. 3523-3524.) The purpose of the statute was set forth in section 425.16, subdivision (a) as follows: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial [\*\*\*29] process. . . ."

Under section 425.16, any cause of action against a person "arising from any act . . . in furtherance of the . . . right of petition or free speech . . ." in connection with a public issue must be stricken unless the courts finds a "probability" that the plaintiff will prevail on whatever claim is involved. (§ 425.16, subd. (b)(1); *Dowling v. Zimmerman (2001) 85 Cal.App.4th 1400, 1415; Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, supra, 47 Cal.App.4th at p. 783.)* Section 425.16, subdivision (e) provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public [\*\*\*30] or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional [\*\*400] right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." In order to protect the constitutional rights of petition and free speech, the statute is to be construed broadly. (§ 425.16, subd. (a); *Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1119-*

Case 3:01-cv-00478-AVC    Document 257-3    Filed 08/31/2005    Page 9 of 12

Page 8
97 Cal. App. 4th 1, *; 118 Cal. Rptr. 2d 388, **;
2002 Cal. App. LEXIS 3214, ***; 2002 Cal. Daily Op. Service 2706

*1121, 969 P.2d 564; Averill v. Superior Court (1996) 42 Cal.App.4th 1170, 1176.)*

When a special motion to strike is made, the trial court must consider two components. First, the court must consider whether the moving party has carried its burden of showing that the lawsuit falls within the purview of section 425.16. The moving party has the initial burden of establishing a prima facie case that plaintiff's cause of action arises out of a defendant's actions in the furtherance of the right of petition or free speech. (§ 425.16, subd. (b)(1); *Mission Oaks Ranch, Ltd. v. County of Santa Barbara* [*16] *(1998) 65 Cal. App. 4th 713, 721,* overruled on another point in *Briggs v. Eden Council for Hope & Opportunity, supra, 19 Cal. 4th at p. 1123, fn 10; Macias v. Hartwell (1997) 55 Cal. App. 4th 669, 673; Braun v. Chronicle Publishing Co. (1997) 52 Cal. App. 4th 1036, 1042-1043;* [***31] *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, supra, 47 Cal. App. 4th at p. 784; Wilcox v. Superior Court, supra, 27 Cal. App. 4th at pp. 819-821.)* Second, once the defendant meets this burden, the obligation then shifts to the plaintiff to establish a probability that she or he will prevail on the merits. (§ 425.16, subd. (b)(1); *Briggs v. Eden Council for Hope & Opportunity, supra, 19 Cal. 4th at p. 1115; Kyle v. Carmon (1999) 71 Cal. App. 4th 901, 907; Conroy v. Spitzer (1999) 70 Cal. App. 4th 1446, 1450; Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, supra, 47 Cal. App. 4th at pp. 784-785.)* In reviewing the trial court's order granting the special motion to strike, we use our independent [***32] judgment to determine whether the litigation arises out of protected activity ( *Mission Oaks Ranch Ltd. v. County of Santa Barbara, supra, 65 Cal. App. 4th at p. 721; Foothills Townhome Assn. v. Christiansen (1998) 65 Cal. App. 4th 688, 695)* and a plaintiff has met its burden of establishing a probability of prevailing on a claim in the complaint. (*Monterey Plaza Hotel v. Hotel Employees & Resturant Employees* (1999) 69 cal. App. 4th 1057, 1064; *Church od Scientology v. Wollersheim (1996) 42 Cal. App. 4th 628, 653.)*

B. Ms. LaMarche Met Her Burden

Here, the trial court determined that the malicious prosecution action could not be the subject of a special motion to strike. Ms. LaMarche is being sued for filing a cross-complaint in the former municipal court. The conduct falls within the "petition" provisions of section 425.16, subdivision (e) which, as previously noted, states in pertinent part: "As used in this section, 'act in furtherance of a person's right of petition . . . under the United States or California Constitution in connection with a public issue' includes: (1) any written [***33] . . . statement or writing made before a . . . judicial proceeding . . . ;(2) any written . . . statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ; . . . (4) or any other conduct in furtherance of the exercise of the constitutional right of petition . . . ." Ms. LaMarche's filing of the municipal court cross-complaint falls with the provisions of section 425.16, subdivision [**401] (e)(1) and (e)(2) in three distinct ways. To begin with, the cross-complaint constituted a "written statement . . . or writing made before a judicial proceeding." (§ 425.16, subd. (e)(1).) Further, the municipal court cross-complaint constituted a "written . . . statement or writing made [*17] in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(2).) Finally, the cross-complaint constituted "any other conduct in furtherance of the exercise of the constitutional right of petition . . . ." (§ 425.16, subd. (e)(4).) The right of petition includes filing actions in courts of law. The United States Supreme Court has held: "Certainly the right to petition extends to all departments of the Government. The right [***34] of access to the courts is indeed but one aspect of the right of petition. See *Johnson v. Avery (1969) 393 U.S. 483, 485, 21 L. Ed. 2d 718, 89 S. Ct. 747* []; *Ex parte Hull (1941) 312 U.S. 546, 549, 85 L. Ed. 1034, 61 S. Ct. 640* [].)" ( *California Motor Transport Co. v. Trucking Unlimited (1972) 404 U.S. 508, 510, 30 L. Ed. 2d 642, 92 S. Ct. 609.)*

