J

tailers

nts and entire
...oard Steps Up
ne 1997) are very
t plain wrong in
cisions were not
"trade association
) strip power from
his industry and
of a few distribu-
members.
bers entered the
nda and proceed-
h (and down the
rship). Most votes
pics were solidly
upply side and
ers prevailing due

that the by-laws
ply side passed at
take the by-laws
mageable." This
- in the sense that
ation will restrict
om the majority
If the changes to
dures the supply
passed with their
d to stand, inde-
e completely
hance of their

or introduction of
ignatures of 10%
d retail member-
ible for any small
possible for even
rs. It is, however,
ppliers who have
maintain mailing
ers (the retailers),
iffs and big bud-
et agendas.
uoted as saying,
he by-laws com-
." Ironically, this
ER seen, nor dis-
committee prior
meeting. It was
pply side mem-
ocedures change
eed for a vote of
ing their report
on.
the report was a
spirited vote by
ers which stated
t and President-
allowed to
the standing
A.
NNFA history;
President Elect
o perform this

positions. Why exclude them now?

Oh, by the way, the NNFA also voted to spend $100,000 on computers, donated $20,000 to organic causes, gave away another $10,000 or so to various groups and then decided to raise our dues. I guess I missed where that was reported.

We have a great Association, full of great people who should be allowed to share in the decision making of this group. This will only happen if retail and supply members speak up, speak truthfully and vote this year to do the right thing.

*Eric Hinkefent,*
*NNFA Board Member*
*Akin's Natural Foods Market*

Bill Knudsen, NNFA Board member and chair of the supply division, who attended the annual meeting, offers the following response to Hinkefent's assertions:

*Your charge that the new bylaw procedure disenfranchises independent retailers is incorrect. Actually, our proposal gives more serious consideration to those whose insights may lead us to important bylaw amendments. And, if the Board ignores an amendment, which could receive two-thirds support of the general membership, it is reasonable to assume it would accumulate 10% membership support by being presented at a couple of Regional meetings.*

*You have proposed a bylaw amendment that requires only ten members to endorse bylaw amendments to bring it to the general membership. This allows one-third of one percent of the current membership to derail 100% of the membership into some of the petty politics for which this Association has a reputation. We have serious business to do; let's have serious standards.*

*The motions we raised to prohibit the President, Past President or President-Elect to chair a committee, was with the intention that our leaders have enough to do as leaders of the entire Association. We are not served well by having our President focused on favorite committees. The Presidents can still serve as members or co-chairs of committees.*

### INC vs. The World
Dear Editor:

The June issue of HFB, under Industry News, carried an item that International Nutrition Co. (INC) strengthened its claim to the so-called 360 Patent of Jack Masquelier.

In fact, at the end of March a French court voided *ab initio* the attempted transfer from SCIPA (Masquelier's company) to Schwitters, the owner of INC. Ab in...

from the initiation as if it never happened. The court even fined Masquelier $40,000 for violating French intellectual property law and ordered him to pay legal costs as well. Masquelier had breached the French requirement that the co-owner of a patent has a prior right of first refusal to any terms of sale before it may be sold to a third party.

The other owner of the so-called 360 Patent is Horphag Overseas Ltd., which sells Pycnogenol® in the U.S. through Henkel Corp. The action of Masquelier was all the more hypocritical, because several years earlier his lawyer sent a written stern warning to Horphag not to attempt to sell its half of the patent without first notifying SCIPA.

It is no wonder the French court fined Masquelier. The parties had originally agreed in writing that sole jurisdiction over a dispute would be in Bordeaux, France. This French suit between Horphag and SCIPA (with INC also a defendent) was filed well before Schwitters filed suit claiming patent infringement when he did not have any right or title to the patent.

As a minimum, he needed to wait for the French suit over ownership to end — which it did in his disfavor. Schwitters' fraudulent suit has collectively cost 20 companies over $1 million in attorneys' fees to date.

Thus Schwitters' claim in June to have "strengthened its claim to the patent by reaching an agreement with Masquelier, etc." appears to be in violation, if not contempt, of the French court. To date, Schwitters and his attorney have refused to produce the documents in this regard.

Schwitters also sued, claiming he has exclusive right to use "OPC" in the name of a flavanol-containing product. Obviously, this is ridiculous.

Jarrow Formulas intends to sue the parties responsible for this meritless suit, including their attorney Norman H. Zivin, for malicious prosecution and abuse of process.

*Jarrow L. Rogovin,*
*President, Jarrow Formulas*

HFB welcomes your opinions, comments and suggestions. Please send letters, including your name, address and phone number, to: Letters, Health Foods Business, 2 University Plaza, Suite 204, Hackensack, NJ 07601.

HFB reserves the right to edit for length and clarity.

*[Handwritten margin notes: "NORMAN - THOUGHT YOU MAY BE INTERESTED - JULY ISSUE"]*

*[DEFENDANT'S EXHIBIT 198]*

D 000 831