In addition to the foregoing reading of the express language of the statute, our conclusion the filing of the municipal court cross-complaint falls with the provisions of section 425.16 is buttressed by decisional authority. The California Supreme Court has held, "'"The constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action."'" ( *Briggs v. Eden Council for Hope & Opportunity, supra, 19 Cal.4th at p. 1115,* quoting *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, supra, 47 Cal.App.4th at p. 784; Ludwig v. Superior Court (1995) 37 Cal.App.4th 8, 19.)* Thus, section 425.16 applies to causes of action based on statements made "in connection with actual and potential [***35] civil litigation." ( *Briggs v. Eden Council for Hope & Opportunity, supra, 19 Cal.4th at p. 1120; Shekhter v. Financial Indemnity Co. (2001) 89 Cal.App.4th 141, 154.)* We find the malicious prosecution complaint directed at Ms. LaMarche because she filed the municipal court cross-complaint falls within the ambit of "[a] cause of action against a person arising from any act . . . in furtherance of the person's right of petition . . . ." (§ 425.16, subd. (b)(1); *Chavez v. Mendoza (2001) 94 Cal.App.4th 1083, 1087.)*

Jarrow argues that section 425.16 has no application to a malicious prosecution claim because the *Civil Code section 47,* subdivision (b)(2) litigation privilege does apply to such a cause of action. *Civil Code section 47,* subdivision (b) states in relevant part: "A privileged [communication] . . . is one . . . [P] (b) In any . . . (2)

97 Cal. App. 4th 1, *; 118 Cal. Rptr. 2d 388, **;
2002 Cal. App. LEXIS 3214, ***; 2002 Cal. Daily Op. Service 2706

judicial proceeding . . . ." Jarrow cites to the analysis of the California Supreme Court in *Silberg v. Anderson (1990) 50 Cal.3d 205, 216, 266 Cal. Rptr. 638, 786 P.2d 365,* discussing Civil Code section 47 [***36] , subdivision (b)(2) which states: "The only exception to application of [Civil Code] section 47(2) to tort suits has been for malicious prosecution actions. (*Ribas v. Clark* [(1985)] *38 Cal.3d 355, 364; Kilgore v. Younger* [(1982)] *30 Cal.3d 770, 778; Carden v.* [*18] *Getzoff* [(1987)] *190 Cal. App. 3d 907, 913; Pettitt v. Levy* [(1972)] *28 Cal. App. 3d 484, 489.)* Malicious prosecution actions are permitted because 'the policy of encouraging free access to the courts . . . is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack [**402] of probable cause, and malice are satisfied.' (*Albertson v. Raboff* [(1956)] *46 Cal. 2d 375, 382, 295 P.2d 405.)*"

The problem with Jarrow's argument is that *Civil Code section 47*, subdivision (b)(2) is an entirely different statute from section 425.16. Section 425.16 explicitly refers to a "cause of action" "arising from any act in furtherance of . . . the right of petition . . . ." The right of petition includes the right of access to the courts. Filing a cross-complaint [***37] certainly involves an act "arising" from the right to petition under the First Amendment. Further, unlike the body of law summarized in the immediately preceding paragraph in *Silberg*, the California Supreme Court has construed section 425.16 to apply to: the "basic act of filing litigation"; statements made "in connection with actual and potential civil litigation"; "any written . . . statement . . . made before a . . . judicial proceeding"; or a written statement made in connection with an issue "under consideration or review" in a judicial proceeding. ( *Briggs v. Eden Council for Hope & Opportunity, supra, 19 Cal.4th at pp. 1115, 1120; Shekhter v. Financial Indemnity Co., supra, 89 Cal.App.4th at p. 154;* § 425.16, subd. (e).) The Supreme Court's broad interpretation of section 425.16 differs entirely from its construction of *Civil Code section 47*, subdivision (b)(2) synthesized in *Silberg v. Anderson, supra, 50 Cal.3d at page 216* as set forth above. The judicial analysis of *Civil Code section 47*, subdivision (b)(2) does not warrant affirmance in this case which involves section [***38] 425.16. As to Ms. LaMarche, the section 425.16 special motion to strike applies to Jarrow's malicious prosecution complaint. Therefore, the burden of proof to show the malicious prosecution cause of action has merit shifts to Jarrow, an issue we address in the unpublished portion of this opinion.

C. Mr. Brutzkus Has Met His Initial Burden

Citing *Briggs v. Eden Council for Hope & Opportunity, supra, 19 Cal.4th at page 1116,* Mr. Brutzkus argues that section 425.16 applies to the written and oral statements he made while acting as an advocate for Ms. LaMarche in the municipal court action. We agree.

In *Shekhter v. Financial Indemnity Co., supra, 89 Cal.App.4th at page 152*, we discussed the situation when a plaintiff sues *both* the lawyer and client for litigation-related conduct in an underlying lawsuit. We recognized that [*19] the application of a section 425.16 special motion to strike a complaint naming an attorney and a client may not be the same. We noted: "As to whether Mr. Kass and the Manning law firm, as the lawyers for Financial and Allstate, had standing to bring the special motion to strike, this issue is resolved by the language [***39] of section 425.16 subdivision (b)(1) which states in pertinent part: 'A cause of action against a person arising from any act of *that person* in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike . . . .' (Italics added.) As can be noted, the italicized language requires that the defendant . . . be the individual who is or was being sued for exercise of 'that person['s]' right of petition or free expression." ( *Shekhter v. Financial Indemnity Co., supra, 89 Cal.App.4th at p. 152.)* In *Shekhter*, we held that the attorney and his law firm were entitled to specially move to strike pursuant to section 425.16. In *Shekhter*, in addition to representing several clients, insurance companies, in another lawsuit, the attorney and his law [**403] firm exercised free expression rights independent of their representation in the underlying litigation. In *Shekhter*, we noted that the cross-complaint alleged tort claims based upon contact by the attorney and the law firm with broadcasting outlets and a "'nationally syndicated journalist. [***40] '" ( *Id. at p. 153.)* In *Shekhter*, we concluded that the lawyer and his law firm were exercising their *own* free expression rights when communicating with journalists outside of the courtroom. But we did not resolve the question of whether an attorney could secure the benefit of section 425.16 while merely representing a client's interests *in litigation*.

The present case poses the issue we did not conclusively decide in *Shekhter*; whether an attorney may rely upon his or her exercise of free expression rights while providing legal representation in an underlying lawsuit as a basis for a section 425.16 special motion to strike in subsequent litigation. Under the facts of the present case, we conclude that Mr. Brutzkus can secure the benefit of the section 425.16 special motion to strike remedy. As in *Shekhter*, our conclusion is premised upon the express language of section 425.16, subdivision (b)(1) which restricts the application of a special motion to strike to a "cause of action *against a person arising from any act of that person in furtherance of the person's* right of . . . free speech. . . ." (Italics added.) When Mr. Brutzkus,

Case 3:01-cv-00478-AVC   Document 257-3   Filed 08/31/2005   Page 11 of 12

Page 10
97 Cal. App. 4th 1, *; 118 Cal. Rptr. 2d 388, **;
2002 Cal. App. LEXIS 3214, ***; 2002 Cal. Daily Op. Service 2706

acting [***41] as an advocate, filed papers and presented arguments in the underlying litigation, his advocacy activities arose out of the exercise of the right of free expression. The constitutional right of free expression arises in a variety of situations. ( *Ward v. Rock Against Racism (1989) 491 U.S. 781, 790, 105 L. Ed. 2d 661, 109 S. Ct. 2746* [music]; *Buckley v. Valeo (1976) 424 U.S. 1, 14, 46 L. Ed. 2d 659, 96 S. Ct. 612* [political contributions]; *Doran v. Salem Inn, Inc.* [*20] *(1975) 422 U.S. 922, 932-933, 45 L. Ed. 2d 648, 95 S. Ct. 2561* [dancing]; *Spence v. State of Washington (1974) 418 U.S. 405, 410-411, 41 L. Ed. 2d 842, 94 S. Ct. 2727* [placing a peace symbol on an American flag].) The Supreme Court has held that the right of free expression arising out of litigation "should be given the widest range compatible with the essential requirement of the fair and orderly administration of justice." ( *Pennekamp v. Florida (1946) 328 U.S. 331, 347, 90 L. Ed. 1295, 66 S. Ct. 1029.*) Further, other First Amendment rights including those of free press and assembly exist in the courtroom, albeit they are qualified. [***42] ( *Richmond Newspapers, Inc. v. Virginia (1980) 448 U.S. 555, 578, 65 L. Ed. 2d 973, 100 S. Ct. 2814* (lead opinion of Burger, C.J. ["Subject to the traditional time, place, and manner restrictions, [citations] streets, sidewalks, and parks are places traditionally open, where First Amendment rights may be exercised, [citation]; a trial courtroom also is a public place where the people generally--and representatives of the media--have a right to be present . . . ."] Finally, the First Amendment applies to lawyers' communications with clients in determining what challenges to raise inside the courtroom. ( *Legal Services Corp. v. Velazquez (2000) 531 U.S. 533, 548, 149 L. Ed. 2d 63, 121 S. Ct. 1043* [congressional limitations on issues that could be raised by legal services lawyers violative of the First Amendment].)

We need not decide that the First Amendment applied to all of Mr. Brutzkus's actions as an advocate on behalf of Ms. LaMarche. Rather, the question is whether, in the words of section 425.16, subdivision (b)(1), Mr. Brutzkus's advocacy actions can be categorized as "arising from any act of that person in furtherance of the person's [***43] right of . . . free speech." As noted in the immediately preceding paragraph, subject to restrictions not necessarily [**404] present elsewhere, the right of free expression applies to conduct by a lawyer. A lawyer advocates on behalf of a client and against an adversary. The lawyer advocates orally and in writing. All of the courtroom advocacy involves activities in a public place before a governmental body. The special motion to strike must be construed broadly. (§ 425.16, subd. (c); *Briggs v. Eden Council for Hope & Opportunity, supra, 19 Cal.4th at p. 1113.*) Section 425.16, subdivision (e) states in pertinent part that the term "act in furtherance of a person's right of . . . free speech" includes the following:

"(1) any written or oral statement or writing made before a . . . judicial proceeding; (2) any written or oral statement or writing made in connection with an issue under consideration or review by . . . judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of [***44] the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest." The [*21] California Supreme Court has construed this language in section 425.16, subdivision (e) as follows, "Thus, plainly read, section 425.16 encompasses any cause of action against a person arising from any statement or writing made in, or in connection with an issue under consideration or review by, an official proceeding or body." ( *Briggs v. Eden Council for Hope & Opportunity, supra, 19 Cal.4th at p. 1113.*) Mr. Brutzkus's written and oral advocacy on behalf of Ms. LaMarche arose from this form of conduct delineated in *Briggs*.

Finally, the special motion to strike can apply to a defendant whose challenged advocacy conduct was exercised on behalf of others. In *Briggs*, the Supreme Court recognize such when it held: "According to plaintiffs, section 425.16 protects only statements or writings that defend the speaker's or writer's own free speech or petition rights or that are otherwise 'vital to allow citizens to make informed decisions within a government office.' Plaintiffs insist tenant counseling activities like [defendant's] [***45] are not protected by section 425.16 because they neither promoted [defendant's] own constitutional right of free speech nor informed the public about possible wrongdoing. [P] Even assuming, for purposes of argument, that plaintiffs accurately have characterized [defendant's] activities as constituting neither self-interested nor general political speech, we cannot conclude such activities thereby necessarily fall outside the protection of the anti-SLAPP statute. Contrary to plaintiffs' implied suggestion, *the statute does not require that a defendant moving to strike under section 425.16 demonstrate that its protected statements or writings were made on its own behalf (rather than, for example, on behalf of its clients or the general public).*" ( *Briggs v. Eden Council for Hope & Opportunity, supra, 19 Cal.4th at p. 1116*, italics added.) Further, as we noted in *Shekhter v. Financial Indemnity Co., supra, 89 Cal.App.4th at page 153*, the special motion to strike was available to a lawyer and a law firm representing clients who exercised free speech rights while speaking to journalists. No sound justification exists for limiting the availability [***46] of a section 425.16 special motion to strike to a lawyer speaking only outside of the courtroom to a journalist. This is particularly true since the First Amendment, subject to restrictions not present elsewhere, ap-

plies to advocacy conduct in and out of a courtroom. Because Mr. Brutzkus demonstrated that [**405] the claims against him *arose* out of the exercise of his own First Amendment rights, his conduct as an advocate while speaking and writing on behalf of Ms. LaMarche, he sustained his initial burden pursuant to section 425.16, subdivision (b)(1) when the statute is the broadly construed.

[*22] D.

[NOT CERTIFIED FOR PUBLICATION]

E.

[NOT CERTIFIED FOR PUBLICATION]

IV. DISPOSITION

The order denying the special motion to strike as to defendants, Sandra LaMarche and Mark Brutzkus, is reversed. Upon issuance of the remittitur, the trial court is to enter an order granting both special motions to strike. The cross-appeal of plaintiff, Jarrow, Inc. from the order granting the protective order is dismissed as abandoned. Defendants Sandra Hogan LaMarche, individually and doing business as The Network, and Mark Brutzkus are entitled to their costs and attorney fees on appeal and [***47] those incurred in the trial court. All attorney fee requests shall be filed pursuant to *California Rules of Court, rule 870.2(c)*.

TURNER, P.J.

We concur:

ARMSTRONG, J.

MOSK, J.